1  **WO**

2

3

4

5

6  **IN THE UNITED STATES DISTRICT COURT**

7  **FOR THE DISTRICT OF ARIZONA**

8

9  United States of America,                    )        No. CR 08-0814-PHX-DGC
                                                )
10              Plaintiff,                       )        **ORDER**
                                                )
11  vs.                                          )        **(SEALED)**
                                                )
12  Daniel David Rigmaiden,                      )
                                                )
13              Defendant.                       )
    _____ )

14

15        Defendant Daniel Rigmaiden, also known as Steven Brawner, has filed a motion for

16  new counsel. Dkt. #96. He has filed a memorandum in support of the motion (Dkt. #199),

17  an addendum to the memorandum (Dkt. #103), and a second addendum to the memorandum

18  (Dkt. #106). Defendant's counsel, Mark Paige, has also filed a motion to withdraw as

19  counsel. Dkt. #110. The Court held a hearing on the motions on June 19, 2009. For reasons

20  set forth below, the Court will set an additional hearing, take the motions under advisement,

21  and provide certain stipulations and warnings.

22  **I.      Background.**

23        Defendant Rigmaiden is charged with 50 counts of wire fraud, aggravated identity

24  theft, mail fraud, and conspiracy. Dkt. #3. He was indicted on July 23, 2008, and was

25  arrested in California on August 3, 2008. Dkt. #12. Defendant was transferred to Arizona

26  and arraigned on September 25, 2008. Dkt. #8.

27

28

1    Attorney Susan Anderson of the Federal Public Defender's Office was initially
2 appointed to represent Defendant, but she filed a motion to withdraw six days later.
3 Dkt. ##9, 11.  The motion was based on a conflict of interest arising within her office.

4    Tom Crowe was appointed to take Ms. Anderson's place on October 16, 2008.
5 Dkt. #13.  Defendant almost immediately began filing *pro se* motions with the Court.  He
6 filed a motion seeking the right to paperwork and legal research, a motion to require the U.S.
7 Marshal's Service to provide him with a lunch while in custody, a motion seeking the right
8 to spend a certain amount of time in the law library each week, and a motion concerning
9 alleged lost legal research due to suspected mail theft.  Dkt. ##19, 20, 21, 22.

10    In early February, 2009, Mr. Crowe moved to withdraw from representing Defendant.
11 Dkt. #46.  Defendant also filed a motion for "appointment of specialized defense counsel."
12 Dkt. ##42, 43.  The Court held a hearing on February 25, 2009.  Mr. Crowe explained that
13 he was having difficulty communicating with Defendant and therefore did not feel he could
14 represent Defendant effectively.  Defendant asserted that Mr. Crowe was not sufficiently
15 familiar with computer technology to mount an effective defense.  Mr. Crowe responded:
16 "My concern is not being able to deal with the technology issues.  My concern is being able
17 to deal with Mr. Rigmaiden."[1]  Mr. Crowe explained that he and Defendant did not share the
18 same assessment of the case and various legal issues, and Mr. Crowe did not feel he could
19 represent Defendant effectively in light of their disagreements.

20    Knowing Mr. Crowe to be an effective defense attorney, the Court was reluctant to
21 grant the motion.  After hearing Mr. Crowe's explanation of his communication difficulties,
22 however, the Court decided to make one change of counsel based on communication
23 problems.  The Court told Mr. Rigmaiden at the hearing that the Court had an attorney in
24 mind to replace Mr. Crowe – an attorney who has been very effective in handling complex
25 cases and is a member of the Court's CJA Panel.  The Court was thinking of attorney Mark

27    [1] Quotations from the hearing are based on the Court's Livenote transcript, not on an
28 official transcript from the court reporter.

- 2 -

1    Paige, although it did not mention his name during the hearing.  The Court said it would look

2    into appointing this lawyer to represent Mr. Rigmaiden, but cautioned him that it would

3    change counsel only once:

4

5          COURT: [I]t's very important for you to understand if we're back
     here in four months with you saying I'm unhappy with him and him saying
     I'm unhappy with my client[,] I'm going to say you guys need to work
6    together.

7          THE DEFENDANT:  Ok.

8          THE COURT:  We're not going to do this a third time because you
     [sic] I don't want you sitting in jail longer and I don't want to be spending
9    the government's money or [sic] on getting a good lawyer up to speed when
     all these lawyers are good.  Do you understand that?

10         THE DEFENDANT:  Yeah.  Yes, I do.[2]

11

12       Following the hearing, the Court contacted the Federal Public Defender's Office

13   (which administers the Court's CJA Panel) to confirm its assessment of Mr. Paige's ability

14   to handle this case.  After receiving confirmation that Mr. Paige would be effective in

15   handling this complex case, the Court appointed Mr. Paige to represent Defendant. Dkt. #57.

16   The Court did so on the basis of substantial experience with Mr. Paige in traditional cases,

17   complex criminal cases, and trial.  The Court has found Mr. Paige to be diligent, creative, and

18   ethical in his representation of criminal defendants.

19       Now, less than four months after Mr. Paige's appointment, Defendant has filed a

20   motion alleging that Mr. Paige has shown a "blatant display of ineffectiveness, misconduct,

21   and incompetence while representing the defendant."  Dkt. #96.  In support, Defendant

22   attaches a copy of a complaint he recently filed against Mr. Paige with the State Bar of

23   Arizona.  The complaint makes two primary allegations.

24       First, Defendant alleges that Mr. Paige has failed to follow Defendant's numerous,

25   detailed, and demanding instructions.  For example, Defendant asserts in the bar complaint

26   that (1) he sent Mr. Paige three detailed letters to which he has received no response, (2) he

27

28       [2] Livenote Transcript for February 25, 2009.

- 3 -

1    sent Mr. Paige "written logs of the matters discussed during" visits and phone calls,

2    instructed Mr. Paige to comment on the accuracy of the logs, and has received no response;

3    (3) he instructed Mr. Paige to provide him with a copy of the master docket, "minutes" from

4    all court hearings, copies of all correspondence sent between Mr. Paige's office and the U.S.

5    Attorney's office, "and an accounting of all phone calls between his office and the U.S.

6    Attorney's office"; (4) he instructed Mr. Paige to schedule a legal visit to review numerous

7    *pro se* motions Defendant has filed with the Court; (5) he "instructed Paige to send me a

8    timely, thorough and complete reply to all my letters"; (6) he instructed Mr. Paige to provide

9    him with copies of all discovery, copies of the storage device drive images relative to his

10   case, and all search warrant returns, to officially file Defendant's *pro se* motion to compel

11   specific discovery, to "put everything in writing" that is communicated to Defendant, and to

12   file various motions.  Dkt. #99.

13          Mr. Paige explained at the hearing on Defendant's motion that, in the three months

14   since his appointment, he has obtained a substantial amount of discovery from the

15   government on Defendant's behalf, has applied for and obtained a computer expert, a

16   paralegal, and copying services, and has arranged to have some 11,000 pages of discovery

17   scanned in order to be more accessible in the defense of the case.  Mr. Paige has visited

18   Defendant twice at the CCA facility (a one-way drive of approximately 90 minutes) and has

19   held two additional teleconferences with Defendant.  He has also written to Defendant.

20   Dkt. #103 at 6.

21          The second general allegation in Defendant's bar complaint is that Mr. Paige has

22   conspired with the prosecutor, Assistant United States Attorney Fred Battista, to delay the

23   resolution of Defendant's case in order to coerce Defendant into becoming a cooperating

24   witness for the government. Dkt. #103.  Defendant appears to base this claim on the fact that

25   Mr. Paige has not moved to unseal Defendant's case and sought to arrange a meeting with

26   the prosecutor where the prosecutor would lay out the evidence he has against Defendant.

27   Mr. Paige apparently suggested that this would be a relatively easy way for him and

28   Defendant to learn about the government's case.  *Id.*  Defendant refused to attend, and Mr.

1  Paige instead agreed to provide Defendant with discovery received from the government.

2  *Id.*

3  Defendant's recent filings also disclose that he has filed a bar complaint against his

4  previous lawyer, Tom Crowe.  Dkt. #100.  The bar complaint against Mr. Crowe is some

5  121-pages in length and alleges that Mr. Crowe was not diligent in pursuing Defendant's

6  case, conspired with the prosecutor to delay the case, and failed to communicate effectively.

7  Defendant quotes extensively from letters Mr. Crowe wrote to Defendant and the prosecutor

8  and from letters Defendant wrote to Mr. Crowe.  *Id.*[3]

9  In connection with his request for new counsel, Defendant has filed a document titled

10  "Motion to Bar Appointment of Specific Attorneys Due to Current Conflicting Interests."

11  Dkt. #104.  The motion identifies lawyers Defendant will not accept as new counsel.

12  Defendant reveals in the motion that he has become something of a specialist in preparing

13  bar complaints.  He explains that he has assisted at least five other inmates at CCA in

14  preparing bar complaints against their lawyers, and requests that the Court not appoint any

15  of the target lawyers to replace Mr. Paige.  The Court is familiar with some of the lawyers

16  named in these bar complaints and knows them to be effective and ethical advocates.

17  **II.    Analysis.**

18  The Court will first consider the merits of Defendant's complaints against Mr. Paige,

19  complaints which allegedly justify the appointment of new counsel notwithstanding the

20  Court's prior statement that it would not appoint Defendant a fourth lawyer in this case.  The

21  Court will then consider whether, even in the absence of legitimate complaints against Mr.

22  Paige, the conflict between Defendant and his attorney is so great that it will result "in a total

23

24

25  [3] Defendant's complaints about his prior attorneys are not limited to attorneys Paige

26  and Crowe.  Defendant was represented at his initial appearance by Craig Orent of the Federal Public Defender's Office (Dkt. #8), another lawyer the Court has found to be

27  extremely effective and diligent on behalf of criminal defendants.  Defendant complains that Mr. Orent provided incorrect advice regarding Defendant's speedy trial rights – advice that

28  resulted in Defendant failing to raise the issue with the Court at an earlier time.

1   lack of communication preventing an adequate defense." *Schell v. Witek*, 218 F.3d 1017,

2   1025 (9th Cir. 2000) (citation omitted).

3     **A.  Allegations Against Mr. Paige.**

4      Having reviewed Defendant's bar complaint and his several filings regarding Mr.

5   Paige's performance, and having heard from Defendant and Mr. Paige during the sealed

6   portion of the hearing on June 19, 2009, the Court cannot accept Defendant's assertion that

7   Mr. Paige has acted in an improper, unethical, or dishonest manner.  Defendant's filings

8   make clear that Defendant has made detailed and unreasonable demands on his lawyer.

9   While there is no doubt that lawyers and clients must communicate clearly and sufficiently

10  often to prepare an effective defense, there is no requirement in the ethical rules or the law

11  that a court-appointed lawyer review and approve written client-prepared logs of his

12  conversations with the client, provide "minutes" from all court hearings, or provide an

13  "accounting" of all phone calls between the lawyer's office and the prosecutor's office.  Nor

14  is the lawyer required to act as a scrivener, filing motions drafted by the client and providing,

15  at the client's demand, "a timely, thorough and complete reply" to the client's lengthy and

16  frequent letters.

17     In the three months since his appointment, Mr. Paige has visited Defendant twice at

18  the facility in Florence, Arizona (a three-hour round trip for Mr. Paige), conferred with

19  Defendant twice in video conferences, and written Defendant letters.  Mr. Paige sought to

20  schedule a meeting where he and Defendant could hear the government's evidence, but

21  Defendant refused to attend.  Mr. Paige has retained the services of a computer expert, a

22  paralegal, and copying services, and is in the process of organizing and reviewing some

23  11,000 pages of discovery. The Court finds no merit to Defendant's allegation that Mr. Paige

24  has neglected his duties in this case or failed to communicate with sufficient frequency.

25     The Court rejects Defendant's conspiracy theory – that Mr. Paige conspired with

26  prosecutor Batista to delay Defendant's case and coerce him into signing a cooperation

27  agreement – root and branch.  Not only does the Court know Mr. Paige to be a zealous and

28  ethical advocate for his clients, the Court also knows AUSA Battista to be ethical and fair

1    in his representation of the government and his prosecution of defendants.  The fact that Mr.

2    Paige may have kept open the possibility of a cooperation agreement with the government

3    does not constitute collusion with the government to force Defendant into a cooperation

4    agreement, not does the fact that Mr. Paige suggested that he and Defendant attend a meeting

5    to hear the government's evidence against Defendant.

6         Because the Court can find no substance to Defendant's assertion that Mr. Paige is

7    representing him improperly, Defendant's motion amounts to an expression of preference for

8    a new lawyer.  "The Sixth Amendment guarantees criminal defendants the right to effective

9    representation, but indigent defendants do not have a constitutional right to be represented

10   by their counsel of choice." *Gonzales v. Knowles*, 515 F.3d 1006, 1012 (9th Cir. 2008).  The

11   Court will not appoint new counsel on the basis of Defendant's preference.[4]

12              **B.     The Extent of the Conflict Between Defendant and Mr. Paige.**

13        Mr. Paige explained at the hearing that Defendant's bar complaint gives rise to a

14   conflict of interest – Defendant is seeking to have Mr. Paige disbarred, an action that

15   implicates Mr. Paige's personal interests and brings them into conflict with Defendant's

16   intentions.  Mr. Paige noted that ER 1.7 recognizes a conflict of interest when a lawyer's

17   personal interests could limit the lawyer's ability to represent a client effectively.  *See* Rule

18   42, Rules of Arizona Supreme Court, ER 1.7(a)(2); LRCiv 83.2(e); LRCrim 57.13.

19        The Court is not unsympathetic to this point, but, for the reasons explained above,

20   views Defendant's bar complaint as meritless.  The Arizona Bar seems to share a similar

21   view, having written to Defendant on June 4, 2009, and informed him that the Bar had

22   brought Defendant's complaint to Mr. Paige's attention and asked him to contact Defendant

23

24        [4] Alternatively, Defendant's filing of a bar complaint may be a tactic designed to
25   create a conflict of interest between Defendant and Mr. Paige and lead to the appointment
     of new counsel notwithstanding the Court's statement that another lawyer would not be
26   appointed. Defendant's motion emphasizes the conflict his own bar complaint created: "[t]he
     conflict of interest that has arisen is in regards to the defendant's private interest in pursing
27   his campaign to have Paige disbared [sic] (for just cause and for the benefit of the public) and
28   Paige's private interest to maintain good standing with the Bar."  Dkt. #96 at 4.

1   as soon as possible.  The Bar notes in the letter that if Mr. Paige fails to contact Defendant

2   within ten days Defendant should advise the Bar.  Otherwise, the Bar explained, "we will

3   consider this matter closed and take no further action."  Dkt. #103, Ex. 1.  Defendant

4   suggested at the hearing that his complaint against Mr. Paige has actually been dismissed,

5   but provided no proof of this fact.

6          Given the lack of merit in Defendant's bar complaint, the Court concludes that Mr.

7   Paige will have little difficulty obtaining its dismissal.  The complaint does not present any

8   serious prospect of disbarment.  It may nonetheless be true that the filing of the complaint

9   and Defendant's self-described "campaign to have Paige disbared [sic]" (Dkt. #96) has so

10   infected the attorney-client relationship that effective communication is impossible.  The

11   Court will hold an additional hearing to determine whether this is the case.  The Court

12   believes it would clearly be in Defendant's best interest to continue with Mr. Paige's

13   representation.  In addition to the fact that Mr. Paige is an effective and ethical advocate, the

14   Court is not certain it can find another lawyer willing to represent Defendant in light of

15   Defendant's bar complaints against Messrs. Paige and Crowe and his newfound interest in

16   preparing bar complaints for other inmates.[5]  Even if willing new counsel can be found,

17   however, the trial in this case will be delayed many months while the new lawyer gets up to

18   speed in this complex case.

19   **IV.     Procedure and Warning if New Counsel Must be Appointed.**

20          A hearing will be held at 3:00 p.m. on July 16, 2009.  The purpose of the hearing will

21   be to determine whether, following this order, the conflict between Defendant and Mr. Paige

22   is so great that it will result "in a total lack of communication preventing an adequate

23   defense."  *Schell v. Witek*, 218 F.3d at 1025.  If the hearing shows that the conflict is that

24   substantial, the Court will seek to appoint one final lawyer to represent Defendant.

25

26

27        [5] The Court, of course, can always *require* new counsel to represent Defendant, but

28   would much prefer to appoint counsel willing to take on Defendant's case.

1    The new lawyer will be appointed, however, with this stipulation:  If conflicts arise

2    in the future that make it impossible for the new lawyer to represent Defendant effectively

3    (in other words, if there is a repeat of the problems that have arisen between Defendant and

4    Messrs. Paige and Crowe), the Court will conclude that Defendant cannot work with any

5    lawyer effectively that he has, after several failed attorney-client relationships, forfeited his

6    Sixth Amendment right to counsel.  Defendant will be required to represent himself at trial.

7    A fifth defense lawyer will not be appointed.  *See United States v. Sutcliffe*, 505 F.3d 944,

8    954-56 (9th Cir. 2007); *United States v. McLeod*, 53 F.3d 322, 325-26 (11th Cir. 1995);

9    *United States v. Fazzini*, 871 F.2d 635, 641-42 (7th Cir. 1989).

10   Because the Court will deem further requests for new counsel as a forfeiture of

11   Defendant's right to counsel and will require that Defendant represent himself at trial, the

12   Court must provide Defendant with appropriate warnings about self-representation under

13   *Faretta v. California*, 422 U.S. 806 (1975).  The Court accordingly provides Defendant with

14   this specific warning:

15

16   The court will now tell you about some of the dangers and disadvantages of
     representing yourself.  You will have to abide by the same rules in court as
     lawyers do.  Even if you make mistakes, you will be given no special
17   privileges or benefits, and the judge will not help you.  The government is
     represented by a trained, skilled prosecutor who is experienced in criminal law
18   and court procedures.  Unlike the prosecutor you will face in this case, you
     will be exposed to the dangers and disadvantages of not knowing the
19   complexities of jury selection, what constitutes a permissible opening
     statement to the jury, what is admissible evidence, what is appropriate direct
20   and cross examination of witnesses, what motions you must make and when
     to make them during the trial to permit you to make post-trial motions and
21   protect your rights on appeal, and what constitutes appropriate closing
     argument to the jury.

22

23   *United States v. Hayes*, 231 F.3d 1132, 1138-39 (9th Cir. 2000).

24   Defendant plainly understands the charges against him in the Indictment.  He has filed

25   numerous motions and seeks to challenge various procedural aspects of this case.  If

26   Defendant has any questions about the nature of the charges, he should raise them at the

27   hearing on July 16, 2009.  Defendant should also be aware that conviction on all counts in

28

- 9 -

1   the Indictment, or even on some of the counts, could result in a lengthy period of

2   incarceration and a forfeiture of Defendant's assets.[6]

3       If Defendant continues to complain that his communications with counsel are too

4   infrequent – whether with Mr. Paige or new counsel – the Court will consider transferring

5   him to the Maricopa County Jail in downtown Phoenix to facilitate more frequent lawyer

6   visits.

7   **V.      Pending *Pro Se* Motions.**

8       Defendant has filed and continues to file numerous motions on his own. Such filings

9   are not permitted. "Whenever a party has appeared by an attorney, that party cannot

10  thereafter appear or act in that party's own behalf in the cause, or take any steps therein,

11  unless an order of substitution shall first have been made by the Court after notice to the

12  attorney of each such party, and to the opposite party." LRCiv 83.3(c)(2), LRCrim 57,14;

13  *see Mullins v. Schriro*, No. CV-06-1148-PXH-NVW (LOA), 2008 WL 1805443, at \*1 (D.

14  Ariz. Apr. 18, 2008) (district courts may refuse motions by parties represented by counsel

15  because a litigant has no constitutional right to "hybrid" representation) (citing *United States*

16  *v. Olano*, 62 F.3d 1193 (9th Cir. 1995)); *Pizzuto v. Arave*, 280 F.3d 949, 968 (9th Cir. 2002)

17  (party represented by counsel not entitled to cross-examine witness because "there is no right

18  to 'hybrid' representation") (citing *United States v. Kienenberger*, 13 F.3d 1354, 1356

19  (1994)). The Court will therefore deny Defendant's various *pro se* motions.[7]

20

21      [6] The Court does not make this last statement for the purpose of intimidation.

22  Defendant is presumed to be innocent and has the right to require that the government prove
    his guilt beyond a reasonable doubt. The Court includes this information because a criminal

23  defendant must be aware of the nature of the charges against him, the possible penalties, and
    the dangers and disadvantages of self-representation before being allowed to represent

24  himself at trial. *See United States v. Arlt*, 41 F.3d 516, 520 (9th Cir. 1994).

25
        [7] Because of the seriousness of its subject matter, the Court has reviewed Defendant's

26  motion to dismiss based on violation of his speedy trial rights. Dkt. #101. The motion is not
    well taken. Every extension of time granted in this case has been sought by defense counsel

27  and approved by the Court under the Speedy Trial Act. *See* Dkt. ##14, 17, 26, 27, 58, 60,

28  76, 80. Such delays do not give rise to a speedy trial violation. *See United States v. Sutcliffe*,

1    **IT IS ORDERED:**

2       1.    Defendant's motion for new counsel (Dkt. #96) and Attorney Paige's motion

3           to withdraw (Dkt. #110) are taken under advisement.  A hearing will be held

4           at **3:00 p.m. on July 16, 2009**, to determine whether Defendant and Mr. Paige

5           can work together effectively in the defense of this case.  If not, the Court will

6           seek to appoint new counsel, but will do so with the express warning that

7           Defendant will not be provided additional counsel and that a future failure in

8           Defendant's relationship with the new counsel will be deemed a forfeiture of

9           Defendant's Sixth Amendment right to counsel.

10      2.    All motions filed by Defendant without the assistance of counsel (Dkt. ##19,

11          20, 21, 22, 42, 43, 52, 53, 54, 55, 61, 62, 97, 98, 101, 102, 104, 107) are

12          **denied** without prejudice.  The motion filed by attorney Crowe to have all of

13          Defendant's *pro se* motions considered by the Court (Dkt. #45) is **denied**.

14      3.    Attorney Paige shall promptly provide a copy of this order to Defendant.

15      Excludable delay pursuant to 18 U.S.C. § 3161(h)(8)(A) is found to commence on

16   June 8, 2009 for a total of 18 days.

---

505 F.3d at 356-58*; United States v. Day Child*, 387 F.3d 1082, 1094-95 (9th Cir. 2004); *United States v. Lamb*, 251 F.3d 852, 857-58 (9th Cir. 2001).  Moreover, upon motion of defense counsel, this case has been designated as complex for purposes of the Speedy Trial Act.  Dkt. #79; *see* 18 U.S.C. § 3161(h)(8)(B)(ii).  As noted above, the Court altogether rejects Defendant's claim that attorneys Crowe and Paige have been colluding with the prosecutor to delay this case.  The case, particularly during the first few months, may not have moved forward as quickly as Defendant would like, but the delay has not been the result of a conspiracy to deprive him of a speedy trial.  Considering the four-factor test established in *Barker v. Wingo*, 407 U.S. 514 (1972), the Court concludes that the length of the delay in this case has not been unreasonable, the reasons for delay have been justified given the complexity of the case, Defendant's conduct in failing to work effectively with counsel belies any effort on his part to obtain a speedy trial, and the delay has not resulted in prejudice to Defendant.

- 11 -

1        DATED this 25th day of June, 2009.

2

3

4

5
_____
                                                David G. Campbell
6   cc:    Dft                              United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28