Daniel Rigmaiden
AKA: Steven Brawner #10966111
CCA-CADC
PO Box 6300
Florence, AZ 85232
Telephone: none
Email: none

Daniel David Rigmaiden
Defendant as Defendant

FILED
JUL 13 2009
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

SEALED

| United States of America, | No. CR08-814-PHX-DGC |
|---|---|
| Plaintiff, | PRETRIAL MEMORANDUM RE THE COURT'S THREAT OF RETALIATORY TRANSFER TO MARICOPA COUNTY JAIL |
| v. | |
| Daniel David Rigmaiden, | |
| Defendant. | |

Defendant, Daniel David Rigmaiden, appearing as defendant, submits this pretrial memorandum to respond to the Court's threat of retaliatory transfer to Maricopa County Jail--to be carried out if the defendant continues to exercise his 1st and 6th Amendment Constitutional rights in a way that displeases the Court.

## I. BACKGROUND

The Court's June 25, 2009 order, received by the defendant on July 1, 2009, p. 10 at 3-6, states:

> "If Defendant continues to complain that his communications with counsel are too infrequent-- whether with Mr. Paige or new counsel--the Court will consider transferring him to the Maricopa County Jail in downtown Phoenix to facilitate more frequent lawyer visits."

The order states that if the defendant continues to "complain" that "communications" with Mark Paige ("Paige")

or a new attorney are "to infrequent" then the Court will "consider transferring [the defendant] to the Maricopa County Jail in downtown Phoenix" in order to solve that problem. Id. The Court has clearly asserted that the defendant has complained about the **frequency** of communications with Paige. The term "communications," used in the context at hand, is ambiguous, however, the Court notes a certain type of communications, i.e., "lawyer visits." Id. Nowhere in the defendant's filings does the defendant ever complain about the frequency of lawyer visits with Paige.

    The defendant's March 17, 2009 letter, sent to Paige, states:

> "I require from you, as my attorney, an in person legal visit, or at the very least a video conference, once every **30 days**." Id. (emphasis added)

That letter was on the record and available to the Court when the order was drafted. Paige initiated lawyer visits, in person or via video, on March 20, 2009, May 1, 2009 and June 12, 2009. Any lawyer visits conducted after June 12, 2009 would be counterproductive, and possibly prejudicial, given the conflict of interest between Paige and the defendant. Between March 17, 2009 and June 12, 2009, Paige initiated an average of **1 lawyer visit every 30.33 days**. The defendant's bar complaint, and all other filings, never once mention the frequency of lawyer visits with Paige. The defendant does not make allegations that are not supported by the facts. Having lawyer visits with Paige once every 30.33 days is well within reason

considering the defendant asked for lawyer visits once every 30 days. Furthermore, considering the defendant asked for at least video teleconferences, and considering the defendant never made the alleged complaint, the factual foundation of the court's consideration of a move is completely nonexistent.

The defendant complained about Paige's refusal and failure to respond to the defendant's letters. The defendant did not complain about the frequency of the written responses from Paige, the defendant complained about the nonexistence of written responses from Paige. If the defendant was detained at Maricopa County Jail in downtown Phoenix, the problem of Paige refusing and failing to respond to the defendant's letters would not be solved. Paige could initiate lawyer visits once a week, while continuing to refuse to respond to the defendant's letters, while continuing to refuse to work with the defendant in establishing defense strategies, while continuing to lack even the most elementry of communication skills and Paige would continue to be in violation of the Arizona Rules of Professional Conduct. The defendant complained about the quality of Paige's communication skills, not frequency. Exposing the defendant to more frequent bouts of poor quality communications will only further conflict. The defendant complained about the nonexistence of Paige's written responses to the defendant's letters, not frequency. If something never happened then there can be no measure of frequency by

definition.

The defendant complained that Tom Crowe ("Crowe") initiated no lawyer visits, in person or via video, over the 5 months he represented the defendant. The prejudice suffered by the defendant during that 5 month period is damage that has already been done. Crowe no longer represents the defendant and Paige has not exhibited the same frequency problem exhibited by Crowe. The Court cannot turn back time to solve a problem that existed in the past by moving the defendant to Maricopa County Jail today.

The order states, given the occurance of certain complaints in the future, that the Court will consider moving the defendant to the Maricopa County Jail under the authority of Sheriff Joseph M. Arpaio. Maricopa County Jail has received national media attention for being one of the nation's most oppressive pretrial detention facilities currently in operation. Arpaio has lost numerous civil rights lawsuits regarding the conditions of confinement at Maricopa County Jail. Arpaio has made it clear that he maintains his jails in an oppressive state just for the sake of being oppressive. The Court could have chosen any number of other facilities close to downtown Phoenix as its transfer destination. However, the Court chose a facility that has existed under a cloud of Constitutional question for years. Maricopa County Jail is so degrading, inhumane and oppressive

that when the defendant asked a detainee at CCA-CADC to sign an affidavit regarding his experiences at Maricopa County Jail the detainee refused stating that he feared further oppression for making statements against Arpaio.

## II. ANALYSIS OF THREAT OF RETALIATORY TRANSFER

Considering there is no substance to the Court's assertion that the defendant complained about the frequency of lawyer visits with Paige or the frequency of communications with Paige in general, and considering the Court's solution of transfer solves no issues the Court posits as having merit, the above quoted section of the Court's June 25, 2009 order amounts to a threat of retaliatory transfer -- to be carried out if the defendant continues to exercise his constitutionally protected rights in a way that displeases the Court. The Court's threat of retaliatory transfer acts to chill the defendant's 1st Amendment right to freedom of speech and 6th Amendment right to access the Courts.

### A. INTIMIDATION FACTOR

Considering that the Court's threat of retaliatory transfer is made for reasons that are absolutely unfounded, it is clear that the Court is clenching at straws to find a reason to threaten transferring the defendant to Maricopa County Jail. The Court's threat comes in response to the defendant exercising his

1st Amendment right to freedom of speech and 6th Amendment right to access the Courts, i.e., filing bar complaints and mirroring them to the Court. Considering the Court supports its threat of retaliatory transfer with specific issues that simply do not exist, the Court has intimidated the defendant into not raising any issues at all and has effectively chilled the defendant's constitutionally protected rights. The defendant now fears a retaliatory transfer if he displeases the court as a result of exercising his 1st and 6th Amendment rights in the future. The defendant fears a transfer for this very filing. The now looming threat, that has no basis in fact, equates to an overall threat of retaliatory transfer.

### B. CIVIL LIBERTIES FACTOR

The case law dealing with retaliation against prisoners and detainees for exercising constitutional rights is extensive. In the instant case, the defendant is under the threat of retaliatory transfer, however, he has not been transfered as of the date of this memorandum. Nevertheless, the case law still applies. The mere threat of retaliatory transfer has the same implications as if the transfer was already complete.

"In general, a prisoner enjoys no constitutionally protected right against transfer to another prison." Rouse v. Benson, 193 F.3d 936, 940 (8th Cir. 1999). "Nevertheless, a prisoner cannot be transfered in retaliation

for his exercise of constitutionally protected rights." Goff v. Burton, 91 F.3d 1188, 1191 (8th Cir. 1996). "Since Sandin, [the Ninth Circuit] has reaffirmed that prisoners may still base retaliation claims on harms that would not raise due process concerns." Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000) (internal citations omitted). "[G]overnment actions, which standing alone do not violate the constitution may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for the exercise of a constitutional right." Rauser v. Horn, 241 F.3d 330, 333 (3rd Cir. 2001) (internal citations omitted). "The reason why... retaliation offends the Constitution is that it threatens to inhibit exercise of the protected right." Crawford-El v. Briton, 523 U.S. 574, 588 n. 10 (1998).

"As a threshold matter, a [detainee] in a retaliation [claim] must prove that the conduct which led to the alleged retaliation was constitutionally protected..." Rauser, 241 F.3d at 333. In the instant case, the conduct in question is filing bar complaints and notifying the Court of the ineffectiveness, incompetence and misconduct of appointed attorneys. The conduct in question is clearly constitutionally protected through the 1st and 6th Amendments. Even if the Court does not agree with the facts presented by the defendant, the Court may not punish the defendant by chilling his right to freedom of speech and his right to access the courts.

"Next, a [detainee] litigating a retaliation claim must show that he suffered some adverse action at the hands of the prison officials." Id. (internal citations and quotation marks omitted). "[A] [detainee] satisfies this requirement by demonstrating that the action was sufficient to deter a person of ordinary firmness from exercising his constitutional rights." Id. (internal citations and quotation marks omitted). Not only does transfering someone to Maricopa County Jail, or to any facility, qualify to deter a person of ordinary firmness from exercising his constitutional rights but the mere threat of a transfer qualifies as well.

Once the above two criteria are met "a [detainee] must go about proving a casual link between the exercise of his constitutional rights and adverse action taken against him." Id. The Rauser court applied Mount Healthy Bd. of Ed. v. Doyle, 429 U.S. 274, 287 (1977), a retaliation case that arose in the public employment context, where "[t]he Court held that the plaintiff bore the initial burden of proving that his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him." Rauser, 241 F.3d at 333 (internal citations and quotations marks omitted). In the instant case, the Court's threat of transfer came in direct written response to the defendant exercising his 1st and 6th Amendment rights, i.e., filing bar complaints and mirroring them to the court. The very construction of the paragraph containing the Court's written threat quotes

complaints that simply do not exist. As explained in previous paragraphs, infrequent lawyer visits with Paige, or infrequent communications in general, are not issues the defendant ever complained about. Assuming the court misunderstood the defendant, and assuming the court actually believed that the defendant was complaining about infrequent lawyer visits with Paige or infrequent communications in general, the very construction of the Court's written threat intends only to solve the Court's problem of the defendant complaining. The Court's order posits that a transfer to Maricopa County Jail will solve the problem of "the defendant's complaining" of infrequent lawyer visits. The Court's order does not posit that it will solve the problem of "the defendant's receival" of infrequent lawyer visits. Previous to the Court's written threat of transfer, the Court's June 25, 2009 order clearly indicates that the Court does not find Paige's communication frequency a problem:

> "The Court finds no merit to Defendant's allegation that Mr. Paige has neglected his duties in this case or failed to communicate with sufficient frequency." Id. p. 6 at 23-24.

Surely the Court does not intend to transfer the defendant to one of the most oppressive pretrial detention facilities in the nation to solve a problem for which it "finds no merit." Id. The Court clearly intends to solve the Court's problem of the defendant complaining about evident aristocratic coterie and how it prejudices the defendant's

9

defense. The lack of a "but for causation" is indisputable and blatantly obvious from all possible angles, therefore, the court's threat of transfer to Maricopa County Jail is retaliatory.

Retaliation aside, the defendant has further liberty interests in not being transferred to Maricopa County Jail. The defendant is indigent and the court may force the defendant to proceed pro se. Maricopa County Jail does not cater to pro se detainees in any fashion. The defendant is informed that Maricopa County Jail has no law library, does not provide sufficient amounts of paper for legal filings, does not provide pens and the limited supply of indigent golf pencils must be "sharpened" by sanding them on the concrete. The defendant is informed that if he were detained at Maricopa County Jail then he would likely be forced to write filings on toilet paper in his own blood.

## III. CONCLUSION

The defendant now conducts his defense under a threat of retaliatory transfer that chills his constitutionally protected rights.

```
1  Respectfully submitted: June 9, 2009
2
3                                          DANIEL DAVID RIGMAIDEN
                                           Defendant as Defendant
4
5
6                                          _____
                                           Daniel D. Rigmaiden
7                                          Defendant
8
9                          CERTIFICATE OF SERVICE
10     I hereby certify that on June 9, 2009          I caused the
11 following to be placed into the CCA-CADC mailing system for United
12 States Postal Service delivery:
13 Original attached document plus one copy addressed to:
14 Clerk, United States District Court
   Sandra Day O'Connor U.S. Courthouse, Suite 130
15 401 W. Washington St., SPC 1
   Phoenix, AZ 85003
16
   One copy each of original document addressed to:
17
   Frederick A. Battista
18 Assistant U.S. Attorney
   40 N. Central Ave., Suite 1200
19 Phoenix, AZ 85004
20 Mark A. Paige
   111 W. Monroe St., Suite 1212
21 Phoenix, AZ 85003
22 BY Daniel Rigmaiden
```