Daniel Rigmaiden
Aka: Steven Brawner #10966111
CCA-CADC
PO Box 6300
Florence, AZ 85232
Telephone: none
Email: none

Daniel David Rigmaiden
Defendant as Defendant

FILED ___ LODGED
___ RECEIVED ___ COPY
JUL 1 4 2009
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

**SEALED**

United States of America,

    Plaintiff,

v.

Daniel David Rigmaiden,

    Defendant.

No. CR08-814-PHX-DGC

PRETRIAL MEMORANDUM RE FACTUAL INACCURACIES, ETC. IN THE COURT'S JUNE 25, 2009 ORDER

Defendant, Daniel David Rigmaiden, appearing as defendant, submits this pretrial memorandum to correct various factual inaccuracies, etc. in the Court's June 25, 2009 order. Typically, it is not appropriate to respond to a court order, however, the factual inaccuracies in the Court's order are severe enough, and the assertions made by the Court are offensive enough, to merit a response. The defendant received the June 25, 2009 order on July 1, 2009.

I. **FACTUAL INACCURACIES, ETC.**

    A. **Factual inaccuracy, etc. # 1**

The Court's order, p. 2 at 17-21, states:

"Mr. Crowe explained that he and the defendant did not share the same assessment of the case and various legal issues, and Mr. Crowe did not feel he could represent Defendant effectively in light of their disagreements." Id.

Tom Crowe ("Crowe") insisted on plea negotiations before he had received discovery (now purportedly over 11,000 pages) and before he had discussed the case with the prosecution. These assertions are supported by the record and by letters sent between Crowe and the defendant. Crowe refused to challenge various searches on 4th Amendment grounds. Crowe had no legal visits with the defendant at CCA-CADC or through video teleconference for the 5 months he represented the defendant. For these reasons, and for many others, Crowe was clearly ineffective, incompetent and did not have the defendant's best interests in mind.

### B. Factual inaccuracy, etc. # 2

The Court's order, p. 4 at 17-19, states:

> "Mr. Paige has visited Defendant twice at the CCA facility (a one-way drive of approximately 90 minutes) and has held two additional teleconferences with Defendant." Id.

Mark Paige ("Paige") has visited the defendant once at CCA-CADC, not twice as the Court apparently concluded from the record. The defendant distinctly remembers the March 20, 2009 in person legal visit considering CCA-CADC staff expressed their discontent with Paige not notifying them that Paige's translator would not be present. CCA-CADC staff expressed their discontent with Paige considering his non english speaking clients were brought to visitation for no reason.

### C. Factual inaccuracy, etc. # 3

The Court's order, p. 4 at 25-28, states:

> "Mr. Paige... sought to arrange a meeting with the prosecutor where the prosecutor would lay out the evidence he has against Defendant. Mr. Paige apparently suggested that this would be a relatively easy way for him and Defendant to learn about the government's case." Id.

1  Paige insisted that the defendant attend a "show and tell" meeting
2  with the government to learn information already in Paige's
3  possession--a meeting Paige stated would be a prerequisite to a
4  cooperation agreement. Paige provided details such as the fact that
5  the defendant would likely not be required to inform on family
6  members. Paige informed the defendant that there would be no
7  written agreement designed to protect the defendant's rights or
8  interests during the "show and tell" meeting, e.g., protection from
9  testimonial verbal and non verbal reactions in the presence of
10 investigators. See e.g. U.S. v. Green, 541 F.3d 176, 188
11 (3rd Cir. 2008) ("non-verbal acts were testimonial and
12 communicative in nature..."). The defendant reminds the Court that
13 Lonnie Dworken witnessed the entire conversation. For these reasons,
14 and for many others, Paige is clearly ineffective, incompetent
15 and does not have the defendant's best interests in mind.

### D. Factual inaccuracy, etc. # 4

The Court's order, p. 6 at 10-13, states:

> "there is no requirement in the ethical rules or the law that a court-appointed lawyer review and approve written client-prepared logs of his conversations with the client, provide "minutes" from all court hearings, or provide an "accounting" of all phone calls between the lawyer's office and the prosecutor's office." Id.

Having an attorney take an average of 10 minutes per written log per 45 day period (two logs were sent to Paige since April 16, 2009) to read and comment is not an unreasonable demand. A client taking notes during attorney-client conversations and then requesting that his attorney review the notes for accuracy is a very effective way to ensure that the client and attorney are understanding each other.

3

Considering the defendant was attempting to communicate in a reasonable manner, Ariz. R. Prof. Conduct ER 1.4, "communication," et seq. requires Paige to oblidge. Providing the defendant with minute entries from court hearings and an accounting of verbal communications with the U.S. Attorney's office is not unreasonable. Minute entries are readily available and jotting down a few notes after a phone call is common practice among "diligent, creative, and ethical" attorneys--qualities the Court posits Paige possesses. The defendant needs certain pieces of information in order to participate intelligently in decisions concerning the objectives of the representation. Ariz. R. Prof. Conduct ER 1.4 comment n. 5 states in relevant part:

> "The client should have sufficient information to participate intelligently in decisions concerning the objectives of the representation and the means by which they are to be pursued, to the extent the client is willing and able to do so." Id.

What the Court has failed to recognize is that the defendant is "willing and able" to an extent that far surpasses that of a nitwit. Paige is required to comply with Ariz. R. Prof. Conduct ER 1.4 et seq. (including comment n. 5) and required to provide the defendant with sufficient information to satisfy his intellect.

### E. **Factual inaccuracy, etc. # 5**

The Court's order, p. 6 at 13-16, states:

> "Nor is the lawyer required to act as a scrivener, filing motions drafted by the client and providing, at the client's demand, "a timely, thorough and complete reply" to the client's lengthy and frequent letters." Id.

The District of Arizona has expressed that "counsel is not required to file papers based on Defendant's demand **if not supported by**

**facts and the law.**" U.S. v. King, No. CR08-0045-PHX-SRB, Document 320, p. 1 at 21-22 (D. Ariz. March 26, 2009)(quoting the Honorable Susan R. Bolton) (emphasis added). Instructing Paige to file a motion to compel the release of Brady material and warrant documents, that should have been provided to the defendant long before, is supported by both facts and the law. Receiving the material the defendant sought to obtain is a prerequisite to challenging the various illegal searches involved in the instant case.

Ariz. R. Prof. Conduct ER 1.4 comment n. 4 states in relevant part:

> "When a client makes a reasonable request for information, however, paragraph (a)(4) requires prompt compliance with the request, or if a prompt response is not feasible, that the lawyer, or a member of the lawyer's staff, acknowledge receipt of the request and advise the client when a response may be expected." Id.

The above is also supported by numerous case laws referenced in LexisNexis, Arizona Annotated Court Rules, Volume 2 (2009), e.g.:

> "In failing to actively pursue his client's case and failing to respond to letters from his client, despite his statements to the contrary, an attorney was clearly negligent, and censure was the appropriate sanction. In re Talmadge, 171 Ariz. 548, 832 P.2d 201 (1992)." Id. at 199.

Paige providing the defendant with a timely, thorough and complete reply to the defendant's letters, averaging 1 letter every 40 days (hardly "frequent" as the Court asserts), is not unreasonable and is obviously required by the Arizona Rules of Professional Conduct. Paige has not responded to any of the defendant's letters nor has he discussed the subject matter through any means of communication. Paige never informed the defendant that any of his requests were

unreasonable. Paige acted as if the majority of the defendant's requests did not exist. Furthermore, Paige has failed to discuss any defense strategies with the defendant other than entering into a cooperation agreement with the government.

### F. Factual inaccuracy, etc. # 6

The Court's order, p. 7 at 1-5, states:

> "The fact that Mr. Paige may have kept open the possibility of a cooperation agreement with the government does not constitute collusion with the government to force Defendant into a cooperation agreement, not [sic] does the fact that Mr. Paige suggested that he and Defendant attend a meeting to hear the government's evidence against Defendant." Id.

The above is not an accurate portrayal of the facts. Paige flat out told the defendant that he did not want to give the defendant anything in writing (during the April 8, 2009 legal phone call) and that he saw no reason to provide the defendant with discovery (during the May 1, 2009 video teleconference). The defendant had made it clear to Paige that he has nothing to offer the government even if he were willing. The defendant had made it clear to Paige that he sought certain information regarding various illegal searches that was already in Paige's possession. Paige refused to provide the defendant with the sought after information and offered frivolous reasons in support. Paige then attempted to tempt the defendant with the sought after information by requiring that he attend a meeting with the government in order to learn what Paige already had in discovery. The meeting, according to Paige, would be a prerequisite to a cooperation agreement and there would be no written terms to protect the defendant's rights and interests. Paige clearly exhibited collusion and coercion. The sought after

information still has not been provided to the defendant and it contains no personal identifiers so there is no excuse for the delay and refusal.

### G. Factual inaccuracy, etc. # 7

The Court's order, p. 8 at 1-5, states:

> "The Bar notes in the letter that if Mr. Paige fails to contact Defendant within ten days Defendant should advise the Bar. Otherwise, the Bar explained, "we will consider this matter closed and take no further action." Dkt. #103, Ex. 1. Defendant suggested at the hearing that his complaint against Mr. Paige has actually been dismissed, but provided no proof of this fact." Id.

The Court has clearly misquoted the June 4, 2009 letter from the bar. The letter stated:

> "If the attorney fails to contact you within ten (10) days of the date of this letter, please advise us in writing. If we do not receive correspondence from you within 15 days of the date of this letter, we will consider this matter closed and take no further action." Id.

In no way did the letter state that the matter would be closed if Paige contacted the defendant within 10 days. The letter stated that the Bar would consider the matter closed if they do not receive correspondence from the defendant within 15 days. Paige simply contacting the defendant does not and did not close the matter. As the defendant's filings show, the defendant sent correspondence to the Bar within 15 days. The defendant is currently in written contact with bar counsel supervisors regarding the appeal and the initial bar counsel's failure to follow the Arizona Supreme Court Rules with respect to processing complaints that assert deceit, dishonesty or actual harm. The matter is not currently closed. Furthermore, the defendant provided an explanation as to why he assumed the bar complaint against Paige had been dismissed.

See the June 19, 2009 court hearing transcripts.

### H. Factual inaccuracy, etc. # 8

The Court's order, p. 9 at 1-8, states:

> "The new lawyer will be appointed, however, with this stipulation: If conflicts arise in the future that make it impossible for the new lawyer to represent Defendant effectively (in other words, if there is a repeat of the problems that have arisen between Defendant and Messrs. Paige and Crowe), the Court will conclude that Defendant cannot work with any lawyer effectively that he has, after several failed attorney-client relationships, forfeited his Sixth Amendment right to counsel. Defendant will be required to represent himself at trial. A fifth defense lawyer will not be appointed. See United States v. Sutcliffe, 505 F.3d 944, 954-56 (9th Cir. 2007); United States v. McLeod, 53 F.3d 322, 325-26 (11th Cir. 1995); United States v. Fazzini, 871 F.2d 635, 641-42 (7th Cir. 1989)." Id.

Crowe's motion to withdraw as counsel clearly states:

> "Nothing stated herein is intended to suggest or imply that the Defendant bears any fault or responsibility for the necessity of granting the relief sought." Id. p. 2 at 27, p. 3 at 1.

Only now, after the fact, does the Court blame the defendant for Crowe's withdrawal--completely contradicting Crowe's documented assertions. The defendant reminds the Court that Crowe offered no convincing statements to the Court, on February 25, 2009, to merit withdrawal other than his refusal to challenge the legality of various searches. The defendant elaborated on Crowe's statements for the Court and stressed the need for a technology expert, or specialized attorney, to aid in challenging the various illegal searches. That expert is Lonnie Dworken and he has substantiated some of the defendant's defense strategies with respect to the searches (during the May 1, 2009 video teleconference).

The Court compares the instant case to United States v.

8

Sutcliffe, 505 F.3d 944 (9th Cir. 2007) with respect to the Court's intention to force the defendant to proceed pro se if a fourth attorney moves to withdraw. In Sutcliffe, the district court found that the defendant had "compelled four of his prior attorneys to move to withdraw" and further noted that the defendant's "conduct at times [had] consisted of threats; at least one lawsuit Defendant filed against a previous court appointed lawyer; outbursts and harangues in court; defiant refusals to cooperate; rudeness; and hostility." Id. at 955. Sutcliffe hardly relates to the instant case. The defendant compelled one attorney to withdraw, Paige, after he exhibited a blatant display of ineffectiveness, incompetence and misconduct. The defendant has made absolutely no threats; filed no lawsuits; is very courteous and respectful to the Court; has made every effort to cooperate with his attorneys in establishing defense strategies despite their refusals; has been polite; and has no hostility towards anyone. The defendant simply states the facts. In Sutcliffe, "[n]one of Defendant's accusations against his attorneys are supported by the record." Id. In the instant case, the record is extensive. Sutcliffe, by his own admission, had the intention of "going through attorneys until the case was dismissed." Id. (internal quotation marks omitted). The defendant has made it clear that he simply wants an attorney who is honest, ethical and willing to work with the defendant in developing defense strategies. The Court has erroneously equated the defendant to Sutcliffe.

    The Court also compares the instant case to United States v. McLeod, 53 F.3d 322 (11th Cir. 1995). In McLeod, the defendant was

"verbally abusive" and "threatened to harm" his attorney. Id at 325. "McLeod's behavior toward his counsel was repeatedly abusive, threatening, and coercive," therefore, McLeod was forced to proceed pro se. Id. at 326. The instant case is nothing like McLeod.

### I. Factual inaccuracy, etc. # 9

The Court's order, p. 10 at 3-6, states:

> "If Defendant continues to complain that his communications with counsel are too infrequent - whether with Mr. Paige or new counsel - the Court will consider transfering him to the Maricopa County Jail in downtown Phoenix to facilitate more frequent lawyer visits." Id.

The seriousness of the Court's threat of retaliatory transfer to Maricopa County Jail--to be carried out if the defendant continues to exercise his 1st and 6th Amendment Constitutional rights in a way that displeases the Court--is addressed in the defendant's "Pretrial Memorandum RE The Court's Threat Of Retaliatory Transfer To Maricopa County Jail."

### II. CONCLUSION

The factual inaccuracies outlined in this memorandum are not all inclusive. Considering the factual inaccuracies in the Court's order, the defendant doubts the accuracy of the Court's decisions outlined in the order.

The defendant fears a retaliatory transfer to Maricopa County Jail for filing this document.

///
///
///
///
///

Respectfully submitted: July 12, 2009

DANIEL DAVID RIGMAIDEN
Defendant as Defendant

*Daniel Rigmaiden*
Daniel D. Rigmaiden
Defendant

CERTIFICATE OF SERVICE

I hereby certify that on July 12, 2009 I caused the following to be placed into the CCA-CADC mailing system for United States Postal Service delivery:

Original attached document plus one copy addressed to:

Clerk, United States District Court
Sandra Day O'Connor U.S. Courthouse, Suite 130
401 W. Washington St., SPC 1
Phoenix, AZ 85003

One copy each of original document addressed to:

Frederick A. Battista
Assistant U.S. Attorney
40 N. Central Ave., Suite 1200
Phoenix, AZ 85004

Mark A. Paige
111 W. Monroe St., Suite 1212
Phoenix, AZ 85003

BY *Daniel Rigmaiden*