1 | **Daniel Rigmaiden**
Agency # 10966111
2 | CCA-CADC
PO Box 6300
3 | Florence, AZ 85132
Telephone: none
4 | Email: none
5 | Daniel David Rigmaiden
Pro Se, Defendant
6 |

✓ FILED ___ LODGED
___ RECEIVED ___ COPY

JAN 2 1 2010

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ B. DEPUTY

7 |

### UNITED STATES DISTRICT COURT

### DISTRICT OF ARIZONA

United States of America,

    Plaintiff,

v.

Daniel David Rigmaiden,

    Defendant.

No. CR08-814-PHX-DGC

MOTION FOR RECONSIDERATION OF
MOTION TO REQUEST COPIES OF ALL
PAYMENT VOUCHERS AND OTHER
PAYMENT INFORMATION FOR
SERVICES RENDERED PURSUANT TO
THE CJA

    Defendant, Daniel David Rigmaiden, appearing pro se, respectfully requests that the Court reconsider his "Motion To Request Copies Of All Payment Vouchers And Other Payment Information For Services Rendered Pursuant To The CJA" (Dkt. #144) which was dismissed through the Court's January 12, 2010 order. This motion is being made because the defendant has new information that supports a new need for the requested payment documents and this merits a reconsideration of his motion.

    LRCrim 12.2(a) requires that the undersigned include the following statement in all motions: "Excludable delay under 18 U.S.C. § 3161(h)(1)(D) will occur as a result of this motion or of an order based thereon." However, the defendant posits that this motion will not cause any "delay" and objects to any delay as a result of this motion or of an order based thereon.

1

1      This motion is supported by the memorandum of points and
2   authorities attached hereto and incorporated by this reference.
3   ///
4   ///
5   ///
6   ///
7   ///
8   ///
9   ///
10   ///
11   ///
12   ///
13   ///
14   ///
15   ///
16   ///
17   ///
18   ///
19   ///
20   ///
21   ///
22   ///
23   ///
24   ///
25   ///
26   ///
27   ///

1    I, Daniel David Rigmaiden, declare, certify, verify, and

2  state, under penalty of perjury under the laws of the United

3  States of America, that the facts contained in the foregoing

4  motion, and in any attached/incorporated memorandum, are true and

5  correct to the best of my knowledge, except as to those matters

6  which are therein stated on information and belief, and, as to

7  those matters, I believe it to be true. See 28 U.S.C. § 1746; 18

8  U.S.C. § 1621.

9

10   January 18, 2010                Florence
     [Executed On (date)]            [Executed in the City of]

11   Arizona                         United States of America
12   [Executed in the State of]      [Executed in the Country of]

13

14                                   Daniel Rigmaiden
15                                   Signature of Declarant

16                                   Daniel David Rigmaiden
                                     Aka: Steven Brawner
17                                   (detainee booked as)
                                     Agency # 10966111
18                                   CCA-CADC
                                     PO Box 6300
19                                   Florence, AZ 85132

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

                                3

1    Respectfully Submitted:  January 19, 2010

2                             DANIEL DAVID RIGMAIDEN
                             Pro Se, Defendant
3

4

5

6                             Daniel Rigmaiden
                             Daniel D. Rigmaiden
7                             Defendant

8                    CERTIFICATE OF SERVICE

9        I, Daniel David Rigmaiden, certify under penalty of perjury

10   under the laws of the United States of America (see 28 U.S.C. §

11   1746; 18 U.S.C. § 1621) that on  January 19, 2010        at

12   approximately  3:00 pm  I caused the following to be placed into

13   the CCA-CADC mailing system for United States Postal Service

14   delivery with first-class postage prepaid by CCA-CADC:

15   Original attached document plus  1  copy(s) addressed to:

16   Clerk, United States District Court
     Sandra Day O'Connor U.S. Courthouse, Suite 130
17   401 W. Washington St., SPC 1
     Phoenix, AZ 85003
18

19   One copy each of original document addressed to:

20   Frederick A. Battista

21   Two Renaissance Square

22   40 North Central Ave, Suite 1200

     Phoenix, AZ 85006
23
     cc: Seplow
24

25

26

27   By: Daniel Rigmaiden

                              4

## MEMORANDUM OF POINTS AND AUTHORITIES

**Motion For Reconsideration Of Motion To Request Copies Of All Payment Vouchers And Other Payment Information For Services Rendered Pursuant To The CJA**

### I. INTRODUCTION

The defendant needs copies of the unredacted billing statements and payment vouchers submitted to the Court by all of his previous defense attorneys and current advisory counsel, Philip Seplow ("Seplow"). This includes, but is not limited to, all unredacted itemized billing statements and payment vouchers submitted on behalf of all defense service providers such as the Teris copy and print service, paralegal Laurianne Litzau ("Litzau"), and computer specialist Lonnie Dworken ("Dworken").

The defendant has new information that supports a new need for the requested documents and this merits a reconsideration of his "Motion To Request Copies Of All Payment Vouchers And Other Payment Information For Services Rendered Pursuant To The CJA." The defendant has evidence that advisory counsel Seplow and paralegal Litzau have used the secrecy of their billing practices to manipulate the defendant after he decided to proceed pro se.

Seplow and Litzau manipulated the defendant into believing that there were no funds available to cover the cost of printing the case laws and other resources that are unavailable at the CCA-CADC law library. The requested case laws and other resources are vital to the defendant's personal pro se defense. Through their manipulative actions, Seplow and Litzau enroached upon the defendant's Faretta rights. If their billing practices remain secret then Seplow and Litzau will have the ability to further manipulate the defendant

and enroach upon his Faretta rights.

The defendant has an additional need for copies of all unredacted itemized billing statements and payment vouchers. The defendant needs the payment information so that he may verify what work has been done regarding his defense before he proceeded pro se. The defendant will compare the unredacted billing statements and payment vouchers to defense team work product provided to the defendant by Seplow. By making this comparison, the defendant will be able to ascertain if additional work product needs to be provided. Likewise, this same comparison method will apply to future work product.

## II. PROCEDURAL HISTORY

### A. The defendant filed a motion requesting copies of all payment vouchers and other payment information.

On September 4, 2009, the defendant filed his pro se "Motion To Request Copies Of All Payment Vouchers And Other Payment Information For Services Rendered Pursuant To The CJA" ("motion for vouchers") (Dkt. #144). The defendant filed his motion for vouchers while represented by Seplow--before Seplow became the defendant's advisory counsel. In a letter dated September 24, 2009, Seplow informed the defendant that the Court will not consider his motion for vouchers.

### B. The defendant filed a mandamus action in the Ninth Circuit asking that the District of Arizona be commanded to comply with 18 U.S.C. § 3006A and provide the defendant with copies of all payment vouchers.

On October 8, 2009, the defendant filed his "Petition For Writ Of Mandamus Pursuant To Fed. R. App. P. 21(c) And 28 U.S.C. 1651" ("mandamus action") with the Ninth Circuit. The defendant's mandamus

2

action was docketed on October 20, 2009 with docket No. 09-73336.
The defendant listed the District of Arizona, Roger Schroeder, and
the Criminal Justice Act Voucher Review Unit as respondents. The
defendant's mandamus action asked the Ninth Circuit to command
respondents to comply with 18 U.S.C. § 3006A(d)(4)(A) et seq. and
(e)(4) and provide the defendant with copies of all redacted/
generalized or unredacted/detailed payment vouchers for his criminal
case and for any other case that the defendant may request. On
December 10, 2009, the Ninth Circuit refused to review the
defendant's mandamus action noting that "Petitioner has not
demonstrated that this case warrants the intervention of this Court
**by means of the extraordinary remedy of mandamus."** Rigmaiden v.
United States District Court, No. 09-73336, December 10, 2009 Order
(9th Cir.) (emphasis added).

### C. The Court granted the defendant $2,500.00 in funding for the services of Teris.

On June 2, 2009, the Honorable David G. Campbell ("Judge
Campbell") signed an order ("Teris order") granting the defendant
$2,500.00 in funding for the services of Teris, a legal document
copy and print service. The actual order is attached as "Appendix
Doc. 01." The Teris order stated the following about additional
funds being approved once the initial $2,500.00 is spent:

> "Any motion seeking additional services must be
> accompanied by a detailed justification of additional
> services required and itemized statement of services to
> date." Id.

Although not entirely clear going by the master docket, the motion
asking for the Teris order was entered on June 4, 2009 (Dkt. #91)
and granted on June 4, 2009 (Dkt. #92). On July 22, 2009, the Court

3

granted Mark Paige ("Paige"), the defendant's previous attorney, the authority to pay Teris $1,825.36 for services provided on June 24, 2009 (Dkt. #125). On August 26, 2009, the Court processed the CJA voucher for $1,825.36 for services rendered by Teris (Dkt. #141). There are no other expenses or billings that resulted from services rendered by Teris and there remains to be spent $674.64 of the approved $2,500.00.

### D. The defendant was granted leave to proceed pro se and was provided with a copy of the Court's version of the master docket.

At the January 7, 2010 court hearing, Judge Campbell granted the defendant leave to proceed pro se. At the hearing, Judge Campbell provided the defendant with a copy of the Court's version of the master docket. This version of the master docket has additional information such as the exact amounts paid out for services rendered by the defendant's attorneys, paralegal, and other defense service providers.

### E. Philip Seplow filed an ex parte motion asking for additional funds for the services of Teris.

On December 17, 2009, Seplow filed his "Ex Parte Motion For Additional Funds For Duplicating Services" (Dkt. #164). Seplow failed to follow the instructions in the previous Teris order requiring that any additional request for services be supported by a detailed funding justification and itemized statement of services provided to date. At the January 7, 2010 court hearing, Judge Campbell denied Seplow's motion for additional funds due to his failure to justify and itemize the requested services. Judge Campbell blamed the defendant for the failures of Seplow and

4

indicated that Seplow should teach the defendant the correct way to file ex parte motions that request additional funds. Judge Campbell's statements at the January 7, 2010 court hearing indicated that he believed the defendant was the author of Seplow's faulty motion. Seplow did not correct Judge Campbell's misconceptions and allowed the record to be polluted.

### F. The defendant's motion for vouchers was considered and denied by the Court.

At the January 7, 2010 hearing, and after the defendant was granted leave to proceed pro se, Judge Campbell denied the defendant's motion for vouchers. Judge Campbell denied the motion because he did not want to require Voucher personnel to spend the resources required to copy and redact the payment documents for the defendant.

### G. The defendant filed an addendum to his motion for vouchers.

On the filing date of this motion, the defendant filed his "Addendum To Motion To Request Copies Of All Payment Vouchers And Other Payment Information For Services Rendered Pursuant To The CJA." The addendum updates the motion so that it (1) asks that it be granted instead of denied, and (2) asks that the payment information be provided in unredacted form.

### H. The amounts billed to and paid by the Court for services rendered by the defendant's attorneys and defense service providers.

#### 1. Tom Crowe, attorney.

Amount billed: $5,924.85
            (Dkt. #128)

Amount paid  : $0.00

5

### 2. Mark Paige, attorney.

Amount billed: $3,191.00
(Dkt. #95, #93, #124 and #143)

Amount paid  : $3,212.00
(Dkt. #113 and #123)

### 3. Lonnie Dworken, computer specialist.

Amount billed: $4,962.00
(Dkt. #126 and #146)

Amount paid  : $4,942.00
(Dkt. #139 and #158)

### 4. Laurianne Litzau, paralegal.

Amount billed: $27,303.31
(Dkt #148 and #165)

Amount paid  : $10,387.23
(Dkt. #169)

### 5. Philip Seplow, attorney.

Amount billed: $8,239.00
(Dkt. #150)

Amount paid  : $8,111.50
(Dkt. #157)

### 6. Teris, copy and print service.

Amount billed: $1,825.36
(Dkt. #125)

Amount paid  : $1,825.36
(Dkt. #141)

## III. STATEMENT OF FACTS

### A. Philip Seplow and Laurianne Litzau.

#### 1. The understanding between Philip Seplow and the defendant that case laws and other resources would be provided to the defendant.

On July 30, 2009, Seplow was appointed as the defendant's attorney. After meeting with the defendant, Seplow agreed to let the defendant participate intelligently in his defense. Seplow

realized that the defendant had amassed a significant amount of knowledge regarding Fourth Amendment issues and the evolving area of the law regarding cell site information. Seplow agreed to provide the defendant with print-outs of case laws and other resources that were not available at the CCA-CADC law library. It was understood between Seplow and the defendant that the defendant would study the case laws and other resources in order to provide Seplow with leads regarding various defense strategies. The above noted understanding applied before the defendant began representing himself.

On September 3, 2009, the defendant mailed Seplow a letter that contained 21 specific requests that would result in various case laws and other resources being located that would be useful to the defendant's defense. Many of the requests were for simple "Loislaw" key word searches. Other requests were for PACER documents and website resources for which the defendant provided exact case numbers and addresses.

On October 11, 2009, the defendant mailed Seplow a list of case laws and other resources that would be useful to the defendant's defense. The list had an "X" next to each case law or resource that the defendant already had access to and a blank box next to each case law or resource that the defendant still needed. There were 31 case laws or resources that the defendant was asking for. Many of the case laws were vital Supreme Court cases. The defendant asked Seplow to provide the list to Litzau so that she could obtain the case laws and other resources for the defendant. Seplow informed the defendant at numerous legal visits that getting

7

the defendant the case laws and other resources would not be a problem.

Seplow and Litzau have provided the defendant with various case law print-outs, however, and very oddly, the majority were cases that the defendant specifically indicated he already had access to at the CCA-CADC law library.

### 2. Seplow and Litzau manipulated the defendant through secret billing practices.

In a letter dated November 27, 2009, the defendant informed Seplow that he will be proceeding pro se. In that same letter, the defendant asked Seplow to bring to the defendant the work product that resulted from the $20,000.00 that Seplow previously indicated that Litzau was charging to the Court. The defendant made this request so that he could use the work product to aid in establishing his personal pro se defense strategies.

On December 11, 2009, the defendant, Seplow and Litzau had an "in person" legal visit at CCA-CADC. The legal visit occured at "visitation 3" from roughly 9:05am to 9:45am. The defendant composed a "legal visit log" of the matters discussed and the events that took place during the legal visit. The log was drafted immediately after the conclusion of the legal visit. Attached as "Exhibit 01" is an affidavit signed by the defendant regarding the legal visit. At the legal visit, the defendant asked Seplow and Litzau why he has not been provided with the case laws and other resources that he had requested on September 3, 2009 and October 11, 2009. Seplow and Litzau informed the defendant that the $2,500.00 in funding for copy and print services, approved through the original Teris

order, had been completely spent. Seplow and Litzau informed the defendant that an ex parte motion requesting additional funds for the services of Teris was filed in mid October of 2009. Litzau informed the defendant that the Court had not ruled on the motion yet and that she and the defendant would get in trouble if she prints documents at 15 cents a page (her price) compared to the Teris price of 5 cents a page. Seplow and Litzau informed the defendant that the reason Litzau had not provided him with the requested case laws and other resources is because the Court has not yet ruled on the motion requesting additional funds.

Litzau informed the defendant that it is standard practice for the Court to ignore ex parte motions, asking for additional funds, for months at a time. The defendant informed Seplow and Litzau that he planned to file a motion about the Court's failure to timely rule on such essential motions. Seplow informed the defendant that filing such a motion would be a good idea.

In a letter dated December 12, 2009, the defendant asked Seplow for a copy of the mid October 2009 ex parte motion requesting additional funds for a copy service. The letter is attached as "Exhibit 02." Seplow failed to respond to the letter and never addressed the issue either in writing or verbally.

On roughly December 17, 2009, Seplow drafted and filed his "Ex Parte Motion For Additional Funds For Duplicating Services" (Dkt. #164). Seplow drafted his motion in such a way that would require Judge Campbell to deny it.

### 3. Philip Seplow has provided the defendant with no work product.

9

Seplow has not provided the defendant with any work product generated by himself, past attorneys, or any of the defense service providers. Seplow has not accounted for the amounts billed to the Court outlined in section II(H) of this memorandum. At the same time this motion was filed, the defendant filed his "Ex Parte Motion Requesting That The Court Order Philip Seplow To Identify And Provide The Defendant With All Work Product."

## IV. ARGUMENT

The defendant has a need to be provided with copies of all past and future unredacted itemized billing statements and payment vouchers for numerous reasons. Many of those reasons are outlined below. One additional reason that is worth mentioning, yet not substantiated enough to go into detail, is the fact that this situation has undertones of broad reaching RICO violations.

### A. The need to avoid future manipulation tactics.

Seplow and Litzau manipulated the defendant into believing that there were no funds available to cover the cost of printing the case laws and other resources that are unavailable at the CCA-CADC law library. Seplow and Litzau manipulated the defendant into believing that additional funds had been requested and were forthcoming. Through their maniplulative actions, Seplow and Litzau prevented the defendant from accessing vital information that he needs to put forth his personal pro se defense. Seplow and Litzau enroached upon the defendant's Faretta rights.

After the defendant requested that he be provided with an explanation as to why Seplow and Litzau have not provided him with the requested case laws and other resources, and after the

10

defendant requested that he be shown the work product that resulted
from the $20,000.00 that Litzau was charging to the Court, Seplow
and Litzau engaged in the following manipulative actions:

1) On December 11, 2009, Seplow and Litzau informed the
defendant that there were no funds left from the $2,500.00 approved
for the services of Teris. Seplow and Litzau informed the defendant
that the lack of funds was partially the reason why they could not
provide him with the requested case laws and other resources. In
actuality, there was still $647.64 of Teris funds left that could
have been used to print case laws and other resources for the
defendant.

2) On December 11, 2009, Seplow and Litzau informed the
defendant that in mid October of 2009 Seplow filed a motion
requesting additional funds for the services of Teris. In actuality,
Seplow never filed the motion.

3) On December 11, 2009, Seplow and Litzau informed the defendant
that the Court has not ruled on the motion requesting additional
funds for the services of Teris and that it is common for the Court
to ignore motions asking for additional funds for months at a time.
Seplow and Litzau informed the defendant that the Court's failure
to rule on the motion was partially the reason why they could not
provide him with the requested case laws and other resources. In
actuality, there was no motion for the Court to ignore or rule on.

4) Seplow ignored the defendant's December 12, 2009 written
request for a copy of the mid October 2009 motion requesting
additional funds for the services of Teris. Instead, Seplow
attempted to cover his previous lie by filing his December 17, 2009

11

"Ex Parte Motion For Additional Funds For Duplicating Services"
and drafted it in such a way that required Judge Campbell to deny
it.

5) On January 7, 2010, Seplow misled the Court into believing
that the defendant filed Seplow's faulty December 17, 2009 "Ex
Parte Motion For Additional Funds For Duplicating Services." Seplow
sat and said nothing while Judge Campbell indicated that the
defendant had personally filed Seplow's faulty motion. Seplow sat
and said nothing while Judge Campbell lectured the defendant on the
proper way to file a motion. Seplow sat and said nothing while
Judge Campbell advised the defendant to get together with Seplow so
that he may teach the defendant the correct way to file ex parte
motions that request additional funds.

One lie certainly leads to another. Seplow and Litzau used a
series of manipulation tactics to avoid having to provide the
defendant with the requested case laws and other resources that are
unavailable at the CCA-CADC law library. If their billing practices
continue to remain secret then Seplow and Litzau will have the
ability to further control what information the defendant receives.
By secretively controlling the flow of information to the
defendant, Seplow and Litzau will be able to control the defendant's
personal pro se defense.

B. **The need to obtain and verify work product.**

The defendant needs the unredacted itemized billing statements
and payment vouchers so that he may properly request work product
from Seplow and verify that all work product has been provided.
Most importantly, the defendant needs to request and verify all

work product that resulted from the $27,303.31 billed to the Court by Litzau and the $5,924.85 billed to the Court by Tom Crowe. The defendant currently has no information regarding what work Litzau and Tom Crowe have done. The unredacted itemized billing statements and payment vouchers will solve this problem.

The defendant needs all work product generated by all of his previous attorneys and by all defense service providers so that he may use it to aid in establishing his personal pro se defense strategies. Seplow is yet to account for the $51,345.52 billed to the Court on behalf of himself, previous attorneys, and defense service providers. See section II(H) of this memorandum and the defendant's "Ex Parte Motion Requesting That The Court Order Philip Seplow To Identify And Provide The Defendant With All Work Product" filed on the filing date of this motion.

### C. The need to justify funds for additional services.

The defendant needs the unredacted itemized billing statements and payment vouchers so that he may comply with the Court's orders to justify additional services and itemize the services that were provided previously. For Example, the Teris order stated the following:

> "Any motion seeking additional services must be accompanied by a detailed justification of additional services required and itemized statement of services to date." Id.

Seplow's faulty December 17, 2009 motion, requesting additional funds for the services of Teris, failed to comply with the Teris order as quoted above. As a result, Judge Campbell denied the motion. The defendant needs the unredacted itemized billing statements and

13

payment vouchers so that he may have access to the information
needed to justify additional funds for defense service providers.

Considering Seplow sabotaged his December 17, 2009 motion
requesting additional funds for the services of Teris, the defendant
will not authorize Seplow to file any motions whatsoever. In fact,
Seplow's December 17, 2009 motion was not authorized and considering
Seplow drafted it in such a way where Judge Campbell was required
to deny it, the defendant's Faretta rights, due process rights, and
speedy trial rights were violated.

Seplow stated in his December 14, 2009 "Motion For Determination
Of Counsel" (Dkt. #162) that he will "file no motions unless
requested by Mr. Rigmaiden and approved by the Court." Id. On the
filing date of this motion, the defendant filed his "Ex Parte Motion
For Court Order Requiring Philip Seplow To Not File Any Motions At
All." Considering Seplow's unwillingness to draft proper motions,
and considering Seplow used his faulty motion to manipulate the
defendant, the defendant will be filing all motions from this point
forward and this includes all ex parte motions requesting additional
funds for defense service providers. The defendant will be unable
to file these motions without the unredacted itemized billing
statements and payment vouchers.

> D. **Considering there is no need for redaction, Judge
> Campbell's reason for denying the defendant's
> motion for vouchers is a non issue.**

Judge Campbell denied the defendant's motion for vouchers
because he did not want to require Voucher personnel to spend the
resources required to copy and redact the payment documents for
the defendant. The defendant needs the unredacted itemized billing

statements and payment vouchers in order to prevent his Faretta rights from being violated. See sections IV(A), (B) and (C) of this memorandum. The only resources that Voucher personnel will have to spend is pressing the "copy" button on a copy machine.

Sections (d)(4)(B), (C) and (E) of 18 U.S.C. § 3006A indicate that the redaction process is used to protect the "defendant's interests." Those interests are outlined in 18 U.S.C. § 3006A(d)(4)(D):

> "**Considerations.**--The interests referred to in subparagraphs (B) and (C) are--
> (i) to protect any person's 5th amendment right against self-incrimination;
> (ii) to protect the defendant's 6th amendment rights to effective assistance of counsel;
> (iii) the defendant's attorney-client privilege;
> (iv) the work product privilege of the defendant's counsel;
> (v) the safety of any person; and
> (vi) any other interest that justice may require, except that the amount of the fees shall not be considered a reason justifying any limited disclosure under section 3006A(d)(4) of title 18, United States Code.
> " Id.

The "defendant's interests" outlined above apply when payment vouchers are released to the public. They do not apply when payment vouchers are released to a defendant's attorney or to the defendant himself. For the present case, the defendant is both the defendant and the defendant's attorney considering he is representing himself. The redaction process simply does not apply to the present situation. Furthermore, the defendant will have no reason to reveal the contents of the unredacted itemized billing statements and payment vouchers if it will jeopardize his defense. The defendant needs the unredacted itemized billing statements and payment vouchers so that he can avoid violations of his Constitutional right to represent

15

himself. The Criminal Justice Act and 18 U.S.C. 3006A et seq. must be contrued in a way that does not cause an invalidation of a Constitutional right.

## V. CONCLUSION

The defendant is appearing pro se and has no formal legal training whatsoever. The Supreme Court requires that the Court hold the defendant's motion "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972).

Based on the facts, points and authorities set forth herein, the defendant respectfully requests that this motion be granted and that the defendant's "Motion To Request Copies Of All Payment Vouchers And Other Payment Information For Services Rendered Pursuant To The CJA," along with the "Addendum To Motion To Request Copies Of All Payment Vouchers And Other Payment Information For Services Rendered  Pursuant To The CJA," be granted as well.

///
///
///
///
///
///
///
///
///
///

16

EXHIBIT 01

## SWORN AFFIDAVIT

RE: Manipulation tactics by Philip Seplow and Laurianne Litzau
    used to enroach upon my Faretta rights.

Affiant's Name: Daniel David Rigmaiden

Hereby States:

After being appointed as my attornet, Philip Seplow ("Seplow")
agreed to obtain for me various print-outs of case laws and other
resources that are unavailable at the CCA-CADC law library. It was
understood between Seplow and myself that I would study the case
laws and other resources in order to provide Seplow with leads
regarding various defense strategies. The above noted understanding
applied before I began representing myself.

On September 3, 2009, I mailed Seplow a letter that contained
21 specific requests that would result in various case laws and
other resources being located that would be useful to my defense.
Many of the requesteds were for simple "Loislaw" key word searches.
Other requests were for PACER documents and website resources for
which I provided exact case numbers and addresses.

On October 11, 2009, I mailed Seplow a list of case laws and
other resources that would be useful to my defense. The list had an
"X" next to each case law or resource that I already had access to
and a blank box next to each case law or resource that I was asking
for. Many of the case laws were vital Supreme Court cases. I asked
Seplow to provide the list to Litzau so that she could obtain the
case laws and other resources for me. Seplow informed me at
numerous legal visits that getting me the case laws and other
resources would not be a problem.

1

Seplow and Litzau have provided me with various case law print-outs, however, and very oddly, the majority were cases that I specifically indicated I already had access to at the CCA-CADC law library. I was only provided with 8 cases out of 31 cases that I specifically requested on October 11, 2009. My previous request made on September 3, 2009 was completely ignored.

On December 11, 2009, myself, Seplow and Seplow's paralegal, Laurianne Litzau ("Litzau"), had an "in person" legal visit at CCA-CADC. The legal visit occured at "visitation 3" from roughly 9:05am to 9:45am. At the legal visit, I asked Seplow and Litzau why I have not been provided with the case laws and other resources that I had requested on September 3, 2009 and October 11, 2009. Seplow and Litzau informed me that the $2,500.00 in funding for the services of Teris (a legal document copy and print service), approved through the June 4, 2009 ex parte order (see Dkt. #91, #92, #125 and #141 for case No. CR08-814-PHX-DGC out of the District of Arizona), had been completely spent. Seplow and Litzau informed me that an ex parte motion requesting additional funds for the services of Teris was filed in mid October of 2009. Litzau informed me that the Court had not ruled on the motion yet and that she and I would get in trouble if she prints documents at 15 cents a page (her price) compared to the Teris price of 5 cents a page. Seplow and Litzau informed me that the reason Litzau had not provided me with the requested case laws and other resources is because the Court has not yet ruled on this motion requesting additional funds.

Litzau informed me that it is standard practice for the Court to ignore ex parte motions, asking for additional funds, for months

2

at a time. I informed Seplow and Litzau that I planned to file a motion about the Court's failure to timely rule on such essential motions. Seplow informed me that filing such a motion would be a good idea.

On January 7, 2010, after reading the master docket, it came to my attention that Seplow never filed the mid October 2009 ex parte motion requesting additional funds for the services of Teris and that there was still $674.64 left to be spent. It also then came to my attention that Seplow filed his "Ex Parte Motion For Additional Funds For Duplicating Services" on December 17, 2009, just 6 days after he concocted his story at the December 11, 2009 legal visit. It was also then that I realized Seplow had set me up to take the blame for the mistakes in his December 17, 2009 ex parte motion--as should be evident going by the January 7, 2010 court hearing transcripts for the hearing that occured at the federal courthouse in Phoenix, Arizona.

[ see page # 4 for my signed and notarized affirmation statement]

///

///

///

///

///

///

///

///

///

///

3

I, Daniel David Rigmaiden, being first sworn under oath, swear and affirm, under penalty of perjury under the laws of the United States of America, that the facts contained in the foregoing are true and correct to the best of my knowledge, except as to those matters which are therein stated on information and belief, and, as to those matters, I believe it to be true.

January 19, 2010
_____
Executed On

Daniel Rigmaiden
_____
Signature of Affiant

Subscribed and sworn to before me this ___19th___ day of

January_____, 2010.

_____
Notary Public

R. H. MILLAS
Notary Public - Arizona
PINAL COUNTY
My Comm. Exp. 08-07-10

_____
My Commission Expires

STATE OF ARIZONA      )
                      ) ss.
COUNTY OF PINAL       )

///

///

///

///

///

///

4

EXHIBIT 02

TO: Philip Seplow, Attorney                    12-12-2009

FROM: Daniel Rigmaiden

RE: Request for discovery letters sent to Battista, and request for Ex parte motion asking for copy service funds

     This is an urgent matter. Will you please mail me copies of all discovery requests you have sent to Battista and copies of his replies? I need them in order to address the court regarding the problems with discovery. Will you please mail me a copy of the Ex Parte motion asking for funds for a copy service? I need the motion so that I may address the court regarding the court's failure to timely rule on such crucial motions. Thank-you.

Daniel Rigmaiden



INCARCERATED DETAINEE REDACTS WITH MAGAZINE SCRAPS

APPENDIX

APPENDIX DOCUMENT 01

MAY 2 6 2009

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES,<br><br>                           Plaintiff,<br><br>v.<br><br>Daniel Rigmaiden,<br><br>                           Defendant. | No.: CR-08-814-PHX-DGC<br><br>ORDER<br><br>**SEALED**<br><br>(Under Seal) |

Upon motion of the defendant and good cause appearing:

IT IS HEREBY ORDERED authorizing funding for the services of TERIS. Compensation not to exceed $2,500.00 excluding documentable expenses which have been properly documented. The funds authorized herein are authorized for duplication of materials.

IT IS FURTHER ORDERED that no additional services will be authorized without further order of this Court. Any motion seeking additional services must be accompanied by a detailed justification of additional services required and itemized statement of services provided to date. Authorization for services does not constitute payment approval.

IT IS ORDERED that defense counsel supply a copy of this order to the TERIS.

IT IS HEREBY ORDERED that the Clerk of the Court serve a copy of this order only upon defense counsel and maintain this order under seal.

6/2/09          David G. Campbell

CC: DFNS-Paige, CJA