1 | **Daniel Rigmaiden**
Agency # 10966111
2 | CCA-CADC
PO Box 6300
3 | Florence, AZ 85132
Telephone: none
4 | Email: none

5 | Daniel David Rigmaiden
Pro Se, Defendant

6 |

FILED ___ ✓ LODGED
___ RECEIVED ___ COPY

MAR 1 9 2010

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ B. DEPUTY

### UNITED STATES DISTRICT COURT

### DISTRICT OF ARIZONA

| United States of America, | ) | No. CR08-814-PHX-DGC |
| | ) | |
| Plaintiff, | ) | EX PARTE MOTION TO ADVISE THE |
| | ) | COURT ON WHAT THIS DEFENDANT |
| v. | ) | IS ENTITLED TO WHILE |
| | ) | REPRESENTING HIMSELF IN THE |
| Daniel David Rigmaiden, | ) | NINTH CIRCUIT |
| | ) | |
| Defendant. | ) | **SEALED** |
| | ) | |

Defendant, Daniel David Rigmaiden, appearing pro se, respectfully submits this motion to advise the Court on what he is entitled to while representing himself in a court under the jurisdiction of the Ninth Circuit Court of Appeals. This motion does not request any specific relief. Instead, this motion will be incorporated by reference into other ex parte motions that request specific relief.

The defendant is appearing pro se and has no formal legal training whatsoever. The defendant's filings, however inartfully pleaded, must be liberally construed and held to less stringent standards than formal pleadings drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972).

This motion is supported by the memorandum of points and authorities attached hereto and incorporated by this reference.

1

1  LRCrim 12.2(a) requires that the undersigned include the
2  following statement in all motions: "Excludable delay under
3  18 U.S.C. § 3161(h)(1)(D) will occur as a result of this motion or
4  of an order based thereon." However, the defendant posits that
5  this motion will not cause any "delay" and objects to any delay as
6  a result of this motion or of an order based thereon.
7  ///
8  ///
9  ///
10  ///
11  ///
12  ///
13  ///
14  ///
15  ///
16  ///
17  ///
18  ///
19  ///
20  ///
21  ///
22  ///
23  ///
24  ///
25  ///
26  ///
27  ///

1    I, Daniel David Rigmaiden, declare, certify, verify, and

2  state, under penalty of perjury under the laws of the United

3  States of America, that the facts contained in the foregoing

4  motion, and in any attached/incorporated memorandum, are true and

5  correct to the best of my knowledge, except as to those matters

6  which are therein stated on information and belief, and, as to

7  those matters, I believe it to be true. See 28 U.S.C. § 1746; 18

8  U.S.C. § 1621.

9

10  March 14, 2010                    Florence
    [Executed On (date)]              [Executed in the City of]

11

12  Arizona                           United States of America
    [Executed in the State of]        [Executed in the Country of]

13

14                                    Daniel Rigmaiden

15                                    Signature of Declarant

16                                    Daniel David Rigmaiden
                                      Agency # 10966111
17                                    CCA-CADC
                                      PO Box 6300
18                                    Florence, AZ 85132

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

                            3

Respectfully Submitted: _March 17 , 2010_

DANIEL DAVID RIGMAIDEN
Pro Se, Defendant


_Daniel Rigmaiden_
Daniel D. Rigmaiden
Defendant

## CERTIFICATE OF SERVICE

I, Daniel David Rigmaiden, certify under penalty of perjury under the laws of the United States of America (see 28 U.S.C. § 1746; 18 U.S.C. § 1621) that on _March 17 , 2010_ at approximately _6:00pm_ I caused the following to be placed into the CCA-CADC mailing system for United States Postal Service delivery with first-class postage prepaid by CCA-CADC:

Original attached document plus _1_ copy(s) addressed to:

Clerk, United States District Court
Sandra Day O'Connor U.S. Courthouse, Suite 130
401 W. Washington St., SPC 1
Phoenix, AZ 85003

One copy each of original document addressed to:

_Philip Seplow_
_2000 North 7th St._
_Phoenix, AZ 85006_
_____
_____
_____
_____
_____

By: _Daniel Rigmaiden_

4

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

EX PARTE MOTION TO ADVISE THE COURT ON WHAT THIS DEFENDANT
IS ENTITLED TO WHILE REPRESENTING HIMSELF IN THE NINTH CIRCUIT

CR08-814-PHX-DGC

United States v. Rigmaiden        

TABLE OF CONTENTS

Page(s)

TABLE OF CITATIONS ...................................... i-ii

TABLE OF EXHIBITS ..................................... iii-iv

I.      INTRODUCTION ..................................... 1

II.     STATEMENT OF FACTS ............................... 4

        A.   The pro se defendant is incarcerated without
             meaningful access to legal resources, without
             effective use of a telephone, and without
             effective use of outgoing legal mail. ............... 4

             1. The CCA-CADC law library lacks adequate
                legal resources. ............................ 4

             2. The defendant's court appointed paralegal has
                never been willing to work with the defendant. ... 4

             3. The defendant is without effective use of a
                telephone. .................................. 7

             4. The defendant is without effective use of
                outgoing legal mail. ......................... 8

        B.   The defendant lacks the needed training in
             private investigations, surveillance, and mobile
             telecommunications. ............................. 10

        C.   The Court stated that the defendant would be held
             to the same rules, procedures, and standards that
             are held to lawyers. ............................ 12

III.    ARGUMENT ........................................ 13

        A.   The Court is imposing an unconstitutional
             condition upon the defendant's right to proceed
             pro se. ......................................... 13

        B.   The defendant's direct Fifth and Sixth Amendment
             rights are being violated and he need not comply
             with the "actual injury" requirement of Lewis v.
             Casey. .......................................... 14

        C.   The defendant needs meaningful access to legal
             resources, preferably through a paralegal, to
             make up for the substandard CCA-CADC law
             library. ........................................ 16

             1. The substandard CCA-CADC law library. .......... 18

2. The defendant's current court appointed paralegal has never been willing to work with him. ......................................... 19

D. The defendant needs assistance from a qualified private investigation firm and from other experts. .......................................... 20

E. The defendant needs to choose which defense service providers will join his defense team. ...... 21

F. The defendant needs to be able to make non-collect and unrecorded outgoing legal phone calls from the CCA-CADC detainee phones. .......... 22

G. The defendant needs to be able to send out legal mail from CCA-CADC despite his indigent status. .... 24

IV.   CONCLUSION ............................................ 26

## TABLE OF CITATIONS

Cases                                                                    Page(s)

Benjamin v. Fraser,
264 F.3d 175 (2nd Cir. 2001) ................................... 15

Bounds v. Smith,
430 U.S. 817 (1977) ...................................... 16, 19, 24

Bourgeois v. Peters,
387 F.3d 1303 (11th Cir. 2004) ................................ 13

Faretta v. California,
422 U.S. 806 (1975) ...................................... 2, 13, 15

Harris v. Maloughney,
827 F.Supp. 1488 (D. Mont. 1993) ............................. 22

Housley v. Killinger,
747 F.Supp. 1405 (D. Or. 1990), aff'd 972 F.2d 1339
     (9th Cir. 1992) ........................................... 18

Johnson v. Moore,
948 F.2d 517 (9th Cir. 1991) .................................. 18

Kaiser v. County of Sacramento,
780 F.Supp. 1309 (E.D. Cal. 1991) ............................ 17

Lewis v. Casey,
518 U.S. 343 (1996) ........................................... 15

Lindquist v. Idaho State Bd. of Corrections,
776 F.2d 851 (9th Cir. 1985) .................................. 19

Milton v. Morris,
767 F.2d 1443 (9th Cir. 1985) ........................... passim

Perry v. Leek,
488 U.S. 272 (1989) ........................................... 15

Phillips v. Hust,
477 F.3d 1070 (9th Cir. 2007) ............................. 23, 25

Roberts v. Lavallee,
389 U.S. 40 (1967) ........................................... 23

i

<u>Taylor v. List</u>,

880 F.2d 1040 (9th Cir. 1989) ................................... 17

<u>United States v. Wilson</u>,

690 F.2d 1267 (9th Cir. 1982) ................................... 20

<u>Statutes and Rules</u>                                    <u>Page(s)</u>

28 C.F.R. § 540.102 (2006) ...................................... 23

<u>Other Authorities</u>

Special Interest Section, American Assn of Law Libraries,
      Recommended Collection for Prison Law Libraries,
      91-96 (1989) .............................................. 19

## TABLE OF EXHIBITS

Exhibit                                                                Page(s)

Exhibit, 01 - Defendant's CCA-CADC grievance RE: substandard
    CCA-CADC law library ...................................... 4

Exhibit, 02 - Declaration by Marcos Fernando Duron Gonzales
    RE: substandard CCA-CADC law library ....................... 4

Exhibit, 03 - Section of CCA-CADC United States Marshal
    Service Inmate Handbook RE: CCA-CADC provides both a law
    library and a person trained in the law ................... 5

Exhibit, 04 - Section of CCA Corporate And Facility Policy
    RE: how contract attorney/paralegal services are
    implemented at CCA-CADC ................................... 5

Exhibit, 05 - Declaration by Mario Bernadel RE: failed
    attempt to contact CCA-CADC's contract attorney ............ 5

Exhibit, 06 - Section of CCA-CADC United States Marshal
    Service Inmate Handbook RE: procedures for detainees to
    follow to ensure legal calls are not recorded at CCA-CADC ... 7

Exhibit, 07 - Defendant's CCA-CADC request forms asking that
    his legal phone numbers be added to the CCA-CADC "do not
    record list" .............................................. 7

Exhibit, 08 - Section of CCA Corporate And Facility Policy
    RE: CCA-CADC provides indigent detainees with 5 ounces of
    free legal mail postage per week or the amount regulated
    by contract ............................................... 8

Exhibit, 09 - Section of CCA-CADC United States Marshal
    Service Inmate Handbook RE: CCA-CADC provides indigent
    detainees with free legal mail postage in the amount
    regulated by contract ..................................... 8

Exhibit, 10 - Section of United States Marshals Service
    Contract, MS-99-D-0057 RE: CCA-CADC is obligated to
    provide indigent detainees with unlimited free legal mail
    postage ................................................... 8

Exhibit, 11 - Copies of defendant's legal mail envelopes that
    CCA-CADC refused to mail; copy of CCA-CADC note RE: over
    legal mail limit ...................................... 9, 10

Exhibit, 12 - Copy of defendant's envelope containing letter
    mailed to private investigator and CCA-CADC note RE:
    defendant only has 1 ounce of free legal mail postage
    left for the week ........................................ 10

Exhibit, 13 - Copies of letters from Seplow to Dworkin RE:
      setting up contact between Dworkin and defendant ........... 12

MEMORANDUM OF POINTS AND AUTHORITIES

EX PARTE MOTION TO ADVISE THE COURT ON WHAT THIS DEFENDANT
IS ENTITLED TO WHILE REPRESENTING HIMSELF IN THE NINTH CIRCUIT

## I. INTRODUCTION

The defendant is trying to prepare a Fourth Amendment defense
involving mobile telecommunications, radio technology, antenna
design, little known surveillance techniques, and an area of physics
pertaining to the electromagnetic spectrum. The defendant does not
currently have the tools necessary to prepare his own personal pro
se defense involving complex technology and an evolving area of the
law that most attorneys have no experience, i.e., warrantless cell
site information acquisition and warrantless location monitoring of
mobile telecommunications devices. In order to remedy current and
future due process violations, the defendant needs meaningful
access to more than just a few dusty old law books and an old
fashion investigator. The defendant needs access to Supreme Court
decisions, federal circuit decisions later than October 21, 2008,
Shepard's Citations or other means to research case law, a private
investigation firm with technology experience, a mobile
telecommunications expert, a surveillance expert, effective use of
a telephone, and effective use of outgoing legal mail. The defendant
does not currently have meaningful access to any of the above. If
the defendant continues to be denied the above then he will have no
opportunity to prepare his defense.

While appearing pro se in his criminal case, the defendant has
a direct Sixth Amendment right to present his own personal pro se
defense and a direct Fifth Amendment right to have meaningful access

1

to the resources, defense services, and other tools required to prepare that defense. The Ninth Circuit does not believe that "a defendant who exercises his right, under Faretta, to conduct his own defense must subject himself to the possibility that he will have, through circumstances wholly beyond his control, no opportunity to prepare that defense." Milton v. Morris, 767 F.2d 1443, 1445 (9th Cir. 1985). See also Faretta v. California, 422 U.S. 806, 819 (1975) ("the right to self-representation-to make one's own defense personally-is [] necessarily implied by the structure of the [Sixth] Amendment.").

The Court has indicated on more than one occasion that the defendant, while appearing pro se, will be held to the same rules, procedures, and standards as would be a lawyer. The Court also previously indicated that one of those standards is that it is the lawyer who decides which court appointed defense service providers will assist in the defense. The defendant has chosen defense service providers and developed solutions that will remedy all current due process violations. The defendant has located a private investigation firm that employs a computer programmer with 30 years of experience. The private investigation firm handles computer forensic investigations, financial investigations, and general investigations. The defendant has located a paralegal who is willing to communicate directly with him and provide him with the assistance he needs to make up for some of the inadequacies of the CCA-CADC law library. The defendant has established an avenue to a former C.I.A. agent with expert experience in surveillance and counter surveillance that he acquired while working for the United States

2

government. The defendant has established an avenue to the top mobile telecommunications experts in the United States. All of the above sources are aware of the defendant's case and are willing to work directly with the defendant immediately. Due to the defendant's superior ability to work with people, some of the above sources have already given the defendant minimal assistance at no cost. However, they will no longer work for free. The defendant has also developed solutions that will gain him effective use of a telephone and outgoing legal mail without placing a significant burden on CCA-CADC.

This memorandum sets out to advise the Court on what the defendant is entitled to in order to remedy current and future due process violations. This memorandum does not request any specific relief. Instead, this memorandum will be incorporated by reference into other ex parte motions that will request the relief needed in order to remedy current and future due process violations.

[ Memorandum continues on page # 4 ]

///

///

///

///

///

///

///

///

///

///

## II. STATEMENT OF FACTS

**A. The pro se defendant is incarcerated without meaningful access to legal resources, without effective use of a telephone, and without effective use of outgoing legal mail.**

The defendant is currently incarcerated at Corrections Corporation of America, Central Arizona Detentoin Center (CCA-CADC). The defendant has "indigent status" at CCA-CADC with a total of $0.08 in his detainee trust account. The defendant has been representing himself since January 7, 2010. Attorney Philip Seplow ("Seplow") is acting as the defendant's shadow counsel.

### 1. The CCA-CADC law library lacks adequate legal resources.

As a pro se detainee, the defendant has access to the CCA-CADC law library. The CCA-CADC law library lacks the legal resources required for the defendant to adequately prepare his own personal pro se defense. In November/December of 2008, the CCA-CADC law library received volume 544 of the Federal Reporter 3d Series. Volume 544 was the last volume received of the series. The CCA-CADC law library continues to be lacking in resources. The CCA-CADC law library has absolutely no Supreme Court decisions, no federal circuit decisions later than October 21, 2008, no Shepard's Citations later than the year 2002 or any other meaningful way to search or cross reference recent case laws. Attached as "Exhibit 01" is a grievance filed by the defendant regarding the lack of legal resources at the CCA-CADC law library. The grievance process has been fully exhausted. Attached as "Exhibit 02" is a declaration under penalty of perjury, by CCA-CADC detainee Marcos Fernando Duron Gonzales, regarding the lack of legal resources at the CCA-CADC law

4

library.

Attached as "Exhibit 03" is a section of the "Central Arizona Detention Center United States Marshal Service Inmate Handbook" explaining that CCA-CADC provides both a law library and a person trained in the law to assist detainees:

> "The U.S. Supreme Court in Bounds v. Smith allows a prison to meet the access to courts requirement by the use of a law library, a person trained in the law, or a combination of both. This facility has both." Id., April 1, 2008.

Attached as "Exhibit 04" is a section of the "CCA Corporate And Facility Policy" explaining how contract attorney/paralegal services are implemented at CCA-CADC. CCA-CADC once employed contract attorney Michael Vincent ("Vincent") to make up for the inadequacies of the CCA-CADC law library. Vincent's employment at CCA-CADC was relinquished purportedly some time in the year 2008. Vincent's job description included assisting CCA-CADC detainees with obtaining legal resources that were unavailable in the CCA-CADC law library. On roughly August 16, 2009, CCA-CADC pro se detainee Mario Bernadel ("Bernadel") informed Assistant Warden Carmona ("Carmona") that the CCA-CADC law library lacks the legal resources he needs to collaterally attack a prior conviction. Carmona gave Bernadel forms to use to contact Vincent through the mail. Bernadel mailed Vincent the completed forms requesting assistance. The letter was returned marked "Return To Sender." Attached as "Exhibit 05" is Bernadel's declaration under penalty of perjury attesting to the above facts. Attached to the declaration are the forms referenced above and a copy of the envelope marked "Return To Sender."

> 2. The defendant's court appointed paralegal has never been willing to work with the defendant.

5

Paralegal Laurianne Litzau ("Litzau") was appointed to the defendant's case on May 21, 2009 (Dkt. #84). During the court hearing on January 7, 2010, the Court set the following unconstitutional condition on the defendant's decision to proceed pro se:

> "[G]oing forward representing yourself, you are going to be limited to the legal resources that are available at CCA or the assistance that you can obtain through Ms. Litzau." January 7, 2010 court hearing transcripts, "The Court," at 14:53:22-14:53:57.

The defendant has attempted to make effective use of Litzau's paralegal services, however, Litzau's services to the defendant are non existent. Beginning September 3, 2009, the defendant made numerous requests to Litzau for legal resources. Litzau has ignored the defendant's requests other than providing 8 case laws that are unavailable at the CCA-CADC law library.

The Court's January 21, 2010 Amended Court Order indicated that the defendant will have the following right while representing himself:

> "Defendant shall have the right to communicate directly with the paralegal..." Id. at p. 1.

On December 11, 2009, during an "in person" legal visit at CCA-CADC, Litzau informed the defendant that she has decided that she will only communicate with the defendant, while he is pro se, if he uses Seplow as an intermediary. Her decision was based on a concern that if she communicates directly with the defendant then her communications may be considered "unauthorized practice of law." Since proceeding pro se, the defendant has had no contact with Litzau.

### 3. The defendant is without effective use of a telephone.

The defendant is permitted to use detainee phones at CCA-CADC for making outgoing calls. He may make collect calls and he may make paid calls using "phone time" purchased through CCA-CADC. The defendant is indigent and has no funds to purchase "phone time." Due to his indigent status, the defendant can only make collect calls. If the receiving party does not accept the collect call then the defendant is unable to communicate.

The defendant is unable to make unmonitored legal phone calls from the detainee phones at CCA-CADC. Attached as "Exhibit 06" is a section of the "Central Arizona Detention Center United States Marshal Service Inmate Handbook" explaining the procedures that a detainee must follow to ensure that his legal phone calls are not monitored or recorded:

> "Please submit a Prisoner Information Request to the Telephone Officer with a list of any and all legal numbers that you use. They will then verify that those numbers are in our system to ensure complete privacy for you in your discussions with your attorney, as legal phone calls are not recorded. It is your responsibility to notify the Telephone Officer of any and all changes of the legal numbers that you call." Id., April 1, 2008.

On February 24, 2010, the defendant followed the above quoted procedures and submitted requests asking that 5 legal phone numbers be added to the "do not record list." CCA-CADC ignored their own policy and refused to comply with the defendant's requests. Attached as "Exhibit 07" are the request forms submitted by the defendant which also contain CCA-CADC's responses. CCA-CADC seems to be operating under the policy that the defendant needs to obtain a court order for each legal phone number he wishes to add to the "do

not record list."

                    **4. The defendant is without effective use of**
                       **outgoing legal mail.**

Attached as "Exhibit 08" is a section of the "CCA Corporate And Facility Policy" explaining that CCA-CADC only provides postage for legal mail to indigent detainees in an amount equal to 5 one ounce letters per week (i.e., $2.20). However, directly below that policy statement is an additional policy statement:

"AT THIS FACILITY, ADDITIONAL PROCEDURES REGARDING ACCESS TO COURTS ARE AS FOLLOWS:

THE CENTRAL ARIZONA DETENTION CENTER WILL PROVIDE POSTAGE FOR PRIVILEGED MAIL TO INDIGENT INMATES/RESIDENTS IN THE AMOUNT REGULATED FOR EACH INDIVIDUAL CONTRACT." Id. at section E (emphasis in original).

Attached as "Exhibit 09" is a section of the "Central Arizona Detention Center United States Marshal Service Inmate Handbook" explaining that CCA-CADC will provide postage for indigent detainees in accordance with its contractual obligations:

"CADC will provide postage for privileged mail to indigent inmates in the amount regulated for each individual contract." Id., April 1, 2008.

The contract referenced in the above two quotes is the "United States Marshals Service Contract, MS-99-D-0057." Attached as "Exhibit 10" is a section of the "United States Marshals Service Contract, MS-99-D-0057" explaining that CCA-CADC is obligated to provide indigent detainees with unlimited postage allowance for attorney and court correspondence:

"[T]he contractor shall provide to federal prisoners who are without funds, unlimited postage allowance for attorney and court correspondence." Id. at section B.

Prior to March 2, 2010, CCA-CADC consistently covered the

postage costs for all of the defendant's outgoing indigent legal mail. However, on March 2, 2010, CCA-CADC refused to cover the postage costs of numerous motions that the defendant wished to file with the Court. On March 2, 2010, the defendant placed the following motions into the CCA-CADC mailing system for United States Postal Service delivery at CCA-CADC's expense:

1) Motion To Compel The Government To Disclose All Discovery That May Be Relevant And Material To Defendant's Motion To Suppress The Aircard Location Evidence;

2) Motion To Compel The Government To Disclose All Discovery That May Be Relevant And Material To Defendant's Motion To Suppress Evidence Seized During Execution Of The N.D.Cal. 08-70460HRL Warrant;

The above listed motions pertain to the present case. The defendant attempted to mail the motions to the defendant's shadow counsel, to the prosecutor, and to the Court. The combined weight of all 3 letters was roughly 29 ounces.

On March 6, 2010, Case Manager Millas ("Millas") informed the defendant that Mailroom Supervisor Ploof ("Ploof") refused to mail the defendant's motions at CCA-CADC's expense. Millas advised the defendant that Ploof informed him that Carmona instructed her to limit the defendant to 5 ounces of outgoing indigent legal mail per week. Millas returned to the defendant the envelopes containing the above listed motions. A fourth envelope, unrelated to the above motions, had a note attached from Ploof stating in part:

"Over mail limit for the week[.]" See Exhibit, 11.
All of the defendant's envelopes were clearly marked "PRO SE LEGAL

MAIL" and "INDIGENT." Attached as "Exhibit 11" are copies of the envelopes and the note from Ploof.

On March 7, 2010, Case Manager Romweber ("Romweber") gave the defendant a photocopy of a letter he mailed to a private investigator at FE and E, Incorporated. The photocopy is attached as "Exhibit 12." The photocopy contained a note from an unknown individual stating that the defendant had used up 4 of his 5 ounce weekly postage allowance:

> "According to Policy 14-8 3b[,] Indigent inmates will be provided up to 5oz per week of postage for legal materials. This weighed 4oz - So he only has 1oz left this week[.]" Id.

On numerous occasions, the defendant informed CCA-CADC staff that he would be willing to let them scan his outgoing legal mail in order to provide them with assurances that he is not abusing the indigent legal mail program. Likewise, the defendant has offered to take out a CCA-CADC "postal loan" and to pay back the postage costs of his indigent legal mail. CCA-CADC has refused to entertain the defendant's suggestions. CCA-CADC gave the defendant no prior warning that they were going to limit his weekly indigent legal mail postage starting March 2, 2010.

### B. The defendant lacks the needed training in private investigations, surveillance, and mobile telecommunications.

The defendant is trying to prepare a Fourth Amendment defense involving complex technology and an evolving area of the law that most attorneys have no experience, i.e., warrantless cell site location information acquisition and warrantless location monitoring of mobile telecommunications devices. The defendant has only a high school education and lacks the needed training in private

investigations, surveillance, and mobile telecommunications in order to develop the required Fourth Amendment challenges. The defendant has not had access to the defense service providers and expert witnesses needed in order to prepare his own personal pro se defense.

On April 9, 2009, the Court appointed Lonnie Dworkin ("Dworkin"), a computer forensics specialist (Dkt. #70). On May 1, 2009, while represented by his previouse attorney, Mark Paige, the defendant met with Dworkin via CCA-CADC video teleconference. The defendant has not met with Dworkin and he has not had any written or telephonic contact with Dworkin since May 1, 2009.

After May 1, 2009, both the defendant and Seplow have attempted to arrange further contact between Dworkin and the defendant. On September 9, 2009, during an "in person" legal visit at CCA-CADC, Seplow informed the defendant that he will arrange an "in person" legal visit between himself, Litzau, Dworkin, and the defendant the following week. On October 15, 2009, during an "in person" legal visit at CCA-CADC, Seplow informed the defendant that there would be an "in person" legal visit between himself, Dworkin, and the defendant in the near future. On February 11, 2010, during an "in person" legal visit at CCA-CADC, the defendant asked Seplow why he has not arranged a meeting between Dworkin and the defendant. Seplow indicated that he has been unable to arrange an "in person" legal visit between himself, Litzau, Dworkin, and the defendant due to conflicting schedules. The defendant informed Seplow that Dworkin and the defendant are the only participants that need to be present at the meeting. The defendant informed Seplow that the meeting can

occur on Dworkin's time and be either "in person" at CCA-CADC or via CCA-CADC video teleconference. Seplow informed the defendant that he will try to arrange an "in person" legal visit between Dworkin and the defendant the following week. Seplow added that it will be difficult to arrange the meeting because Dworkin has recently neglected to return his phone calls and letters.

In letters dated September 10, 2009, December 14, 2009 and February 12, 2010, Seplow attempted to arrange meetings and/or contact between Dworkin and the defendant. The letters are attached as "Exhibit 13." The letters have not resulted in any contact between Dworkin and the defendant.

On February 9, 2010, the defendant attempted to call Dworkin from a CCA-CADC staff phone. The defendant was unable to reach Dworkin. The defendant has not been able to call Dworkin again because using the CCA-CADC staff phone is now a rare privilege and the defendant does not have effective use of the CCA-CADC detainee phones.

### C. The Court stated that the defendant would be held to the same rules, procedures, and standards that are held to lawyers.

During the January 7, 2010 court hearing, the Court set the following guidelines for the defendant to follow while representing himself:

> "[Y]ou're going to be held to the same rules, procedures, and standards that a lawyer would be defending you." January 7, 2010 court hearing transcripts, "The Court," at 14:59:03-14:59:39.

During the July 17, 2009 court hearing, the Court informed the defendant that one of those standards is that it is the lawyer who

decides which court appointed defense service providers will assist in the defense.

## III. **ARGUMENT**

### A. **The Court is imposing an unconstitutional condition upon the defendant's right to proceed pro se.**

The defendant has a direct Sixth Amendment right to represent himself and a direct Fifth Amendment right to prepare his own personal pro se defense. See <u>Faretta v. California</u>, 422 U.S. 806 (1975); <u>Milton v. Morris</u>, 767 F.2d 1443 (9th Cir. 1985). The Court previously implied that a condition of the defendant proceeding pro se is that he will only have access to a substandard law library and a paralegal who has never been willing to work directly with him. The substandard CCA-CADC law library and a paralegal who refuses to communicate directly with the defendant, or provide him with case laws, are insufficient resources for the preparation of the defendant's own personal pro se defense. The Court's condition is a violation of the defendant's direct Fifth Amendment right to due process. Requiring the defendant to surrender his Fifth Amendment right in order to exercise his Sixth Amendment right is an unconstitutional condition.

"The doctrine of unconstitutional conditions prohibits terminating benefits, though not classified as entitlements, if the termination is based on motivations that other constitutional provisions proscribe." <u>Bourgeois v. Peters</u>, 387 F.3d 1303, 1324 (11th Cir. 2004) (internal citations and quotation marks omitted). In Bourgeois, the Court found that forcing someone to surrender one Contitutional right in order to exercise another Constitutional

13

right is an "especially malignant unconstitutional condition." Id.

The defendant has a direct Fifth Amendment due process right to meaningful access to legal resources, defense service providers, a telephone, and outgoing legal mail. "An incarcerated defendant may not meaningfully exercise his right to represent himself without access to law books, witnesses, or other tools to prepare a defense." Milton, 767 F.2d at 1446. The Milton Court also noted that a pro se defendant's due process rights are violated if he is "tried without having had any meaningful opportunity to prepare his defense." Id. at 1445. Taking the Bourgeois and Milton decisions in tandem, the Court is not permitted to force the defendant to agree to forego Supreme Court decisions, federal circuit decisions later than October 21, 2008, Shepard's Citations, a sufficient paralegal arrangement, a qualified private investigation firm, mobile telecommunications experts, surveillance experts, effective use of a telephone, and effective use of outgoing legal mail—all in exchange for the right to represent himself. The Court is imposing an unconstitutional condition.

**B. The defendant's direct Fifth and Sixth Amendment rights are being violated and he need not comply with the "actual injury" requirement of Lewis v. Casey.**

While preparing his own personal pro se defense for the present case, the defendant has a direct Fifth Amendment due process right to meaningful access to legal resources, defense service providers, a telephone, and outgoing legal mail. The defendant having to deal with the various inadequacies outlined in the facts section of this memorandum, including being forced to rely on the substandard CCA-CADC law library, amount to numerous due process violations.

14

Considering the defendant's direct Constitutional rights are being violated, as apposed to derivative Constitutional rights, he need not show an "actual injury" or "prejudice" for a valid claim in a civil suit or in an appeal of a conviction of his criminal charges.

In Benjamin v. Fraser, the Second Circuit analyzed whether "Lewis's standing requirement of 'actual injury' applies not just to law libraries and legal services, but to all access-to-the-courts and right-to-counsel claims." Id., 264 F.3d 175, 184-85 (2nd Cir. 2001). The Benjamin Court made the following analysis:

> "Lewis's reasoning is premised on the distinction between the standing required to assert direct constitutional rights versus the standing required to assert claims that are derivative of those rights. Because law libraries and legal assistance programs do not represent constitutional rights in and of themselves, but only the means to ensure a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts, prisoners must demonstrate 'actual injury' in order to have standing." Id. at 185 (internal citation and some quotation marks omitted); See also Lewis v. Casey, 518 U.S. 343, 351 (1996).

Applying the above, the Benjamin Court found that "[t]he right of the accused in all criminal prosecutions to have the Assistance of Counsel for his defence is a direct right" and not subject to the "actual injury" requirement of Lewis. Benjamin, 264 F.3d at 185 (internal citation, quotation marks, and alterations omitted). Moreover, in Perry v. Leek, the Supreme Court stated that denial of access to counsel for consultation "is not subject to [ ] prejudice analysis." Id., 488 U.S. 272, 278-80 (1989).

In comparison, the rights at issue in the present case are also direct Constitutional rights just like the right to assistance of counsel. According to Faretta v. California, the right to represent

15

oneself is a direct Constitutional right. See id., 422 U.S. at
819-20 ("The Sixth Amendment does not provide merely that a defense
shall be made for the accused; it grants to the accused personally
the right to make his defense.... The right to defend is given
directly to the accused..."). According to Milton v. Morris, the
right to prepare a pro se defense is also a direct Constitutional
right. See id., 767 F.2d at 1445 ("The right guaranteed by the
fourteenth [or Fifth] and sixth amendment to reject a lawyer and
represent oneself is premised upon the right of the defendant to
make a defense."). The defendant need not show an "actual injury" or
"prejudice" with respect to any "accessing the courts" claims
considering (1) he is being forced to participate in a criminal
matter as a defendant, (2) he has a direct Sixth Amendment right to
represent himself, and (3) he has a direct Fifth Amendment right to
prepare his own personal pro se defense.

Moreover, prior to Lewis, the Ninth Circuit declined to apply
Bounds and held that Faretta controls "accessing the courts" claims
in the context of criminal cases involving a pro se defendant. See
Milton, 767 F.2d at 1446 ("We need not determine in this case
whether Bounds... should be interpreted as placing an affirmative
duty upon the state to provide a library for the defendant who has
rejected the assistance of counsel for trial. Faretta controls this
case."). See also Bounds v. Smith, 430 U.S. 817 (1977).

    C. The defendant needs meaningful access to legal
       resources, preferably through a paralegal, to make
       up for the substandard CCA-CADC law library.

The defendant does not currently have the tools necessary to
pepare his own personal pro se defense involving complex technology

16

and an evolving area of the law that most attorneys have no experience, i.e., warrantless cell site location information acquisition and warrantless location monitoring of mobile telecommunications devices. The Court is requiring that the defendant prepare his defense using the substandard CCA-CADC law library and a paralegal who has never been willing to work with him. The defendant needs a remedy to make up for some of the inadequacies of the CCA-CADC law library. The defendant suggests that the Court appoint him a paralegal who is willing to communicate with him directly and provide him with the legal resources that he requires. If the defendant continues to be denied meaningful access to legal resources then his Fifth and Sixth Amendment rights will continue to be violated.

An inmate at least should be entitled to access to those legal materials which are "fundamental to a meaningful right to self-representation." Kaiser v. County of Sacramento, 780 F.supp. 1309, 1313 (E.D. Cal. 1991). "[T]he Sixth Amendment right to self-representation recognized in Faretta includes a right of access to law books... and other tools necessary to prepare a defense." Taylor v. List, 880 F.2d 1040, 1047 (9th Cir. 1989). The Ninth Circuit has noted that "a defendant who chooses to represent himself does not have a due process right of access to a **court maintained** library, so long as he is afforded some alternative means for assistance in the preparation of his defense." Milton, 767 F.2d at 1447 (emphasis added). In the present case, the "alternative means" provided to the defendant are the substandard CCA-CADC law library and a court appointed paralegal who has never been willing

17

to work with him.

### 1. The substandard CCA-CADC law library.

The CCA-CADC law library is significantly lacking in numerous areas. The defendant is currently defending himself without access to Supreme Court decisions, federal circuit decisions later than October 21, 2008, Shepard's Citations later than the year 2002 or any other meaningful way to search or cross reference recent case laws. The CCA-CADC law library does not meet acceptable standards and lacks the legal resources required for the defendant to adequately prepare his own personal pro se defense.

Bounds v. Smith is not the standard to apply when a defendant is denied access to legal resources when representing himself in a criminal case. See Milton, 767 F.2d at 1446. However, in the present case, the Court is requiring that the defendant partially rely on the CCA-CADC law library to prepare his own personal pro se defense. Under the circumstances, Bounds still provides a standard for evaluating whether the CCA-CADC law library is Constitutionally adequate. Under the Bounds standard, the Ninth Circuit noted that a prison "must provide its inmates with a library that meets minimal constitutional standards." Johnson v. Moore, 948 F.2d 517, 521 (9th Cir. 1991) (internal citation omitted). The Johnson Court went on to note that Supreme Court Reporters from 1960 to date and Shepard's Citations are some of the legal resources that meet or exceed what is Constitutionally required. See id., n.2. In Housley v. Killinger, the Court stated that Supreme Court, federal circuit court, and district court reporters are some of the resources that are adequate for federal prisons. See id., 747 F.Supp. 1405

18

(D. Or. 1990), aff'd 972 F.2d 1339 (9th Cir. 1992). In Lindquist v. Idaho State Bd. of Corrections, the Ninth Circuit noted the district court's interpretation of Bounds to include "up-to-date law books." Id., 776 F.2d 851, 855 (9th Cir. 1985). The CCA-CADC law library does not meet the standards outlined in the above quoted cases. The American Association of Law Libraries also states that a prison law library should have in its collection Supreme Court Reporter (volume 80 to current), Federal Reporter and Federal Supplement from 1975 to current, Shepard's United States Citations, and Shepard's Federal Citations. See Special Interest Section, American Assn of Law Libraries, Recommended Collections for Prison Law Libraries, 91-96 (1989). The CCA-CADC law library does not meet the standards outlined by the American Association of Law Libraries. In Bounds, the Supreme Court held that prison inmates have a Constitutional right of access to the courts that "requires prison authorities to assist inmates... by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds, 430 U.S. at 828. CCA-CADC does not provide adequate assistance from persons trained in the law to make up for their substandard law library.

### 2. The defendant's current court appointed paralegal has never been willing to work with him.

Litzau, the defendant's current court appointed paralegal, will not provide the defendant with the legal research assistance that he requires. Beginning September 3, 2009, the defendant made numerous requests to Litzau for legal resources. Litzau ignored the defendant's requests other than providing 8 case laws that are

19

unavailable at the CCA-CADC law library. Providing a mere 8 case laws does not not make up for the inadequacies of the CCA-CADC law library. In <u>United States v. Wilson</u>, the Ninth Circuit found that the pro se defendant's due process rights were not violated because "[h]e never requested that his court-appointed attorney [(acting as shadow counsel)] or anyone else perform research for him." Id., 690 F.2d 1267, 1272 (9th Cir. 1982). Instead, during trial, Wilson withdrew his waivor and "chose to have his court-appointed counsel represent him." Id. In the present case, the defendant asked repeatedly that Litzau conduct research for him but she ignored nearly all of the defendant's requests.

On December 11, 2009, Litzau decided that she will only communicate with the defendant if he uses Seplow as an intermediary. The Court has already indicated that the defendant "shall have the right to communicate directly with Litzau" and other members of the defense team. The Court's January 21, 2010 Amended Order, p. 1. Just like in <u>Milton v. Morris</u>, "[t]he trial court's own order[], which recognized the legitimacy of [] [the defendant's] need and which would have provided possible avenues of preparation" is not being heeded. Id., 767 F.2d at 1445. Going by the Court's own order, the communication arrangement with Litzau will not work.

### D. The defendant needs assistance from a qualified private investigation firm and from other experts.

In order to make up for his lack of education and training in specialized areas, the defendant needs assistance from a private investigation firm with technology experience, a mobile telecommunications expert, and a surveillance expert. The defendant

20

is trying to prepare a Fourth Amendment defense involving complex mobile telecommunications, radio technology, antenna design, little known surveillance techniques, and an area of physics pertaining to the electromagnetic spectrum. The defendant's defense is in the science. The Court is holding the defendant to the same standards as it would a lawyer. The Court would never expect a lawyer to prepare such a defense on his own and without expert services.

In Milton, the Ninth Circuit found a due process violation after Milton went to trial without having been able to contact any expert witnesses or to procure an investigator. See id., 767 F.2d at 1445. The defendant in the present case is also suffering a due process violation considering he has not had meaningful access to a private investigator or to any experts.

The Court appointed Dworkin, a computer forensic specialist, to assist the defendant in the preparation of his own personal pro se defense. Dworkin has not been assisting the defendant. Seplow has tried repeatedly to arrange a meeting between Dworkin and the defendant. Seplow has left voice messages for Dworkin and mailed him at least 3 letters. The defendant even attempted to call Dworkin from a CCA-CADC staff phone but was unable to reach him. The defendant has not had any access to Dworkin, or to any other experts, in over 10 months.

### E. The defendant needs to choose which defense service providers will join his defense team.

The defendant needs to choose which defense service providers will join his defense team. The defendant has a particular defense and needs to choose who has the experience and background needed to

assist in the preparation of that defense. The defendant also needs
to be comfortable with the people he is to work with. The Court is
holding the defendant to the same standards as it would a lawyer.
The Court informed the defendant that one of those standards is
that it is the lawyer who decides which court appointed defense
service providers will assist in the defense.

### F. The defendant needs to be able to make non-collect and unrecorded outgoing legal phone calls from the CCA-CADC detainee phones.

The defendant needs to be able to make non-collect and
unrecorded outgoing legal phone calls from the CCA-CADC detainee
phones. While using the CCA-CADC detainee phones, the defendant
has not been able to make unrecorded legal phone calls to members
of his defense team or to prospective members of his defense team.
CCA-CADC refuses to stop recording the defendant's legal phone calls
unless the defendant gets court approval for every phone number
that he wants added to their "do not record list." CCA-CADC's
requirement is against their own policy and a violation of the
defendant's due process rights. Additionally, the defendant is
indigent and can only make collect phone calls from the CCA-CADC
detainee phones. Requiring that potential defense service providers
pay for costly collect calls significantly decreases the chance of
the defendant establishing contact and obtaining their services.
Being restricted to only collect calls is a violation of the
defendant's due process rights.

In Milton, the Ninth Circuit found a due process violation when
Milton went to trial without having had effective use of a telephone.
See id., 767 F.2d at 1444. In Harris v. Maloughney, the Court found

22

that an allegation of monitored phone calls to an attorney stated a Constitutional claim. See id., 827 F.Supp. 1488 (D. Mont. 1993). The Code of Federal Regulations states that procedures should be in place for inmates to place unmonitored legal phone calls. See 28 C.F.R. § 540.102 (2006) ("Staff may not monitor an inmate's properly placed call to an attorney. The Warden shall notify an inmate of the proper procedures to have an unmonitored telephone conversation with an attorney."). It is Constitutionally implicit that calls made by a pro se defendant to defense team members fall under the same protections as calls placed by a non pro se defendant to an attorney. Apart from monitoring and recording, the defendant is not financially capable of making the needed non-collect legal phone calls. "Differences in access to the instruments needed to vindicate legal rights, when based upon the financial situation of the defendant, are repugnant to the constitution." Roberts v. Lavallee, 389 U.S. 40, 42 (1967).

The defendant needs to be able to add legal phone numbers to the CCA-CADC "do not record list" by following the procedures outlined in the "Central Arizona Detention Center United States Marshal Service Inmate Handbook." See Exhibit, 06. If the defendant has to file a motion for legal phone number approval, wait for the Court to respond, then wait for CCA-CADC to react--each time he needs to establish a new legal contact--then the preparation of the defendant's defense will be unjustifiably obstructed. "[P]ractices that unjustifiably obstruct the availability of professional representation **or other aspects of the right of access to the courts**

are invalid." <u>Phillips v. Hust</u>, 477 F.3d 1070, 1078 (9th Cir. 2007)
(emphasis added). CCA-CADC's requirements regarding the "do not
record list" are preventing the defendant from having effective use
of a telephone. The defendant is suffering an additional unjustified
obstruction considering he is unable to make non-collect calls to
potential defense service providers. The chances of individuals
accepting random collect calls from the defendant, without ever
having heard of the defendant or his case, are extremely low. The
defendant's financial situation is preventing him from having
effective use of a telephone.

### G. The defendant needs to be able to send out legal mail from CCA-CADC despite his indigent status.

The defendant needs to be able to send out legal mail from
CCA-CADC despite his indigent status. Beginning March 2, 2010,
CCA-CADC stopped paying for the defendant's outgoing legal mail
over 5 ounces per week. Many of the defendant's legal letters weigh
over 5 ounces each. Ever since March 3, 2010, the defendant has
been unable to file certain motions or to send out all of his legal
mail. Being without effective use of outgoing legal mail is a
violation of the defendant's due process rights.

The Supreme Court has ruled that it is "indisputable that
indigent inmates must be provided at State expense with paper and
pen to draft legal documents, with notarial services to authenticate
them, and with **stamps to mail them.**" <u>Bounds</u>, 430 U.S. at 824-25. In
the context of a prototypical "accessing the courts" claim, the
Ninth Circuit noted that "access to the courts means the opportunity
to prepare, serve and file whatever pleadings or other documents are

24

necessary or appropriate in order to commence or prosecute court proceedings affecting one's personal liberty." Phillips, 477 F.3d at 1075-76 (alteration and citation omitted). In Phillips, the Court found that Phillips' right of access to the courts was violated when he was arbitrarily denied access to a comb-binder that he had been permitted to use on numerous occasions in the past:

> "Hust's refusal to permit Phillips to use the comb-binder on June 18, when he was permitted to use it on numerous occasions both before and after that date, and when he had, so far as the record reveals, never before been denied access to it, quite predictably interfered with his efforts to prepare his petition for certiorari and thereby violated his right of access to the courts." Id. at 1078.

Just like in Phillips, the defendant in the present case had never been denied access to outgoing indigent legal mail in the past. Even if there is a Constitutionally valid CCA-CADC policy restricting indigent detainees to 5 ounces of outgoing legal mail per week, it has been arbitrarily and selectively enforced. "[O]therwise valid prison policies may not be selectively or arbitrarily enforced in such a way as to interfere with prisoners' access to the courts to pursue litigation arising from their incarceration." Id. at 1078, n.2.

The defendant needs CCA-CADC to follow the "United States Marshals Service Contract, MS-99-D-0057" and provide him with unlimited outgoing indigent legal mail postage. See Exhibit, 10. If the defendant has to forego filing motions, and sending out other legal mail, then he will be unable to meaningfully prepare and present his own personal pro se defense. CCA-CADC's policy regarding the 5 ounce restriction is preventing the defendant from having effecive use of outgoing legal mail.

## IV. CONCLUSION

This memorandum has established that the defendant's direct Sixth Amendment right to represent himself is being violated through numerous direct Fifth Amendment due process violations. This memorandum does not request any specific relief. Instead, this memorandum will be incorporated by reference into other ex parte motions that will request the relief needed in order to remedy current and future due process violations.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

EXHIBIT [01]

Grievance No.: 09-05       ~~JAN 07 REC'D~~       **14-5B**

## INMATE/RESIDENT GRIEVANCE

| FULL NAME: | Steven Brawner | | |
|---|---|---|---|
| NUMBER: | 10966111 | HOUSING ASSIGNMENT: | 500-Y-207 |

**INFORMAL RESOLUTION ATTACHED** (Not required for an emergency grievance)?  ☒ YES   ☐ NO

**GRIEVANCE CATEGORY (CIRCLE ONE):**

| 1. Facility Staff | 8. Dental Services | 15. Housing |
|---|---|---|
| 2. Access to Legal Materials | 9. Mental Health Services | 16. Laundry |
| 3. Denied Access to Informal Resolution/Grievance Process | 10. Trust Account | 17. Recreation |
| 4. Reprisal for Using Informal Resolution/Grievance Process | 11. Commissary | 18. Visitation |
| 5. Safety/Security | 12. Food Service | 19. Programs-education, work, religious, etc. |
| 6. Sanitation | 13. Mail | ⑳ Violations of federal or state regulations, laws, court decisions (i.e. ADA or Constitutional rights) |
| 7. Medical Services | 14. Intake | 21. Other |

**STATE GRIEVANCE:** (Include documentation, witnesses, date of incident, and any other information pertaining to the grievance subject. Attach additional pages if necessary).

See attached informal resolution
Access to courts

I AM APPEALING

**Requested Action:** (Attach additional pages if necessary)

See attached informal resolution

Inmate/Resident's Signature: _____       Date Submitted: 1-1-20019  S.B.

SEE NEXT PAGE FOR APPEAL       03/07

Grievance No.: 08-05                    JAN 0 7 REC'D                      14-5B

## RESPONDING STAFF MEMBER'S REPORT:  (Attach additional pages if necessary.  All pages must include the grievance number.)

I conferred with the Corporate Attorneys and they stated, per policy and Federal laws, we (CCA) are required to give the inmates access to "Legal Reference Material and/or outside legal assistance." CADC has a "Legal Law Library" that the inmates have access to use per the law library schedule.

## RESPONDING STAFF MEMBER'S DECISION: (Attach additional pages if necessary.  All pages must include the grievance number.)

Due to CCA/CADC having a Legal Law Library that the inmates have access to utilize, CADC is within the following policy & Federal law. Therefore this grievance is Denied.

Responding Staff Member's Printed Name: Ryan D. Henrick     Title: Executive Assistant

Responding Staff Member's Signature: _____     Date: 1-14-09

Inmate/Resident's Signature (upon receipt): _____     Date: 1-14-09

## INMATE/RESIDENT APPEAL (Attach additional pages if necessary.  All pages must include the grievance number.)

The law library is lacking in legal resources so CCA must hire attorney. The law library has no Supreme Court Reporters, Pro Per books, Prisoner Rights Books, 1983 forms, poverty forms, recent Annotated code volumes, Shepard indexes after the year 1999 and no way to get case numbers of past convictions for habeas corpus relief or addresses of courts outside AZ. The law library falls short of the requirements set forth in Lewis v. Casey. See attached my 14-8A form. I await attorney response.

APPEAL SUBMITTED 1-17-2009

## WARDEN/ADMINISTRATOR'S DECISION: (Attach additional pages if necessary.  All pages must include the grievance number.)

Denied. You will not be furnished an attorney by CCA. /s/

Warden/Administrator's Signature: _____     Date: 1/27/09

Inmate/Resident's Signature (upon receipt) _____     Date: 1/29/09

Form 14-8A
Revised 6/15/97

## CONFIDENTIAL
## REQUEST FOR ATTORNEY CONFERENCE

INMATE/RESIDENT NAME: _Steven Brawner_          DATE: 1-12-2009

# TYPE OF LEGAL CONCERN:

_____ Release date
_____ Post Conviction or Habeas Corpus
_____ Condition of confinement
__X__ Legal materials
__X__ Other

Brief description of problem:  *(Use additional sheets if needed)*

Pursuant to Lewis v. Casey I need CCA to hire me an ~~appointed~~ attorney to help prepare Motion to proceed in Forma Pauperis in Monterey county CA. court; Motion for appointment of council in SLO county, CA. court; Motion for appointment of council in Santa Cruz county, CA. court; Complaint 42 U.S.C 1983 for civil claim. I also need access to Supreme Court case print outs.

The attorney is not being retained to provide legal representation for inmates/residents in court. The attorney's representation at CCA's expense includes personal interviews with the inmate/resident, fact gathering, legal research, follow-up interviews, referrals of inmate/resident to other resources, negotiation on the inmate/resident's behalf and assistance with the preparation of **initial** pleadings including motions to proceed in forma pauperis and motions for appointment of counsel but not to include typing of such pleadings and/or motions. The attorney's assistance extends only to issues relating to habeas corpus actions, post-conviction actions or issues concerning conditions of confinement. The attorney's representation at CCA's expense does not extend to making entry of appearance in court or appearing on behalf of the inmate/resident at any type of hearings.

Please note that the attorney is retained and his/her fee is paid by Corrections Corporation of America. This in no way alters the attorney's duty to advise or represent you in these limited situations. Even though the attorney is employed by CCA, the attorney is bound by the disciplinary rules of the Supreme Court of this state to represent the client-inmate/resident and to preserve the confidence of the client-inmate/resident. However, if in the client-inmate/resident's best interest, the attorney should attempt to resolve any dispute with CCA informally before instituting more formal procedures.

Acknowledged:

_____
Signature of Inmate/Resident

1-12-09
Date

# ATTORNEY'S RESPONSE

_____
_____
_____
_____

EXHIBIT [02]

DECLARATION UNDER PENALTY OF PERJURY

RE: CCA Law Library at the 600 unit

DECLARANT'S NAME: Marcos Fernando Duron G.

HEREBY DECLARES:

IN The month of February 2009, I was
Transported to CCA/CADC in Florence Arizona
from Nogales Arizona and still waiting to be
sentenced. Just about every Monday I get to
go to the Law Library at the CCA 600 unit to
research my charges in my case. There is no
Supreme court cases at all. there is also no
Federal appeals cases newer than the year 2008.
It is very hard to find a book to answer
questions because there is no CCA staff personal
to help. There is no way to request copies of
cases that aren't at the Law Library. the collections
of books always have volumes missing. CCA does
not hire an attorney or other legally trained
staff member to help with getting cases or
doing research. I was not able to make
good use of the CCA Law Library.

Page # 1 of 3

## DECLARATION UNDER PENALTY OF PERJURY

RE: _CCA Law Library at the 600 Unit_

DECLARANT'S NAME: _Marcos Fernando Duron G._

HEREBY DECLARES:

This "Declaration Under Penalty Of Perjury" was composed for _Daniel Rigmaiden_ and I authorize him/her to use it, or a copy thereof, as an incorporated attachment to any document or filing for any and all purposes that he/she so chooses.

I declare, certify, verify, and state under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, except as to those matters which are therein stated on information and belief, and, as to those matters, I believe it to be true. See 28 U.S.C. § 1746 ("Wherever... any matter is required or permitted to be supported, evidenced, established, or proved by the sworn... affidavit, in writing of the person making the same [], such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration..., in writing of such person which is subscribed by him, as true under penalty of perjury, and dated..."); 18 U.S.C. § 1621 ("Whoever... in any declaration... under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true... is guilty of perjury and shall, except as otherwise expressly provided by law, be fined under this title or imprisoned not more than five years, or both....").

[ Declarant signature and contact information on following page. ]

1

## DECLARATION UNDER PENALTY OF PERJURY

2
RE: _CCA LAW LIBRARY at the 600 UNIT_

3
DECLARANT'S NAME: _Marcos Fernando Duron G._

4
HEREBY DECLARES:

5

6
_January 10  2010_          _Florence_

7
[Executed On (date)]          [Executed in the City of]

8
_Arizona_               _United States_
[Executed in the State of]     [Executed in the Country of]

9

10
          _Marcos J Duron_

11
          Signature of Declarant

12
          _Marshal # 44486208_
          _Marcos Fernando Duron Gonzales_

13
          [Full Printed Name]

14
          _1023 N. Pendleton Dr._

15
          [Mailing Address Line # 1]
          _Rio Rico Az. 85648_

16
          [Mailing Address Line # 2]

17
          [Mailing Address Line # 3]

18

19
          [Mailing Address Line # 4]

20

21
          [Telephone Number (optional)]

22
          [Email Address (optional)]

23
///

24
///

25
///

26
///

27
///

Page # _3_ of _3_

EXHIBIT [03]



**CORRECTIONS CORPORATION OF AMERICA**

# CENTRAL ARIZONA DETENTION CENTER

# UNITED STATES MARSHAL SERVICE

# INMATE HANDBOOK

Approved by: _Signature on File_   Date: _April 1, 2008_
            Charles Gilkey, Warden

Revised 4-1-08

with facility policy. Inmates being released/transferred will be informed that any future mail addressed to them at CADC will be returned to sender. Some released inmates may be responsible for their own transportation depending on contract stipulations. Some inmates will have their transportation provided for them by other designated agencies to their destinations. Arrangements will be made for inmates with pending charges to be transported to the proper authority. The release/transfer date will be documented in the receiving and discharge file along with all paperwork authorizing inmate release/transfer.

Es una poliza de esta institucion que cada preso debera ser asegurado de su tiempo de libertad con el acuerdo de esta instituciones procedimiento y los instrucciones de la atoridad. Al ser liberado de esta facilidad se segura que el propeo identificacion, documentacion, regreso de el presos propiedad personal y la coleccion de todo la propiedad de CCA dado al preso durante el tiempo aqui esta hecho. Presos que necesitan asistencia con su libertad llenaran un repuesto o pueden ver su Manejador de Caso. Los presos que vayan a ser liberatedos seran llamados a la area de entradas y salidas con todo su propiedad. Verificaran su identificacion con foto y el registro, se vistaran en su ropa personal, regresaran la pertenencias de CCA y sera escoltado a una area designada para ser libertado por la atoridad. Los presos que van a ser transferidos se les dara la oportunidad de mandar por correo las propiedads personales los USMS no permita llevar propiedades personales durante la transferida. Presos con articulos de contrabando que sea legalizada afuera de esta facilidad prodran enviaria por correo a su propio costo. Al no hacerio la propiedades seran destruidas por la facilidad. Arreglos sobre casos pendientes como quejas o propiedad dañada o perdido sera arreglado con un el procedimientos de esta facilidad. A los presos que vayan a ser liberados o transferidos se les informa que todo el correo que reciben despues de irse de CADC sera devuelto a su destino. Presos que vayan a ser puestos en libertad seran responsables por su propia transportacion. Presos con casos pendientes seran transportados por las atoridades. La fecha de liberacion o transferencia del preso sera puesta en los archivos junto con los papeles legales atorizando la liberacion o transferencia.

**Prevention, Intervention and Remediation of Sexual Abuse/Assault**
**Prevencion, Intervencion y Remediacion de Asalto/Abuso Sexual**

CADC shall ensure that information is provided to inmates regarding sexual assault/abuse, sexual misconduct/harassment. If an inmate feels he/she has been the victim of sexual assault/abuse or misconduct/harassment, he/she should immediately report it to a staff member. All reports will be taken seriously. CADC understands these matters can be extremely sensitive and will make every effort to see it is investigated in a prompt and thorough manner. Relief for the inmate will be sought through treatment and counseling. Sexual conduct between staff, volunteers or contract personnel and inmates, regardless of

29

**Direcciones a CADC**
**Del aeropuerto de Tucson:**
-norte de Tucson Blvd cuando llegas a Valencia, da un izquierda
-ve oeste hasta que llegas a I-19
-ve norte hasta que llegas a I-10 Norte
-ve I-10 norte a Phoenix
-sale a Coolidge
-ve norte en Hwy 87 aproximo 10 millas a Florence
-dale un izquierda cuando llegas a Main Street
-ve ala luz, a Butte Street
-dale un derecho, ve al siguiente luz, Hwy 79
-dale un izquierda cuando llegas a Hwy 79
-la facilidad esta en la derecha
**Del aeropuerto de Phoenix:**
-I-10 a I-10 este
-este a I-10 para Globe
-I-10 cambia a Hwy 60
-Hwy 60 a Florence Junction
-dale un derecho para Hwy 79
-Hwy 79 aproximo 15 milla sur a Florence
-primer facilidad en la izquierda
**De I-10**
-ve sur de I-10 hasta Hwy 387, Coolidge-Florence salida
-dale un izquierda cuando llegas a signo ALTO a Hwy 387
-dale un derecho cuande llegas a Hwy 287; siga Hwy 287 a Florence
-el camino se va ser un curva ala derecha hasta que llegas a un signo ALTO
-dale un izquierda cuando llegas a Florence Heights Drive ve hast la signo ALTO
-dale un izquierda cuando llegas a Pinal Parkway siga adelante
-aproximo ½ milla la facilidad esta en la derecha
**Rentas de Automobile en Casa Grande:**
Budget Rent a Car 1-800-527-0700
Enterprise Rent a Car 520-836-8050
Ford Rent a Car 520-836-3100
Greyhound Bus Station
Casa Grande 1-800-231-2222

**Legal Services/Servicos Legales**

The U.S. Supreme Court in Bounds v. Smith allows a prison to meet the access to courts requirement by the use of a law library, a person trained in the law, or a combination of both. This facility has both. The person trained in the law is provided to assist inmates in filing initial pleadings in civil matters only. There is no requirement to provide defense or prosecution beyond the initial pleading stage. Your criminal attorney must handle criminal matters. However, limited

26

criminal material will be available to assist you with your criminal case. The attorney will not represent you in court, but will provide the following:

-consultation and assistance in civil claims not related to your confinement such as divorce, bankruptcy, etc

-consultation and assistance in the preparation and filing of habeas corpus petitions and civil rights claim

-consultation and assistance of fact gathering and legal research to determine the existence of claims

-consultation and assistance in the preparation of pleadings, when necessary, to include motions to proceed in forma paupenos and for appointment to counsel

-consultation and assistance in referring you to legal organizations that provide specialized services, social service agencies and CCA staff

-consultation and assistance in the preparation of grievances

To obtain assistance from the attorney, you must first complete form 14-8A, Request for Attorney Conference and place in the request box in your housing area. This form will be forwarded free of charge to the attorney. The attorney will determine if your concern can be handled without talking to you. If so, the attorney will provide you with a written response so you will know what has been done on your behalf. If he/she needs to talk with you for more details, a conference will be arranged. Staff at the facility can answer many of your concerns. When possible, please utilize these resources first.

La corte Suprema de los Estados Unidos en Bounds v Smith se le permite al preso acceso al uso de la biblioteca legal, una persona que esta entrenado en las leyes o una combinacion de estas dos. Esta facilidad tiene los dos. Hay una papeles en temas civil nadamas. El abogado no puede brindar mas ayuda que esta. Problemas criminales tienen que ser manejados por su abogado. Los materiales de uso para estos casos seran limitados y se usaran en asistirle. El abogado no te representara pero te ayudara con:

-consulta y asistencia en la preparacion de:

-consulta y asistencia en la preparacion de peticiones habeas corpus

-consulta y asistencia de divorcio, bancarrota, etc

-consulta y asistencia reuniendo informacion, investigacion legal, asi podras determinar la existencia de las demandas

-consulta y asistencia en la preparacion de peticiones cuando sea necesario

-consulta y asistencia con referencia a organizaciones que podran darte servicios legales

-consulta y asistencia en la preparacion de quejas

Para obtener asistencia del abogado primero tienes que llenar la forma 14-8A, Peticion para Conferencia con Abogado y dejar la peticion en la caja localizada en su vivienda. La peticion sera adelantada a el abogado. El abogado revisara su peticion y determinara si puede resolver la problema sin hablar contigo. Si se puede usted recibira una respuesta comentando el caso y de lo que tienes que hacer. Si el abogado necesita hablar contigo, el pondra una cita para verlo. Personal en esta facilidad pueden ayudar muchos de sus asuntos. Cuando posible, por favor utilizar ellos primero.

## Court Appearances/Presentacion a Corte

Inmates requested for court appearances by the United States Marshal Service will be called to R & D on the morning of their court appearance. Other than legal papers, NO personal property will be brought to R & D on court day. Any legal papers will be searched for contraband prior to departure. Unauthorized personal property brought to R & D on court day will be confiscated and may be destroyed. Inmates will wear a complete uniform (shirt, pants and shoes); if wearing personal shoes, you must remove the shoe strings prior to leaving your Unit. Hair must be loose; no braids, buns or rolled hair; no hair ties, necklaces of any form or personal papers. If the Court or your attorney requests photos, you must submit a request to take to court.

Los presos que sean requeridos para presentacion a la corte por el United States Marshal Service seran llamados a entradas y salidas en la mañana. No mas podra llevar papeles legales. NO pueden llevar propiedad personal a la entradas y salidas. Todos los papeles legales seran revisados para evitar contrabando. Toda la propiedad personal que no esta autorizada sera confiscada y podra ser destruida. Presos tendran uniforme completo (camiza, pantalon y zapatos), si usas su zapatos personal tienes que quitar los cordones antes de ir de su vivienda. El pelo tiene que estar suelto, no retringido in cabello, no collar de cualquier forma o papeles personal. Si el Jues o su abogado pidan que lleas fotos a la corte, tienes que mandar una repuesta cada ves para llevar a la corte.

## Release-Transfer Preparation/Preparacio de Libertad-Transferencia

It is the policy of this institution that all prisoners are ensured a timely release in accordance with facility procedures and the instruction of the releasing authority. The release of an inmate from this facility will be accomplished so as to ensure proper identification, documentation, return of inmate's personal property and collection of all CCA property issued to the inmate during their incarceration. Inmates who may need assistance with their release should fill out a Request for Information form or see the Case Manager who can assist them. Inmates to be released will be called to the R & D area with all their belongings. They will have their identity verified by a picture and records check, dressed out in their personal clothing, return all CCA property and be escorted to the area designated as appropriate for release by the contracting authority. All inmates preparing to transfer will be given the opportunity to mail personal property, which the USMS will not allow on their person at the time of transfer. Inmates with contraband items out at their own expense. Failure to do so may result in the items being destroyed by CCA. Arrangements for completion of any pending actions such as grievances or claims for damaged or lost property will be handled in accordance

EXHIBIT [04]

| | |
|---|---|
| **CHAPTER 14:** | **INMATE/RESIDENT RIGHTS** |
| **SUBJECT:** | **ACCESS TO COURTS** |
| **SUPERSEDES:** | **APRIL 1, 1998** |
| **EFFECTIVE DATE:** | **DECEMBER 1, 2002** |
| **FACILITY SUPERSEDES:** | **DECEMBER 1, 2002** |
| **FACILITY:** | **CENTRAL ARIZONA DETENTION CENTER** |
| **FACILITY EFFECTIVE DATE:** | **FEBRUARY 5, 2004** |

**APPROVED:   SIGNATURE ON FILE AT CORPORATE OFFICE**
**JIMMY TURNER**
**VICE PRESIDENT, OPERATIONS**

**APPROVED:   SIGNATURE ON FILE AT CORPORATE OFFICE**
**G. A. PURYEAR**
**EXECUTIVE VICE PRESIDENT/ GENERAL COUNSEL**

---

**14-8.1  PURPOSE:**

To establish procedures for allowing inmates the opportunity for access to the court system.

**14-8.2  AUTHORITY:**

Corporate and Facility Policy, State and Federal Laws

**14-8.3  DEFINITIONS:**

Indigent Inmate/Resident - An inmate/resident having maintained a balance of normally at least three dollars ($3.00) or less in their account, physical possession or in both combined for thirty days prior to the request for supplies.  However, some facilities may vary due to contract requirements.

**The dollar amount used for indigency in this facility is $3.00 OR LESS.**

At this facility, the procedure used for indigency is as follows: **ALL INMATES/RESIDENTS WILL FOLLOW POLICY 16-1.  AN INMATE/RESIDENT HAVING MAINTAINED A BALANCE OF $3.00 OR LESS IN HIS/HER ACCOUNT FOR THE PAST THIRTY (30) DAYS IS CONSIDERED INDIGENT.**

Inmate/Resident - Any adult or juvenile, male or female housed in a CCA facility. Inmates/residents may also be referred to as detainees, prisoners or offenders depending on classification and in accordance with facility management contracts.

**14-8.4  POLICY:**

CCA provides that all inmates/residents, upon request, receive access to paper and other supplies and services to contact legal counsel or representative, courts, and other persons concerning legal matters. Inmates/residents have the right to present any issue, including the following: challenging the legality of their conviction or their conditions of confinement in accordance with the standard set forth in Lewis v. Casey. Officers, employees or agents of CCA will not interfere with, harass, punish or otherwise penalize any inmate/resident as a result of the inmate/resident gaining access to the courts.

**14-8.5  PROCEDURE:**

    **A.     ACCESS TO COURTS**

       Access to courts will be provided through the availability of legal reference materials and/or contract attorneys/paralegals. Pursuant to Lewis v. Casey, constitutional access to the courts

**Proprietary Information--Not for Distribution - Copyrighted**
**Property of Corrections Corporation of America**

system extends only to assistance with the preparation of **initial pleadings (e.g. Motions to Proceed In Forma Pauperis, Motions for Appointment of Counsel, Petitions for Writs of Habeas Corpus, Petitions for Post-Conviction Relief, Civil Complaints for Section 1983 Claims in state or federal court)**. Constitutional access to courts provided by the State (or its private contractor) does not extend to assistance with any legal proceedings beyond the **initial pleading** stage. Though inmates/residents have the right to present issues to the court system, CCA is only required to assist inmates/residents in accordance with the parameters outlined in Lewis v. Casey.

1.      LEGAL REFERENCE MATERIALS

  a.    Law books are chosen by CCA's Corporate legal staff to meet the constitutional needs of the inmates/residents or as required by the facility management contract. These legal reference materials may include state or federal criminal substantive and procedural materials, rules of evidence, sentencing guidelines, legal dictionary, materials relating to immigration procedures, inmate rights and rules of court.

  b.    All legal reference materials will be ordered and purchased through CCA's Corporate Purchasing Department.

  c.    Federal and state court forms for filing initial pleadings (i.e. Motions to Proceed In Forma Pauperis, Motions for Appointment of Counsel, Petitions for Writs of Habeas Corpus, Petitions for Post-Conviction relief, Civil Complaint for Section 1983 Claims in State or Federal Court). Will be available for inmates to copy.

  d.    General Rules

    i.    Legal reference materials will be available during hours that facilitate reasonable access by all inmates/residents, including weekends and evenings.

    ii.   If an inmate/resident demonstrates a legitimate need to access the legal reference materials beyond scheduled hours, a request can be submitted to the designated staff. This request will be granted, absent good cause to deny such, and allowed when the inmate/resident is not involved in other scheduled activities.

    iii.  A schedule outlining times available for using the legal reference materials will be posted with the library rules.

    iv.   Library rules will be published by each facility and remain posted.

    v.    The rules will be available in English, and Spanish if necessary.

  e.    Designated Staff Duties

        A designated staff member will be responsible for the following:

    i.    Organizing and maintaining all books, supplements and pocket parts for books housed in the library;

    ii.   Notifying CCA's Corporate Purchasing Department of law books that need to be ordered;

    iii.  Discarding superseded, worn, or damaged materials which are of no significant value to the library collection;

    iv.   Keeping a current inventory of all books housed in the library. The inventory is to list the name of the publication; the number of volumes;

**Proprietary Information--Not for Distribution - Copyrighted
Property of Corrections Corporation of America**

the publisher; the year of publication; and the most recent supplement or pocket part date;

v.      Sending a current inventory to CCA's Corporate Legal Dept. quarterly;

vi.     Assisting inmates in locating materials in the library, but not giving legal advice;

vii.    Controlling all inmate movement within the library and preventing damage, destruction and/or theft of material in the library; and

viii.   Compliance with library/law library rules.

**f.      AT THIS FACILITY, ADDITIONAL PROCEDURES CONCERNING LEGAL REFERENCE MATERIALS ARE AS FOLLOWS:**

**NONE**

2.      CONTRACT ATTORNEYS/PARALEGALS

a.      Pursuant to <u>Lewis v. Casey</u>, constitutional access to the courts system extends only to assistance with the preparation of **initial pleadings (e.g. Motions to Proceed In Forma Pauperis, Motions for Appointment of Counsel, Petitions for Writs of Habeas Corpus, Petitions for Post-Conviction Relief, Civil Complaints for Section 1983 Claims in state or federal court)**. Constitutional access to courts provided by the State (or its private contractor) does not extend to assistance with any legal proceedings beyond the **initial pleading** stage.

b.      Access to the court does not extend to any other proceedings not related to the inmate/resident's imprisonment to include bankruptcy, divorce or child support.

c.      The contract attorney/paralegal will perform the legal research only to assist the inmate/resident in filing the **initial pleading** or **motion.** Any assistance or legal research the inmate/resident may desire **beyond the initial pleading stage** will have to be obtained by the inmate/resident by (1) requesting the court to appoint an attorney to represent him: or (2) contacting an attorney directly to represent him/her at the inmate/resident's expense.

d.      If the initial pleading involves a 42 USC sec. 1983 or condition of confinement claim, the inmate/resident should have first availed himself to the Inmate Grievance System. The court will likely dismiss the suit if the inmate/resident fails to exhaust administrative remedies available through the grievance process. Inmates/residents are required to bring a copy of the final disposition of the grievance when they meet with the contract attorney/paralegal. If the issue involves Post-Conviction or Habeas Corpus relief, the inmate/resident should bring a copy of his sentencing, appeal and sentencing calculation documents to the appointment with the contract attorney/paralegal.

e.      A contract between CCA and the contract attorney/paralegal establishes the relationship of the attorney/paralegal and the inmate, i.e., the attorney/paralegal represents the inmate's interests not CCA's. In addition, the contract delineates the legal issues that may be dealt with by the attorney/paralegal.

f.      Request for Services Form

i.      The Request for Attorney/Paralegal Conference (Form 14-8A) will be readily accessible to the inmates/residents.

**Proprietary Information--Not for Distribution - Copyrighted Property of Corrections Corporation of America**


      ii.    Envelopes and postage will be available for the inmate/resident to mail the Request for Attorney Services Form to the attorney/paralegal. To avoid any allegations of tampering or interference with the inmate/resident's ability to contact the attorney/paralegal, the inmate will place the request in the envelope and seal it.

    g.    Attorney/Paralegal Schedule

      i.    The attorney/paralegal will establish a schedule to meet with inmates/residents requesting assistance with the preparation of initial pleadings for post conviction and habeas corpus issues involving the inmate's custodial situation and institutional claims personally involving the inmate.

      ii.    A designated staff person at the facility will coordinate the scheduling of inmates/residents for attorney/paralegal conferences.

      iii.    CCA's Corporate Legal Department will monitor inmate/resident demand for services to determine the number of visits and the length of scheduled visits each month to maintain an adequate level of services and assistance to the inmate/resident population.

    h.    **AT THIS FACILITY, ADDITIONAL PROCEDURES FOR CONTRACT ATTORNEY/PARALEGAL SERVICES FOR INMATES/RESIDENTS ARE AS FOLLOWS:**

        <u>**NONE**</u>

**B.**    **ACCESS TO COURTS FOR SEGREGATED INMATES/RESIDENTS**

    1.    Access to the court system is to be provided to inmates/residents housed in segregation areas.

    2.    Those facilities that provide access to the court system through the use of a contract attorney/paralegal will make the Request for Attorney/Paralegal Conference (Form 14-8A) readily accessible to inmates/residents in segregated housing areas.

    3.    Those facilities that maintain legal reference materials as discussed in 14-8.5.A.1 will facilitate access to such legal materials by inmates/residents housed in segregated areas.

**C.**    **CORRESPONDENCE EQUIPMENT AND SUPPLIES**

    1.    PAPER/POSTAGE FOR PURCHASE

      a.    Inmates/residents may purchase paper, pens and envelopes at the facility.

      b.    Procedures for obtaining and buying paper, pens, and envelopes will be posted at each facility.

      c.    Procedures for obtaining postage will be posted at each facility.

      d.    Typewriter(s) will be available for use to type legal documents or correspondence with the courts.

    2.    PHOTOCOPYING SERVICES

      a.    Photocopying services for legal materials to be filed with the courts will be available at each facility for a monetary charge.

      b.    Procedures for photocopying will be posted at each facility.

      c.    Staff copying legal materials for inmates are not to read such materials other than to determine that these materials are legal documents.

**Proprietary Information--Not for Distribution - Copyrighted**
**Property of Corrections Corporation of America**

EXHIBIT [05]

DECLARATION UNDER PENALTY OF PERJURY

RE: Lacking At CCA/CADC Law Library

DECLARANT'S NAME: Mario-Gerard: Bernadel

HEREBY DECLARES:

I was detained at CCA - Central Arizona Detention Center (CADC) per case/account # CR-08-00256-PHX-SMM. While detained I attempted to appeal a prior conviction of case/account # CR-06-00260-PHX-JAT, for which I was Pro-Per, Pro-Se. On or about August 16, 2009, I informed Assistant Warden Carson Carmona that the CADC Law Library was without Supreme Court cases, and many other resources. I informed Mr. Carmona that I was appealing a prior conviction and the Law Library did not have the resources I needed. Mr. Carmona advised me that CADC hires an Attorney to help with problems like mine. Mr. Carmona gave me forms to use to contact one, Michael Vincent, An Attorney hired by CADC. I mailed Mr. Vincent the completed forms, asking him for assistance, but the letter was returned to me by the post office. I was later informed by Daniel Rigmaiden, Another detainee, that Mr. Vincent no longer works for CADC.

I certify under penalty of perjury that Attachment "A" contains the forms provided to me by Assistant Warden: Carmona, and a copy of the envelope that was returned to me by the post office.

Page # 1 of 3

1    DECLARATION UNDER PENALTY OF PERJURY

2    RE: *Lacking A CCA/CADC Law Library*

3    DECLARANT'S NAME: *Mario-Gerard: Bernadel*

4    HEREBY DECLARES:

5    This "Declaration Under Penalty Of Perjury" was composed for

6    *Daniel Rigmaiden*          and I authorize him/her to use it,

7    or a copy thereof, as an incorporated attachment to any document

8    or filing for any and all purposes that he/she so chooses.

9    I declare, certify, verify, and state under penalty of

10   perjury under the laws of the United States of America that the

11   foregoing is true and correct to the best of my knowledge, except

12   as to those matters which are therein stated on information and

13   belief, and, as to those matters, I believe it to be true. See

14   28 U.S.C. § 1746 ("Wherever... any matter is required or permitted

15   to be supported, evidenced, established, or proved by the sworn...

16   affidavit, in writing of the person making the same [], such

17   matter may, with like force and effect, be supported, evidenced,

18   established, or proved by the unsworn declaration..., in writing

19   of such person which is subscribed by him, as true under penalty

20   of perjury, and dated..."); 18 U.S.C. § 1621 ("Whoever... in any

21   declaration... under penalty of perjury as permitted under

22   section 1746 of title 28, United States Code, willfully

23   subscribes as true any material matter which he does not believe

24   to be true... is guilty of perjury and shall, except as otherwise

25   expressly provided by law, be fined under this title or

26   imprisoned not more than five years, or both....").

27   [ Declarant signature and contact information on following page. ]

Page # 2 of 3

1  
## DECLARATION UNDER PENALTY OF PERJURY

2  RE: _Lacking At CCA/CADC Law Library_

3  DECLARANT'S NAME: _MARIO-GERARD: BERNADEL_

4  HEREBY DECLARES:

5  
6  _March 13, 2010_               _FLORENCE_
   [Executed on (date)]          [Executed in the City of]

7  _ARIZONA_                      _PINAL_
8  [Executed in the State of]     [Executed in the Country of]

9  
10 _Mario Gerard Bernadel_
   Signature of Declarant

11  
12 _MARIO-GERARD: BERNADEL_
   [Full Printed Name]

13 _8 Reg# 85253008_
14 [Mailing Address Line # 1]

   _P.O. BOX 6300_
15 [Mailing Address Line # 2]

   _FLORENCE_
16 
17 [Mailing Address Line # 3]

   _ARIZONA STATE_
18 [Mailing Address Line # 4]

19 _85132-Zip_
20 [Mailing Address Line # 5]

21  
22 [Telephone Number (optional)]

23  
   [Email Address (optional)]

24 ///
25 ///
26 ///
27 ///

Page # _3_ of _3_

ATTACHMENT "A"



PHOENIX AZ 850

17 AUG 09 PM 6 T

AUG 19 2009

Mario-Gerard: Bernadel
c/o. P.O. Box 6300
near [85132]
Florence, Arizona state

Reg# [85253008]



Micheal Vincent
Attorney at Law
6671 E. Baseline Road, Suite 105, PMB # 101
Mesa, Arizona 85206-4330

NIXIE   850   5E 1        00  08/19/09

RETURN TO SENDER
ATTEMPTED - NOT KNOWN
UNABLE TO FORWARD

BC: 85132630000    *2014-14758-17-35

# FOR ATTORNEY CONFERENCE
## WRITE TO:

## THE LAW OFFICE OF MICHAEL VINCENT
A Professional Corporation
6671 E. Baseline Road, Suite 105, PMB # 101
Mesa, Arizona  85206-4330

## PLEASE USE APPROPRIATE FORM.
## MAIL DIRECTLY TO ATTORNEY.
## DO NOT SUBMIT TO LIBRARIAN OR CASE MANAGER.

# CORRECTIONS CORPORATION OF AMERICA
## CENTRAL ARIZONA DETENTION CENTER

Law Library Request for Copy of Legal Materials

Request Date: _____ Inmate Name: _____

Date sent to  Michael  Vincent_____ Date received by. Michael  Vincent____

Signature of Copier: _____ Date sent to CADC: _____

Date received at CADC: _____     Date received by inmate: _____

CHECK ONE:

_____  Routine (2 weeks)

_____  Priority (   5 days after receipt)
        Inmate is required to produce evidence
        of ongoing civil or criminal litigation
        with actual deadline demonstrated.

_____  Priority Expedited (under 3-5 days)
        Inmate has produced evidence of
        ongoing litigation with actual filing
        deadline demonstrated.

AUTHORIZED BY:

_____
Law Library Supervisor

_____
Law Library Supervisor

_____
Law Library Supervisor

PURPOSE OF CASES: _____

LIST COMPLETE CITE AND CASE NAME(S) ON FOLLOWING SHEET:

3. _____

4. _____

5. _____

6. _____

7. _____

8. _____

9. _____

10. _____

11. _____

12. _____

EXHIBIT [06]



CORRECTIONS CORPORATION OF AMERICA

CENTRAL ARIZONA DETENTION CENTER

UNITED STATES MARSHAL SERVICE

INMATE HANDBOOK

Approved by: __Signature on File__   Date: __April 1, 2008__
                 Charles Gilkey, Warden

Revised 4-1-08

-exposing the genitals or buttocks to an employee or visitor
-masturbation where an employee, visitor or other inmate can see the act
**C21 – Theft:** unauthorized taking of something that belongs to someone else.
**C22 – Threatening Another with Harm:** telling someone, through actions or words, that harm will come to him.
**C23 – Unauthorized Receipt of any Item of Value:** receiving an item which has any value through false pretenses, threats or stealing.
**C24 – Unauthorized Sale, Transfer or Receipt of Property:** any unauthorized sale or giving to another person or receipt from another persons any belongings or property.
**C25 – Unauthorized Use of Drugs or Intoxicants:** use of any drug or intoxicants which has not been prescribed or approved for the inmate to use.
**C26 – Unauthorized Use of Mail or Telephone:** using the mail or telephone to commit fraud, theft or against posted times and uses.
**C27 – Violation of any Federal, State or Local Law:** any act, though not specifically listed in this policy that would be either a felony or misdemeanor under federal laws or under the state laws in which the inmate is housed will constitute a major or minor violation.

**Penalties**
**Minor Offenses**
The disciplinary officer may impose up to two (2) of the below listed penalties after a determination of guilt on a minor offense:
-Reprimand, written or verbal
-Living area restriction for a maximum of fifteen (15) days
-Loss of commissary, special activities, work program privileges for a maximum of 30 days
-Extra duty up to four (4) hours

**Major Offenses**
The disciplinary officer may impose up to two (2) of the following penalties for a major offense:
-Any penalty which may be imposed for a minor offense
-Extra duty up to eight (8) hours
-Restitution
-Cell or dorm restriction for a maximum of fifteen (15) days
-1 through 30 days of disciplinary segregation per offense, a maximum of 60 days for all offenses arising from one incident.

**Appeals**
An inmate may appeal the decision of the disciplinary officer to the Warden. The time guidelines are as follows:
-the inmate is to be advised of their right to appeal the decision of the disciplinary officer at the time they are provided the decision. The inmate has up to fifteen (15) days within receipt of the decision to file an appeal.

34

---

Podras comprar boletos de fotos por la tienda. Un boleto de foto vendra con los de mas articulos ordenados. El fotografo anunciarar cuando los fotos se tomaran en su vivienda. Tienes que dar el boleto al fotografo antes de tomar el foto. Solamente un preso por cada foto. Todos los presos estaran en uniforme. Ningunos gorras, pañuelos, o gafas de sol estaran puesto en los fotos. Ningun signos de pandilla se demostraran en cualquier foto. Por fotos que tiene que tomar otra ves sera a la descrecion de los manejadores de la unidad.

**Library and Law Library/Biblioteca y Biblioteca de Ley**

Library books are delivered to the pods weekly. For use of the Law Library send a Request for Services form to the Case Manager for scheduling 24 hours in advance. The Law Library schedule is posted in the pods.

Los libros seran repartidos en las viviendas una vez a la semana. Para utilizar la biblioteca de ley manda una Peticion de Servicio al manejador de caso para una cita 24 horas en avance. Los horarios seran anotados en la vivienda.

**Telephone/Telefono**

The living areas are equipped with telephones for outgoing calls only. All calls are subject to monitoring. It is possible to make either collect calls or "debit" calls. Debit calls are made possible by completing a release of funds form to purchase telephone time from your inmate account. All calls are made by using your inmate number plus a 4-digit secret pin number assigned to you at the time of arrival. The pin number will be activated the following business day. It is important that you keep your secret pin number confidential from other inmates. Please submit a Prisoner Information Request to the Telephone Officer with a list of any and all legal numbers that you use. They will then verify that those numbers are in our system to ensure complete privacy for you. In your discussions with your attorney, as legal phone calls are not connected. It is your responsibility to notify the Telephone Officer of any and all changes of the legal numbers that you call. Telephone calls will automatically disconnect after thirty (30) minutes. To ensure equitable telephone access to each inmate/resident, additional time limits may be exercised as necessary. Emergency Telephone Calls are calls pertaining to serious family illness, critical injury, or death where notification cannot be deferred until regular mail delivery and inmates/detainees will be afforded the opportunity to utilize the phone with the approval of the Chaplain, Unit Manager, Shift Supervisor or higher ranking authority.

3-Way calling is prohibited. If you attempt to make a 3-way call disciplinary action will follow.

Todas las viviendas estan equipadas con telefonos para hacer llamadas. Podemos grabar y escuchar las llamadas que hacen. Se pueden hacer llamadas por cobrar o llamadas prepagadas. Llamadas prepagadas son posible por modo de completando una forma de retiro de dinero para comprar tiempo de telefono de su cuenta. Toda las llamadas estan hechas de modo de usando su numero de preso mas 4 numberos de clave que se le asignaron ala entrada de esta

21

EXHIBIT [07]

## CORRECTION CORPORATION OF AMERICA
## CENTRAL ARIZONA DETENTION CENTER

*P.S. Please be sure that I can place collect calls and paid calls.*

~~PRISONER~~ DETAINEE **INFORMATION REQUEST**
**SOLICITUD DE INFORMACION**

*Please Provide Written Response.*

*Received 2-25-th*

TO/PARA _Telephone Officer_

SUBJECT/ASUNTO _Please add the following legal phone numbers to the "do not record list" for my CCA detainee outgoing phone account(s): Philip Seplow, Attorney, 2000 North 7th St, Phoenix, AZ 85006, (602) 254-8817; Susan Freiwald, Professor of Law, University of San Francisco School of Law, 2130 Fulton Street, San Francisco, CA; (415) 422-6467 and (415) 422-6433; Thanks, Daniel Rigmaiden, Pro se_

~~PRISONER'S~~ NAME (PRINTED)                     _10966111_  ~~PRISONER'S~~ NUMBER

_Daniel Rigmaiden_                     _C-208-500_        _2/24/2010_
~~PRISONER'S~~ SIGNATURE / PRIMA DEL PRISONERO      CELL/CELDA        DATE / FECHA

RESPONSE/CONTESTACION _The ph. # for attorney Seplow was the only ph. # that is our Attorney Directory & is already marked as Private/Confidential. These other 2 #'s need Court Document approval._

OFFICIAL'S SIGNATURE/FIRMA DE OFFICIALES  _C/o Presiado_        _3-1-10_    DATE/FECHA

IF RESPONSE IS UNSATISFACTORY, CHECK BELOW AND RESUBMIT THIS FORM FOR REVIEW BY THE FACILITY ADMINISTRATOR. SI LA RESPUESTA NO ES SATISFACTORIA PONGA UNA CRUZ ABAJO Y VUELVA A SOMETER ESTA FORMA PART QUE EL ADMINISTRADOR DE ESTA INSTITUCION LO REVISE.

(  ) PLEASE REVIEW /REVISE POR FAVOR

_____
SIGNATURE/FIRMA

RESPONSE/CONTESTACION: _____

WARDEN'S SIGNATURE/FIRMA DE WARDEN        DATE/FECHA

FORM SEC112-P

600901-3201

**CORRECTION CORPORATION OF AMERICA**
**CENTRAL ARIZONA DETENTION CENTER**

P.S. Please be sure that
I can place Collect calls
and paid calls.

DETAINEE
~~PRISONER~~ INFORMATION REQUEST
SOLICITUD DE INFORMACION

Please Provide Written
Response.

Received 2-25-10

TO/PARA _Telephone Officer_

SUBJECT/ASUNTO _Please add the following legal phone numbers to the "do not record_
_list" for my cca detainee outgoing phone ~~account~~ account(s): FE And E, Incorporated, Private_
_Investigators, PO Box 27346, Tempe, AZ 85285, (480) 659-9245; CompuFor Computer_
_Forensics, 15029 N. Thompson Peak Parkway, B111-429, Scottsdale, AZ 85260, (480)_
_460-828  Thanks._

Daniel Rigmalden, Pro Se
~~PRISONER~~'S NAME (PRINTED)

10966111
~~PRISONER~~'S NUMBER

Daniel Rigmalden
~~PRISONER~~'S SIGNATURE / PRIMA DEL PRISONERO

C-208-500
CELL/CELDA

2-24-2010
DATE / FECHA

RESPONSE/CONTESTACION _Court Documents needed for listing of_
_approved Pro Se listing with names & phone numbers_

OFFICIAL'S SIGNATURE/FIRMA DE OFFICIALES _Yohreciado_

3-1-10
DATE/FECHA

IF RESPONSE IS UNSATISFACTORY, CHECK BELOW AND RESUBMIT THIS FORM FOR REVIEW BY THE FACILITY
ADMINISTRATOR. SI LA RESPUESTA NO ES SATISFACTORIA PONGA UNA CRUZ ABAJO Y VUELVA A SOMETER
ESTA FORMA PART QUE EL ADMINISTRADOR DE ESTA INSTITUCION LO REVISE.

(  ) PLEASE REVIEW /REVISE POR FAVOR

_____
SIGNATURE/FIRMA

RESPONSE/CONTESTACION: _____

_____

_____

_____

WARDEN'S SIGNATURE/FIRMA DE WARDEN

DATE/FECHA

FORM SEC112-P

600901-3201

EXHIBIT [08]

3.    INDIGENT INMATES

a.    Through procedures determined at each facility, CCA will provide paper, pens, and envelopes to Indigent Inmates/Residents.

b.    CCA will provide postage for privileged mail (e.g. to attorneys or the court system) to Indigent Inmates/Residents in an amount equal to five (5) one ounce letters per week and will not include registered, certified or insured mail.

c.    Indigent Inmates/Residents may receive three (3) photocopies of each legal document to be filed with the court at no charge unless the state or federal court rules expressly state that more (or less) than that amount is necessary to file with the court.

**D.    INMATE-TO-INMATE ASSISTANCE**

In accordance with Shaw v. Murphy, inmates/residents do not have a constitutional right to help other inmates/residents with lawsuits.  Unless otherwise mandated by the contracting agency, an inmate/resident's library job duties are limited to assisting designated staff in maintaining and inventorying legal reference materials and porter type duties.

**E.    AT THIS FACILITY, ADDITIONAL PROCEDURES REGARDING ACCESS TO COURTS ARE AS FOLLOWS:**

**THE CENTRAL ARIZONA DETENTION CENTER WILL PROVIDE POSTAGE FOR PRIVILEGED MAIL TO INDIGENT INMATES/RESIDENTS IN THE AMOUNT REGULATED FOR EACH INDIVIDUAL CONTRACT.**


**14-8.6   REVIEW:**

The General Counsel and the Vice President, Operations will review this policy annually.

**14-8.7   APPLICABILITY:**

All CCA facilities and programs except where contracting agency requires otherwise.

**14-8.8   ATTACHMENTS:**

1.    Form 14-8A - Request for Attorney/Paralegal Conference

2.    Other attachments are as follows:

_____

**14-8.9   REFERENCE:**

Lewis v. Casey, 116 S.Ct. 2174 (1996); Bounds v. Smith, 430 U.S. 817, 97 S.Ct. 1991, 52 L.Ed. 72 (1977); Shaw v. Murphy, 1215 S. Ct. 1475 (2001) and ACA Standards.  The ACA Standards for this facility are as follows:

Proprietary Information--Not for Distribution - Copyrighted
Property of Corrections Corporation of America

EXHIBIT [09]



CORRECTIONS CORPORATION OF AMERICA

CENTRAL ARIZONA DETENTION CENTER

UNITED STATES MARSHAL SERVICE

INMATE HANDBOOK

Approved by: _Signature on File_   Date: _April 1, 2008_
           Charles Gilkey, Warden

Revised 4-1-08

**C9 – Negarse a Seguir la Reglas o Ordenes Verbales o Escritas:** Negar de seguir las regulas o ordenes que estan designados por la operacion de la facilidad que un empleado les han dado por verbal o escrito. Esto incluye negar de seguir el procedimientos por tomar la cuenta.

**C10 – Pelear:** pelear fisico con otra persona.

**C11 – Juegos:** operacion o juando en cualquier juego de puestos por objetos de valor.

**C12 – Impedir a un Empleado en su Trabajo:** accion en que interrumpes un empleado durante su trabajo que causa retrasar, dando informacion falso.

**C13 – Insurreccion:** participando en su control cualquier articulo que estimular otros a participar en actividades que son sin autorizacion como de parar de trabajar o disturbios.

**C14 – Posesion de Contrabando:** teniendo en su control cualquier articulo que no esta aprobado por la facilidad incluye armas or cualquier articulo que se cambio por uso de arma, intoxicante, o parafernales de droga.

**C15 – Posesion de Propiedad Robado:** teniendo en su control cualquier articulo que se robo de otra persona.

**C16- Negar un Examen de Droga/Intoxicante Alcoholica:** negar a dar un muestra de orina por examen de droga or negar de someter a un examen de registro de alcohol.

**C17 – Negar un Examen de Registro:** a rechazar un examen de registro del cuerpo, propiedad, o celda.

**C18 – Negar a Trabajar:** cuando una persona negarse a ser un trabajo asignado.

**C19 – Ofensas Menores Repatido:** obteniendo tres o mas ofensas menores entre 30 dias, los 30 dias comiensan cuando la primer ofensa ocure y acaba 30 dias despues.

**C20 – Mala Conducta Sexual:** esto incluye pero no esta limitado a los actos siguientes:
-tomando parte en actos sexuales cuando todos consentan a participar.
-descubrir indecentemente los organos genitals o cuando a participar o visitante.
-Masturbacion donde un empleado, visitante u otro preso puede ver el acto.

**C21 – Robo:** tomar algo que es de otra persona sin autorizacion.

**C22 – Amenazar a Otro con Daño:** diciendo a algien por modo de accion o escrito que daño le sige.

**C23 – Recibir sin Autorizacion un Articulo de Valor:** recibiendo un articulo que tiene cualquier valor por fraude, amenaza o robado.

**C24 – Venta, Transferir o Recibo de Propiedad sin Autorizacion:** cualquier venta o dando a otra persona o recibo de otra persona su propiedad sin autorizacion.

**C25 – Uso de Drogas o Intoxicantes sin Autorizacion:** uso de drogas o intoxicantes que no estan recetados o aprobado por el uso del preso.

**C26 – Uso de Correo o Telefono sin Autorizacion:** usando el correo o telefono a cometer fraude, robo, o durante el uso o tiempo que esta escrito.

37

---

\*Asegurese de que escriban su numero y nombre tal como sale en su identificacion de CCA.

**Opcion #2**

Puede mandar dinero por correo siguiendo estos pasos:

1. Compre un "money order" o cheque al portador pagable al preso con su nombre y numero de comisaria. No se aceptan cheques personales o efectivos.

2. Mande el money orden o cheque a la siguiente direccion por el correo:

   CCA Inmate Trust

   Nombre y apellido del preso y su número de comisaria

   CADC

   P.O. Box 933488

   Atlanta, GA 31193-3488

3. El sobre tiene que traer la direccion de regreso para poder hacer el tramite.

4. NO pongan correspondencias como cartas, fotos, etc. adentro del sobre con el money orden o cheque al portador. Qualquier correspondencia que mande a esta direccion sera partida. Hay que mandar correspondencia directamenta a la facilidad donde esta el preso.

### Indigent Supplies/Indigentes

If you are indigent (you have $3.00 or less in your account for 30 days or more) you may receive indigent supplies by signing the Indigent Supply Sign-Up Sheet posted in your pod. Indigent inmates can receive first class postage and stationary sufficient to send at least three (3) letters of general correspondence per week. CADC will provide postage for privileged mail to indigent inmates in the amount regulated for each individual contract. Necessities (toothpaste, shampoo, deodorant and toilet paper) will be passed out weekly in the housing areas to all inmates. Toothbrush, comb and razors will be issued on a one for one exchange. Bar soap will be given as needed.

Si usted es indigente (tienes $3.00 o menos en su cuenta por 30 dias o mas) puedes recibir provisiones indigentes por modo de llenando la forma Provisiones Indigentes que esta en su vivienda. Puedes recibir estampillas y papel suficiente para mandar tres (3) letras de correspondencia general cada semana. CADC le dara al preso indigente estampillas por correo privilegiado regulado por cada contracto. Necesidades (pasta dental, champu, desordorante y papel de baño) seran repartidos un vez a la semana a todos los presos. Cepillo de dientes, peines y navajas de afeitar seran repartidos solamente por cambio de uno por uno. Jabon les daran Como necesidado.

EXHIBIT [10]

# AWARD/CONTRACT

| 1. THIS CONTRACT IS A RATED ORDER UNDER DPAS (15 CFR 350) | RATING | PAGE | OF PAGES |
|---|---|---|---|
| | | 1 | 2 |

| 2. CONTRACT (Proc. Inst. Ident.) NO. | 3. EFFECTIVE DATE | 4. REQUISITION/PURCHASE REQUEST/PROJECT NO. |
|---|---|---|
| MS-99-D-0057 | Nov 4, 1999 | 0 |

**5. ISSUED BY**  CODE  COD

UNITED STATES MARSHALS SERVICE
Procurment Office
600 ARMY NAVY DRIVE, CS#3, 1121
ARLINGTON, VIRGINIA  22202-4210

**6. ADMINISTERED (If other than Item 5)**  CODE

**7. NAME AND ADDRESS OF CONTRACTOR**   (No., street, city, county, State and ZIP Code)

Corrections Corporation of America
Attn: Brent Turner
10 Burtons Hills Boulevard
Nashville, TN 37215

**8. DELIVERY**

☐ FOB ORIGIN   ☒ OTHER   (See below)

**9. DISCOUNT FOR PROMPT PAYMENT**

NET 30

**10. SUBMIT INVOICES** (4 copies unless other wise specif) TO THE ADDRESS SHOWN IN: ►   | ITEM: Section G

| CODE | | FACILITY CODE | |
|---|---|---|---|

**11. SHIP TO/MARK FOR**  CODE  COD

AS SPECIFIED ON INDIVIDUAL TASK ORDERS

**12. PAYMENT WILL BE MADE BY**  CODE

U.S. Marshals Service
111 W. Monroe, Suite 1020
Phoenix, AZ 85003-1798

**13. AUTHORITY FOR USING OTHER THAN FULL AND OPEN COMPETITION:**

☐ 10 U.S.C. 2304(c) ( 3 )   ☒ 41 U.S.C. 253(c) (   )

**14. ACCOUNTING AND APPROPRIATION DATA**

| 15A. ITEM NO. | 15B. SUPPLIES/SERVICES | 15C. QUANITY | 15D. UNI | 15E. UNIT PRICE | 15F. AMOUNT |
|---|---|---|---|---|---|
| | PRE-TRIAL DETENTION SERVICES FOR HOUSING OF AN ESTIMATED 2,000 PRE-TRIAL ADULT DETAINEES WITHIN 100 MILES OF THE FEDERAL COURT CITIES OF PHOENIX AND TUCSON, ARIZONA | | | | |

15G. TOTAL AMOUNT OF CONTRAC ►  Total over 3 years  $147,964,287

## 16. TABLE OF CONTENTS

| (X) | sec. | PART I - THE SCHEDULE | PAGE(S) | (X) | SEC. | DESCRIPTION | PAGE(S) |
|---|---|---|---|---|---|---|---|
| | | | | | | PART II - CONTRACT CLAUSES | |
| X | A | SOLICIATATION/CONTRACT FORM | 2 | X | I | CONTRACT CLAUSES | 6 |
| X | B | SUPPLIES OR SERVICES AND PRICES/COSTS | 3 | | | PART III - LIST OF DOCUMENTS, EXHIBITS AND OTHER ATTACH. | |
| X | C | DESCRIPTION/SPECS./WORK STATEMENT | 51 | X | J | LIST OF ATTACHMENTS | 1 |
| X | D | PACKAGING AND MARKING | 1 | | | PART IV - REPRESENTATIONS AND INSTRUCTIONS | |
| X | E | INSPECTION AND ACCEPTANCE | 2 | X | K | REPRESENTATIONS, CERTIFICATIONS AND OTHER STATEMENTS OF OFFERORS | 12 |
| X | F | DELIVERIES OR PERFORMANCE | 3 | | | | |
| X | G | CONTRACT ADMINISTRATION DATA | 4 | | L | INSTRS. CONDS.,AND NOTICES TO OFFEROR | |
| X | H | SPECIAL CONTRACT REQUIREMENTS | 8 | | M | EVALUATION FACTORS FOR AWARD | |

*CONTRACTING OFFICER WILL COMPLETE ITEM 17 OR 18 AS APPLICABLE*

**17. ☒ CONTRACTOR'S NEGOTIATED AGREEMENT** (Contractor is required to sign this document and return 3 copies to issuing office) Contractor agrees to furnish and deliver all items or perform all the services set forth or otherwise identified above and on any continuation sheets for the consideration stated herein. The rights and obligations of the parties to this contract shall be subject to and governed by the following documents: (a) this award/contract, (b) the solicitation, if any, and (c) such provisions, representations, certifications, and specifications, as are attached or incorporated by reference herein. ( Attachments are listed herein.)

**18. ☐ AWARD** (Contractor is not required to sign this document.) Your offer on Solicitation Number ____, including the additions or changes made by you which additions or changes are set forth in full above, is hereby accepted as to the items listed above and on any continuation sheets. This award consummates the contract which consists of the following documents: (a) the Government's solicitation and your offer, and (b) this award/contract. No further contractual document is necessary.

**19A. NAME AND TITLE OF SIGNER**   (TYPE OR PRINT)

Linda G. Cooper, V.P. Legal Affairs

**20A. NAME OF CONTRACTING OFFICER**

Peter Reese

| 19B. NAME OF CONTRACTOR | 19C. DATE SIGNED | 20B. UNITED STATES OF AMERICA | 20C. DATE SIGNED |
|---|---|---|---|
| BY (Signature of person authorized to sign) | 9.15.99 | BY (Signature of Contracting Officer) | 9/17/99 |

nsn 7540-01-152-8069
PREVIOUS EDITION UNUSABLE

STANDARD FORM 26 (REV.4-85)
Prescribed by GSA

procedures, results, or facilities.  Samples taken by the COTR for testing shall be at the expense of the vendor.

## CHAPTER 15 - MAIL/VISITATION/TELEPHONES/FEDERAL PRISONER ACCOUNTS.

The contractor shall provide written plans, policy and procedures governing federal prisoner correspondence and mail, visitation and the use of telephones.

**A.     Correspondence.**

All regulations pertaining to federal prisoner correspondence shall be available to staff members and posted within federal prisoner areas.  Federal prisoners shall be permitted uncensored correspondence so long as such correspondence poses no threat to the safety and security of the institution, public officials, or the general public.  The contractor shall ensure that all incoming and outgoing mail and correspondence is not held for more than 24 hours.

**B.     Postage.**

There is to be no limitation on the volume of mail a federal prisoner may send or receive, except as provided in this paragraph.  The contractor shall provide federal prisoners who are without funds, a specified postage allowance of two postage stamps per week for domestic first class letters 1 ounce or less.  In addition, the contractor shall provide to federal prisoners who are without funds, unlimited postage allowance for attorney and court correspondence.

**C.     Inspection of Mail.**

The contractor shall provide written policy and procedure providing for the inspection of federal prisoner mail in the presence of the federal prisoner to intercept cash, checks, money orders, identify documents and contraband. Cash, checks or money orders shall be removed from incoming mail and credited to the federal prisoner's account.  If contraband is discovered in either incoming or outgoing mail, it shall be confiscated.  Only illegal items and items that threaten the security of the facility shall be considered contraband.

**D.     X-ray Equipment.**

The contractor shall provide X-ray equipment and a magnetometer to screen mail, deliveries, and visitors.  Additionally, the contractor shall ensure that all personnel operating the screening equipment are properly trained.

**E.     Non-contact Visitation (Optional).**

The contractor shall assure federal prisoners are not denied access to visitation with persons of their choice, except where the contractor reasonably believes that such visits jeopardize the security of the facility or the safety of federal prisoners or visitors.  Generally, visitation shall be non-contact, in a room designed to meet non-contact visitation integrity.

**F.     Contact Visitation.**

Legal counselors and religious advisers shall be allowed additional visiting privileges and accommodations, including contact visitation.  Privacy and space should be provided for these contact visits.  Any federal prisoner who is denied visitation rights shall have the right to appeal that decision to the COTR.

EXHIBIT [11]

302

Daniel Rigmaiden #10966111
CCA-CADC (Private Legal Mail)
PO Box 6300
Florence, AZ 85132

PRO SE LEGAL MAIL

Philip Seplow, Attorney
2000 North 7th St.
Phoenix, AZ 85006

please me
see Play

MANY LUV!
$100 you
you do day
WUH



Daniel R Jimolein #109660
CCA-CADC (Private Legal Mail)
Po Box 6300
Florence, AZ 85132

Frederick A. Battista, Prosecutor (Private Legal Mail)
Two Renaissance Square
40 North Central Ave, Suite 1200
Phoenix, AZ 85004

PRO SE LEGAL MAIL

INDIGENT

Daniel Rigmaiden #10966111
CCA-CADC (Private Legal Mail)
Po Box 6300
Florence, AZ 85132

Philip Seplow, Attorney
2000 North 7th St
Phoenix, AZ 85006



PRO SE LEGAL MAIL

INDIGENT

Daniel Rigmaiden #10966111
CCA-CADC (Private Legal Mail)
PO Box 6300
Florence, AZ 85132

Clerk, United States District Court (Private Legal Mail)
Sandra Day O'Conner U.S. Courthouse, Suite 130
401 W. Washington St., SPC 1
Phoenix, AZ 85003

PRO SE LEGAL MAIL

INDIGENT

EXHIBIT [12]

UNITED STATES POSTAGE
PITNEY BOWES
02 1M
0004287348
$01.90°
FEB 23 2010
MAILED FROM ZIPCODE 85232

Daniel Rigmaiden #10966111
CCA-CADc (Private Legal Mail)
PO Box 6300
Florence, AZ 85132

5c

NOTICE
THIS CO... ... ...
CORRECTIONAL INSTITUTION. ITS CONTENTS
ARE UNCENSORED. ... ...
... ...R MAILER FROM A

FYI

14-8
3b

Accecrding to policy

Indigent Inmates will be
provided up to 50g per g postage
pass for legal materials.
This weighed 4g. So he
only has 1g left this
week.

FE and E, Incorporated (Private Legal Mail)
Attn: Gregg Lowney, Private Investigator
PO Box 27346
Tempe, AZ 85285

PRO SE LEGAL MAIL

EXHIBIT [13]

# PHILIP A. SEPLOW
## ATTORNEY AT LAW

2000 NORTH 7TH STREET
PHOENIX, ARIZONA 85006

(602) 254-8817
FAX (602) 254-0271

MEMBER ARIZONA & CALIFORNIA BARS

September 10, 2009

Lonnie Dworkin, PMP
15029 North Thompson Peak Pkwy - #B111-429
Scottsdale AZ 85260

RE:   United States of America vs. Daniel David Rigmaiden
      Case No. CR 08-814-PHX-DGC

Dear Lonnie:

I am trying to arrange a group meeting at the federal detention center in Florence, Arizona (CCA) in the next 8 to 12 days. The meeting would include you, me, Laurie Litzau and investigator Mary Kelly. If you could call Dan at my office and come up with a couple of time periods when you would be able to map out a morning or an afternoon it would be appreciated.

Thanks!

Sincerely yours,

Philip A. Seplow

PAS/dmc

cc:   Daniel Rigmaiden
      Laurie Litzau
      Mary Kelly

# PHILIP A. SEPLOW
## ATTORNEY AT LAW

2000 NORTH 7TH STREET
PHOENIX, ARIZONA 85006

(602) 254-8817
FAX (602) 254-0271

MEMBER ARIZONA & CALIFORNIA BARS

December 14, 2009

Lonnie Dworkin, PMP
15029 North Thompson Peak Pkwy - #B111-429
Scottsdale AZ 85260

RE:   United States of America vs. Daniel David Rigmaiden
       Case No. CR 08-814-PHX-DGC

Dear Lonnie:

I am reviewing my letter of October 30, 2009, that I sent to you.  Hopefully, you received same, and if you do have information on the "Stingray" of Verizon, you should probably send that information directly to Daniel David Rigmaiden, assuming that the Court allows him to represent himself.  Daniel has made motion with the Court to proceed *pro se*, and if the Court allows that, I will just be shadow counsel, but I am sure that I'll be able to act as an intermediary between the two of you.

If you want to write to Daniel Rigmaiden address the envelope as follows:

Mr. Steven Travis Brawner
Reg# 10966111
CCA
P O Box 6300
Florence AZ  85132-6300

Sincerely yours,

Philip A. Seplow

PAS/dmc

cc: Daniel David Rigmaiden

# PHILIP A. SEPLOW
## ATTORNEY AT LAW

2000 NORTH 7TH STREET
PHOENIX, ARIZONA 85006

(602) 254-8817
FAX (602) 254-0271

MEMBER ARIZONA & CALIFORNIA BARS

February 12, 2010

Lonnie Dworkin, PMP
15029 North Thompson Peak Pkwy - #B111-429
Scottsdale AZ 85260

RE:     United States of America vs. Daniel David Rigmaiden
        Case No. CR 08-814-PHX-DGC

Dear Lonnie:

Please let me know if you could meet at CCA with our mutual client, Daniel Rigmaiden. Please call Dan at my office ASAP and give him some days and times you would be available.  I have been promising Daniel that you would meet with him so that he can find out what other services you could perform for him as an expert, etc.

I will try to make sure Laurie Litzau is with us at the time.  But I assume that you are still working on the case, and he really would like to meet with you.

I look forward to hearing from you.

Sincerely yours,

Philip A. Seplow

PAS/dmc