1  Daniel Rigmaiden
   Agency # 10966111
2  CCA-CADC
   PO Box 6300
3  Florence, AZ 85132
   Telephone: none
4  Email: none

5  Daniel David Rigmaiden
   Pro Se, Defendant

6

☑ FILED     ___ LODGED
___ RECEIVED  ___ COPY

JUL 0 9 2010

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ M DEPUTY

7                UNITED STATES DISTRICT COURT

8                    DISTRICT OF ARIZONA

United States of America,        )  No. CR08-814-PHX-DGC
9                                )
        Plaintiff,               )  MEMORANDUM TO ADVISE THE COURT
10                               )  ON WHEN DEFENDANT MAY BE READY
   v.                            )  TO FILE HIS MOTION(S) TO
11                               )  SUPPRESS
   Daniel David Rigmaiden,       )
12                               )
        Defendant.               )
13 _____)

14      Defendant, Daniel David Rigmaiden, appearing pro se,

15 respectfully submits this "Memorandum To Advise The Court On When

16 Defendant May Be Ready To File His Motion(s) To Suppress." The

17 defendant is unable to provide the Court with an estimated

18 suppression motion filing date to any degree of accuracy. The

19 defendant has attempted to provide the Court with accurate

20 estimated filing dates for other motions in the past and he has

21 been wrong in nearly every instance. The defendant is

22 incarcerated and conducting his defense under numerous

23 uncontrollable variables that tend to delay the defendant without

24 warning. If the defendant were not incarcerated then he would

25 have had his suppression motion(s) completed. The reality of the

26 situation is as follows:

27 ///

                              1

## A. The defendant does not have access to necessary legal research materials.

The defendant does not have access to necessary legal research materials. The defendant's court-appointed paralegal, Lauriane Litzau ("Litzau"), has not fulfilled the defendant's 5 month old legal research requests. Other than 19 case opinions[1] that are unavailable in the CCA-CADC law library (all of which "exact cites" were given) and PACER documents for one case similar to the defendant's, Litzau has provided no services to the defendant[2]. The defendant is absolutely clueless as to what Litzau has been doing with the defendant's case over the last 6 months.

Some of the defendant's pending legal research requests are for "exact cites" of unpublished cases available through either Westlaw or LexisNexis legal research databases. Shadow counsel Philip Seplow ("Seplow"), Seplow's assistant Daniel Colmerauer ("Colmerauer"), and Litzau have informed the defendant that they use "Loislaw," a second rate legal research database. They have also informed the defendant that they do not know how to obtain Westlaw and LexisNexis cases for the defendant through other means. The defendant has no way to obtain certain cases that address the evolving area of the law encompassing Fourth Amendment implications upon cell site information and radio location technology.

---

1. Eight of these case opinions were provided before the defendant proceeded pro se.

2. Using the defendant's own researching skills as a standard, the 19 cases consist of approximately 30 minutes of research time and the PACER documents

2

**B. The current defense services arrangement between shadow counsel Seplow, paralegal Litzau, and Seplow's assistant Colmerauer is chilling the defendant's defense preparation.**

The current defense services arrangement between shadow counsel Seplow, paralegal Litzau, and Seplow's assistant Colmerauer is chilling the defendant's defense preparation. Colmerauer has been doing Litzau's job for her while she bills the Court for other services that remain a mystery to the defendant. The defendant was informed that Litzau does not know how to do legal research and that is the cause of the defendant experiencing excessive delays in receiving necessary research material. Litzau forwards the defendant's legal research requests to Colmerauer and he does the legal research on his own time, or on Seplow's time, and Seplow does not bill the Court for Colmerauer's work. Considering Colmerauer is working without compensation, or at Seplow's out-of-pocket expense, the legal research still does not get done and Seplow complains to the defendant about how he is costing him money[3]. All the while, Litzau bills the Court for services that do not assist the defendant in any way.

The above noted arrangement is chilling the defendant's defense preparation considering "free services" is being used as leverage against the defendant's requests, concerns, and rights. During a July 2, 2010 legal visit at CCA-CADC, and in response to the defendant expressing his concerns about Seplow filing another

consist of approximately 4 hours of research time.

3.    Seplow recently complained to the defendant about having to pay for 20 minutes of time Colmerauer spent assisting the defendant with legal research over the phone.

                                    *motion*

1   unauthorized,^ Seplow became irate and belligerent while informing

2   the defendant of how lucky he is to have him as an attorney.

3   Seplow reiterated the fact that he instructed Colmerauer to assist

4   the defendant whenever he calls Seplow's office and that he is not

5   billing the Court for Colmerauer's work. Seplow then pointed

6   across the visitation room at another attorney and said, "See him?

7   If he was your attorney then you wouldn't get any help at all

8   --none, he doesn't even have a secretary.[4]" The defendant should

9   not be required to engage in defense service relationships while

10  being mindful of the out-of-pocket expenses resulting from his

11  requests for assistance.

    **C. The defendant's CCA-CADC legal phone call pin number**
12  **account is at a $0.00 balance and CCA-CADC has ignored**
    **the defendant's requests to have additional funds**
13  **added despite the Court's order.**

14
    The defendant's CCA-CADC legal phone call pin number account
15
    is at a $0.00 balance and CCA-CADC has ignored the defendant's
16
    requests to have additional funds added despite the Court's order.
17
    The defendant has made some collect calls to Seplow's office and
18
    to the defendant's private investigator but will no longer make
19
    these calls. The defendant's private investigator informed him
20
    that he is currently paying for the defendant's collect calls out
21
    of his own pocket. This is because the initial amount of money
22
    approved by the Court for his services has been exhausted. The
23
    defendant will no longer place his private investigator in a
24

    ─────────────────────────────────────────────
25  4.    Quoted from the defendant's notes taken immediately after the July 2,
    2010 legal visit.
26

27

                                    4

1  position where he has to incur out-of-pocket expenses. During a
2  July 2, 2010 legal visit, Seplow complained to the defendant
3  about a 20 minute collect phone call the defendant had with
4  Colmerauer[5]. Seplow became extremely aggravated at the thought of
5  having to pay for the 20 minute phone call out of his own pocket[6].
6  The defendant will no longer place collect calls to Seplow's
7  office because the thought of causing Seplow to become aggravated
8  in the future negatively impacts the defendant's reasoning and
9  logic when it comes to conducting his pro se defense.

10      **D. The defendant has been experiencing problems ever since
11      CCA-CADC switched from the Evercom detainee phone
         system to the Securus detainee phone system.**

12      The defendant has been experiencing phone problems ever since
13  CCA-CADC switched from the Evercom detainee phone system to the
14  Securus detainee phone system. The new phone system has a "3-way
15  call" detector that disconnects a phone call if a detainee
16  attempts to make a "3-way call." The defendant's private
17  investigation firm has a multiline phone system typical for most
18  businesses. Whenever the defendant gets transferred to his
19  private investigator's phone line, Securus mistakes it for a
20  "3-way call" and disconnects the call. Random disconnects also
21  occur as a result of the "3-way call" detector due to "noise" on
22  the firm's phone line. The above circumstances makes it difficult
23  for the defendant to communicate with his private investigator.

24  _____

25  5.   Considering Seplow is rarely available for phone calls and neglects to
26  read any of the defendant's letters, Colmerauer is essentially acting as the
    defendant's "de facto shadow counsel."

27  6.   For some unknown reason, Seplow refuses to bill the Court for the

5

**E. The defendant has been unable to find a willing and competent mobile telecommunications/surveillance expert.**

The defendant has been unable to find a willing and competent mobile telecommunications/surveillance expert. The defendant needs such an expert in order for him to draft his suppression arguments. The defendant's private investigator has sent out request queries to over 8,000 relevant individuals to no avail. The defendant is unable to make exploratory legal phone calls to facilitate finding the needed expert. The Court has expressly denied the defendant's request to make exploratory legal phone calls from CCA-CADC. The defendant's letters sent to experts go unanswered.

**F. The defendant's private investigation firm has been waiting since roughly June 18, 2010 for the United States Marshal Service to approve one of their investigators to have legal visits with the defendant.**

The defendant's private investigation firm has been waiting since roughly June 18, 2010 for the United States Marshal Service to approve one of their investigators to have legal visits with the defendant. There is a plethora of research materials pertaining to the defendant's suppression arguments that the defendant needs to view on a computer brought by his private investigator. The defendant also needs to edit his 74 page draft "Omnibus Reply To Government's Responses To Defendant's Two Most Recent Motions For Discovery RE: Motions To Suppress" so that he

_____

collect calls the defendant has with Colmerauer and for the help that Colmerauer provides the defendant while Seplow is unavailable.

1  may file a motion addressing the government's witholding of Brady
2  material based on a claim of it relating to "sensitive
3  investigative techniques." Until the discovery matters are
4  resolved, the defendant will only be able to draft hypothetical
5  arguments based on a speculated version of the facts.

6  **G. The defendant's legal mail sent to/from his private**
7  **investigator has been delayed one week going each way.**

8  The defendant's legal mail sent to/from his private
9  investigator has been delayed one week  going each way. The one
10  week delay in the defendant's legal mail to/from his private
11  investigator is peculiar in contrast to the one **day** delay in legal
12  mail sent to/from Seplow's office. The delay in mail delays the
13  defendant's defense preparation.

-----

15  In light of all of the above, the defendant is suffering due
16  process violations resulting in his inability to provide the
17  Court with an estimated suppression motion filing date to any
18  degree of accuracy. If all of the above issues were to be
19  instantly resolved then the defendant would estimate 3 months.

20  The issues raised in this memorandum the defendant would
21  normally address to the Court ex parte. However, the matter of
22  when the defendant will be ready to file his motion(s) to suppress
23  is a matter that involves the government. That being said, the
24  defendant is only willing to elaborate on the issues raised in
25  this memorandum ex parte with the government out of the courtroom.
26  ///
27  ///

7

1    I, Daniel David Rigmaiden, declare, certify, verify, and
2 state, under penalty of perjury under the laws of the United
3 States of America, that the facts contained in the foregoing
4 motion, and in any attached/incorporated memorandum, are true and
5 correct to the best of my knowledge, except as to those matters
6 which are therein stated on information and belief, and, as to
7 those matters, I believe it to be true. See 28 U.S.C. § 1746; 18
8 U.S.C. § 1621.

9

10    July 6, 2010                        Florence
      [Executed On (date)]               [Executed in the City of]
11    Arizona                            United States of America
12    [Executed in the State of]         [Executed in the Country of]

13

14                                       Daniel Rigmaiden
15                                       Signature of Declarant

16                                       Daniel David Rigmaiden
                                         Agency # 10966111
17                                       CCA-CADC
                                         PO Box 6300
18                                       Florence, AZ 85132

19  ///
20  ///
21  ///
22  ///
23  ///
24  ///
25  ///
26  ///
27  ///

                                8

Respectfully Submitted: July 7, 2010

DANIEL DAVID RIGMAIDEN
Pro Se, Defendant


Daniel D. Rigmaiden
Defendant

CERTIFICATE OF SERVICE

I, Daniel David Rigmaiden, certify under penalty of perjury under the laws of the United States of America (see 28 U.S.C. § 1746; 18 U.S.C. § 1621) that on July 7, 2010 at approximately 2:00pm I caused the following to be placed into the CCA-CADC mailing system for United States Postal Service delivery with first-class postage prepaid by CCA-CADC:

Original attached document plus 1 copy(s) addressed to:

Clerk, United States District Court
Sandra Day O'Connor U.S. Courthouse, Suite 130
401 W. Washington St., SPC 1
Phoenix, AZ 85003

One copy each of original document addressed to:

Frederick Battista + Peter Sexton    CC: Seplow
Two Renaissance Square
40 North Central, Suite 1200
Phoenix, AZ 85004

Taylor Fox, PC
2 North Central Ave., Suite 735
Phoenix, AZ 85004


By: Daniel Rigmaiden

9