1     **UNITED STATES DISTRICT COURT**

2     **FOR THE DISTRICT OF ARIZONA**

3     ————————————————

4 **United States of America,**   )
               )

5      Plaintiff,  )  **CR 08-00814-PHX-DGC**
               )

6   vs.       )  Phoenix, Arizona
               )  **July 15, 2010**

7 **Daniel David Rigmaiden** and **Ransom** )
 **Marion Carter, III,**    )

8               )
      Defendants.  )

9 ————————————————————————)

10

11

12

13    **BEFORE:   THE HONORABLE DAVID G. CAMPBELL, JUDGE**

14    **REPORTER'S PARTIAL TRANSCRIPT OF PROCEEDINGS**

15       <u>**STATUS CONFERENCE**</u>

16      (EXCLUDING EX-PARTE DISCUSSION)

17

18

19

20

21 Official Court Reporter:
  Patricia Lyons, RMR, CRR

22 Sandra Day O'Connor U.S. Courthouse, Suite 312
  401 West Washington Street, Spc. 41

23 Phoenix, Arizona  85003-2150
  (602) 322-7257

24

25 Proceedings Reported by Stenographic Court Reporter
  Transcript Prepared by Computer-Aided Transcription

**A P P E A R A N C E S**

For the Government:

       U.S. Attorney's Office
       By:  **FREDERICK A. BATTISTA**, ESQ.
       40 North Central Ave., Ste 1200
       Phoenix, AZ  85004

For Defendant Rigmaiden, Pro Per:

       **Daniel David Rigmaiden**
       Central Arizona Detention Center – Florence
       P.O. Box 6300
       Florence, AZ  85132

Shadow Counsel for Defendant Rigmaiden:

       Law Office of Philip A. Seplow
       By:  **PHILIP A. SEPLOW**, ESQ.  (telephonically)
       2000 N. 7th St.
       Phoenix, AZ  85006

For Defendant Carter:

       Taylor W. Fox, PC
       By: **TAYLOR W. FOX**, ESQ.
       2 N Central Ave, Ste 735
       Phoenix, AZ 85004

**P R O C E E D I N G S**

14:26:43   1

2

3          THE COURTROOM DEPUTY:  Criminal case 08-814, United

4   States of America versus Daniel David Rigmaiden and Ransom

10:29:59   5   Marion Carter, III.  This is the time set for status hearing.

6          Please announce your presence for the record.

7          MR. BATTISTA:  Morning, Your Honor.  Fred Battista on

8   behalf of the United States.

9          THE COURT:  Good morning.

10:30:08  10          MR. RIGMAIDEN:  Morning, Your Honor.  Daniel Rigmaiden

11   on behalf of himself.

12          THE COURT:  Good morning.

13          MR. SEPLOW:  Morning.

14          THE COURT:  Go ahead, Mr. Seplow.

10:30:16  15          MR. SEPLOW:  Philip Seplow speaking, yes.

16          THE COURT:  All right.

17          MS. LITZAU:  Good morning, Your Honor.  I'm the court

18   appointed paralegal requested to be here.

19          THE COURT:  Ms. Litzau.

10:30:27  20          MR. FOX:  Morning.  Taylor Fox on behalf of Ransom

21   Carter, who is present.

22          THE COURT:  Good morning.

23          Good morning, Mr. Carter.

24          Okay.  I want to talk about some general matters

10:30:38  25   concerning the case, and then I need to have an ex parte

10:30:41    1    hearing concerning some defense matters with respect to

2    Mr. Rigmaiden.

3            Let me talk first for a minute about the discovery

4    issues that are out there.  I'm going to recount what I think

10:30:55    5    is the situation, and Mr. Rigmaiden and Mr. Battista, you can

6    correct me where I'm wrong.

7            You filed a couple of motions in March,

8    Mr. Rigmaiden, seeking discovery.  There was a response filed.

9    You provided a 74-page reply to the government, I think in

10:31:12   10    late May when we had our status hearing.  The government has

11    produced some information in response to that and has

12    identified other information that doesn't exist, and indicated

13    in a filing that you made, Mr. Battista, on June 11 you were

14    still reviewing some of the points raised in the 74-page reply

10:31:36   15    and you would complete your production to the extent you were

16    able and to the extent it didn't cover privileged materials by

17    June 18th.

18            You've indicated in a recent filing, Mr. Rigmaiden,

19    that you want to brief more completely the privilege that the

10:31:51   20    government is asserting.  And it sounds like there may or may

21    not, I don't know, be some nonprivileged issues that are not

22    yet resolved in terms of discovery.  I couldn't tell from the

23    papers.

24            So it seems to me we at least need to talk about when

10:32:08   25    and how we brief the privilege issue and I need to find out

10:32:12   1   from you all if there's any disagreement on discovery of

2   nonprivileged information or if that's all been resolved.

3           Go ahead, Mr. Battista.

4           MR. BATTISTA:  With respect to --

10:32:26   5           THE COURT:  Mr. Battista, why don't we have you sit

6   down so you're talking straight into the mike, and that way

7   Mr. Seplow will be able to hear you.

8           MR. SEPLOW:  Thank you.

9           MR. BATTISTA:  Your Honor, the defendant and the

10:32:38   10   government, Defendant Rigmaiden and the government, have been

11   working together with respect to nonprivileged information.

12   And when we're talking about nonprivileged information, that's

13   generally any item in the case, primarily any item in the case,

14   that doesn't relate to the sensitive investigative technique of

10:32:59   15   in terms of the operation of the tracking device.

16           The defendant has been sending letters to the

17   government, he has a number of letters pending, and we've been

18   in the process of responding to those letters.  The defendant

19   had asked for a significant amount of material digitally, and

10:33:23   20   including the original discovery that had been provided to

21   him, over 14,000 pages.  That went out this week.  So that

22   response has been made.

23           We're in the process of getting to him or helping him

24   locate discovery that doesn't relate to the tracking device.

10:33:49   25   There's a few additional odds and ends that we're working to

10:33:54  1    get to him, but that's all in process.

2             I think the government's position is still the same

3    with respect to the operation of the -- the information

4    relating to the operation of the tracking device.  At some

10:34:11  5    point, obviously, the defendant will have to file his motion,

6    and then I anticipate then the government will propose to have

7    an ex parte hearing before the Court to bring in experts to

8    give the Court an opportunity to understand the government's

9    position ex parte as to why the operation of this particular

10:34:32  10   device and the information, some of the information that the

11   defendant's seeking, is privileged and should not be

12   disclosed.

13            I think that's the status of where we are right now.

14            Again, the defendant as he goes through the

10:34:48  15   discovery, he sends us letters and we've been attempting to

16   respond to his letters and either point out where in the

17   discovery the information that he's looking for is, or send it

18   to him.

19            THE COURT:  Mr. Rigmaiden.

10:35:07  20            THE DEFENDANT:  Other than a few odds and ends like

21   Mr. Battista said, everything has pretty much been taken care

22   of other than a few issues with the government locating the air

23   card that don't have to deal with sensitive investigative

24   techniques.  And the first issue was I'm requesting the

10:35:26  25   witnesses, the investigators who actually used the devices, I'm

10:35:31  1    not sure if that crosses over into sensitive investigative

2    techniques as well, but that's one of the issues that needs to

3    be resolved.

4         And then the second one is I asked for after

10:35:43  5    receiving storage and time lapse information involved with

6    Northern District of California 08-90331 MISC-RS order, and

7    this is sort of technical issue, something they required

8    Verizon Wireless to do before providing them with information.

9    I was requesting discovery regarding whether or not they

10:36:06  10   complied with that.  And I can go into details about that if

11   you want, but I mean this is something I wanted to file --

12   file a motion about because it's kind of complicated and I

13   have to go into different technical details.

14        And the third motion or third issue, I should say, is

10:36:23  15   information regarding the use of triangulation, trilateration,

16   multilateration, and other air card location calculation

17   related discovery.  And this is probably another thing that

18   crosses over into sensitive investigative techniques, but not

19   necessarily.

10:36:40  20        And then there's -- I'm asking for the unredacted

21   order applications.  There are the two orders out of Northern

22   District of California.  I ask they give me unredacted copies

23   of those.  And there was an investigation detail report by

24   Inspector Wilson at Bates number 12986.  I wanted unredacted

10:37:03  25   copy of that.

10:37:04   1          And recently on June 23rd I received an e-mail

2     from -- or a copy of an e-mail that was sent by Agent Medrano,

3     and there is something redacted out of that.  I haven't asked

4     him yet, but I'm going to be asking for an unredacted copy of

10:37:20   5     that.

6          So other than the sensitive investigative techniques,

7     those are the unresolved discovery issues that don't have to

8     do with sensitive materials as far as locating the air card.

9          THE COURT:  And it sounds as though all of those have

10:37:33  10     been raised with the government except that last one, the

11     redacted e-mail.

12          THE DEFENDANT:  Yes.

13          THE COURT:  So those have all been in letters you've

14     sent?

10:37:41  15          THE DEFENDANT:  Yeah.

16          THE COURT:  Well, let me tell you what I think I'd

17     like to do.  When it comes to ruling on this issue, it's going

18     to be more cumbersome to deal with it if we have to go back

19     through the whole history of briefing starting with the March

10:37:53  20     motions.  It seems to me what we ought to do is identify a date

21     by which you will file a motion to compel, Mr. Rigmaiden, that

22     addresses the privilege issue that you want to brief more fully

23     and includes any other outstanding disagreements; get the

24     government's response; your reply; and hold a hearing.  And so

10:38:11  25     that in reviewing it, I'm dealing with briefing that just

10:38:14  1    addresses the current issues and not the old briefing that

2    addressed issues that have been resolved.

3              Do either of you see a problem with doing it that

4    way?

10:38:22  5              MR. BATTISTA:  I have no objection, Your Honor.

6              THE DEFENDANT:  That's what I was thinking of doing as

7    well, but I wanted to do the sensitive investigative techniques

8    in one motion and then address each of the other issues that --

9    I think there's five or six that don't have to do with the

10:38:38 10   sensitive investigative techniques in separate motions and just

11   incorporate the same facts so each one is kind of separate.

12   But I can do them all in one if that's --

13             THE COURT:  Well, why don't we do this:  Why don't you

14   file one that deals with the sensitive techniques since that is

10:38:53 15   sort of a discrete issue, and second one that deals with all

16   the other odds and ends that are still out there.

17             THE DEFENDANT:  That's fine.

18             THE COURT:  I'm fine with you separating it that way.

19   I don't think we need to file four or five motions on the four

10:39:04 20   or five odds and ends.  You can package those into one.

21             THE DEFENDANT:  Okay.

22             THE COURT:  Let me ask another question before we talk

23   about timing on this.  I saw, Mr. Rigmaiden, that you filed

24   another discovery motion on July 9 which called for the

10:39:20 25   production of evidence potentially subject to suppression under

10:39:27  1   federal rule of criminal procedure 12(b)(4)(B).

2              As you know, 12(b)(4)(B) talks about evidence the

3   government is required to produce under Rule 16, which gets

4   back into the general discovery rule.  Does this motion

10:39:44  5   concern evidence different than the stuff we've been talking

6   about?  Is there some --

7              THE DEFENDANT:  What I was asking for is a list of any

8   evidence that might be subject to suppression so that I can

9   move to suppress that specific evidence.  I'm not asking for a

10:39:59  10  list of all the evidence they have gathered.  Just anything

11  they've gathered from any search that might be subject to a

12  challenge.

13             THE COURT:  I've never seen a motion like that.

14  Typically the defendant decides what is subject to suppression.

10:40:13  15  Typically you don't ask the prosecutor to decide what's subject

16  to suppression.

17             THE DEFENDANT:  No, I'm asking them to point out what

18  evidence was gathered through a search.  So that way -- because

19  there's so much evidence, sometimes it's hard for me to tell

10:40:26  20  what they gathered through what search and what they gathered

21  on their own investigation and something that doesn't have to

22  do with the search.  And one of the issues that they haven't

23  really pointed out what orders authorize what they did and what

24  discovery was gathered under what order.  Some of the response

10:40:43  25  materials have been destroyed, they told me, or the return

10:40:46  1  information has been destroyed.  So I just wanted them to give

2  me a list kind of identifying what evidence they have gathered

3  and what searches they got that evidence from.  When I read the

4  rule, it was my understanding that is what the rule indicated

10:40:59  5  that I could ask for.  Maybe I misunderstood it, I'm not sure.

6  THE COURT:  Well, the rule, I think, is written to

7  make the point that early on in the case the government has to

8  comply with its Rule 16 obligations so that if there's a

9  suppression motion it could be made.

10:41:25  10  The title is Notice of the Government's Intent to Use

11  Evidence.  And it says, "At the defendant's request, at the

12  arraignment or soon afterward as practicable, the defendant

13  may, in order to have an opportunity to move to suppress

14  evidence under Rule 12(b)(3)(C), request notice of the

10:41:44  15  government's intent to use in its evidence in chief at trial

16  any evidence that the defendant may be entitled to discover

17  under Rule 16."

18  So what that says is you can say to Mr. Battista

19  early in the case, tell me what evidence you're going to

10:42:01  20  present at trial in your case in chief.  And they give you

21  that evidence.  That's one of the things they're required to

22  give under Rule 16.  Then you can decide what of that you

23  think might be subject to suppression.

24  They already have an obligation under Rule 16 to give

10:42:17  25  you the evidence they're going to use in their case in chief.

10:42:21   1    I think this is more of a timing issue than a different

2    category of information.

3         Let me hear what Mr. Battista thinks, but I'll come

4    back to you in a minute, Mr. Rigmaiden.

10:42:32   5         MR. BATTISTA:  Your Honor, we've endeavored to give

6    absolutely everything to the defendant well beyond the scope

7    and requirements of Rule 16.  In terms of -- except for the

8    only category generally -- obviously we have the one, sensitive

9    investigative techniques.  But outside of that, we've been

10:42:54  10    withholding the identities of the informants and personal

11    identifying information.

12         But outside of that, primarily we've been giving the

13    defendant pretty much everything in the case.  I think the

14    only -- obviously, it's a never ending process.  I think

10:43:17  15    primarily what we have left is the agents -- there were at

16    least five agents working on this case and they all have

17    e-mails.  And what we have to do now is we have to process the

18    e-mails.  So that's another challenge that we have.

19         But in terms of the primary Rule 16 evidence of what

10:43:39  20    we would present in our case in chief in trial, the defendant

21    already has probably at least 99 percent of that information.

22         In terms of what we're going to present at trial, we

23    obviously haven't identified the particular evidence yet

24    because we've been in the process of responding to the

10:44:01  25    defendant's discovery requests and obviously working on the

10:44:05  1    suppression motion.  So we don't have a list of the evidence,

2    the particular -- we don't have an exhibit list of trial.

3    Particularly with the defendant saying the motion to suppress

4    with the air card is two to three months off, we've been

10:44:23  5    primarily focusing on this issue and obviously not trial at

6    this point.

7         THE COURT:  Rule 16(a)(1)(E), Mr. Battista, puts on

8    the government the obligation upon the defendant's request to

9    produce any evidence the government intends to use in its case

10:44:44 10   in chief.  And if I understand what you're saying, you believe,

11   with the exception of the items you just mentioned, the

12   confidential --

13        MR. BATTISTA:  Informant.

14        THE COURT:  -- witnesses and personal identifiers, you

10:45:00 15   believe you've produced all of that to Mr. Rigmaiden, although

16   you haven't yet organized it into --

17        MR. BATTISTA:  I would say 99 percent of it, Your

18   Honor.  Obviously we continue to move forward -- one of the

19   things the defendant hasn't received yet, he received a summary

10:45:16 20   of it, is his own computer because the defendant has had some

21   issues with the -- with obtaining an expert that can work with

22   the government in terms of the computer.  But that's -- so when

23   I say 99 percent, the defendant has gotten a summary of what

24   was contained in his computer.  And just the index of what was

10:45:39 25   in the defendant's computers printed out is an entire Xerox

10:45:44  1  paper box of materials.  Just the index for what's in his

2  computers.

3         So obviously portions of that will be used and what

4  we've attempted to do is particularly, let's say -- the

10:46:00  5  e-mails back and forth to the undercover agents, those have

6  been printed out and given to the defendant.

7         But we've been waiting for the defendant to resolve

8  his computer expert issues so that we can give him a copy of

9  the computer.  So that's one hold up.  I mean that's -- we're

10:46:20 10  waiting for the defendant to be able to resolve his computer

11  expert issues.

12         Because obviously the position of the government is

13  that the defendant's computer is basically an amazing tool to

14  defraud the government.  It has extremely sophisticated

10:46:37 15  programs on it that -- I mean obviously the defendant and his

16  experts are entitled to have the computer to do whatever they

17  need to do in terms of preparing the case.  But the government

18  obviously has a concern that we do not want to see this

19  computer back out in the public because of the programs that

10:46:55 20  are loaded on the computer and the capabilities of what's on

21  that computer.

22         So as soon as we can work out those issues with the

23  defendant, we'll make that information available to the

24  defendant.

10:47:08 25         So when I say we've given everything possible to the

10:47:12  1   defendant, it's all of the investigators' reports, the other

2   evidence that we've gathered.  But in terms of the digital

3   information on the computer, that's -- you know, I mean we

4   haven't gotten to that point yet with the defendant.  But

10:47:29  5   that's what was on the computer that came from the apartment

6   or the different storage facilities.

7         THE COURT:  Mr. Rigmaiden, it sounds as though the

8   information that you want, most of it's been turned over with

9   the exception of your computer.  But that's not really what

10:47:47 10   you're asking for.  You want them to organize it and tell you

11   which evidence came from which search?

12         THE DEFENDANT:  Basically, yes.  I'm not asking they

13   go through all the evidence and pick out everything they'll be

14   using at trial.  I just kind of wanted things generalized.

10:48:03 15   Like I don't want the government to go through that entire box

16   that he was talking about of the computer hard drive analysis

17   or whatever it is and pick out certain pages that they want to

18   use in trial.  They can just have that as one general category,

19   like this box here is going to be used, something from this box

10:48:23 20   is going to be used, and then say what search it came from and

21   whatever else I asked for, who was the witness to the search

22   and when it was obtained and everything else.

23         It was my understanding that's what the rule said I

24   could ask for.  And if it's not, if I'm not entitled to it,

10:48:39 25   then I'm not entitled to it.  But I thought that I could ask

10:48:41  1   for a list of evidence that may be subject to suppression.

2            So that way -- I mean, what's the point of moving to

3   suppress a piece of evidence if they're not going to use it at

4   trial anyways.  So that was the reasoning of my motion.  It

10:48:54  5   wasn't meant to be a general discovery request or anything

6   like that.

7            THE COURT:  Okay.  I understand -- well, is it

8   correct, Mr. Rigmaiden, that you know about the searches?

9   You're aware of all the searches that occurred, you just don't

10:49:03 10   know --

11            THE DEFENDANT:  I think I do.

12            THE COURT:  -- precisely --

13            THE DEFENDANT:  The ones I know of I've listed in the

14   motion.  But I don't know precisely what evidence came from

10:49:13 15   what search.  And there's one missing return, I think, that I

16   haven't asked for yet.  And then they haven't really

17   categorized what they did as far as evidence they obtained

18   locating the air card and which orders authorized what actions.

19   So that's another thing I'm looking for because if I move to

10:49:32 20   suppress some certain piece of information and I don't know

21   what order they had an authority to obtain that information, or

22   the authority they thought they had, then it's going to be

23   difficult for me to challenge whatever authority they had to

24   obtain that information.  So I wanted to kind of have them

10:49:48 25   generalize the categories and say this evidence we got because

10:49:51  1    of this and this evidence we got because of that.

2         THE COURT:  Is this the general motion to suppress

3    that you've been planning on that we've talked about before?

4         THE DEFENDANT:  Yes.

10:50:05  5         THE COURT:  What I've seen in the past -- I've never

6    seen a request that asks them to identify evidence subject to

7    suppression.  What typically has happened is defendants move to

8    suppress evidence on the basis of what they think is an illegal

9    search and the arguments are made about the nature of the

10:50:23 10    search.  And if the motion is granted, then the order requires

11    suppression of all of the information obtained from that

12    search.  And after the motion is granted, then we figure out

13    what that means in the case in terms of what evidence is

14    actually suppressed.

10:50:45 15         You're planning to make this motion, I know you've

16    been working for some time on the arguments that you will be

17    make -- that you will make.  Do you believe you need to know

18    what evidence ultimately might get suppressed in order to

19    craft the argument?  Or can you make the argument on the basis

10:51:04 20    of the work you've been doing, and then if I grant your motion

21    we can then figure out exactly what needs to be suppressed?

22         THE DEFENDANT:  Well, with the issue and scope, if

23    they went outside the scope of the warrant or took too much

24    evidence based on one warrant that wasn't authorized, I might

10:51:19 25    be able to move to suppress based on that.  So that would be

10:51:22  1    one case where I would need to know what evidence was obtained

2    through what warrant or what other court order.

3              THE COURT:  Mr. Battista, how do we deal with that

4    issue?

10:51:37  5              MR. BATTISTA:  Your Honor, I think that the government

6    should be able to give the defendant a general summary.  I

7    mean, all of the subpoenas -- there's been -- obviously there

8    have been grand jury subpoenas, there have been 2703(d) orders,

9    there were different court orders, trap and trace orders, there

10:52:01 10    were physical search warrants.

11              We can try to endeavor to give the defendant a

12    generalized summary of what was obtained pursuant to those

13    orders.  I mean, I don't think it's inappropriate for the

14    defendant to ask the government for a general summary of,

10:52:27 15    okay, government, you've got 2703(d) order on this date, what

16    did you get as a result of that?

17              All the search warrant returns -- there was one

18    search warrant return that had been given to the defendant's

19    first defense counsel in Southern California, and that may

10:52:49 20    have not made it to the defendant.  That went out this week.

21    So we can understand the defendant may not physically have had

22    that search warrant return.  It was provided but, again, it

23    was provided in hard copy in 2008 to the first of four defense

24    attorneys.  So --

10:53:07 25              THE COURT:  Well, why don't we do this.  Why don't we

10:53:09  1    have you provide those summaries of what came from each

2    search --

3                MR. BATTISTA:  That's fine.

4                THE COURT:  -- to Mr. Rigmaiden.

10:53:15  5                Look at that, Mr. Rigmaiden, see if that gets you

6    what you need.  If it doesn't, then you all ought to confer

7    and we can go forward with this most recently filed motion to

8    address that issue.  But it sounds like the government can

9    compile a summary of what was obtained in each search, and

10:53:32 10    that should allow you to craft your motion.

11                If you think it's a problem after you get it, talk to

12    Mr. Battista, and you can certainly raise it with me again.

13                Now, in terms of the remaining motion to dismiss

14    issues, then, how soon do you think you can be ready,

10:53:49 15    Mr. Rigmaiden, to file the motion addressing the sensitive

16    government information and the second motion addressing the

17    odds and ends that are still out there?

18                THE DEFENDANT:  Well, I pretty much already have them

19    written.  I'm trying to get them typed right now.  They're in

10:54:04 20    note form.  I have the original 74-page motion I did and I can

21    just basically cut, copy, and paste things out of that.

22                But CCA has been having problems with typewriter

23    ribbons and there's a lot of people in line using typewriters.

24    It's hard for me to write things by hand.  I was hoping to

10:54:22 25    type it to make it easier for everyone to read.

10:54:25  1          And my private investigator said he would bring the

2     computer by with the motion on there already.  It would

3     probably take me a few visits to do it.  Like probably three

4     days.  But we've been having problems with the marshals

10:54:37  5     approving him to come out, and we're not sure what the holdup

6     is on that.  So I've been just kind find waiting.  Waiting for

7     CCA to get more ribbons or for the marshals to approve my

8     investigator.

9          THE COURT:  In light of all of that, how soon do you

10:54:51 10     think you can get those motions filed?

11          THE DEFENDANT:  It's really hard for me to say.  If

12     they approve them tomorrow, then I can have them filed within a

13     week.  If they don't approve them for a month from now, it

14     might be a month and a week.  So I don't know when this guy's

10:55:06 15     going to get approved and I don't know when -- how well CCA's

16     going to keep the typewriters stocked with ribbons.  I really

17     don't know.

18          THE COURT:  Do you know what the issue is about

19     letting your investigator in?

10:55:20 20          THE DEFENDANT:  I'm not sure.  Everyone's been calling

21     Mr. Seplow's assistant, my private investigator and the guy

22     they have who they have been trying to get approved to come out

23     who works for them, but no one has really gotten a straight

24     answer.

10:55:34 25          THE COURT:  What's the name of the individual?

21

10:55:38  1          THE DEFENDANT:  Michael Stovall.

2          THE COURT:  He's the one you want to come out?

3          THE DEFENDANT:  Yeah.

4          THE COURT:  Do you know who all you have been talking

10:55:45  5   with the Marshal's Office?

6          THE DEFENDANT:  I was never informed exactly.  My

7   other -- Gregg Lowney, the other investigator, told me that

8   they talked to -- he referred to it as the guy who actually

9   approves everything, talked to the head guy, he said.  I'm not

10:56:00  10  sure exactly who that is.

11         THE COURT:  All right, let's do this:  What I'll say

12  in my order --

13         THE DEFENDANT:  Ms. Litzau is telling me that they

14  spoke with Chief Newton but he's at CCA --

10:56:17  15         I think they need to speak with Chief Newton at CCA,

16  I think.  They were telling me how to go through the marshals

17  directly, but maybe somebody at CCA can fast track it, I'm not

18  sure.

19         THE COURT:  All right, why don't we do this:  What I'm

10:56:30  20  going to say in my order is that you should endeavor to file it

21  by the end of the month.  If you can't, then I'm not going to

22  say you've lost your opportunity, but let's at least try to do

23  that.  I'm going to have my staff call out to CCA and see if we

24  can help clear away any roadblock to getting Mr. Stovall in to

10:56:54  25  see you.

10:56:55  1          THE DEFENDANT:  Okay.  Appreciate that.

       2          THE COURT:  That will at least, if we can get it filed

       3   by the end of the month and briefed in August, then we can get

       4   it resolved in the next six weeks or so and not have it wait

10:57:06  5   beyond that.

       6          Do you need have a ruling on the motion to

       7   suppress -- I'm sorry, on the discovery motion before you can

       8   file your motion to suppress?

       9          THE DEFENDANT:  Yes.

10:57:20 10          THE COURT:  All right.

      11          Mr. Seplow.

      12          MR. SEPLOW:  Yes, Your Honor.

      13          THE COURT:  We're getting lots of noise from your

      14   office.  Could you --

10:57:27 15          MR. SEPLOW:  It's not my office.  I'm on the road.

      16   I'm halfway to Tucson.  I've stopped.  I've been walking in the

      17   heat for a long time, so I went into a cafe, but I'll walk

      18   outside.

      19          THE COURT:  No, go ahead and stay in the cafe.  It's

10:57:39 20   too hot outside, Mr. Seplow.

      21          MR. SEPLOW:  I'm outside.

      22          THE COURT:  All right.

      23          All right.  We have a motion to continue trial and

      24   joinder by Mr. Carter.  Mr. Fox, when you look at the scope of

10:57:59 25   the case and what you've received so far, what is your best

10:58:03  1    rough estimate as to how soon you're likely to be ready for

       2    trial?

       3            MR. FOX:  Honestly, not within 60 days.  I'm going to

       4    be in a capital trial --

10:58:15  5            THE COURT:  Let's have you pull the mike over so

       6    Mr. Seplow can hear you.  You can stay seated.

       7            If is not within 60 days, that's fine.  Just tell me

       8    how long you think it's going to take you to get up to speed

       9    and be ready to defend Mr. Carter at trial.

10:58:31 10            MR. FOX:  At least four months.  I mean, I just

      11    received additional discovery of 14,000 pages and various

      12    disks.  I believe they were copies of the discovery requested

      13    by Mr. Rigmaiden.  So I don't know to what extent in developing

      14    a defense for Mr. Carter I'm going to have to review every

10:58:50 15    single document that may be more applicable from the

      16    government's perspective as to Mr. Rigmaiden's alleged

      17    involvement.

      18            But at any rate, there's quite a bit of discovery and

      19    because my hands have been basically tied the last two months

10:59:06 20    in this capital trial, I don't see an ability to get a firm

      21    understanding of this case, let alone develop a defense,

      22    within any earlier than four months.

      23            THE COURT:  All right.

      24            Mr. Rigmaiden.  You sought a 60-day continuance.  I

10:59:25 25    kind of assumed you did that since that's the standard

10:59:29   1    request.  I was assuming you don't think this case will be

2    ready for trial in 60 days.

3                THE DEFENDANT:  No.

4                THE COURT:  It seems to me what we should do it is

10:59:36   5    this:  I think we should, subject to the defendant's agreement

6    or objection, push the trial date out 120 days.  That would

7    push it to, I think, December 14th.  And then set a status

8    conference at the end of August, actually on September 2nd or

9    3rd.

11:00:00  10                If the briefing goes well on the motions, on the

11    discovery motions, we can be ready to discuss those and rule

12    on them at that point.  But in any event we can get another

13    fix on how the case is going.  But we won't have to deal with

14    moving the trial again in 60 days if we push it out 120.

11:00:18  15                Now, I recognize it may be that approaching 120 days

16    we still aren't fully ready because I know the complexity of

17    the case, but at least that would eliminate the need for

18    dealing with trial date again in 60 days.

19                What are your thoughts on that, Mr. Rigmaiden?

11:00:33  20                THE DEFENDANT:  I have no objection.

21                THE COURT:  Mr. Fox?

22                MR. FOX:  No objection.

23                THE COURT:  Mr. Battista?

24                MR. BATTISTA:  No objection, Your Honor.

11:00:39  25                THE COURT:  Okay.

11:00:42  1          MR. FOX:  I spoke out of turn, Your Honor.  I answered

2   on Mr. Carter's behalf when he was trying to get my attention

3   while I was listening to this Court.  Mr. Carter has voiced an

4   objection to continuing this out 120 days.

11:00:57  5          I maintain my position that I can't ethically

6   represent Mr. carter in a competent fashion if a trial is to

7   go any time within four months.

8              (Counsel and client confer.)

9          MR. FOX:  Mr. Carter now withdraws his objection, Your

11:01:42 10   Honor.

11         THE COURT:  All right.  So you do not object, Mr. Fox,

12   to a 120-day continuance; is that right?

13         MR. FOX:  That is correct.

14         THE COURT:  Okay.  We will then move the trial date to

11:01:53 15   December 14th, 2010.  We'll put that in the order that we sign

16   on the basis of the motion that was filed.

17          And let's set a status conference in the case for

18   September 2nd, if that works with counsel, at 3 p.m.  Does

19   that work for everybody?

11:02:17 20         MR. BATTISTA:  Yes, Your Honor.

21         MR. SEPLOW:  I'll try to make it work.  I don't know,

22   Your Honor.

23         MR. FOX:  That's fine with me, Your Honor.  Mr. Carter

24   would request his presence be waived.

11:02:28 25         THE COURT:  All right.

11:02:29  1    Okay, we've dealt with the discovery issues and the

2    pending motions.  Are there other matters, Mr. Battista, that

3    you would like to raise today?

4            MR. BATTISTA:  No, Your Honor.  Just for Defendant

11:03:01  5    Rigmaiden's information, by the end of next week we'll send him

6    a letter giving him our final position on his time lapse

7    request.  I believe we responded to the triangulation request,

8    but we'll revisit it.  And also the -- he's requested

9    unredacted orders and a unredacted case report by Postal

11:03:25 10    Inspector Wilson.  We'll give him a final answer on that by the

11    end of next week.  Then as soon as we can find out what e-mail

12    he's addressing, we'll give him a final answer on that, too.

13            It's going to take a while to go through the

14    discovery to give him a summary of all the evidence as it

11:03:52 15    relates to particular either subpoenas, orders, search

16    warrants.  And I don't know exactly how long it will take us

17    to do that.  Obviously the defendant has a motion pending, but

18    it's going to take me a while.  It will take us a while to do

19    that.

11:04:13 20            THE COURT:  Well, let's do this:  Why don't you

21    compile that summary as soon as you can, get it to

22    Mr. Rigmaiden.  If it doesn't resolve the issues, Mr. Rigmaiden

23    will let you know and then you should file a response to the

24    motion.  Why don't you not file the response until you've given

11:04:33 25    it to Mr. Rigmaiden and you've seen if there's a disagreement

11:04:36  1  over that issue.

2          MR. BATTISTA:  If the defendant doesn't have any

3  objection to that, that's fine.  That would work.

4          THE DEFENDANT:  No objection.

11:04:43  5          One point I wanted to make was I don't think I'm

6  going to be challenging any subpoenas that were obtained under

7  2703 other than possibly one that I already -- I've already

8  looked into it and I know what evidence they obtained under

9  that.  So when they go through and make their list, they can

11:05:02  10  pass over any subpoena.  I'm more interested in the court

11  orders and warrants.

12          MR. BATTISTA:  That will simplify matters.

13          THE COURT:  Yeah, that's helpful.

14          Do you have in front of you, Mr. Rigmaiden, the

11:05:14  15  e-mail that's been redacted that you were going to mention in

16  a letter?

17          THE DEFENDANT:  I don't have it in front of me, but I

18  do note that it was provided with a June 23rd discovery, most

19  recent discovery they provided.  It was the discovery they

11:05:28  20  provided after they read the 74-page reply that I sent.

21          THE COURT:  Why don't you go ahead and put it in a

22  letter, and that way Mr. Battista will know exactly which one

23  you're referring to.

24          MR. RIGMAIDEN:  Okay.

11:05:40  25          MR. BATTISTA:  We'll start to look for it.

11:05:42   1          THE COURT:  All right.  Anything else, Mr. Battista,

2     that you'd like to raise?

3          MR. BATTISTA:  No, Your Honor.  Thank you.

4          THE COURT:  Mr. Fox, do you have other matters that

11:05:48   5     you would like to raise today?

6          MR. FOX:  None.

7          THE COURT:  Okay.  Why don't we go ahead, then, and

8     excuse the government, excuse Mr. Fox and Mr. Carter, and I'll

9     talk to Mr. Rigmaiden and the defense team about some ex parte

11:06:01  10     issues.  Well, but before we do that, Mr. Rigmaiden, is there

11     anything else you wanted to raise with everybody present?

12          THE DEFENDANT:  I have nothing further to raise.

13          THE COURT:  Okay.

14          (The sealed ex parte discussion was reported but not

11:06:11  15     transcribed herein.)

16          (End of transcript.)

17                         *  *  *  *  *

18

19

20

21

22

23

24

25

**C E R T I F I C A T E**

I, PATRICIA LYONS, do hereby certify that I am duly appointed and qualified to act as Official Court Reporter for the United States District Court for the District of Arizona.

I FURTHER CERTIFY that the foregoing pages constitute a full, true, and accurate transcript of all of that portion of the proceedings contained herein, had in the above-entitled cause on the date specified therein, and that said transcript was prepared under my direction and control, and to the best of my ability.

DATED at Phoenix, Arizona, this 9th day of February, 2011.

                                   s/ Patricia Lyons, RMR, CRR
                                   Official Court Reporter