# MEMORANDUM OF POINTS AND AUTHORITIES

# MOTION TO DISMISS FOR DESTRUCTION OF EVIDENCE

## I. INTRODUCTION

The government relied upon a provision in the N.D.Cal. 08-90330MISC-RS order to destroy the real-time aircard location data obtained under the order and obtained via the StingRay. The destroyed evidence would unquestionably show that the aircard was located precisely inside apartment No. 1122 and not to an area covering two or three additional apartments as claimed by the government. In his *Motion For Discovery*, the defendant makes a strong showing that the government's three or four apartment scenario is inaccurate.[1] If the exacting precision of the government's StingRay were to be proven, the defendant would be able to more effectively argue that the government conducted a highly intrusive and unreasonable search to locate the aircard. The destroyed real-time aircard location data had an apparent material value at the time it was destroyed. The government had no logical reason to destroy the real-time aircard location data other than to conceal an illegal search. This act of bad faith violates the defendant's Fifth Amendment due process rights and Fourth Amendment right to challenge the validity of the search. The government cannot claim a good faith reliance on the N.D.Cal. 08-90330MISC-RS order because any order that authorizes the destruction of relevant and material evidence violates the Constitution and violates rules established in longstanding case law. If the Court is persuaded by the government's argument that there is a lesser expectation of privacy in locating the aircard to three or four apartments, and if the defendant is unable to prove his one apartment claim with the evidence he has available, then the case merits dismissal with prejudice for the government's destruction of evidence needed by the defendant in order to prove his one apartment claim.

///

///

---

1.   *See Motion For Discovery*, Section V(E), p. 27 and VI(C)(1)(a), p. 46 (Dkt. #590-1 [lodged proposed]).

- 1 -

## II.   INCORPORATIONS

### A.   External document incorporations.

The following additional motions/filings are hereby incorporated into this motion by reference pursuant to LRCiv 7.1(d)(2) when referenced through LRCrim 12.1:

   1.   *Motion For Disclosure Of All Relevant And Helpful Evidence Withheld By The Government Based On A Claim Of Privilege* (hereafter "Motion For Discovery") (Dkt. #590 [lodged proposed]);

   2.   *Submission Of Materials Related To Applications And Court Orders Numbered 08-90330 And 08-90331, Authorized By Magistrate Judge Richard Seeborg, Northern District Of California, On July 11, 2008* (Dkt. #470 [sealed]);

   3.   *First Submission Of Consolidated Exhibits Relating To Discovery And Suppression Issues* (hereafter "1st Consolidated Exhibits") (Dkt. #587);

## III.   FACTS

The defendant fully incorporates by reference the *Procedural History* (Section IV) and *Facts* (Section V) contained in his *Motion For Discovery* (Dkt. #590-1 [lodged proposed]). The noted sections in the defendant's *Motion For Discovery* should be fully read prior to continuing with this motion. A summarized and adapted version of the most relevant sections is included below.

### A.   The government obtained the N.D.Cal. 08-90330MISC-RS order to destroy real-time aircard location data.

On July 11, 2008, and while citing Fed. R. Crim. P. 41(b), 18 U.S.C. §§ 2703 and 3117, and 28 U.S.C. § 1651, AUSA Shawna Yen signed and submitted an order application in the Northern District of California having docket No. 08-90330MISC-RS. *See* Dkt. #470-1. Through the order application, AUSA Yen sought an order directing Verizon Wireless to (1) assist the government in the use and monitoring of a mobile tracking device for the aircard while the aircard is located inside private residences and other locations not open to public or visual surveillance, and (2) provide the government immediately on request with all information needed to ascertain the physical location of the aircard. *See id.* (application), p. 2-3. AUSA Yen also sought specific authority allowing the government to (1) ignore Fed. R.

Crim. P. 41(f), (2) not serve a copy of the order on any owner of the aircard, (3) not make an inventory of any resulting information, and (4) destroy all data obtained by the order at the conclusion of the aircard locating mission. *See id.* (application), p. 3.

On July 11, 2008, United States Magistrate Judge Richard Seeborg signed an order approving some of AUSA Yen's requests made through the N.D.Cal. 08-90330MISC-RS order application. *See id.* (order). The N.D.Cal. 08-90330MISC-RS order required Verizon Wireless, for a period not to exceed 30 days and beginning no later than July 21, 2008, to provide the government with all information, facilities, and technical assistance needed to ascertain the location of the aircard. *See id.* (order), p. 2-3. Regarding AUSA Yen's request to destroy evidence and ignore what would otherwise have been standard warrant requirements, Judge Seeborg granted the request in full:

> WHEREAS the return and inventory requirements of Federal Rule of Criminal Procedure 41(f) do not apply to the information sought to be obtained by the instant application, Special Agents of FBI are therefore not required to serve a copy of this Order on any owner of the [][aircard], nor to make an inventory of any resulting information to be served on any such owner, except upon further Order of the Court. However, at the conclusion of the tracking mission, the investigating agency shall expunge all of the data obtained by this Court Order;

*Id.* (order), p. 3.

Verizon Wireless was served with the N.D.Cal. 09-90330MISC-RS order on an unknown date. Nearly all events relating to the execution of the N.D.Cal. 09-90330MISC-RS order are unknown due to destruction of evidence and the government withholding the relevant and helpful evidence being requested through the defendant's *Motion For* Discovery (Dkt. #590 [lodged proposed]). The government did not comply with Rule 41(f) in the effect that the notation of time, receipt, service, and return requirements were not followed. Additionally, by virtue of violating Rule 41(f), the government prevented Judge Seeborg from complying with Rule 41(i).[2] In response to the defendant's request for all data and information obtained via the N.D.Cal 08-90330MISC-RS order, the government stated that

---

2.   Rule 41(i) reads, "[t]he magistrate judge to whom the warrant is returned must attach to the warrant a copy of the return, of the inventory, and of all other related papers and must deliver them to the clerk in the district where the property was seized." *Id.*

- 3 -

"[t]he data [obtained via the N.D.Cal. 08-90330MISC-RS court order] has been expunged in accordance with the order..."[3] and, additionally, the government claims to have destroyed the aircard location evidence obtained as a result of the FBI technical agents/personnel operating the StingRay[4] (portable/transportable wireless device locator manufactured by Harris).

## IV.   ARGUMENT

The defendant's Fifth and Fourth amendment rights were violated by the government when it destroyed the real-time aircard location data in bad faith. In *Barton*, the Ninth Circuit held "that the due process principles announced in *Brady* and its progeny must be applied to a suppression hearing involving a challenge to the truthfulness of allegations in an affidavit for a search warrant." United States v. Barton, 995 F.3d 931, 935 (9th Cir. 1993). The *Barton* court extended the rationale in *Franks* "with equal force to the destruction of evidence which is necessary to impeach material allegations in an affidavit for a search warrant." *Id.  See also* Franks v. Deleware, 438 U.S. 514, 516 (1978) (a criminal defendant has a right under the Fourth Amendment to challenge the truthfulness of statements made in an affidavit supporting a search warrant). The *Barton* court noted that "[b]y deliberately destroying impeaching evidence, an officer could feel secure that false allegations in his or her affidavit for a search warrant could not be challenged." Barton, 995 F.2d at 935. "Such a result would effectively deprive a criminal defendant of his Fourth Amendment right to challenge the validity of a search warrant." *Id.* In the present case, the defendant is requesting that the Court extend the *Barton* rationale (relating to destruction of impeachment evidence in the context of a suppression hearing) to the destruction of evidence that had an apparent material value in proving illegal searches and seizures in general. *See* United States v. Monzulla, 195 Fed. Appx. 629 (9th Cir. 2006) (extending *Barton* beyond *Franks*

---

3.   *See Motion For Discovery*, Attached: *Submission Pursuant To LRCiv 37.1*, p. 7 (Dkt. #590-2 [lodged proposed]).

4.   *See* EXHIBIT 33 of *1st Consolidated Exhibits* (Letter by AUSA Battista, sent to the defendant: "there is no record of the actual date and time the subject records were destroyed but one of the personnel who operated the subject equipment believes that they were destroyed shortly after [][the defendant's] arrest on August 3, 2008.").

- 4 -

impeachment issues to cover the destruction of evidence having the potential to show that a Fourth Amendment search was unreasonable in general).

### A. The real-time aircard location evidence had an apparent material value when it was destroyed by the government.

After locating the aircard, the government relied upon the real-time aircard location data to obtain other evidence used to indict the defendant.[5] As indicated in Section IV(B)(2), *infra*, the government's entire case relies upon the aircard location and thus relies upon the validity of the search and seizure used to obtain that location. An analysis of current and past events shows that the destroyed real-time aircard location data had an apparent material value (at the time it was destroyed) with respect to Fourth Amendment arguments relating to how precisely the aircard was located. AUSA Battista is now attempting to insulate the government from the defendant's Fourth Amendment challenges by claiming that the aircard was located to an area covering three or four apartments.[6] AUSA Battista's argument is that the defendant had no reasonable expectation of privacy in the "general proximity" of the aircard while it was inside apartment No. 1122.[7] Immediately before the evidence was destroyed, AUSA Battista was acting outside his quasi-judicial role and in an investigative role during the aircard locating mission. While having all the facts before him as an investigator and as an attorney, there is no reason why AUSA Battista would not have realized the legal significance of the the real-time aircard location data with respect to the "general proximity" argument he is raising now.[8] Furthermore, the government destroyed

---

5.   *See Motion For Discovery*, Section V(F), p. 30 and V(H), p. 32 (Dkt. #590-1 [lodged proposed]).

6.   *See Government's Memorandum Regarding Law Enforcement Privilege And Request For An Ex Parte And In Camera Hearing If Necessary*, p. 8 ("Using the law enforcement sensitive equipment, the FBI personnel were able to determine that the subject aircard was operating within an area the size of three to four apartments within the Domicilio Apartment Complex.... The FBI personnel only advised the investigation team of the area noted immediately above.") (Dkt. #465).

7.   *See* Section IV(B)(1), *infra* (quoting AUSA Battista's "general proximity" argument).

8.   AUSA Battista had the benefit of being actively involved in the investigation to locate the aircard and the benefit of being an attorney with roughly 23 years of experience as of the time the evidence was destroyed. *See* Lawyers.com (website), *Frederick A Battista – Lawyer in Phoenix, Arizona (AZ) – Lawyers.com*, available at

the real-time aircard location data shortly after the defendant's arrest[9] so neither the agents nor prosecution can claim that they were unaware of the importance of the evidence with respect to the defendant personally.

The destroyed real-time aircard location data would have unquestionably disproved the government's claim of a three or four apartment precision scenario in locating the aircard. The discovery shows conflicting statements regarding how precisely the aircard was located[10] and the relevant science,[11][12] public information about Harris devices,[13] and a scientific test performed by Harris[14] makes a strong showing that the aircard was located precisely inside apartment No. 1122. If the government had not destroyed the real-time aircard location data then the defendant's mobile telecommunications expert would have been able to analyze the data and show that the FBI technical agents/personnel located the aircard precisely inside apartment No. 1122. By testing the validity of the claimed location result, the government's argument relating to a broader search will be rendered a non-issue and this will increase the effectiveness of the defendant's *Motion To Suppress*.[15]

---

http://www.lawyers.com/Arizona/Phoenix/Frederick-A-Battista-45089-a.html (last accessed Aug. 3, 2011) (admitted to Maryland Bar in 1985).

9.    *See* fn. 4, *supra*.

10.   *See Motion For Discovery*, Section V(E), p. 27-30 (citing evidence) (Dkt. #590-1 [lodged proposed]).

11.   *See id.*, Section VI(C)(1)(a), p. 46-48 ("Such a relatively broad precision claim on the *Y* axis (approximately *71.9 ft*) raises serious doubts considering the government also claims to have eliminated apartment Nos. 1119, 1121, 1123 and 1125 (located approximately **8 ft** across the hall) and apartment Nos. 1220, 1222, 1224 and 1226 (located **9 ft** above the ground floor of the first story apartments).") (Dkt. #590-1 [lodged proposed]).

12.   The defendant's mobile telecommunications expert will testify that the government's claim of a three or four apartment scenario is extremely unlikely.

13.   *See id.*, Section VI(C)(1)(a), p. 47 (citing evidence) (Dkt. #590-1 [lodged proposed]).

14.   *See id.*, Section VI(C)(1)(a), p. 47-48 ("[A] Harris corporation patent relating to wireless device locating technology states that a test using **only one** geolocation technique (*i.e.,* time-of-flight (TOF)) produced a **20 ft** worst case error location calculation[.]" (footnote omitted)) (Dkt. #590-1 [lodged proposed]).

15.   Although there are Fourth Amendment violations under either a "one apartment" scenario, "three apartment" scenario, or "four apartment" scenario, the arguments will be different as the Fourth Amendment violations are factually different. Additionally, taking into consideration the government's position, there is dispute in this case on whether locating the aircard to an area greater than just apartment No. 1122 actually implicates one's Fourth Amendment rights—notwithstanding the fact that the aircard was electronically located

> **B.     The government knowingly and deliberately destroyed the real-time aircard location evidence in order to conceal it from the defendant and to insulate the prosecution from Fourth Amendment challenges relating to the StingRay.**
>
> **1.   The government destroyed evidence with a subjective intent to harm the defense.**

Emails sent by IRS-CI agent Denise L. Medrano[16] and AUSA Battista[17] make it clear that immediately after the aircard was located the government set out to conceal the locating equipment and real-time search for the aircard with a subjective intent to insulate the FBI and prosecution from later challenges made by the defense regarding use of the StingRay. This concealment is a strong indication that the subsequent destruction of real-time aircard location data (shortly after the defendant's arrest) was done with a subjective intent to serve the same purpose.[18] The prosecution's current position further supports this conclusion. The government's argument with respect to illegal searches and seizures is that "[e]ven if defendant were to obtain the detailed information he seeks, however, it could not lead to suppression of any evidence... [because] the electronic surveillance techniques only led the investigative team to the general proximity of the subject aircard... [and] defendant while inside apartment No. 1122 regardless.

---

16.   EXHIBIT 34 of 1st Consolidated Exhibits (July 17, 2008 email by IRS-CI Agent Medrano, sent to Albert A. Childress *et al.*) ("The tech guys were able to narrow the signal to 3 apartments. Today, we will be doing as much follow up research as we can. We need to develop independent probable cause of the search warrant...FBI does not want to disclose the **[REDACTED]** [][(*i.e.*, portable/transportable wireless device locator)] (understandably so)....").

17.   See EXHIBIT 38 of 1st Consolidated Exhibits (July 17, 2008 email by AUSA Battista, sent to AUSA Yen) ("The team has narrowed the search down to the occupant of a single apartment that was leased by a white male using a false CA Driver's License.... The main effort now may be to tie the target to the case without emphasis on the **[REDACTED]** [] [(*i.e.*, portable/transportable wireless device locator)].").

18.   This is a case where the government destroyed evidence knowingly and deliberately considering it sought judicial authority to do so. *See* Dkt. #470-1, p. 3 (N.D.Cal. 08-90330MISC-RS order application). This is not a case where the government can seek impunity because of accidental or negligent destruction of evidence. For a comparison, *see* Barton, 995 F.3d at 936 (9th Cir. 1993) (No bad faith because "[t]he record does not support Barton's contention that the officers *knowingly* placed the marijuana in unventilated plastic bags for the purpose of destroying it." (emphasis in original)) and United States v. Vera, 231 F. Supp.2d 997, 1002 ("The Court finds no evidence of actual bad faith... [considering] there is no dispute that [][the agents involved] did everything they could to ensure all evidence seized in this case was properly preserved.").

*MEMORANDUM OF POINTS AND AUTHORITIES  
MOTION TO DISMISS FOR DESTRUCTION OF EVIDENCE  
CR08-814-PHX-DGC*

1  had no expectation of privacy with respect to the general proximity of the aircard..."[19]  The
2  government is using a three apartment scenario to insulate itself from the defendant's claim
3  that the aircard was located precisely inside apartment No. 1122.
4        Furthermore, the government is currently withholding certain non-destroyed evidence
5  based on a claim of privilege so there is no logical reason why the government could not
6  have preserved the destroyed real-time aircard location data along with it.  The prosecution
7  drafted the proposed order containing the "destroy the evidence" provision while articulating
8  no legitimate purpose for the destruction of evidence in either the order application or
9  proposed order itself.  This is a strong indication that the only purpose for the provision was
10 to reap the benefit of having evidence unavailable to a defense involving challenges made to
11 the intrusiveness of the technology.  Under a subjective analysis, the government knowingly
12 and deliberately destroyed relevant and material evidence with a subjective intent to harm
13 the defense.

### 2. The government destroyed evidence with a objective intent to harm the defense.

      The government's entire case relies on the aircard location evidence and other evidence being direct unattenuated fruits of the aircard locating mission.  The prosecution previously indicated that if they lose the aircard location evidence then the government has no case against the defendant.[20]  Knowingly and deliberately destroying the very evidence upon which a criminal prosecution relies is not an act that a government agent or prosecutor is willing to accept as reasonable.  *See* Section IV(C)(2), *infra*, explaining how 45 year old, 7 year old, and 15 year old cases dictate that relevant and material evidence should be preserved for the defendant under the circumstances.  A reasonable government agent or prosecutor would understand that the the real-time aircard location data needs to be

---

19.   *Government's Memorandum Regarding Law Enforcement Privilege And Request For An Ex Parte And In Camera Hearing If Necessary*, p. 14 (Dkt. #465).

20.   *September 8, 2010 Status Conference, Partial Transcript of Proceedings*, [MR. BATTISTA (AUSA)] at 16:33:34 – 16:34:14 ("[O]bviously, if the government loses the information that we gained by gaining access to the location of the air card, we don't have a case against the defendant.  But if we win that, the evidence is quite extensive and direct.") (Dkt. #442 [Notice]).

- 8 -

preserved so that the defendant will have the opportunity to challenge the search upon which the government's entire prosecution relies. A reasonable government agent or prosecutor would have classified the real-time aircard location data as privileged and then withheld it with the other privileged evidence instead of wiping it out of existence. Furthermore, an order that directs the government to cover up a search that was the impetus of the very evidence used to indict the defendant is so blatantly unconstitutional that any reasonable government agent or prosecutor would seriously question the order's legitimacy.[21] Under an objective analysis based on common sense, the government knowingly and deliberately destroyed relevant and material evidence with an objective intent to harm the defense.

> **C. The government acted in bad faith when it destroyed the real-time aircard location evidence and the government's actions are not protected by a good faith reliance on an order that should have never been issued.**
>
> **1. The government acted in bad faith when it destroyed the real-time aircard location evidence while having knowledge of its material value.**

The government acted in bad faith when it destroyed the real-time aircard location data considering it knew of its material value and destroyed it with an intent to harm the defense. As indicated in Section, IV(A), *supra*, the destroyed real-time aircard location data had an apparent material value that cannot be disputed. In light of the events both before and after the government's destruction of evidence, the prosecution would be hard pressed to prove that the government had no knowledge of the material value of the the real-time aircard location data at the time it was destroyed. As indicated in Section, IV(B)(1) and (2), *supra*, the government destroyed the evidence with both a subjective and objective intent to harm the defense. Under either analysis, the government's action show that it set out to harm the defense. Knowledge of the apparent material value of the evidence at the time it was destroyed and an intent to harm the defense shows bad faith.

The *Barton* court extended the *Youngblood* bad faith requirement to the destruction of

---

21.   *See* Section IV(C)(2), *infra* (further explaining how the government did not act with a good faith reliance on the N.D.Cal. 08-90330MISC-RS order when it destroyed evidence).

1  evidence that may be potentially useful at a suppression hearing.  *See* Barton, 995 F.2d at
2  935 (9th Cir. 1993).  *See also* Arizona v. Youngblood, 488 U.S. 51, 58 (1988) ("[U]nless a
3  criminal defendant can show bad faith on the part of the police, failure to preserve potentially
4  useful evidence does not constitute a denial of due process of law.").  In determining bad
5  faith, the *Barton* court adapted the test used in *Cooper*: "[t]he presence or absence of bad
6  faith turns on the government's knowledge of the apparent exculpatory value of the evidence
7  at the time it was lost or destroyed."  Barton, 995 F.2d at 935 (alteration in original) (quoting
8  United States v. Cooper, 983 F.2d 928, 931 (9th Cir. 1993)).  The *Barton* court adapted the
9  *Cooper* test so that it would analyze the government's knowledge of the apparent
10 impeachment value of the destroyed evidence instead of the apparent exculpatory value.  *See*
11 Barton, 995 F.2d at 936 ("No evidence was presented to demonstrate that the officers
12 deliberately destroyed evidence in order to insulate the allegations... from impeachment.").
13 In the present case, when applying the same principles discussed in *Barton* and *Youngblood*
14 but to evidence that had an apparent material value to determining a Fourth Amendment
15 violation, it is clear that the government destroyed the real-time aircard location data in bad
16 faith.

17 **2. The N.D.Cal. 08-90330MISC-RS order does not apply to location data obtained via the StingRay and the government cannot claim that it acted in good faith when it destroyed the real-time aircard location evidence while relying on the N.D.Cal. 08-90330MISC-RS order.**
18
19
20      As indicated in Section, III(A), *supra*, the N.D.Cal. 08-90330MISC-RS order
21 contained a government drafted provision directing the government to destroy all location
22 data obtained by the order.  First, the N.D.Cal. 08-90330MISC-RS order does not apply to
23 the government's use of the StingRay[22] or other portable/transportable wireless device
24 locator so any real-time aircard location data obtained by such a device does not fall under
25 the "destroy the evidence" provision of the order.  Second, the government cannot claim that
26 it relied in good faith on the "destroy the evidence" provision of the N.D.Cal 08-

27 ─────────────────────────
   22.  *See Motion For Discovery*, Section VI(F), *et seq.*, p. 86 (explaining how the N.D.Cal.
28 08-90330MISC-RS order applies to a mobile tracking device and not to a portable/transportable wireless device locator) (Dkt. #590-1 [lodged proposed]).

- 10 -

1  90331MISC-RS order considering any order that authorizes the government to obtain
2  evidence, and thereafter destroy that evidence, is so blatantly unconstitutional that no
3  reasonable government agent or prosecutor would be able to rely on it in good faith.  Illegal
4  government actions are not protected by a reliance on an order that should have never been
5  issued.
6         In *Johns*, the Ninth Circuit analyzed the government's good faith reliance on a warrant
7  wherein "a magistrate approved the deletion of the notice provision..." United States v.
8  Johns, 948 F.2d 599, 603 (9th Cir. 1991).  The Johns court applied the good faith exception
9  after finding that the failure to provide for a seven-day notice was not "a deficiency so
10 fundamental that the magistrate should never have issued the warrant." *Id.* at 605-06.  The
11 *Johns* court applied the good faith exception considering "the rule that notice of searches
12 should be given within seven days, absent a showing of necessity, had not yet been
13 announced." *Id.* (citing as the case announcing the seven-day notice rule as United States v.
14 Freitas, 800 F.2d 1451, 1456 (9th Cir. 1986) (Freitas I)).  However, the *Johns* court made it
15 clear that after *Freitas I*, a "deliberate disregard of this rule will indicate to reviewing courts
16 that the warrant should never have been issued, and will render inapplicable the good faith
17 exception." *Id.* at 606.  The good faith analysis in *Johns*, applied to a magistrate's deletion of
18 a notice provision in a warrant, applies equally well in the present case to the magistrate's
19 addition of a "destroy the evidence" provision in an order.
20        In the context of *Johns*, the government's destruction of the real-time aircard location
21 data is not protected by a reliance on the N.D.Cal. 08-90330MISC-RS order.  Although the
22 N.D.Cal. 08-90330MISC-RS order seemingly "authorized" the government's destruction of
23 evidence,[23] the magistrate should have never issued the order considering there are well
24 established rules requiring the preservation of evidence.  While relying on the N.D.Cal. 08-
25 90330MISC-RS order to destroy evidence, the government deliberately disregarded rules
26 announced and reiterated in numerous longstanding cases such as *Brady*,[24] *Gamez-Orduno*,

---

27  23.    Incidentally, Judge Seeborg also "deleted" the notice provision out of the N.D.Cal. 08-90330MISC-RS order just like in the warrant addressed in *Johns* and *Freitas I*.
28  24.    *See* Brady v. Maryland, 373 U.S. 83, 87 (1963) (Withholding evidence "violates due

*MEMORANDUM OF POINTS AND AUTHORITIES*
*MOTION TO DISMISS FOR DESTRUCTION OF EVIDENCE*
*CR08-814-PHX-DGC*

1  [25] and *Barton*.[26]  The Supreme Court decided *Brady* more than 45 years prior to the

2  N.D.Cal. 08-90330MISC-RS order being issued.  The Ninth Circuit decided *Gamez-Orduno*

3  more than 7 years prior to the N.D.Cal. 08-90330MISC-RS order being issued and *Barton*

4  more than 15 years prior.  Applying *Johns*, the N.D.Cal. 08-90330MISC-RS order should

5  have never been issued and a good faith reliance on the unconstitutional provision does not

6  apply.  This lack of good faith further supports the government's showing of bad faith for the

7  purposes of the *Barton* and *Youngblood* bad faith requirement.[27]

### D. There is a clear distinction between the destruction of potentially exculpatory evidence and the destruction of evidence that is relevant and material to a motion to suppress.

The inculpatory or exculpatory value of the aircard location evidence is not at issue. The apparent exculpatory value of destroyed evidence only matters if the evidence will be introduced during the guilt or punishment stage of the proceedings.  Any case that deals specifically with the destruction of potentially exculpatory evidence is not directly on point with the destruction of evidence that is relevant and material to a motion to suppress.  "The Supreme Court has not decided the question whether the destruction of evidence which had the potential at a suppression hearing to impeach allegations in an affidavit for a search warrant violates due process."  *Barton*, 995 F.2d at 934.[28]  However, the Ninth Circuit has

---

process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.").

25.  *See* <u>United States v. Gamez-Orduno</u>, 235 F.3d 453, 461 (9th Cir. 2000) ("The suppression of material evidence helpful to the accused, whether at trial or on a motion to suppress, violates due process if there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." (internal citations omitted)).

26.  *See* <u>Barton</u>, 995 F.3d 931 (9th Cir. 1993), (After applying concepts from *Franks*, *Brady*, and *Youngblood*, the Ninth Circuit required that the government preserve evidence having the potential to impeach allegations in an affidavit for a search warrant).

27.  The Supreme Court makes little distinction between the different types of "good faith" and "bad faith" when determining whether government conduct is "objectively reasonable." For example, in one context the Supreme Court held that "the same standard of objective reasonableness that [][was] applied in the context of a suppression hearing in *Leon* defines the qualified immunity accorded an officer [in a civil case.]"  <u>Groh v. Ramirez</u>, 540 U.S. 551, 565 fn. 8 (2004).

28.  As previously indicated, the Ninth Circuit extends *Barton* beyond *Franks*

*MEMORANDUM OF POINTS AND AUTHORITIES*
*MOTION TO DISMISS FOR DESTRUCTION OF EVIDENCE*
*CR08-814-PHX-DGC*

decided the question and found that it does violate a defendant's due process rights regardless of how incriminating the destroyed evidence may be at trial or sentencing.

In *Barton*, a detective made a probable cause statement in an affidavit in support of a search warrant indicating that he smelled the odor of marijuana inside Barton's residence. *Id.* at 932-33. A search warrant issued and officers used it to seize marijuana from Barton's residence. *Id.* at 933. Later, officers failed to properly ventilate the bags containing the marijuana causing it to decompose. *Id.* Barton argued that the failure to preserve the marijuana "denied him access to evidence that would have supported his contention that the plants did not emit an odor, and demonstrated that the allegations in the affidavit were false." *Id.* Considering the marijuana was inculpatory, the *Barton* court found that "the failure to preserve this evidence does not amount to the destruction of exculpatory evidence in violation of *Brady* and its progeny." *Id.* at 934. However, later in the opinion, after incorporating concepts from *Franks* and *Youngblood*, the *Barton* court found that the destruction of the marijuana evidence would have violated due process if (1) it had the potential to impeach the probable cause statement in the search warrant affidavit,[29] and (2) it was destroyed in bad faith. *Id.* at 934-35. The possible inculpatory or exculpatory value of the destroyed evidence played no role in *Barton* and it should play no role in the present case either.

### V.     CONCLUSION

The government acted in bad faith when it destroyed the real-time aircard location data after the defendant's arrest and while the evidence had an apparent material value to Fourth Amendment issues. The government destroyed the evidence knowingly and deliberately with both a subjective and objective intent to harm the defense. The "destroy the evidence" provision of the N.D.Cal. 08-90330MISC-RS order does not apply to the aircard location data obtained via the StingRay and, under any application, the noted

---

impeachment issues to cover the destruction of evidence having the potential to show that a Fourth Amendment search was unreasonable in general. *See* Monzulla, 195 Fed. Appx. 629 (9th Cir. 2006).

29.     Application of *Barton* is not limited to *Franks* impeachment issues. *See* fn. 28, *supra*.

- 13 -

1 provision was blatantly unconstitutional and in violation of well established rules. The
2 government cannot claim a good faith reliance on the N.D.Cal. 08-90330MISC-RS order for
3 its actions in destroying the evidence. The defendant respectfully requests that the Court
4 dismiss the case with prejudice, as explained in the accompanying motion, or make an
5 immediate factual finding that the aircard was located precisely inside apartment No. 1122
6 for the purposes of deciding all Fourth Amendment issues.
7 ///
8 ///
9 ///
10 ///
11 ///
12 ///
13 ///
14 ///
15 ///
16 ///
17 ///
18 ///
19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

*MEMORANDUM OF POINTS AND AUTHORITIES*
*MOTION TO DISMISS FOR DESTRUCTION OF EVIDENCE*
*CR08-814-PHX-DGC*