DENNIS K. BURKE
United States Attorney
District of Arizona

FREDERICK A. BATTISTA
Maryland State Bar Member
PETER S. SEXTON
Arizona State Bar No. 011089
JAMES R. KNAPP
Arizona State Bar No. 021166
Assistant U.S. Attorneys
Two Renaissance Square
40 North First Avenue, Suite 1200
Phoenix, Arizona 85004
Telephone: (602) 514-7500
Fred.Battista@usdoj.gov
Peter.Sexton@usdoj.gov
James.Knapp2@usdoj.gov

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Daniel David Rigmaiden, et al.,<br><br>Defendant. | No. CR-08-0814-PHX-DGC<br><br>**GOVERNMENT'S RESPONSE TO MOTION FOR DISCOVERY** |

## I. Introduction.

The United States, through undersigned counsel, opposes Defendant's Motion for Discovery. Defendant seeks disclosure of a broad range of privileged information and records, arguing that the material is needed to prepare his motion to suppress based on alleged Fourth Amendment violations and his motion to dismiss based on alleged destruction of exculpatory records. The United States is concerned that disclosure of the privileged information would be harmful to the public interest, in that it could diminish the future value of important investigative techniques and allow criminals to devise countermeasures to evade detection. Moreover, as argued below, disclosure of the privileged material is unnecessary because Defendant already has sufficient information to allege that the aircard tracking operation was an unreasonable search and seizure; Defendant fails to show that technical violations of the court orders or relevant statutes, even if proven, would result in suppression; and Defendant's speculation that the privileged information may show that exculpatory material was destroyed or may be relevant

to a motion to suppress fails to satisfy the standard under Federal Rule of Criminal Procedure 16 or the cases interpreting the law enforcement privilege.

Accordingly, Defendant's motion should be denied. The United States requests that the Court hold an in camera hearing to consider the United States' claim of privilege and its reasons for non-disclosure. If Defendant moves for suppression or dismissal and the Court determines after an evidentiary hearing that relevant factual issues cannot be resolved without reference to certain privileged information and records, the United States will attempt to resolve the dispute through stipulations. At this time, however, Defendant has not shown a compelling need for disclosure of additional privileged information and records.

## II.     **Statement of Facts.**

If Defendant moves for suppression or dismissal, the United States anticipates that FBI Special Agent Richard Murray will testify about the aircard tracking mission as follows:

1.     On July 16, 2008, the FBI tracked signals from Defendant's aircard to the "Domicilio" apartment complex in Santa Clara, California. Before the aircard tracking operation, the FBI obtained a hybrid order authorizing the FBI to obtain transaction records from the aircard service provider, Verizon Wireless (CR08-90331-MISC-RS), and a tracking device warrant (CR08-90330-MISC-RS). The FBI applied for the tracking device warrant under Federal Rule of Criminal Procedure 41(b) and the All Writs Act, 28 U.S.C. § 1651, and the warrant authorized the use and monitoring of a mobile tracking device for up to 30 days based on a finding of probable cause to believe that the warrant would lead to evidence of crime and the identification of Defendant. The FBI also sought a hybrid order, issued under 18 U.S.C. §§ 2703 and 3123, which authorized the FBI to install a pen register and trap and trace to decode signals going to and from the aircard to discern transaction information (but not content) for up to 60 days. The order also directed Verizon Wireless to provide the FBI with subscriber records, including cell site information and other transaction information, relating to the aircard. Both applications were submitted with an 18-page sworn affidavit from an FBI agent, setting forth

probable cause to justify the applications, detailing the investigation, and explaining that the FBI sought authorization to use mobile tracking equipment to determine the location of the aircard.

2. To track the signals from the aircard, the FBI used pen register and trap and trace equipment (the "equipment") that functions as a cell site simulator. The equipment mimicked a Verizon Wireless cell tower and sent and received signals directly to and from the aircard. The equipment was not used in passive mode. The FBI did not request that Verizon Wireless write any particular data to the aircard.

3. The FBI used the equipment in multiple locations and analyzed signals exchanged between the equipment and the aircard in order to determine the aircard's location, and it never used more than a single piece of equipment at any given time.

4. The FBI determined, through the use of the equipment, that the aircard was operating within an area the size of three to four apartments within the Domicilio apartment complex. The FBI personnel did not precisely determine the location of the aircard within a particular apartment.

5. The FBI did not use any helicopters during the aircard tracking operation. During a portion of the tracking operation, the FBI used handheld equipment from within the Domicilio apartment complex. FBI personnel never physically entered Defendant's apartment during the tracking operation.

6. The FBI did not employ any triangulation techniques prohibited by the hybrid order (CR08-90331-MISC-RS). With respect to "triangulation" and the use of multiple antenna tower locations, Order No. CR08-90331-MISC-RS states in pertinent part: "IT IS FURTHER ORDERED that the Investigative Agency is not authorized to obtain from the telephone Service Providers: . . . (2) information that would allow it to triangulate multiple antenna tower locations and thereby attempt to determine the precise location of the user of the Target Device, even if such location could be determined by said technique." This section of the Order was further clarified in order footnote 4 which stated: "'Triangulation' refers to a technique involving the use of information received from the Telephone Service Providers regarding the strength, angle, and timing of the Target Device's signal

measured at two or more cell site locations to attempt to determine the precise location of the user of the Target Device." The FBI did not obtain such information from Verizon Wireless. Nor did the FBI simulate multiple cell sites through the use of multiple pieces of equipment simultaneously.

7. The FBI expunged all data generated during the course of the aircard tracking operation in accordance with the Order for the tracking device warrant (CR08-90330-MISC-RS).

8. The FBI did not use the equipment to determine or verify the location of the aircard after July 16, 2008, even though the warrant authorized up to 30 days of tracking.

## III. **Summary of Requested Material.**

Defendant requests a broad range of privileged information and records related to the aircard tracking operation. Rather than address each request and each claim of need point by point in writing – which seems likely to result in even more voluminous filings – the United States has attempted to narrow the issues by categorizing the requests by the type of claim (e.g., Fourth Amendment violation, violation of court order, etc.), the alleged relevance of the material to prove the claim, and a short description of the material requested. The following chart summarizes these categories.

| **Claim** | **Relevance** | **Material Requested** |
|---|---|---|
| Fourth Amendment violation. | 1. Use of helicopter or man-on-foot. | A. Identities of technical personnel. |
| | | E. GPS coordinates of "path movement" |
| | 2. Precision of equipment in locating aircard inside an apartment. | C. Real-time data from tracking mission. |
| | | E. GPS coordinates of "path movement" |
| | | F. Information about specific equipment used in tracking mission. |
| | 3. Verification of aircard location after tracking mission. | C. Real-time data from tracking mission. |

4

| Claim | Relevance | Material Requested |
|---|---|---|
| | | E. GPS coordinates of "path movement" |
| | | H. Original Data Storage Devices for CDNRS files and LAESP messages. |
| | 4. Use of triangulation techniques. | D. Techniques and methods for tracking mission. |
| | | E. GPS coordinates of "path movement" |
| | 5. Use of nonpublic keys, codes, etc. | D. Techniques and methods for tracking mission. |
| | 6. Use of active cell site simulator to communicate directly with aircard. | D. Techniques and methods for tracking mission. |
| Violation of court order. | 1. Use of active cell site simulator to communicate directly with aircard. | D. Techniques and methods for tracking mission. |
| | 2. Use of triangulation techniques. | D. Techniques and methods for tracking mission. |
| | 3. equipment did not comply with "after receipt and storage" requirement in warrant. | G. Verizon Wireless and FBI network architecture. |
| Warrant and order should not have been issued. | 1. equipment does not constitute "tracking device" under 18 U.S.C. § 3117. | F. Information about specific equipment used in tracking mission. |
| | 2. equipment does not constitute "pen register" or "trap and trace device" under 18 U.S.C. § 3127. | F. Information about specific equipment used in tracking mission. |
| | 3. equipment did not comply with "after receipt and storage" requirement in warrant. | G. Verizon Wireless and FBI network architecture. |

5

| **Claim** | **Relevance** | **Material Requested** |
|---|---|---|
| Charges should be dismissed based on destruction of evidence. | 1. Data generated during tracking operation may contain exculpatory information. | A. Identities of technical personnel. |
| | | C. Real-time data from tracking mission. |
| Unknown. | 1. May be relevant to other issues. | B. Unredacted applications for tracking warrant and hybrid order. |
| | | I. Communications between US government and Verizon, Harris Corp., and UTStarcom relating to tracking operation. |
| | | J. Unredacted e-mails, etc. relating to tracking operation. |

**IV.   Law and Argument.**

    A.    Defendant Fails to Show A Compelling Need For The Privileged Information Because He Does Not Need Additional Information To Allege That The Aircard Tracking Operation Was An Unreasonable Search And Seizure.

Defendant seeks broad categories of information and records under Federal Rule of Criminal Procedure 16(a)(1)(E)(I) and 16(a)(1)(F), which require disclosure of certain documents and objects "material to preparing the defense." To justify disclosure, though, he must do more than merely allege materiality. "Neither a general description of the information sought nor conclusory allegations of materiality suffice; a defendant must present facts which would tend to show that the Government is in possession of information helpful to the defense." United States v. Mandel, 914 F.2d 1215, 1219 (9th Cir. 1990). Furthermore, as argued in the United Sates' March 11, 2011, Memorandum Regarding Law Enforcement Privilege, Defendant must articulate a need for the privileged material that overcomes the public interest in keeping the law-enforcement privileged information private. [1]   See United States v. Roviaro, 353 U.S.

---

[1]   The United States requests an in camera hearing to explain in further detail the equipment, techniques, and personnel involved as well as its concerns about disclosure. The
(continued...)

53, 62 (1957) (discussing "informer's privilege"); United States v. Van Horn, 789 F.2d 1492, 1507 (11th Cir. 1986) (applying Roviaro to electronic surveillance). "Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the [privileged information], and other relevant factors." Roviaro, 353 U.S. at 62.

Here, Defendant fails to demonstrate a compelling need for the privileged information. Many of Defendant's requests for information (see, e.g., Requests A, C, D, E, F, H) and claims of relevancy (e.g., precision of the equipment, use of triangulation techniques) are apparently all aspects of the same basic Fourth Amendment claim Defendant intends to make: the tracking operation that resulted in the location of Defendant's aircard, despite the issuance of the tracking warrant and hybrid order, was an unreasonable search and seizure. This claim does not merit additional discovery. Even if Defendant could establish that the tracking operation violated his reasonable expectation of privacy, [2] the government obtained a warrant and order to authorize the operation, and therefore Defendant's Fourth Amendment claim could succeed only if Defendant established that: (1) the warrant and order were legally insufficient to authorize the tracking operation, or (2) the tracking operation went beyond what the warrant and order authorized the government to do. As is obvious from Defendant's detailed motion and voluminous exhibits (Docket Nos. 587 & 588), the United States has already provided expansive

---

[1] (...continued)
United States has serious concerns about public disclosure of the privileged information and records Defendant seeks, but it has no objection to the Court reviewing in camera any of the privileged records discussed in Defendant's motion, and it will provide testimony in camera to answer any of the Court's questions about the aircard tracking operation.

[2] As argued in the United Sates' March 11, 2011, Memorandum, Defendant cannot even claim a reasonable expectation of privacy in the cell site records and general location of an aircard obtained through fraud. (See Doc. No. 465 at 13-19; see also United States v. Caymen, 404 F.3d 1196, 1200 (9th Cir. 2005) (no reasonable expectation of privacy in laptop obtained through fraud and the use of a stolen credit card); United States v. Johnson, 584 F.3d 995, 1004 (10th Cir. 2009) (defendant had no reasonable expectation of privacy in a leased storage unit obtained at his direction by his girlfriend through fraud and the use of stolen identification). Rather than repeat the arguments here, the United States incorporates those arguments by reference.

discovery in this case, including copies of the relevant court orders, supporting applications and affidavits, subscriber records and raw data obtained from Verizon Wireless, and reports and e-mails discussing the tracking operation. This material is more than he is entitled to receive under Federal Rule of Criminal Procedure 16, and it is more than sufficient to allow Defendant to argue that the warrant and order were invalid, or that the tracking operation exceeded the authorizations of the warrant and order. Indeed, pages 16 through 33 of his motion for discovery contain allegations relating to the conduct of the tracking operation and the relevant technology that are far more detailed and comprehensive than necessary to raise his Fourth Amendment claims.

Thus, Defendant cannot show a need for the privileged information because he can challenge the aircard tracking operation without it. The Eleventh Circuit's decision in United States v. Van Horn is instructive. In Van Horn, the defendant sought detailed information about the location and type of listening devices used during the investigation, and argued that the privileged information was needed so that his expert witness could show that the voices on the recordings could have been distorted. See 789 F.2d at 1507-08. The district court denied the request and the Eleventh Circuit affirmed, concluding that disclosure of the privileged information was unnecessary for the defendant to effectively challenge the evidence. Id. at 1508. The court pointed out that defendant presented evidence that the voices could have been distorted, and the parties (and ultimately the jury) could compare the voices in court with the voices on the recording. Id.; see also United States v. Harley, 682 F.2d 1018, 1020 (D.C. Cir. 1982) (applying Roviaro to surveillance post location and stating that to justify disclosure defendant must show "there are no adequate alternative means of getting at the same point"). Here, too, the Defendant has been provided sufficient material about the general nature of the aircard tracking operation, he can present testimony from his expert witness about the capabilities or intrusiveness of cell phone tracking, and he will have the opportunity to cross-examine Agent Murray or other government agents about non-privileged matters at a suppression hearing. Defendant clearly has an interest in learning the privileged details of the

FBI's law enforcement equipment and techniques, but he articulates no reason why knowledge of those details is required for him to present his argument that the court-authorized aircard tracking operation was unreasonable.

Furthermore, to the extent that additional discovery is warranted, Defendant's requests are premature. If factual questions remain after a hearing on Defendant's anticipated motion to suppress, and the parties are unable to resolve those factual issues through stipulations, Defendant may be able to better articulate his need for the privileged information. At present, though, he has not shown such a need. For example, he requests the identities of covert technically trained agents [3/] and GPS coordinates of their "path movement" [4/] to show, among other things, whether or not the FBI used a helicopter during the tracking operation. (Def't Mot. at 35-43, 84-86.) He also requests "[a]ll evidence relating to the real-time and historical geolocation techniques (e.g., triangulation techniques) and radio wave collection methods (e.g., cell site emulation, interrogation, active approach) used by the government agents/personnel and by the wireless device locations while searching for the aircard," to prove, in essence, that the FBI's equipment simulated a cell tower and communicated directly with his aircard to determine

---

[3/] See Def't LRCiv 37.1 Not. at 3 ("The defendant requests all discovery regarding the names, positions and contact information of all government investigators and employees that partook in or assisted in the investigation to locate the aircard associated with Verizon Wireless account number 270691733. This request includes information regarding what each government investigator or employee did to partake in or assist in the investigation to locate the aircard. This request[] includes information regarding what court order or other authority authorized the actions of each government investigator and employee.").

[4/] See Def't LRCiv 37.1 Not. at 11 ("The defendant requests all discovery regarding the path movement information for all devices . . . used to locate the aircard associated with Verizon Wireless account number 270691733. The term "path movement information" includes but is not limited to:
1)   Human foot movement paths (paths of investigators or other individuals who walked around while using a device [][to locate the aircard]).
2)   Manned and unmanned, tethered or untethered, air vehicle paths, e.g., airplanes, helicopters, blimps, weather balloons, paratroopers, etc. (paths of any device [][used to locate the aircard] that was deployed into movement or into position in the air).
3)   Manned and unmanned ground vehicle paths, e.g., cars, bicycles, robots, etc. (paths of any device [][used to locate the aircard] that was deployed into movement or into position on the ground).
This request includes the speed and altitude throughout the entire paths and points of stationary positions, and time stamps for all movement and stationary positions.").

its location. (Def't Mot. at 55-84.) These issues and more can be resolved through basic stipulations or testimony at a suppression hearing, and do not warrant public disclosure of sensitive law enforcement equipment, techniques, and personnel.

Thus, Defendant already has sufficient information to allege that the aircard tracking operation was an unreasonable search and seizure, and he fails to show that disclosure of the requested privileged information and records is necessary.

B.  Defendant Fails to Show A Compelling Need For The Privileged Information To Show Alleged Technical Violations Of Court Orders Or Relevant Statutes Because Suppression Is Not A Remedy For Violations Of 18 U.S.C. § 2703 And 18 U.S.C. § 3121.

Defendant also seeks broad categories of privileged information in an attempt to show that the agents violated the relevant court orders; provisions of the Stored Communications Act (SCA), 18 U.S.C. §§ 2701-2712; or the statute authorizing the use of a pen register or trap and trace device, 18 U.S.C. § 3121. For example, he seeks detailed information about the equipment used in the tracking operation—"[a]ll evidence relating to the specific wireless device locators (e.g., user manuals, test data, etc., for the StingRay) and related software (e.g., CDMA software, Geolocation software, etc.) used to search for and located the aircard"—so that he can argue about whether the equipment used qualifies as a "tracking device" under 18 U.S.C. § 3117 or a "pen register" or "trap and trace device" under 18 U.S.C. § 3127. (Def't Mot. at 86-94.) Similarly, he seeks detailed information about the FBI and Verizon Wireless computer systems—"[a]ll evidence relating to the Pen/Trap network architecture in place between July 16, 2008 and August 1, 2008 beginning at the Verizon Wirless Access Function and ending at the FBI Collection Function"—to determine whether the information obtained from Verizon Wireless under the hybrid order (CR08-90331-MISC-RS) complied with the "after receipt and storage" requirement on page 4 of the order. (Def't Mot. at 99.)

These are interesting legal issues, and U.S. magistrate judges and district judges across the country have debated whether cell phone tracking requires a hybrid order, a tracking warrant, or both. See, e.g., In re Application for Order Relating to Target Phone 2, 733 F. Supp. 2d 939,

10

940 & n.1 (N.D. Ill. 2009) (citing cases and stating that "Numerous magistrate judges and district judges across our country have previously addressed the same arguments the government is making here [regarding whether cell phone tracking requires a tracking warrant or merely a hybrid order], and the decisions are mixed"). These decisions are made on a case-by-case basis when the application is presented, though, and it is a waste of time and resources to ask this Court to review another court's decision to issue the relevant orders. Even if Defendant convinces this Court that U.S. Magistrate Judge (now District Judge) Richard Seeborg was wrong in issuing the tracking warrant and hybrid order that resulted in the location of Defendant's aircard, suppression is not a remedy absent a Constitutional violation. See 18 U.S.C. § 2708 ("The remedies and sanctions described in this chapter are the only judicial remedies and sanctions for nonconstitutional violations of this chapter."); United States v. Smith, 155 F.3d 1051, 1056 (9th Cir. 1998) ("[T]he Stored Communications Act does *not* provide an exclusion remedy. It allows for civil damages . . . and criminal punishment . . . but nothing more.") (citations omitted); United States v. Forrester, 512 F.3d 500, 512-13 (9th Cir. 2007) (holding that suppression of evidence gathered in violation of pen register statute, 18 U.S.C. § 3121, is "plainly inappropriate"). And even if he could show a Constitutional violation, it would not result in suppression absent a showing that the FBI acted in an objectively unreasonable manner in executing the warrant and order. See, e.g., United States v. Leon, 468 U.S. 897 (1984) (good faith reliance on warrant); Illinois v. Krull, 480 U.S. 340 (1987) (good faith reliance on statute).

Thus, Defendant fails to show a compelling need for the privileged information and records as they may relate to alleged technical violations of the court orders and relevant statutes. To the extent he bases his requests on this basis (see, e.g., Requests D, F, G), his motion should be denied.

C.   **Defendant Fails to Show A Compelling Need For The Remaining Information Because Speculative Fact-Gathering Does Not Satisfy Rule 16 Or Overcome The Law Enforcement Privilege.**

Finally, Defendant seeks broad categories of privileged information and records based on his suspicion that the data destroyed at the conclusion of the aircard tracking operation pursuant to court order may have contained exculpatory information and his conjecture that additional discovery "may reveal addition[al] Fourth Amendment violations the defendant is currently unaware of" or "will provide further information on all other categories of withheld evidence." (Def't Mot. at 86, 100.)

Simply put, this is too speculative and conclusory to justify disclosure. "To obtain discovery under Rule 16, a defendant must make a prima facie showing of materiality." Mandel, 914 F.2d at 1219. Rule 16 does not permit "speculative inquiries" that have no basis in fact, or that "generally cast for impeachment material." See United States v. Liquid Sugars, Inc., 158 F.R.D. 466, 472 (E.D. Cal. 1994). And here, because the information is also privileged, Defendant must show that his need for the information overcomes the public interest in keeping it secret. See Van Horn, 789 F.2d at 1507; see also United States v. Buras, 633 F.2d 1356, 1360 (9th Cir. 1980) (discussing Roviaro and holding that defendant's claim that tipster might have exculpatory information insufficient to warrant disclosure); United States v. Guzman-Padilla, 573 F.3d 865, 890 (9th Cir. 2009) (holding that speculation that U.S. Border Patrol policies on use of tire deflation devices might be exculpatory does not justify disclosure under Brady).

Accordingly, Defendant cannot compel disclosure based simply on his conjecture that the privileged material may contain something relevant. To the extent he bases his requests on this justification (see, e.g., Requests A, B, C, I, J), his motion should be denied.

**V.   Conclusion.**

Defendant's motion should be denied because he already has sufficient information to present his arguments for suppression or dismissal; he fails to show that any of the technical violations of the court orders or relevant statutes, even if proven, would result in suppression; and many of his requests are based on mere speculation that the privileged information may

contain relevant or exculpatory evidence. If Defendant moves for suppression or dismissal and the Court determines after an evidentiary hearing that relevant factual issues cannot be resolved without reference to certain privileged information and records, the United States will attempt to resolve the dispute through stipulations. At this time, however, Defendant has not shown a compelling need for disclosure of additional privileged information and records.

Respectfully submitted this 26th day of August, 2011.

DENNIS K. BURKE
United States Attorney
District of Arizona


S/Frederick A. Battista

FREDERICK A. BATTISTA
PETER S. SEXTON
JAMES R. KNAPP
Assistant U.S. Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that on August 26, 2011, I caused the attached document to be electronically transmitted to the Clerk's Office using the ECF system for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Philip Seplow
Shadow Counsel for Defendant Daniel David Rigmaiden

Taylor Fox
Counsel for Defendant Ransom Carter

A copy of the attached document was also mailed to:

Daniel David Rigmaiden
Agency No. 10966111
CCA-CADC
PO Box 6300
Florence, AZ 85132

S/Frederick A. Battista

FREDERICK A. BATTISTA
Assistant U.S. Attorney