Daniel Rigmaiden
Agency # 10966111
CCA-CADC
PO Box 6300
Florence, AZ 85132
Telephone: none
Email: none

Daniel David Rigmaiden
Pro Se, Defendant

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

United States of America,

      Plaintiff,

v.

Daniel David Rigmaiden, et al.,

      Defendant.

No. CR08-814-PHX-DGC

REPLY TO GOVERNMENT'S RESPONSE
TO MOTION FOR DISCOVERY

    Defendant, Daniel David Rigmaiden, appearing *pro se*, respectfully submits this *Reply To Government's Response To Motion For Discovery.* This filing is a reply to the *Government's Response To Motion For Discovery* (hereafter "Government Response") (Dkt. #602). The *Government Response* is a response to the defendant's *Motion For Disclosure Of All Relevant And Helpful Evidence Withheld By The Government Based On A Claim Of Privilege* (hereafter "Motion For Discovery") (Dkt. #592).

## I.    THE DEFENDANT'S REPLY

### A.    Simply because the defendant has evidence needed to challenge some illegal government searches and seizures does not mean he loses his right to challenge the rest.

    Neither logic nor law dictates accepting the government's attempt to group all of its alleged illegal searches and seizures into a single "overall search" so as to marginalize its

REPLY TO GOVERNMENT'S RESPONSE TO MOTION FOR DISCOVERY
CR08-814-PHX-DGC

precise illegal activity and the defendant's specific requests for evidence.[1]   The government

contends that if the defendant has enough evidence to allege some Fourth Amendment

violations with respect to one, two, or maybe three of the specific separate searches and

seizures then the defendant has enough evidence to allege that the aircard locating mission

was unreasonable in general.[2]   The government also contends that out of the long list of

detailed unconstitutional activity outlined in the defendant's *Motion For Discovery*, the

government gets to decide which elements the defendant is permitted to challenge in his

*Motion To Suppress* based off of what AUSA Battista expects Agent Murray to admit to

during questioning at a suppression hearing.[3]   The government's plan also entails that

searches and seizures having factual foundations requiring so-called "privileged"

information and evidence will be off limits[4] to the defendant—unless the defendant simply

wants to posit "guesses" in his *Motion To Suppress* in hopes that the truth will later come out

at a suppression hearing.[5]   Maybe, at his September 22, 2011 court appearance, the

defendant will bring the prosecution a copy of the Constitution so that it can tear it up in

front of the Judge to further drive in the government's points.

Assuming the defendant identifies 25 or more separate and specific government

actions, with each action arguably classified as a necessary element of an unreasonable

search and/or seizure, it would violate the defendant's due process rights if he were not

permitted to reveal and challenge each and every one.   The *Whitaker* Court noted that "[t]he

most basic clause in the Fourth Amendment, that is, the right to be free from unreasonable

---

1.   *See Government Response*, p. 7 ("Many of Defendant's requests for information [] and claims of relevancy [] are apparently all aspects of the same basic Fourth Amendment claim Defendant intends to make[.]") (Dkt. #602).

2.   *See* Section I(B), *infra* (expanding on this point).

3.   *See Government Response*, p. 3 (AUSA Battista explaining what government testimony would detail) (Dkt. #602).

4.   *See id.*, p. 8 ("Defendant... will have the opportunity to cross-examine Agent Murray or other government agents about **non-privileged** matters at a suppression hearing." (emphasis added)) (Dkt. #602).

5.   *See id.*, p. 2 ("If Defendant moves for suppression or dismissal and the Court determines after an evidentiary hearing that relevant factual issues cannot be resolved without reference to certain privileged information and records, the United States will attempt to resolve the dispute through stipulations.") (Dkt. #602).

*REPLY TO GOVERNMENT'S RESPONSE TO MOTION FOR DISCOVERY*
*CR08-814-PHX-DGC*

*REPLY TO GOVERNMENT'S RESPONSE TO MOTION FOR DISCOVERY*
*CR08-814-PHX-DGC*

1   searches and seizures, would also be denuded of all real meaning if governmental authorities

2   are permitted to perform a search that triggers Fourth Amendment scrutiny, yet are also

3   permitted to conceal the existence of the search." Whitaker v. Garcetti, 291 F.Supp.2d 1132,

4   1148 (C.D.Cal. 2003), *affirmed in part, vacated in part, and reversed in part, all on other*

5   *grounds*, 486 F.3d 572 (9th Cir. 2007). Any one of the government's precise illegal searches

6   and seizures could merit suppression and due process requires that the defendant be

7   permitted to challenge all of them. The government points to no case law stating that the

8   defendant is required to forfeit valid Fourth Amendment arguments simply because the

9   government's illegal activity is at an unprecedented magnitude. The government's only

10  argument appears to be that marginalization of the FBI's numerous alleged unreasonable

11  searches and seizures and marginalization of the defendant's Constitutional rights will

12  prevent "even more voluminous filings[.]" *Government Response*, p. 4 (Dkt, #602). The

13  defendant appreciates the fact that the Court and the government are very busy. The

14  defendant realizes that the District of Arizona is the busiest federal district in the country due

15  to illegal immigration and other boarder related crimes. However, a busy judiciary and

16  executive branch does not justify marginalizing or *short-circuiting* any of the issues related

17  to the defendant's Fourth Amendment arguments. If the issues raised by the defendant are

18  too much to handle in their entirety, the case should be immediately dismissed with

19  prejudice.

20       Notwithstanding its bold claim that the defendant has not established a need for the

21  requested evidence, the government also asserts that the defendant's requests "can be

22  resolved through basic stipulations or testimony [from agents who were not involved in

23  using the StingRay, *etc.*] at a suppression hearing, and do not warrant public disclosure of

24  sensitive law enforcement equipment, techniques, and [the] personnel [who actually used the

25  StingRay to locate the aircard]."[6] The defendant explains in Section I(C), *infra*, why

26  waiting until a suppression hearing to obtain evidence and information is a violation of his

27  Constitutional rights. However, if the government is ready to stipulate to facts then it may

28

---

6.     *Government Response*, p. 10 (Dkt. #602).

adopt the defendant's proposed basic stipulations and begin the stipulation process at any time.  *See* the defendant's *Motion For Discovery*, "Submission Of Proposed Stipulations" (Dkt. #592-3).

> **B.    The defendant only has enough evidence to challenge the government's warrantless seizure of destination IP addresses and historical cell site location information.  Such challenges have absolutely nothing to do with government use of portable/transportable wireless device locators.**

The government's tactic is to provide more evidence than what it may be obligated to provide while having that excess in evidence address factual matters that are irrelevant to the long list of Fourth Amendment violations referenced in the defendant's *Motion For Discovery*.[7]  The government claims that it "is obvious from Defendant's detailed motion and voluminous exhibits (Docket Nos. 587 & 588), [that] the United States has already provided expansive discovery in this case, including copies of the relevant court orders, supporting applications and affidavits, subscriber records and raw data obtained from Verizon Wireless, and reports and emails discussing the tracking operation."  *Government Response*, p. 7-8 (Dkt, #602).  Neither logic nor law dictates accepting the government's argument that providing evidence relating to its seizure of aircard destination IP addresses and aircard cell site location records is "sufficient information to allege that the aircard tracking operation was an unreasonable search and seizure[.]"  *Id.*, p. 7-8.  Even if the defendant has enough evidence to allege Fourth Amendment violations relating to destination IP addresses and historical cell site location information, he still has <u>in</u>sufficient evidence to raise his primary Fourth Amendment challenges addressed in the argument section of his *Motion For Discovery*, p. 33-101 (Dkt. #592-1).

Although the defendant was able to obtain significant information relating to how the relevant technology works, none of the evidence provided by the government allows the defendant to positively prove the needed factual foundations in support of the alleged Fourth

---

7.     *See Government Response*, p. 8 ("This material is more than he is entitled to receive under Federal Rule of Criminal Procedure 16, and it is more than sufficient to allow Defendant to argue that the warrant and order were invalid, or that the tracking operation exceeded the authorizations of the warrant and order.") (Dkt, #602).

*REPLY TO GOVERNMENT'S RESPONSE TO MOTION FOR DISCOVERY*
*CR08-814-PHX-DGC*

*REPLY TO GOVERNMENT'S RESPONSE TO MOTION FOR DISCOVERY*
*CR08-814-PHX-DGC*

Amendment violations.  Although the government is withholding needed evidence, the defendant makes a very strong showing that the government conducted the following actions that implicate the Fourth Amendment: **(1)** use of a helicopter hovering over apartment No. 1122,[8] **(2)** use of a hand-held wireless device locator within the Domicilio apartment complex, **(3)** locating the aircard precisely inside apartment No. 1122, **(4)** verifying that the aircard remained in apartment No. 1122 after July 16, 2008, **(5)** seizing specific nonpublic keys, codes, masks, and data from Verizon Wireless used for aircard signal and data encryption, encoding, scrambling, spreading, and routing, **(6)** sending Over-The-Air Service Provisioning (OTASP) messages to the aircard Number Assignment Module (NAM),[9] **(7)** passively eavesdropping air interface signals for the aircard,[10] **(8)** using a cell site emulator, **(9)** forcing the aircard to register with the government's emulated cellular network, **(10)** sending location finding interrogation signals through the walls of apartment No. 1122 to the aircard's receive antenna, **(11)** using aircard cloning/emulation, **(12)** using intrusive triangulation techniques such as time-of-flight, power-distance, angle of arrival, received signal measurements, statistical functions, and data fusion on aircard signals, **(13)** shifting the location of a portable/transportable wireless device locator to facilitate triangulation, **(14)** increasing the transmission power of aircard signals, **(15)** conducting a denial-of-service attack on aircard service, **(16)** conducting a man-in-the-middle attack on aircard service, **(17)** writing pilot pseudo number (PN) offset sequence codes to the aircard hardware, **(18)**

---

8.     If the FBI used a hand-held wireless device locator within the Domicilio apartment complex then use of a helicopter would likely not be necessary but the government has provided no evidence either way.  *See* this subsection, *infra*.

9.     Based on a claim made by USPIS Inspector Wilson in the *Wilson Report*, and based on reasonable assumptions relating to the relevant technology, the defendant claimed in the facts section of his *Motion For Discovery* that the government, via Verizon Wireless, sent OTASP messages to the aircard.  Although it would be impossible for the aircard to recognize the government's emulated cell site without data first being written to the aircard hardware, the available evidence does not fully ground the defendant's claim in fact and the government attempts to distance itself from the likely use of OTASP messages.  *See Government Response*, p. 3 ("The FBI did not request that Verizon Wireless write any particular data to the aircard.") (Dkt. #602).

10.     The USAO now informally claims that no passive eavesdropping was conducted, and that cell site emulation was used, but the government has provided no evidence either way. *See* this subsection, *infra*.

stealing power from the host laptop computer, **(19)** writing data to the host laptop computer, **(20)** surreptitiously tuning the aircard to the same frequency as the StingRay, and **(21)** violating the "after receipt and storage" provision of the N.D.Cal. 08-90331MISC-RS order. In addition to providing insufficient evidence relating to the above, the evidence provided by the government also fails to satisfy, among other matters, the defendant's need to question witnesses about bad faith while destroying evidence, lack of good faith while conducting illegal searches and seizures, and knowledge regarding where and how the equipment was used.

AUSA Battista admitted in his *Government Response*, for the first time in more than three years of the defendant playing the government's game of *hide and seek*, that the FBI (1) used cell site emulation, (2) sent signals to the aircard through the walls of apartment No. 1122, (3) received signals from the aircard in response to the government's signals sent to the aircard, (4) used portable/transportable wireless device locators in multiple positions, and (5) used a hand-held portable wireless device locator within the Domicilio apartment complex. *See Government Response*, p. 3 (AUSA Battista explaining what FBI Agent Murray's testimony would detail) (Dkt. #602).  Although it is a step in the right direction, AUSA Battista's response motion explaining what he "anticipates [] FBI Special Agent Richard Murray [][to] testify about..."[11] is not evidence or an evidence equivalent.  *See* United States v. Zermeno, 60 F.3d 1058, 1062 (9th Cir. 1995) ("The government's assertions in its pleadings are not evidence."); S. Pac. Co. v. Conway, 115 F.2d 746, 750 (9th Cir. 1940) ("[T]he office of a pleading is to state ultimate facts and not evidence of such facts.").  Nor would FBI Agent Murray's "anticipated testimony" address the bulk of the Fourth Amendment violations listed in the paragraph immediately above.  Furthermore, FBI Agent Murray was not even part of the FBI "covert" resource team that operated the StingRay and related equipment.[12]  The defendant needs actual evidence, prior to drafting his *Motion To*

---

11.    *Government Response*, p. 2 (Dkt. #602).

12.    *See, e.g., February 10, 2011 Status Conference, Partial Transcript of Proceedings*, [MR. BATTISTA], 15:28:07 – 15:28:25 ("[N]one of the agents here or on the investigation team were trained on the equipment or operate the equipment.").

REPLY TO GOVERNMENT'S RESPONSE TO MOTION FOR DISCOVERY
CR08-814-PHX-DGC

1  *Suppress*, and he needs to question the FBI technical agents/personnel who personally

2  operated the relevant equipment and who personally destroyed the real-time aircard location

3  data.  *See* the defendant's *Motion For Discovery*, § VI(A)(3), p. 38-43 (fully explaining the

4  defendant's need for witness information), and §§ VI(B) through (J), p. 44-101 (fully

5  explaining the defendant's need for all other evidence) (Dkt. #592-1).

### C.   The government should not be permitted to force the defendant to play a government game of *hide and seek* all the way through a suppression hearing.

8        The government has been forcing the defendant to play a game of *hide and seek* ever

9  since he began representing himself in January of 2010.  The current score has the USAO

10  informally admitting that the defendant was right about cell site emulation, interrogation

11  techniques, active approach, and use of a hand-held portable wireless device locator within

12  the Domicilio apartment complex.[13]  The above noted elements of the aircard locating

13  mission were previously hidden until the defendant was able to recently "seek them out"

14  through his own research involving public records and CDMA technical standards.[14]  "A

15  rule... declaring 'prosecutor may hide, defendant must seek,' is not tenable in a system

16  constitutionally bound to accord defendants due process."  Banks v. Dretke, 540 U.S. 668,

17  696 (2004).  The defendant has no idea what is occurring behind the scenes with the various

18  inter-department and inter-agency relations but it is certainly clear that the FBI is not

19  adhering to AUSA Battista's **seven month old** requirement that the discovery process **not** be

20  a gradual one:

21        I specifically told the FBI that if it can be given up, let's give it up. And if it's
22        something that you feel strongly about, then you have to feel strongly about it
        now. This isn't a gradual process. This isn't something, well, we'll give a little
23        bit out and see how it goes. This is an all or nothing. I specifically advised
        them it's all or nothing, Your Honor.

24  ─────────────────────────────────────────────

25  13.    The fact that the government admits to the defendant being right about these specific
  elements of the aircard locating mission also undermines any government claim that the
  defendant is "speculating" as to whether certain elements actually occurred or as to whether
26  certain evidence exists and is relevant.  The defendant's *Motion For Discovery* contains far
  more than mere speculation and the defendant urges the Court to read the motion **in detail** in
27  order to grasp the full magnitude of the precise Fourth Amendment violations involved in
  this case and the defendant's need for the requested evidence.

28  14.    *See* the defendant's *Motion For Discovery* (Dkt. #592).

- 7 -

*REPLY TO GOVERNMENT'S RESPONSE TO MOTION FOR DISCOVERY*
*CR08-814-PHX-DGC*

1   *February 10, 2011 Status Conference, Partial Transcript of Proceedings*, [MR.
2   BATTISTA], 15:30:14 – 15:30:58.

3       The government is asking that the Court condone its game of *hide and seek*, resulting

4   in a gradual discovery process, all the way through a suppression hearing.  If the government

5   has its way then the defendant will have to draft a massive *Motion To Suppress* (without any

6   confirmed facts whatsoever) addressing every possible hypothetical way that the aircard may

7   have been located and arguing far more Fourth Amendment violations than would be

8   relevant if the defendant just had the truth.  Assuming the defendant could even draft such a

9   "hypothetical" *Motion To Suppress*, addressing all wireless device locator technology

10  currently in existence, it would require at least 400 pages and take more than a year to

11  complete.  The government's plan then dictates that the defendant file his motion and if the

12  "Court determines after an evidentiary hearing that relevant factual issues cannot be resolved

13  without reference to certain privileged information and records, the United States will

14  attempt to resolve the dispute through stipulations [well after the defendant has filed his

15  *Motion To Suppress*]."  *Government Response*, p. 2  (Dkt. #602).  As explained below,

16  implementation of the government's proposal would perpetuate violations of the defendant's

17  right to due process and right to a speedy trial.

18       The government seems to think that it is entitled to have the defendant sit in jail and

19  work on a massive project just so that it can later pick and choose its own version of the facts

20  in light of the defendant's finalized Fourth Amendment arguments.  This is similar to the

21  tactic employed by the government over the last 20 months.  For example, on March 11,

22  2011, the USAO claimed that aircard transmissions could "be overheard by anyone having a

23  radio receiver tuned into the same channel[]" and that "the FBI personnel tracked the

24  defendant's aircard transmissions made over public airwaves, using equipment tuned to the

25  same frequency as the aircard."[15]  However, after the defendant revealed Fourth

26  Amendment strategies relating to the government's March 11, 2011 claim, the government

27

28  15.   *Government's Memorandum Regarding Law Enforcement Privilege And Request For*
      *An Ex Parte And In Camera Hearing If Necessary*, p. 17-18 (Dkt. #465).

contended that the "equipment was not used in passive mode[]" and that the equipment actually "mimicked a Verizon Wireless cell tower and sent and received signals directly to and from the aircard."[16]  In addition to the government gaining the tactical advantage of being able to pick and choose its own version of the facts, a 400+ page "hypothetical" *Motion To Suppress* would cause further prejudice in the sense that the defendant's arguments pertaining to what actually occurred will be buried amongst sections that will ultimately be disregarded.  Additionally, from a strategical standpoint, sections that are later claimed by the government to be unreflective of the truth may negatively impact sections that are claimed to be reflective of the truth.  The defendant will also have to sacrifice his Sixth Amendment right to a speedy trial while wasting more than a year of his defense preparation time (while incarcerated) developing hypothetical factual events and arguments that may ultimately be irrelevant.  Finally, if the defendant is forced to continue playing the government's game of *hide and seek*, there is no guarantee that he will even be able to figure out exactly what happened and this will leave the government's illegal searches and seizures hidden forever.  The defendant does not agree with the government's proposal and requests that all relevant and helpful evidence (or sufficient alternatives) be provided immediately.

> **D.**  **The government is attempting to marginalize its illegal searches and seizures by blurring cell site location information cases into its use of interrogation techniques, emulated cellular networks, forced registration, *etc.***

The government continues to cite and make reference to historical and real-time cell site location information cases in reference to its use of the StingRay and other related equipment and techniques.  The government indicated that "U.S. magistrate judges and district judges across the country have debated whether cell phone tracking requires a hybrid order, a tracking warrant, or both."  *Government Response*, p. 10  (Dkt. #602).  The government then cited a cell site location information case addressing the government obtaining location information via Pen/Trap data directly from a wireless carrier.  *See id.* Historical and real-time cell site location information cases offer little to no guidance on

---

16.     *Government Response*, p. 3 (Dkt. #602).

*REPLY TO GOVERNMENT'S RESPONSE TO MOTION FOR DISCOVERY*
*CR08-814-PHX-DGC*

1   government use of portable/transportable wireless device locators operating in cell site

2   emulation mode.  The type of portable/transportable wireless device locators used by the

3   government to locate the aircard operate by forcing wireless devices to communicate with

4   surreptitious and government controlled cellular networks.  These devices "use beam

5   forming antennas" (the accepted industry term) to send a precise beam of location finding

6   interrogation signals into Fourth Amendment protected spaces.  These devices steal

7   electricity and conduct denial-of-service and/or man-in-the middle attacks as necessary

8   elements to function.  The government must write data to the target wireless device in order

9   for it to recognize the government's emulated cellular network and the portable/transportable

10  wireless device locator instructs the target wireless device to jack up its signal transmission

11  power so that a better location fix can be obtained.  The government fails to explain how

12  cases addressing historical cell site location information obtained under the SCA[17] and

13  cases addressing real-time cell site location information obtained under CALEA[18] apply to

14  its use of portable/transportable wireless device locators.  Notwithstanding its numerous

15  other Fourth Amendment violations, the controlling case with respect to the government's

16  through-the-wall radio search beam is clearly <u>Kyllo v. United States</u>, 533 U.S. 27 (2001).

17  When the government "obtain[s] by sense-enhancing technology any information regarding

18  the interior of the home that could not otherwise have been obtained without physical

19  intrusion... [it] constitutes a search."  *Id.* at 34.

           **E.     The government cannot withhold so-called privileged evidence**
20             **because the defendant does not have sufficient alternative evidence**
21             **to get to the same point.**

22          The government points to *Van Horn* in support of its argument that "Defendant cannot

23  show a need for the privileged information because he can challenge the aircard tracking

24  operation without it."  *Government Response*, p. 8 (Dkt. #602).  However, the government

25  points to no previously provided evidence that positively confirms that the government

26  conducted the aircard locating mission in the way described in the arguments section of the

27
_____

28  17.    Stored Communications Act.

    18.    Communications Assistance For Law Enforcement Act.

defendant's *Motion For Discovery*, p. 33-101 (Dkt. #592-1).  There is no question that the defendant has discovered how cell phones and other wireless devices are electronically located but arguing the intrusiveness of the government's *typically used* methods says nothing about what actually occurred in the present case.  Nor would the defendant's expert testifying at a suppression hearing "about the capabilities or intrusiveness of cell phone tracking"[19] satisfy the defendant's need for actual evidence prior to drafting his *Motion To Suppress*.  Furthermore, such an arrangement will provide the government a further opportunity to pick and choose the facts it wishes to reveal to the defendant in a way that will knock out the factual foundations needed by previously prepared Fourth Amendment arguments.

As for the government's claims of privilege, the Supreme Court held that if the claimed privileged information is revealed to the defendant then "the privilege is no longer applicable."  United States v. Roviaro, 353 U.S. 53, 60 (1957).  Considering the defendant has figured out how the government locates wireless devices as a standard practice, the evidence is no longer privileged and it must be given to the defendant so that he can develop his arguments for the set of practices used in this case.  Furthermore, the government points to no case law stating that the defendant is required to forfeit his Fourth Amendment rights simply because the government wishes to conceal evidence based on a claim of privilege.  In the context of an informer in *Roviaro*, if the privileged evidence "is **relevant and helpful** to the defense of an accused, or is essential to a fair determination of a cause, the privilege **must give way**."  *Id.* at 61 (emphasis added) (footnote omitted).  The defendant's previously filed motions further explain how the government's claims of privilege are baseless.  *See* **(1)** *Response To Government's Memorandum Regarding Law Enforcement Privilege And Request For An Ex Parte And In Camera Hearing If Necessary* (Dkt. #536), and **(2)** *Supplement To Response To Government's Memorandum Regarding Law Enforcement Privilege And Request For An Ex Parte And In Camera Hearing If Necessary* (Dkt. #594).

---

19.     *Government Response*, p. 8 (Dkt. #602).

*REPLY TO GOVERNMENT'S RESPONSE TO MOTION FOR DISCOVERY*
*CR08-814-PHX-DGC*

### F.    The defendant is requesting suppression based on Constitutional violations and "technical violation" are supportive.

As explained in his *Motion For Discovery*, the defendant will be arguing for suppression based on Constitutional violations relating to particularity, scope, and lack of proper probable cause findings for the non-particular actions the orders do authorize.  *See*, *e.g.*, Groh v. Ramirez, 540 U.S. 551, 559 (2004) ("We have clearly stated that the presumptive rule against warrantless searches applies with equal force to searches whose only defect is a lack of particularity in the warrant."); United States v. Penn, 647 F.2d 876, 882 n.7 (9th Cir. 1980) (*en banc*) ("A warranted search is unreasonable if it exceeds in scope or intensity the terms of the warrant.").  The defendant will also be arguing for suppression based on constitutional violations of Rule 41 resulting in evidence that is insufficiently distinguishable to be purged of the primary taint.  *See* United States v. Hector, 474 F.3d 1150, 1154-55 (9th Cir. 2007).  The defendant is more than happy to further explain his Fourth Amendment arguments to the Court *ex parte*.  For the suppression issue, whether the government wants to rely on the SCA, Pen/Trap statutes, or some other statute is entirely irrelevant when determining Fourth Amendment violations.  From the Fourth Amendment perspective, if the government argues that its actions were authorized by statute it would make no difference because the constitutionality of the actual search is evaluated in terms of the Fourth Amendment.  *See*, *e.g.*, Sibron v. New York, 392 U.S. 40, 59-62 (1968) (holding it is unnecessary to first examine the facial validity of statutory authority for a warrantless search in light of the Fourth Amendment; concern is rather with facts of the actual search).

The defendant will not be arguing any technical violations of the statutes cited in the N.D.Cal. 08-90330MISC-RS order (use and monitor a mobile tracking device).  The defendant's argument will be that the cited statutes in their entirety simply do not apply and do not authorize what the government did.  The government might as well have cited the Migratory Bird Treaty Act, 16 U.S.C §§ 703-712, or the Magnuson-Stevens Fishery Conservation and Management Act, 16 U.S.C. §§ 1801-1891d,[20] as they have as much

---

20.    *See* 16 U.S.C. § 1861(b)(1)(A) and (ii) (providing the government authority to conduct searches "with or without a warrant or other process--").

- 12 -

*REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO DISCOVERY
CR08-814-PHX-DGC*

relevance to authorizing the government's actions as the statutes that were cited.  The
defendant will, however, be arguing technical violations of the statutes cited in the N.D.Cal.
08-90331MISC-RS order (pen register and trap and trace device) in the sense that the SCA,
CALEA, and the Pen/Trap statutes cannot be combined together to obtain real-time cell site
location information for the aircard while located inside apartment No. 1122.  Whether
arguing a "technical violation" or just all out inapplicability of a cited statute, these issues are
relevant in determining whether the government acted with a good faith reliance on the
issued orders while violating the Fourth Amendment.

One way for a defendant to prove a lack of good faith is to show that the government
misunderstood or misapplied the law.  *See* United States v. Twilley, 222 F.3d 1092, 1094 (9th
Cir. 2000) (Holding that an officer does not act "objectively reasonable" if "his belief [in the
law] was wrong" and there "is no good-faith exception to the exclusionary rule for police
who do not act in accordance with governing law."); United States v. Song Ja Cha, 597 F.3d
995, 1005 (9th Cir. 2009) ("[T]here is no good-faith exception to the exclusionary rule for
police who do not act in accordance with governing law.").  United States v. Whiting, 781
F.2d 692, 698 (9th Cir. 1986) (Refusing to apply the *Leon* good faith exception to an illegal
search conducted by a government employee who mistakenly believed that export
regulations authorized his search.).  In the context of "technical violations," this concept was
more specifically applied to the SCA in United States v. Warshack, 631 F.3d 266 (6th Cir.
2010).  The Sixth Circuit found that "it seems evident that an officer's failure to adhere to the
boundaries of a given statute should preclude him from relying upon it in the face of a
constitutional challenge[,]" *id.* at 289, unless "the mistakes at issue had no bearing on the
constitutional violations." *Id.* at 290.

For the N.D.Cal. 08-90331MISC-RS order, if the defendant establishes that the
government needed a probable cause warrant authorizing it to use the SF-Martinez DCS-
3000 server to obtain real-time cell site location information from Verizon Wireless IAPs, the
government will likely then claim that it relied in good faith on a combination of the
Pen/Trap statutes and the SCA as explained in the issued order.  If the defendant can show

that the real-time cell site location information obtained by the SF-Martinez DCS-3000 server[21] are not stored records under the SCA then the government would have acted outside the boundaries of the given statutes and no good faith exception applies.  A similar strategy applies to proving a "technical violation" with respect to the "after receipt and storage" provision of the issued order.  Additionally, a violation of the order's prohibition against triangulation techniques is both a constitutional violation, in the sense that use of triangulation techniques implicates the Fourth Amendment, and a "technical violation," in the sense that the government shows a lack of good faith by violating the terms of the issued order.  *See* United States v. Chen, 979 F.2d 714, 717 (9th Cir. 1992) ("[W]here there is a 'flagrant disregard' for the terms of the warrant, the district court may suppress all of the evidence, including evidence that was not tainted by the violation." (internal citation omitted)).

### G.  The government is attempting to "cut and paste" the defendant's single "may be relevant" claim into all of the defendant's requests for evidence.

The government patched together two separate sentences from the defendant's *Motion For Discovery* and then attempted to apply them to all of his requests for evidence:

> Finally, Defendant seeks broad categories of privileged information and records based on his suspicion that the data destroyed at the conclusion of the aircard tracking operation pursuant to court order may have contained exculpatory information and his conjecture that additional discovery "may reveal addition[al] Fourth Amendment violations the defendant is currently unaware of" or "will provide further information on all other categories of withheld evidence."

> *Government Response*, p. 12 (quoting the defendant's "catch-all" clause on p. 86 (Dkt. #592-1) related solely to evidence of the **specific wireless device locators (*e.g.*, user manuals, test data, *etc.*, for the StingRay) and related software (*e.g.*, CDMA software, Geolocation software, *etc.*) used to search for and locate the aircard**; and the defendant's valid conclusion on p. 100 (Dkt. #592-1) relating to obtaining communications that the government has already conceded are discoverable *Brady* material).

---

21.    As articulated in the defendant's *Motion For Discovery*, the N.D.Cal. 08-90331MISC-RS order does not even arguably apply to use of the StingRay and only applies to the SF-Martinez DCS-3000 Pen/Trap device.  However, if the government relies on that order then the defendant will raise the same arguments relating to complete inapplicability of the cited statutes similar to what will be raised in reference to the N.D.Cal. 08-90330MISC-RS order.

- 14 -

REPLY TO GOVERNMENT'S RESPONSE TO MOTION FOR DISCOVERY
CR08-814-PHX-DGC

First, the defendant wrote over one hundred pages explaining his need for the requested evidence solely to prevent the government from making the above quoted baseless claim.  Second, in the only section where the defendant's "catch-all" clause actually applies, he goes on for **8 pages** explaining his specific need for that category of requested evidence. Additionally, in light of the novel legal issues involved, and in light of the government's inability to understand (or admit to) the constitutional violations alleged by the defendant, the government is not in a position to decide which elements of the aircard locating mission violated the Fourth Amendment—hence the "catch all" clause.  Third, the government has already admitted that the communications being withheld are discoverable *Brady* material— it just refuses to explain in what context.  If the requested communications were not relevant then the government would have no need to withhold them based on a claim of privilege, it would simply need to withhold them based on a claim of them being irrelevant.  In light of the government's admission of relevancy, the defendant is entitled to the withheld communications or, at the very least, he is entitled to an *in camera* inspection.

> **H.    The defendant cannot address the government's "standing" concerns other than in the context of a suppression motion and suppression hearing.**

The government alleges that the defendant cannot show a reasonable expectation of privacy in the aircard or in the location of apartment No. 1122 in light of the government's allegation that the aircard is associated with fraud.  *See*, *e.g.*,  *Government Response*, p. 7 fn. 2 ("As argued in the United Sates' March 11, 2011, Memorandum, Defendant cannot even claim a reasonable expectation of privacy in the cell site records and general location of an aircard obtained through fraud.") (Dkt. #602).  The defendant cannot respond considering it is questionable whether the principles explained in *Simmons*[22] can be carried over to this specific phase of the proceedings in the present case.  *See* McGautha v. California, 402 U.S. 183, 211 (1971) ("[N]ot everything said in [][*Simmons*] can be carried over to [other

---

22.   *See* Simmons v. United States, 390 U.S. 377, 394 (1968) (Holding that "when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection.").

situations] without circumspection.").  The defendant will address "standing" during litigation of the suppression issue and it would serve the defendant's due process rights and other Constitutional rights for the Court to assume that the defendant has a reasonable expectation of privacy in relevant places and items while deciding his currently pending motions.

### I.      Numbered point by point rebuttals to various inaccurate government claims, *etc*.

1.      Whether the government expressly instructed Verizon Wireless to write data to the aircard via OTASP messages is irrelevant because the Fourth Amendment is implicated when "a private party acts as an 'instrument or agent' of the state in effecting a search or seizure."  United States v. Walther, 652 F.2d 788, 791 (9th Cir. 1981).  Through the N.D.Cal. orders, government agents were "exercis[ing] such coercive power" over Verizon Wireless that they are "responsible for the specific private conduct" carried out by Verizon Wireless employees.  Fidelity Financial Corp. v. Fed. Home Loan Bank, 792 F.2d 1432, 1435 (9th Cir. 1986).  Additionally, the FBI is well aware that data needs to be written to the aircard in order for it to recognize its emulated Verizon Wireless cellular network.  The requested Harris StingRay documentation and questioning of FBI technical agent/personnel will surely confirm this fact.

2.      The N.D.Cal. 08-90330MISC-RS and 08-90331MISC-RS orders are not warrants as the government may claim.  They are not warrants in name, Constitutional law, common-law, or in the context of Rule 41.  This is likely a significant point, s*ee* United States v. Reilly, 224 F.3d 986, 995 (9th Cir. 2000) (suppressing evidence and refusing "'to excuse the failure to obtain a search warrant where the police had probable cause but simply did not attempt to obtain a warrant.'" (quoting United States v. Mejia, 69 F.3d 309, 320 (9th Cir. 1995))).

3.      The government's table of requested evidence contained in its *Government Response* is not an accurate explanation of the relevant issues.  The table is not even complete for its intended purpose, *e.g.*, it is missing the government's denial-of-service

REPLY TO GOVERNMENT'S RESPONSE TO MOTION FOR DISCOVERY
CR08-814-PHX-DGC

*REPLY TO GOVERNMENT'S RESPONSE TO MOTION FOR DISCOVERY*
*CR08-814-PHX-DGC*

attack, man-in-the-middle attack, increase of aircard transmission power, sending of OTASP messages, and other issues.  An accurate explanation of the issues is contained in the defendant's *Motion For Discovery* and related attachments at Dkt. #592.  The defendant cannot stress enough the importance of conducting a highly attentive and detailed analysis of the defendant's filings at Dkt. #592.  The government should not be permitted to seek cover under a blanket of complex Fourth Amendment issues it created in the first place.

4.       With respect to the government's destruction of real-time aircard location data, the defendant has more than a "speculation" that the destroyed evidence will reveal that FBI technical agents/personnel located the aircard precisely inside apartment No. 1122 The government's relatively broad precision claim on the *Y* axis (approximately ***71.9 ft***) raises serious doubts considering the government also claims to have eliminated apartment Nos. 1119, 1121, 1123 and 1125 (located approximately ***8 ft*** across the hall) and apartment Nos. 1220, 1222, 1224 and 1226 (located ***9 ft*** above the ground floor of the first story apartments).  *See Motion For Discovery*, Section VI(C)(1)(a), p. 46-48 (Dkt. #592-1), for further explanation.

5.       The defendant is requesting an *in camera* inspection of any evidence the Court decides to not immediately order the government to turn over to the defense.  This request does not mean an *ex parte* proceeding involving the government or even *ex parte* pleadings submitted by the government.  The defendant is against the idea of allowing the government an *ex parte* anything and the defendant's request for *in camera* inspections means Judge Campbell looking at evidence in chambers while not in the presence of any party.

*  *  *  *  *

This motion was drafted and prepared by the *pro se* defendant, however, he authorizes his shadow counsel, Philip Seplow, to file this motion on his behalf using the ECF system.  The defendant is appearing *pro se* and has never attended law school.  The defendant's filings, however inartfully pleaded, must be liberally construed and held to less stringent standards than formal pleadings drafted by lawyers.  *See* Haines v. Kerner, 404 U.S. 519, 520 (1972).

Respectfully Submitted:

PHILP SEPLOW, Shadow Counsel, on
behalf of DANIEL DAVID RIGMAIDEN,
Pro Se Defendant:


s/ Philip Seplow
Philip Seplow
Shadow Counsel for Defendant.

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

*REPLY TO GOVERNMENT'S RESPONSE TO MOTION FOR DISCOVERY*
*CR08-814-PHX-DGC*

**CERTIFICATE OF SERVICE**

I hereby certify that on:                    I caused the attached document to be
electronically transmitted to the Clerk's Office using the ECF system for filing and
transmittal of a Notice of Electronic Filing to the following ECF registrants:

Taylor W. Fox, PC
Counsel for defendant Ransom Carter
2 North Central Ave., Suite 735
Phoenix, AZ 85004

Frederick A. Battista
Assistant United States Attorney
Two Renaissance Square
40 North Central Ave., Suite 1200
Phoenix, AZ 85004

Peter S. Sexton
Assistant United States Attorney
Two Renaissance Square
40 North Central Ave., Suite 1200
Phoenix, AZ 85004

James R. Knapp
Assistant United States Attorney
Two Renaissance Square
40 North Central Ave., Suite 1200
Phoenix, AZ 85004

By: s/ Daniel Colmerauer
(Authorized agent of Philip A. Seplow, Shadow Counsel for Defendant; See ECF Proc. I(D) and II(D)(3))

REPLY TO GOVERNMENT'S RESPONSE TO MOTION FOR DISCOVERY
CR08-814-PHX-DGC