1  Daniel Rigmaiden
   Agency # 10966111
2  CCA-CADC
   PO Box 6300
3  Florence, AZ 85132
   Telephone: none
4  Email: none

5  Daniel David Rigmaiden
   Pro Se, Defendant

6

7              UNITED STATES DISTRICT COURT

8              DISTRICT OF ARIZONA

9

10 United States of America,              No. CR08-814-PHX-DGC

11        Plaintiff,                       REPLY TO GOVERNMENT RESPONSE
                                           TO DEFENDANT'S MOTION TO
12 v.                                      DISMISS FOR DESTRUCTION OF
                                           EVIDENCE
13 Daniel David Rigmaiden, et al.,

14        Defendant.

15

16        Defendant, Daniel David Rigmaiden, appearing *pro se*, respectfully submits this

17 *Reply To Government Response To Defendant's Motion To Dismiss For Destruction Of*

18 *Evidence*.  This filing is a reply to the *Government's Response To Defendant's Motion To*

19 *Dismiss For Destruction Of Evidence – Docket No. 595* ("Government Response") (Dkt.

20 #633).  The *Government Response* is a response to the defendant's *Motion To Dismiss For*

21 *Destruction Of Evidence* ("Defendant's Motion") (Dkt. #595).

22        Note: The government raises a new issue with its claim that it was relying in good

23 faith on an FBI policy when it destroyed the real-time aircard geolocation data.  In light of

24 the new issue, this reply contains new arguments that are extremely important to the

25 defendant's claim of bad faith destruction of evidence.

26 ///

27 ///

28 ///

1    I.    **REPLY**

2         A.    **An FBI policy to destroy evidence for the sole purpose of keeping
                 the evidence concealed from defendants and their attorneys is an**
3                **unreasonable government policy.**

4         A policy to destroy the fruits of Fourth Amendment searches so that defendants and

5    their attorneys are unable to use those fruits in the adversary process is a patently

6    unreasonable governmental policy.  The government claims that "the FBI has a standard

7    policy of destroying the real-time data at the end of a tracking operation."  *See Government*

8    *Response*, p. 3.  Although the government may never provide the defendant with a copy of

9    the FBI policy, a credible source indicates that it was implemented "mainly to keep suspects

10   in the dark about [][the] capabilities..." of stingray-type gear.[1]  In other words, the very FBI

11   policy upon which the government relies sets out to circumvent <u>Brady v. Maryland</u>, 373 U.S.

12   83 (1963) by instructing agents to destroy evidence in order to conceal investigative

13   techniques from defendants.  Unlike in the cases quoted below, the government cannot rely

14   on the asserted FBI policy to support a claim of good faith destruction of real-time aircard

15   geolocation data.

16        Various courts have upheld the destruction of evidence when the destruction resulted

17   from agents or police following some sort of policy or common practice.  For example, in

18   *Barton* the court found that the inadvertent decomposing of marijuana in storage did not

19   equate to bad faith destruction of evidence because "officers stored the marijuana in plastic

20   bags in accordance with an established departmental practice, in order to accommodate the

21   space limitations in the evidence vault."  <u>United States v. Barton</u>, 995 F.3d 931, 935 (9th Cir.

22   1993).  In *Heffington*, the DEA disposed of evidence it considered hazardous waste in

23   compliance with departmental procedures and the Ninth Circuit found no bad faith because

24   "routine disposal of the evidence was apparently not the product of any realization that the

25

---

26   1.    Valentino-DeVries, Jennifer, *'Stingray' Phone Tracker Fuels Constitutional Clash*,
     The Wall Street Journal, p. A1 (Sept. 22, 2011) *available at*
27   http://online.wsj.com/article/SB10001424053111904194604576583112723197574.html (last
     accessed: September 22, 2011).  The FBI also stated that its been "'our policy since the 1990s
28   [] to purge or "expunge" all information obtained during a location operation' when using
     stingray-type gear."  *Id.*

REPLY TO GOVERNMENT RESPONSE TO
DEFENDANT'S MOTION TO DISMISS FOR DESTRUCTION OF EVIDENCE
CR08-814-PHX-DGC

1   evidence could form a basis for exonerating the defendant." United States v. Heffington, 952

2   F.2d 275, 281 (9th Cir. 1991).

3          In the present case, the government had no legitimate underlying reason to

4   deliberately destroy the real-time aircard geolocation data.  There was no lack of storage

5   space, there was no toxic waste to be disposed of, and there was no accidental destruction

6   that resulted from a legitimate action.  The underlying motive for the FBI policy at issue is to

7   conceal investigative techniques by deliberately and permanently keeping evidence away

8   from defendants and their attorneys.  No reasonable government agent or prosecutor can

9   claim to be unaware that such a policy is in clear contradiction to the then 45 year old *Brady*

10  decision and its progeny.  *See* Groh v. Ramirez, 540 U.S. 551, 556 (2004) ("No reasonable

11  officer could claim to be unaware of [][a] basic rule, well established by our cases... [and]

12  noted nearly 20 years ago..." (internal citations omitted)).  In the context of privileged

13  evidence, the decision to destroy evidence obtained during a search is not a decision that

14  should be unilaterally made by the executive branch of the government without having a

15  judge first examine the evidence for relevance.  *See* Mohamed v. Jeppesen Dataplan, Inc.,

16  579 F.3d 943, 958-59 (9th Cir 2009) ("[J]udicial control over the evidence in a case cannot be

17  abdicated to the caprice of executive officers without leading to intolerable abuses." (internal

18  quotation marks and brackets omitted) (citing United States v. Reynolds, 345 U.S. 1, 8-10

19  (1953)).  The noted FBI policy results in obvious due process violations that any reasonable

20  government agent or prosecutor would recognize.  Moreover, because the government

21  "prepared the invalid [][N.D.Cal. 08-90330MISC-RS order],"[2] it may not argue that it

22  "reasonably relied on the Magistrate's assurance" that the order was valid.  Groh, 540 U.S. at

23  564.

24          **B.     The defendant has shown how the destroyed evidence would be**
                    **helpful and how the government was aware of this fact, both**
25                  **objectively and subjectively, at the time of destruction.**

26          The defendant has shown how the destroyed geolocation data would be helpful

27

28  2.     The government drafted and submitted the proposed order that was eventually signed
       and issued by Judge Seeborg.

REPLY TO GOVERNMENT RESPONSE TO
DEFENDANT'S MOTION TO DISMISS FOR DESTRUCTION OF EVIDENCE
CR08-814-PHX-DGC

considering "AUSA Battista is now attempting to insulate the government from the defendant's Fourth Amendment challenges by claiming that the aircard was located to an area covering three or four apartments." *Defendant's Motion*, p. 5 (Dkt. #595-1).  The defendant has also provided substantial independent evidence that the aircard was located precisely inside apartment No. 1122.[3]  Additionally, at the time it was destroyed, the evidence had an apparent material value going towards the defendant's Fourth Amendment defense considering (1) the destroyed evidence was the very fruits of a Fourth Amendment search, and (2) the government planned from the beginning to justify its "destroy the evidence" policy by raising a "general precision" Fourth Amendment rebuttal in order to support a claim that the destroyed evidence is neither relevant nor material under *Brady*.[4]  The government's justification for its policy is a catch22 and defies logic because in order for the defendant to test the underlying facts in support of the government's justification (*i.e.*, its "general precision" claim), he would need to gain access to the evidence the government has already destroyed.  The FBI's illogical policy supports the defendant's assertion that, from an objective standpoint,[5] the government should have been aware of the material value of the real-time aircard geolocation data at the time it was destroyed.  The below analysis of a recent public statement and court transcripts provide further support for the defendant's assertion.

In a statement to The Wall Street Journal, Sherry Sabol, Chief of the Science &

---

3.    The present case is similar to United States v. Bohl where the Tenth Circuit reasoned that "[g]iven the substantial dispute over testing methodologies..., doubts about the accuracy of the government's tests, and [][defendant's] additional independent evidence, [] [defendant's] have established that [][the destroyed evidence] was potentially useful for their defense because their own tests... might have exonerated them."  *Id.*, 25 F.3d 904, 911 (10th Cir. 1994) (footnote omitted).

4.    The government also knew that the evidence would help the defendant personally considering, unlike in *Hernandez*, the evidence was destroyed after the defendant's arrest and while there were pending criminal charges.  *Compare* United States v. Hernandez, 109 F.3d 1450, 1455 (9th Cir. 1997) (No bad faith in destroying gun Hernandez was charged with possessing because police officer "ran a computer check which showed that the state charges against Hernandez had been dismissed.").

5.    In *Westerdahl*, the Ninth Circuit noted *in dicta* that "although *Youngblood* does not specifically define whether the appropriate standard for bad faith is objective or subjective, analysis of the opinion supports the preference for an objective bad faith standard."  United States v. Westerdahl, 945 F.2d 1083, 1087 (9th Cir. 1991).

Technology Office for the FBI's Office of General Counsel, said that "the FBI follows this policy because its intent isn't to use the data as evidence in court, but rather to simply find the 'general location of their subject' in order to start collecting other information that can be used to justify a physical search of the premises."[6]  At the February 10, 2011 status conference, the prosecution also claimed that the FBI was attempting to locate the aircard to a more general area in consideration of the defendant's Fourth Amendment rights:

> MR. BATTISTA: ... In other words, the government only used equipment of a limited capability to only get to this area.
>
> THE COURT: So you're saying, if I understand you, that the government consciously said "we could be more precise with this equipment, but we're not going to be."
>
> MR. BATTISTA: My understanding is -- I mean in this day and age in technology, Your Honor, I'm not going to stand here and say the government doesn't have abilities beyond what was done in this case. But I have spoken to the team and we have addressed this because we've tried to, you know, where is the line.
>
> THE COURT: So this was Fourth Amendment consideration by the government? Right?
>
> MR. BATTISTA: Yes, Your Honor.

February 10, 2011 Status Conference, Partial Transcript of Proceedings, at 16:33:27 – 16:34:20.

If the FBI was looking out for the defendant's Fourth Amendment rights by attempting to locate the aircard to a more general area then surely the government was aware that the very evidence that would allow the defendant to test that fact (*i.e.*, the destroyed geolocation data) would be relevant and material to a Fourth Amendment defense.  Clearly, there is bad faith considering government agents and prosecutors "themselves by their conduct indicate that the evidence could form a basis" for the defendant's Fourth Amendment arguments.  *See* Arizona v. Youngblood, 488 U.S. 51, 58 (1988); Barton, 995 F.3d 931 (9th Cir. 1993) (extending concept to *Franks* issues); United States v. Monzulla, 195 Fed. Appx. 629 (9th Cir.

6.    Valentino-DeVries, *'Stingray' Phone Tracker Fuels Constitutional Clash*, The Wall Street Journal, p. A1 (Sept. 22, 2011).

REPLY TO GOVERNMENT RESPONSE TO
DEFENDANT'S MOTION TO DISMISS FOR DESTRUCTION OF EVIDENCE
CR08-814-PHX-DGC

2006) (extending concept to Fourth Amendment challenges in general).  The government had no reasonable grounds to believe that the evidence was not relevant and material to a Fourth Amendment defense.

### C. Contrary to the government's belief, the Supreme Court's *Trombetta* decision provides significant support for the defendant's argument.

The government cited <u>California v. Trombetta</u>, 467 U.S. 479 (1984) in support of its request that the *Defendant's Motion* be denied.  The Supreme Court's *Trombetta* decision does not help the government.  In *Trombetta*, the Supreme Court reasoned that "[t]o the extent that respondents' breath samples came into the possession of California authorities, it was for the limited purpose of providing raw data to the Intoxilyzer.  The evidence to be presented at trial was not the breath itself but rather the Intoxilyzer results obtained from the breath samples."  <u>Trombetta</u>, 467 U.S. at 487-88 (upholding destruction of breath samples).  In the present case, the defendant is not interested in the "raw data" fed into the StingRay, *i.e.*, the aircard's radio waves captured by the StingRay's beam forming antenna.  Instead, the defendant is interested in the "results," just as they were available in *Trombetta*, and those results are the destroyed aircard real-time geolocation data.  If the *Trombetta* court was addressing the government's destruction of evidence in this case, it would likely find a due process violation considering the government preserved neither the "raw data" nor the "results" and the defendant has no other comparable evidence.

The *Trombetta* court further reasoned that the government "did not destroy respondents' breath samples in a calculated effort to circumvent the disclosure requirements established by *Brady v. Maryland* and its progeny."  *Id.* at 488.  In the present case, the sole purpose of the FBI policy is to circumvent the disclosure requirements established by *Brady v. Maryland* in order to conceal so-called sensitive investigative techniques from the accused.  The *Trombetta* court also noted that "California gives drunken driving defendants the opportunity to inspect the machine used to test their breath as well as that machine's weekly calibration results and the breath samples used in the calibrations."  *Id.* at 490.  Also, "the defendant retains the right to cross-examine the law enforcement officer who administered

REPLY TO GOVERNMENT RESPONSE TO
DEFENDANT'S MOTION TO DISMISS FOR DESTRUCTION OF EVIDENCE
CR08-814-PHX-DGC

1  the Intoxilyzer test..." *Id*.  As is well established in the present case, the government will not

2  allow the defendant to question the FBI agents/personnel who operated the StingRay, *etc*.

3  and the government will not allow the defendant to inspect the StingRay, test data, or any

4  other evidence discussed in his *Motion For Discovery* (Dkt. #592-1).

**D.   The defendant made clear that he is not arguing that the destroyed evidence is exculpatory, he is arguing that it is relevant and material to his *Motion To Suppress*.**

7      In the *Government Response*, the prosecution seems to suggest that the defendant

8  believes the destroyed evidence would be exculpatory at trial.[7]  In the *Defendant's Motion*,

9  he made clear that his argument is not that the destroyed evidence is exculpatory in a trial

10 defense but that it is relevant and material to his *Motion To Suppress*.  Prior to *Barton,* the

11 Ninth Circuit's "application of the due process principles announced in *Brady*, *Trombetta*,

12 and *Youngblood* [][was] limited to the destruction of exculpatory or potentially exculpatory

13 evidence that would have been offered at the guilt or penalty phase of a criminal

14 proceeding."  Barton, 995 F.3d at 934.  The *Barton* court noted that "[t]he Supreme Court

15 has not decided the question whether the destruction of evidence which had the potential at a

16 suppression hearing to impeach allegations in an affidavit for a search warrant violates due

17 process[,]" *id.*, and later in the opinion decided the question in the affirmative for the Ninth

18 Circuit.  *See id.* at 935.  In *Monzulla*, the Ninth Circuit extended *Barton* beyond *Franks*

19 impeachment issues to cover the destruction of evidence having the potential to show that a

20 Fourth Amendment search was unreasonable in general.  *See* Monzulla, 195 Fed. Appx. 629

21 (9th Cir. 2006).  Although the *Monzulla* opinion does not go into detail, an examination of the

22 district court record shows that the *Monzulla* case involved the destruction of police contact

23 tapes and an argument made by the defendant that the loss of evidence "puts [][him] at a

24 disadvantage because he is unable to examine the exact time of events that led up to the

25 search of his camper and his ultimate arrest."  Unites States v. Monzulla, A05-009 CR

27  7.      *See Government Response*, p. 3 ("Indeed, unlike the Intoxilyzer results at issue in
*Trombetta*, the precision of the aircard tracking operation or the related equipment will not be
28  an issue at trial and has nothing to do with whether Defendant committed the charged
crimes.") (Dkt. #633).

- 7 -

REPLY TO GOVERNMENT RESPONSE TO
DEFENDANT'S MOTION TO DISMISS FOR DESTRUCTION OF EVIDENCE
CR08-814-PHX-DGC

1   (RRB), p. 6 (D.Alaska, Apr. 12, 2005).  Similar to *Monzulla*, the defendant in the present

2   case is requesting that the Court apply *Barton* to the destruction of evidence that would have

3   allowed him to show that the aircard was located precisely inside apartment No. 1122.

> **E.    If the Court considers the government's claim that the real-time aircard geolocation data was destroyed with a lack of subjective bad faith then the defendant requests an evidentiary hearing to question the FBI agent(s)/personnel who destroyed the evidence.**

7          The government claims that it "acted in good faith by following the U.S. Magistrate

8   Judge's Order and was not aware of any potential exculpatory value of the expunged

9   materials."  *Government Response*, p. 3.[8]  The government is making a claim of subjective

10  good faith considering it depends upon what the FBI agent(s)/personnel were thinking about

11  at the time they destroyed the evidence.  If the Court wishes to ignore the dicta of *Westerdahl*

12  (*see* fn. 5, *supra*) which indicates an objective analysis, and consider subjective intent when

13  applying *Trombetta* and *Youngblood*, then the defendant requests an evidentiary hearing so

14  that he may question the FBI agent(s)/personnel who destroyed the evidence.  Through

15  questioning, the defendant expects to prove subjective bad faith by showing that the FBI

16  agent(s)/personnel who destroyed the real-time aircard geolocation data were **aware** of the

17  following: (1) locating the aircard within apartment No. 1122 would implicate the Fourth

18  Amendment, (2) the FBI's standard "general proximity" claim meant that the destroyed

19  evidence was relevant and material to a Fourth Amendment defense, (3) typical Fourth

20  Amendment searches, based on some type of judicial authorization, do not end with the

21  government destroying the fruits of the search, (4) evidence is typically preserved for

22  defendants and their attorneys pursuant to *Brady* and its progeny, and (5) the defendant was

23  in custody with pending criminal charges at the time the evidence was destroyed.  The

24  defendant also needs to determine whether the FBI agent(s)/personnel who destroyed the

25  evidence read the provision of the N.D.Cal. 08-90330MISC-RS order regarding destruction

26  of evidence and whether they are familiar with the FBI policy regarding destruction of

27

28  8.    When the government says "exculpatory," the defendant assumes that it means "relevant and material to a motion to suppress."  *See* Section I(D), *supra*.

REPLY TO GOVERNMENT RESPONSE TO
DEFENDANT'S MOTION TO DISMISS FOR DESTRUCTION OF EVIDENCE
CR08-814-PHX-DGC

1  evidence.  If the government refuses to produce witnesses then the defendant requests that

2  the Court reject any claim of subjective good faith considering the defendant has no way to

3  test those claims and the government has offered no evidence in support of its claims.

4     If the government was referring to a lack of objective bad faith on p. 3 of the

5  *Government Response*, then, from an objective standpoint, the defendant has adequately

6  proven that no reasonably well trained government agent or prosecutor would fail to

7  recognize that the evidence was relevant and material to a Fourth Amendment defense.

8  Likewise, from an objective standpoint, the defendant has adequately proven that no

9  reasonably well trained government agent or prosecutor would destroy the evidence with a

10  good faith reliance on the N.D.Cal. 08-90330MISC-RS order or with a good faith reliance on

11  the FBI policy.  However, the defendant recently made a request to the USAO for a copy of

12  the FBI policy that purportedly instructs agents/personnel to destroy real-time geolocation

13  data.  Depending on what this new and previously unknown evidence indicates, the

14  defendant may later request an evidentiary hearing to determine matters of objective bad

15  faith with respect to the destroyed real-time aircard geolocation data.

16       **F.**  **Additionally, the defendant now requests that the case be dismissed
17         with prejudice if the Court finds that the defendant has insufficient
          evidence to prove that the aircard location was verified after July
18         16, 2008.**

19     In light of discussions at the September 22, 2011 court hearing, it appears as if the

20  Court may not order the government to turn over some of the evidence the government

21  claims is privileged.  Therefore, in light of those developments, the defendant now has

22  additional grounds for requesting dismissal based on the government's destruction of the

23  real-time aircard geolocation data because, without it, the defendant may be unable to prove

24  that the government verified the aircard location after July 16, 2008.  The only other

25  comparable evidence is the FBI's original physical storage devices used to collect the LAESP

26  messages and used to create the CDNRS files.  By examining the storage devices, the

27  defendant will be able to either (1) identify the missing LAESP data contained in the

28  reconstructed LAESP messages previously provided by the government, or (2) identify

REPLY TO GOVERNMENT RESPONSE TO
DEFENDANT'S MOTION TO DISMISS FOR DESTRUCTION OF EVIDENCE
CR08-814-PHX-DGC

evidence of data having been deleted from the original storage devices.  In his *Motion For Discovery* (Dkt. #592-1), the defendant makes a sufficient showing that data is missing.  *See* Dkt. #592-1, Section V(G) and VI(H).  If the Court finds that the defendant's *Motion For Discovery* (Dkt. #592-1) was insufficient in proving that the aircard location was verified after July 16, 2008, and decides to let the government withhold the storage devices addressed in Section I(H) of the defendant's *Submission Pursuant To LRCiv 37.1* (Dkt. #592-2), then the defendant requests that the case be dismissed with prejudice for the government's destruction of the real-time aircard geolocation data.

### G.    The defendant is seeking an immediate ruling prior to drafting and filing his *Motion To Suppress*.

The noted emails, reports, and other evidence the defendant cited in his *Motion For Discovery* (Dkt. #592-1) make a very strong showing that the aircard was located precisely inside apartment No. 1122.  However, if the Court finds the evidence to be insufficient in this regard, and finds a difference in privacy between locating the aircard to one apartment compared to three or four, then the defendant requests the relief requested in his original motion, *i.e.*, either a finding that the aircard was located precisely inside apartment No. 1122 or dismissal of the case with prejudice.  The defendant is seeking the requested relief prior to filing his *Motion To Suppress* so that his arguments are not prejudiced by having to prove an invasion of privacy based on the government's three or four apartment scenario as apposed to the one apartment scenario that is reflective of the truth.  The defendant is seeking a ruling prior to drafting his *Motion To Suppress* considering he needs to use entirely different approaches for either scenario and the supportive arguments are not complementary.

This reply motion was drafted and prepared by the *pro se* defendant, however, he authorizes his shadow counsel, Philip Seplow, to file this motion on his behalf using the ECF system.  The defendant is appearing *pro se* and has never attended law school.  The defendant's filings, however inartfully pleaded, must be liberally construed and held to less stringent standards than formal pleadings drafted by lawyers.  *See* <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972).

Respectfully Submitted:

PHILP SEPLOW, Shadow Counsel, on
behalf of DANIEL DAVID RIGMAIDEN,
Pro Se Defendant:


s/ Philip Seplow
Philip Seplow
Shadow Counsel for Defendant.

/// 
/// 
/// 
/// 
/// 
/// 
/// 
/// 
/// 
/// 
/// 
/// 
/// 
/// 
/// 
/// 
/// 
/// 
/// 
/// 

*REPLY TO GOVERNMENT RESPONSE TO*
*DEFENDANT'S MOTION TO DISMISS FOR DESTRUCTION OF EVIDENCE*
*CR08-814-PHX-DGC*

**CERTIFICATE OF SERVICE**

I hereby certify that on:                     I caused the attached document to be
electronically transmitted to the Clerk's Office using the ECF system for filing and
transmittal of a Notice of Electronic Filing to the following ECF registrants:

Taylor W. Fox, PC
Counsel for defendant Ransom Carter
2 North Central Ave., Suite 735
Phoenix, AZ 85004

Frederick A. Battista
Assistant United States Attorney
Two Renaissance Square
40 North Central Ave., Suite 1200
Phoenix, AZ 85004

Peter S. Sexton
Assistant United States Attorney
Two Renaissance Square
40 North Central Ave., Suite 1200
Phoenix, AZ 85004

James R. Knapp
Assistant United States Attorney
Two Renaissance Square
40 North Central Ave., Suite 1200
Phoenix, AZ 85004

By: s/ Daniel Colmerauer
(Authorized agent of Philip A. Seplow, Shadow Counsel for Defendant; See ECF Proc. I(D) and II(D)(3))

*REPLY TO GOVERNMENT RESPONSE TO*
*DEFENDANTS MOTION TO DISMISS FOR DESTRUCTION OF EVIDENCE*
*CR08-814-PHX-DGC*