1   Daniel Rigmaiden
    Agency # 10966111
2   CCA-CADC
    PO Box 6300
3   Florence, AZ 85132
    Telephone: none
4   Email: none

5   Daniel David Rigmaiden
    Pro Se, Defendant

6

7                    UNITED STATES DISTRICT COURT

8                        DISTRICT OF ARIZONA

9

10  United States of America,            No. CR08-814-PHX-DGC

11          Plaintiff,                    MOTION FOR ORDER REQUIRING
                                          THAT DEFENDANT NOT BE
12  v.                                    SUBJECTED TO SLEEP DEPRIVATION
                                          PRIOR TO EACH COURT APPEARANCE
13  Daniel David Rigmaiden, et al.,

14          Defendant.

15

16          Defendant, Daniel David Rigmaiden, appearing *pro se*, respectfully submits this

17  *Motion For Order Requiring That Defendant Not Be Subjected To Sleep Deprivation Prior*

18  *To Each Court Appearance*.  Through this motion, the defendant respectfully requests that

19  the Court order the United States Marshal Service ("USMS") to ensure that the defendant not

20  be woken up by Corrections Corporation of America, Central Arizona Detention Center

21  ("CCA-CADC") prior to 6:45am or no later than three hours prior to his scheduled court

22  appearance time (whichever is earlier) on the dates the defendant is to attend court.  Due to

23  resulting temporary failures of his prefrontal cortex, the defendant cannot effectively and

24  properly present his *pro se* defense while deprived of a night's sleep prior to court

25  appearances.  According to scientific evidence, the defendant has been and will continue to

26  be the equivalent of "legally drunk" at every court appearance while under 28+ hours of

27  sleep deprivation.  The defendant's Fifth Amendment right to due process and Sixth

28  Amendment right to represent himself is violated when CCA-CADC and the USMS deprive

1    him of sleep prior to him appearing in court.  CCA-CADC's sleep deprivation treatment

2    inflicted upon the defendant and other detainees is not justified by CCA's desire to increase

3    its profits.  The defendant's request for sleep, to facilitate a fully functional prefrontal cortex,

4    will not cause an undue burden on CCA-CADC or the USMS as explained in paragraph No.

5    6 below.  In support of this request for sleep, the defendant submits the following:

6         1.    The USMS has contracted CCA-CADC to house federal pretrial detainees,

7    including the defendant, who attend court at the Phoenix and Tucson federal courthouses.

8    *See* USMS/CCA-CADC Award/Contract No. MS-99-D-0057, p. 1-2 attached as EXHIBIT

9    01.  On any given night that a CCA-CADC detainee has court on the following day, CCA-

10   CADC staff wakes up the detainee (if he is sleeping) at approximately 11:30pm so that he

11   can get ready for the court appearance to occur on the next calendar day.  *See* Declaration by

12   Daniel Rigmaiden RE: *CCA-CADC's 24+ Hour Sleep Deprivation Prior To Court*

13   *Appearances* (EXHIBIT 02); Declaration by Daniel Rigmaiden RE: *CCA-CADC Court*

14   *Transport Experience* (EXHIBIT 03); Group Declaration by a total of 30 different CCA-

15   CADC detainees RE: *CCA-CADC Deprives Detainees Of A Full Night's Sleep Prior To*

16   *Court Appearances* (EXHIBIT 04).  The defendant is typically deprived of sleep for at least

17   24 hours prior to each court appearance.  *See* EXHIBIT 02.  For example, on September 7-8,

18   2010, the defendant was deprived of 32.5 hours of sleep prior to appearing in Court to argue

19   his *pro se* defense.  *See id.*, par. 4 (p. 2).  On January 7, 2010, February 3, 2010, March 24,

20   2010, May 28, 2010, and July 15, 2010 the defendant was also deprived of at least 24 hours

21   of sleep prior to appearing in court to argue his *pro se* defense.  *See id.*, par. 2 (p. 1).  More

22   recently, on September 22, 2011, the defendant was deprived of approximately 31 hours of

23   sleep prior to appearing in court to argue his *pro se* defense (a very important hearing).  *See*

24   Declaration by Daniel Rigmaiden RE: *CCA-CADC's 31 Hour Sleep Deprivation Prior To*

25   *Sept. 22, 2011 Court Appearance* (EXHIBIT 05).

26        2.    The defendant declared that this type of treatment results in him feeling

27   "extremely tired" making it "difficult to pay attention."  EXHIBIT 02, par. 4 (p. 2-3).  The

28   defendant also declared that his "ability to argue effectively and [][his] overall *pro se* defense

suffered due to the sleep deprivation treatment administered by CCA-CADC." *Id*. The defendant has 30 witnesses who previously declared the following:

> While in Court, my ability to think clearly was diminished due to being very tired. I had a diminished ability to think and to make decisions due to CCA-CADC's sleep deprivation treatment.
>
> EXHIBIT 04, par. 3 (p. 1-2).

The defendant also has 25 witness who previously declared that the sleep deprivation treatment, along with numerous other oppressive CCA-CADC court transport procedures, effect their decisions to give up on a defense and accept a guilty plea:

> My desire to avoid the oppressive CCA-CADC Court transport procedures listed above weighed heavily on my decision, or will weigh heavily on my decision, to give up on my defense and accept a deal on a guilty plea for my federal criminal case of which I am currently being detained. I know that the sooner my case is concluded, the sooner I will no longer be required to appear in Court and be subjected to CCA-CADC's oppressive Court transport procedures.
>
> Group Declaration by a total of 30 different CCA-CADC detainees RE: *CCA-CADC Conditions Of Confinement: Court Transport Procedures Deter Detainees From Fighting Their Cases* (EXHIBIT 06), par. 4 (p. 2).

       3.      During his September 22, 2011 court appearance, the defendant was unable to think clearly and effectively due to being deprived of sleep for 31 hours. *See* EXHIBIT 05, par. 5 (p. 2). Due to the sleep deprivation, the defendant was unable to effectively and properly put forth his *pro se* defense. *See id*. For example, after the government claimed that the term "StingRay" was a generic law enforcement term, in the way someone may refer to nose tissue as "Kleenex," the defendant failed to assimilate this new information into previously known information noted in his *Motion Requesting Remedies To Cure Continuing Prejudice To The Defense RE Discovery*[1] and in his *Response To Government's Memorandum Regarding Law Enforcement Privilege And Request For An Ex Parte And In Camera Hearing If Necessary* (Dkt. #536). *See* EXHIBIT 05, par. 5 (p. 2). The two cited

---

1.      This motion was previously filed sealed from the public record but was not *ex parte* and was served upon the government.

1    motions explain how Harris Corporation is the **sole source** vendor for **any type** of

2    portable/transportable wireless device locator and this renders moot any prosecution claim

3    that "StingRay" is a generic term.  *See also* the defendant's recently filed *Clarification Of*

4    *Various Pending Discovery Issues* (Dkt. #653) (assimilating the information after the fact).

5    The defendant also found it very difficult to listen, communicate verbally, update strategies,

6    assess risk, recall what was said minutes prior, and make decisions.  *See* <u>EXHIBIT</u> 05, par. 6

7    (p. 2-3).  For example, it was very difficult for the defendant to apply new information he

8    learned at the hearing to his thought process while deciding whether to make further attempts

9    to work out additional factual stipulations for the pending discovery issues.  *See id*.  As a

10   result, the defendant showed extreme indecisiveness and hesitation in his final decision.  The

11   September 22, 2011 court hearing audio recording will reflect upon this claim and other

12   neurocognitive performance issues.

13          4.     There is significant scientific evidence proving that when the defendant is

14   forced to conduct his defense in court while under sleep deprivation he is not operating with

15   a sound mind and cannot effectively present his *pro se* defense.  "It has long been established

16   that sleep deprivation degrades aspects of neurocognitive performance."[2]  "Virtually all

17   forms of sleep deprivation result in increased negative mood states, especially feelings of

18   fatigue, loss of vigor, sleepiness, and confusion."[3]  The defendant needs to use divergent

19   thinking skills, via his prefrontal cortex, while participating in courtroom procedures and

20   these skills have been shown to be effected by sleep deprivation.  "Divergent skills involved

21   in decision making that are effected by sleep loss include: assimilation of changing

22   information; updating strategies based on new information; lateral thinking; innovation; risk

23   assessment; maintaining interest in outcomes; mood-appropriate behavior; insight; and,

24   communication and temporal memory skills."[4]  When the defendant appears in court under

25

---

26   2.     Durmer, Jeffrey S., M.D., Ph.D., and Dinges, David F., Ph.D., Neurocognitive
     Consequences of Sleep Deprivation, *Seminars In Neurology,* Volume 25, Number 1, 2005, p.
27   118.

     3.     *Id.*, p. 119.
28
     4.     *Id.*, p. 120-21 (footnote omitted).

MOTION FOR ORDER REQUIRING THAT DEFENDANT NOT BE
SUBJECTED TO SLEEP DEPRIVATION PRIOR TO EACH COURT APPEARANCE
CR08-814-PHX-DGC

forced sleep deprivation, he is incapable of maintaining adequate use of his prefrontal cortex[5][6] and his divergent skills suffer.  *See* par. No. 3 above (giving two examples of the defendant's prefrontal cortex failing while under sleep deprivation on September 22, 2011). With respect to the defendant's "hesitant decision" noted in paragraph No. 3 above, a scientific study on sleep deprivation found increased hesitance and reduced focus among sleep-deprived junior doctors.[7]  Another study shows that the defendant being under 28 hours of sleep deprivation is the equivalent of being legally drunk in Arizona:[8] "deficits in performance accuracy and reaction time at 28 hours of sleep deprivation were equivalent to those found after alcohol intoxication (BAC at 0.1%)."[9]  The fact that the defendant is the equivalent of being legally drunk in Arizona while in court is relevant to the legal argument contained in paragraph No. 5 below.

5.    In the context of a defendant attending trial, the Ninth Circuit found an unspecified District of Arizona federal pretrial detention facility's sleep deprivation practice unsettling:

> We are concerned by the district court's handling of Pisciotta's complaint that he was not getting enough sleep... [and] disagree with the district court insofar as it suggested that waking up prisoners in the middle of the night for

---

5.    *Id.* p. 121 ("neurophysiological and functional imaging studies confirm that sleep loss affects prefrontal cortex activity").

6.    The effects of CCA-CADC's/USMS' sleep deprivation treatment is not limited to the defendant's prefrontal cortex.  *See* Goel, Namni, Ph.D. et al, Neurocognitive Consequences of Sleep Deprivation, *Seminars In Neurology,* Volume 29, Number 4, 2009, p. 324 ("Functional neuroimaging studies confirm that sleep loss affects prefrontal cortex activity, but there is also evidence [] that the thalamus and possibly other midbrain and brainstem nuclei have important roles in the mechanisms underlying cognitive performance deficits in sleep-deprived subjects."); *id.*, p. 321 ("Both wakefulness and sleep are modulated by an endogenous biological clock located in the suprachiasmatic nuclei (SCN) of the hypothalamus.").

7.    *See* Goldman, L. T., McDonough, M. T., & Rosemond, G. P., Stresses affecting surgical performance and learning, *Journal of Surgical Research*, 12, 83–86 (1972).

8.    *See* A.R.S. § 28-1381(A) ("It is unlawful for a person to drive or be in actual physical control of a vehicle in this state under any of the following circumstances: [(2)] If the person has an alcohol concentration of 0.08 or more within two hours of driving or being in actual physical control of the vehicle...")

9.    *See* Goel, Namni, Ph.D. *et al.*, Neurocognitive Consequences of Sleep Deprivation, p. 321 (citing Williamson AM, Feyer AM. Moderate sleep deprivation produces impairments in cognitive and motor performance equivalent to legally prescribed levels of alcohol intoxication. Occup Environ Med 2000;57:649–655).

transportation to trial was an acceptable procedure, and that the ability of the prisoners to sleep on the bus on the way to and from the court was sufficient to remedy their sleep deprivation.

United States v. Pisciotta, 30 Fed. Appx. 689, 691 (9th Cir. 2002).

Although the defendant in the present case does not have an ongoing trial, he is still representing himself and needs to conduct his defense personally at every court appearance. Additionally, the suppression motion/hearing stage of the proceedings is far more important than trial considering if the defendant prevails then there will likely be no evidence for the government to present to a jury.  In Waller v. Georgia, the Supreme Court said that "suppression hearings often are as important as the trial itself." *Id.*, 467 U.S. 39, 46 (1984). As noted in paragraph No. 4 above, the defendant is the equivalent of being legally drunk in the state of Arizona when deprived of 28 hours of sleep—three hours less than the 31 hours he was deprived of on September 22, 2011.  In the context of applying Fed. R. Crim. P. 11(b)(2)[10] at a change of plea hearing, all federal courts see it fit to verify that a defendant providing a guilty plea is not under the influence of alcohol at the time the plea is given. *See*, *e.g.*, Lambert v. Blodgett, 393 F.3d 943, 952 (9th Cir. 2004) (The trial court asked the defendant immediately prior to pleading guilty: "is your mind clear?" and "At this moment are you under the influence of alcohol, drugs or prescription medicine?"); Adamson v. Ricketts, 789 F.2d 722, 737 (9th Cir. 1986) ("The judge established that Adamson had four years of college, never had any mental illness or disease, and was not under the influence of drugs or alcohol.").  If a defendant is considered mentally unsound if intoxicated at the time of making a decision while in court then the same reasoning should apply to this defendant who is in the same situation but instead under sleep deprivation to a point where he is the equivalent of being intoxicated.  The defendant being subjected to sleep deprivation treatment prior to his *pro se* court appearances should not be taken lightly under any analysis considering the practice is used to torture people in order to extract information,  *see* United States v. Abu Ali, 395 F.Supp.2d 338, 355 (E.D.Va. 2005) ("[FBI] Agent Kuligoski defined 'torture' as any duress—including deprivation of food or sleep and beatings—that is used 'to

10.    Fed. R. Crim. P. 11(b)(2) is titled "Ensuring That a Plea is Voluntary."

- 6 -

MOTION FOR ORDER REQUIRING THAT DEFENDANT NOT BE
SUBJECTED TO SLEEP DEPRIVATION PRIOR TO EACH COURT APPEARANCE
CR08-814-PHX-DGC

1   get someone finally to break down and talk.'") and Ashcraft v. Tennessee, 322 U.S. 143, 150

2   n.6 (1944) ("It has been known since 1500 at least that deprivation of sleep is the most

3   effective torture and certain to produce any confession desired." (internal citation and

4   quotation marks omitted)); and sleep deprivation "has also been implicated in several major

5   historical disasters, including the Space Shuttle Challenger explosion, the Exxon Valdez oil

6   spill, and the Chernobyl Nuclear plant explosion."[11]

7        6.      Through a fully exhausted grievance, the defendant attempted to resolve the

8   sleep deprivation issue with Charles Keeton, warden of CCA-CADC, but was unsuccessful.

9   See EXHIBIT 07.  Warden Keeton stated that "[y]our scheduled movement will be handled

10  as with any other detainee.  No further action required."  Id., p. 9.  The defendant also mailed

11  a letter to the American Correctional Association ("ACA"), Standards and Accreditation

12  Department, prior to a scheduled ACA inspection of CCA-CADC, reporting on the sleep

13  deprivation treatment.  Despite the defendant's efforts, nothing has been done to remedy the

14  situation.  Prior to the grievance going to warden Keeton, then CCA-CADC's "Operations

15  Movement Coordinator," Ryan Hendricks, indicated that he would contact the USMS to

16  arrange for a Constitutional transport, if needed, once the defendant's trial begins.  See id., p.

17  7.  In light of the fact that the current stage of the proceedings is more important than trial,

18  there is no reason why the Constitutional transport cannot be implemented now.  This should

19  not be a problem for CCA-CADC considering on two previous occasions the defendant was

20  transported to outside medical appointments that were scheduled in the afternoon, just like

21  the majority of the defendant's court appearances, and on both occasions CCA-CADC saw

22  no need to wake up the defendant the night before.  See EXHIBIT 05, par. 7 (p. 3).

23  Additionally, when the defendant first arrived at CCA-CADC in 2008 and continuing into

24  2009, CCA-CADC would run two transport trips to the Phoenix courthouse every court day.

25  See id.  Back then, anyone having court in the afternoon was permitted to sleep and would

26

27  _____
    11.    Dickinson, David L. and Drummond, Sean P. A., The effects of total sleep deprivation
28  on bayesian updating, Judgment and Decision Making, vol. 3, no. 2, Feb. 2008, pp. 181-190
    (citing Coren, S. (1996). Sleep Thieves. New York: Free Press), available at
    http://journal.sjdm.org/71113/jdm71113.html (p. 2) (last accessed: Oct. 4, 2011).

get transported to the courthouse between 8:00am and 9:00am. *See id.* Since that time, CCA's desire to increase profits has dictated that the entire daily CCA-CADC court transport be done in one trip regardless of what time detainees have court.[12] CCA's earnings report noted the corporation's "continued focus and effort to contain costs[]"[13]—obviously at the expense of detainee/prisoner rights. CCA's desire to increase its profit margins (9.7% ($42.4 million) of its revenue ($432.8 million) for second quarter 2011)[14] does not justify having the defendant's Fifth and sixth Amendment rights violated. *See*, *e.g.*, Harper v. Showers, 174 F.3d 716, 720 (5th Cir. 1999) (Stating that "sleep undoubtedly counts as one of life's basic needs. Conditions designed to prevent sleep, then, might violate the Eighth Amendment [(or Fifth Amendment for pretrial detainees)].").

7. Transfer out of CCA-CADC to a facility closer to the Phoenix courthouse is not a suitable option for two reasons. First, the defendant has developed a system for his *pro se* defense preparation at CCA-CADC over the last 22 months of representing himself. If the defendant is transferred to a closer facility then he will have to spend a year of his time in efforts to convince the new facility to not impede upon his right to represent himself and his right to prepare an effective defense.[15] Second, the only other option for detention appears to be Maricopa County Jail and the defendant will surely not get along with Sheriff Joe Arpaio if held at one of his jails—regardless of whether or not the defendant and Mr. Arpaio ever communicate directly. The defendant does not want to be further distracted by additional litigation resulting from the imminent civil rights violations that would result from the defendant being detained at an Arpaio facility. More importantly, the defendant does not want to be attacked by Maricopa County Jail detention officers. A November 30, 2010

12.   *See* Corrections Corporation of America – News Release (website), CCA Announces 2011 Second Quarter Financial Results, CCA, Aug. 3, 2011, *available at* http://ir.correctionscorp.com/phoenix.zhtml?c=117983&p=irol-newsArticle&ID=1592785&highlight= , p. 1 (last accessed Oct. 17, 2011).

13.   *See id*.

14.   *See id*.; *see also id.*, p. 3 ("At June 30, 2011, our liquidity was provided by cash on hand of $54.6 million and $295.3 million available under our revolving credit facility.").

15.   The defendant makes this rough estimate based off of approximately how long it took to convince CCA-CADC to assist the defendant with legal phone calls, legal postage, sufficient legal research materials, access to discovery, *etc*.

MOTION FOR ORDER REQUIRING THAT DEFENDANT NOT BE SUBJECTED TO SLEEP DEPRIVATION PRIOR TO EACH COURT APPEARANCE
CR08-814-PHX-DGC

1    article in *The Arizona Republic* reported that Maricopa County Jail detention officers

2    unjustifiably stepped on a detainee's neck and slammed his head against a table prior to

3    further beatings.[16]   The article also reported on another Arpaio employee beating of a

4    mentally ill detainee who was restrained on a psychiatric ward bed.[17]   Having spoken with

5    numerous individuals over the last three years at CCA-CADC who have also previously been

6    detained at Arpaio facilities, the defendant has been repeatedly informed that the type of

7    beatings noted in *The Arizona Republic* are common punishment/retaliation for detainees

8    who "complain too much."[18]   Instead of a transfer to Maricopa County Jail or to another

9    facility, the better solution is to either have CCA sacrifice some of its incredible profits and

10   use them to transfer the defendant to/from court without violating his Constitutional

11   rights[19] or have the USMS conduct the Constitutional transport at the government's

12   expense.

13        8.    Forcing the defendant to give up his Sixth Amendment right to represent

14   himself, so as to alleviate his significant need for fully functional use of his prefrontal cortex

15   while in the courtroom, is not a suitable option for two reasons.  First, this is one of the "rare

16   instances[] [that] the defendant might in fact present his case more effectively by conducting

17   his own defense."  Faretta v. California, 422 U.S. 806, 834 (1975).  Second, forcing the

18   defendant to choose either a sleep deprived *pro se* defense or no effective *pro se* defense at

19   all is a "constitutionally offensive" choice for someone electing to proceed *pro se*.  *See*

20   United States v. Robinson, 913 F.2d 712, 715 (9th Cir. 1990).

21                                    * * * * *

22        Based on the points and authorities set forth above, the defendant respectfully requests

23   that the Court order the USMS to (1) ensure that the defendant not be woken up by CCA-

24   ─────────────────────────────────────────────────────────
     16.    *See* Hermann, William, Jail officer accused of abuse, *The Arizona Republic*, p. B1
25   (November, 30, 2010).  *See* EXHIBIT 08.

26   17.    *See id*.

     18.    Although the defendant has no way of knowing if these unsubstantiated claims made
27   by CCA-CADC detainees are true, he would rather not learn the hard way.

28   19.    The defendant is not special.  CCA-CADC should not be subjecting **any** detainee to
     unconstitutional sleep deprivation simply because it wants to increase its profits.

1  CADC prior to 6:45am or no later than three hours prior to his scheduled court appearance

2  time (whichever is earlier) on the dates the defendant is to attend court, and (2) effectuate

3  No. 1 above by either arranging for a USMS transport from CCA-CADC to the Phoenix

4  courthouse or by requiring that CCA-CADC transport the defendant to the Phoenix

5  courthouse in the same way that it transports the defendant to outside medical appointments,

6  *i.e.*, without sleep deprivation.

7        This motion and all attachments were drafted and prepared by the *pro se* defendant,

8  however, he authorizes his shadow counsel, Philip Seplow, to file this motion and all

9  attachments on his behalf using the ECF system.  The defendant is appearing *pro se* and has

10  never attended law school.  The defendant's filings, however inartfully pleaded, must be

11  liberally construed and held to less stringent standards than formal pleadings drafted by

12  lawyers.  *See* Haines v. Kerner, 404 U.S. 519, 520 (1972).

13        LRCrim 12.2(a) requires that the undersigned include the following statement in all

14  motions: "Excludable delay under 18 U.S.C. § 3161(h)(1)(D) will occur as a result of this

15  motion or of an order based thereon."

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1  Respectfully Submitted: October 24, 2011.

2

3                                                    PHILP SEPLOW, Shadow Counsel, on
                                                     behalf of DANIEL DAVID RIGMAIDEN,
4                                                    Pro Se Defendant:

5

6                                                    s/ Philip Seplow
                                                     Philip Seplow
7                                                    Shadow Counsel for Defendant.

8

9  ///

10 ///

11 ///

12 ///

13 ///

14 ///

15 ///

16 ///

17 ///

18 ///

19 ///

20 ///

21 ///

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

*MOTION FOR ORDER REQUIRING THAT DEFENDANT NOT BE*
*SUBJECTED TO SLEEP DEPRIVATION PRIOR TO EACH COURT APPEARANCE*
*CR08-814-PHX-DGC*

**CERTIFICATE OF SERVICE**

I hereby certify that on:   October 24, 2011, I caused the attached document to be electronically transmitted to the Clerk's Office using the ECF system for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Taylor W. Fox, PC
Counsel for defendant Ransom Carter
2 North Central Ave., Suite 735
Phoenix, AZ 85004

Frederick A. Battista
Assistant United States Attorney
Two Renaissance Square
40 North Central Ave., Suite 1200
Phoenix, AZ 85004

Peter S. Sexton
Assistant United States Attorney
Two Renaissance Square
40 North Central Ave., Suite 1200
Phoenix, AZ 85004

James R. Knapp
Assistant United States Attorney
Two Renaissance Square
40 North Central Ave., Suite 1200
Phoenix, AZ 85004

By: s/ Daniel Colmerauer
(Authorized agent of Philip A. Seplow, Shadow Counsel for Defendant; See ECF Proc. I(D) and II(D)(3))

*MOTION FOR ORDER REQUIRING THAT DEFENDANT NOT BE SUBJECTED TO SLEEP DEPRIVATION PRIOR TO EACH COURT APPEARANCE*
*CR08-814-PHX-DGC*