# AFFIDAVIT OF SUPERVISORY SPECIAL AGENT BRADLEY S. MORRISON

1.    I, Bradley S. Morrison, am a Supervisory Special Agent with the Federal Bureau of Investigation. I am assigned as the Unit Chief of the Tracking Technology Unit (TTU), Traditional Technology Section, Operational Technology Division in Quantico, Virginia. I have been an FBI Special Agent since 1996. As the Unit Chief of the TTU, I am responsible for the development, procurement and deployment of technical assets and capabilities to covertly locate, tag and track targets of interest in support of all FBI investigative, intelligence collection and operational programs. As part of these duties, I am responsible for overseeing deployment and monitoring policy compliance governing the FBI's use of equipment to locate cellular devices.

2.    On July 16, 2008, FBI technical personnel used equipment to locate an aircard believed to be used by the defendant in this matter, and that equipment falls within the statutory definition of a pen register/trap and trace device. The actual make and model of the equipment used in any particular operation by the FBI is law enforcement sensitive, and pursuant to FBI policy, cannot be released to the general public.

3.    As a pen register/trap and trace device, as defined in 18 U.S.C. §§ 3127(3) and (4), the equipment used in this case can only record, decode or capture electronic impulses which identify the originating number of a source of electronic communications, or other

1

dialing, routing, signaling and addressing information utilized in the processing and

transmitting of electronic communications. To comply with the legal definition of a pen

register/trap and trace device, the equipment used in this case is unable to upload, encode

or write any information to a target device. If the equipment were capable of these

functions, it would no longer be in compliance with the statutory definition of a pen

register/trap and trace device. Therefore, the equipment used in this case is

technologically unable to take any action to reprogram the hardware or software in the

aircard or the defendant's laptop.

4.      Further, 18 U.S.C. §§ 3127(3) and (4) specifically prohibit pen register or trap and

trace devices from recording, decoding or capturing the substantive content of any

communication. Were the equipment to do this, by statute, it would no longer be a pen

register/trap and trace device. Instead, it would be an electronic intercept device

regulated by Title III. To ensure that the content of communications is not intercepted, in

accordance with 18 U.S.C. §3121(c), all pen register/trap and trace devices used by

government agencies must be restricted from recording or decoding any data or impulses

not strictly related to the dialing, routing, signaling or addressing information utilized in

the processing or transmitting of wire or electronic communications. The equipment

used in this case was in compliance with the requirements of the statutes cited above.

Therefore, the pen register/trap and trace equipment used to locate the defendant's aircard

did not capture, collect, decode, view, or otherwise obtain any content transmitted from

2

the aircard, and therefore was unable to pass any of this information from the aircard to Verizon Wireless.

5.    FBI policy requires that at the conclusion of a location operation, FBI technical personnel are to purge all data stored in the pen register/trap and trace equipment. During a location operation, the electronic serial numbers (ESNs) (or their equivalent) from all wireless devices in the immediate area of the FBI device that subscribe to a particular provider may be incidentally recorded, including those of innocent, non-target devices. Purging is done by the FBI as an additional, internal procedural safeguard to ensure (1) that the privacy rights of those innocent third parties are maintained, (2) that the FBI does not store or maintain pen register/trap and trace data beyond the scope of its legal authorization, or (3) that the FBI does not collect information about individuals who are not the subject of criminal or national security investigations.

6.    I declare under penalty of perjury that the foregoing facts are true and correct.

10/27/11
Date

Bradley S. Morrison
Supervisory Special Agent
FBI

3