1  Daniel Rigmaiden
   Agency # 10966111
2  CCA-CADC
   PO Box 6300
3  Florence, AZ 85132
   Telephone: none
4  Email: none

5  Daniel David Rigmaiden
   Pro Se, Defendant

6

7              **UNITED STATES DISTRICT COURT**

8                  **DISTRICT OF ARIZONA**

9

10  United States of America,                No. CR08-814-PHX-DGC

11          Plaintiff,                        MOTION FOR ADDITIONAL
                                              DISCOVERY DUE TO GOVERNMENT
12  v.                                        IGNORING DEFENDANT'S RECENT
                                              DISCOVERY REQUESTS
13  Daniel David Rigmaiden, et al.,

14          Defendant.

15

16          Defendant, Daniel David Rigmaiden, appearing *pro se*, respectfully submits this

17  *Motion For Additional Discovery Due To Government Ignoring Defendant's Recent*

18  *Discovery Requests*.  The defendant is filing this motion requesting that the Court order the

19  government to provide additional discovery that he requested from the government after the

20  filing of his *Motion For Discovery* (Dkt. #592).  The government has taken the position that

21  the defendant is too much of a hassle to deal with and not worth the government's time (*see*

22  prosecution comments made at the October 28, 2011 court hearing).  Therefore, the

23  government previously began ignoring the defendant's minimal discovery requests that

24  resulted from new information coming to the defendant's attention after the filing of his

25  discovery motion at Dkt. #592.  Considering the government now ignores the defendant's

26  requests, he is filing this motion requesting that the Court order the government to turn over

27  certain additional evidence the defendant needs for his Fourth Amendment defense.  The

28  defendant is filing this motion pursuant to <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), <u>United</u>

*MOTION FOR ADDITIONAL DISCOVERY DUE TO GOVERNMENT IGNORING DEFENDANTS RECENT DISCOVERY REQUESTS*
*CR08-814-PHX-DGC*

States v. Gamez-Orduno, 235 F.3d 453, 461 (9th Cir. 2000), and Fed. R. Crim. P. 16(a)(1)(E) *et seq.*, and (a)(1)(F) *et seq.* All evidence being requested through this motion relates to previous discovery requests that were ignored by the government but after the filing of the defendant's *Motion For Discovery* (Dkt. #592). By failing to obtain and disclose the requested evidence—all of which is *Brady* material—the government is violating the defendant's Fifth Amendment due process rights and statutory rights under Rule 16 of the Federal Rules of Criminal Procedure. **Note:** the defendant is requesting an evidentiary hearing regarding the discovery request at Section II(D), *infra.*

## I.    Local Rules Of Civil Procedure, 37.1 requirements.

LRCiv 37.1, *referenced through* LRCiv 7.2(k) *when referenced through* LRCrim 12.1, requires the defendant to include with the accompanying discovery motion three separate, distinct, numbered paragraphs addressing the following:

(1) the question propounded, the interrogatory submitted, the designation requested or the inspection requested;

(2) the answer, designation or response received; and

(3) the reason(s) why said answer, designation or response is deficient.

LRCiv 37.1(a) *et seq.*

However, LRCiv 37.1(b) states that "[t]he foregoing requirement shall not apply where there has been a complete and total failure to respond to a discovery request or set of discovery requests." *Id.* Considering the government has not responded to the defendant's new discovery requests, he is not required to follow LRCiv 37.1(a) *et seq.*

## II.    The defendant's discovery requests that went unanswered/ignored by the government.

### A.    All text (SMS) messages sent to/from FBI agents regarding the aircard locating mission.

The defendant requested the following from the government:

Please search through all text messages sent/received to/from the primary case agents and the unidentified FBI technical agent/personnel that relate to the aircard locating mission. FYI, the FBI automatically saves all

MOTION FOR ADDITIONAL DISCOVERY DUE TO GOVERNMENT IGNORING DEFENDANT'S RECENT DISCOVERY REQUESTS
CR08-A14-PHX-DGC

1  | agent text messages in special databases as the text messages are received on
2  | agent wireless devices. Once the search is complete, please provide me with
   | all text messages that relate to searching for and locating the aircard.

The defendant is requesting that the Court order the government to review the FBI text messages for *Brady* material and Rule 16 material and then to provide the responsive evidence to the defendant immediately. Even if the government decides to withhold the text message evidence, it is still required to conduct the search requested by the defendant. The responsive evidence will discuss the operations of the FBI's portable/transportable wireless device locators and be responsive to the defendant's previous discovery requests outlined in his *Motion For Discovery*, "Submission Pursuant To LRCiv 37.1," §§ D, F and G (Dkt. #592-2):

> D.    All evidence relating to the real-time and historical geolocation techniques (*e.g.*, triangulation techniques) and radio wave collection methods (*e.g.*, cell site emulation, interrogation, active approach) used by the government agents/personnel and by the wireless device locators while searching for the aircard.
>
> F.    All evidence relating to the specific wireless device locators (*e.g.*, user manuals, test data, *etc.*, for the StingRay) and related software (*e.g.*, CDMA software, Geolocation software, *etc.*) used to search for and locate the aircard.
>
> G.    All evidence relating to the Pen/Trap network architecture in place between July 16, 2008 and August 1, 2008 beginning at the Verizon Wireless Access Function and ending at the FBI Collection Function.
>
> *Id.*

> **B.    A full and unredacted copy of the FBI "destroy the evidence" policy being relied upon by the government to justify its destruction of aircard real-time geolocation data.**

Based on an article appearing in the *The Wall Street Journal* regarding CR08-814-PHX-DGC and portable/transportable wireless device locators, the defendant learned that the FBI has a policy to destroy evidence at the conclusion of a wireless device locating mission. [1] Subsequent to the defendant reading the article, he requested the following from the

---

1.    Valentino-DeVries, Jennifer, *'Stingray' Phone Tracker Fuels Constitutional Clash*, The Wall Street Journal, p. A1 (Sept. 22, 2011) *available at* http://online.wsj.com/article/SB10001424053111904194604576583112723197574.html (last accessed: September 22, 2011) (The FBI stated that its been "'our policy since the 1990s [] to purge or "expunge" all information obtained during a location operation' when using

government:

> Please provide me with an unredacted copy of the FBI policy that instructs agents/personnel to destroy real-time geolocation data obtained via portable/transportable wireless device locators such as the Harris StingRay and KingFish.

The defendant is requesting that the Court order the government to provide a full and unredacted copy of the noted policy to the defense.  The government previously conceded that it located the aircard precisely inside apartment No. 1122[2] and this *may* have eliminated the defendant's need for the destroyed evidence.  However, even if there is now no resulting prejudice to the defense in light of the government conceding that the aircard was located precisely inside apartment No. 1122,[3]  he will still argue for suppression of secondary evidence based on <u>United States v. Flyer</u>, 633 F.3d 911, 916 (9th Cir. 2011) ("If the government destroys evidence under circumstances that do not violate a defendant's constitutional rights, the court may still impose sanctions including suppression of secondary evidence.").  A summary of the defendant's *Flyer* type suppression argument is as follows:

> The FBI has an objectively unreasonable policy to destroy evidence that is the fruits of Fourth Amendment searches and has had this policy since the 1990s. It is very likely that numerous individuals have and will continue to have their constitutional rights violated by this widespread and abusive practice. Suppression of secondary evidence resulting in dismissal of the case would be a strong deterrent of this government practice in the future.

In order to support his request for suppression under *Flyer*, the defendant needs a copy of the FBI's "destroy the evidence" policy to prove that it is objectively unreasonable by its terms, and to impeach testimony provided by FBI Supervisory Agent Bradley Morrison regarding the policy.  FBI Agent Morrison recently declared the following:

> FBI policy requires that at the conclusion of a location operation, FBI

stingray-type gear.").

2.      *See Government's Memorandum RE Motion For Discovery*, p. 2 (footnote omitted) (Dkt. #674).

3.      There still may be other resulting prejudice depending on what, if any, evidence the Court orders the government to turn over to the defense.  For example, the destroyed real-time geolocation data would have also allowed the defendant to prove that the government used geolocation techniques that amount to triangulation and used portable/transportable wireless device locators from a helicopter hovering over apartment No. 1122.

technical personnel are to purge all data stored in the pen register/trap and trace equipment[]... as an additional, internal procedural safeguard to ensure (1) that the privacy rights of those innocent third parties are maintained, (2) that the FBI does not store or maintain pen register/trap and trace data beyond the scope of its legal authorization, or (3) that the FBI does not collect information about individuals who are not the subject of criminal or national security investigations.

*Government's Memorandum Re Motion For Discovery*, "Affidavit Of Supervisory Special Agent Bradley S. Morrison," par. 5 (p. 3) (Dkt. #674-1).

The above claim is inconsistent with alleged public statements made by Sherry Sabol, Chief of the Science & Technology Office for the FBI's Office of General Counsel and by another unidentified FBI official:

Stingrays are designed to locate a mobile phone even when it's not being used to make a call. The Federal Bureau of Investigation considers the devices to be so critical that it has a policy of deleting the data gathered in their use, **mainly to keep suspects in the dark about their capabilities**, an FBI official told The Wall Street Journal in response to inquiries.

Valentino-DeVries, *'Stingray' Phone Tracker Fuels Constitutional Clash*, The Wall Street Journal, p. A1 (Sept. 22, 2011).

_____

Ms. Sabol says the FBI follows this ["destroy the evidence"] policy because its intent isn't to use the data as evidence in court, but rather to simply find the "general location of their subject" in order to start collecting other information that can be used to justify a physical search of the premises.

*Id.*

In addition to needing the FBI's "destroy the evidence" policy in order to prove that it is objectively unreasonable by its terms alone, the defendant also needs the policy so that he can clear up discrepancies between the various claims and statements quoted above.

**C.      Copies of the N.D.Cal. 08-90330MISC-RS and 08-90331MISC-RS _proposed_ orders as they were drafted by the government and placed on the record in the Northern District of California.**

After the defendant filed his *Motion For Discovery* (Dkt. #592), the government made it clear that it would be relying on claims of good faith reliance on the N.D.Cal. orders if the Court finds any Fourth Amendment violation.  Therefore, the defendant requested the following from the government:

*MOTION FOR ADDITIONAL DISCOVERY DUE TO GOVERNMENT IGNORING DEFENDANT'S RECENT DISCOVERY REQUESTS CR08-814-PHX-DGC*

1    Please provide me with copies of the proposed orders for the N.D.Cal.
2    08-90330MISC-RS and 08-90331MISC-RS orders.  I need the proposed orders
     that were submitted to the magistrate prior to him making any alterations and
3    signing them.  In other words, I need the proposed orders as they were written
     by the government prior to them being submitted to the magistrate.

4

5    The defendant needs the requested copies of the proposed orders **as drafted by the**

6    **government** because if a Fourth Amendment violation is found by the Court then the

7    government will not be able to rely on the issued orders in good faith if it was prosecutors or

8    agents that drafted them for the magistrate.  Because the government "prepared the invalid []

9    [N.D.Cal. 08-90330MISC-RS orders]," it may not argue that it "reasonably relied on the

10   Magistrate's assurance" that the orders were valid.  Groh v. Ramirez, 540 U.S. 551, 564

11   (2004).  The defendant needs to compare the proposed orders to the issued orders in order to

12   prove that the government drafted sections of the orders that were either invalid or lacking

13   particularity.  In addition to the defendant's Fourth Amendment arguments, he also needs to

14   prove that the government drafted the invalid "destroy the evidence" provision so that he can

15   support his *Flyer* type request to suppress secondary evidence.  *See* Section II(B), *supra*.

16          **D.    Evidence regarding the FBI's need to call the aircard over a 6 hour**
                    **period while using its portable/transportable wireless device**
17                  **locators and evidence regarding a man-in-the-middle attack.**

18          The defendant previously requested evidence relating to the FBI's use of the SF-

19   Martinez DCS-3000 server (pen register and trap and trace device) via his *Motion For*

20   *Discovery* (Dkt. #592), §§ VI(D)(1)(b) and VI(D)(2)(b).  The defendant's request related to

21   the FBI surreptitiously calling the aircard over a 6 hour period while it was using its portable/

22   transportable wireless device locators at the same time.  The defendant's need for the

23   evidence was based on differentiating between the SF-Martinez DCS-3000 server (an actual

24   pen register and trap and trace device) from the government's portable/transportable wireless

25   device locators (not pen registers or trap and trace devices).  *See id*.  Since that time, there

26   has been some discussion in the case on whether the government conducted a man-in-the-

27   middle attack while locating the aircard, a denial-of-service attack while locating the aircard,

28   or some combination of the two.  Prior to the government positively stating that a denial-of-

service attack was conducted via a declaration by FBI Agent Morrison[4] and via a concession by the prosecution,[5] the defendant requested that the prosecution ask the FBI a series of questions in order to reach the bottom of the issue and then provide the defendant with responsive evidence:

> 1.  Ask the FBI for a full explanation on what sort of impact the aircard locating mission had on aircard service, however great or minuscule.
>
> 2.  Ask the FBI whether the two (or more) cell site emulators were forwarding the aircard signal to/from an actual Verizon Wireless cell site in order to provide the aircard some type of Internet access service while the aircard was being located.
>
> 3.  Ask the FBI whether the two (or more) cell site emulators were sending and receiving signals to/from the aircard but not providing the aircard any sort of Internet access service.
>
> 4.  Ask the FBI why it needed to call the aircard repeatedly over a 6 hour period while the first phone call that resulted in generation of real-time cell site location information (sector No. 3 of Verizon Wireless cell site No. 5) seemingly accomplished the goal of narrowing the search area for use of the StingRay and KingFish.
>
> Once you receive answers, please forward them to me.... Once you obtain answers, **please also assemble all relevant and material discovery that is supportive of the answers and then provide that discovery to me** or, if the government refuses to provide it, please prepare the discovery for any possible future *ex parte* proceedings regarding government privilege....

The government subsequently filed the declaration by FBI Agent Morrison discussed above, however, the declaration does not address (1) why the government needed to call the aircard repeatedly over a 6 hour period and whether that was a necessary element of operating the government's portable/transportable wireless device locators (*i.e.*, the Harris StingRay and KingFish), or (2) to what extent the FBI caused a disruption in service for the aircard, *i.e.*, for how long of a period service was disrupted and whether the aircard could access the Internet at all during that time period.  Additionally, FBI Agent Morrison's declaration

---

4.  *See Government's Memorandum Re Motion For Discovery*, "Affidavit Of Supervisory Special Agent Bradley S. Morrison," par. 4 (p. 2-3) (Dkt. #674-1).

5.  *See Government's Memorandum Re Motion For Discovery*, p.2 ("[W]ith respect to whether the equipment used to locate the aircard was operated in a "man in the middle" manner or caused a brief "disruption of service," the United States will agree that the Court can assume, arguendo, that it did [cause a brief disruption of service]." (footnote omitted)) (Dkt. #674-1).

MOTION FOR ADDITIONAL DISCOVERY DUE TO GOVERNMENT
IGNORING DEFENDANT'S RECENT DISCOVERY REQUESTS
CR08-814-PHX-DGC

contradicts evidence previously provided to the defendant by the prosecution and this now indicates that the FBI also conducted a man-in-the-middle attack at the same time it conducted a denial-of-service attack.  The defendant discusses these three points below.

      1.     The defendant needs evidence showing the relevancy of the government surreptitiously calling/pinging the aircard for 6 hours so that he can ask for suppression based on a Fourth Amendment seizure of the physical aircard and based on a Fourth Amendment seizure of the real-time cell site location information that resulted.  In <u>United States v. Benford</u>, even while the court found that the third party disclosure rule applied to historical cell site location information, it still noted that "the situation might be different if the Government dialed an individual's cell phone number for the purpose of obtaining cell-site data to locate the individual." *Id.*, U.S. Dist. LEXIS 29453, No. 2:09-cr-00086-JTM-APR, p. 5 (N.D.Ind., Mar. 26, 2010) (addressing a motion to suppress).  Additionally, nearly all published opinions involving Judges who issue less-than-probable-cause orders for use of Pen/Trap devices to obtain real-time cell site location information do so in part because the government is not asking to place repeated calls to the wireless device in order to facilitate geolocation.  *See*, *e.g.*, <u>In The Matter Of The Application Of The United States Of America For An Order: (1) Authorizing The Installation And Use Of A Pen Register And Trap And Trace Device, And (2) Authorizing Release Of Subscriber And Other Information</u>, 622 F. Supp.2d 411, 419 (S.D.Tex. 2007) (Approving acquisition of real-time cell site location information via a Pen/Trap device as long as the government does "not place repeated calls to the cell phones in an effort to continuously track the location of the subscriber(s) or customer(s) using the Target Devices."); <u>In the Matter Of The Application Of The United States Of America For An Order: (1) Authorizing The Installation And Use Of A Pen Register And Trap And Trace Device, And (2) Authorizing Release Of Subscriber And Other Information</u>, 433 F.Supp.2d 804, 806 (S.D.Tex. 2006) (Approving acquisition of real-time cell site location information via a Pen/Trap device in part because the government did not intend "to place calls to a particular cell phone repeatedly or otherwise to track on a continuous basis the location of a cell phone when no call is being placed or received.").  If

- 8 -

the seizures resulting from the surreptitious calls/pings were not essential in locating the aircard then suppression may not be merited on those seizures alone.  Therefore, the defendant needs evidence linking (or not linking) the 6 hours of surreptitious phone calls/pings to the government's use of the StingRay and KingFish and to the aircard locating mission in general.  The user manuals and other technical information on the precise devices used to locate the aircard will provide the defendant with sufficient information.  This evidence is listed in the defendant's *Motion For Discovery*, "Submission Pursuant To LRCiv 37.1," §§ D and F (Dkt. #592-2).

2.      The defendant needs evidence showing to what extent the FBI denied the aircard Internet access service.  How severely the government denied the aircard service will affect the defendant's argument that doing so is a Fourth Amendment seizure of the physical aircard.  *See, e.g.*,  United States v. Garcia, 474 F.3d 994, 996 (7th Cir. 2007) (Finding that installation of a mobile tracking device on a car did not amount to a seizure because it "did not affect the car's driving qualities..."); Company v. United States, 349 F.3d 1132, 1145 (9th Cir. 2003) (Addressing an order for wiretap assistance and finding that "eavesdropping is not permitted with 'a minimum of interference' if service is completely shut down as a result of the surveillance.").  The user manuals and other technical information on the precise devices used to locate the aircard will provide the defendant with sufficient information.  This evidence is listed in the defendant's *Motion For Discovery*, "Submission Pursuant To LRCiv 37.1," §§ D and F (Dkt. #592-2).

3.      The government recently claimed that the FBI conducted a denial-of-service attack on the aircard while locating it as apposed to a man-in-the-middle attack.  *See Government's Memorandum Re Motion For Discovery*, "Affidavit Of Supervisory Special Agent Bradley S. Morrison," par. 4 (p. 2-3) (Dkt. #674-1).  Although the defendant agrees that the government conducted a denial-of-service attack, it is the defendant's current position that the government **also** conducted some sort of man-in-the-middle attack while conducting the denial-of-service attack.  The defendant's current position arises from new information, contained in the declaration by FBI Agent Morrison on the record at Dkt. #674-

*MOTION FOR ADDITIONAL DISCOVERY DUE TO GOVERNMENT IGNORING DEFENDANT'S RECENT DISCOVERY REQUESTS*
*CR08-814-PHX-DGC*

1, contradicting previously provided evidence on the record in the defendant's *First Submission Of Consolidated Exhibits Relating To Discovery And Suppression Issues* (Dkt. #587).[6]  On October 27, 2011, FBI Agent Morrison claimed that the FBI's portable/transportable wireless device locators "did not capture, collect, decode, view, or otherwise obtain any content transmitted from the aircard, and therefore was unable to pass any of this information from the aircard to Verizon Wireless."[7]  However, the LAESP messages listed at EXHIBIT 06 of Dkt. #587 show that the FBI's SF-Martinez DCS-3000 server (Pen/Trap device) received aircard signaling information directly from a Verizon Wireless network switch (referred to as an Intercept Access Point (IAP)) over the 6 hour period that the FBI used its portable/transportable wireless device locators in and around the Domicilio apartment complex.  This signaling information was sent in response to the government's surreptitious voice calls placed to the aircard[8] and indicated that the aircard (or more evidently now the FBI's own equipment operating as a man-in-the-middle for the aircard) was accessing Verizon Wireless cell site No. 5, sector No. 3.  *See* EXHIBIT 06 of Dkt. #587.  If the FBI's portable/transportable wireless device locators are incapable of forwarding signals on to Verizon Wireless cell sites, **as claimed by FBI Agent Morrison**, then generation of real-time cell site location information (cell site No. 5, sector No. 3) would have been impossible for Verizon Wireless to do.  Considering (1) Verizon Wireless generated and forwarded real-time aircard cell site location information to the FBI's SF-Martinez DCS-3000 server (which is hardwired into the Verizon Wireless network), and (2) this generation and forwarding of data occurred at the same time the FBI technical agents/personnel were operating portable/transportable wireless device locators to locate the

---

6.     The previously provided evidence is contained at EXHIBIT 06 (LAESP raw real-time cell site location information sent to the FBI by Verizon Wireless) and EXHIBIT 07, EXHIBIT 08, EXHIBIT 09, and EXHIBIT 10 (LAESP messages converted to CDNRS formatted files) of Dkt. #587.

7.     *Government's Memorandum Re Motion For Discovery*, "Affidavit Of Supervisory Special Agent Bradley S. Morrison," par. 4 (p. 2-3) (Dkt. #674-1).

8.     Beginning at 11:02am on July 16, 2008 and ending at 5:03pm later that day, the FBI placed 32 surreptitious telephone calls to the aircard while Verizon Wireless forwarded the resulting LAESP messages (i.e., Pen/Trap data) to the FBI SF-Martinez DCS-3000 server in real-time.  *See* EXHIBIT 06 of Dkt. #587.

MOTION FOR ADDITIONAL DISCOVERY DUE TO GOVERNMENT
IGNORING DEFENDANT'S RECENT DISCOVERY REQUESTS
CR08-814-PHX-DGC

1  aircard, it appears as if paragraph No. 4 of FBI Agent Morrison's declaration contains a false

2  claim.  The defendant needs user manuals and all other evidence explaining the technical

3  operations of the equipment used to locate the aircard[9] so that he can impeach FBI Agent

4  Morrison's statement made in his declaration regarding how the devices operate and so that

5  he can prove that they also conduct a man-in-the-middle attack as well as a denial-of-service

6  attack.  **Note:** the defendant realizes that this is a complicated explanation and that it may be

7  unclear without having background information on the FBI's Digital Collection System,

8  portable/transportable wireless device locators, and other technical concepts.  Therefore, if

9  the Court is unclear on the defendant's point or if the government rebuts the defendant's

10  point, the defendant requests that the Court hold an evidentiary hearing so that the defendant

11  can show through a presentation how FBI Agent Morrison's declaration contains a false

12  claim (as explained above) meriting further disclosure of evidence as requested in this

13  section.  **The defendant requests that this evidentiary hearing occur prior to any ruling**

14  **on issues of discovery or privilege** considering the purpose is to show a further need for

15  evidence (relating to denial-of-service attacks and man-in-the-middle attacks) in support of

16  of the relative Fourth Amendment arguments so as to further weigh the *Roviaro*

17  privilege/disclosure analysis in the defendant's favor.

18  * * * * *

19  Based on the points and authorities set forth above, the defendant respectfully requests

20  that the Court order the government to disclose to the defense **(1)** all text (SMS) messages

21  sent to/from FBI agents regarding the aircard locating mission, **(2)** a full and unredacted

22  copy of the FBI "destroy the evidence" policy being relied upon by the government to justify

23  its destruction of aircard real-time geolocation data, **(3)** copies of the N.D.Cal. 08-

24  90330MISC-RS and 08-90331MISC-RS *proposed* orders as they were drafted by the

25  government and placed on the record in the Northern District of California, and **(4)** evidence

26  regarding the FBI's need to call the aircard over a 6 hour period while using its

27

28  9.    This evidence is listed in the defendant's *Motion For Discovery*, "Submission
Pursuant To LRCiv 37.1," §§ D and F (Dkt. #592-2).

1  portable/transportable wireless device locators and evidence regarding a man-in-the-middle

2  attack.  If the factual basis for request No. 4 is unclear or rebutted by the government then

3  the defendant requests an evidentiary hearing so that he put on a presentation explaining the

4  noted contradiction between previously provided evidence and FBI Agent Morrison's

5  declaration at Dkt. #674-1.

6       This motion and all attachments were drafted and prepared by the *pro se* defendant,

7  however, he authorizes his shadow counsel, Philip Seplow, to file this motion on his behalf

8  using the ECF system.  The defendant is appearing *pro se* and has never attended law school.

9  The defendant's filings, however inartfully pleaded, must be liberally construed and held to

10 less stringent standards than formal pleadings drafted by lawyers.  *See* Haines v. Kerner, 404

11 U.S. 519, 520 (1972).

12      LRCrim 12.2(a) requires that the undersigned include the following statement in all

13 motions: "Excludable delay under 18 U.S.C. § 3161(h)(1)(D) will occur as a result of this

14 motion or of an order based thereon."

15 ///

16 ///

17 ///

18 ///

19 ///

20 ///

21 ///

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

*MOTION FOR ADDITIONAL DISCOVERY DUE TO GOVERNMENT IGNORING DEFENDANT'S RECENT DISCOVERY REQUESTS*
*CR08-814-PHX-DGC*

Respectfully Submitted:

PHILP SEPLOW, Shadow Counsel, on behalf of DANIEL DAVID RIGMAIDEN, Pro Se Defendant:

s/ Philip Seplow
Philip Seplow
Shadow Counsel for Defendant.

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

*MOTION FOR ADDITIONAL DISCOVERY DUE TO GOVERNMENT IGNORING DEFENDANT'S RECENT DISCOVERY REQUESTS*
*CR08-814-PHX-DGC*

**CERTIFICATE OF SERVICE**

     I hereby certify that on:               I caused the attached document to be electronically transmitted to the Clerk's Office using the ECF system for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Taylor W. Fox, PC
Counsel for defendant Ransom Carter
2 North Central Ave., Suite 735
Phoenix, AZ 85004

Frederick A. Battista
Assistant United States Attorney
Two Renaissance Square
40 North Central Ave., Suite 1200
Phoenix, AZ 85004

Peter S. Sexton
Assistant United States Attorney
Two Renaissance Square
40 North Central Ave., Suite 1200
Phoenix, AZ 85004

James R. Knapp
Assistant United States Attorney
Two Renaissance Square
40 North Central Ave., Suite 1200
Phoenix, AZ 85004

By: s/ Daniel Colmerauer
(Authorized agent of Philip A. Seplow, Shadow Counsel for Defendant; See ECF Proc. I(D) and II(D)(3))