1  Daniel Rigmaiden
   Agency # 10966111
2  CCA-CADC
   PO Box 6300
3  Florence, AZ 85132
   Telephone: none
4  Email: none

5  Daniel David Rigmaiden
   Pro Se, Defendant

6

7              UNITED STATES DISTRICT COURT

8                   DISTRICT OF ARIZONA

9

10  United States of America,          No. CR08-814-PHX-DGC

11          Plaintiff,                 RESPONSE TO GOVERNMENT'S
                                       MEMORANDUM RE MOTION FOR
12  v.                                 DISCOVERY

13  Daniel David Rigmaiden, et al.,

14          Defendant.

15

16          Defendant, Daniel David Rigmaiden, appearing *pro se*, respectfully submits this

17  *Response To Government's Memorandum Re Motion For Discovery*.  The defendant is filing

18  this response to raise extremely important issues that he wishes the Court to consider prior to

19  ruling on his *Motion For Discovery* (Dkt. #592).  The *Government's Memorandum Re*

20  *Motion For Discovery* (Dkt. #674) was provided to the defendant after the October 28, 2011

21  hearing and, prior to that, the defendant's shadow counsel, Philip Seplow, only read the

22  defendant excerpts.  The filing at Dkt. #674 was discussed at the October 28, 2011 hearing

23  without the defendant having an opportunity to read it.  Even with the sections that were read

24  to him prior to the hearing, the defendant was under 32 hours of sleep deprivation and, by the

25  time of the hearing, only assimilated the government's concession in the memorandum that it

26  located the aircard to one apartment.  Being unable to assimilate changing information (such

27  as that contained at Dkt. #674) is one of the pitfalls of sleep deprivation.  *See* Dkt. #666, p. 4.

28  Consideration of this response prior to ruling on issues of discovery and privilege will act to

1  eliminate any prejudice that may result from the defendant's October 28, 2011 sleep

2  deprivation and him being unable to read Dkt. #674 prior to the hearing.

3      The defendant has also filed his *Motion For Additional Discovery Due To*

4  *Government Ignoring Defendant's Recent Discovery Requests*.  The defendant requests that

5  this second motion for discovery also be considered by the Court prior to making any rulings

6  because the government failed to addressed four discovery requests that were either still

7  awaiting a response from the government at the time the defendant filed his *Motion For*

8  *Discovery* (Dkt. #592) or were made after the filing of that motion due to previously

9  unknown information becoming known to the defendant, *i.e.*, the existence of the FBI

10  "destroy the evidence" policy and the government's contradicting claims regarding a denial-

11  of-service attack and man-in-the-middle attack.  It would be fundamentally unfair if the

12  Court were to rule on the defendant's *Motion For Discovery* (Dkt. #592) without considering

13  the second motion for discovery.

14      **A.      The government conceding that a generic "Fourth Amendment
         search and seizure" occurred does not resolve any pending
15         discovery issues.**

16      The government stated that it would concede "for Defendant's Motion for Discovery

17  and any forthcoming motion to suppress, that the aircard tracking operation was a Fourth

18  Amendment search and seizure[]" but that it would still argue "Defendant's lack of

19  standing[]" in order to prove that suppression is not merited.  *See* Dkt. #674, p. 1-2 & fn. 1.

20  The government's concession is a contradiction.  The Supreme Court has done away with a

21  rigid "standing" analysis for addressing alleged Fourth Amendment violations.  *See* <u>Rakas v.</u>

22  <u>Illinois</u>, 439 U.S. 128, 139-40 (1978).  *Rakas* held that the "definition of those rights is more

23  properly placed within the purview of substantive Fourth Amendment law than within that of

24  standing."  *Id.* at 140.  Therefore, a Fourth Amendment search does not occur unless "the

25  person invoking its protection can claim a justifiable, a reasonable, or a legitimate

26  expectation of privacy that has been invaded by government action."  <u>Smith v. Maryland</u>,

27  442 U.S. 735, 740 (1979) (internal citations and quotation marks omitted).  The government

28  agreeing that a Fourth Amendment search and seizure did in fact occur but then conditioning

*RESPONSE TO GOVERNMENT'S MEMORANDUM RE MOTION FOR DISCOVERY*
*CR08-814-PHX-DGC*

that agreement upon being able to argue that the defendant lacked "standing" (*i.e.*, he had no

reasonable expectation of privacy) amounts to a contractual agreement with contradicting

terms rendering it unbinding.  In other words, the defendant does not see what pending

discovery issue, if any, the government's concession sets out to resolve.

### B. The defendant still needs additional evidence considering the government intends to rely on the N.D.Cal. orders to justify its searches and seizures and to make claims of good faith.

The government stated that in order to prove that its Fourth Amendment searches and

seizures were justified and legal, it intends to "rely on its authority under the [][N.D.Cal. 08-

90330MISC-RS and 08-90331MISC-RS orders]... and, if necessary, the agents' good faith

reliance on these court orders."  *See* Dkt. #674, p. 1-2 & fn. 1.  If the government intends to

rely on the N.D.Cal. orders as authority for its Fourth Amendment searches and seizures then

the defendant still needs all evidence showing each and every precise Fourth Amendment

search and seizure, *e.g.*, denial-of-service, increasing transmission power of the aircard,

OTASP messages (writing data to the aircard), interrogation techniques, forced registration,

*etc.* (*see* the defendant's *Motion For Discovery*, Dkt. #592, for a full list).  The defendant

needs this evidence so that he can prove that the orders upon which the government relied

lack particularity and also do not apply to what the government actually did.  *See*, *e.g.*, Groh

v. Ramirez, 540 U.S. 551, 559 (2004) ("We have clearly stated that the presumptive rule

against warrantless searches applies with equal force to searches whose only defect is a lack

of particularity in the warrant.").  Issues of scope are also implicated here.  *See*, *e.g.*, United

States v. Penn, 647 F.2d 876, 882 n.7 (9th Cir. 1980) (*en banc*) ("A warranted search is

unreasonable if it exceeds in scope or intensity the terms of the warrant.").  Likewise, if the

government is claiming a good faith reliance on the orders then the defendant needs to prove

that they lack particularity because there can be no good faith reliance on an order or warrant

that lacks particularity.  *See* Groh, 540 U.S. at 563 ("Given that the particularity requirement

is set forth in the text of the Constitution, no reasonable officer could believe that a warrant

that plainly did not comply with that requirement was valid.").  Similar arguments apply to

scope violations.  *See*, *e.g.*, United States v. Robinson, 358 F.Supp.2d 975 (No good faith

exception when government does not stay within strict bounds of the warrant.).

**C.    The defendant still needs the unredacted N.D.Cal. order _applications_ and _affidavits_ considering the government intends to rely them to justify its searches and seizures and to make claims of good faith.**

The government stated that in order to prove that its Fourth Amendment searches and seizures were justified and legal, it intends to rely on "the Rule 41 [][order] application, affidavit and order... [and] [t]he hybrid order..." *See* Dkt. #674, p. 2 & fn. 2.   If the government intends to rely on the N.D.Cal. order applications and affidavits as authority for its Fourth Amendment searches and seizures (via an incorporation into the issued orders) then the defendant still needs the unredacted versions of those documents.  Additionally, the defendant will need to question those FBI technical agents/personnel who executed the orders to inquire as to whether the applications/affidavits accompanied the orders while they executed the searches and seizures.  *See* Groh, 540 U.S. at 587-88 ("Indeed, most Courts of Appeals have held that a court may construe a warrant with reference to a supporting application or affidavit if the warrant uses appropriate words of incorporation, and if the supporting document **accompanies the warrant**." (emphasis added)).

**D.    Issues with the declaration by FBI Supervisory Agent Bradley S. Morrison attached at Dkt. #674-1.**

The declaration by FBI Supervisory Agent Bradley S. Morrison attached at Dkt. #674-1 is chalked full of legal opinion.  As far as the defendant can ascertain, FBI Agent Morrison is not an attorney and, even if he is an attorney, the defendant objects to the Court considering legal opinions and arguments from an individual being portrayed as an expert on FBI policy and on the technical operation of surveillance equipment.  Additionally, the government making an FBI supervisor available for limited questioning who had no involvement in operating the equipment used to locate the aircard and no involvement in the destruction of evidence does not eliminate the defendant's need to question the agents/personnel who participated in the aircard locating mission.  However, if the government plans to present FBI Agent Morrison as an expert on the general technical

operation of the equipment used to locate the aircard then the defendant still needs user manuals, schematics, software information and all other evidence on the precise equipment used (*i.e.*, StingRay, KingFish, AmberJack, *etc.*)[1] so that he can use it to impeach FBI Agent Morrison's testimony regarding the operation of the equipment.  The defendant will also likely seek to question FBI Agent Morrison regarding the FBI policy that instructs agents/personnel to destroy evidence.  The defendant needs to question FBI Agent Morrison on this matter considering the defendant will be asking for suppression of secondary evidence based on the government's destruction of the real-time aircard geolocation data. *See* the defendant's *Motion For Additional Discovery Due To Government Ignoring Defendant's Recent Discovery Request*, p. 3-5, for further information regarding this argument.

FBI Agent Morrison's claim that all wireless devices in the immediate area of an FBI (Harris) cell site emulator register with the FBI's emulated cellular network[2] does not apply to the 3G cdma2000 EVDO protocol as used by the aircard and Verizon Wireless during the time of the aircard locating mission.  FBI Agent Morrison's claim is only accurate with respect to GSM 2G wireless technology—inapplicable to the aircard involved in this case. *See* Zetter, Kim, Hacker Spoofs Cell Phone Tower to Intercept Calls | Threat Level | Wired.com, *Wired* [website], Jul. 31, 2010, *available at* http://www.wired.com/threatlevel/2010/07/intercepting-cell-phone-calls (last accessed Oct. 20, 2011) (research conducted by Chris Paget).[3]  Using Over the Air Service Provisioning (OTASP), *i.e.*, data written to a 3G cdma2000 EVDO wireless device, and obtaining Authentication Keys and Shared Secret Data (only known to Verizon Wireless and the specific 3G cdma2000 EVDO wireless device on file with Verizon Wireless) is the only way that the FBI can get around base station authentication and force such a device to connect to

---

1.     This evidence is listed in the defendant's *Motion For Discovery*, "Submission Pursuant To LRCiv 37.1," §§ D and F (Dkt. #592-2).

2.     *See Government's Memorandum Re Motion For Discovery*, "Affidavit Of Supervisory Special Agent Bradley S. Morrison," par. 5 (p. 3) (Dkt. #674-1).

3.     Unless the FBI knows of some nonpublic vulnerability in the 3G cdma2000 EVDO protocol it uses to circumvent privacy of communications and signaling information?

RESPONSE TO GOVERNMENT'S MEMORANDUM RE MOTION FOR DISCOVERY
CR08-814-PHX-DGC

1  its emulated cellular network.  Due to these limitations, only the target 3G cdma2000 EVDO
2  wireless device will connect to the government's emulated cellular network—not all devices
3  in the area as claimed by FBI Agent Morrison.  Therefore, from a technical standpoint, FBI
4  Agent Morrison's claim for reason with respect to destruction of real-time geolocation data
5  applies only to locating missions involving insecure GSM wireless devices and not to the
6  locating mission involving the 3G cdma2000 EVDO based aircard.  Additionally, from a
7  common sense standpoint, it is an unbelievable claim that the FBI is so unsophisticated that
8  its only option is to destroy **all** geolocation data instead of isolating relevant geolocation data
9  from other inadvertently collected data relating to other cellular users who are not targets of
10  an investigation.

11  The separate contradiction involving FBI Agent Morrison's claim that the equipment
12  used to locate the aircard conducted only a denial-of-service attack and not also a man-in-
13  the-middle attack is also addressed in the defendant's *Motion For Additional Discovery Due*
14  *To Government Ignoring Defendant's Recent Discovery Requests*, p. 9-11.

15  **E.**  **The defendant's reiterated position on *ex parte in camera***
16  **proceedings regarding the government's claim of privilege.**

17  As for the remaining disputed discovery issues relating to the government's use of
18  portable/transportable wireless device locators, the evidence the defendant needs is
19  "manufacturer model information, instructions manuals, operations manuals, user manuals,
20  schematics, patent information, proprietary information, trade secrets, test data, the actual
21  physical devices themselves and the calibration certification information for each device
22  used[]" by the government to locate the aircard and the "user manuals and/or other
23  documents explaining the general operation/functionality of the software [for the devices]
24  and end user instructions."  *See* the defendant's *Motion For Discovery*, "Submission Pursuant
25  To LRCiv 37.1," § F, p. 13 (Dkt. #592-2).  The user manuals and other information will
26  explain how the locating devices require that OTASP messages be sent to aircard and how
27  forced registration, interrogation, increased signal transmission, triangulation techniques, and
28  other operations discussed at Dkt. #592 are required in order for the devices to operate.  In

- 6 -

other words, the evidence requested in Section F of the defendant's *Submission Pursuant To LRCiv 37.1* (Dkt. #592-2) will provide all the requested evidence listed in Section D of that same document, *i.e.*, "All evidence relating to the real-time and historical geolocation techniques (*e.g.*, triangulation techniques) and radio wave collection methods (*e.g.*, cell site emulation, interrogation, active approach) used by the government agents/personnel and by the wireless device locators while searching for the aircard."

The defendant previously filed his *Response To Government's Memorandum Regarding Law Enforcement Privilege And Request For An Ex Parte And In Camera Hearing If Necessary* (Dkt. #536) outlining his position on how an *ex parte* and *in camera* proceedings should (or should not) proceed if his constitutional rights are to be protected. The defendant respectfully requests that the Court reread Dkt. #536 (at the very least the argument section) prior to continuing with any *ex parte in camera* proceedings. Below, the defendant has summarized some key points from Dkt. #536 and added relative urgent points in bold:

1.    "The trial judge was in no position to decide that the report was privileged until there had been a formal claim of privilege." United States v. Reynolds, 345 U.S. 1, 10 (1953).  In *Kerr*, the Ninth Circuit addressed the government invoking an executive privilege and ruled that the "privilege must be formally asserted and delineated in order to be raised properly." Kerr v. U.S.D.C., 511 F.2d 192, 198 (9ᵗʰ Cir. 1975), *aff'd* 426 U.S. 394 (1977) (citing United States v. Reynolds, 345 U.S. 1, 7-8 (1953)).  The *Kerr* decision requires that *Reynolds* be followed when invoking executive privileges and that the official claiming the privilege "state with specificity the rationale of the claimed privilege." *Id.*  **In the present case, the government's declaration at Dkt. #674-1 is not at all specific and insufficient for asserting a formal claim of privilege.**  In *Guantanamo Bay Detainee Litigation*, the court rejected a blanket government claim that the evidence could "pose a threat to the security of the United States" as a "spare, generic assertion" of the law enforcement sensitive privilege.  In re Guantanamo Bay Detainee Litigation, 630 F.Supp.2d 1, 6-8 (D.D.C. 2009).

2.    In *Guantanamo Bay Detainee Litigation*, the court required that the

RESPONSE TO GOVERNMENT'S MEMORANDUM RE MOTION FOR DISCOVERY
CR08-814-PHX-DGC

government show rationale by "highlighting with a colored marker the exact words or lines the government seeks to be deemed protected as well as a memorandum explaining why each word or line should be protected."  In re Guantanamo Bay Detainee Litigation, 630 F.Supp.2d 1, 6-8 (D.D.C. 2009).  **In the present case, it is the defendant's position that the government is required to file under seal all withheld evidence with privileged sections highlighted, labeled, and then explained in an accompanying memorandum.  This evidence includes user manuals, schematics, software documentation, and all other evidence relating to the precise devices used by the government to locate the aircard and responsive to the defendant's discovery requests (*see* the defendant's *Motion For Discovery*, "Submission Pursuant To LRCiv 37.1," §§ D, F, G , I and J (Dkt. #592-2)).**

3.     "We note that decisions involving the more sensitive and absolute privilege for state and military secrets have been more insistent on assertion at the highest level." Landry v. FDIC, 204 F.3d 1125, 1136 (D.C. Cir. 2000) (listing cases).

4.     When invoking a general executive privilege, such as the law enforcement privilege, it has been suggested that the *Reynolds* requirement be relaxed and that the privilege be invoked via "a declaration or affidavit, under oath and penalty of perjury, from... a person with some relevant supervisorial or policy making role[]" but not from "the lawyer representing the agency or officers in the litigation..." Kelly v. San Jose, 114 F.R.D. 653, 669 (N.D. Cal. 1987).  *See also* Alexander v. FBI, 186 F.R.D. 154, 166 (D.D.C. 1999) (implying that declarations by the Department of Defense's Inspector General and General Counsel would have been sufficient if they had provided enough information to assess whether the law enforcement privilege applied).

5.     Unless the very subject matter of the case is a state secret, the privilege has "never applied to prevent parties from litigating the truth or falsity of allegations, or facts, or information simply because the government regards the truth or falsity of the allegations to be secret." Mohamed v. Jeppesen Dataplan, Inc., 579 F.3d 943, 957 (9th Cir. 2009).  "[T]he privilege applies to prevent discovery of the evidence itself and not litigation of the truth or falsity of the information that might be contained within it." *Id*.

- 8 -

6.      In the present case, Harris Corporation and the government have officially released to the public a significant amount of information regarding the Harris line of wireless device locators.  The government cannot seriously claim that this publicly available information, and the related evidence currently being withheld from the defendant, are protected by any claim of privilege.  "Common sense confirms this conclusion.  The government could not seriously argue, for example, that the Pentagon Papers remained 'secret' and therefore subject to the state secrets privilege even after having been published in *The New York Times*, simply because the government itself refuses to declassify or otherwise 'officially disclose' the content of the papers."  Mohamed, 579 F.3d at 959-60 (referring to New York Times Co. v. United States, 403 U.S. 713 (1971)).  In *Roviaro*, the Supreme Court also held that if the claimed privileged information is revealed to the defendant then "the privilege is no longer applicable."  United States v. Roviaro, 353 U.S. 53, 60 (1957).

* * * * *

This filing was drafted by the *pro se* defendant, however, he authorizes his shadow counsel, Philip Seplow, to file this filing and all attachments on his behalf using the ECF system.  The defendant is appearing *pro se* and has never attended law school.  The defendant's filings, however inartfully pleaded, must be liberally construed and held to less stringent standards than formal pleadings drafted by lawyers.  *See* Haines v. Kerner, 404 U.S. 519, 520 (1972).

///
///
///
///
///
///
///
///
///

Respectfully Submitted:

PHILP SEPLOW, Shadow Counsel, on
behalf of DANIEL DAVID RIGMAIDEN,
Pro Se Defendant:

s/ Philip Seplow
Philip Seplow
Shadow Counsel for Defendant.

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

RESPONSE TO GOVERNMENT'S MEMORANDUM RE MOTION FOR DISCOVERY
CR08-814-PHX-DGC

**CERTIFICATE OF SERVICE**

I hereby certify that on:                    I caused the attached document to be electronically transmitted to the Clerk's Office using the ECF system for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Taylor W. Fox, PC
Counsel for defendant Ransom Carter
2 North Central Ave., Suite 735
Phoenix, AZ 85004

Frederick A. Battista
Assistant United States Attorney
Two Renaissance Square
40 North Central Ave., Suite 1200
Phoenix, AZ 85004

Peter S. Sexton
Assistant United States Attorney
Two Renaissance Square
40 North Central Ave., Suite 1200
Phoenix, AZ 85004

James R. Knapp
Assistant United States Attorney
Two Renaissance Square
40 North Central Ave., Suite 1200
Phoenix, AZ 85004

By: s/ Daniel Colmerauer
(Authorized agent of Philip A. Seplow, Shadow Counsel for Defendant; See ECF Proc. I(D) and II(D)(3))

RESPONSE TO GOVERNMENT'S MEMORANDUM RE MOTION FOR DISCOVERY
CR08-814-PHX-DGC