Daniel Rigmaiden
Agency # 10966111
CCA-CADC
PO Box 6300
Florence, AZ 85132
Telephone: none
Email: none

Daniel David Rigmaiden
Pro Se, Defendant

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

United States of America,

Plaintiff,

v.

Daniel David Rigmaiden, et al.,

Defendant.

No. CR08-814-PHX-DGC

RESPONSE TO GOVERNMENT'S SUPPLEMENTAL CASE CITATION RE BALANCING PURSUANT TO UNITED STATES V. ROVIARO, 353 U.S. 53 (1957)

Defendant, Daniel David Rigmaiden, appearing *pro se*, respectfully submits this *Response To Government's Supplemental Case Citation RE Balancing Pursuant To United States v. Roviaro, 353 U.S. 53 (1957)* (Dkt. #711). According to the government's filing, an *ex parte* hearing was held with the government on December 14, 2011. *See* Dkt. #711, p. 1. "At the conclusion of the hearing, the United States advised the Court that it may file a supplemental pleading to the application of Roviaro." *Id.* Instead of filing a supplemental pleading, the government decided to submit a citation to United States v. Garey, 2004 WL 2663023, 2004 U.S. Dist. LEXIS 23477 * (M.D.Ga., Nov. 15, 2004).[1] The defendant read *Garey* and has determined that it helps his arguments—not the government's. The defendant is filing this response to provide the Court with an analysis of *Garey* showing how it supports finding in the defendant's favor regarding disclosure of the withheld evidence.

Garey needed the withheld evidence in order to show a jury that alleged threatening

1. The defendant cites to the LexisNexis version of *Garey.*

phone calls were not made from specific cell phones while those phones were inside Garey's home. *See id*. The court found that Garey had no need for the withheld evidence because "[t]he finding of the cell phone in Defendant's house confirms the accuracy of the Government's geographic surveillance." *Id.* at *13. In other words, the government provided non-withheld evidence that essentially proved Garey's trial defense to be a non-issue. "The location of the phone in his house appears to be undisputed and confirms the accuracy of the geographic surveillance technology." *Id.* at *14.

In the present case, the defendant is not disputing the "accuracy of the geographic surveillance technology" or that the aircard was located anywhere other than precisely inside apartment No. 1122.[2] The defendant's need for the withheld evidence is entirely different from that of Garey's. The undisputed fact that the aircard was located precisely inside apartment No. 1122 does not erase the defendant's specific need for the requested evidence. Unlike Garey's trial defense, the defendant in the present case is arguing that mere use of the Harris portable/transportable wireless device locators by the FBI amounted to numerous Fourth Amendment violations and the relied upon court order provided insufficient authorization for the FBI's actions. The defendant's need for the withheld evidence cannot be eliminated because he needs to compare what the FBI did to what Judge Seeborg authorized via the N.D.Cal. 08-90330MISC-RS order.[3] Unlike in *Garey*, the prosecution in the present case can point to no evidence showing that the defendant's Fourth Amendment arguments are a non-issue.

---

2. The government has confirmed this fact for the purposes of litigating the discovery and suppression issues. *See Government's Memorandum RE Motion For Discovery*, p. 2 (Dkt. #674) ("[T]he United States will agree to allow the Court to factually assume, that, at the conclusion of the July 16, 2008, aircard tracking operation, the FBI located the aircard within Unit 1122 of the Domocilio [sic] Apartments." (footnote omitted)).

3. In addition to a trial defense, Garey also requested the withheld evidence in support of a suppression argument. However, Garey's suppression argument had nothing to do with use of the technology itself as a Fourth Amendment violation. *See id.* at *15 fn. 7. Garey's argument was that a later search warrant used to physically search his home somehow lacked probable cause because the supporting affidavit was void of details on the technology used to locate the phone. *See id.* In the present case, the defendant does not need the withheld evidence to challenge the warrants used to physically search apartment No. 1122 on a basis that the affidavits lacked technical details. As explained previously, the defendant's need for the withheld evidence is entirely different than that of Garey's.

Quite the contrary, the defendant points to numerous pieces of evidence provided by the prosecution and found by the defendant in public records, *etc.* showing that his model of the aircard locating mission is correct. The defendant's model is based on (1) the limited evidence and stipulations provided by the government thus far, with (2) the factual gaps filled in by public knowledge on how Harris surveillance products locate wireless devices as a general matter. The defendant needs the withheld evidence in order to (1) fill the gaps in his model with actual evidence, (2) erase any section of his model that may not reflect upon what actually happened, and (3) identify previously unknown and missing information that fits into the model and shows additional Fourth Amendment violations.[4] The defendant also needs to conduct unfettered witness questioning of the FBI technical agents/personnel who operated the equipment used to locate the aircard. Otherwise, the defendant will never be able to find out (1) whether the agents/personnel had copies of the orders and applications with them while locating the aircard, (2) to what extent and duration the aircard was denied Internet access service, (3) why the real-time aircard geolocation evidence was destroyed, (4) what type of knowledge, training, and experience the agents/personnel may have been relying upon while violating the Fourth Amendment, (5) what type of assistance was being provided by Verizon Wireless, (7) the nature of the Over-The-Air Service Provisioning (OTASP) initiated by Verizon Wireless in order to facilitate the FBI's efforts in locating the aircard, (8) the make and model of the Harris surveillance equipment used to locate the aircard, and (9) other matters relating to the technical operation of the Harris surveillance equipment. *Garey* does not change or affect the *Rovario* analysis previously planned by the Court. Garey did not need the withheld evidence, the defendant in this case does.

In regards to the government's claim of privilege, when *Garey* was decided, there may not have been public sources of information explaining how cell site emulators operate.

4. Even in the supposed "end-stages" of the discovery process, the government continues to provide evidence revealing additional Fourth Amendment violations. For example, the government recently provided evidence that Verizon Wireless, upon the government's instruction, triangulated the aircard signal using distance measurements from multiple cell towers while the N.D.Cal. 08-90331MISC-RS order specifically forbid the government from doing so. This Fourth Amendment search is separate from the triangulation conducted by the FBI personally, using the StingRay, *etc.*

Today, the government's claim of privilege certainly does not survive. Last year at DefCon18, Chris Paget, Information Security Expert at *Recursion Ventures*, demonstrated a homemade cell site emulator in front of an audience of ordinary, non-law enforcement individuals.[5] Just like the FBI's cell site emulator, Ms. Paget's cell site emulator[6] hijacks wireless service, reads and writes data to wireless devices, deactivates encryption, and has the ability to instruct wireless devices to increase signal power transmission via the applicable cellular protocol.[7] Instructions are also available on the web on how to make a cell site emulator that operates similar to the FBI's cell site emulator.[8] Although Ms. Paget's cell site emulator was designed for eavesdropping and not for geolocation, adding geolocation capabilities would be an easy and trivial task considering Harris is giving away its "secret technology" to anyone with access to the Internet.[9] Additionally, Sandy Clark, Travis Goodspeed, Perry Metzger, Zachary Wasserman, Kevin Xu, and Professor Matt Blaze (who has testified before Congress on geolocation matters)[10] aptly taught how to use a

---

5. *See* Zetter, Kim, Hacker Spoofs Cell Phone Tower to Intercept Calls | Threat Level | Wired.com, *available at* http://www.wired.com/threatlevel/2010/07/intercepting-cell-phone-calls (last accessed: Nov. 11, 2011).

6. Ms. Paget's cell site emulator operated using 2G/3G GSM, which is TDMA and W-CDMA, however, making a cell site emulator that operates using 1xRTT/1xEV-DO, which is CDMA, is a simple matter of downloading and installing the right freeware / open source software off the Internet.

7. These are all standard operations/capabilities of any cell site, either actual or emulated, that wishes to send and receive signals to/from a wireless device.

8. *See, e.g.*, Prof. Dr.-Ing. Paar, Christof, Chair for Communication Security, Seminararbeit, Ruhr-Universit at Bochum, "IMSI Catcher," Daehyun Strobel, Seminararbeit (July 13, 2007), *available at* http://www.emsec.rub.de/media/crypto/attachments/files/2011/04/imsi_catcher.pdf (last accessed: Dec. 14, 2011).

9. *See* McPherson, Rodney (Palm Bay, FL, US) *et al.*, Harris Corp., U.S. Patent No. 7,592,956, *Wireless Transmitter Location Determining System And Related Methods* (Sep. 22, 2009), *available at* http://www.freepatentsonline.com/7592956.html (last accessed: Feb. 22, 2011); Billhartz, Thomas Jay (Melbourne, FL, US) *et al.*, Harris Corp., U.S. Patent No. 7,321,777, *Wireless Communications System Including A Wireless Device Locator And Related Methods* (Jan. 22, 2008), *available at* http://www.freepatentsonline.com/7321777.html (last accessed: Feb. 16, 2011).

10. *See* ECPA Reform and the Revolution in Location Based Technologies and Services: Hearing Before the Subcommittee on the Constitution, Civil Rights, and Civil Liberties of the Committee On The Judiciary, House Of Representatives, 111th Cong. 2nd sess. (Jun. 24, 2010) (Statement of Mr. Matt Blaze, Associate Professor, University of Pennsylvania), *available at* http://judiciary.house.gov/hearings/pdf/Blaze100624.pdf (last accessed: Apr. 29,

"GirlTech IMME, a commercial toy intended for pre-teen children,"[11] to "easily 'turn the tables' on covert users of P25 mobile devices, effectively converting their radios into location tracking beacons."[12] In their academic paper, Clark *et. al.* explain how to use the children's toy to conduct interrogation techniques[13] on P25 law enforcement radios (standard radios used by the FBI, *etc.*) in order to conduct real-time geolocation of law enforcement agents in the field. Whether it be the operations of cell site emulators or geolocation techniques, the FBI has nothing left to hide. *See* United States v. Rovario, 353 U.S. 53, 60 (1957) (If the claimed privileged information is revealed to the defendant (or to everyone for that matter) then "the privilege is no longer applicable."). Indeed, since at least as early as 2006, specific instructions on how to defeat the FBI's "StingRay" have been provided to the public by the United States government.[14]

* * * * *

This response was drafted by the *pro se* defendant, however, he authorizes his shadow counsel, Philip Seplow, to file this response and on his behalf using the ECF system. The defendant is appearing *pro se* and has never attended law school. The defendant's filings, however inartfully pleaded, must be liberally construed and held to less stringent standards than formal pleadings drafted by lawyers. *See* Haines v. Kerner, 404 U.S. 519, 520 (1972).

///

///

///

---

2011).

11. Clark, Sandy et al., Why (Special Agent) Johnny (Still) Can't Encrypt: A Security Analysis of the APCO Project 25 Two-Way Radio System, University of Pennsylvania (presented at the 20th Usenix Security Symposium, Aug. 2011), *available at* http://www.usenix.org/events/sec/tech/full_papers/Clark.pdf (last accessed: Oct. 6, 2011), p. 12.

12. *Id.*, p. 7.

13. Although applied to a different type of radio using a different communications protocol, these are the same interrogation techniques used by FBI cell site emulators to locate cellular radios (*e.g.*, the aircard) that communicate via 1xRTT/1xEV-DO.

14. *See, e.g.*, Jones, Emanuele (Ottawa, CA), U.S. Patent App. No. 2006/0197702 A1, *Wireless Host Intrusion Detection System* (Sep. 7, 2006), *available at* http://www.freepatentsonline.com/y2006/0197702.html (last accessed: Dec. 20, 2011).

Respectfully Submitted: December 22, 2011

PHILP SEPLOW, Shadow Counsel, on behalf of DANIEL DAVID RIGMAIDEN, Pro Se Defendant:

s/ Philip Seplow

Philip Seplow
Shadow Counsel for Defendant.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

**CERTIFICATE OF SERVICE**

I hereby certify that on: December 22, 2011 I caused the attached document to be electronically transmitted to the Clerk's Office using the ECF system for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Taylor W. Fox, PC
Counsel for defendant Ransom Carter
2 North Central Ave., Suite 735
Phoenix, AZ 85004

Frederick A. Battista
Assistant United States Attorney
Two Renaissance Square
40 North Central Ave., Suite 1200
Phoenix, AZ 85004

Peter S. Sexton
Assistant United States Attorney
Two Renaissance Square
40 North Central Ave., Suite 1200
Phoenix, AZ 85004

James R. Knapp
Assistant United States Attorney
Two Renaissance Square
40 North Central Ave., Suite 1200
Phoenix, AZ 85004

By: s/ Daniel Colmerauer
(Authorized agent of Philip A. Seplow, Shadow Counsel for Defendant; See ECF Proc. I(D) and II(D)(3))