1  Daniel Rigmaiden
   Agency # 10966111
2  CCA-CADC
   PO Box 6300
3  Florence, AZ 85132
   Telephone: none
4  Email: none

5  Daniel David Rigmaiden
   Pro Se, Defendant

6

7                    UNITED STATES DISTRICT COURT

8                         DISTRICT OF ARIZONA

9

10  United States of America,              No. CR08-814-PHX-DGC

11          Plaintiff,                     MOTION FOR RECONSIDERATION OF
                                           ORDER (DKT. #727) DENYING
12  v.                                     DEFENDANT'S MOTION TO RELEASE
                                           THE AIRCARD FOR TESTING (DKT.
13  Daniel David Rigmaiden, et al.,        #597)

14          Defendant.

15

16          Defendant, Daniel David Rigmaiden, appearing *pro se*, respectfully submits this

17  *Motion For Reconsideration Of Order (Dkt. #727) Denying Defendant's Motion To Release*

18  *The Aircard For Testing (Dkt. #597)*.  The defendant requested that the Court order the

19  government to provide the aircard to the defense for testing and analysis purposes.  The

20  government previously refused to provide the defense the aircard and indicated that it may

21  consider allowing the defense to test/analyze the aircard while in the presence of the

22  government if the defense would first disclose the nature of the tests to the government.  The

23  Court denied the defendant's motion because "Defendant's motion does not identify the

24  testing he wishes to perform on the aircard, nor has Defendant explained why testing of the

25  aircard cannot occur while the aircard is in the government's possession and made available

26  for examination by Defendant's expert"  Dkt. #727, p. 2.  The defendant did not address

27  those issues because those issues have nothing to do with the government's reasons for not

28  releasing the aircard, *i.e.*, possible destruction or loss of the aircard.  Additionally, a major

- 1 -

Left margin (vertical): *MOTION FOR RECONSIDERATION OF ORDER (DKT #727) DENYING DEFENDANT'S MOTION TO RELEASE THE AIRCARD FOR TESTING (DKT #597) CR08-814-PHX-DGC*

1  part of the defendant not wanting to have tests conducted in the government's presence was

2  because he did not want to release defense strategies to the government as a price for

3  receiving an item that is clearly discoverable.

4      To answer the Court's questions raised in Dkt. #727:

5      Originally, the defendant did not want to disclose the nature of the test and analysis

6  for the reason stated above.  However, now, the defendant will disclose the nature of the test

7  and analysis for two reasons: (1) the defendant assumes that the tests are obvious and easily

8  assumed by the government, and (2) by disclosing the nature of the tests, the defendant can

9  show the Court why he absolutely must perform the tests.

10  **The Aircard Analysis**

11      The analysis that needs to be performed on the seized aircard involves retrieving all

12  stored data on the aircard including (1) the Preferred Roaming List which includes the

13  Acquisition Table, System Table, and other parameters dictating the use of said tables, (2) all

14  Number Assignment Module (NAM) parameters that are separate from the Preferred

15  Roaming List, (3) all other data stored on the aircard kept separate from the NAM allocation,

16  and (4) the firmware for the aircard that dictates the aircard's operations (*e.g.*, baseband

17  processor software).  Note: this task may require desoldering components from the aircard's

18  internal circuit board but those components can be resoldered afterwards.

19  **The Aircard Test**

20      The test that needs to be performed on the seized aircard involves the following: (1)

21  setting up an emulated cellular network in a lab environment, (2) having the aircard connect

22  to the emulated cellular network under a 1xEV-DO data connection, (3) sending voice call

23  paging signals to the aircard under a 1xRTT connection and/or under the already established

24  1xEV-DO connection via "cross tunneling" based on the aircard hybrid Access Terminal

25  status, and (4) logging the activity of the aircard under these conditions.  The same test will

26  then be repeated using a control (*i.e.*, numerous other Verizon Wireless aircards that were not

27  altered/reprogrammed by the FBI/Verizon) in order to make a comparison.  The test will

28  show that, under the instruction of the FBI, Verizon Wireless wrote data to the aircard and

1   reprogrammed the aircard so that it would be disconnected from its 1xEV-DO data

2   connection in response to the FBI's surreptitious phone calls placed to the aircard (over a six

3   hour period) that generated the 1xRTT paging signals (or crossed tunneled paging signals)

4   from a Verizon Wireless cell site.

5                                                    * * *

6         If the Court is not convinced by the defendant's technical reasoning (of which he

7   learned from text books funded by the Court), then he requests that he be permitted to submit

8   an affidavit from an expert.  The defendant does not currently have an expert appointed to

9   the defense that understands the above explained test and analysis, or even 90% of the

10  technical aspects of the defendant's defense, so the affidavit is not submitted with this filing.

11  However, the defendant has located an Information Security Expert who does understand but

12  this expert is not appointed to the defense.

13        The need for the requested analysis and test is to prove that the FBI had Verizon

14  Wireless (1) write data to the aircard, and (2) program the aircard to respond to the FBI's

15  initial denial-of-service attack conducted over a six hour period through surreptitious phone

16  calls.[1]  The defendant needs to prove the noted actions in order to show that the

17  government acted outside the scope of the N.D.Cal. 08-90330MISC-RS order which did not

18  authorize reprogramming the aircard for the government's own purpose or writing data to the

19  aircard.  Additionally, although the government admitted to causing the aircard a "brief

20  disruption in service," Dkt. #723 at 14, it will help the defendant's arguments to prove that

21  the denial-of-service attack was not "brief" but actually lasted over a six hour period via the

22  surreptitious phone calls and then over an additional eight hour period via use of the

23  StingRay and other equipment.  The test and analysis will help the defendant prove these

24

25  _____

1.      It should be understood that there is a possibility that the FBI had Verizon Wireless
26  reprogram the aircard back to its default values after the aircard locating mission was
    complete.  Unfortunately, the defendant will never know because the Court has permitted the
27  government to conceal the identities of the operators of the cell site emulators (individuals
    who would shed light on the issue) and also permitted the government to withhold
28  communications between the government and Verizon Wireless. *See* Dkt. #723 at 16-18 &
    26-27.

1   actions.[2]

2       The government continues to deny reprogramming the aircard and writing data to the

3   aircard.  The defendant realizes that the Court concluded "that Defendant has ample

4   information from government disclosures and his extensive command of technical

5   information to construct whatever arguments he wishes to assert concerning the Fourth

6   Amendment implications of the aircard locating mission."  Dkt. #723 at 29-30.  However,

7   the needed analysis is important to defense preparations considering the Court may allow the

8   government to present a general cellular network expert[3] (or similar) to incorrectly claim

9   that reprogramming the aircard and writing data to the aircard would not be needed in order

10  for a 1xRTT paging signal to disconnect the aircard from its 1xEV-DO data connection being

11  provided by a Verizon Wireless cell site.  If the Court allows the government to present an

12  expert on cellular networks, despite the fact that the government is withholding evidence that

13  will absolutely prove the defendant's claims, then the defendant will have no physical

14  evidence to maintain his "preponderance of the evidence" showing of which the Court has

15  indicated the defendant has ample informational evidence to make.

16      Although the defendant has now revealed his planned analysis and test, the defendant

17  still objects to being forced to have his expert[4] conduct operations in the presence of the

18  government because it would allow the government to use its authority (whether explicit or

19  implicit) to influence the tests as conducted by the defense expert.  Additionally, the

20  government would have an opportunity to gain access to defense work product (whether

21  deliberate or accidental) that would not otherwise be disclosed or require disclosure.

22  Obviously, any test results with full methodology and any other information required by law

23  would be provided to the government prior to a suppression hearing so there is no need for

24  the government to be present during the test and analysis.  If the Court insists on the defense

---

25  2.    *See* fn. 1, *supra*.

26  3.    Such an expert could be an engineer who works for a wireless carrier and would not
      necessarily need to know anything about FBI surveillance techniques or equipment.

27  4.    By "his expert," the defendant means an expert who actually knows how to conduct
28  the test and analysis and not the expert currently appointed to his defense.  The defendant has
      already located an expert who actually knows how to conduct the test and analysis.

1  conducting the test and analysis in the government's presence, then the defendant will seek to

2  accommodate the government considering the test and analysis is so vital to the defendant's

3  Fourth Amendment arguments.[5]

4      This motion was drafted and prepared by the *pro se* defendant, however, he authorizes

5  his shadow counsel, Philip Seplow, to file this motion and on his behalf using the ECF

6  system.  The defendant is appearing *pro se* and has never attended law school.  The

7  defendant's filings, however inartfully pleaded, must be liberally construed and held to less

8  stringent standards than formal pleadings drafted by lawyers.  *See* Haines v. Kerner, 404 U.S.

9  519, 520 (1972).

10     LRCrim 12.2(a) requires that the undersigned include the following statement in all

11  motions: "Excludable delay under 18 U.S.C. § 3161(h)(1)(D) will occur as a result of this

12  motion or of an order based thereon."

13  ///

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27

28

---

5.      The defendant does not think he should be required to have his expert conduct tests in the government's presence.

1 | Respectfully Submitted:

2

3 | PHILP SEPLOW, Shadow Counsel, on behalf of DANIEL DAVID RIGMAIDEN, Pro Se Defendant:

4

5

6 | s/ Philip Seplow

7 | Philip Seplow
Shadow Counsel for Defendant.

8

9 | ///

10 | ///

11 | ///

12 | ///

13 | ///

14 | ///

15 | ///

16 | ///

17 | ///

18 | ///

19 | ///

20 | ///

21 | ///

22 | ///

23 | ///

24 | ///

25 | ///

26 | ///

27 | ///

28 | ///

*MOTION FOR RECONSIDERATION OF ORDER (DKT #727) DENYING DEFENDANT'S MOTION TO RELEASE THE AIRCARD FOR TESTING (DKT #597)*
*CR08-814-PHX-DGC*

**CERTIFICATE OF SERVICE**

I hereby certify that on:                              I caused the attached document to be electronically transmitted to the Clerk's Office using the ECF system for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Taylor W. Fox, PC
Counsel for defendant Ransom Carter
2 North Central Ave., Suite 735
Phoenix, AZ 85004

Frederick A. Battista
Assistant United States Attorney
Two Renaissance Square
40 North Central Ave., Suite 1200
Phoenix, AZ 85004

Peter S. Sexton
Assistant United States Attorney
Two Renaissance Square
40 North Central Ave., Suite 1200
Phoenix, AZ 85004

James R. Knapp
Assistant United States Attorney
Two Renaissance Square
40 North Central Ave., Suite 1200
Phoenix, AZ 85004

By: s/ Daniel Colmerauer
(Authorized agent of Philip A. Seplow, Shadow Counsel for Defendant; See ECF Proc. I(D) and II(D)(3))

*MOTION FOR RECONSIDERATION OF ORDER (DKT #727) DENYING DEFENDANT'S MOTION TO RELEASE THE AIRCARD FOR TESTING (DKT #597) CR08-814-PHX-DGC*

- 7 -