**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

_____

| | |
|---|---|
| United States of America, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) NO. **CR 08-814 PHX-DGC** |
| | ) |
| Daniel David Rigmaiden, | ) Phoenix, Arizona |
| | ) January 27, 2012 |
| | ) 11:34 a.m. |
| Defendant. | ) |
| | ) |

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**

**(Status Conference)**

**BEFORE THE HONORABLE DAVID G. CAMPBELL**

APPEARANCES:

For the Plaintiff:        **Frederick A. Battista**, Esq.
                          Assistant U.S. Attorney
                          Two Renaissance Square
                          40 N. Central Avenue, Suite 1200
                          Phoenix, Arizona  85004-4408

For the Defendant:        **Daniel D. Rigmaiden**
                          Pro Per

                          **Philip A. Seplow**, Esq.
                          2000 N. 7th Street
                          Phoenix, Arizona 85006-2307

Court Reporter:           Merilyn A. Sanchez, CRR
                          Sandra Day O'Connor U.S. Courthouse
                          401 W. Washington Street SPC-37
                          Phoenix, Arizona  85003-2118
                          (602) 322-7250

Proceedings taken by stenographic court reporter
Transcript prepared by computer-aided transcription

<u>P R O C E E D I N G S</u>

THE COURTROOM DEPUTY CLERK:  Criminal case 2008-814, United States of America versus Daniel David Rigmaiden, on for status hearing.

MR. BATTISTA:  Good morning, Your Honor.  Fred Battista on behalf of the United States.

THE DEFENDANT:  Good morning, Your Honor, Daniel Rigmaiden on behalf of myself.

THE COURT:  Good morning.

MR. SEPLOW:  Good morning, Your Honor, Philip Seplow present with Mr. Rigmaiden.

THE COURT:  Good morning.

All right, we set this as a status conference.  I thought we just ought to talk and make sure all issues were on track.  There are several ex parte matters I need to talk with you about, Mr. Rigmaiden, after we excuse the Government.

Besides the ex parte, I only see two motions that are pending that are related to the parties.  There was another motion that was filed by some proposed amicus parties to file an amicus brief.  What they wanted to do is file an amicus brief in support of your motion for disclosure, Mr. Rigmaiden.  They filed it a week or two after I had issued my order on your motion for disclosure, so I've denied that motion.  They may well, you know, seek to support you in other filings in the

1   future, but that one came in after I already ruled on the

2   motion.

3          The two motions that I have pending that are not

4   ex parte is the motion for reconsideration of the air card

5   order that I want to talk to you all about, and then there's a

6   larger motion for reconsideration that you have asked to file,

7   and I just haven't had time to look at that or the motion.  So

8   I really don't have anything to say on that this morning.

9          I'm in the middle of a two-month trial right now and I

10   just haven't had time to look at it, and I'll try to look at it

11   in the next -- maybe this weekend if I can get to it.

12          But I do want to talk about motion for reconsideration

13   of the air card order.  And I just have some questions for the

14   parties.

15          Mr. Rigmaiden, you -- you identify in this order in

16   general the tests that you want to conduct.  And you also say

17   that you want as an initial matter to retrieve stored data from

18   the air card.  And you identify four categories of stored data

19   on page 2 of your brief.  And then you indicate you want to

20   actually set up a test to conduct.

21          The first question I had for you and for the

22   Government is, can -- can the air card be imaged like a

23   computer?  Can the -- can the Government image all of the data

24   on the air card and give it to you like they would a hard

25   drive, which would at least accomplish the first part of what

```
 1   you want to do in terms of retrieving data.

 2            I just don't know the answer to that.  You indicated

 3   that getting at it may require a -- pulling the air card apart

 4   and extracting a component and resoldering it.  That implies

 5   you can't just image what's on the air card, but I didn't know

 6   if that was even possible.

 7            Do you know, Mr. Rigmaiden?

 8            THE DEFENDANT:  I think it is possible.  I'm not sure

 9   if you have to desolder anything from it.  I've never seen the

10   inside of the air card, so I don't know.  And I haven't talked

11   to anybody specifically about that model.  But I know that it

12   is possible to image cell phones, air cards and things like

13   that.

14            It's a lot different than imaging a computer.  It's a

15   lot more complicated, but less common, less people would

16   probably know how to do it.  So there might be some variation

17   in the ways it might be done and exactly what data is taken off

18   of it.  If you give it to one expert and he images it, he may

19   get not as much data as another expert.  So I guess it's

20   important to really know exactly -- exactly what you're doing

21   when you do it.  But I know it's possible.  But I don't really

22   have too many details.  I haven't spoken to anyone about the

23   details, just the general idea of the tests.

24            THE COURT:  Do you have any idea, Mr. Rigmaiden --

25   Mr. Rigmaiden, I'm sorry, Mr. Battista?
```

1          MR. BATTISTA:  Your Honor, I've never even thought of

2     it.  I mean, I can ask and find out.  Pursuant to the

3     defendant's request, defendant had advised us that he does not

4     want the air card activated, because of concerns as to what the

5     activation might affect the air card, so once we received that

6     notice, we obviously have not activated it.  And we won't do

7     that without notice to the defendant.

8          So if it is possible to image it, we will obviously --

9     I will -- the only thing at this point is I'll ask my experts

10    and see if it's possible and then communicate with the

11    defendant about that, how he would like to proceed.

12         And just -- I'll definitely ask to see if that's a

13    possibility.

14         THE COURT:  My understanding, Mr. Rigmaiden, of the

15    relevancy of the information you want to obtain through

16    examining the air card is to show that, as you believe, that

17    Verizon wrote data to the air card which facilitated the

18    Government's capturing the air card signal.  And your

19    contention, as I understand it from your motion to reconsider,

20    is that this would be argued not in support of your claim that

21    there was a Fourth Amendment search, since the Government's

22    conceded there was, but rather in support of your claim that

23    writing data to the air card exceeded the authorization of the

24    order that was issued by the Northern District of California.

25    Is that right?

1          THE DEFENDANT:  That's right.  But I also think that

2     what -- anything that I claim that they exceeded in the order

3     also has to some way either be a search or a seizure.  So even

4     though the Government admitted that something was a search and

5     something was a seizure, I think that I still need to show that

6     the specific actions that they did fall under either the search

7     or the seizure.

8          I mean, it's kind of like the knock and announce rule.

9     If the Government doesn't knock on the door now, it's not

10    necessarily unreasonable, even if the warrant says that they

11    can't knock on the door, it doesn't mean that you get to

12    suppress evidence because it wasn't but for unattenuated causes

13    obtaining the evidence.  So I would have to show that writing

14    data to the air card was a search.

15         And I don't know if the Government is admitting that

16    that was a search in their concession that there was a search

17    and seizure.  But I have to show that that was a search and

18    then also show that it wasn't authorized by the order for it to

19    work.  That's my understanding.

20         THE COURT:  You said in your brief that your concern

21    is that even though you have information in your possession of

22    which you can assert to me that they had to have written data

23    to the air card, you're concerned that the Government at a

24    suppression hearing, will come in with a general cellular

25    network expert who will say, no, that's not necessary, and you

1    will have no ability to rebut what he says because you won't

2    have specific information from the air card in this case; is

3    that right?

4              THE DEFENDANT:  That's correct.

5              THE COURT:  Are you intending to use such an expert,

6    Mr. Battista?

7              MR. BATTISTA:  I haven't seen the defendant's motion

8    yet, Your Honor, so I don't know exactly how we will rebut it.

9              Again, all -- the defendant has made the request

10   numerous times.  I've talked to the FBI numerous times.  Their

11   response has always been the same, that Verizon was not asked,

12   and there's no -- we have no information that Verizon did do

13   anything to the air card to facilitate the air card submission.

14   So --

15             THE COURT:  This issue to me is like others we've

16   talked about in this case.  The potential problem I see down

17   the road is Mr. Rigmaiden asserts in his motion to suppress

18   that it did write -- Verizon did write data to the air card for

19   technical reasons he will cite.  And if the Government comes

20   back with evidence that that didn't happen, the problem will be

21   that he's been denied access to the air card that would allow

22   him to rebut the Government's evidence.  What is your thought

23   on that?

24             MR. BATTISTA:  Well, I could look into the possibility

25   whether or not on an independent matter it's even possible for

1    the information -- any type of information to be written onto

2    the air card.  And I could also look into the possibility of

3    whether or not a test can be conducted on the air card to

4    determine whether or not that's even possible.

5         I haven't pursued that but, you know, we might -- if

6    it is possible that you can determine that, we might be willing

7    to agree to a set of procedures and make that -- and make that

8    determination.

9         Again, my only concern, obviously, is I've said with

10   the air card is that obviously we don't want it lost or

11   destroyed or we don't want it somehow altered in a fashion that

12   we don't know, you know, what the alteration was.  So again, I

13   can -- I can look into seeing if it is possible to conduct an

14   examination with respect to that particular question.

15        THE COURT:  Yes, I guess as I listen to you speak, it

16   occurs to me this is a little different from the other times

17   they've raised this concern, which is you are not seeking to

18   withhold the contents of the air card on the basis of a

19   privilege.

20        MR. BATTISTA:  No, that's correct, Your Honor.

21        THE COURT:  You're willing to let their expert examine

22   it.  You just don't want it out of your possession.

23        MR. BATTISTA:  Correct, Your Honor.  And I'll just

24   give you an example.  I had a case where defense counsel's

25   expert wanted to examine a machine gun that we had that was a

1    charge, and it was a count in a machine gun case.

2            Defendant wanted the machine gun shipped to the

3    defendant's expert.  We didn't allow that.  But my expert and

4    the defendant's expert and defense counsel went to a gun range.

5    We met the defense expert.  We handed the machine gun to the

6    defendant's expert.  My expert stood with the defendant's

7    expert, disassembled the gun, reassembled the gun, test fired

8    the gun, videotaped the test firing.  It was all under a

9    controlled environment.  The defendant had the opportunity to

10   do -- and he told us what he was going to do.  He did it under

11   supervision.  I was there.  You know.  Everyone was satisfied.

12   And we all went home.

13           So I'm not saying that the defendant can't test the

14   air card, you know, we don't have -- I don't have a problem

15   with that.  It's just a matter of the procedures.  And I

16   understand that the defendant would like to do that in secret,

17   but because this is a critical piece of evidence, I think that

18   the testing should be done out, you know, out in the open.  But

19   we are willing to work with the defendant on that.

20           Mr. Rigmaiden, have you identified an expert yet for

21   purposes of this work?

22           THE DEFENDANT:  There is one who said that he might be

23   able to do it and another one who said that he can probably do

24   it as well.  But I'm having difficulty getting hold of these

25   people.  And the first one, he didn't want to communicate with

1    me directly.  So that was kind of a bit of a problem.  But if

2    the other expert doesn't work out, I might have to go with him

3    just because, like I was saying earlier, there isn't many

4    people, you know, who know how to do that type of test.  So --

5    there are some -- I've identified some people, but no one has

6    been solidified yet.

7            THE COURT:  All right.  Well, we will talk ex parte

8    about where you are on experts.  My conclusion is that -- that

9    at this stage, I am not willing to grant the motion to

10   reconsider and order the Government to turn the air card over

11   to you.  I think we should look into whether it can be

12   mirrored.  If you could look into that and communicate with

13   Mr. Rigmaiden, that would be a step in getting Mr. Rigmaiden

14   the contents of the air card.

15           I understand, as I previously had indicated, why the

16   Government views the air card as a critical piece of evidence

17   in the case and why the Government does not want to let that

18   piece of evidence out of its control.  That's not an uncommon

19   situation in cases.

20           And I have had cases that related to computer

21   technology where computer experts went to the office of the

22   U.S. Attorney with the U.S. Attorney's expert there and ran the

23   computers and did tests on the computers.  And, you know,

24   admittedly, that showed the U.S. Attorney's office what the

25   defense expert was working at.  But I guess as the Government

1   experts could have guessed that anyway.  And it had the

2   advantage of giving the defendant access to information he

3   needed while not potentially compromising the evidence that the

4   Government felt was critical to its case.  I continue to think

5   that's the right approach in this case if mirroring can't solve

6   the issue.

7          Obviously, Mr. Rigmaiden, if you retain an expert who

8   is of the view that that doesn't work, you can explain to me

9   why that expert says it doesn't work.  But at this point, I'm

10  not going to grant a motion that just requires the Government

11  to turn the air card over to you.  I'm not persuaded yet that

12  that is something I should force Government to do.

13         So I'm going to deny the motion to reconsider at

14  docket 735 for that reason.  That's without prejudice to you

15  reraising the issue if your expert has a specific reason of

16  concern about that.

17         That is -- those are the only two motions, that and

18  the longer motion for leave to file the motion for

19  reconsideration are the only two that I see on the docket that

20  need attention.  Have I missed anything that anybody is aware

21  of?

22         MR. BATTISTA:  Not from the Government's perspective,

23  Your Honor.

24         THE DEFENDANT:  I haven't filed any other motion.

25         THE COURT:  Okay, let's talk for a minute about

1    timing.  In the order that I issued in early January, I

2    required, Mr. Rigmaiden, that you file your motion to suppress

3    by February 17th.  That was -- that was about seven weeks or

4    something like that after my order.  It looked to me, in the

5    motion for discovery, as though you had done a substantial

6    amount of work already on the issues, therefore, seven weeks

7    would be enough time for you to pull together the motion to

8    suppress.

9           Do you see a problem meeting that schedule?

10          THE DEFENDANT:  Yes, Your Honor.  That's one of the

11   issues I raised in the longer reconsideration motion that you

12   haven't read yet.  I guess in summary, there's a whole lot of

13   other issues that I'm trying to argue in my motion that weren't

14   raised in the discovery motion.  I still need to argue the

15   Government's seizure of historical cell site information, real

16   time cell site information, destination IP addresses.  I didn't

17   address issues like deactivating encryption, seizing stored

18   data on the air card in order to facilitate locating the air

19   card, writing data to the air card, not using Verizon Wireless,

20   but actually using the cell site emulators themselves.

21          So this would be different.  This is Government

22   directly writing data to the air card as opposed to Verizon

23   Wireless writing data to the air card.

24          There's also issues that have to do with the warrant

25   to physically search the apartment that I am challenging.

```
1    There's a whole lot of issues.  They are all listed in my

2    motion for reconsideration.  But I don't think I can meet that

3    deadline because of that.

4         I mean if I only had to argue the issues in the

5    discovery motion, and if I didn't have to argue that I have

6    reasonable expectation of privacy or possessory interest in

7    anything, I think that is a subject the Government still

8    disagrees with, then maybe I can meet that deadline.

9         But, I mean, even with the Government conceding that a

10   search and seizure occurred, like I was saying earlier, I have

11   to prove specific action for searches and seizures.  At least

12   that's my interpretation of the cases I've read.

13        So I can't just subtract that whole section out of my

14   motion just because they conceded that some type of search,

15   some type of seizure occurred.  They haven't actually

16   identified what they searched or what they seized.

17        So that's the reasons why I don't think I can meet

18   that deadline or the 50-page limitation either, just because --

19   there's ten different documents that I'm challenging.  There's

20   orders, warrants, subpoenas.  There's orders out of this

21   district, out of the Northern District of California.  And I

22   have arguments to raise on each one of those.

23        And I'm not going on and on on certain sections.  I

24   mean, everything is -- I'm keeping everything pretty tight.  So

25   I'm not wasting any space when I'm doing this.  But I think
```

1    that there's just a whole lot more issues than what you read in

2    my discovery motion.

3              THE COURT:  What is it you think you need in terms of

4    time and pages?

5              THE DEFENDANT:  It's hard for me to say.  I mean, I

6    guess -- I guess technically, according to the rules, you get

7    17 pages per argument per motion.  And if there's ten different

8    documents I'm challenging, that's the equivalent of ten

9    suppression motions, that's 170 pages.  I don't think I need

10   170 pages of arguments.  But I do know that my fact section is

11   extensive because I need to go into the technical operations of

12   cell sites and how the air card works in order to make all

13   these claims, especially if the Government is going to bring an

14   expert in who is going to try to say that my claims aren't

15   true.

16             So I really don't know because a lot of these issues I

17   haven't worked on yet.  And I'm still unclear on whether or not

18   I need to prove a reasonable expectation of privacy.  And if I

19   do, what -- what exactly do I need to prove that I have an

20   expectation of privacy in.  I mean, there's a whole lot of

21   different issues with the air card, there's the air card

22   account, there's the records that they took from Verizon,

23   there's the IP addresses, there's just a whole lot of different

24   issues.  And each one of those objects has to do with a

25   different search.  So I kind of have to establish a reasonable

1    expectation of privacy in each separate one.

2          And I don't know, right now it's too hard for me to

3    really say how much space I need, but I think timewise, I could

4    probably -- I'm going to need two and a half months.

5          THE COURT:  From now?

6          THE DEFENDANT:  Yeah.

7          THE COURT:  Mr. Battista, as you saw in the order that

8    I issued on January 5th, I had some difficulty with the

9    Government conceding that this is a Fourth Amendment search but

10   reserving its right to argue that the defendant lacks standing

11   because he doesn't have a reasonable expectation of privacy.

12         I had a long footnote, footnote six that addressed

13   that.  And it seemed to me that they are, in many ways, one in

14   the same because he has to show a reasonable expectation of

15   privacy for there to be a Fourth Amendment search.  So if the

16   Government is conceding there's a Fourth Amendment search, it

17   seems to me it's conceding there's a reasonable expectation to

18   privacy.

19         MR. BATTISTA:  Your Honor, I believe -- and I

20   understand the Court's been in trial.  We filed a memorandum

21   addressing that footnote.  I don't know if the Court's had an

22   opportunity to review it.

23         THE COURT:  I haven't seen it.  It's not a motion,

24   it's just a memorandum?

25         MR. BATTISTA:  Yes.

```
 1              THE COURT:  I haven't seen it.

 2              MR. BATTISTA:  Sure.

 3              THE COURTROOM DEPUTY CLERK:  It was filed this

 4    morning.

 5              MR. BATTISTA:  No, an amended.  We filed it several

 6    days ago.  And we filed an amended motion today.  I -- we

 7    misstated a name in the motion.  So I filed an amended version

 8    today to clarify a name that had been in the original

 9    memorandum.  It was filed several days ago.

10              THE COURTROOM DEPUTY CLERK:  That was printed off the

11    original memorandum, but the new one hasn't been.  Did you want

12    the amended?

13              THE COURT:  Yeah, I didn't see the original

14    memorandum.

15              MR. BATTISTA:  I believe it was filed on the 25th.

16              THE COURT:  I haven't seen it.  Tell me in a nutshell

17    what it is you're saying, because I agree, Mr. Rigmaiden needs

18    to know --

19              MR. BATTISTA:  Sure.

20              THE COURT:  -- what he should have to address.

21              MR. BATTISTA:  Well, Your Honor, I think the position

22    of the Government is that, you know, we are conceding in the

23    abstract that what the Government did and the Court can assume

24    is a search or seizure.  But the defendant still has the burden

25    of showing that he had an expectation of privacy in whatever
```

1    was searched or seized.  And that I don't believe that the

2    Government has ever conceded that the defendant had an

3    expectation of privacy in these items.

4         I mean, we are -- this case has been evolving.  The

5    issues have been evolving.  We've been trying to work with the

6    Court and work with the defendant to simplify matters and focus

7    matters.  But it's a two-prong test.  I mean, like, you know,

8    my example would be if I'm driving down the street in my car

9    and all of a sudden, I'm pulled over and the police drag me out

10   and search the car with no probable cause, no expectation --

11   with no exigent circumstances, no warrant, that's -- that's

12   a -- I have a Fourth Amendment right and I have an expectation

13   of privacy.

14        But if someone else steals my car and is driving down

15   the same road and all those exact same facts happen, the person

16   that stole that car does not have an expectation of privacy in

17   the contents of that car.

18        THE COURT:  And, therefore, it's not a search and

19   seizure within the meaning of the Fourth Amendment.  That was

20   my problem, is that you had said we will concede this is a

21   search and seizure within the meaning of the Fourth Amendment.

22   And it sounds like what you're saying is that if the defendant

23   had a reasonable expectation of privacy in his apartment and in

24   the air card, and a laptop computer, et cetera, then whatever

25   actions the Government took to investigate those was

1    sufficiently intrusive to constitute a Fourth Amendment search?

2              MR. BATTISTA:  That's correct, Your Honor.  And if I

3    didn't -- you know, I was just operating under that assumption.

4    And I don't -- I apologize to the Court if there's been some

5    type of level of miscommunication.  But, you know, from day

6    one, the Government has pointed out the fact that the apartment

7    was rented under -- rented under a false identity.  The air

8    card was obtained under a second false identity.  We advised

9    the defendant that the laptop that the computer was -- that the

10   laptop that the air card was connected to was purchased under a

11   third false identity.  I mean, clearly we believe that the

12   defendant has quite a burden and hurdle in terms of justifying

13   why he, under this scenario, would have an expectation of

14   privacy in these items.

15             I don't think that the Government should be foreclosed

16   from making this argument by, you know, acknowledging that this

17   type of conduct, if someone has an expectation of privacy, is

18   subject to a Fourth Amendment analysis.  The -- in looking at

19   the cases that we've cited to you, the courts seem to say that

20   expectation of privacy in the Fourth Amendment analysis is all

21   part and parcel of the Court's analysis.

22             THE COURT:  Yeah, that's why I --

23             MR. BATTISTA:  I apologize, Judge, if I wasn't -- you

24   know, we weren't skilled enough to -- to separate that out.

25   But I don't believe -- it was never the Government's intent to

1    concede that the defendant had an expectation of privacy.  I

2    think it's been our experience that quite frequently, the

3    courts do both analyses.

4              THE COURT:  Well, and I thought Mr. Rigmaiden's point

5    was a fair one that there is some confusion in the law.  There

6    are some courts that talk about standing as though it's a

7    separate concept from Fourth Amendment search when it's really

8    looking at one of the elements of the Fourth Amendment search,

9    that it is part and parcel.  And there is that confusion in the

10   cases.

11             Well, so for purposes of what Mr. Rigmaiden is going

12   to be writing, and to be very clear, the Government is

13   conceding that the actions it took in the air card locating

14   mission were sufficiently intrusive to constitute a Fourth

15   Amendment search and seizure if the defendant had a reasonable

16   expectation of privacy in the air card, in the laptop, in the

17   apartment, in the signals that were sent out by the air card,

18   et cetera?

19             MR. BATTISTA:  Correct, Your Honor.

20             THE COURT:  So it sounds like you do need to address

21   reasonable expectation of privacy, Mr. Rigmaiden.

22             And I'll put this in an order so that it's clear in

23   the record.  Well, it's clear, obviously, on this record.  But

24   I want it to be in the docket as well.

25             What I'm wondering is whether this changes any of my

1    thinking in the order that I issued denying Mr. Rigmaiden's

2    motion for discovery.  My initial reaction is that it doesn't

3    because every place I relied on that concession by the

4    Government, I was relying upon the intrusiveness issue, namely

5    that Mr. Rigmaiden doesn't have to prove that the Government

6    wrote data to the air card in order to show that the action was

7    sufficiently intrusive to constitute a Fourth Amendment search,

8    because the Government is conceding the intrusiveness part of

9    the Fourth Amendment analysis.

10             MR. BATTISTA:  Correct, Your Honor.

11             THE COURT:  Do you agree with that?  Namely, you agree

12   that you are conceding that -- well, it's what I've already

13   said, that the air card locating mission was sufficiently

14   intrusive to trigger Fourth Amendment protection if he has a

15   reasonable expectation of privacy.  Therefore, he doesn't have

16   to prove the intrusiveness of any particular action in order to

17   establish it was sufficiently intrusive for a Fourth Amendment

18   violation.

19             MR. BATTISTA:  That's correct.  And the reason that

20   you saw any hesitation on my face, Your Honor, is that you had

21   also mentioned the writing of data on the air card, which I

22   don't have any evidence that that actually occurred.  So but

23   that, I think the defendant's concern there is that goes more

24   to possibly the Government having exceeded the scope of the

25   order.  I think that's what the defendant has said.

1              THE COURT:  I'll go back and look at my order.  My

2    initial reaction is that this clarification probably doesn't

3    change the order.  But as indicated in footnote six, I was

4    going forward with the assumption it was a complete Fourth

5    Amendment concession.

6              Do you have things you wanted to say on this,

7    Mr. Rigmaiden?

8              THE DEFENDANT:  Yes.  Does that mean they don't have

9    to prove all of these individual, specific actions were

10   searches and seizures?  Like the Government is now conceding

11   that if, as a factual matter, I can prove that they wrote data

12   to the air card, then that was a Fourth Amendment search and

13   seizure.  And if as a factual matter I can prove that they

14   deactivated encryption or read data from the air card, seized

15   stored data on the air card, as long as I can prove all of that

16   as a factual matter, then I don't have to actually prove that

17   those are Fourth Amendment searches and seizures, because they

18   are already admitting that they are.  Is that what the

19   Government --

20             THE court:  The way I think I would say it, and see if

21   this is right, Mr. Battista, is --

22             MR. BATTISTA:  I'm listening, Your Honor.

23             THE COURT:  Yeah, I want you to hear this.  Let's take

24   writing data to the air card as one example.  Let's take

25   increasing power consumption on the laptop as a second example.

1    And let's take locating the air card precisely in the apartment

2    as a third example.

3           It seems to me what the Government has conceded is

4    that any one of those three is sufficiently intrusive to

5    constitute a Fourth Amendment search if Mr. Rigmaiden had a

6    reasonable expectation of privacy in the apartment and the

7    laptop and the air card.

8           We are not going to come back if he, for example,

9    asserts that this increased power consumption on the computer

10   and argue, well, even if he had a reasonable expectation of

11   privacy in the computer, even if you find that, Judge,

12   increasing power isn't sufficiently intrusive to constitute a

13   Fourth Amendment search.  You are not going to make that

14   argument because you are conceding intrusiveness.  Is that

15   correct?

16          MR. BATTISTA:  Your Honor, I think that we would be

17   willing to concede that it is part of the search.  I mean, I

18   think we may end up arguing with the defendant as to whether or

19   not it's reasonable or not reasonable, whether or not it

20   exceeded the scope of the warrant or whatever.  But I think

21   the -- obviously two and three that the Court mentioned, we

22   would be conceding that it was -- that that was part of the air

23   card mission -- that would possibly have been part of the air

24   card mission.  And that we had conceded that all of the --

25   those aspects or similar aspects of the air card mission can be

1    considered a search by the Court.

2            Again, the writing data to the air card, I don't know,

3    because in my perspective, nobody has told me that that

4    actually happened.

5            THE COURT:  Here's where I see it coming up.  Let's

6    say in his motion to suppress he has three pages where he

7    argues that you had Verizon write data to the air card.  Let's

8    leave that one.  Let's say he has three pages saying that you

9    wrote data to the air card, your device did that, puts in all

10   of his facts.  It seems to me what you cannot come back and

11   argue is, even if that's true, Judge, writing data to an air

12   card is not sufficiently intrusive to constitute a Fourth

13   Amendment search.

14           MR. BATTISTA:  I don't think we would do that, Your

15   Honor, because -- I would agree that we would have to address

16   it in a different manner.  We've said --

17           THE COURT:  It seems to me then -- I'm sorry I jumped

18   in, but while my thought is still on this, what you could come

19   back and say is, even if that's true, he didn't have a

20   reasonable expectation of privacy in the air cards, or writing

21   data to it wasn't a Fourth Amendment violation, or you could

22   come back and say even if that's true, the warrant allowed us

23   to write data to the air card.  It was within the ambit of the

24   warrant authorized, and, therefore, it wasn't a Fourth

25   Amendment violation.

1          But you won't come back and say:  Writing data to an

2    air card isn't intrusive enough to be a search.

3          MR. BATTISTA:  Correct.

4          THE COURT:  Is this helping, Mr. Rigmaiden?

5          THE DEFENDANT:  Yes.  One issue I can think of is --

6    well, not all of the actions that I'm asserting is Fourth

7    Amendment search or seizure or both were listed in my motion

8    for discovery.  I think I listed all of them in my motion for

9    reconsideration of the page limit and time.  But there might be

10   a couple others.

11         So I mean, where does -- where does it end?  Obviously

12   I'm not going to just make up something that they -- the

13   Government could do and say they did this just because now they

14   are conceding everything is a Fourth Amendment search and

15   seizure.  But obviously there's a limit on what I can claim

16   before the Government says, like, well, even though we admitted

17   that there was a search, what defendant's claiming couldn't

18   ever possibly be a search.

19         So -- so it seems like there's some gray area there

20   with this whole --

21         THE COURT:  I think you're right.  And I don't know

22   how to get rid of that.  I mean, if you -- you won't do this,

23   but let's say you argued in your motion to suppress that when

24   they were conducting the air card locating mission, they were

25   driving a vehicle, and driving a vehicle while you are

1    communicating with an air card is a search, the act of driving

2    the vehicle.  And the warrant didn't authorize them to drive a

3    vehicle; therefore, by doing this from a mobile vehicle, they

4    violated the Fourth Amendment.  If you make that argument, I

5    don't think I'm going to say, well, the Government has conceded

6    that driving a vehicle is part of the search.

7            THE DEFENDANT:  Yeah.

8            THE COURT:  Now, I don't know where, if at all, we get

9    into the real gray area, and that seems to be an example of

10   something with a silly argument that clearly wouldn't have to

11   do with the Fourth Amendment.  It seems to me that writing data

12   to the air card is something they are clearly conceding is

13   sufficiently intrusive for a search.

14           What might be in between those two, I don't know.  I'm

15   pretty confident you aren't going to make silly arguments.

16           My general assumption going into this motion is going

17   to be that intrusiveness is not an issue.  The Government isn't

18   going to come back and say:  Well, that part of what we did

19   isn't a search because it's not intrusive.  They are going to

20   make their Fourth Amendment arguments on other grounds:  Either

21   the warrant covered it or there was a reasonable expectation of

22   privacy or some other similar argument.

23           I'm guessing without us seeing your exact motion, this

24   is about as specific as we can get.  But I think it does

25   address your concern that you were going to have to prove

1  intrusiveness on each of the elements of the search just to

2  make sure you -- you didn't fail to cover four or five where

3  they were going to contest intrusiveness.

4          THE DEFENDANT:  So I should cover that then?

5          THE COURT:  No, I think you should not.  I think the

6  assumption going in should be that the actions they took as

7  part of the air card locating mission were sufficiently

8  intrusive to constitute a search.  And then the unanswered

9  question will be was it a Fourth Amendment violation or, you

10 know, which we will look at, did you have a reasonable

11 expectation of privacy.  Was it covered by the warrant,

12 et cetera.

13         THE DEFENDANT:  One final point.  What about the

14 historical cell site information that they got from Verizon

15 using Stored Communications Act court order?  Are they

16 conceding that was a Fourth Amendment search as well and then

17 they are going to rely on the fact that maybe an argument

18 saying I don't have a reasonable expectation of privacy in the

19 records because they are in the possession of a third party, or

20 do I actually need to prove that obtaining those type of

21 records was a Fourth Amendment search?

22         THE COURT:  Well, that one is easy in my view.  They

23 seized the information.  If you have a reasonable expectation

24 of privacy in that information, it was a Fourth Amendment

25 seizure.

1          THE DEFENDANT:  Okay.

2          THE COURT:  I don't think they are going to come back

3    and argue the Government acquiring information is not a

4    seizure.  What they are going to say is this was information in

5    the hands of Verizon.  He didn't have a reasonable expectation

6    of privacy in that information once it was in the hands of

7    Verizon.  Or they're going to argue we were authorized by the

8    court order to get the information from Verizon.

9          Am I correct on that, Mr. Battista?

10         MR. BATTISTA:  That's correct, Your Honor.  Then there

11   is also obviously by statute and rule, there are certain

12   procedures that the Government has to follow in order to obtain

13   this data.  And then so there will be some other additional

14   legal arguments that the defendant can raise and then there's

15   other additional legal responses that we can raise.

16         THE COURT:  All right.  Well, I think hopefully that

17   helps you, Mr. Rigmaiden, in knowing what it is you need to do

18   with intrusiveness.  It seems to me that really won't be an

19   issue in the case.

20         THE DEFENDANT:  Okay.

21         THE COURT:  If we get to a gray area, I'm not going

22   to -- I'm not going to say:  Well, you didn't prove

23   intrusiveness in this gray area, so I'll at least give you an

24   opportunity to make that argument before I do that if there is

25   a gray area that we haven't covered, but I really don't think

1    there will be one.

2              THE DEFENDANT:  All right.

3              THE COURT:  If we went another two and a half months,

4    that would mean you wouldn't be filing this motion until the

5    end of April, right?

6              THE DEFENDANT:  Yes.

7              THE COURT:  As I indicated in my order, my concern is

8    then how long this case has gone on and how long you've been

9    incarcerated.  I mean, what we've done for the last year I

10   thought had to be done.  There was a lot of technical work.

11   But does what we've talked about on intrusiveness shorten that

12   time line any for you?

13             THE DEFENDANT:  I don't think it shortens the time

14   line because I've already taken a lot of notes on all those

15   issues, but I think it shortens the pages -- the amount of

16   pages definitely.  I'm more concerned with having the time I

17   need to write the motion in the way that I think it should be

18   written.  I'm more concerned with that than getting to trial

19   sooner than later.

20             So I know that I've been incarcerated a while and

21   there's speedy trial issues, but I don't think that it's really

22   an issue just because the suppression motion is a big part of

23   my defense and I need time to write the motion.

24             THE COURT:  Any thoughts, Mr. Battista?

25             MR. BATTISTA:  Your Honor, let me state on the record:

```
 1     My -- and I provided these to the defendant.  My guideline
 2     calculations for the case assuming convictions is well over the
 3     amount of time that the defendant's been in custody.
 4     Obviously, a very significant concern would be if the defendant
 5     was in custody and a guideline calculation showed, let's say,
 6     that if he had pled straight up to the Indictment, he would
 7     have a reasonable chance of getting out of custody in March of
 8     this year.  That would obviously be a concern.
 9            For the record, and I provided calculations to the
10     defendant.  I think in this case, if the Government were
11     successful and the defendant were convicted on all counts, the
12     guidelines would recommend a sentence substantially longer than
13     the time that the defendant's been in custody.  I mean, we are
14     always concerned about having a defendant being in custody any
15     additional time beyond what he would be, had he been convicted.
16            The defendant is representing himself.  The defendant
17     is the one that's doing the time.  The defendant is the one
18     who's asking the Court for additional time.  I'm not going to
19     object to the defendant's request in light of the fact that
20     he's in custody and has been in custody for such a significant
21     amount of time.  If he's willing to waive, particularly any
22     speedy trial act concerns that he has, because he needs the
23     time, I -- I have no objection.  I mean, obviously I don't want
24     to be two, three years from now in front of the Ninth Circuit
25     in front of a three-judge panel where there's serious concerns
```

1    about why did this case take so long.  That's my only concern.

2         If the defendant wants the time and he's -- and it

3    sounds like he's fully willing to accept the situation that

4    he's in.  I would not object to the additional time if he says

5    in good faith that he needs it.

6         THE COURT:  All right, I'm going to extend the

7    deadline for the motion to April 27th, which will give you the

8    additional two and a half months, but with the expectation

9    that's a firm deadline.

10        In terms of page numbers, can you do it in 75 pages,

11   Mr. Rigmaiden?  I will tell you, I have never had a brief in a

12   criminal case that was longer than 30 pages that I can

13   remember.  That's why when I went to 50, I feel like I was

14   being generous.

15        THE DEFENDANT:  Well, I think you were if it was just

16   the issues --

17        THE COURT:  I'm not asking you to agree that I'm

18   generous.

19        THE DEFENDANT:  All right.

20        THE COURT:  What I am asking you is can you do it in

21   75 pages, do you think?

22        THE DEFENDANT:  I don't know.  I mean, there's ten

23   different documents I'm challenging.  And I haven't developed

24   all the arguments yet.  So it's difficult for me to say.  I

25   can -- I can try.  I mean, I can try for 75 pages.  I think

```
 1    that now most of it is going to be just proving the facts more
 2    than anything -- I mean there's going to be a reasonable
 3    expectation of privacy and then proving all the facts I need to
 4    prove to prove the specific actions that they've already
 5    conceded are going to be searches and seizures.  And then I
 6    guess, there's going to be a good faith section and then
 7    suppression, why suppression is merited section.  But there's
 8    still -- there's still the -- the warrant search of the
 9    apartment arguments that I'm raising on that.  And I just
10    haven't really plotted out everything yet for me to really say.
11            THE COURT:  All right.  Well, I'm going to increase it
12    to 75 pages and set that as the goal.  I want you to be able to
13    make your argument.  But I want to force you to be as
14    economical as you can be in laying it out.
15            One of the things you said in there, as you talk about
16    what needs to be included is a section on why it needs to be
17    suppressed.  I don't know if you were meaning because by that
18    that you need to show me that the evidence would be
19    particularly prejudicial or something if it came to trial.  You
20    don't have to show that.
21            You show a Fourth Amendment violation, it gets
22    suppressed.  It doesn't matter on, you know, how weighty the
23    evidence is.  So I don't think you need to -- and you probably
24    already know this.  But you don't need to put in 15 pages about
25    how suppression of this particular evidence would be
```

1   particularly helpful to the defense.  You just have to show a

2   Fourth Amendment violation and suppression is automatic.

3            THE DEFENDANT:  With no good faith, correct?

4            THE COURT:  Well, yeah, I mean, there's a good faith

5   exception.

6            THE DEFENDANT:  Yeah.

7            THE COURT:  Which means there is a violation of the

8   Fourth Amendment.

9            THE DEFENDANT:  Okay.

10           THE COURT:  But if I find at the end of the day a

11  violation, then the information obtained as a result of that

12  violation or that reasonably flowed from the violation gets

13  suppressed.

14           THE DEFENDANT:  Okay.

15           THE COURT:  So that's not -- I don't think that needs

16  to be a lengthy section of the motion.

17           All right.  Last issue I want to mention before we

18  excuse the Government is the trial date.  We have a trial date

19  of February 7th.  Were you planning to file a motion to

20  continue in light of the scheduling issues we've talked about,

21  Mr. Rigmaiden?

22           THE DEFENDANT:  Yes, Your Honor.

23           THE COURT:  Okay.  Why don't you go ahead and file

24  that and I'll obviously grant it so that we allow the time

25  needed to deal with the suppression issue.

1           Are there other things that we need to take up while

2     the Government is here?

3           MR. BATTISTA:  The only thing I'll say, Judge, is that

4     I won't know how much time we will need to respond to the

5     motion obviously until we see it.  But what I would just

6     suggest at this point is that once the defendant files it, I

7     will immediately circulate it and then I'll file a request for

8     a time that we think is appropriate.  Because I don't think it

9     would be appropriate to pick a time right now because I have

10    absolutely no idea how long it's going to take.

11          THE COURT:  I agree.  I agree.

12          MR. BATTISTA:  But I have nothing further.

13          THE COURT:  Anything you want to raise while the

14    Government is here, Mr. Rigmaiden?

15          THE DEFENDANT:  No, I have nothing further.

16          THE COURT:  Thank you for coming in.  We will excuse

17    the Government.

18          (Ex parte sealed proceedings were held.)

19                         *     *     *

20

21

22

23

24

25

1

2                        C E R T I F I C A T E

3

4

5

6

7          I, MERILYN A. SANCHEZ, do hereby certify that I am

8    duly appointed and qualified to act as Official Court Reporter

9    for the United States District Court for the District of

10   Arizona.

11         I FURTHER CERTIFY that the foregoing pages constitute

12   a full, true, and accurate transcript of all of that portion of

13   the proceedings contained herein, had in the above-entitled

14   cause on the date specified therein, and that said transcript

15   was prepared under my direction and control.

16

17

18         DATED at Phoenix, Arizona, this 28th day of February,

19   2012.

20

21

22                              S/Merilyn A. Sanchez

23                              MERILYN A. SANCHEZ, CRR

24

25