Daniel Rigmaiden
Agency # 10966111
CCA-CADC
PO Box 6300
Florence, AZ 85132
Telephone: none
Email: none

Daniel David Rigmaiden
Pro Se, Defendant

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>v.<br><br>Daniel David Rigmaiden, et al.,<br><br>    Defendant. | No. CR08-814-PHX-DGC<br><br>MOTION FOR EXTENSION OF TIME TO FILE MOTION TO SUPPRESS |

Defendant, Daniel David Rigmaiden, appearing *pro se*, respectfully submits this *Motion For Extension Of Time To File Motion To Suppress*. The court ordered that the defendant file his *Motion To Suppress* by April 27, 2012. The defendant respectfully requests an additional 60 days to file his *Motion To Suppress*. The defendant's request is based on four primary reasons: (1) the defendant had to spend considerable time completing a task the government indicated that it would complete, (2) the government recently provided the defendant with new discovery that he only gained access to on April 8, 2012, (3) the government recently revealed a brand new Fourth Amendment violation that the defendant now needs to research and address in his *Motion To Suppress*, and (4) the defendant's court-appointed defense have not been providing him with the assistance he needs in order to meet the April 27, 2012 motion deadline. Reasons Nos. 1-3 are explained below. Reason No. 4 is explained in a supplemental *ex parte* memorandum considering it deals solely with the defendant's court-appointed defense. *See Ex Parte Memorandum RE Defense Problems*.

### A. Reason No. 1.

During the January 27, 2012 status conference, the Court asked the following question:

> The first question I had for you and for the Government is, can -- can the air card be imaged like a computer? Can the -- can the Government image all of the data on the air card and give it to you like they would a hard drive, which would at least accomplish the first part of what you want to do in terms of retrieving data.
>
> *January 27, 2012 Status Conference, Partial Transcript of Proceedings* [THE COURT], p. 3-4.

In response to the Court's question, the government stated the following:

> So if it is possible to image it, we will obviously -- I will -- the only thing at this point is I'll ask my experts and see if it's possible and then communicate with the defendant about that, how he would like to proceed.
> …
> Well, I could look into the possibility whether or not on an independent matter it's even possible for the information -- any type of information to be written onto the air card. And I could also look into the possibility of whether or not a test can be conducted on the air card to determine whether or not that's even possible.
>
> *Id.* [MR. BATTISTA], p. 5 and p. 7-8.

The defendant waited six weeks for the government to complete the above task. During that time period, the government did not contact the defendant to report back on the task Mr. Battista indicated the government would complete. Nor did the government inform the defendant that determining whether the aircard can be imaged, or whether data can be written to the aircard, is too difficult a task for the government to complete or that the government has chosen to not complete the task for some other reason. Because six weeks went by and the government did not contact the defendant or respond to any of his other pending inquiries, the defendant began to work on the task himself. At the approximate time the defendant completed the task, the defendant received a letter from the government with the following report:

> Item 6 – Response to the Court's inquiry as to whether: (1) the subject aircard can be mirrored like a computer, and (2) data from the subject aircard can be downloaded? In seeking an answer to this question, FBI Special Agent

>Richard Murray contacted Verizon Wireless and on March 5, 2012, via voice mail, Verizon Wireless representative Marko Denton advised Special Agent Murray that the answer to these two questions is simply no.
>
>March 30, 2012 letter from AUSA Battista to the defendant, p. 1-2.

The FBI's virtually effortless attempt at completing the task, which involved mere phone tag with a Verizon Wireless employee who's technical duties begin and end at assembling spreadsheets,[1] produced lackluster results. In other words, the government's answer is "simply wrong."[2] Fortunately, the correct answer is contained in the defendant's *Memorandum Regarding Imaging The Aircard*, which is supported by conflict-free and undisputed technical documentation.

Completing the task himself took the defendant considerable time and effort that significantly cut into his suppression motion preparation time. The defendant is incarcerated with no formal technology training and the government would have been better apt to complete the task considering it has an army of FBI technical agents and engineers at its disposal in Quantico, VA. To make up for lost time spent doing the job the government said it would do (but didn't),[3] the defendant needs additional time to complete his *Motion To Suppress*.

**B.    Reason No. 2.**

The government provided the defendant's shadow counsel, Philip Seplow, with discovery on Mach 22, 2012 and March 30, 2012. The defendant's court-appointed defense

---

1. Mr. Denton's job at Verizon Wireless is to analyze cell site site information and compile that information into spreadsheets for law enforcement subpoena/order/warrant responses. Mr. Denton's job does not require any 1xEV-DO air interface programming experience or electrical engineering experience—as would be needed in order to adequately answer FBI Agent Murray's inquiry.

2. Additionally, with respect to contacting Verizon Wireless, there is a clear conflict of interest considering Verizon Wireless may (*see* will) be civilly liable for writing data to the aircard and reprogramming the aircard in order to facilitate the FBI's use of Harris equipment.

3. Whether the government had a legal obligation to complete the task is irrelevant. The task needed to get done (correctly) regardless and the defendant relied in good faith on Mr. Battista's assurance that the government would complete the task. Also, the defendant had a good faith belief that the government would put forth a **legitimate** effort to adequately look into the issue.

1  did not bring the defendant this discovery until April 6, 2012[4] and the defendant was not
2  able to view it until April 8, 2012.  Because the discovery provided relates to suppression
3  issues, the defendant needs additional time to review the new discovery and determine how it
4  impacts his suppression arguments.

### C. Reason No. 3.

6  The government recently revealed a brand new Fourth Amendment violation that
7  relates to the seizure of data from hard drives obtained from apartment No. 1122.  The
8  government searched apartment No. 1122 pursuant to the Northern District of California 08-
9  70460 warrant.  *See Submission Of Materials Related To Search Warrant No. 08-70460,*
10 *Authorized By Magistrate Judge Patricia V. Trumbull, Northern District Of California, On*
11 *July 30, 2008* (Dkt. #464-1).  The warrant authorized seizure of "[a]ll data stored within any
12 and all computer systems, including any related electronic storage media... [f]or the purpose
13 of searching for items 2-19 below:"  *Id.*, p. 2 (Dkt. 464-1, p. 6).  The search warrant then lists
14 in paragraphs 2-19 the specific subjects upon which a file must relate in order for the
15 government to seize the file under the warrant.  The search warrant also contains a
16 "Computer Search Protocol For The Northern District Of California" wherein the
17 government was required to "complete an off-site search of a device that agents removed in
18 order to search for evidence of crime as promptly as practicable and no later than thirty (30)
19 calendar days after the initial execution of the warrant...."  *Id.*, p. 2, (Dkt. 464-1, p. 17).

20 While at apartment No. 1122 at the time of the search, IRS-CI Agent Tracy L. Daun
21 conducted an electronic search of one "virtual drive" for data meeting the descriptions listed
22 in paragraphs 2-19 of the search warrant.  After physically seizing all hard drives from
23 apartment No. 1122, IRS-CI Agent Daun conducted further offsite searches of all the
24 physical hard drives and virtual drives.  During her searches, IRS-CI Agent Tracy Daun
25 made a PDF summary of the files that fell within the parameters of the search warrant and
26 the items to be seized.  Once finished, the search warrant had been completely executed with

---

4.  Even while Mr. Seplow visited CCA-CADC at least twice between March 22, 2012 and April 5, 2012, he did not bring the defendant the discovery delivered to Mr. Seplow's office.  Because of such nonsense, the defendant had to wait weeks to receive his discovery.

*MOTION FOR EXTENSION OF TIME TO FILE MOTION TO SUPPRESS*
*CR08-814-PHX-DGC*

- 4 -

respect to searching for and seizing digital data. However, more than three years after the original search of the hard drives, IRS-CI agent Daun searched the hard drives again and provided additional files to AUSA Battista. Although the warrant specifically forbids such activity, the government continues to access the seized hard drives (or the images) and continues to pull additional evidence from the seized hard drives (or the images) not listed in IRS-CI Agent Daun's original list of seized data. The defendant needs additional time to investigate this Fourth Amendment violation that was only recently confirmed on April 8, 2012 via a report from IRS-CI Agent Daun.[5] Although the issue seems straightforward as explained above, it is both technically and legally complex—so much so that the government currently does not understand the violation and continues to access data that is legally off limits.

This new Fourth Amendment violation is a perfect example of how the government is using the huge laundry list of Fourth Amendment violations in order to gain a tactical advantage during the prosecution stage of the case. Whether deliberate or not (the defendant does not care), this is the current situation: (1) conduct an investigation and engage in a massive amount of Fourth Amendment violations spanning ten different court orders/subpoenas/warrants, (2) arrest the defendant, (3) bog the defendant down with having to litigate all the Fourth Amendment violations in hopes that he will not have the time and resources to address all of them, (4) continue to engage in Fourth Amendment violations even during the prosecution stage—further bogging the defendant down with work, and (5) in the end, hopefully numerous Fourth Amendment violations will go unchallenged because the defendant will not have the time, resources, number of typed pages, and Court attention to challenge even a *portion* of them. If the government is permitted to prevail via an application of the above plan (whether deliberate or otherwise) then it will be sending the following message: "When the government conducts an investigation, it is best to completely disregard the Fourth Amendment in as many possible ways as can be managed—this way,

---

5.   The report was provided to Mr. Seplow's office much sooner (via discovery) but it was only brought to the defendant recently.

1  hopefully, enough violations will go unchallenged (due to later judicial proceeding
2  limitations) resulting in a Fourth Amendment defense being rendered a non-issue."

### D. Reason No. 4.

4  The defendant's supplementary *Ex Parte Memorandum RE Defense Problems*
5  discusses the fourth reason the defendant is seeking additional time to file his *Motion To*
6  *Suppress*. The noted *ex parte* memorandum is hereby incorporated into this motion by
7  reference.

8  \* \* \* \* \*

9  Based on the points and authorities set forth herein, the defendant respectfully
10  requests that this motion be granted and the proposed order be issued.

11  This motion was drafted and prepared by the *pro se* defendant, however, he authorizes
12  his shadow counsel, Philip Seplow, to file this motion on his behalf using the ECF system.
13  The defendant is appearing *pro se* and has never attended law school. The defendant's
14  filings, however inartfully pleaded, must be liberally construed and held to less stringent
15  standards than formal pleadings drafted by lawyers. *See* Haines v. Kerner, 404 U.S. 519, 520
16  (1972).

17  LRCrim 12.2(a) requires that the undersigned include the following statement in all
18  motions: "Excludable delay under 18 U.S.C. § 3161(h)(1)(D) will occur as a result of this
19  motion or of an order based thereon."

20  ///
21  ///
22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

*MOTION FOR EXTENSION OF TIME TO FILE MOTION TO SUPPRESS*
*CR08-814-PHX-DGC*

1   Respectfully Submitted:

3   PHILP SEPLOW, Shadow Counsel, on behalf of DANIEL DAVID RIGMAIDEN, Pro Se Defendant:

6   s/ Philip Seplow
    Philip Seplow
    Shadow Counsel for Defendant.

9   ///
10  ///
11  ///
12  ///
13  ///
14  ///
15  ///
16  ///
17  ///
18  ///
19  ///
20  ///
21  ///
22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

*MOTION FOR EXTENSION OF TIME TO FILE MOTION TO SUPPRESS*
*CR08-814-PHX-DGC*

**CERTIFICATE OF SERVICE**

I hereby certify that on: _____ I caused the attached document to be electronically transmitted to the Clerk's Office using the ECF system for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Taylor W. Fox, PC
Counsel for defendant Ransom Carter
2 North Central Ave., Suite 735
Phoenix, AZ 85004

Frederick A. Battista
Assistant United States Attorney
Two Renaissance Square
40 North Central Ave., Suite 1200
Phoenix, AZ 85004

Peter S. Sexton
Assistant United States Attorney
Two Renaissance Square
40 North Central Ave., Suite 1200
Phoenix, AZ 85004

James R. Knapp
Assistant United States Attorney
Two Renaissance Square
40 North Central Ave., Suite 1200
Phoenix, AZ 85004

By: s/ Daniel Colmerauer
(Authorized agent of Philip A. Seplow, Shadow Counsel for Defendant; See ECF Proc. I(D) and II(D)(3))

*MOTION FOR EXTENSION OF TIME TO FILE MOTION TO SUPPRESS*
*CR08-814-PHX-DGC*