Daniel Rigmaiden #10966111
CCA-CADC
PO Box 6300
Florence, AZ 85132

Daniel Rigmaiden, defendant
Pro se

THIS DOCUMENT IS **NOT** IN PROPER FORM ACCORDING TO FEDERAL AND/OR LOCAL RULES AND PRACTICES AND IS SUBJECT TO REJECTION BY THE COURT.

REFERENCE 514
(Rule Number/Section)

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| United States of America, Plaintiff, v. Daniel Rigmaiden, et al., Defendant. | No. CR08-814-PHX-DGC<br><br>Motion Requesting The Court To Order Mr. Horne To Do His Job Or, In The Alternative, To Dismiss The Case With Prejudice. |
|---|---|

Defendant, Daniel David Rigmaiden, appearing pro se, respectfully requests that the Court order his court-appointed paralegal, Mark Horne, to do his job or, in the alternative, to dismiss the case with prejudice because the defendant is unable to prepare an

1

effective defense otherwise.

At first Mr. Horne was serious about doing his job and assisting the defendant. However, after the January 27, 2012 court hearing, Mr. Horne's performance decreased to a point where it caused, and continues to cause, a significant negative impact on the defendant's defense preparation efforts. A primary reason why the defendant did not make the April 27, 2012 deadline to file his Motion To Suppress was because Mr. Horne developed a severe procrastination problem. Tasks that would take mere minutes to complete by any adult having ~~an~~ average intelligence took Mr. Horne weeks to complete — if at all. The defendant advised the Court of this problem via a memorandum (Dkt. #808 [lodged proposed {sealed}]) in support of his Motion For Extension Of Time To File

Motion To Suppress (Dkt. # 806). The Court granted the defendant's motion in part and the defendant expected Mr. Horne to shape up his act so that the defendant could meet the new June 1, 2012 deadline. However, even after the defendant discussed Mr. Horne's performance problems with Mr. Horne, and even after the defendant's shadow counsel, Philip Seplow, discussed Mr. Horne's performance problems with Mr. Horne on numerous occasions, nothing has changed. As explained below, Mr. Horne continues to exhibit the same lack of responsibility and lack of professional maturity that exhibited prior to the court granting the defendant's motion for additional time, in part.

    A primary reason why the defendant was unable to meet

the prior April 27, 2012 deadline was because he did not have a 1xEV-DO cellular data protocol expert to assist in writing essential factual claims in support of (1) the FBI using its StingRay and KingFish to download data from the aircard, (2) the FBI using its StingRay and KingFish to write data to the aircard, (3) the FBI using its StingRay and KingFish to deactive standard signaling encryption while communicating with the aircard, and (4) other factual claims not mentioned here -- all of which were <u>not</u> addressed in the defendant's Discovery Motion (Dkt. #592). Because the defendant did not have a 1xEV-DO cellular data protocol expert between January 27, 2012 and April 27, 2012, he was forced to conduct hundreds of hours of research

into thousands of pages of technical standards in order to obtain evidence proving the above claims. This delay was the result of Mr. Horne failing to do his job. The defendant began adamantly instructing Mr. Horne to follow the defendant's very simple instructions on locating an expert as of March 1, 2012. The defendant had previously identified 4 individuals who were likely qualified to be experts in the defendant's case. During a March 1, 2012 legal visit at CCA-CADC, the defendant provided to Mr. Horne the names of the 4 individuals and information on how to contact them. The defendant instructed Mr. Horne to contact the experts immediately and to also follow the defendant's very simple instructions on how to

5

identify and ~~[struck out]~~ locate additional potential experts. From March 1, 2012 to April 13, 2012, Mr. Horne did not contact any of the experts despite repeated requests by the defendant to do so. Additionally, Mr. Horne did not make any effort to follow the defendant's instructions on identifying additional experts.

Because Mr. Horne was not doing his job, the defendant begged Mr. Seplow's assistant, Dan Colmeraver, to complete the defendant's instructions on identifying additional experts and he asked Mr. Colmeraver to ask Mr. Seplow if he would contact the potential experts on the defendant's list. The defendant explained to Mr. Colmeraver that he was not going to make the Court's April 27, 2012

6

deadline to file his Motion To Suppress because he does not have a 1xEV-DO cellular data protocol expert and that he is filing a motion for additional time to file the motion. Mr. Colmerauer then spent approximately two hours following the defendant's instructions and then mailed the defendant the resulting information. From the information provided by Mr. Colmerauer, the defendant was able to identify 7 additional potential experts to be contacted.

On April 13, 2012, the defendant gave Mr. Horne the updated list of possible experts (the prior 4 plus the new 7) and instructed Mr. Horne to contact the experts immediately to inquire as to whether any of them have sufficient knowledge in 1xEV-DO and whether any of them would be

interested in becoming a defense expert. The defendant also advised Mr. Horne that he was filing a motion requesting additional time to file his Motion To Suppress with a primary reason being that Mr. Horne does not complete tasks within a reasonable amount of time, which caused significantly more work for the defendant. The defendant reiterated to Mr. Horne that he needs to have an expert appointed and that Mr. Horne has been ignoring the defendant's instructions to contact and locate experts for 43 days. The defendant and Mr. Horne agreed to meet again at CCA-CADC on April 24, 2012 -- allowing 11 days for Mr Horne to contact the list of 11 potential experts and receive information regarding the defendant's inquiries.

On April 18, 2012, the defendant's Motion For Extension Of Time To File Motion To Suppress (Dkt. #806) and the defendant's supplementary ex parte memorandum (Dkt. #808) were filed. Mr. Horne read the defendant's filings on that date. On April 24, 2012, Mr. Horne visited the defendant at CCA-CADC and informed him that he had only begun contacting the 11 potential experts on April 23, 2012 and that none had gotten back to him. Even after requesting additional time to file his motion to suppress based largely on Mr. Horne's failures at being responsible, Mr. Horne still waited until the last minute (i.e., the day before) to even begin on the task allocated to him -- a task originally given to him <u>53 days prior</u> on March 1, 2012.

During the April 24, 2012 legal visit at CCA-CADC, the defendant gave Mr. Horne a list of tasks to complete relating to the defendant's Motion To Suppress. The list consisted of mostly "exact cite" requests where all Mr. Horne needed to do was click on links embedded in a pdf file or conduct specified keyword searches. The defendant estimates that the tasks would take 3 hours of work for any adult with average intelligence to complete. On May 3, 2012, Mr. Horne returned to CCA-CADC and informed the defendant that he had not completed any of the tasks <u>given to him 9 days prior</u> (on April 24, 2012). Mr. Horne's only explanation was to ask the defendant if he was angry. During the legal visit, the defendant also attempted to go through the list

of 11 experts with Mr. Horne to determine who was contacted, how each potential expert was contacted, where each potential expert was contacted, what was the result of the contact, and what information was gathered on each potential expert. Mr. Horne had records on only <u>one</u> of the 11 experts and could only recall the details of contacting one other expert from the list. The one expert of which Mr. Horne collected information is not a viable expert because of a scheduling conflict.

   The defendant already missed the original April 27, 2012 deadline to file his Motion To Suppress. Due to Mr. Horne's extreme procrastination and failures at completing simple tasks, the defendant fears that he will not meet the new

June 1, 2012 deadline. The defendant has sought to mediate Mr. Horne's performance issues on numerous occasions. The defendant has had discussions with Mr. Horne regarding his performance and filed a memorandum explaining only some of the <u>numerous logged occurances</u> of Mr. Horne failing to do his job. (Dkt. #808). The defendant's shadow counsel, Mr. Seplow, has also spoken with Mr. Horne on multiple occasions regarding the issue. The most recent meeting between Mr. Horne and Mr. Seplow regarding Mr. Horne's job performance was on May 3, 2012. Mr. Horne does not get the message, nothing has changed since Jan 27, 2012, and Mr. Horne's lack of responsibility and professional immaturity

~~continuously~~ continues to sabotage the defendant's defense preparation efforts.

If the ~~court~~ defendant does not meet the June 1, 2012 deadline to file his Motion To Suppress then it will largely be due to Mr. Horne's failures as a court-appointed paralegal. This motion and the defendant's prior filing at Dkt #808 provide only a mere taste of the documented failures. Supplementary evidence will follow. In order to adequately ~~~~ update the record, and in addition to extensive documentary evidence that the defendant will soon place on the record backing up all of the defendant's claims made in this motion, the defendant also wishes to question Mr. Seplow and Mr.

13

Colmeraver under oath regarding how Mr. Horne's job performance has acted to sabotage the defendant's efforts to meet the Court's deadline. Mr. Seplow and Mr Colmeraver are first hand witnesses. The defendant requests that the hearing be ex parte as it will likely involve discussion of defense strategies and other privileged information. If the defendant does not make the June 1, 2012 deadline to file his Motion To Suppress, thus destroying his entire defense of which he has worked on for four years, then he plans to make the issues discussed in this motion primary points on appeal if the defendant ends up being convicted. Therefore, it is very important that the record be adequately developed in regards to Mr. Horne's

failures as a court-appointed paralegal.

If the Court does not want to grant the defendant the relief he requests then the defendant wants Mr. Horne ordered removed from the defense. Mr. Horne is causing more harm than good. Mr. Horne has created a situation where the defendant is unable to effectively assess what his (i.e., the defendant's) limitations are while preparing his defense. When Mr. Horne indicates that he will complete a task by a certain time, the defendant relies on the fact that the task will be completed. The defendant prepares and plans his defense based on what Mr. Horne indicates he will get done. When the tasks do not get done, it requires that the

15

defendant change his defense strategies to be compatible with Mr. Horne's inadequacies. Having to constantly change defense strategies to compensate for never ending empty promises from Mr. Horne is a dire due process violation that the defendant will no longer tolerate. Having Mr Horne appointed to the defense while failing to do his job is only creating the illusion that the defendant is receiving the defense resources he needs in order to prepare his pro se defense.

    Mr. Horne's lack of responsibility and professional immaturity is resulting in the defendant being unable to quickly prepare his pro se defense as desired by the Court. Therefore, the defendant respectfully requests that the

Court order Mr. Horne to do his job (which means (1) Mr. Horne completing tasks within a reasonable amount of time, and (2) Mr. Horne actually completing the tasks he claims he will complete and by the date/time specified) or, in the alternative, dismiss the case with prejudice.

Excludable delay will result.

Respectfully Submitted:
May 6, 2012
Daniel Reynolds

### CERTIFICATE OF SERVICE

Original to: U.S. District Court, Phoenix - via U.S. Postal Service.

(other parties not served because no copy service available at CCA-CADC)

May 6, 2012
By: Daniel Reynolds