Daniel Rigmaiden #10966111
CCA-CADC
PO Box 6300
Florence, AZ 85132

THIS DOCUMENT IS NOT IN PROPER FORM ACCORDING TO FEDERAL AND/OR LOCAL RULES AND PRACTICES AND IS SUBJECT TO REJECTION BY THE COURT.
REFERENCE _S.Y; 7.1(a)(3)_
(Rule Number/Section)

___ FILED    ___ LODGED
___ RECEIVED ___ COPY

MAY 1 1 2012

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

Daniel Rigmaiden, defendant
Pro se

2:08-CR-814-DGC

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| United States of America, | MOTION FOR RECONSIDERATION |
| Plaintiff, | OF COURT'S ORDER AT |
| v. | Dkt. # 810 |
| Daniel David Rigmaiden, et al., | |
| Defendant. | |

Defendant, Daniel David Rigmaiden, appearing pro se, respectfully requests that the Court reconsider its Order at Dkt. # 810. The defendant filed a motion (Dkt. # 806) and a supplementary ex parte memorandum (Dkt. # 808) requesting that the April 27, 2012 deadline to file his Motion To Suppress be extended 60 days. Although the defendant continues to strive to make the new deadline, he does not think it is allowing for enough time. The Court based its ruling at Dkt. # 810 on various misconceptions and

1

errors of fact. Through this motion, the defendant is requesting that the Court reconsider its order and issue a new order requiring that the defendant ~~mumble~~ file his Motion To Suppress only after he is able to (1) locate a competent and qualified 1xEV-DO cellular data protocol expert that can review his motion for factual errors, and (2) finish (not "perfect" as the Court erroneously assumes the defendant is doing) the arguments section of his Motion To Suppress. The defendant also requests an immediate ex parte hearing to determine if the defendant's court-appointed paralegal and/or private investigator and/or shadow counsel have any intension of following the defendant's very simple instructions on how to identify, locate, and contact experts. In support of this motion, the defendant has instructed his shadow counsel's assistant, Dan Colmeraver, to file a "Submission of Doduments In Support Of Motion For Reconsideration of Doc. No. 810," containing 7,058 pages of 1xRTT and 1xEV-DO technical standards — hereby incorporated into this motion by reference. As will be explained below, the defendant insists that the Court read the entire 7,058 pages, in addition to some other technical standards, prior to ruling on this motion. For the Court's convenience, the defendant has instructed Mr. Colmeraver to print out the 7,058 pages and have them delivered to the Court's chambers.

In the Court's order at Dkt. #810, the Court stated the following:

> "The Court is persuaded that Defendant has ample information and legal arguments to support his motion, and that the time has come to resolve Defendant's motion to suppress. Doc. 723." Id. p. 2.

The Court is under the impression that all the defendant needs to do in order to file his motion to suppress is to "copy and paste" the factual claims and arguments out of the defendant's motion for discovery (Dkt. #592). If the defendant does what the Court wants then the defendant will be committing perjury. The evidence in support of the defendant's arguments contained in his discovery motion (relating to cellular communications protocols) is inapplicable to the FBI's aircard locating mission and otherwise not the right evidence. At the time the defendant prepared and filed his discovery motion, he was operating under the advisement of an incompetent mobile telecommunications expert. The defendant brought this issue to the Court's attention and filed a motion requesting that the expert be removed from the case. Apparently, the Court agreed with the defendant because the expert was ordered removed from the defense by the Court. The removal of the expert occurred after the defendant

filed his discovery motion at Dkt. #592.

Prior to the defendant writing and filing, [his discovery motion] the incompetent expert identified the wrong cellular protocol standards and concepts and insisted that they were relevant to the aircard's data connection operations. The expert's mistakes caused the defendant great confusion. [In support of the above claims, the defendant will file, ex parte, the "dear John" letter sent to the expert by the defendant and the expert's response.] Prior to his removal, the expert erroneously identified 1xRTT standards (i.e., cdma2000 voice protocols) and advised the defendant that they applied to the aircard's data connection. Based on this incorrect information (the aircard's data connection actually operates on 1xEV-DO standards, not 1xRTT), the defendant prepared his entire discovery motion based on cellular communications protocol evidence that was almost entirely irrelevant and inapplicable to the operations of the aircard's data connection. Now that the defendant knows that the bulk of the cellular communications protocol evidence referenced in his discovery motion does not apply to the FBI's aircard locating mission [Note: All other technical evidence referenced in the defendant's discovery motion (i.e., relating to geolocation operations of the FBI's wireless device locators) was, and remains, factually accurate -- with the exception of the man-in-the-middle attack (see infra).], if the defendant were to simply

4

"copy and paste" his discovery motion into his suppression motion then he would be lying, manipulating the prosecution, and committing perjury. The defendant chose to do none of the above and instead chose to correct the technical errors. Additionally, even if the defendant were to do the "copy and paste" job the Court thinks the defendant should do, his motion to suppress would surely fail as a result. Even if the defendant's arguments are correct in his motion to suppress, the government could very easily deny all of the defendant's underlying factual claims and bring in an expert to testify (correctly) that nearly all of the cellular communications standards (or sections referenced) used as evidence by the defendant simply do not apply to the aircard.

In order to prove the above points to the Court, the defendant requests that the Court complete the following steps:

1) Read the defendant's discovery motion (Dkt. #592) and take note of all of the factual claims that are supported by cited evidence being a cellular communications protocol standard. These cites should have "TIA" in the titles and relate to 1xRTT as cited.

2) Take the defendant's discovery motion (Dkt. #592)

and run it through a shredder, you won't be needing it anymore.

3) Go to tia.org and download and then read the standards that were identified in step No. 1.

4) While at tia.org, download and read these additional standards so as to become sufficiently versed in 1xRTT:

   1. TIA-2000.2-C-1[E], Physical Layer Standard for cdma2000 Spread Spectrum Systems - Addendum 1

   2. TIA-2000.3-D-1[E], Medium Access Control (MAC) Standard for cdma2000 Spread Spectrum Systems - Addendum 1

   3. TIA-2000.4-D-1[E], Signaling Link Access Control (LAC) Standard for cdma2000 Spread Spectrum Systems - Addendum 1

   4. TIA-2000.5-C-1[E], Upper Layer (Layer 3) Signaling Standard cdma2000 Spread Spectrum Systems - Addendum 1

   5. TIA/EIA/IS-2001-A, Interoperability Specification (IOS) for cdma2000 Access Network Interface

5) While at tia.org, download and read these additional standards so as to become sufficiently versed in 1xEV-DO:

1. TIA/EIA/IS-856-1, cdma2000 High Rate Packet Data Air Interface Specification

2. TIA-856-2 [E], cdma2000 High Rate Packet Data Air Interface Specification - Addendum 2

3. TIA-856-B, cdma2000 High Rate Packet Data Air Interface Specification

4. ANSI/TIA-878-2, Interoperability Specification (IoS) for High Rate Packet Data (HRPD) Radio Access Network Interface with Session Control in the Access Network

5. TIA-1157-A, Signaling Conformance Test Specification for Interworking of cdma2000 1x and High Rate Packet Data Systems

6. TIA-925-1 [E], Enhanced Subscriber Privacy for cdma2000 High Rate Packet Data

6) Conduct google research on the aircard involved in this case (UTStarcom PC 5740 broadband Access Card) and

take note of how its data connection operates under 1xEV-DO.

7) At this point, the Court should understand how the standards cited in the defendant's discovery motion largely do not apply to the operations of the aircard's data connection (with the exception of some standards applying to both 1xRTT and 1xEV-DO but with entirely different sections addressing the different technologies [the defendant cited the 1xRTT sections at Dkt. 592 -- which are inapplicable]).

- Note: All of the above listed cellular protocol stards should have been placed on the record by Mr. Calmeraver and shipped to the Court in paper form.

- Note: tia.org might actually be tiaonline.org. The defendant does not have access to the Internet and has no way of checking.

In case the above process does not make the issue clear, the defendant is providing a second example of how he cannot simply "copy and paste" his discovery motion into his suppression motion. In addition to identifying the wrong cellular communications protocol standards, the defendant's prior mobile telecommunications expert erroneously advised the defendant that the FBI conducted a man-in-the-middle attack in order to locate the aircard. After arguing that point in his discovery motion, the

defendant was able to determine through his own research into technical standards that a man-in-the-middle attack did not occur. The defendant could have very easily done the "copy and paste" job the court wants the defendant to do, and then put the incompetent expert on the stand to back up the defendant's false claim. The Court already stated that "[t]o the extent Defendant wishes to argue that the government also engaged in a man-in-the-middle attack... he clearly has alternative means for making the argument." Dkt. #723, p. 22-23. However, instead of using the complexity of the technology to manipulate the system, the defendant had the expert removed from the defense and abandoned the man-in-the-middle attack argument. The defendant then began the process of ~~redoing all~~ redoing all of his technical claims and most of his arguments, which requires assembling brand new evidence that is actually relevant, so that he would not be presenting false information to the court. If the defendant is not permitted the time he needs to complete his motion to suppress (there is no "perfecting" going on as the Court erroneously believes) then he will effectively be punished for choosing to not manipulate the proceedings.

/
/
/
/

9

In the Court's order at Dkt. #810, the Court stated the following:

> "At the hearing on January 27, 2012, the Court agreed to extend the deadline to April 27, 2012. Doc. 768. This deadline... was calculated to account for the additional research Defendant sought to complete." Id., p. 1.

First, the government is ultimately at fault for the delays in the defendant filing his motion to suppress and for any technical errors made up to this point. The government is withholding a large amount of evidence from the defendant that is, as the Court agrees, discoverable under Rule 16. See Dkt. #723. Rather than order the government to turn over the evidence to the defendant, the Court wants the defendant to assemble his own evidence from public sources. The Court wants the defendant to accomplish this extraordinary feat while incarcerated and with only a high school education. The mobile communications protocols, geolocation, and surveillance technology at issue in the present case is so complex that when the defendant needs to take a break he reads about Quantum Physics for light leisure reading. For an example of the complexity, see the 7,058 pages of cellular communications protocol standards placed on the record by Mr. Colmeraver and shipped to the Court.

When the defendant requested additional time at the January 27, 2012 court hearing, the requested amount was calculated based on the following assumptions: (1) the defendant would continue to receive assistance from his private investigator, (2) the defendant would receive assistance from a 1xEV-DO cellular communications protocol expert within approximately the next two weeks after January 27, 2012, and (3) the defendant's court-appointed paralegal, Mark Horne, would not become so utterly incompetent that he would fail to contact the defendant's list of potential experts for two months. Unfortunately, the defendant's assumptions, which were all reasonable, turned out to be incorrect. See "Motion Requesting The Court To Order Mr. Horne To Do His Job Or, In The Alternative, To Dismiss The Case With Prejudice;" "Motion Requesting The Court To Order Defendant's Private Investigator To Do His Job, Or In The Alternative, To Dismiss The Case With Prejudice;" and "Motion Requesting The Court To Order Defendant's Shadow Counsel To Locate A Runner Service For Defendant," (all filed May 6, 2012) hereby incorporated into this motion by reference.

Because the defendant did not have the needed 1xEV-DO cellular communications protocol expert, he needed to continuously conduct his own research (over the past three months) into more than 10,000 pages of technical standards (the 7,058 placed on the record is only a partial submission) in order to gather evidence to replace the discoverable evidence the Court refuses

11

to order the government to provide the defense. See Dkt. #723. Had Mr. Horne done his job and simply picked up the phone and dialed a few numbers, the defendant would have had an expert to gather the needed evidence while the defendant worked on arguments. The simplicity of the task the defendant repeatedly requested Mr. Horne to complete recently became very apparent. One potential expert the defendant requested Mr. Horne to contact (the request was first made [for this expert] on March 1, 2012) was only contacted by Mr. Horne "a few days ago" (this is as accurate as Mr. Horne's records get). The contacted potential expert expressed a strong interest in assisting the defendant with 1xEV-DO issues. Had Mr. Horne contacted the expert back on March 1, 2012 -- more than two months ago -- then the defendant's motion to suppress would have been filed by April 27, 2012. Similarly, had Mr. Horne contacted any of the other 10 potential experts the defendant identified for Mr. Horne, the defendant would have received the assistance he assumed he would receive when he made time estimates at the January 27, 2012 court hearing.

    Even if the defendant gets an expert now, the damage done by Mr. Horne's procrastination and by the defendant's private investigator refusing to assist the defendant (F.E. and E could have completed the job of contacting the identified experts within a day or two) can only be reversed by allowing the defendant the time he needs to complete his motion to suppress. The

defendant was forced to spend the last three months assembling the withheld evidence from public sources (as required by the Court) and writing a factual statement for his motion to suppress — all to replace the inapplicable evidence and faulty factual statement contained in the defendant's discovery motion. As of the date of this filing, the defendant is two or three days away from completing the job the 1xEV-DO cellular data protocol expert would have completed for the defendant. Once complete, the defendant will only then begin on the bulk of his arguments that will go into his motion to suppress (some arguments are already complete but the bulk is not and they relate nothing to Dkt #592).

If the Court wants to take the unprecedented step of requiring the defendant to assemble evidence from public sources of information, while the government could much more easily just turn over a StingRay manual, then the defendant needs to be given the tools, assistance, and time to complete that task. Having to extract the withheld evidence out of 10,000+ pages of technical standards is a task that very few people on the planet can accomplish. From a technical standpoint, the defendant is having to do everything on his own.

The defendant raised the issue of not having an expert to assist with 1xEV-DO technology in his original filings at Dkt. #806 and #808. However the defendant did not go into the details discussed in this motion for two reasons. First,

13

the defendant did not have time to go into extreme detail because he was spending all of his time trying his hardest to make the Court's deadline. The defendant thought the reasons he provided in his original filings were sufficient to obtain the requested 60 days and the defendant attempted to balance his time between working on the motion requesting additional time and on his motion to suppress. The second reason is the primary reason why the defendant did not go into more detail in his original filings. When Mr. Seplow learned of Mr. Horne's incompetence in this case and of the defendant's plan to bring the matter to the attention of the Court, Mr. Seplow threatened to withdraw from the case. Mr. Seplow informed the defendant that he would withdraw if the defendant filed a motion such as this one. The defendant feared that if Mr. Seplow withdrew then he would lose the assistance of Mr. Seplow's assistant, Mr. Colmeraver -- the only person who has been helping the defendant without complaining about money (compare, F.E. and E) and without a competence problem (compare Mr. Horne). It was Mr. Colmeraver who did the two hours of work that turned the defendant's list of 4 potential experts into 11 -- work allocated to Mr. Horne that was never done. Additionally, if Mr. Seplow withdrew, the defendant would likely not be able to receive assistance from any type of defense services because the Court does not want the defendant to handle the CJA voucher filing process. After it came to light

that Mr. Horne was not going to change his ways after the Court granted an additional 30 days (see "Motion Requesting the Court To order Mr. Horne To Do His Job...."), the defendant decided to put the herein discussed issues on the record (along with a request for reconsideration), even under Mr. Seplow's threat of withdrawal, because if the defendant does not meet the Court's deadline then all is lost anyways (in the context of suppression issues) so it does not make a difference if Mr. Seplow withdraws.

Prior to ruling on this motion, the defendant requests that the Court (1) fully read and understand the 7,058 pages of technical standards shipped to the Court's chambers (see pages 5-8, supra for relevance), (2) wait for the defendant to place documentary evidence on the record in an additional filing (the evidence will support claims made by the defendant in this motion), and (3) wait for the defendant to question Mr. Seplow, Mr. Colmeraver, and a representative from F.B. and E under oath while in Court in order to place testimony on the record in support of the claims made by the defendant in this motion (subpoenas will be sent to the Court this weekend).

The defendant respectfully requests that the Court grant this motion and provide the relief requested on pages No. 1-2, supra.

Excludable delay will occur.

Respectfully submitted:

May 9, 2012
Daniel Rigmaiden

### CERTIFICATE OF SERVICE

Original mailed to the court via USPS mail.

No other parties served because there is no copy service available at CCA-CADC. (they will get a copy of this motion automatically emailed to them so it doesn't really matter anyways)

By: Daniel Rigmaiden    May 9, 2012