⬇ **EXHIBIT 097** ⬇
⬇ **EXHIBIT 097** ⬇
⬇ **EXHIBIT 097** ⬇
⬇ **EXHIBIT 097** ⬇
⬇ **EXHIBIT 097** ⬇
⬇ **EXHIBIT 097** ⬇
⬇ **EXHIBIT 097** ⬇
⬇ **EXHIBIT 097** ⬇
⬇ **EXHIBIT 097** ⬇
⬇ **EXHIBIT 097** ⬇
⬇ **EXHIBIT 097** ⬇
⬇ **EXHIBIT 097** ⬇
⬇ **EXHIBIT 097** ⬇
⬇ **EXHIBIT 097** ⬇
⬇ **EXHIBIT 097** ⬇
⬇ **EXHIBIT 097** ⬇
⬇ **EXHIBIT 097** ⬇
⬇ **EXHIBIT 097** ⬇
⬇ **EXHIBIT 097** ⬇
⬇ **EXHIBIT 097** ⬇
⬇ **EXHIBIT 097** ⬇
⬇ **EXHIBIT 097** ⬇
⬇ **EXHIBIT 097** ⬇
⬇ **EXHIBIT 097** ⬇
⬇ **EXHIBIT 097** ⬇
⬇ **EXHIBIT 097** ⬇
⬇ **EXHIBIT 097** ⬇
⬇ **EXHIBIT 097** ⬇
⬇ **EXHIBIT 097** ⬇
⬇ **EXHIBIT 097** ⬇
⬇ **EXHIBIT 097** ⬇
⬇ **EXHIBIT 097** ⬇

*ATTACHED EXHIBITS*
*SECOND SUBMISSION OF CONSOLIDATED EXHIBITS*
*RELATING TO DISCOVERY AND SUPPRESSION ISSUES*
*CR08-814-PHX-DGC*

Various physical surveillance logs of 431 El Camino Real, Santa Clara, CA with no individuals reported seen coming or going from apartment No. 1122; (2/12/09 BATES Nos. 104-107, 111-114, 130, 134, 140, and 145 of February 17, 2009 discovery set);

# SPECIAL OPERATIONS GROUP
# SURVEILLANCE LOG

**288A-PX-82001**

Date:  <u>07/16/2008</u>                          Day of Week: <u>Wednesday</u>
Location Initiated:  <u>431 El Camino Real, Santa Clara, CA</u>
Time Initiated <u>1645</u>
Location Terminated:  <u>431 El Camino Real, Santa Clara, CA</u>
Time Terminated <u>2025</u>

| Surveillance Agent | Initials | Surveillance Agent | Initials |
|---|---|---|---|
| Jacob H. Gregory | JG | Robert C. Glass, Jr. | RCG |
| Jeffrey C. Johnson | JCJ | Kelly C. Heller | KCH |
| Tinh Van Nguyen | TVN | | |

## INITIALS   TIME          SURVEILLANCE OBSERVATIONS

| INITIALS | TIME | SURVEILLANCE OBSERVATIONS |
|---|---|---|
| KCH | 1645 | Domicilio, 431 El Camino Real, Santa Clara, CA (apartment complex) is an apartment complex consisting of several buildings and an underground gated parking area. The apartment complex leasing office has telephone number 408/345-3333. |
| RCG KCH | 1720 | A black Ford F-150 pick up truck, CA tag 6Z51192 (black Ford F-150), departs the apartment complex. The driver of the Ford F-150 is described as an unknown white male with light colored short hair, having a mustache and goatee, and wearing black sunglasses and a black T-shirt (UWM in black T-shirt). |
| RCG | 1737 | Ford F-150 arrives at the Great Mall located on Great Mall Parkway, Milpitas, CA. |
| RCG | 1738 | UWM in black T-shirt exits Ford F-150 and is further described as 6'0" tall, weighing 175 pounds, wearing blue jeans and white tennis shoes, and carrying a cigarette in his left hand. |
| RCG | 1739 | UWM in black T-shirt is observed talking to a bald male who is sitting on the ground outside the mall.  It appears that UWM in black T-shirt asked bald male for a light for his cigarette. |
| RCG | 1739 | UWM in black T-shirt entered the mall through entry #1. |
| RCG JCJ | 1910 | An unknown white male described as 5'10"– 6'0" tall, thin build, having short dark hair, wearing a teal blue shirt, dark shorts, white tennis shoes, and yellow rubber wrist bands, (UWM in teal blue shirt) is observed sitting on a ledge outside building #2 of the apartment complex watching a baseball game. |
| RCG KCH | 2014 | UWM in teal blue shirt entered building #2 of the apartment complex. |
| JG | | SA Jacob H. Gregory, FBI, SF, CA/ |
| RCG | | SA Robert C. Glass, Jr., FBI, SF, CA/ |
| JCJ | | SA Jeffrey C. Johnson, FBI, SF, CA/ |
| KCH | | SA Kelly C. Heller, FBI, SF, CA/ |
| TVN | | SA Tinh Van Nguyen, FBI, SF, CA/ |

- 1 -

1- 321C-SF-C130321

## SPECIAL OPERATIONS GROUP
## SURVEILLANCE LOG

288A-PX-82001

Date: <u>07/17/2008</u>                    Day of Week: <u>Thursday</u>
Location Initiated: <u>431 El Camino Real, Santa Clara, CA</u>
Time Initiated <u>0745</u>
Location Terminated: <u>431 El Camino Real, Santa Clara, CA</u>
Time Terminated <u>1301</u>

| Surveillance Agent | Initials | Surveillance Agent | Initials |
|---|---|---|---|
| James M. Humphrey | JH | Tuan A. Nguyen | TAN |
| Mikael Bergh | MPB | A.P. Cruz | APC |
| Nadine L. Priolo | NLP | | |

## <u>INITIALS</u>   <u>TIME</u>      <u>SURVEILLANCE OBSERVATIONS</u>

| INITIALS | TIME | SURVEILLANCE OBSERVATIONS |
|---|---|---|
| JH | 0745 | Neither subject nor known vehicles are not observed in the vicinity of 431 El Camino Real, Santa Clara, CA. |
| MPB | 1301 | No change. |
| MPB | | SA Mikael Bergh, FBI, SF, CA |
| JH | | SA James M. Humphrey, FBI, SF, CA |
| TAN | | SA Tuan A. Nguyen, FBI, SF, CA |
| APC | | SA A.P. Cruz, FBI, SF, CA |
| NLP | | SA Nadine L. Priolo, FBI, SF, CA |

SC 201206-105

**SPECIAL OPERATIONS GROUP**
**SURVEILLANCE LOG**

288A-PX-82001

Date: 07/17/2008                                    Day of Week: Thursday
Location Initiated: 431 El Camino Real, Santa Clara, CA
Time Initiated 1301 hours
Location Terminated: 431 El Camino Real, Santa Clara, CA
Time Terminated 1800 hours

| Surveillance Agent | Initials | Surveillance Agent | Initials |
|---|---|---|---|
| Robert C. Glass Jr. | RCG | Jeffrey C. Johnson | JCJ |
| Kelly C. Heller | KCH | Tinh V. Nguyen | TVN |
| Jacob H. Gregory | JHG | | |

## INITIALS    TIME        SURVEILLANCE OBSERVATIONS

| INITIALS | TIME | SURVEILLANCE OBSERVATIONS |
|---|---|---|
| JHG | 1301 | Subject (aka: The Hacker; Steven Travis Brawner) was not observed in the vicinity of the Domicilio Apartment Complex, 431 El Camino Real, Santa Clara, CA., hereafter referred to as Domicilio Apartment Complex. |
| JCJ | 1507 | No vehicle was observed parked in parking space #208 at the Domicilio Apartment Complex. |
| KCH | 1610 | No vehicle was observed parked in parking space #208 at the Domicilio Apartment Complex. |
| JCJ | 1645 | No vehicle was observed parked in parking space #208 at the Domicilio Apartment Complex. |
| JHG | 1755 | No vehicle was observed parked in parking space #208 at the Domicilio Apartment Complex. |
| | RCG | SA Robert C. Glass Jr., FBI, SF/CA |
| | KCH | SA Kelly C. Heller, FBI, SF/CA |
| | TVN | SA Tinh V. Nguyen, FBI, SF/CA |
| | JHG | SA Jacob H. Gregory, FBI, SF/CA |
| | JCJ | SA Jeffrey C. Johnson, FBI, SF/CA |

Page - 1 - of 1

1-  Original to 321C-SF-C130321
1-  288A-PX-82001

## SPECIAL OPERATIONS GROUP
## SURVEILLANCE LOG

**288A-PX-82001**

Date:  07/18/2008                              Day of Week:  Friday
Location Initiated:  431 El Camino Real, Santa Clara, CA
Time Initiated:  0645
Location Terminated:  431 El Camino Real, Santa Clara, CA
Time Terminated:  1355

| Surveillance Agent | Initials | Surveillance Agent | Initials |
|---|---|---|---|
| James M. Humphrey | JH | Mikael Bergh | MPB |
| Nadine L. Priolo | NLP | Tuan A. Nguyen | TAN |
| A.P. Cruz | APC | | |

## SURVEILLANCE OBSERVATIONS

| | | |
|---|---|---|
| JH | 0645 | No individuals observed in vicinity of 431 El Camino Real, Santa Clara, CA matching description of UNSUB. |
| MPB | 0705 | No lights observed on in Unit 1122, 431 El Camino Real, Santa Clara, CA. |
| APC | 0730 | Parking space #208 at 431 ECR (associated with Unit 1122) negative for any vehicles. |
| NLP | 1200 | Walk by of balcony area of Unit 1122, the shades and the doors are closed. |
| MPB | 1355 | No change. |
| NLP | | SA Nadine L. Priolo, FBI, SF, CA |
| JH | | SA James M. Humphrey, FBI, SF, CA |
| MPB | | SA Mikael Bergh, FBI, SF, CA |
| APC | | SA A.P. Cruz, FBI, SF, CA |
| TAN | | SA Tuan A. Nguyen, FBI, SF, CA |

SCdt2/808107

# SPECIAL OPERATIONS GROUP
## SURVEILLANCE LOG

**288A-PX-82001**

Date: <u>07/29/2008</u>                    Day of Week: Tuesday
Location Initiated: <u>431 El Camino Real, Santa Clara, CA</u>
Time Initiated <u>0645</u>
Location Terminated: <u>431 El Camino Real, Santa Clara, CA</u>
Time Terminated <u>1400</u>

| Surveillance Agent | Initials | Surveillance Agent | Initials |
|---|---|---|---|
| A.P. Cruz | APC | Tuan A. Nguyen | TAN |
| Mikael Bergh | MPB | Nadine L. Priolo | NLP |

## INITIALS   TIME        SURVEILLANCE OBSERVATIONS

| INITIALS | TIME | SURVEILLANCE OBSERVATIONS |
|---|---|---|
| TAN | 0645 | Neither subject nor known vehicles are not observed in the vicinity of 431 El Camino Real, Santa Clara, CA. |
| TAN | 1400 | No change. |
| TAN | | SA Tuan A. Nguyen, FBI, SF, CA |
| APC | | SA A.P. Cruz, FBI, SF, CA |
| MPB | | SA Mikael Bergh, FBI, SF, CA |
| NLP | | SA Nadine L. Priolo, FBI, SF, CA |

## SPECIAL OPERATIONS GROUP
## SURVEILLANCE LOG

288-PX-82001

Date:  07/31/2008                          Day of Week: Thursday
Location Initiated:  431 El Camino Real, Santa Clara, California
Time Initiated 0730
Location Terminated:  431 El Camino Real, Santa Clara, California
Time Terminated 1442

| Surveillance Agent | Initials | Surveillance Agent | Initials |
|---|---|---|---|
| SA James M. Humphrey IV | JH | SA A. P. Cruz | APC |
| SA Nadine L. Priolo | NLP | SA Tuan A. Nguyen | TAN |

## INITIALS   TIME        SURVEILLANCE OBSERVATIONS

| INITIALS | TIME | SURVEILLANCE OBSERVATIONS |
|---|---|---|
| APC | 0730 | Vehicle parking space 208 was observed to be empty at 431 El Camino Real, Santa Clara, California. |
| APC | 0905 | Vehicle parking space 208 was observed to be empty at 431 El Camino Real, Santa Clara, California. |
| NLP | 1200 | Vehicle parking space 208 was observed to be empty at 431 El Camino Real, Santa Clara, California. |
| APC | 1313 | Vehicle parking space 208 was observed to be empty at 431 El Camino Real, Santa Clara, California. |
| JH |  | SA James M. Humphrey IV, FBI, SF, CA |
| APC |  | SA A. P. Cruz, FBI, SF, CA |
| NLP |  | SA Nadine L Priolo, FBI, SF, CA |
| TAN |  | SA Tuan A. Nguyen, FBI, SF, CA |

## SPECIAL OPERATIONS GROUP
## SURVEILLANCE LOG

**288-PX-82001**

Date: <u>08/01/2008</u>                    Day of Week: <u>Friday</u>
Location Initiated: <u>431 El Camino Real, Santa Clara, California</u>
Time Initiated <u>0600</u>
Location Terminated: <u>431 El Camino Real, Santa Clara, California</u>
Time Terminated <u>1352</u>

| Surveillance Agent | Initials | Surveillance Agent | Initials |
|---|---|---|---|
| SA James M. Humphrey IV | JH | SA A. P. Cruz | APC |
| SA Nadine L. Priolo | NLP | SA Tuan A. Nguyen | TAN |

### INITIALS   TIME        SURVEILLANCE OBSERVATIONS

| INITIALS | TIME | SURVEILLANCE OBSERVATIONS |
|---|---|---|
| TAN | 0647 | A noise is heard in the hallway near unit number 1120, 431 El Camino Real, Santa Clara, California hereafter referred to as 431 El Camino Real. |
| TAN | 0647 | Unidentified white male hereafter referred to as UM1, is observed walking in a hallway past unit 1120 at 431 El Camino Real. |
| TAN | 0647 | UM1 is approximately late 20s in age, approximately 5 feet 9 inches tall, thin to medium build, sporting some facial hair and is wearing a dark gray long sleeve sweatshirt and blue jeans. |
| TAN | 0647 | UM1 is last seen walking away from unit 1120 toward another hallway located on the West side of the building at 431 El Camino Real which faces El Camino Real. |
| JH | 0650 | Area check conducted in the vicinity of El Camino Real in front 0f 431 El Camino Real with negative results for UM1. |
| APC | 0654 | Area check conducted in the vicinity of El Camino Real and Campbell Avenue, Santa Clara, California with negative results for UM1. |
| APC | 0655 | Area check conducted by the exterior parking areas at 431 El Camino Real with negative results for UM1. |
| NLP | 0701 | Spot check conducted at the CalTrain Santa Clara Station hereafter referred to as CalTrain Santa Clara Station, 1001 Railroad Avenue, Santa Clara, California with negative results for UM1. |
| APC | 0903 | Spot check conducted on parking stall number 208 at 431 El Camino Real, no vehicle parked in the stall at this time. |
| APC | 1248 | Spot check conducted on parking stall number 208 at 431 El Camino Real, no vehicle parked in the stall at this time. |
| APC | | SA A.P. Cruz, FBI, SF, CA |
| JH | | SA James M. Humphrey IV, FBI, SF, CA |
| NLP | | SA Nadine L Priolo, FBI, SF, CA |
| TAN | | SA Tuan A. Nguyen, FBI, SF, CA |

S2/12/09 113

## SPECIAL OPERATIONS GROUP
## SURVEILLANCE LOG

**288A-PX-82001**

Date:  8/1/2008                        Day of Week: Friday
Location Initiated:  Domicilio Apartments, 431 El Camino Real, Santa Clara, CA
Time Initiated 1352
Location Terminated:  Domicilio Apartments, 431 El Camino Real, Santa Clara, CA
Time Terminated 2156

| Surveillance Agent | Initials | Surveillance Agent | Initials |
|---|---|---|---|
| SA Robert C. Glass, Jr | RCG | SA Jeffrey C. Johnson | JCJ |
| SA Tinh Van Nguyen | TVN | SA Jacob H. Gregory | JHG |

## INITIALS   TIME         SURVEILLANCE OBSERVATIONS

| INITIALS | TIME | SURVEILLANCE OBSERVATIONS |
|---|---|---|
| JCJ | | No observations concerning apartment # 1122 or parking space # 208. |
| RCG | | SA Robert C. Glass, Jr., FBI, SF, CA |
| JCJ | | SA Jeffrey C. Johnson, FBI, SF, CA |
| TVN | | SA Tinh Van Nguyen, FBI, SF, CA |
| JHG | | SA Jacob H. Gregory, FBI, SF, CA |

Page - 1 - of 1

1-  321C-SF-C130321

2/12/09 114
SGR 45

FD-302 (Rev. 10-6-95)

-1-

## FEDERAL BUREAU OF INVESTIGATION

Date of transcription    08/20/2008

On August 3, 2008, surveillance was conducted from the hours of 6:00am to 2:00pm in the vicinity of 431 El Camino Real, Apartment 1122, Santa Clara, CA.  Surveillance did not positively identify any individuals entering or exiting Apartment 1122.

The following Agents participated in the surveillance: FBI Special Agent Wade Luders and IRS-CI Special Agents Scott Fischer and Tracy Daun.

**SF Field Intelligence Group**

Potential Intel Value: Yes ☐ No ☑

Reviewed By: _MCG_   Date: _8/20/08_

S-Drive Location:_____

Investigation on    08/20/2008    at   Palo Alto, CA

File # 288A-PX-82001 _82_                              Date dictated

by   SA Wade Luders

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

2/12/09 130

FD-302 (Rev. 10-6-95)

-1-

**FEDERAL BUREAU OF INVESTIGATION**

Date of transcription     08/07/2008

      From late evening 08/02/2008 to early morning 08/03/2008, a physical surveillance was conducted in the vicinity of 431 El Camino Real, Apartment # 1122, Santa Clara, California, during which the following observations were made (times are in Pacific Daylight Savings Time):

| Time | Initials | Observation |
|------|----------|-------------|
| 9:50PM | ϕ | Surveillance is initiated in the vicinity of 431 El Camino Real, Apartment # 1122, Santa Clara, California.  All agents in place. |
| 5:50AM | ϕ | No activity was observed.  Surveillance is concluded.  Relieved by next shift. |

Investigation on     08/02/2008   at   Santa Clara, California

File #  288A-PX-82001 —                                Date dictated    Not Dictated

by    SAs Justin Griggs   Ken Hudson,    Eric Vasquez

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency;

2/12/09 134

FD-302 (Rev. 10-6-95)

-1-

**FEDERAL BUREAU OF INVESTIGATION**

Date of transcription     07/26/2008

On July 23, 2008, Special Agent Richard J. Murray and
IRS-CI Special Agent Michael Fleischmann conducted surveillance in
the area of 431 El Camino Real, Apartment 1122, Santa Clara,
California.  The following observations were made at the
approximate times listed:

| | |
|---|---|
| 9:10 p.m. | Surveillance initiated |
| 9:10 p.m. | No activity observed at Apartment 1122 |
| 9:24 p.m. | Parking spot #208 empty |
| 9:30 p.m. | No activity observed at Apartment 1122 |
| 9:57 p.m. | Interior light observed on in Apartment 1122 |
| 10:05 p.m. | Surveillance discontinued |

Investigation on    07/23/2008    at  Santa Clara, California

File #  288A-PX-82001                                          Date dictated

by   SA Richard J. Murray:rjm / IRS-CI Michael Fleischmann

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency;
it and its contents are not to be distributed outside your agency.

2/12/09 140

FD-302 (Rev. 10-6-95)

-1-

FEDERAL BUREAU OF INVESTIGATION

Date of transcription    08/12/2008

       On August 02, 2008, surveillance was conducted from the hours of 2:00 p.m. to 10:00 p.m. in the vicinity of 431 El Camino Real, Apartment 1122, Santa Clara, CA.  Surveillance did not positively identify any individuals entering or exiting Apartment 1122.

       The following Agents participated in the surveillance:  FBI SA Robert L. Kay, IRS-CI SA Robin Newgren, and IRS-CI SA Ryan Cvancara.

Investigation on   08/02/2008   at  Santa Clara, California

File #/288A-PX-82001  94

Date dictated   08/12/2008

by   SA Robert L. Kay  RLL

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; 2/12/09 145

⬇ **EXHIBIT 098** ⬇
⬇ **EXHIBIT 098** ⬇
⬇ **EXHIBIT 098** ⬇
⬇ **EXHIBIT 098** ⬇
⬇ **EXHIBIT 098** ⬇
⬇ **EXHIBIT 098** ⬇
⬇ **EXHIBIT 098** ⬇
⬇ **EXHIBIT 098** ⬇
⬇ **EXHIBIT 098** ⬇
⬇ **EXHIBIT 098** ⬇
⬇ **EXHIBIT 098** ⬇
⬇ **EXHIBIT 098** ⬇
⬇ **EXHIBIT 098** ⬇
⬇ **EXHIBIT 098** ⬇
⬇ **EXHIBIT 098** ⬇
⬇ **EXHIBIT 098** ⬇
⬇ **EXHIBIT 098** ⬇
⬇ **EXHIBIT 098** ⬇
⬇ **EXHIBIT 098** ⬇
⬇ **EXHIBIT 098** ⬇
⬇ **EXHIBIT 098** ⬇
⬇ **EXHIBIT 098** ⬇
⬇ **EXHIBIT 098** ⬇
⬇ **EXHIBIT 098** ⬇
⬇ **EXHIBIT 098** ⬇
⬇ **EXHIBIT 098** ⬇
⬇ **EXHIBIT 098** ⬇
⬇ **EXHIBIT 098** ⬇
⬇ **EXHIBIT 098** ⬇
⬇ **EXHIBIT 098** ⬇
⬇ **EXHIBIT 098** ⬇

*ATTACHED EXHIBITS*
*SECOND SUBMISSION OF CONSOLIDATED EXHIBITS*
*RELATING TO DISCOVERY AND SUPPRESSION ISSUES*
*CR08-814-PHX-DGC*

Paper print-out of email sent from USPIS Inspector James L. Wilson to IRS-CI Agent Denise L. Medrano, IRS-CI Agent Michael P. Fleischmann, AUSA Frederick A. Battista, and FBI Agent Richard J. Murray RE: as of July 21, 2008, no evidence that someone is living in apartment No. 1122; (Email sent date: July 21, 2008 2:49pm); (ITEM No. 2 of September 24, 2010 discovery set [p. 30]);

Battista, Fred (USAAZ)

| | |
|---|---|
| **From:** | Wilson, James L - Phoenix, AZ [JLWilson@~~~~~~~~] |
| **Sent:** | Monday, July 21, 2008 2:49 PM |
| **To:** | Medrano Denise L; Fleischmann Michael P; Battista, Fred (USAAZ); Murray, Richard J. (FBI); tracy.daun@~~~~~~~~ |
| **Subject:** | doing a controlled delivery |

*(see note at end)*

Due to the recent events of our investigation and our hard work, we have located a key source of this investigation: an apartment located in Santa Clara. ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Although we have a location where the signal is coming from and the handwriting matches the rental application of the other PO Box applications, we still have no evidence that someone is living in that apartment (we've all theorized that this may be a secondary location). ▮▮▮▮▮▮▮▮



IRS has expressed concerns about the delivery scenario because of citizens' welfare. I am not dismissing this aspect. Of all people, as a Law Enforcement official, I (we) have a responsibility of the well-being and safety of the citizens we serve. However, we also have a responsibility to the people of the Untied States of America to bring a criminal to justice. Sometimes (most of the times), we can not have complete control of each and every scenario. But, in actuality, we can control this delivery to minimize citizen exposure.

⬇ **EXHIBIT 099** ⬇
⬇ **EXHIBIT 099** ⬇
⬇ **EXHIBIT 099** ⬇
⬇ **EXHIBIT 099** ⬇
⬇ **EXHIBIT 099** ⬇
⬇ **EXHIBIT 099** ⬇
⬇ **EXHIBIT 099** ⬇
⬇ **EXHIBIT 099** ⬇
⬇ **EXHIBIT 099** ⬇
⬇ **EXHIBIT 099** ⬇
⬇ **EXHIBIT 099** ⬇
⬇ **EXHIBIT 099** ⬇
⬇ **EXHIBIT 099** ⬇
⬇ **EXHIBIT 099** ⬇
⬇ **EXHIBIT 099** ⬇
⬇ **EXHIBIT 099** ⬇
⬇ **EXHIBIT 099** ⬇
⬇ **EXHIBIT 099** ⬇
⬇ **EXHIBIT 099** ⬇
⬇ **EXHIBIT 099** ⬇
⬇ **EXHIBIT 099** ⬇
⬇ **EXHIBIT 099** ⬇
⬇ **EXHIBIT 099** ⬇
⬇ **EXHIBIT 099** ⬇
⬇ **EXHIBIT 099** ⬇
⬇ **EXHIBIT 099** ⬇
⬇ **EXHIBIT 099** ⬇
⬇ **EXHIBIT 099** ⬇
⬇ **EXHIBIT 099** ⬇
⬇ **EXHIBIT 099** ⬇
⬇ **EXHIBIT 099** ⬇
⬇ **EXHIBIT 099** ⬇

*ATTACHED EXHIBITS*
*SECOND SUBMISSION OF CONSOLIDATED EXHIBITS*
*RELATING TO DISCOVERY AND SUPPRESSION ISSUES*
*CR08-814-PHX-DGC*

FBI FD-302 Report by FBI Agent Richard J. Murray RE: Domicilio management indicated that the process for obtaining electronic gate key access records for apartment residents is extremely time consuming; (Investigation date: July 22, 2008); (2/12/09 BATES No. 138 of February 17, 2009 discovery set);

FD-302 (Rev. 10-6-95)

- 1 -

**FEDERAL BUREAU OF INVESTIGATION**

Date of transcription    08/15/2008

On July 22, 2008, Mona Chen, Property Manager, domicilio Apartments, 431 El Camino Real, Santa Clara, California, telephone number ██████████ was interviewed.  Chen provided the following information:

Chen advised that she only recently learned how to use the computer system which handles the gate access information. Chen stated that Larry of Quality Alarm installed the gate access system at domicio apartments.  There are sixteen entry points in the gate access system.

Chen advised that Steven Travis Brawner has a key fob bearing the number 58261.  Brawner does not have a separate entry code for access to the apartment gates.

Chen demonstrated to interviewing agents the process required to retrieve historical gate access records from the computer system.  The process was observed to be extremely time consuming.

Chen provided a copy of apartment floor plans at domicilio Apartments which will be maintained in the file.

---

Investigation on    07/22/2008    at  Santa Clara, California

File #  288A-PX-82001-██                            Date dictated
         SA Richard J. Murray
by    IRS-CI Michael Fleischmann

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

2/12/09 138

**↓ EXHIBIT 100 ↓**

**↓ EXHIBIT 100 ↓**

**↓ EXHIBIT 100 ↓**

**↓ EXHIBIT 100 ↓**

**↓ EXHIBIT 100 ↓**

**↓ EXHIBIT 100 ↓**

**↓ EXHIBIT 100 ↓**

**↓ EXHIBIT 100 ↓**

**↓ EXHIBIT 100 ↓**

**↓ EXHIBIT 100 ↓**

**↓ EXHIBIT 100 ↓**

**↓ EXHIBIT 100 ↓**

**↓ EXHIBIT 100 ↓**

**↓ EXHIBIT 100 ↓**

**↓ EXHIBIT 100 ↓**

**↓ EXHIBIT 100 ↓**

**↓ EXHIBIT 100 ↓**

**↓ EXHIBIT 100 ↓**

**↓ EXHIBIT 100 ↓**

**↓ EXHIBIT 100 ↓**

**↓ EXHIBIT 100 ↓**

**↓ EXHIBIT 100 ↓**

**↓ EXHIBIT 100 ↓**

**↓ EXHIBIT 100 ↓**

**↓ EXHIBIT 100 ↓**

**↓ EXHIBIT 100 ↓**

**↓ EXHIBIT 100 ↓**

**↓ EXHIBIT 100 ↓**

**↓ EXHIBIT 100 ↓**

**↓ EXHIBIT 100 ↓**

**↓ EXHIBIT 100 ↓**

*ATTACHED EXHIBITS*
*SECOND SUBMISSION OF CONSOLIDATED EXHIBITS*
*RELATING TO DISCOVERY AND SUPPRESSION ISSUES*
*CR08-814-PHX-DGC*

FBI FD-302 Report by FBI Agent Richard J. Murray RE: Quality Alarm Service indicated that the Domicilio apartment complex crashed the electronic gate key access database for apartment residents; (Investigation date: July 23, 2008); (2/12/09 BATES No. 139 of February 17, 2009 discovery set);

FD-302 (Rev. 10-6-95)

- 1 -

**FEDERAL BUREAU OF INVESTIGATION**

Date of transcription _____08/15/2008_____

        On July 23, 2008, Larry Kravitz, Director of Operations,
and Fred Larraburu, Owner, were interviewed at their place of
employment, Quality Alarm Service, 3523 Haven Avenue, Unit F, Menlo
Park, California 94025, telephone number ██████████  Kravitz and
Larraburu provided the following information:

        The domicilio Apartments have crashed the database which
contains historical gate access information for residents.  Data
may only exist dating back to the most recent crash and rebuild.
Each entry unit at the gate maintains its own information.  The
gate access computer system is not connected to the Internet.

        SA Richard Murray served a Federal Grand Jury subpoena
on Fred Larraburu.

---

Investigation on ___08/15/2008___ at  Menlo Park, California

File # 288A-PX-82001                                    Date dictated _____

by   SA Richard J. Murray:rjm      SA Michael Fleischmann

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency;
it and its contents are not to be distributed outside your agency.

2/12/09 139

⬇ **EXHIBIT 101** ⬇
⬇ **EXHIBIT 101** ⬇
⬇ **EXHIBIT 101** ⬇
⬇ **EXHIBIT 101** ⬇
⬇ **EXHIBIT 101** ⬇
⬇ **EXHIBIT 101** ⬇
⬇ **EXHIBIT 101** ⬇
⬇ **EXHIBIT 101** ⬇
⬇ **EXHIBIT 101** ⬇
⬇ **EXHIBIT 101** ⬇
⬇ **EXHIBIT 101** ⬇
⬇ **EXHIBIT 101** ⬇
⬇ **EXHIBIT 101** ⬇
⬇ **EXHIBIT 101** ⬇
⬇ **EXHIBIT 101** ⬇
⬇ **EXHIBIT 101** ⬇
⬇ **EXHIBIT 101** ⬇
⬇ **EXHIBIT 101** ⬇
⬇ **EXHIBIT 101** ⬇
⬇ **EXHIBIT 101** ⬇
⬇ **EXHIBIT 101** ⬇
⬇ **EXHIBIT 101** ⬇
⬇ **EXHIBIT 101** ⬇
⬇ **EXHIBIT 101** ⬇
⬇ **EXHIBIT 101** ⬇
⬇ **EXHIBIT 101** ⬇
⬇ **EXHIBIT 101** ⬇
⬇ **EXHIBIT 101** ⬇
⬇ **EXHIBIT 101** ⬇
⬇ **EXHIBIT 101** ⬇
⬇ **EXHIBIT 101** ⬇

*ATTACHED EXHIBITS*
*SECOND SUBMISSION OF CONSOLIDATED EXHIBITS*
*RELATING TO DISCOVERY AND SUPPRESSION ISSUES*
*CR08-814-PHX-DGC*

Paper print-out of emails sent between FBI Agent Richard J. Murray and AUSA Frederick A. Battista *et al.* RE: (1) Quality Alarm Service technician canceled his day off to physically retrieve electronic gate key access records from various Domicilio electronic gates, and (2) AUSA Battista's electronic gate key access analysis; (Email sent dates: (1) July 24, 2008 6:15pm; (2) July 24, 2008 9:05pm); (ITEM No. 3 of September 24, 2010 discovery set [p. 137-139]);

## Medrano Denise L

| | |
|---|---|
| **From:** | Battista, Fred (USAAZ) [Fred.Battista@usdoj.gov] |
| **Sent:** | Thursday, July 24, 2008 6:21 PM |
| **To:** | Murray, Richard J. (FBI); Medrano Denise L; Fleischmann Michael P; Ng, William T. (FBI); JLWilson@█████ Daun Tracy L |
| **Subject:** | RE: PDF Document - Access Analysis and Estimate for Next Visit Based Upon Past Conduct |
| **Attachments:** | Hacker.Gate Key Analysis.pdf |



Hacker.Gate Key
Analysis.pdf (...   **This is easier to read.**

-----Original Message-----
From: Murray, Richard J. (FBI)
Sent: Thursday, July 24, 2008 6:15 PM
To: Battista, Fred (USAAZ); 'denise.medrano@█████; 'Michael.Fleischmann@█████ Ng, William T. (FBI); 'JLWilson@█████ 'Tracy.Daun@█████
Subject: Re: Access Analysis and Estimate for Next Visit Based Upon Past Conduct

One caveat on the data: The alarm guy cancelled his day off and plans with family to pull this data asap for me. It took him all day to pull 12 of the 16 gates. At 4 o'clock, I took what he had and told him to go. It's possible that there may be additional accesses.

----- Original Message -----
From: Battista, Fred (USAAZ) <Fred.Battista@usdoj.gov>
To: Murray, Richard J.; denise.medrano@█████ <denise.medrano@█████; Michael.Fleischmann@█████ <Michael.Fleischmann@█████; Ng, William T.; JLWilson@█████ <JLWilson@█████; Daun Tracy L <Tracy.Daun@█████
Sent: Thu Jul 24 21:05:33 2008
Subject: RE: Access Analysis and Estimate for Next Visit Based Upon Past Conduct

FYI

GATE KEY ANALYSIS -- Estimate for Next Visit -- Saturday 7-26 or Sunday 7-27 between the Hours of 12:01 AM and 7:00 AM

7-23   Wednesday      9:12 PM   (Chinese Ruse Was 7-22)
7-18   Friday         2:56 AM
7-13   Sunday        11:13 PM
7-5    Saturday 2:25 PM
7-4    Friday  9:09 PM
7-1    Tuesday 12:45 AM
6-25   Wednesday      7:50 AM

6-24   Tuesday 6:45 AM
6-24   Tuesday 4:53 AM (6-24 Counted As One Visit Starting at 4:51 AM)
6-24   Tuesday 4:51 AM

6-21   Sunday  6:35 AM
6-20   Friday  7:41 AM
6-13   Friday  12:34 AM
6-8    Sunday  12:58 AM
6-7    Saturday      2:26 AM
6-4    Wednesday     2:36 AM

Comments:

14 Visits in 50 Days = 1 visit every 3.6 days

Frequency of Days of Week:

Monday - None
Tuesday - 2
Wednesday - 3
Thursday - None
Friday - 4
Saturday - 2
Sunday - 3

Frequency of Times of Day

12:00 AM to 6:00 AM - 7
6:01 AM to 12:00 PM - 3
12:01 PM to 6:00 PM - 1
6:01 PM to 11:59 PM - 3

-----Original Message-----
From: Murray, Richard J. (FBI)
Sent: Thursday, July 24, 2008 5:19 PM
To: 'denise.medrano@▓▓▓▓▓'; 'Michael.Fleischmann@▓▓▓▓▓; Ng, William T. (FBI); 'JLWilson@▓▓▓▓▓
Battista, Fred (USAAZ)
Subject: Access

Accesses by brawner since jan 1, 2008

Gate
7-23 912 p (chinese ruse was 7-22)
7-13 1113 p
7-4 909 p
7-1 1245 a
6-21 635 a
6-20 741 a
6-13 1234 a
6-7 2:26 a
6-4 2:36 a

Gate

6-8 12:58 a

Gate
7-18 256 a
7-5 225 p
6-25 750 a
6-24 645 a
6-24 453 a
6-24 451 a

Cameras only at garage entrance

Negative on 7-24 dumpster dive.

⬇ **EXHIBIT 102** ⬇
⬇ **EXHIBIT 102** ⬇
⬇ **EXHIBIT 102** ⬇
⬇ **EXHIBIT 102** ⬇
⬇ **EXHIBIT 102** ⬇
⬇ **EXHIBIT 102** ⬇
⬇ **EXHIBIT 102** ⬇
⬇ **EXHIBIT 102** ⬇
⬇ **EXHIBIT 102** ⬇
⬇ **EXHIBIT 102** ⬇
⬇ **EXHIBIT 102** ⬇
⬇ **EXHIBIT 102** ⬇
⬇ **EXHIBIT 102** ⬇
⬇ **EXHIBIT 102** ⬇
⬇ **EXHIBIT 102** ⬇
⬇ **EXHIBIT 102** ⬇
⬇ **EXHIBIT 102** ⬇
⬇ **EXHIBIT 102** ⬇
⬇ **EXHIBIT 102** ⬇
⬇ **EXHIBIT 102** ⬇
⬇ **EXHIBIT 102** ⬇
⬇ **EXHIBIT 102** ⬇
⬇ **EXHIBIT 102** ⬇
⬇ **EXHIBIT 102** ⬇
⬇ **EXHIBIT 102** ⬇
⬇ **EXHIBIT 102** ⬇
⬇ **EXHIBIT 102** ⬇
⬇ **EXHIBIT 102** ⬇
⬇ **EXHIBIT 102** ⬇
⬇ **EXHIBIT 102** ⬇
⬇ **EXHIBIT 102** ⬇
⬇ **EXHIBIT 102** ⬇

*ATTACHED EXHIBITS*
*SECOND SUBMISSION OF CONSOLIDATED EXHIBITS*
*RELATING TO DISCOVERY AND SUPPRESSION ISSUES*
*CR08-814-PHX-DGC*

FBI FD-302 Report by FBI Agent Richard J. Murray RE: Quality Alarm Service responded to District of Arizona Grand Jury Subpoena No. 07-03-709 by providing Domicilio electronic gate key access records for June 25, 2008 to July 24, 2008; (Investigation date: July 24, 2008); (2/12/09 BATES No. 483 of February 17, 2009 discovery set);

FD-302 (Rev. 10-6-95)

-1-

**FEDERAL BUREAU OF INVESTIGATION**

Date of transcription    07/26/2008

        Pursuant to service of a Federal Grand Jury subpoena
served on Fred Larraburu, Owner, Quality Alarm Service, 3523 Haven
Avenue, Unit F, Menlo Park, California, Larry Kravitz, Director of
Operations, Quality Alarm Service, same address, provided the
following information:

        Subpoena:  07-03-709
        Date served:  July 23, 2008

        Kravitz advised that he conducted a search for access
records for Travis Brawner, Code 58261, for the domicilio
Apartments, 431 El Camino Real, Santa Clara, California from
January 1, 2008 to the present.

        Kravitz advised that he searched 12 of 16 gate units to
obtain the information that he provided SA Murray.

        The units with positive results are:

        Building 1 Elevator Lobby at Stair Podium
        (June 25, 2008 to July 19, 2008)

        Podium Level Gate Building 4 and 2
        (June 9, 2008)

        Podium Level Gate by Leasing
        (June 5, 2008 to July 24, 2008)

        Based on a check of the system, the dates listed on the
printouts were determined to the actual date plus one day (i.e., a
reference to July 25, 2008 in the logs corresponds to July 24,
2008). The times listed are approximately ten minutes fast. The
gate access units are synced (date/time) together.

        Printouts provided by Kravitz will be maintained in the
file.

---

Investigation on   07/24/2008   at  Santa Clara, California

File #  288A-PX-82001-GJ -�ⵣⵍ                          Date dictated _____

by   SA Richard J. Murray _____

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency;
it and its contents are not to be distributed outside your agency.

2/12/09 483

**⬇ EXHIBIT 103 ⬇**

**⬇ EXHIBIT 103 ⬇**

**⬇ EXHIBIT 103 ⬇**

**⬇ EXHIBIT 103 ⬇**

**⬇ EXHIBIT 103 ⬇**

**⬇ EXHIBIT 103 ⬇**

**⬇ EXHIBIT 103 ⬇**

**⬇ EXHIBIT 103 ⬇**

**⬇ EXHIBIT 103 ⬇**

**⬇ EXHIBIT 103 ⬇**

**⬇ EXHIBIT 103 ⬇**

**⬇ EXHIBIT 103 ⬇**

**⬇ EXHIBIT 103 ⬇**

**⬇ EXHIBIT 103 ⬇**

**⬇ EXHIBIT 103 ⬇**

**⬇ EXHIBIT 103 ⬇**

**⬇ EXHIBIT 103 ⬇**

**⬇ EXHIBIT 103 ⬇**

**⬇ EXHIBIT 103 ⬇**

**⬇ EXHIBIT 103 ⬇**

**⬇ EXHIBIT 103 ⬇**

**⬇ EXHIBIT 103 ⬇**

**⬇ EXHIBIT 103 ⬇**

**⬇ EXHIBIT 103 ⬇**

**⬇ EXHIBIT 103 ⬇**

**⬇ EXHIBIT 103 ⬇**

**⬇ EXHIBIT 103 ⬇**

**⬇ EXHIBIT 103 ⬇**

**⬇ EXHIBIT 103 ⬇**

**⬇ EXHIBIT 103 ⬇**

*ATTACHED EXHIBITS*
*SECOND SUBMISSION OF CONSOLIDATED EXHIBITS*
*RELATING TO DISCOVERY AND SUPPRESSION ISSUES*
*CR08-814-PHX-DGC*

Paper print-out of email sent from AUSA Frederick A. Battista to AUSA Shawna Yen RE: We have confirmed that the target is in the Santa Clara Area and visited the target apartment on 7/23; (Email sent date: July 25, 2008 11:18am); (ITEM No. 2 of September 24, 2010 discovery set [p. 52]);

**Battista, Fred (USAAZ)**

| | |
|---|---|
| **From:** | Battista, Fred (USAAZ) |
| **Sent:** | Friday, July 25, 2008 11:18 AM |
| **To:** | Yen, Shawna (USACAN) |
| **Subject:** | RE: Latest Update from Phoenix |

We have confirmed that the target is in the Santa Clara Area and visited the target apartment on 7/23.  We plan to offer to send $300,000 (there will be no $) on Monday for delivery on Tuesday. ~~...~~

~~...~~ 8.  The target will be given access to a photo of

~~$300,000 in $100 bills today.~~ ~~...~~. After the $68,000

~~shipment to the Palo Alto Site, he had gold shipped there in the same false name.~~

7/25/08

Internal communications
&
discussions of
prospective investigation
techniques unrelated
to the device
used to locate
the zircard.

⬇ **EXHIBIT 104** ⬇
⬇ **EXHIBIT 104** ⬇
⬇ **EXHIBIT 104** ⬇
⬇ **EXHIBIT 104** ⬇
⬇ **EXHIBIT 104** ⬇
⬇ **EXHIBIT 104** ⬇
⬇ **EXHIBIT 104** ⬇
⬇ **EXHIBIT 104** ⬇
⬇ **EXHIBIT 104** ⬇
⬇ **EXHIBIT 104** ⬇
⬇ **EXHIBIT 104** ⬇
⬇ **EXHIBIT 104** ⬇
⬇ **EXHIBIT 104** ⬇
⬇ **EXHIBIT 104** ⬇
⬇ **EXHIBIT 104** ⬇
⬇ **EXHIBIT 104** ⬇
⬇ **EXHIBIT 104** ⬇
⬇ **EXHIBIT 104** ⬇
⬇ **EXHIBIT 104** ⬇
⬇ **EXHIBIT 104** ⬇
⬇ **EXHIBIT 104** ⬇
⬇ **EXHIBIT 104** ⬇
⬇ **EXHIBIT 104** ⬇
⬇ **EXHIBIT 104** ⬇
⬇ **EXHIBIT 104** ⬇
⬇ **EXHIBIT 104** ⬇
⬇ **EXHIBIT 104** ⬇
⬇ **EXHIBIT 104** ⬇
⬇ **EXHIBIT 104** ⬇
⬇ **EXHIBIT 104** ⬇
⬇ **EXHIBIT 104** ⬇
⬇ **EXHIBIT 104** ⬇

*ATTACHED EXHIBITS*
*SECOND SUBMISSION OF CONSOLIDATED EXHIBITS*
*RELATING TO DISCOVERY AND SUPPRESSION ISSUES*
*CR08-814-PHX-DGC*

FBI FD-302 Report by FBI Agent Robert L. Kay RE: August 2, 2008 visual surveillance of apartment No. 1122; (Investigation date: August 2, 2008); (2/12/09 BATES No. 145 of February 17, 2009 discovery set);

FD-302 (Rev. 10-6-95)

-1-

FEDERAL BUREAU OF INVESTIGATION

Date of transcription    08/12/2008

On August 02, 2008, surveillance was conducted from the hours of 2:00 p.m. to 10:00 p.m. in the vicinity of 431 El Camino Real, Apartment 1122, Santa Clara, CA.  Surveillance did not positively identify any individuals entering or exiting Apartment 1122.

The following Agents participated in the surveillance:  FBI SA Robert L. Kay, IRS-CI SA Robin Newgren, and IRS-CI SA Ryan Cvancara.

Investigation on   08/02/2008   at  Santa Clara, California

File #/288A-PX-82001-94

Date dictated   08/12/2008

by   SA Robert L. Kay   RLL

This document contains neither recommendations nor conclusions of the FBI.  It is the property of the FBI and is loaned to your agency; 2/12/09 145

**↓ EXHIBIT 105 ↓**

**↓ EXHIBIT 105 ↓**

**↓ EXHIBIT 105 ↓**

**↓ EXHIBIT 105 ↓**

**↓ EXHIBIT 105 ↓**

**↓ EXHIBIT 105 ↓**

**↓ EXHIBIT 105 ↓**

**↓ EXHIBIT 105 ↓**

**↓ EXHIBIT 105 ↓**

**↓ EXHIBIT 105 ↓**

**↓ EXHIBIT 105 ↓**

**↓ EXHIBIT 105 ↓**

**↓ EXHIBIT 105 ↓**

**↓ EXHIBIT 105 ↓**

**↓ EXHIBIT 105 ↓**

**↓ EXHIBIT 105 ↓**

**↓ EXHIBIT 105 ↓**

**↓ EXHIBIT 105 ↓**

**↓ EXHIBIT 105 ↓**

**↓ EXHIBIT 105 ↓**

**↓ EXHIBIT 105 ↓**

**↓ EXHIBIT 105 ↓**

**↓ EXHIBIT 105 ↓**

**↓ EXHIBIT 105 ↓**

**↓ EXHIBIT 105 ↓**

**↓ EXHIBIT 105 ↓**

**↓ EXHIBIT 105 ↓**

**↓ EXHIBIT 105 ↓**

**↓ EXHIBIT 105 ↓**

**↓ EXHIBIT 105 ↓**

**↓ EXHIBIT 105 ↓**

*ATTACHED EXHIBITS*
*SECOND SUBMISSION OF CONSOLIDATED EXHIBITS*
*RELATING TO DISCOVERY AND SUPPRESSION ISSUES*
*CR08-814-PHX-DGC*

FBI FD-302 Report by FBI Agent Wade Luders RE: August 3, 2008 visual surveillance of apartment No. 1122; (Investigation date: August 3, 2008); (2/12/09 BATES No. 130 of February 17, 2009 discovery set);

FD-302 (Rev. 10-6-95)

-1-

**FEDERAL BUREAU OF INVESTIGATION**

Date of transcription    08/20/2008

     On August 3, 2008, surveillance was conducted from the
hours of 6:00am to 2:00pm in the vicinity of 431 El Camino Real,
Apartment 1122, Santa Clara, CA.  Surveillance did not positively
identify any individuals entering or exiting Apartment 1122.

     The following Agents participated in the surveillance:
FBI Special Agent Wade Luders and IRS-CI Special Agents Scott
Fischer and Tracy Daun.

> **SF Field Intelligence Group**
>
> Potential Intel Value: Yes ☐ No ☑
>
> Reviewed By: _MCY_ Date: _8/20/08_
>
> S-Drive Location: _____

Investigation on   08/20/2008   at   Palo Alto, CA

File # 288A-PX-82001 _82_      Date dictated

by   SA Wade Luders

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency;
it and its contents are not to be distributed outside your agency.

2/12/09 130

⬇ **EXHIBIT 106** ⬇
⬇ **EXHIBIT 106** ⬇
⬇ **EXHIBIT 106** ⬇
⬇ **EXHIBIT 106** ⬇
⬇ **EXHIBIT 106** ⬇
⬇ **EXHIBIT 106** ⬇
⬇ **EXHIBIT 106** ⬇
⬇ **EXHIBIT 106** ⬇
⬇ **EXHIBIT 106** ⬇
⬇ **EXHIBIT 106** ⬇
⬇ **EXHIBIT 106** ⬇
⬇ **EXHIBIT 106** ⬇
⬇ **EXHIBIT 106** ⬇
⬇ **EXHIBIT 106** ⬇
⬇ **EXHIBIT 106** ⬇
⬇ **EXHIBIT 106** ⬇
⬇ **EXHIBIT 106** ⬇
⬇ **EXHIBIT 106** ⬇
⬇ **EXHIBIT 106** ⬇
⬇ **EXHIBIT 106** ⬇
⬇ **EXHIBIT 106** ⬇
⬇ **EXHIBIT 106** ⬇
⬇ **EXHIBIT 106** ⬇
⬇ **EXHIBIT 106** ⬇
⬇ **EXHIBIT 106** ⬇
⬇ **EXHIBIT 106** ⬇
⬇ **EXHIBIT 106** ⬇
⬇ **EXHIBIT 106** ⬇
⬇ **EXHIBIT 106** ⬇
⬇ **EXHIBIT 106** ⬇
⬇ **EXHIBIT 106** ⬇
⬇ **EXHIBIT 106** ⬇

*ATTACHED EXHIBITS*
*SECOND SUBMISSION OF CONSOLIDATED EXHIBITS*
*RELATING TO DISCOVERY AND SUPPRESSION ISSUES*
*CR08-814-PHX-DGC*

FBI FD-302 Report by FBI Agent Aleksandr Kobzanets RE: (1) arrest of unknown male (by Santa Clara, CA police officers) who was seen within the Domicilio apartment complex, and (2) FBI Agent Kobzanets' keyhole search of apartment No. 1122; (Investigation date: August 3, 2008); (2/12/09 BATES Nos. 122-24 of February 17, 2009 discovery set);

FD-302 (Rev. 10-6-95)

- 1 -

**FEDERAL BUREAU OF INVESTIGATION**

Date of transcription    08/06/2008

On August 3, 2008, surveillance was conducted in the vicinity of 431 El Camino Real, Apartment 1122, Santa Clara, CA.

The following Agents participated in the surveillance: FBI SAs Aleksandr Kobzanets and Vinh Nguyen, IRS-CI SA Robin Newgren.

SA Kobzanets was positioned in the courtyard area of the apartment complex with a visual of the first floor hallway and apartment complex entry gate.

At approximately 4:15pm, SA Kobzanets observed a white male fitting the known description of BRAWNER exiting the first floor hallway and walking to the entry gate located near University of Santa Clara center field.  The male was in his late 20s, approximately 5'9, and about 150 pounds.  The male was wearing an oversized dark grey sweater, blue jeans, and black shoes.

Since the male exited the apartment complex from the general direction of the subject's apartment and fit the description of the subject, SA Kobzanets decided to follow the male and attempt to establish his identity.

The male walked out of his apartment complex onto El Camino Real and began walking North on El Camino Real.  Once on El Camino Real, the male looked back as if to see if he was being followed.  SA Kobzanets followed the male at a distance and telephoned SA Newgren, IRS/CI, positioned at the Santa Clara CalTrain Station.  SA Kobzanets informed SA Newgren that a male fitting the subject's description was walking in the direction of the train station.  While still following the male, SA Kobzanets observed him looking back in SA Kobzanets' direction approximately two more times.  SA Kobzanets believed that the male was able to see SA Kobzanets following at a distance.  The male got off the main road and continued in the same direction, walking through the rear parking lots of the businesses along El Camino Real.

SA Newgren informed SA Kobzanets by telephone that when the male reached the corner of Railroad Avenue, he turned in my direction with his arms folded across the chest with hands tucked under the armpits and then began walking West on Railroad Avenue

Investigation on   08/03/2008   at   Santa Clara, California

File #   288A-PX-82001   74                                   Date dictated

by   SA Aleksandr Kobzanets

This document contains neither recommendations nor conclusions of the FBI.  It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

2/12/09 122
7/ (

FD-302a (Rev. 10-6-95)

Continuation of FD-302 of _____ , On 08/03/2008 , Page 2

away from the train station. The male was last seen walking near the Starbucks coffee shop located on the corner of El Camino Real and Railroad Avenue. Since the male was behaving suspiciously, SA Kobzanets decided to locate and approach the male and attempt to identify him.

At this point, SA Kobzanets observed a Santa Clara Police Department marked police vehicle entering the shopping plaza next to the Starbucks. SA Kobzanets requested assistance with locating and identifying the possible subject from officers Dominic Sandoval and Thuy Loung. SA Kobzanets explained to the officers that the subject was to be considered armed and dangerous and made threats against law enforcement in the past.

The officers drove in the direction of the South Western corner of the parking lot.

SA Newgren informed SA Kobzanets that the subject was last seen walking along the building located at 495 El Camino Real, Santa Clara, CA. The building housed a number of small businesses, including Starbucks coffee shop. SA Newgren and SA Kobzanets began to walk around the building towards the area where the male was last seen. SA Kobzanets walked on the Southern side of the building, looking for the subject inside the businesses. SA Newgren walked on the Northern side of the building. When both agents reached the corner of El Camino Real and Railroad Avenue, SA Newgren informed that she thought she saw the male in the bushes by the building with his hands still hidden under his arm pits.

SA Kobzanets observed the male running South through the parking lot towards El Camino Real. In order to cut the subject off, SA Kobzanets began running South on the Northbound direction of El Camino Real. SA Kobzanets also observed a marked SCPD unit with lights and siren pursuing the subject through the parking lot towards El Camino Real. The subject entered El Camino Real and began running South in the Northbound direction of the street. Once the subject observed another SCPD unit approaching head on in the Northbound direction, the subject crossed the median and continued running South in the Southbound direction of the street. SA Kobzanets continued to pursue the subject on foot. One of the SCPD marked units jumped the median divide and began pursuing the subject in the Southbound direction. SA Kobzanets believed that the subject was heading in the direction of the campus of Santa Clara University. One of the police units then attempted to block his escape by getting on the curb in front of the subject.

2/12/09 123

FD-302a (Rev. 10-6-95)

Continuation of FD-302 of _____ , On 08/03/2008 , Page 3

     While still behind the subject by about 100 yards, SA Kobzanets observed the subject hitting the police vehicle and falling to the ground.  When SA Kobzanets approached the subject, two SCPD unformed officers were on top of the subject giving him commands to comply.

     SA Kobzanets observed the subject laying on his stomach with his hands tucked in.  He appeared to be rocking left to right and kicking with his feet.  The officers, while continuing giving him the commands to comply, used reasonable force to gain compliance and eventually were able to place the subject in handcuffs.

     The subject was bleeding from his hand.

     The subject did not comply with questioning about his identity.  When SA Kobzanets asked the subject if his name was Steven, the subject did not respond.

     Keys and a small amount of cash were found on the subject by arresting officers in the presence of SA Kobzanets.

     SA Nguyen transported the keys found on the subject to 431 El Camino Real, Apartment # 1122, Santa Clara, California, and was able to confirm that the key was for that apartment.

     The subject was provided first aid assistance from Santa Clara Fire Department.  A paramedic informed SA Kobzanets and SA Newgren that the subject's vital signs were normal and no other medical assistance would be necessary.

     The subject was then transported to SCPD station located next to the train station at 601 El Camino Real, Santa Clara, CA.

⬇ **EXHIBIT 107** ⬇
⬇ **EXHIBIT 107** ⬇
⬇ **EXHIBIT 107** ⬇
⬇ **EXHIBIT 107** ⬇
⬇ **EXHIBIT 107** ⬇
⬇ **EXHIBIT 107** ⬇
⬇ **EXHIBIT 107** ⬇
⬇ **EXHIBIT 107** ⬇
⬇ **EXHIBIT 107** ⬇
⬇ **EXHIBIT 107** ⬇
⬇ **EXHIBIT 107** ⬇
⬇ **EXHIBIT 107** ⬇
⬇ **EXHIBIT 107** ⬇
⬇ **EXHIBIT 107** ⬇
⬇ **EXHIBIT 107** ⬇
⬇ **EXHIBIT 107** ⬇
⬇ **EXHIBIT 107** ⬇
⬇ **EXHIBIT 107** ⬇
⬇ **EXHIBIT 107** ⬇
⬇ **EXHIBIT 107** ⬇
⬇ **EXHIBIT 107** ⬇
⬇ **EXHIBIT 107** ⬇
⬇ **EXHIBIT 107** ⬇
⬇ **EXHIBIT 107** ⬇
⬇ **EXHIBIT 107** ⬇
⬇ **EXHIBIT 107** ⬇
⬇ **EXHIBIT 107** ⬇
⬇ **EXHIBIT 107** ⬇
⬇ **EXHIBIT 107** ⬇
⬇ **EXHIBIT 107** ⬇
⬇ **EXHIBIT 107** ⬇

*ATTACHED EXHIBITS*
*SECOND SUBMISSION OF CONSOLIDATED EXHIBITS*
*RELATING TO DISCOVERY AND SUPPRESSION ISSUES*
*CR08-814-PHX-DGC*

Paper print-out of email sent from FBI Agent Richard J. Murray to FBI Agent William T. Ng RE: awards for the Santa Clara, CA police officers for arresting the unknown male who was seen within the Domicilio apartment complex on August 3, 2008; (Email sent date: September 17, 2008 4:29pm); (ITEM No. 15 of November 24, 2010 discovery set [p. 45-46]);

| From: | MURRAY, RICHARD J. (PX) (FBI) |
| Sent: | Wednesday, September 17, 2008 4:29 PM |
| To: | NG, WILLIAM T. (SF) (FBI) |
| Subject: | Certificates for SCPD |

**UNCLASSIFIED**
**NON-RECORD**

Will-  I am going to request Director's Certificates of Appreciation for the officers that assisted in the arrest of Brawner/Rigmaiden.  Once the certificates are completed and sent, would you mind helping me on your end in having the certificates presented by either your SSA or if possible the ASAC?  Thanks.

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

**UNCLASSIFIED**

Date:  9/23/2008
Case:  288A-PX-82001

Names for certificates:

Officer Thuy Luong, Santa Clara Police Department
Officer Dominic Sandoval, Santa Clara Police Department
Officer Nathan Crescini, Santa Clara Police Department
Officer Stephanie Blass, Santa Clara Police Department
Officer Steve Selberg, Santa Clara Police Department

Justification:

FBI, IRS-CI and USPIS Agents had been conducting round-the-clock surveillance for 4 days in Palo Alto, California and Santa Clara, California in an attempt to arrest an individual considered "Armed and Dangerous."  An FBI Agent on surveillance observed an individual matching the description of the subject and followed the individual on foot.  The subject noticed that he was being followed and attempted to lose the FBI Agent by hiding near a Starbucks restaurant.  After losing sight of the individual, the FBI Agent flagged down a Santa Clara Police Department marked unit in the area and sought PD assistance in locating the individual.  The PD successfully located the individual who fled from police on foot.  Santa Clara PD officers pursued the subject and took him into custody.  The timely and immediate response by the Officers listed above was critical to the success of this operation.

**⬇ EXHIBIT 108 ⬇**
**⬇ EXHIBIT 108 ⬇**
**⬇ EXHIBIT 108 ⬇**
**⬇ EXHIBIT 108 ⬇**
**⬇ EXHIBIT 108 ⬇**
**⬇ EXHIBIT 108 ⬇**
**⬇ EXHIBIT 108 ⬇**
**⬇ EXHIBIT 108 ⬇**
**⬇ EXHIBIT 108 ⬇**
**⬇ EXHIBIT 108 ⬇**
**⬇ EXHIBIT 108 ⬇**
**⬇ EXHIBIT 108 ⬇**
**⬇ EXHIBIT 108 ⬇**
**⬇ EXHIBIT 108 ⬇**
**⬇ EXHIBIT 108 ⬇**
**⬇ EXHIBIT 108 ⬇**
**⬇ EXHIBIT 108 ⬇**
**⬇ EXHIBIT 108 ⬇**
**⬇ EXHIBIT 108 ⬇**
**⬇ EXHIBIT 108 ⬇**
**⬇ EXHIBIT 108 ⬇**
**⬇ EXHIBIT 108 ⬇**
**⬇ EXHIBIT 108 ⬇**
**⬇ EXHIBIT 108 ⬇**
**⬇ EXHIBIT 108 ⬇**
**⬇ EXHIBIT 108 ⬇**
**⬇ EXHIBIT 108 ⬇**
**⬇ EXHIBIT 108 ⬇**
**⬇ EXHIBIT 108 ⬇**
**⬇ EXHIBIT 108 ⬇**
**⬇ EXHIBIT 108 ⬇**

*ATTACHED EXHIBITS*
*SECOND SUBMISSION OF CONSOLIDATED EXHIBITS*
*RELATING TO DISCOVERY AND SUPPRESSION ISSUES*
*CR08-814-PHX-DGC*

Defendant's August 3, 2008 Santa Clara police department booking photo compared to the picture contained on the "Steven Brawner" ID on record with the Domicilio apartment complex; (ITEM No. 38 of November 9, 2010 discovery set);

[Redacted by the defendant (pursuant to Fed. R. Crim. P. 49.1(a)) using white squares with black borders.]

**DISCOVERY**

**November 8, 2010**

**ITEM NO. 38**

**FBI - E-Mail, dated January 14, 2009, booking photograph and fraudulent driver's license for Steven Travis Brawner/Daniel David Rigmaiden.  (3 Pages)**

## MURRAY, RICHARD J. (AQ) (FBI)

| | |
|---|---|
| **From:** | MURRAY, RICHARD J. (PX) (FBI) |
| **Sent:** | Wednesday, January 14, 2009 12:39 PM |
| **To:** | FERRANTI, COLLEEN P. (PX) (FBI) |
| **Subject:** | FW: Steven Brawner |

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**


Colleen-  Booking photo of Rigmaiden attached.

| | |
|---|---|
| **From:** | MURRAY, RICHARD J. (PX) (FBI) |
| **Sent:** | Wednesday, August 06, 2008 11:47 AM |
| **To:** | ALARCIO, KARLA A. (SF) (FBI) |
| **Subject:** | Steven Brawner |

**SENSITIVE BUT UNCLASSIFIED**
**NON-RECORD**


Karla-

Attached are two photos of the subject.  Thanks for your help.  Let me know if I should set another lead
for the current work you're doing.



Steven
Brawner.pdf



**SENSITIVE BUT UNCLASSIFIED**


**SENSITIVE BUT UNCLASSIFIED**

1

# SANTA CLARA COUNTY



| | |
|---|---|
| PFN: | |
| Last Name: | BRAWNER |
| First Name: | STEVEN |
| Middle Name: | TRAVIS |
| DOB: | 1980 |
| Race: | |
| Sex: | |
| Height: | |
| Weight: | |
| Hair Color: | |
| Hair Length: | |
| Hair Style: | |
| Eye Color: | |
| CorrVis: | |
| Facial Hair: | |
| Length: | |
| Skin: | |
| Marks: | |
| SMT 1: | |
| SMT 2: | |
| SMT 3: | |

FF ID:

Case #:

Photo #:

Record Created:   08-03-2008

CEN #:

Registrant:

Charges:

## FOR LAW ENFORCEMENT USE ONLY



**↓ EXHIBIT 109 ↓**

**↓ EXHIBIT 109 ↓**

**↓ EXHIBIT 109 ↓**

**↓ EXHIBIT 109 ↓**

**↓ EXHIBIT 109 ↓**

**↓ EXHIBIT 109 ↓**

**↓ EXHIBIT 109 ↓**

**↓ EXHIBIT 109 ↓**

**↓ EXHIBIT 109 ↓**

**↓ EXHIBIT 109 ↓**

**↓ EXHIBIT 109 ↓**

**↓ EXHIBIT 109 ↓**

**↓ EXHIBIT 109 ↓**

**↓ EXHIBIT 109 ↓**

**↓ EXHIBIT 109 ↓**

**↓ EXHIBIT 109 ↓**

**↓ EXHIBIT 109 ↓**

**↓ EXHIBIT 109 ↓**

**↓ EXHIBIT 109 ↓**

**↓ EXHIBIT 109 ↓**

**↓ EXHIBIT 109 ↓**

**↓ EXHIBIT 109 ↓**

**↓ EXHIBIT 109 ↓**

**↓ EXHIBIT 109 ↓**

**↓ EXHIBIT 109 ↓**

**↓ EXHIBIT 109 ↓**

**↓ EXHIBIT 109 ↓**

**↓ EXHIBIT 109 ↓**

**↓ EXHIBIT 109 ↓**

**↓ EXHIBIT 109 ↓**

**↓ EXHIBIT 109 ↓**

*ATTACHED EXHIBITS*
*SECOND SUBMISSION OF CONSOLIDATED EXHIBITS*
*RELATING TO DISCOVERY AND SUPPRESSION ISSUES*
*CR08-814-PHX-DGC*

Page No. 1 of rough notes prepared by IRS-CI Agent Denise L. Medrano RE: (1) three apartments identified at Domicilio apartment complex (1120, 1122, and 1124), and (2) "StingRay" listed at end of checklist; (Notes date: July 15, 2008); (ITEM No. 6 of September 24, 2010 discovery set [p. 269]);

> \$6,000 mo   Credit Report    if self employed - last yr
Rent ≈ \$1800 - \$2500/mo                    tax Return
                                                        ↑(return)

7-15-08   Domicilio Apartments      Bldg 1  ?
          431 El Camino Real        3 Apts
          Santa Clara, CA 95050     1120|1122|1124


Post Office - John Sanchez Carrier Annex
          ~~████████████~~      (con'td #)


Ford Pick Up  CA  6Z51192
possible suspect - photos taken


Santa Clara PD - didn't have anything


male in teal shirt watching bball game
   - entered bldg 2


Utility Search - power, internet, - PG&E - Apt Complexes
✓ tax return search                    have seperate
✓ Post office - verifying forwarding info  utility
Run plates                                companies
Review video
✓ Accurint
Sting Ray                           (Phone #)

*ATTACHED EXHIBITS*
*SECOND SUBMISSION OF CONSOLIDATED EXHIBITS*
*RELATING TO DISCOVERY AND SUPPRESSION ISSUES*
*CR08-814-PHX-DGC*

⬇ **EXHIBIT 110** ⬇
⬇ **EXHIBIT 110** ⬇
⬇ **EXHIBIT 110** ⬇
⬇ **EXHIBIT 110** ⬇
⬇ **EXHIBIT 110** ⬇
⬇ **EXHIBIT 110** ⬇
⬇ **EXHIBIT 110** ⬇
⬇ **EXHIBIT 110** ⬇
⬇ **EXHIBIT 110** ⬇
⬇ **EXHIBIT 110** ⬇
⬇ **EXHIBIT 110** ⬇
⬇ **EXHIBIT 110** ⬇
⬇ **EXHIBIT 110** ⬇
⬇ **EXHIBIT 110** ⬇
⬇ **EXHIBIT 110** ⬇
⬇ **EXHIBIT 110** ⬇
⬇ **EXHIBIT 110** ⬇
⬇ **EXHIBIT 110** ⬇
⬇ **EXHIBIT 110** ⬇
⬇ **EXHIBIT 110** ⬇
⬇ **EXHIBIT 110** ⬇
⬇ **EXHIBIT 110** ⬇
⬇ **EXHIBIT 110** ⬇
⬇ **EXHIBIT 110** ⬇
⬇ **EXHIBIT 110** ⬇
⬇ **EXHIBIT 110** ⬇
⬇ **EXHIBIT 110** ⬇
⬇ **EXHIBIT 110** ⬇
⬇ **EXHIBIT 110** ⬇
⬇ **EXHIBIT 110** ⬇
⬇ **EXHIBIT 110** ⬇
⬇ **EXHIBIT 110** ⬇

Relevant documents from: <u>United States v. Luis Soto</u>, Crim. No. 03:09CR200 (AWT), Doc. #112-1 (D. Conn., Jun. 28, 2010); Note exhibit includes sample of cell site information provided to the government by Sprint Nextel Corporation in response to a court order obtained under 18 U.S.C. § 2703(d); all documents are public record with full versions available on PACER;

Case 2:09-cr-00240-GMN-GWF Document 321-6 Filed 05/25/12 Page 47 of 112

| Date | Time | Duration (sec) | FromUrbanArea NetworkCode | FromACGId | Destination UFMI | | | Direct Connect Number |
|---|---|---|---|---|---|---|---|---|
| 25-Jul-08 | 12:23:54 PM | 69.7 | 6 | 1988 | 172 | 1108 | 153 | 172*1108*153 |
| 25-Jul-08 | 12:31:13 PM | 22.3 | 6 | 1988 | 174 | 142575 | 1 | 174*142575*1 |
| 25-Jul-08 | 12:51:07 PM | 32.7 | 6 | 2886 | 172 | 1108 | 48 | 172*1108*48 |
| 25-Jul-08 | 12:53:13 PM | 23.4 | 6 | 1059 | 172 | 1108 | 48 | 172*1108*48 |
| 25-Jul-08 | 1:01:07 PM | 255.4 | 6 | 2165 | 174 | 142575 | 1 | 174*142575*1 |
| 25-Jul-08 | 1:13:11 PM | 86.1 | 6 | 2850 | 172 | 1108 | 153 | 172*1108*153 |
| 25-Jul-08 | 1:16:00 PM | 10.7 | 6 | 2459 | 172 | 1108 | 153 | 172*1108*153 |
| 25-Jul-08 | 1:24:00 PM | 7.1 | 6 | 2459 | 174 | 142575 | 1 | 174*142575*1 |
| 25-Jul-08 | 1:24:49 PM | 18.3 | 6 | 2459 | 172 | 1108 | 153 | 172*1108*153 |
| 25-Jul-08 | 1:58:28 PM | 139 | 6 | 2641 | 172 | 1108 | 153 | 172*1108*153 |
| 25-Jul-08 | 2:18:30 PM | 71.3 | 6 | 2165 | 174 | 142575 | 1 | 174*142575*1 |
| 25-Jul-08 | 2:31:59 PM | 32.4 | 6 | 2525 | 172 | 1108 | 153 | 172*1108*153 |
| 25-Jul-08 | 3:23:35 PM | 8.1 | 6 | 478 | 174 | 142575 | 1 | 174*142575*1 |
| 25-Jul-08 | 3:24:47 PM | 68.9 | 6 | 478 | 174 | 142575 | 1 | 174*142575*1 |
| 25-Jul-08 | 3:37:18 PM | 20.2 | 6 | 1060 | 174 | 142575 | 1 | 174*142575*1 |
| 25-Jul-08 | 3:41:28 PM | 79.9 | 6 | 2641 | 174 | 142575 | 1 | 174*142575*1 |
| 25-Jul-08 | 3:43:45 PM | 177.3 | 6 | 319 | 174 | 142575 | 1 | 174*142575*1 |
| 25-Jul-08 | 4:10:55 PM | 17.5 | 6 | 1508 | 172 | 1108 | 153 | 172*1108*153 |
| 25-Jul-08 | 4:51:17 PM | 70 | 6 | 3297 | 174 | 142575 | 1 | 174*142575*1 |
| 25-Jul-08 | 4:52:48 PM | 13.5 | 6 | 2886 | 174 | 142575 | 1 | 174*142575*1 |
| 25-Jul-08 | 5:06:40 PM | 8 | 6 | 2597 | 172 | 1108 | 153 | 172*1108*153 |
| 25-Jul-08 | 5:07:21 PM | 90.9 | 6 | 2597 | 172 | 1108 | 153 | 172*1108*153 |
| 25-Jul-08 | 5:22:36 PM | 26.4 | 6 | 2850 | 172 | 1108 | 153 | 172*1108*153 |
| 25-Jul-08 | 5:23:19 PM | 23.8 | 6 | 2850 | 172 | 1108 | 153 | 172*1108*153 |
| 25-Jul-08 | 5:46:27 PM | 87.2 | 6 | 2165 | 174 | 142575 | 1 | 174*142575*1 |
| 25-Jul-08 | 6:01:56 PM | 52.6 | 6 | 2165 | 172 | 1108 | 153 | 172*1108*153 |
| 25-Jul-08 | 6:54:06 PM | 125.7 | 6 | 3211 | 172 | 1108 | 153 | 172*1108*153 |
| 25-Jul-08 | 8:17:17 PM | 38.4 | 6 | 757 | 172 | 1108 | 153 | 172*1108*153 |
| 25-Jul-08 | 8:48:46 PM | 83.3 | 6 | 2890 | 172 | 1108 | 153 | 172*1108*153 |
| 25-Jul-08 | 9:02:56 PM | 59.3 | 6 | 2890 | 172 | 1108 | 153 | 172*1108*153 |
| 25-Jul-08 | 9:17:32 PM | 15 | 6 | 2150 | 174 | 142575 | 1 | 174*142575*1 |
| 25-Jul-08 | 9:18:01 PM | 5.1 | 6 | 2150 | 174 | 142575 | 1 | 174*142575*1 |
| 25-Jul-08 | 9:18:33 PM | 8.8 | 6 | 2150 | 174 | 142575 | 1 | 174*142575*1 |
| 25-Jul-08 | 9:18:49 PM | 24.3 | 6 | 2150 | 174 | 142575 | 1 | 174*142575*1 |
| 25-Jul-08 | 9:22:05 PM | 10 | 6 | 317 | 174 | 142575 | 1 | 174*142575*1 |

**SPRINT NEXTEL CORPORATION**

**↓ EXHIBIT 111 ↓**

**↓ EXHIBIT 111 ↓**

**↓ EXHIBIT 111 ↓**

**↓ EXHIBIT 111 ↓**

**↓ EXHIBIT 111 ↓**

**↓ EXHIBIT 111 ↓**

**↓ EXHIBIT 111 ↓**

**↓ EXHIBIT 111 ↓**

**↓ EXHIBIT 111 ↓**

**↓ EXHIBIT 111 ↓**

**↓ EXHIBIT 111 ↓**

**↓ EXHIBIT 111 ↓**

**↓ EXHIBIT 111 ↓**

**↓ EXHIBIT 111 ↓**

**↓ EXHIBIT 111 ↓**

**↓ EXHIBIT 111 ↓**

**↓ EXHIBIT 111 ↓**

**↓ EXHIBIT 111 ↓**

**↓ EXHIBIT 111 ↓**

**↓ EXHIBIT 111 ↓**

**↓ EXHIBIT 111 ↓**

**↓ EXHIBIT 111 ↓**

**↓ EXHIBIT 111 ↓**

**↓ EXHIBIT 111 ↓**

**↓ EXHIBIT 111 ↓**

**↓ EXHIBIT 111 ↓**

**↓ EXHIBIT 111 ↓**

**↓ EXHIBIT 111 ↓**

**↓ EXHIBIT 111 ↓**

**↓ EXHIBIT 111 ↓**

**↓ EXHIBIT 111 ↓**

*ATTACHED EXHIBITS*
*SECOND SUBMISSION OF CONSOLIDATED EXHIBITS*
*RELATING TO DISCOVERY AND SUPPRESSION ISSUES*
*CR08-814-PHX-DGC*

Relevant documents from: <u>In The Matter Of An Application Of The United States Of America For An Order Authorizing The Release Of Historical Cell-Site Information</u>, Case No. 1:10-mc-00550-RRM-JO, Doc. #004-2 (E.D.N.Y., Aug. 24, 2010); Note: exhibit includes sample of cell site information provided to the government by an unknown wireless carrier in response to a court order obtained under 18 U.S.C. § 2703(d); all documents are public record with full versions available on PACER;

# EXHIBIT A

REDACTED

| Customer PTN | Date | Call Initiation Time | Duration (sec) | Type | Forwarded | 911 | International | Caller / Called PTN | Originating Cell Site | Terminating Cell Site |
|---|---|---|---|---|---|---|---|---|---|---|
| | 1-May-2007 | 12:07 PM | 4 | Outbound | No | No | No | | NMA1708R_IN1O2S3O_, (NENG-2) 4361 49874 | NMA1708R_IN1O2S3O_, (NENG-2) 4361 49874 |
| | 1-May-2007 | 12:28 PM | 214 | Inbound | No | No | No | | NMA1708R_IN1O2S3O_, (NENG-2) 4361 49874 | NMA1708R_IN1O2S3O_, (NENG-2) 4361 49874 |
| | 1-May-2007 | 5:57 PM | 3 | Outbound | No | No | No | | NMA1708R_IN1O2S3O_, (NENG-2) 4361 49875 | NMA1708R_IN1O2S3O_, (NENG-2) 4361 49875 |
| | 1-May-2007 | 5:57 PM | 32 | Outbound | No | No | No | | NMA1708R_IN1O2S3O_, (NENG-2) 4361 49875 | NMA1708R_IN1O2S3O_, (NENG-2) 4361 49875 |
| | 1-May-2007 | 5:59 PM | 1202 | Outbound | No | No | No | | NMA1708R_IN1O2S3O_, (NENG-2) 4361 49875 | NMA1708R_IN1O2S3O_, (NENG-2) 4361 49875 |
| | 1-May-2007 | 6:43 PM | 88 | Inbound | No | No | No | | NMA2207R_IBBEACHAM, (NENG-2) 4361 64138 | NMA2207R_IBBEACHAM, (NENG-2) 4361 64138 |
| | 2-May-2007 | 1:42 PM | 286 | Inbound | No | No | No | | NMA0746S_IN23_MYSTC, (NENG-2) 4361 24083 | NMA0746S_IN23_MYSTC, (NENG-2) 4361 24083 |
| | 2-May-2007 | 3:28 PM | 93 | Outbound | No | No | No | | NMA0746S_IN23_MYSTC, (NENG-2) 4361 24083 | NMA0746S_IN23_MYSTC, (NENG-2) 4361 24083 |
| REDACTED | 2-May-2007 | 3:37 PM | 722 | Inbound | No | No | No | | NMA0746S_IN23_MYSTC, (NENG-2) 4361 24083 | NMA0746S_IN23_MYSTC, (NENG-2) 4361 24083 |
| | 2-May-2007 | 4:33 PM | 47 | Outbound | No | No | No | | NMA2115R_INMILLHILL, (NENG-2) 4361 64220 | NMA2115R_INMILLHILL, (NENG-2) 4361 64220 |
| | 2-May-2007 | 4:39 PM | 9 | Outbound | No | No | No | REDACTED | NMA0014R_INCHELSEA, (NENG-2) 4361 4798 | NMA0014R_INCHELSEA, (NENG-2) 4361 4798 |
| | 2-May-2007 | 4:40 PM | 23 | Outbound | No | No | No | | NMA2034R_IBORIENHGT, (NENG-2) 4361 52378 | NMA2034R_IBORIENHGT, (NENG-2) 4361 52378 |
| | 2-May-2007 | 6:07 PM | 6 | Outbound | No | No | No | | NMA0127R_IBBROOKLIN, (NENG-2) 7011 49611 | NMA0127R_IBBROOKLIN, (NENG-2) 7011 49611 |
| | 2-May-2007 | 6:09 PM | 125 | Outbound | No | No | No | | NMA0127R_IBBROOKLIN, (NENG-2) 7011 49611 | NMA0127R_IBBROOKLIN, (NENG-2) 7011 49611 |
| | 2-May-2007 | 6:12 PM | 65 | Outbound | No | No | No | | NMA0127R_IBBROOKLIN, (NENG-2) 7011 49611 | NMA0127R_IBBROOKLIN, (NENG-2) 7011 49611 |
| | 2-May-2007 | 6:18 PM | 85 | Inbound | No | No | No | | NMA0127R_IBBROOKLIN, (NENG-2) 7011 49611 | NMA0127R_IBBROOKLIN, (NENG-2) 7011 49611 |
| | 3-May-2007 | 9:11 AM | 62 | Inbound | No | No | No | | NMA0746S_IN23_MYSTC, (NENG-2) 4361 24083 | NMA0746S_IN23_MYSTC, (NENG-2) 4361 24083 |
| | 3-May-2007 | 11:53 AM | 14 | Outbound | No | No | No | | NMA0746S_IN23_MYSTC, (NENG-2) 4361 24083 | NMA0746S_IN23_MYSTC, (NENG-2) 4361 24083 |
| | 3-May-2007 | 12:04 PM | 497 | Outbound | No | No | No | | NMA0746S_IN23_MYSTC, (NENG-2) 4361 24083 | NMA0746S_IN23_MYSTC, (NENG-2) 4361 24083 |
| | 3-May-2007 | 12:44 PM | 501 | Inbound | No | No | No | | NMA0746S_IN23_MYSTC, (NENG-2) 4361 24083 | NMA0746S_IN23_MYSTC, (NENG-2) 4361 24083 |
| | 3-May-2007 | 1:35 PM | 281 | Inbound | No | No | No | | NMA0746S_IN23_MYSTC, (NENG-2) 4361 24083 | NMA0746S_IN23_MYSTC, (NENG-2) 4361 24083 |
| | 3-May-2007 | 1:40 PM | 6 | Outbound | No | No | No | | NMA0746S_IN23_MYSTC, (NENG-2) 4361 24083 | NMA0746S_IN23_MYSTC, (NENG-2) 4361 24083 |

⬇ **EXHIBIT 112** ⬇
⬇ **EXHIBIT 112** ⬇
⬇ **EXHIBIT 112** ⬇
⬇ **EXHIBIT 112** ⬇
⬇ **EXHIBIT 112** ⬇
⬇ **EXHIBIT 112** ⬇
⬇ **EXHIBIT 112** ⬇
⬇ **EXHIBIT 112** ⬇
⬇ **EXHIBIT 112** ⬇
⬇ **EXHIBIT 112** ⬇
⬇ **EXHIBIT 112** ⬇
⬇ **EXHIBIT 112** ⬇
⬇ **EXHIBIT 112** ⬇
⬇ **EXHIBIT 112** ⬇
⬇ **EXHIBIT 112** ⬇
⬇ **EXHIBIT 112** ⬇
⬇ **EXHIBIT 112** ⬇
⬇ **EXHIBIT 112** ⬇
⬇ **EXHIBIT 112** ⬇
⬇ **EXHIBIT 112** ⬇
⬇ **EXHIBIT 112** ⬇
⬇ **EXHIBIT 112** ⬇
⬇ **EXHIBIT 112** ⬇
⬇ **EXHIBIT 112** ⬇
⬇ **EXHIBIT 112** ⬇
⬇ **EXHIBIT 112** ⬇
⬇ **EXHIBIT 112** ⬇
⬇ **EXHIBIT 112** ⬇
⬇ **EXHIBIT 112** ⬇
⬇ **EXHIBIT 112** ⬇
⬇ **EXHIBIT 112** ⬇
⬇ **EXHIBIT 112** ⬇

*ATTACHED EXHIBITS*
*SECOND SUBMISSION OF CONSOLIDATED EXHIBITS*
*RELATING TO DISCOVERY AND SUPPRESSION ISSUES*
*CR08-814-PHX-DGC*

Relevant documents from In The Matter Of An Application Of The United States Of America For An Order Authorizing The Disclosure Of Latitude And Longitude Data..., 11-MC-00393-SMG (E.D.N.Y. 2010); Note: includes copies of Doc. #001, p. 1-15 (Affidavit); p. 16-19 (order); and p. 20-22 (warrants); all documents are public record with full versions available on PACER;

LMN:SSS
F. #2010R001146/OCDETF #NY-N  **MISC. 10 -393**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - -X

IN THE MATTER OF AN APPLICATION
OF THE UNITED STATES OF AMERICA
FOR AN ORDER AUTHORIZING THE
DISCLOSURE OF LATITUDE AND LONGITUDE
DATA CONCERNING A CELLULAR TELEPHONES
WITH ASSIGNED CALL NUMBERS
(1) 718-669-2367, A WIRELESS TELEPHONE
ISSUED BY SPRINT-NEXTEL WITH IMSI
NUMBER 316010168594500, SUBSCRIBED TO
BY JORGE TAVAREZ, P.O. BOX 54988,
IRVINE, CA 54988;
(2) 917-567-9392, A WIRELESS TELEPHONE
ISSUED BY SPRINT-NEXTEL WITH IMSI
NUMBER 316010168520538, SUBSCRIBED TO
BY ALEX BRITTON, 1025 TELLER AVE.,
BRONX, NY 10456; and
(3) 347-401-6575, A WIRELESS TELEPHONE
ISSUED BY SPRINT-NEXTEL WITH IMSI
NUMBER 316010168546904, SUBSCRIBED TO
BY KK HH, P.O. BOX 54988, IRVINE, CA
92619.

- - - - - - - - - - - - - - - - - - -X

**SEALED AFFIDAVIT**

(Fed. R. Crim P. 41
and 57(b); T. 18,
U.S.C., §§ 3103a and
3117; T. 28., U.S.C.,
§ 1651(a))

EASTERN DISTRICT OF NEW YORK, SS:

PAUL NUGENT, a Special Agent with Immigration and
Customs Enforcement ("ICE"), being duly sworn, deposes and
states:

1.    I am a "federal law enforcement officer" within
the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C),
that is, a government agent engaged in enforcing the criminal
laws and duly authorized by the Attorney General to request a
search warrant.  I have been an ICE Special Agent for
approximately two years and am currently assigned to the John F.

Kennedy Airport Narcotics Smuggling Unit, where I am tasked with investigating narcotics trafficking, money laundering and other offenses. I have been involved in investigations, during the course of which I have conducted or participated in surveillance, execution of search warrants, debriefings of informants and reviews of records. Through my training, education and experience, I have become familiar with the manner in which money laundering and the distribution of controlled substances are conducted and the efforts of persons involved in such activity to avoid detection by law enforcement.

2. I submit this affidavit in support of an application for an warrant pursuant to 18 U.S.C. § 2703(c)(1)(A) and Federal Rule of Criminal Procedure 41, directing Sprint/Nextel to assist agents of ICE and the Drug Enforcement Administration ("DEA") by providing all information, facilities and technical assistance needed to ascertain the physical location of the cellular telephones assigned (1) 718-669-2367, a wireless telephone issued by Sprint-Nextel with IMSI Number 316010168594500, subscribed to by Jorge Tavarez, P.O. Box 54988, Irvine, CA 54988 ("SUBJECT TELEPHONE 1"); (2) 917-567-9392, a wireless telephone issued by Sprint-Nextel with IMSI Number 316010168520538, subscribed to by Alex Britton, 1025 Teller Ave., Bronx, NY 10456 ("SUBJECT TELEPHONE 2"); and (3) 347-401-6575, a wireless telephone issued by Sprint-Nextel with IMSI Number

2

316010168546904, subscribed to by KK HH, P.O. Box 54988, Irvine, CA 92619 ("SUBJECT TELEPHONE 3") (collectively, the "SUBJECT TELEPHONES"), including but not limited to data indicating the specific latitude and longitude data ("Lat. & Long. Data"), or other precise location information[1] concerning the SUBJECT TELEPHONES (the "Requested Information"), for a period of thirty (30) days.

3.     I have personally participated in the investigation set forth below.  I am familiar with the facts and circumstances of the investigation through my personal participation; from discussions with other agents of ICE, the DEA and other law enforcement agencies; from my discussions with witnesses involved in the investigation; and from my review of records and reports relating to the investigation.  Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the information was provided by another ICE agent, law enforcement officer or witness who may have had either direct or hearsay knowledge of that statement and to whom I or others have spoken or whose reports I have read and reviewed.

---

[1]     Such information shall, where other information is unavailable, include records reflecting the tower and antenna face ("cell site") used by the SUBJECT TELEPHONES at the start and end of any call.  In requesting cell site information, the government does not concede that such cell site records -- routinely retained by wireless carriers as business records -- may only be obtained via a warrant issued on probable cause.  See In re Application, 460 F. Supp. 2d 448 (S.D.N.Y. 2006) (authorizing prospective acquisition of cell-site records under combined authority of 18 U.S.C. 2703(d) & 3121 et seq.).

Such statements are among many statements made by others and are stated in sum and substance and in part unless otherwise indicated. Since this affidavit is being submitted for the limited purpose of securing an order authorizing the acquisition of the Requested Information, I have not included details of every aspect of the investigation. Facts not set forth herein, or in the attached exhibits, are not being relied on in reaching my conclusion that the requested order should be issued. Nor do I request that this Court rely on any facts not set forth herein in reviewing this application.

4. Probable cause exists to believe that the Requested Information will lead to the location of evidence of criminal activity involving Angel CAMPUSANO, also known as "Negro," Elio YAN BIENEME, also known as "Alex Britton," "Luis Manuel" and "Debolatta," and FNU LNU, also known as "Luis," who are under investigation for money laundering and distribution of controlled substances in the Eastern District of New York.

Probable Cause to Believe That Latitude and Longitude
Information for the SUBJECT TELEPHONES
Will Reveal Evidence of Criminal Activity

5. I submit that the following establishes probable cause to believe that crimes have been committed, that Angel CAMPUSANO, also known as "Negro," Elio YAN BIENEME, also known as "Alex Britton," "Luis Manuel" and "Debolatta," and FNU LNU, also known as "Luis" ("LUIS"), together with others, committed those

4

crimes, and that the information likely to be received concerning the location of the SUBJECT TELEPHONES used by CAMPUSANO, BIENEME, and LUIS, respectively, will constitute evidence of that crime. Based on wire communications intercepted over authorized wiretaps, this investigation has established information indicating that CAMPUSANO, BIENEME, and LUIS are using SUBJECT TELEPHONES 1, 2 and 3, respectively.

      6.    Since in or about January 2009, ICE has been investigating ANGEL CAMPUSANO, among others, for the distribution of cocaine and heroin in the New York City area. In connection with that investigation, on March 9, 2010, the Honorable Nicholas G. Garaufis, United States District Judge in the Eastern District of New York, authorized a wiretap for wire communications and GPS data for thirty days on CAMPUSANO's telephone number, SUBJECT TELEPHONE 1 (10-Misc.-145). On April 8, 2010 Judge Garaufis ordered the continued interception of wire communications over SUBJECT TELEPHONE 1 and the initial interception of wire communications over SUBJECT TELEPHONE 2, along with GPS data, for another thirty days. On May 7, 2010, the Honorable Brian M. Cogan, United States District Judge in the Eastern District of New York, ordered the continued interception of SUBJECT TELEPHONES 1 and 2, along with GPS data, for another thirty days. In addition, on May 27, 2010, the Honorable Marilyn D. Go, Magistrate Judge in the Eastern District of New York, authorized

the retrieval of historical cell site data for SUBJECT TELEPHONE
3 (10-Misc.-355).

7.     I listened to telephone calls made by CAMPUSANO on
SUBJECT TELEPHONE 1 between March 10, 2010 and June 5, 2010.  I
listened to telephone calls made by BIENEME on SUBJECT TELEPHONE
2 between April 8, 2010 and June 5, 2010.  On those wiretaps, I
listened to telephone calls made by LUIS who was intercepted
using SUBJECT TELEPHONE 3 discussing narcotics trafficking in
coded language with BIENEME over the wiretap on the BIENEME
phone.  Based on the intercepted conversations, LUIS is believed
to both distribute cocaine and heroin for BIENEME, as well as
supply heroin and cocaine to BIENEME.

8.     Specifically, on or about May 22, 2010, at
approximately 6:12 p.m., CAMPUSANO received a call on Subject
Telephone 1 from an unidentified male ("UM-1") who used a
telephone number with subscriber information that is unavailable.
The area code for UM-1's telephone number could not be
determined.  In that conversation, UM-1 told CAMPUSANO, "So I
told you that I spoke to a friend of mine that has ten of those
things in Costa Rica of that good stuff.  You get it."  CAMPUSANO
responded, "Yes, he told me that he has some cars there in Costa
Rica."  UM-1 said, "So, he wanted to see how those cars were and
all that.  He told me to try to take it over there so that we can
modify it."  CAMPUSANO said, "OK."  (Call 6562).  Based on my

6

training, experience and knowledge of the investigation, I
believe that, in this conversation, UM-1 told CAMPUSANO that UM-1
could get ten kilograms of narcotics imported into the United
States from Costa Rica ("ten of those things in Costa Rica of
that good stuff"). I further believe that CAMPUSANO acknowledged
his understanding of UM-1's code for drugs ("Yes, he told me that
he has some cars there in Costa Rica.").

      9.    On or about May 23, 2010, at approximately 2:09
p.m., CAMPUSANO used Subject Telephone 1 to call an unidentified
male who was referred to as "El GRANDE" ("GRANDE"). The area
code for GRANDE's telephone number indicated that the telephone
number was a New York City number. GRANDE told CAMPUSANO, "I was
trying to tell [you] that I was sick and couldn't leave the
house. ... I said if I wasn't going to last night, I would have
gone early to get it. ... That's why [I'll] try to come to see
what we are going to do tomorrow." CAMPUSANO said, "Yes, it was
my fault. ... I went to bed and didn't leave ... but if you want,
I can go there now." GRANDE replied, "Well, you lost another
day." CAMPUSANO said, "Yes, but everything is for a reason."
Later, GRANDE said, "That's true ... I wanted early too, so we
can see where we are." CAMPUSANO said, "I'll go there now. ...
I'll give you a call when I'm on my way." (Call 6595). Based on
my training, experience and knowledge of the investigation, I
believe that, in this conversation, GRANDE told CAMPUSANO that

GRANDE planned to go early to get some narcotics but was not feeling well ("I would have gone early to get it."). I further believe that GRANDE told CAMPUSANO that CAMPUSANO missed an opportunity to make money selling narcotics ("you lost another day").

10. On or about May 20, 2010, at approximately 7:00 p.m., BIENEME received a call on Subject Telephone 2 from an unidentified male ("UM-2") who used a telephone number with subscriber information that is unavailable. The area code for the UM's telephone number could not be determined. BIENEME told UM-2, "Talk to me because we are like two orphans." UM-2 replied, "No, I was just looking at your friends, the ones that were in front of you." BIENEME said, "They are here [and] must be looking for your associate." UM-2 said, "I see, but I thought your associate was clean." BIENEME responded, "You say clean? ... They are on this side, Debolatta." UM-2 asked, "What did you say?" BIENEME responded, "That they are on this side, too ..." UM-2 said, "... you moved recently there around that zone." MANUEL said, "Oh yeah, OK, let me head down there then." UM-2 said, "Wait [until] it gets cold because we are going to sweat carrying the mix." BIENEME said, "OK." UM-2 said, "Yeah, let's do it later, so nobody will stick to us." (Call 2379). Based on my training, experience and knowledge of the investigation, I believe that, in this conversation, BIENEME and UM-2 noticed that

8

law enforcement officers ("your friends") were conducting
surveillance and UM-2 thought BIENEME's partner did not have
prior arrests ("I thought your associate was clean."). In fact,
an Immigration and Customs Enforcement surveillance team was
conducting surveillance at the time and location of this
telephone call. I further believe that BIENEME and UM-2 waited
until the area was clear of law enforcement ("gets cold") to do
the narcotics deal to avoid law enforcement ("we are going to
sweat carrying the mix").

      11.    On or about May 21, 2010, at approximately 5:01
p.m., BIENEME received a call on Subject Telephone 2 from an
unidentified female ("UF") who used a telephone number with
subscriber information that is unavailable. The area code for
the UF's telephone number indicated that the telephone number was
a Dominican Republic number. In that conversation, the UF told
BIENEME, "One on top of the other. They give it out, but you
have to deduct the old one." BIENEME asked, "What do you mean?"
The UF responded, "I'm telling you. They will deliver, but they
expect to be paid for the old ones. If you bring with the same
fifty when [it] is seventy." BIENEME said, "What you have to do
then is to tell him to give you the quantity for two, and they
can deduct the other ones." The UF asked, "What do you mean the
quantity of two?" BIENEME responded, "Of course, you have to
calculate." The UF asked, "What do you mean the quantity of

9

two?" BIENEME responded, "Ask him to give you the same right, and then when they deduct the other ones, then two should remain." The UF said, "No, they are not going to give me all that." (Call 2444). Based on my training, experience and knowledge of the investigation, I believe that, in this conversation, BIENEME attempted to persuade the UF to give him two kilograms of narcotics upfront ("tell him to give you the quantity for two" and "two should remain") even though BIENEME had only paid for one kilogram from a prior transaction ("you have to deduct the old one").

12.     On or about May 27, 2010, at approximately 9:52 p.m., BIENEME used SUBJECT TELEPHONE 2 to call LUIS on SUBJECT TELEPHONE 3, using push-to-talk communication ("PTT"). In that conversation, LUIS told BIENEME, "I'm quiet, and you?" BIENEME responded, "Where are you at?" LUIS said, "I'm at ... Jerome." BIENEME said, "Do you think you can get 700 loose." LUIS responded, "700 loose ... let me ask him." (Call 2944). Based on my training, experience and knowledge of the investigation, I believe that, in this conversation, BIENEME asked LUIS whether LUIS could get 700 grams of heroin ("700 loose"), and LUIS confirmed that he would call his source with the requeist.

13.     On or about May 27, 2010, at approximately 10:07 p.m., BIENEME used SUBJECT TELEPHONE 2 to call LUIS on SUBJECT

TELEPHONE 3, using PTT.  In that conversation, LUIS said, "He was outside, but now he is back and he said that yes, they have it." BIENEME asked, "And what number?"  LUIS responded, "Two." BIENEME said, "OK.  I'll call you back."  (Call 2949.)  Based on my training, experience and knowledge of the investigation, I believe that, in this conversation, LUIS confirmed that he could obtain the 700 grams ("yes, they have it") and asked BIENEME for the price ("And what number?").  I further believe that LUIS stated that the price was $42,000 ("two") for the 700 grams of heroin.

14.    On or about May 27, 2010, at approximately 10:26 p.m., BIENEME received a call on SUBJECT TELEPHONE 2 from LUIS who used PTT through SUBJECT TELEPHONE 3.  In that conversation, BIENEME said, "I spoke with this guy and set it up for tomorrow at 11:00 a.m. regarding those 700 pesos."  Based on my training, experience and knowledge of the investigation, I believe that, in this conversation, BIENEME confirmed the transaction for 700 grams of heroin ("700 pesos") for the following morning.

15.    ICE is conducting an investigation to locate evidence of criminal activity involving CAMPUSANO, BIENEME, and LUIS, who are under investigation for money laundering and distribution of controlled substances.  Based on my training and experience, latitude and longitude information can be used to aid law enforcement agents in obtaining material to an ongoing

11

criminal investigation, including locating and surveilling CAMPUSANO, BIENEME, and LUIS. In addition, latitude and longitude information has yielded information that was relevant and material in previous narcotics investigations. Such information includes leads relating to: (1) the locations of suspected suppliers, customers and other individuals who assist in the distribution of narcotics; (2) the addresses of "stash" houses where narcotics are stored; (3) the identity of transportation sources used by drug traffickers; (4) the locations of money transfer businesses used by members of the operation to launder proceeds of drug trafficking activities or through which money is exchanged with coconspirators; (5) the geographic breadth of the suspected drug trafficking operation; and (6) the location of the potential organizers, leaders, managers, or supervisors of the suspected trafficking operation.

16. Based on information obtained from the wire interceptions, CAMPUSANO regularly uses SUBJECT TELEPHONE 1, BIENEME regularly uses SUBJECT TELEPHONE 2, and LUIS regularly uses SUBJECT TELEPHONE 3.

17. According to the wire interceptions, CAMPUSANO used SUBJECT TELEPHONE 1 on or about June 5, 2010, BIENEME used SUBJECT TELEPHONE 2 on or about June 5, 2010, and LUIS used SUBJECT TELEPHONE 3 on or about June 3, 2010.

18.     To date, agents have conducted surveillances of CAMPUSANO and BIENEME when they were in and around the Bronx, Manhattan, Brooklyn and Queens.  Agents have attempted to conduct surveillance on LUIS that has not yet been successful.  Based on historical cell site information, agents believe that LUIS lives in the Bronx.

19.     Obtaining the Lat. & Long. Data, generated by the SUBJECT TELEPHONES would enable agents to identify where CAMPUSANO, BIENEME, and LUIS are located so that agents can observe them and gather evidence of criminal activity.

Authorization Request

20.     Based on the foregoing, there is probable cause to believe that the Requested Information will lead to the location of evidence of criminal activity involving CAMPUSANO, BIENEME, and LUIS, who are under investigation for money laundering and distribution of controlled substances.  The Requested Information will assist in determining the approximate location of CAMPUSANO, BIENEME, and LUIS so that law enforcement agents can find him and collect evidence.

WHEREFORE, pursuant to 18 U.S.C. 2703(c)(1)(A) and Federal Rule of Criminal Procedure 41, it is requested that the Court issue a warrant and Order authorizing the acquisition of the Requested Information and directing Sprint/Nextel, the service provider for the SUBJECT TELEPHONES, to initiate a signal

13

to determine the location of the SUBJECT TELEPHONES on the service provider's network or with such other reference points as may be reasonably available and at such intervals and times as directed by the law enforcement agent serving the proposed order, and to furnish the technical assistance necessary to accomplish the acquisition unobtrusively and with a minimum of interference with such services as that provider accords the user(s) of the SUBJECT TELEPHONES, for a period of thirty (30) days. Reasonable expenses incurred pursuant to this activity will be processed for payment by ICE.

IT IS FURTHER REQUESTED that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the SUBJECT TELEPHONES outside of daytime hours.

IT IS FURTHER REQUESTED that the warrant and this affirmation, as it reveals an ongoing investigation, be sealed until further order of the Court in order to avoid premature disclosure of the investigation, guard against fugitives, and better ensure the safety of agents and others, except that working copies should be made available to the United States Attorney's Office, ICE, the DEA, and any other law enforcement agency designated by the United States Attorney's Office.

IT IS FURTHER REQUESTED that, pursuant to 18 U.S.C. 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), the

14

Court authorize notice to be delayed for a period of thirty (30)
days after the termination of the monitoring period authorized by
the warrant.

Dated:   Brooklyn, New York
         June 9, 2010

                                        _____
                                        Paul Nugent
                                        Special Agent
                                        Immigration and Customs Enforcement

Sworn to before me
on June 9, 2010

_____
HON. STEVEN M. GOLD
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

15

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK  `0 -393`

```
- - - - - - - - - - - - - - - - - - - -X
IN THE MATTER OF AN APPLICATION            SEALED ORDER
OF THE UNITED STATES OF AMERICA            OF AUTHORIZATION
FOR AN ORDER AUTHORIZING THE
DISCLOSURE OF LATITUDE AND LONGITUDE
DATA CONCERNING A CELLULAR TELEPHONES
WITH ASSIGNED CALL NUMBERS
(1) 718-669-2367, A WIRELESS
TELEPHONE ISSUED BY SPRINT-NEXTEL
WITH IMSI NUMBER 316010168594500,
SUBSCRIBED TO BY JORGE TAVAREZ, P.O.
BOX 54988, IRVINE, CA 54988;
(2) 917-567-9392, A WIRELESS
TELEPHONE ISSUED BY SPRINT-NEXTEL
WITH IMSI NUMBER 316010168520538,
SUBSCRIBED TO BY ALEX BRITTON, 1025
TELLER AVE., BRONX, NY 10456; and
(3) 347-401-6575, A WIRELESS
TELEPHONE ISSUED BY SPRINT-NEXTEL
WITH IMSI NUMBER 316010168546904,
SUBSCRIBED TO BY KK HH, P.O. BOX
54988, IRVINE, CA 92619.
- - - - - - - - - - - - - - - - - - - X
```

Application having been made by the United States for an

Order pursuant to 18 U.S.C. 2703(c)(1)(A) and Federal Rule of

Criminal Procedure 41, directing Sprint/Nextel to assist agents

of Immigration and Customs Enforcement ("ICE") by providing all

information, facilities and technical assistance needed to

ascertain the physical location of the cellular telephone

assigned (1) 718-669-2367, a wireless telephone issued by Sprint-

Nextel with IMSI Number 316010168594500, subscribed to by Jorge

Tavarez, P.O. Box 54988, Irvine, CA 54988; (2) 917-567-9392, a

wireless telephone issued by Sprint-Nextel with IMSI Number

316010168520538, subscribed to by Alex Britton, 1025 Teller Ave.,

1

Bronx, NY 10456; and (3) 347-401-6575, a wireless telephone
issued by Sprint-Nextel with IMSI Number 316010168546904,
subscribed to by KK HH, P.O. Box 54988, Irvine, CA 92619
(collectively, the "SUBJECT TELEPHONES"), including but not
limited to data indicating the specific latitude and longitude of
(or other precise location information concerning) the SUBJECT
TELEPHONES (the "Requested Information"), for a period of thirty
(30) days;

The Court finds that there is probable cause to believe
that the Requested Information will lead to location of criminal
activity involving Angel CAMPUSANO, also known as "Negro," Elio
YAN BIENEME, also known as "Alex Britton," "Luis Manuel" and
"Debolatta," and FNU LNU, also known as "Luis," who are under
investigation for money laundering and distribution of controlled
substances in the Eastern District of New York.

IT IS HEREBY ORDERED pursuant to 18 U.S.C. Section
2703(c)(1)(A) and Federal Rule of Criminal Procedure 41 that
Sprint/Nextel, beginning at any time within ten (10) days of the
date of this Order and for a period not to exceed 30 days from
the date of this Order, provide to agents of ICE the Requested
Information[1] concerning the SUBJECT TELEPHONES, with said
authority to extend to any time of the day or night as required,

---

[1]     Such information shall, where other information is
unavailable, include records reflecting the tower and antenna
face ("cell site") used by the SUBJECT TELEPHONES at the start
and end of any call.

2

including when the SUBJECT TELEPHONES leave the Eastern District of New York; all of said authority being expressly limited to ascertaining the physical location of the SUBJECT TELEPHONES and expressly excluding the contents of any communications conducted by the user(s) of the SUBJECT TELEPHONES.

It is further ORDERED that Sprint/Nextel, the service provider for the SUBJECT TELEPHONES, initiate a signal to determine the location of the subject's mobile device on Sprint/Nextel's network or with such other reference points as may be reasonably available and at such intervals and times as directed by the law enforcement agent serving the proposed order, and furnish the technical assistance necessary to accomplish the acquisition unobtrusively and with a minimum of interference with such services as Sprint/Nextel accords the user(s) of the SUBJECT TELEPHONES.

It is further ORDERED that ICE compensate Sprint/Nextel for reasonable expenses incurred in complying with any such request.

It is further ORDERED that the Court's Order and the accompanying Affirmation submitted in support thereof, as they reveal an ongoing investigation, be sealed until further Order of the Court to avoid premature disclosure of the investigation, guard against fugitives, and better ensure the safety of agents and others, except that copies of the Court's Order in full or

3

redacted form may be maintained by the United States Attorney's Office, and may be served on Special Agents and other investigative and law enforcement officers of ICE and the Drug Enforcement Administration ("DEA"), federally deputized state and local law enforcement officers, and other government and contract personnel acting under the supervision of such investigative or law enforcement officers, and Sprint/Nextel as necessary to effectuate the Court's Order.

It is further ORDERED that this warrant be returned to the issuing judicial officer within 10 days after the termination of the execution of the warrant.

It is further ORDERED that, pursuant to 18 U.S.C. 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), service of notice may be delayed for a period of 30 days after the termination of the monitoring period authorized by the warrant. It is further ORDERED that Sprint/Nextel, its affiliates, officers, employees, and agents not disclose the Court's Order or the underlying investigation, until notice is given as provided above.

Dated: June 2, 2010
Time:

_____
HON. STEVEN M. GOLD
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

4

**United States District Court**

| | |
|---|---|
| | DISTRICT |
| | Eastern District of New York |

UNITED STATES OF AMERICA
v.

| DOCKET NO. | MAGISTRATE'S CASE NO. |
|---|---|
| MISC. 10 - 393 | |

To:
ANY AUTHORIZED FEDERAL AGENT

PREMISES KNOWN AND DESCRIBED AS
A CELLULAR TELEPHONE WITH ASSIGNED
CALL NUMBER 347-401-6575, A WIRELESS
TELEPHONE ISSUED BY SPRINT-NEXTEL WITH
IMSI NUMBER 316010168546904,
SUBSCRIBED TO BY KK HH, P.O. BOX
54988, IRVINE, CA 92619

Affidavit having been made before me by the below-named affiant to obtain precise location information concerning the following cell phones (the "Premises"):

A CELLULAR TELEPHONE WITH ASSIGNED CALL NUMBER A CELLULAR TELEPHONE WITH ASSIGNED CALL NUMBER 347-401-6575, a telephone issued by Sprint-Nextel with IMSI Number 316010168546904, subscribed to by KK HH, P.O. Box 54988, Irvine, CA 92619

and as I am satisfied that there is good cause for the acquisition of precise location information concerning the Premises,

YOU ARE HEREBY COMMANDED to acquire precise location data concerning the Premises named above for a period of thirty (30) days starting within ten (10) calendar days of the date of this order, during any time of day; to return this warrant to the U.S. Magistrate Judge designated in this warrant within ten (10) calendar days after the execution of the warrant has ended; and pursuant to 18 U.S.C. § 3103a(b)(3) authorizing delayed notification, to serve notice within 30 days after the monitoring period authorized by the warrant has ended.

| NAME OF AFFIANT | SIGNATURE OF JUDGE OR U.S. MAGISTRATE | DATE/TIME ISSUED |
|---|---|---|
| SA PAUL NUGENT | | 2/9/10 3PM |

| 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 𝔠𝔬𝔲𝔯𝔱 | DISTRICT<br>Eastern District of New York |
|---|---|

| UNITED STATES OF AMERICA<br>v. | DOCKET NO.<br>MISC 10-393 | MAGISTRATE'S CASE NO. |
|---|---|---|

To:

**ANY AUTHORIZED FEDERAL AGENT**

PREMISES KNOWN AND DESCRIBED AS
A CELLULAR TELEPHONE WITH ASSIGNED
CALL NUMBER 917-567-9392, A WIRELESS
TELEPHONE ISSUED BY SPRINT/NEXTEL,
WITH IMSI NUMBER 316010168520538,
SUBSCRIBED TO BY ALEX BRITTON, 1025
TELLER AVE., BRONX, NY 10456

Affidavit having been made before me by the below-named affiant to obtain precise location information concerning the following cell phones (the "Premises"):

A CELLULAR TELEPHONE WITH ASSIGNED CALL NUMBER A CELLULAR TELEPHONE WITH ASSIGNED CALL NUMBER 917-567-9392, A WIRELESS TELEPHONE ISSUED BY SPRINT/NEXTEL, WITH IMSI NUMBER 316010168520538, SUBSCRIBED TO BY ALEX BRITTON, 1025 TELLER AVE., BRONX, NY 10456

and as I am satisfied that there is good cause for the acquisition of precise location information concerning the Premises,

YOU ARE HEREBY COMMANDED to acquire precise location data concerning the Premises named above for a period of thirty (30) days starting within ten (10) calendar days of the date of this order, during any time of day, to return this warrant to the U.S. Magistrate Judge designated in this warrant within ten (10) calendar days after the execution of the warrant has ended; and pursuant to 18 U.S.C. § 3103a(b)(3) authorizing delayed notification, to serve notice within 30 days after the monitoring period authorized by the warrant has ended.

| NAME OF AFFIANT<br>SA PAUL NUGENT | SIGNATURE OF JUDGE OR U.S. MAGISTRATE | DATE/TIME ISSUED<br>6/9/10  3²⁰ m |
|---|---|---|

AO
(Rev.
8/97)

WARRANT ON WRITTEN AFFIDAVIT FOR CELL PHONE LOCATION DATA

| **United States District Court** | DISTRICT<br>Eastern District of New York |
|---|---|

| UNITED STATES OF AMERICA<br>v. | DOCKET NO.<br>MISC. 10 -393 | MAGISTRATE'S CASE NO. |
|---|---|---|

To: **ANY AUTHORIZED FEDERAL AGENT**

PREMISES KNOWN AND DESCRIBED AS
A CELLULAR TELEPHONE WITH ASSIGNED
CALL NUMBER 718-669-2367, A WIRELESS
TELEPHONE ISSUED BY SPRINT/NEXTEL,
WITH IMSI NUMBER 316010168594500,
SUBSCRIBED TO BY JORGE TAVAREZ, P.O.
BOX 54988, IRVINE, CA 54988

Affidavit having been made before me by the below-named affiant to obtain precise location information concerning the following cell phones (the "Premises"):

A CELLULAR TELEPHONE WITH ASSIGNED CALL NUMBER A CELLULAR TELEPHONE WITH ASSIGNED CALL NUMBER 718-669-2367, A WIRELESS TELEPHONE ISSUED BY SPRINT/NEXTEL, WITH IMSI NUMBER 316010168594500, SUBSCRIBED TO BY JORGE TAVAREZ, P.O. BOX 54988, IRVINE, CA 54988

and as I am satisfied that there is good cause for the acquisition of precise location information concerning the Premises,

YOU ARE HEREBY COMMANDED to acquire precise location data concerning the Premises named above for a period of thirty (30) days starting within ten (10) calendar days of the date of this order, during any time of day; to return this warrant to the U.S. Magistrate Judge designated in this warrant within ten (10) calendar days after the execution of the warrant has ended; and pursuant to 18 U.S.C. § 3103a(b)(3) authorizing delayed notification, to serve notice within 30 days after the monitoring period authorized by the warrant has ended.

| NAME OF AFFIANT<br>SA PAUL NUGENT | SIGNATURE OF JUDGE OR U.S. MAGISTRATE | DATE/TIME ISSUED<br>6/9/10 |
|---|---|---|

**⬇ EXHIBIT 113 ⬇**

**⬇ EXHIBIT 113 ⬇**

**⬇ EXHIBIT 113 ⬇**

**⬇ EXHIBIT 113 ⬇**

**⬇ EXHIBIT 113 ⬇**

**⬇ EXHIBIT 113 ⬇**

**⬇ EXHIBIT 113 ⬇**

**⬇ EXHIBIT 113 ⬇**

**⬇ EXHIBIT 113 ⬇**

**⬇ EXHIBIT 113 ⬇**

**⬇ EXHIBIT 113 ⬇**

**⬇ EXHIBIT 113 ⬇**

**⬇ EXHIBIT 113 ⬇**

**⬇ EXHIBIT 113 ⬇**

**⬇ EXHIBIT 113 ⬇**

**⬇ EXHIBIT 113 ⬇**

**⬇ EXHIBIT 113 ⬇**

**⬇ EXHIBIT 113 ⬇**

**⬇ EXHIBIT 113 ⬇**

**⬇ EXHIBIT 113 ⬇**

**⬇ EXHIBIT 113 ⬇**

**⬇ EXHIBIT 113 ⬇**

**⬇ EXHIBIT 113 ⬇**

**⬇ EXHIBIT 113 ⬇**

**⬇ EXHIBIT 113 ⬇**

**⬇ EXHIBIT 113 ⬇**

**⬇ EXHIBIT 113 ⬇**

**⬇ EXHIBIT 113 ⬇**

**⬇ EXHIBIT 113 ⬇**

**⬇ EXHIBIT 113 ⬇**

**⬇ EXHIBIT 113 ⬇**

**⬇ EXHIBIT 113 ⬇**

*ATTACHED EXHIBITS*
*SECOND SUBMISSION OF CONSOLIDATED EXHIBITS*
*RELATING TO DISCOVERY AND SUPPRESSION ISSUES*
*CR08-814-PHX-DGC*

Relevant documents from: <u>United States v. Velasquez</u>, No. S3-08-CR-0730-WHA (N.D.Cal, Aug. 17, 2010); Note: includes historical cell site location information orders attached to "Declaration Of W.S. Wilson Leung In Support Of Government's Opposition To Danilo Velasquez's Suppression Motion," Doc. No. 2130-1, p. 4-12; all documents are public record with full versions available on PACER;



U.S. Immigration and Customs Enforcement
630 Sansome Street
San Francisco, CA 94111

# U.S. Immigration and Customs Enforcement

Office of Investigations

# Facsimile Transmission

Date: April 6, 2009

To: MetroPCS – Subpoena / Compliance Center

Fax: (972) 860-2635

| From: Special Agent Valerie Paul    Fax: (415) 844-5335 | Phone: (415) 748-0402 |
|---|---|
| ☒ Urgent  ☐ Action  ☐ Concurrence  ☐ FYI | Number of pages including cover: 4 |

### NOTICE

*The document being faxed is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential, and exempt from disclosure under applicable law. If you have received this communication in error, please notify us immediately by telephone, and return the original message to us at the address above via the U. S. Postal Service.*

*YOU ARE HEREBY NOTIFIED THAT ANY UNAUTHORIZED DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED.*

**Comments:**

Please see attached order for telephone information regarding number **(415) 504-4529** and **(415) 410-8705.**

Thank you,
Valerie Paul
Department of Homeland Security
ICE Special Agent Badge # 118
630 Sansome Street, Suite 848
San Francisco CA 94111
(415) 844-5446 or (415) 748-0402
(415) 844-5335 fax
Valerie.paul@dhs.gov

1   JOSEPH P. RUSSONIELLO (CABN 44332)
    United States Attorney
2
    BRIAN J. STRETCH (CABN 163973)
3   Chief, Criminal Division

4   W.S. WILSON LEUNG (CABN 190939)
    Assistant United States Attorney
5
        450 Golden Gate Avenue, 9th Floor
6       San Francisco, California 94102
        Telephone: (415) 436-6758
7       Facsimile: (415) 436-6753
        E-Mail:    wilson.leung@usdoj.gov
8

9   Attorneys for the United States of America

10

11                  UNITED STATES DISTRICT COURT

12              FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                    SAN FRANCISCO DIVISION

14

15  IN RE TELEPHONE                    )   No.
    INFORMATION NEEDED FOR A           )
16  CRIMINAL INVESTIGATION             )   [PROPOSED] ORDER TO
                                        )   METRO PCS
17                                      )
                                        )   (UNDER SEAL)
18  _____)

19          This matter having come before the court pursuant to an application under Title 18,

20  United States Code, Sections 2703(c) and (d), by Assistant United States Attorney W.S. Wilson

21  Leung, an attorney for the Government as defined by Fed. R. Crim. P. 1(b)(1), requesting an

22  order authorizing the disclosure of subscriber and account information, historical[1] cell site

23  information[2], and call detail records[3] for the following two cellular telephones with service

24  _____

25      [1]     This order does not authorize the disclosure of any prospective cell site
    information but, rather, only the historical cell site information pertaining to the CELLPHONES
26  for the time period from September 1, 2008 through the date of this order.

27      [2]     A cellular telephone must send a radio signal to an antenna tower which, in turn, is
28  connected to the provider's network. The area covered by the tower varies depending, *inter alia*,
    on the population density of the area. This area is often divided into thirds, or 120 degree

1  provided by Metro PCS:

2        a.    A cellular telephone assigned call number (415) 504-4529; and

3        b.    A cellular telephone assigned call number (415) 410-8705,

4  (collectively, the "CELLPHONES"), regarding telephone calls placed from and received by the

5  CELLPHONES (to include calls using any interconnect and direct connect modes) from

6  September 1, 2008 through the date of this order.

7      UPON REVIEW OF THE APPLICATION, THE COURT HEREBY FINDS THAT:

8      Pursuant to 18 U.S.C. §§ 2703(c)(1)(B) and 2703(d), Applicant has set forth specific and

9  articulable facts showing that there are reasonable grounds to believe that the requested

10  information regarding the CELLPHONES from September 1, 2008 through the date of this order,

11  will be relevant and material to an ongoing criminal investigation.

12      THEREFORE, IT IS FURTHER ORDERED, pursuant to 18 U.S.C. §§ 2703(c)(1)(B),

13  2703(c)(2) and 2703(d), that Metro PCS, any internet service provider or other electronic

14  communications provider providing voice-over IP telephony, and any other local, long distance,

15  or wireless carrier servicing the CELLPHONES, and any other person or entity providing wire

16  communication service in the United States whose assistance may facilitate execution of the

17  order, shall disclose FORTHWITH to Special Agents of Immigration and Customs Enforcement

18  ("ICE"):

19      1.    Any and all subscriber and account information for the CELLPHONES;

20      2.    The location of cell site/sector (physical address) at call origination (for outbound

21

22  sectors. "Cell site information" as used in this Order refers to the antenna tower and sector to
which the cell phone sends its signal. This includes the physical location and/or address of the

23  cellular tower and identification of the particular sector of the tower receiving the signal. This

24  information does not provide the specific or precise geographical coordinates of the cellular
telephone.

25

26      ³⁴"Call detail records" are similar to toll records (*i.e.*, historical telephone records of
telephone activity, usually listing outgoing calls and date, time, and duration of each call), which

27  are made and retained in the ordinary course of business. "Call detail records" is the term used
when referring to toll records of cellular telephones rather than hardline telephones. Unlike toll

28  records, however, call detail records also include a record of incoming calls and the
cellsite/sectors used by the cellular telephone to obtain service for a call or when in an idle state.

2

1  calling) and call termination (for incoming calls), for the CELLPHONES, including any calls

2  using the interconnect and direct connect functions, from September 1, 2008 through the date of

3  this order, but such information shall not include any prospective information; and

4        3.    Any and all call detail records for the CELLPHONES from September 1, 2008

5  through the date of this order.

6       Good cause having been shown, IT IS FURTHER ORDERED, pursuant to 18 U.S.C. §§

7  2705(b) and 3123(d), that this order and the application be sealed until otherwise ordered by the

8  court, and that the local, long distance, and wireless carriers listed herein, any internet service

9  provider or other electronic communications provider providing voice-over IP telephony, and any

10  other local, long distance, or wireless carrier servicing the CELLPHONES who is obligated by

11  the order to provide assistance to the Applicant, shall not disclose in any manner, directly or

12  indirectly, by any action or inaction, to the listed subscriber(s) for the CELLPHONES, the

13  occupant of said premises, the subscribers of the incoming calls to or outgoing calls from the

14  CELLPHONES, or to any other person, the existence of this order, in full or redacted form, or of

15  this investigation, unless otherwise ordered by this court.

16       IT IS FURTHER ORDERED that the identity of any targets of the investigation may be

17  redacted from any copy of the order served on any service provider or other person, and that this

18  order and application be SEALED until otherwise ordered by the court.

19

20  DATED: April 6, 2009

21

22                HONORABLE BERNARD ZIMMERMAN

                     UNITED STATES MAGISTRATE JUDGE

23

24

25

26

27

28

3



415 410-8705

UNITED STATES ATTORNEY'S OFFICE, NORTHERN DISTRICT OF CALIFORNIA

**U.S. v. Ivan Cerna, et al.**

2703(d) MetroPCS
(415) 504-4529
(415) 374-8705

Produced

4/19/10

Notice: The documents provided on this Compact Disc are for your reading and reviewing only, and are not to be modified in any manner. We maintain the original documents from which our Master Disc and your disc were made. If there are any discrepancies between the documents or images derived from your disc which you reference or submit, and the original documents and Master Disc, the original documents and the Master Disc will constitute the best evidence.



U.S. Immigration and Customs Enforcement
630 Sansome Street
San Francisco, CA 94111

# U.S. Immigration and Customs Enforcement

Office of Investigations

# Facsimile Transmission

Date: April 24, 2009

To: MetroPCS Communication INC

Fax:  (972) 860-2635

| Attn: Subpoena & Court Order Compliance | |
|---|---|
| From:  Special Agent Valerie Paul    Fax: (415) 844-5335 | Phone:  (415) 748-0402 |
| ☐ Urgent   ☒ Action   ☐ Concurrence   ☐ FYI | Number of pages including cover: 4 |

### NOTICE
*The document being faxed is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential, and exempt from disclosure under applicable law.  If you have received this communication in error, please notify us immediately by telephone, and return the original message to us at the address above via the U. S. Postal Service.*

*YOU ARE HEREBY NOTIFIED THAT ANY UNAUTHORIZED DISSEMINATION, DISTRIBUTION, OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED.*
**Comments:**

Please see attached Court Order. Please return results to:
Special Agent Ben Horton
630 Sansome Street, 8th floor
San Francisco, CA 94111
415-844-5335 fax
Benjamin.horton@dhs.gov

Thank you,
Valerie Paul
Department of Homeland Security
ICE Special Agent Badge # 118
630 Sansome Street, Suite 848
San Francisco CA 94111
(415) 844-5317 or (415) 748-0402
(415) 844-5335 fax
Valerie.paul@dhs.gov

1   JOSEPH P. RUSSONIELLO (CABN 44332)
    United States Attorney
2
    BRIAN J. STRETCH (CABN 163973)
3   Chief, Criminal Division

4   W.S. WILSON LEUNG (CABN 190939)
    Assistant United States Attorney
5
        450 Golden Gate Avenue, 9th Floor
6       San Francisco, California 94102
        Telephone: (415) 436-6758
7       Facsimile: (415) 436-6753
        E-Mail:    wilson.leung@usdoj.gov
8

9   Attorneys for the United States of America

10

11                  UNITED STATES DISTRICT COURT

12           FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                  SAN FRANCISCO DIVISION    CR 09 90 261 MISC

14

15  IN RE TELEPHONE                   )    No.
    INFORMATION NEEDED FOR A          )                              BZ
16  CRIMINAL INVESTIGATION            )    [PROPOSED] ORDER TO
                                      )    METRO PCS
17                                    )
                                      )    (UNDER SEAL)
18  _____ )

19      This matter having come before the court pursuant to an application under Title 18,

20  United States Code, Sections 2703(c) and (d), by Assistant United States Attorney W.S. Wilson

21  Leung, an attorney for the Government as defined by Fed. R. Crim. P. 1(b)(1), requesting an

22  order authorizing the disclosure of subscriber and account information, historical[1] cell site

23  information[2], and call detail records[3] for the following four cellular telephones with service

24  _____

25      [1]   This order does not authorize the disclosure of any prospective cell site
    information but, rather, only the historical cell site information pertaining to the CELLPHONES
26  for the time period from January 1, 2009 through the date of this order.

27      [2]   A cellular telephone must send a radio signal to an antenna tower which, in turn,
28  is connected to the provider's network. The area covered by the tower varies depending, inter
    alia, on the population density of the area. This area is often divided into thirds, or 120 degree

On Line: 1    Remote ID: 415 844 5335

1    provided by Metro PCS:

2              a.    A cellular telephone assigned call number (415) 504-5129;

3              b.    A cellular telephone assigned call number (415) 374-1033;

4              c.    A cellular telephone assigned call number (415) 240-3299; and

5              d.    A cellular telephone assigned call number (415) 375-2990,

6    (collectively, the "CELLPHONES"), regarding telephone calls placed from and received by the

7    CELLPHONES (to include calls using any interconnect and direct connect modes) from January

8    1, 2009 through the date of this order.

9              UPON REVIEW OF THE APPLICATION, THE COURT HEREBY FINDS THAT:

10             Pursuant to 18 U.S.C. §§ 2703(c)(1)(B) and 2703(d), Applicant has set forth specific and

11   articulable facts showing that there are reasonable grounds to believe that the requested

12   information regarding the CELLPHONES from January 1, 2009 through the date of this order,

13   will be relevant and material to an ongoing criminal investigation.

14             THEREFORE, IT IS FURTHER ORDERED, pursuant to 18 U.S.C. §§ 2703(c)(1)(B),

15   2703(c)(2) and 2703(d), that Metro PCS, any internet service provider or other electronic

16   communications provider providing voice-over IP telephony, and any other local, long distance,

17   or wireless carrier servicing the CELLPHONES, and any other person or entity providing wire

18   communication service in the United States whose assistance may facilitate execution of the

19   order, shall disclose FORTHWITH to Special Agents of Immigration and Customs Enforcement

20   ("ICE"):

21   _____

22   sectors. "Cell site information" as used in this Order refers to the antenna tower and sector to
     which the cell phone sends its signal. This includes the physical location and/or address of the
23   cellular tower and identification of the particular sector of the tower receiving the signal. This
     information does not provide the specific or precise geographical coordinates of the cellular
24   telephone.

25        3    "Call detail records" are similar to toll records (i.e., historical telephone records of
26   telephone activity, usually listing outgoing calls and date, time, and duration of each call), which
     are made and retained in the ordinary course of business. "Call detail records" is the term used
27   when referring to toll records of cellular telephones rather than hardline telephones. Unlike toll
     records, however, call detail records also include a record of incoming calls and the
28   cellsite/sectors used by the cellular telephone to obtain service for a call or when in an idle state.

2

1       1.     Any and all subscriber and account information for the CELLPHONES;

2       2.     The location of cell site/sector (physical address) at call origination (for outbound

3   calling) and call termination (for incoming calls), for the CELLPHONES, including any calls

4   using the interconnect and direct connect functions, from January 1, 2009 through the date of this

5   order, but such information shall not include any prospective information; and

6       3.     Any and all call detail records for the CELLPHONES from January 1, 2009

7   through the date of this order.

8       Good cause having been shown, IT IS FURTHER ORDERED, pursuant to 18 U.S.C. §§

9   2705(b) and 3123(d), that this order and the application be sealed until otherwise ordered by the

10  court, and that the local, long distance, and wireless carriers listed herein, any internet service

11  provider or other electronic communications provider providing voice-over IP telephony, and any

12  other local, long distance, or wireless carrier servicing the CELLPHONES who is obligated by

13  the order to provide assistance to the Applicant, shall not disclose in any manner, directly or

14  indirectly, by any action or inaction, to the listed subscriber(s) for the CELLPHONES, the

15  occupant of said premises, the subscribers of the incoming calls to or outgoing calls from the

16  CELLPHONES, or to any other person, the existence of this order, in full or redacted form, or of

17  this investigation, unless otherwise ordered by this court.

18      IT IS FURTHER ORDERED that the identity of any targets of the investigation may be

19  redacted from any copy of the order served on any service provider or other person, and that this

20  order and application be SEALED until otherwise ordered by the court.

21

22  DATED: April 24, 2009

23

24      HONORABLE BERNARD ZIMMERMAN

25      UNITED STATES MAGISTRATE JUDGE

26

27

28

3

**⬇ EXHIBIT 114 ⬇**

**⬇ EXHIBIT 114 ⬇**

**⬇ EXHIBIT 114 ⬇**

**⬇ EXHIBIT 114 ⬇**

**⬇ EXHIBIT 114 ⬇**

**⬇ EXHIBIT 114 ⬇**

**⬇ EXHIBIT 114 ⬇**

**⬇ EXHIBIT 114 ⬇**

**⬇ EXHIBIT 114 ⬇**

**⬇ EXHIBIT 114 ⬇**

**⬇ EXHIBIT 114 ⬇**

**⬇ EXHIBIT 114 ⬇**

**⬇ EXHIBIT 114 ⬇**

**⬇ EXHIBIT 114 ⬇**

**⬇ EXHIBIT 114 ⬇**

**⬇ EXHIBIT 114 ⬇**

**⬇ EXHIBIT 114 ⬇**

**⬇ EXHIBIT 114 ⬇**

**⬇ EXHIBIT 114 ⬇**

**⬇ EXHIBIT 114 ⬇**

**⬇ EXHIBIT 114 ⬇**

**⬇ EXHIBIT 114 ⬇**

**⬇ EXHIBIT 114 ⬇**

**⬇ EXHIBIT 114 ⬇**

**⬇ EXHIBIT 114 ⬇**

**⬇ EXHIBIT 114 ⬇**

**⬇ EXHIBIT 114 ⬇**

**⬇ EXHIBIT 114 ⬇**

**⬇ EXHIBIT 114 ⬇**

**⬇ EXHIBIT 114 ⬇**

_ATTACHED EXHIBITS_
_SECOND SUBMISSION OF CONSOLIDATED EXHIBITS_
_RELATING TO DISCOVERY AND SUPPRESSION ISSUES_
_CR08-814-PHX-DGC_

Relevant documents from: <u>In the Matter of the Search of The wireless signal broadcasting the SSID "BELKIN54G" further described in Attachment A</u>, No. 07-MC-9082 (D.Or., Apr. 2, 2007) (sealed warrant application, affidavit, warrant, and return), *available at* <u>United States v. Ahrndt</u>, No. 08-468-KI, Doc. No. 025, p. 62-81 (D.Or., Jan. 28, 2010); Note: exhibit includes (1) warrant to search/seize wireless router and source IP address therefrom, (2) warrant return, and (3) select sections from warrant application; all documents are public record with full versions available on PACER;

[Redacted by the defendant (for relevance) using white squares with black borders.]

AO 93 (Rev. 5/85) Search Warrant

# United States District Court

DISTRICT OF _____ OREGON _____

In the Matter of the Search of
(Name, address or brief description of person or property to be searched)

**The wireless signal broadcasting the SSID "BELKIN54G" further described in Attachment A**

SEARCH WARRANT

CASE NUMBER: *07 MC 9082*

TO: SPECIAL AGENT JAMES D. COLE _____ and any Authorized Officer of the United States

Affidavit(s) having been made before me by   SPECIAL AGENT JAMES D. COLE   who has reason to

believe that ☐ on the person of or ☒ on the premises known as (name, description and/or location)

**SEE ATTACHMENT A**

in the _____ District of   OREGON _____ there is now
concealed a certain person or property, namely (describe the person or property) be a true and correct
copy of original filed in this District.

**SEE ATTACHMENT B**

Dated __ 11-12-08 __
Sheryl S. McConnell, Clerk of Court
US District Courts of Oregon
By _____ Deputy _____

I am satisfied that the affidavit(s) and any recorded testimony establish probable cause to believe that the person
or property so described is now concealed on the person or premises above-described and establish grounds for
the issuance of this warrant.

YOU ARE HEREBY COMMANDED to search on or before   *April 12, 2007*
                                                                              Date
(not to exceed 10 days) the person or place named above for the person or property specified, serving this warrant
and making the search (in the daytime   —   6:00 A.M. to 10:00 P.M.) (at any time in the day or night as I find
reasonable cause has been established) and if the person or property be found there to seize same, leaving a copy
of this warrant and receipt for the person or property taken, and prepare a written inventory of the person or prop-
erty seized and promptly return this warrant to   any US Magistrate Judge
as required by law.                                                              U.S. Judge or Magistrate

*April 2, 2007   2 /m*                                                              Portland, Oregon
Date and Time Issued                                                              City and State

Dennis J. Hubel, U.S. Magistrate Judge                                Signature of Judicial Officer
Name and Title of Judicial Officer

AHRNDT 0130

## ATTACHMENT B

The router and connected computer Internet protocol (IP) address broadcasting the SSID "BELKIN54G" in the general vicinity of Southwest 184th Avenue and Southwest 183rd Terrace in Aloha, Oregon 97007.

## ATTACHMENT A

The wireless signal broadcasting the SSID "BELKIN54G" is described as:

A signal emanating from a wireless device, such as a wireless router, using the Institute of Electrical and Electronic Engineers (IEEE) 802.11 wireless network standard, broadcasting the SSID "BELKIN54G." The signal is emanating in the general vicinity of Southwest 184th Avenue and Southwest 183rd Terrace in Aloha, Oregon 97007, more specifically near 4390 SW 184th Ave, Aloha, Oregon, 97007.

AO 93 (Rev. 5/85) Search Warrant

| RETURN | | |
|---|---|---|
| DATE WARRANT RECEIVED | DATE AND TIME WARRANT EXECUTED | COPY OF WARRANT AND RECEIPT FOR ITEMS LEFT WITH |
| April 2, 2007 | April 5, 2007 @ 1:44 p.m. | John Ahrndt |

INVENTORY MADE IN THE PRESENCE OF

Det. Gary Wright

INVENTORY OF PERSON OR PROPERTY TAKEN PURSUANT TO THE WARRANT

IP Address 71.236.133.85

//

//

//

//

//

//

//

//

//

//

//

//

//

////////

CERTIFICATION

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

Subscribed, sworn to, and returned before me this date.

_____        11/12/2008
U.S. Magistrate                              Date

AD 106 (Rev. 5/85) Affidavit for Search Warrant

# United States District Court

### DISTRICT OF OREGON

In the Matter Of the Search of
(Name, address or brief description of person or property to be searched)
**The wireless signal broadcasting the SSID "BELKIN54G"**

## APPLICATION AND AFFIDAVIT
## FOR SEARCH WARRANT

FILED CASE NUMBER:   *07 MC 9082*

FILED '07 APR 02 14:37 USDC-ORP

James D. Cole _____   being duly sworn depose and say:

I am a(n) **SPECIAL AGENT, IMMIGRATION & CUSTOMS ENFORCEMENT**   and have reason to believe

Official Title

that ☐ on the person of or   ☒ on the premises known as (name, description and/or location)

**SEE ATTACHMENT A**

in the _____   District of   **OREGON**

there is now concealed a certain person or property, namely (describe the person or property)
**SEE ATTATTACHMENT B**

which is (give alleged grounds for search and seizure under Rule 41(b) of the Federal Rules of Criminal Procedure)

in violation of Title   **18** _____   United States Code, Section(s)   **2252A(a)(2)  and 2252A(a)(5)(B)** _____

The facts to support the issuance of a Search Warrant are as follows:

**SEE ATTACHED AFFIDAVIT OF SPECIAL AGENT JAMES D. COLE**

a true and correct copy of original filed

APR 0 2 2007

Sheryl S. McConnell, Clerk
Deputy

Continued on the attached sheet and made a part hereof.   ☒ Yes   ☐ No

Signature of Affiant

Sworn to before me, and subscribed in my presence

APRIL 2, 2007 2 p.m.
Date

at   **Portland, Oregon**
City and State

**Dennis J. Hubel, US Magistrate Judge**
Name and Title of Judicial Officer

Signature of Judicial Officer

AHRNDT 0134

**ATTACHMENT A**

The wireless signal broadcasting the SSID "BELKIN54G" is described as:

A signal emanating from a wireless device, such as a wireless router, using the Institute of Electrical and Electronic Engineers (IEEE) 802.11 wireless network standard, broadcasting the SSID "BELKIN54G." The signal is emanating in the general vicinity of Southwest 184th Avenue and Southwest 183rd Terrace in Aloha, Oregon 97007, more specifically near 4390 SW 184th Ave, Aloha, Oregon, 97007.

AHRNDT 0135

**ATTACHMENT B**

The router and connected computer Internet protocol (IP) address broadcasting the SSID "BELKIN54G" in the general vicinity of Southwest 184th Avenue and Southwest 183rd Terrace in Aloha, Oregon 97007.

AHRNDT 0136

STATE OF OREGON                    )
                                   ) ss.  A F F I D A V I T OF JAMES D. COLE
COUNTY OF MULTNOMAH                )

I, James Cole, being duly sworn, depose and state:

## Introduction and Agent Background

2.    This affidavit is submitted in support of an application for a search warrant authorizing the search of a wireless network broadcasting the service set identifier (SSID), (See Computers, The Internet and Definitions below) "BELKIN54G," for the sole purpose of obtaining/seizing the Internet Protocol (IP) address and any information which may be automatically collected through obtaining the IP address related to the wireless network. Obtaining the IP address of the wireless network broadcasting the SSID "BELKIN54G" will allow me, or other law enforcement to identify the Internet Service Provider (ISP) which the wireless network is using to gain access to the Internet and further, to serve the ISP with additional legal process in order to identify the subscriber information, including the name, billing address and billing information related to the account. Currently, there is no reasonable and precise method within our capability to identify the source of the wireless network without obtaining the IP address. The wireless network broadcasting SSID "BELKIN54G" is currently emanating from a wireless signal in the general vicinity of Southwest 184th Avenue and Southwest 183rd Terrace in Aloha, Oregon 97007. I believe that access to the Internet through the "BELKIN54G" router will allow agents to learn the IP address leased to the account through which the router provides Internet access. The wireless network broadcasting SSID "BELKIN54G" constitutes a seizure of that router, and therefore the local network and connection to the Internet, which seizure may lead to or constitute evidence, contraband, fruits, and/or instrumentalities of violations of



## Search Protocol and Warrant Service Issues

16.   In recognition of the limited scope of the requested search, law enforcement

personnel conducting this search are requesting to employ the following protocol:

11-Affidavit of James Cole

AHRNDT 0147

A.    While physically located in close proximity to JH's residence and in view of 4390 SW 184th Ave, Aloha, Oregon, 97007, I will use a government issued laptop computer with Wi-Fi capability to connect to the wireless network broadcasting SSID "BELKIN54G." While connected to the wireless network broadcasting SSID "BELKIN54G" I will send an e-mail communication from my laptop computer to my government e-mail account and will access an Internet reflector site which displays the IP address of the computer/network accessing the site. Such a site, like the one found at www.whatismyip.com, will reveal the IP address of the account through which the router "BELKIN54G" is accessing the Internet, and needed to determine the ISP of the subject where the wireless network broadcasting SSID "BELKIN54G" is located. Once the IP address is captured, I will disconnect from the wireless network.

12-Affidavit of James Cole

AHRNDT 0148

JAMES D. COLE
Special Agent
US Immigration and Customs Enforcement

Subscribed and sworn to before me this _2nd_ day of April, 2007.

Dennis J. Hubel
United States Magistrate Judge

13-Affidavit of James Cole

**⬇ EXHIBIT 115 ⬇**

**⬇ EXHIBIT 115 ⬇**

**⬇ EXHIBIT 115 ⬇**

**⬇ EXHIBIT 115 ⬇**

**⬇ EXHIBIT 115 ⬇**

**⬇ EXHIBIT 115 ⬇**

**⬇ EXHIBIT 115 ⬇**

**⬇ EXHIBIT 115 ⬇**

**⬇ EXHIBIT 115 ⬇**

**⬇ EXHIBIT 115 ⬇**

**⬇ EXHIBIT 115 ⬇**

**⬇ EXHIBIT 115 ⬇**

**⬇ EXHIBIT 115 ⬇**

**⬇ EXHIBIT 115 ⬇**

**⬇ EXHIBIT 115 ⬇**

**⬇ EXHIBIT 115 ⬇**

**⬇ EXHIBIT 115 ⬇**

**⬇ EXHIBIT 115 ⬇**

**⬇ EXHIBIT 115 ⬇**

**⬇ EXHIBIT 115 ⬇**

**⬇ EXHIBIT 115 ⬇**

**⬇ EXHIBIT 115 ⬇**

**⬇ EXHIBIT 115 ⬇**

**⬇ EXHIBIT 115 ⬇**

**⬇ EXHIBIT 115 ⬇**

**⬇ EXHIBIT 115 ⬇**

**⬇ EXHIBIT 115 ⬇**

**⬇ EXHIBIT 115 ⬇**

**⬇ EXHIBIT 115 ⬇**

**⬇ EXHIBIT 115 ⬇**

**⬇ EXHIBIT 115 ⬇**

*ATTACHED EXHIBITS*
*SECOND SUBMISSION OF CONSOLIDATED EXHIBITS*
*RELATING TO DISCOVERY AND SUPPRESSION ISSUES*
*CR08-814-PHX-DGC*

Relevant documents from: <u>In The Matter Of An Application For An Order Authorizing The Installation, Use, Monitoring, Repair, Replacement And Removal Of A Tracking Device,</u> 11-MC-031-ALC (E.D.N.Y. 2011); Note: includes copies of Doc. #005, p. 1-4 (Tracking Warrant and Return); and Doc. #001, p. 22-25 (Tracking Order); all documents are public record with full versions available on PACER;

AO 104 (02/09)  Tracking Warrant

# UNITED STATES DISTRICT COURT
### for the
Eastern District of New York

| | |
|---|---|
| In the Matter of the Tracking of | ) |
| *(Identify the person, property, or object to be tracked )* | ) |
| A BLACK 2005 PORSCHE CAYENNE S, VIN | ) |
| WP1AB29P05LA65722, NY LICENSE PLATE DNM-1310, | ) |
| REGISTERED TO JAMES WRENN | ) |
| | ) |

**MISC. 11-031**

## TRACKING WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government shows there is reason to believe that the person, property, or object described above has been involved in and likely will continue to be involved in the criminal activity identified in the application, and ☑ is located in this district;  ☐ is not now located in this district, but will be at execution;  ☐ the activity in this district relates to domestic or international terrorism;  ☐ other:

I find that the affidavit(s), and any recorded testimony, establish probable cause to believe that *(check the appropriate box)*     ☐ using the object     ☐ installing and using a tracking device to monitor the location of the person, property, or object will satisfy the purpose set out in Fed. R. Crim. P. 41(c) for issuing a warrant.

☑ I find entry into the following vehicle or onto the following private property to be necessary without approval or knowledge of the owner, custodian, or user of the vehicle or property for installing, maintaining, and removing the tracking device: a black 2005 Porsche Cayenne S, VIN WP1AB29P05LA65722, NY license plate DNM-1310, registered to James Wrenn

**YOU ARE COMMANDED** to execute this warrant and begin using the object or installing the tracking device within ten days from the date of this order and may continue use for 45 days. The tracking may occur within this district or another district.  To install, maintain, or remove the device, you may enter *(check boxes as appropriate)*

☑ into the vehicle described above     ☐ onto the private property described above

☐ in the daytime only *(i.e., 6:00 a.m. to 10:00 p.m.).*  ☑ at any time of day or night because good cause has been established.

Within 10 calendar days after the use of the tracking device has ended, the officer executing this warrant must both return it to United States Magistrate Judge *(name)* Andrew L. Carter                      and — unless delayed notice is authorized below — serve a copy of the warrant on the person who, or whose property or object, was tracked.

☑ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property or object, will be tracked *(check the appropriate box)*     ☑ for  30  days *(not to exceed 30)*

☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:  _12:10 p.m. January 18, 2011_

City and state:  Brooklyn, NY

S/Andrew L. Carter
*Judge's signature*

Andrew L. Carter, United States Magistrate Judge
*Printed name and title*

AO 104 (02/09)  Tracking Warrant (Page 2)

Case No.

---

### Return of Tracking Warrant With Installation

1. Date and time tracking device installed:     1/20/2011   1:15 AM.

2. Dates and times tracking device maintained:     SPANNING INSTALLATION TO REMOVAL

3. Date and time tracking device removed:     3/23/2011   3:00 AM.

4. The tracking device was used from *(date and time)*:     1/20/2011   1:15 AM.

    to *(date and time)*:     3/23/2011   3:00 A.M.

---

### Return of Tracking Warrant Without Installation

1. Date warrant executed: _____

2. The tracking information was obtained from *(date and time)*: _____

    to *(date and time)*: _____

---

### Certification

I declare under the penalty of perjury that this return is correct and was returned along with the original warrant to the designated judge.

Date: 3/1/2011

            *Executing officer's signature*

        SA PETER SUMMITT

            *Printed name and title*

AO 104 (02/09)  Tracking Warrant

# UNITED STATES DISTRICT COURT
for the
Eastern District of New York

In the Matter of the Tracking of            )
*(Identify the person, property, or object to be tracked)*   )
A SILVER 2009 MERCEDES-BENZ 350 SERIES, VIN  )
WDBUF56X29B370786, BEARING NY LICENSE PLATE  )   **MISC.  11-031**
09WSC, REGISTERED TO STEVEN PUNTURIERI      )
                                            )
                                            )

## TRACKING WARRANT

To:      Any authorized law enforcement officer

        An application by a federal law enforcement officer or an attorney for the government shows there is reason to believe that the person, property, or object described above has been involved in and likely will continue to be involved in the criminal activity identified in the application, and ☑ is located in this district; ☐ is not now located in this district, but will be at execution; ☐ the activity in this district relates to domestic or international terrorism; ☐ other:
_____

        I find that the affidavit(s), and any recorded testimony, establish probable cause to believe that
*(check the appropriate box)* ☐ using the object   ☐ installing and using a tracking device
to monitor the location of the person, property, or object will satisfy the purpose set out in Fed. R. Crim. P. 41(c) for issuing a warrant.

        ☑ I find entry into the following vehicle or onto the following private property to be necessary without approval or knowledge of the owner, custodian, or user of the vehicle or property for installing, maintaining, and removing the tracking device: a silver 2009 Mercedes-Benz 350 series, VIN WDBUF56X29B370786, bearing NY license plate 09WSC, registered to Steven Punturieri

        **YOU ARE COMMANDED** to execute this warrant and begin using the object or installing the tracking device within ten days from the date of this order and may continue use for 45 days. The tracking may occur within this district or another district.  To install, maintain, or remove the device, you may enter *(check boxes as appropriate)*
☑ into the vehicle described above     ☐ onto the private property described above
☐ in the daytime only *(i.e., 6:00 a.m. to 10:00 p.m.)*.  ☑ at any time of day or night because good cause has been established.

        Within 10 calendar days after the use of the tracking device has ended, the officer executing this warrant must both return it to United States Magistrate Judge *(name)* Andrew L. Carter _____ and — unless delayed notice is authorized below — serve a copy of the warrant on the person who, or whose property or object, was tracked.

        ☑ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property or object, will be tracked *(check the appropriate box)*   ☑ for  30  days *(not to exceed 30)*
                                    ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:  January 18, 2011  12:10 p.m.            S/Andrew L. Carter
                                                        _____
                                                              *Judge's signature*

City and state:  Brooklyn, NY                  Andrew L. Carter, United States Magistrate Judge
                                                       *Printed name and title*

AO 104 (02/09) Tracking Warrant (Page 2)

Case No.

| | |
|---|---|
| **Return of Tracking Warrant With Installation** | |

1. Date and time tracking device installed: *1/20/2011     2:00 AM*

2. Dates and times tracking device maintained: *SPANNING INSTALLATION TO REMOVAL.*

3. Date and time tracking device removed: *3/23/2011     3:30 AM*

4. The tracking device was used from *(date and time)*: *1/20/2011     2:00 AM.*

   to *(date and time)*: *3/23/2011     3:30 AM.*

**Return of Tracking Warrant Without Installation**

1. Date warrant executed: _____

2. The tracking information was obtained from *(date and time)*: _____

   to *(date and time)*: _____

**Certification**

I declare under the penalty of perjury that this return is correct and was returned along with the original warrant to the designated judge.

Date: *4/1/2011*            _____
                            *Executing officer's signature*

                            *SA  PETER SURETTE*
                            _____
                            *Printed name and title*

KKO
F. #2010R02094
- - - - - - - - - - - - - - - - - - **MISC.** **11-0310**



IN THE MATTER OF AN APPLICATION OF
THE UNITED STATES OF AMERICA FOR AN          **SEALED ORDER**
ORDER AUTHORIZING THE INSTALLATION,
USE, MONITORING, REPAIR, REPLACEMENT
AND REMOVAL OF:

ONE MOBILE GPS TRACKING DEVICE IN OR
ON A BLACK 2005 PORSCHE CAYENNE S,
VEHICLE          IDENTIFICATION          NUMBER
WP1AB29P05LA65722, BEARING NEW YORK
LICENSE PLATE NUMBER DNM-1310 AND
REGISTERED TO JAMES WRENN; AND

ONE MOBILE GPS TRACKING DEVICE IN OR
ON A SILVER 2009 MERCEDES BENZ 350
SERIES, VEHICLE IDENTIFICATION NUMBER
WDBUF56X29B370786, BEARING NEW YORK
LICENSE     PLATE     NUMBER     09WSC     AND
REGISTERED TO STEVEN PUNTURIERI

- - - - - - - - - - - - - - - - - - - - -X

Application having been made by the United States for

an Order pursuant to 18 U.S.C. § 3117, 28 U.S.C. § 1651, and

Federal Rule of Criminal Procedure 41, authorizing the

installation and monitoring of two Global Positioning System

("GPS") mobile tracking devices to be installed by trained

technicians, or authorized representatives of the DEA in or on

each of the following two vehicles: (1) a black 2005 Porsche

Cayenne S, VIN WP1AB29P05LA65722, bearing New York license plate

number DNM-1310 and registered to James Wrenn ("SUBJECT VEHICLE

#1"), and (2) a silver 2009 Mercedes Benz 350 series, VIN

WDBUF56X29B370786, bearing New York license plate number 09WSC

and registered to Steven Punturieri ("SUBJECT VEHICLE #2";

collectively, the "SUBJECT VEHICLES") currently located in the

Eastern District of New York, in order to monitor the movement of the SUBJECT VEHICLES (the "Requested Information"), for a period of forty-five (45) days;

The Court finds that there is probable cause to believe that the Requested Information will lead to evidence of violations of Title 21, United States Code, Sections 841 and 846,among other offenses, as well as to the identification of individuals who are engaged in the commission of these offenses.

IT IS HEREBY ORDERED pursuant to 18 U.S.C. § 3117, 28 U.S.C. § 1651, and Federal Rule of Criminal Procedure 41, that technicians and agents with the DEA may monitor the signals from the GPS mobile tracking device installed within the SUBJECT VEHICLES for a period of forty-five (45) days following the issuance of the Court's Order, including signals produced inside private locations, and other places not open to the public or visual surveillance, and signals produced in the event that either of the SUBJECT VEHICLES leaves the Eastern District of New York, but remains within the United States.

It is further ORDERED that technicians and agents with the DEA or an individual or individuals operating under their direct supervision to surreptitiously access the SUBJECT VEHICLES in the Eastern District of New York in order to repair, replace or remove the GPS mobile tracking devices including in the event that either of the SUBJECT VEHICLES travels to private locations,

-2-

other places not open to the public or visual surveillance, and in the event that either of the SUBJECT VEHICLES leaves the Eastern District of New York, but remains within the United States.

It is further ORDERED that the Court's Order and the accompanying Affidavit submitted in support thereof, as they reveal an ongoing investigation, be sealed until further Order of the Court in order to avoid premature disclosure of the investigation, guard against fugitives, and better ensure the safety of agents and others, except that copies of the Court's Order in full or redacted form may be maintained by the United States Attorney's Office, and may be served on Special Agents and other investigative and law enforcement officers of the DEA, federally deputized state and local law enforcement officers, and other government and contract personnel acting under the supervision of such investigative or law enforcement officers as necessary to effectuate the Court's Order.

It is further ORDERED that this warrant be returned to the U.S. Magistrate Judge on criminal duty in the Eastern District of New York within 30 days after the use of the tracking device has ended as required by law. Notice of the execution of this warrant otherwise required by Fed. R. Crim. P. 41 may be extended by the Court for good cause shown.

-3-

It is further ORDERED that, pursuant to 18 U.S.C. §§ 2705(a)(2) and 3103(a), service of notice may be delayed for a period of thirty (30) days after the use of the tracking device has ended unless extended by the Court for good cause shown.

Dated:     Brooklyn, New York
           January 18, 2011

THE HONORABLE ANDREW L. CARTER
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

-4-

↓ **EXHIBIT 116** ↓
↓ **EXHIBIT 116** ↓
↓ **EXHIBIT 116** ↓
↓ **EXHIBIT 116** ↓
↓ **EXHIBIT 116** ↓
↓ **EXHIBIT 116** ↓
↓ **EXHIBIT 116** ↓
↓ **EXHIBIT 116** ↓
↓ **EXHIBIT 116** ↓
↓ **EXHIBIT 116** ↓
↓ **EXHIBIT 116** ↓
↓ **EXHIBIT 116** ↓
↓ **EXHIBIT 116** ↓
↓ **EXHIBIT 116** ↓
↓ **EXHIBIT 116** ↓
↓ **EXHIBIT 116** ↓
↓ **EXHIBIT 116** ↓
↓ **EXHIBIT 116** ↓
↓ **EXHIBIT 116** ↓
↓ **EXHIBIT 116** ↓
↓ **EXHIBIT 116** ↓
↓ **EXHIBIT 116** ↓
↓ **EXHIBIT 116** ↓
↓ **EXHIBIT 116** ↓
↓ **EXHIBIT 116** ↓
↓ **EXHIBIT 116** ↓
↓ **EXHIBIT 116** ↓
↓ **EXHIBIT 116** ↓
↓ **EXHIBIT 116** ↓
↓ **EXHIBIT 116** ↓
↓ **EXHIBIT 116** ↓

*ATTACHED EXHIBITS*
*SECOND SUBMISSION OF CONSOLIDATED EXHIBITS*
*RELATING TO DISCOVERY AND SUPPRESSION ISSUES*
*CR08-814-PHX-DGC*

Relevant documents from: <u>In The Matter Of The Application Of The United States Of America For An Order...</u>, Mag. No. 99-4061-01 (D.N.J., May 8, 1999), *available at* http://web.archive.org/web/20061209091739/http://www2.epic.org/crypto/scarfo/order_5_99.pdf (last accessed: May 6, 2012); Note: includes order authorizing the surreptitious installation of software/firmware on a target home computer; all documents are public record with full versions available on PACER;

RDW/1999R00192

ORIGINAL FILED

MAY -8 1999

G. DONALD HANEKE, U. S. MAGISTRATE

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

IN THE MATTER OF THE APPLICATION    :
OF THE UNITED STATES OF AMERICA
FOR AN ORDER AUTHORIZING THE        :
SURREPTITIOUS ENTRY INTO THE
PREMISES OF MERCHANT SERVICES OF    :
ESSEX COUNTY, LOCATED AT 149
LITTLE STREET, BELLEVILLE, NEW      :
JERSEY, FOR THE PURPOSE OF
CONDUCTING A SEARCH FOR EVIDENCE    :
OF VIOLATIONS OF TITLE 18, U.S.C.
§§ 371, 892-894, 1955 AND 1962      :

Mag.
Misc. No. $99-4061-01$

## ORDER

Application under oath having been made before me by Ronald
D. Wigler, Assistant United States Attorney for the District of
New Jersey, for an order pursuant to Rule 41(b) of the Federal
Rules of Criminal Procedure and the All Writs Act, 28 United
States Code, Section 1651, to permit Special Agents of the
Federal Bureau of Investigation ["F.B.I."] to: (1) search for
and seize key related pass information from Nicodemo S. Scarfo's
computer located in the TARGET LOCATION by installing a
specialized computer program to search for and seize computer
passwords and keys which will allow the Government to read and
interpret data that was previously seized pursuant to a search
warrant on January 15, 1999, as well as those to be seized under
this present court Order; (2) search for and seize business
records in whatever form they are kept (e.g., written,
mechanically or computer maintained and any necessary computer
hardware, including computers, computer hard drives, floppy disks

or other storage disks or tapes as necessary to access such information, as well as, seizing the mirror hard drive to preserve configuration files, public keys, private keys, and other information that may be of assistance in interpreting the password) -- including address and telephone books and electronic storage devices; ledgers and other accounting-type records; banking records and statements; travel records; correspondence; memoranda; notes; calendars; and diaries -- that contain information about the identities and whereabouts of conspirators, betting customers and victim debtors, and/or that otherwise reveal the origin, receipt, concealment or distribution of criminal proceeds relating to illegal gambling, loansharking and other racketeering offenses, and all of which are fruits, instrumentalities and/or evidence of violations of 18 U.S.C. § 371 (conspiracy), §§ 892-94 (extortionate credit transactions), § 1955 (illegal gambling business) and § 1962 (RICO); and (3) install and leave behind software, firmware, and/or hardware equipment which will monitor the inputted data entered on Nicodemo S. Scarfo's computer by recording the key related information as they are entered; and full consideration having been given to the matters set forth therein, the Court finds:

1. There is probable cause to believe that Nicodemo S. Scarfo has committed and continues to commit offenses in violation of Title 18, U.S.C. §§ 371, 892-94, 1955 and § 1962.

2. There is probable to cause to believe that in the premises of Merchant Services of Essex County, 149 Little Street, Belleville, New Jersey [hereinafter, "TARGET LOCATION"], there is

evidence of business records of Nicodemo S. Scarfo's illegal gambling business and loansharking operation.

3.      There is probable cause to believe that Nicodemo S. Scarfo's computer, located in the TARGET LOCATION, is being used to store business records of Scarfo's illegal gambling business and loansharking operation, and that the above mentioned records have been encrypted.

4.      There is probable cause to believe that admissible evidence of commission of the offenses described above will be discovered by capturing the password necessary to decrypt the encrypted computer files.

5.      There is probable cause to believe that installation of software, firmware, and/or hardware equipment which will monitor the inputted data entered on Nicodemo S. Scarfo's computer located in the TARGET LOCATION may require surreptitious entry into the premises (by breaking and entering, if necessary).

6.      Normal investigative procedures to decrypt the codes and keys necessary to decipher the above encrypted computer file have been tried and have failed.

7.      The TARGET LOCATION is located in the rear one-room, lowest-level office of a two-to-three story commercial and residential building on the southeast corner of the intersection of Washington Avenue and Little Street, whose main entrance faces Washington Avenue and whose walls have light-brown siding except for the walls of the rear lowest level, which have a white stucco like material;  Merchant Services' office has a silver metal door

- 3 -

with darkened glass facing Little Street, a single window on both sides of that door and a large white sign bearing, among other things, "Merchant Services of Essex County" and "149 Little Street," over that door.

WHEREFORE, IT IS HEREBY ORDERED THAT Special Agents of the F.B.I., state and local law enforcement officers who have been deputized by the F.B.I. and individuals operating under contract with the Government under the supervision of the F.B.I. supervising agent, install and leave behind software, firmware, and/or hardware equipment which will monitor the inputted data entered on Nicodemo S. Scarfo's computer in the TARGET LOCATION so that the F.B.I. can capture the password necessary to decrypt computer files by recording the key related information as they are entered.

IT IS ORDERED FURTHER that Special Agents of the F.B.I., state and local law enforcement officers who have been deputized by the F.B.I. and individuals operating under contract with the Government under the supervision of the F.B.I. supervising agent, search for and seize business records in whatever form they are kept (e.g., written, mechanically or computer maintained and any necessary computer hardware, including computers, computer hard drives, floppy disks or other storage disks or tapes as necessary to access such information, as well as, seizing the mirror hard drive to preserve configuration files, public keys, private keys, and other information that may be of assistance in interpreting the password) -- including address and telephone books and

- 4 -

electronic storage devices; ledgers and other accounting-type records; banking records and statements; travel records; correspondence; memoranda; notes; calendars; and diaries -- that contain information about the identities and whereabouts of conspirators, betting customers and victim debtors, and/or that otherwise reveal the origin, receipt, concealment or distribution of criminal proceeds relating to illegal gambling, loansharking and other racketeering offenses.

IT IS ORDERED FURTHER that Special Agents of F.B.I., state and local law enforcement officers who have been deputized by the F.B.I. and individuals operating under contract with the Government under the supervision of the F.B.I. supervising agent, be authorized to enter the TARGET LOCATION surreptitiously, covertly, and by breaking and entering, if necessary, in order to install and leave behind software, firmware, and/or hardware equipment which will monitor the inputted data entered on Nicodemo S. Scarfo's computer.

IT IS ORDERED FURTHER that Special Agents of F.B.I., state and local law enforcement officers who have been deputized by the F.B.I. and individuals operating under contract with the Government under the supervision of the F.B.I. supervising agent, be authorized to enter the TARGET LOCATION surreptitiously as many times as may be necessary to install, maintain, and remove the software, firmware, or hardware utilized within the 30 day time period from the earlier of the day on which the investigative or law enforcement officers enter the TARGET

- 5 -

LOCATION to install and leave behind software, firmware, and/or hardware equipment which will monitor the inputted data entered on Nicodemo S. Scarfo's computer or 10 days after the Order is entered.

IT IS ORDERED FURTHER that this order require that it be executed as soon as practicable, and that the order terminate upon attainment of the authorized objectives or at the end of 30 days from the earlier of the day on which the investigative or law enforcement officers first install and leave behind software, firmware, and/or hardware equipment which will monitor the inputted data entered on Nicodemo S. Scarfo's computer or 10 days after the Order is entered.

IT IS ORDERED FURTHER that this Application, Affidavit, Order and all documents relating thereto be sealed until further order of the Court because the investigation is continuing and could be seriously compromised by the premature disclosure of the information contained herein.

HON. G. DONALD HANEKE
United States Magistrate Judge

Dated: May $\overline{\phantom{r}}$, 1999

- 6 -