<u>DECLARATION UNDER PENALTY OF PERJURY</u>

RE: Daniel Rigmaiden owns the aircard and used the aircard service as a home Internet connection;

BY: Daniel David Rigmaiden

---

I, Daniel David Rigmaiden, declare[1] the following:

1. This declaration explains my connection to **(1)** the "UTStarcom PC5740 Broadband Connection Card For Verizon Wireless" (hereafter "aircard") with mobile number 415-264-9596 and ESN 005-00717190; **(2)** the Verizon Wireless 1xEVDO "BroadbandAccess Connect Service" account having wireless account number 270691733 (hereafter "aircard account"); and **(3)** the IBM (Lenovo) ThinkPad (S/N #LV-C4398) laptop computer (hereafter "home computer") with mouse, keys, docking station, external LCD monitor, external keyboard, and various external hard drives.

**I.     Purchasing my aircard and home computer (a.k.a. host laptop computer) used with my aircard.**

2. On May 23, 2006, I went to a Verizon Wireless store in San Francisco, California, and purchased the aircard using my own physical cash. I did not provide a name when making the purchase. This was an entirely legitimate purchase and Verizon Wireless was content with the sale. Being a legitimate purchase, Verizon Wireless never expressed an interest to repossess my aircard throughout the duration of aircard service. Since that time, I have maintained ownership of my aircard and I maintained possession of it until the government seized it via an in-person search of my home conducted on August 3-4, 2008. I have never once knowingly/willingly let anyone use my aircard for any purpose and I always stored it behind lock and key in my home or kept it with me at all times for the purpose of preventing other

---

1. This declaration is being submitted under the protections of *Simmons*. *See* <u>Simmons v. United States</u>, 390 U.S. 377, 394 (1968) (Holding that "when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection."). I object to the government attempting to introduce this declaration as evidence at trial.

DECLARATION UNDER PENALTY OF PERJURY

RE: Daniel Rigmaiden owns the aircard and used the aircard service as a home Internet connection;
BY: Daniel David Rigmaiden

people from accessing it.

      3.      When I made my decision on which wireless device to purchase, I specifically chose the aircard because I believed that (1) it was not a telephone and would therefore not be subject to E-911 geolocation requirements, (2) it would not generate real-time cell site location information due to only supporting data connections, (3) it lacked GPS capabilities and would therefore not be subject to GPS location based services, and (4) it communicated using CDMA involving signals that are extremely difficult if not impossible to intercept.  I purchased the aircard over other wireless devices because I was under the impression that it would maximize locational privacy.

      4.      On August 30, 2007, I purchased my home computer (with the exception of the external LCD monitor, external keyboard, and external hard drives of which I purchased separately)[2] from a salesman who worked for Lenovo.  In order to purchase my home computer, I used my "Wired Plastic" prepaid debit card previously purchased under my alter ego of Andrew Johnson.  I loaded my prepaid debit card with my own physical cash through Western Union, and then provided the billing information to Lenovo.  This was an entirely legitimate purchase, the Lenovo salesman was satisfied with the purchase, and I was shipped the laptop once my billing information cleared.  Being a legitimate purchase, Lenovo never expressed an interest to repossess my home computer.  Since that time, I have maintained ownership of my home computer and I maintained possession of it until the government seized it via an in-person search of my home conducted on August 3-4, 2008.  I have never once

---

2.      I purchased the noted companion items similar to how I purchased my home computer, *i.e.*, by loading my Wired Plastic prepaid debit card with my own physical cash and then making legitimate purchases of which I received no complaints.

DECLARATION UNDER PENALTY OF PERJURY

RE:  Daniel Rigmaiden owns the aircard and used the aircard service as a home Internet connection;
BY:  Daniel David Rigmaiden

---

knowingly/willingly allowed anyone to use my home computer for any purpose and I always stored it behind lock and key or kept it with me at all times for the purpose of preventing other people from accessing it.

  5. Between mid to late September, 2007 (the approximate delivery date of my home computer) and August 3, 2008, I used my home computer for storing personal files such as personal pictures, correspondence, research material, political material, and various personal writings.

  6. Until they were electronically seized by the government, I had exclusive use of and complete control over my aircard and home computer. I could choose to use them and choose to exclude others from using them as I pleased. I never agreed or expected to have FBI technical agents, or any other government agents, use my aircard and home computer for their own purpose of locating my aircard and myself inside my home.

  **II.** **Signing up for aircard service, paying my aircard account bill, and interacting with Verizon Wireless employees using my alter ego.**

  7. On May 23, 2006, while at the Verizon Wireless store in San Francisco, California, I signed up for aircard service to be used with my aircard. To sign up for aircard service, I used my alter ego of Travis Rupard. I paid the initial fees for my aircard account using my own physical cash. Being a model customer who kept his account in good standing and having never abused the service, Verizon Wireless never expressed an interest to cancel or permanently block my aircard account. My aircard account was in good standing at least until the government seized my aircard via an in-person search of my home conducted on August 3-

DECLARATION UNDER PENALTY OF PERJURY

RE:  Daniel Rigmaiden owns the aircard and used the aircard service as a home Internet connection;
BY:  Daniel David Rigmaiden

---

4, 2008.  Additionally, I have never once knowingly/willingly allowed anyone to use or access my aircard account for any purpose.

      8.     As the individual associated with my aircard account, I paid my aircard account bill throughout the duration of aircard service.  I always paid my bill using my own physical cash at various Verizon Wireless stores.  I would pay my bill by either giving my relevant alter ego name (Travis Rupard) to a Verizon Wireless store employee and then paying physical cash for the register, or by using a self-service bill paying kiosk.  For example, on April 10, 2008, I made a physical cash payment of $160 and on June 12, 2008, I made a physical cash payment of $270.  Both cash payments were made at the Verizon Wireless store located at 768 Market Street, San Francisco, California, 94102.

      9.     Whenever at a Verizon Wireless store, I always interacted with Verizon Wireless employees using my alter ego name of Travis Rupard.  I used the name Travis Rupard while paying bills and while entertaining Verizon Wireless employee sales pitches to upgrade service or upgrade to a new wireless device to replace my aircard.

      10.    Throughout the course of my aircard service, I periodically logged into my Verizon Wireless web based account to check my bill and to verify payments.  I utilized Verizon wireless' "paperless billing" option so that I would not receive bills through the postal mail.  I would view my bills on the web and/or download them to my home computer in PDF form.

      **III.    I did not think that Verizon Wireless had capabilities to locate aircards.**

      11.    When I signed up for aircard service, I specifically chose Verizon Wireless

DECLARATION UNDER PENALTY OF PERJURY

RE: Daniel Rigmaiden owns the aircard and used the aircard service as a home Internet connection;
BY: Daniel David Rigmaiden

because its cellular network was based on CDMA technology, as apposed to TDMA (GSM), and I knew that CDMA cellular networks use complex signal encoding methods that act to maintain the privacy of signals being transmitted through the air.  I figured that the superior security of CDMA communications would help protect the privacy of my signals.

      12.      Throughout the duration of aircard service, I was not aware that Verizon Wireless and other wireless carriers kept historical cell site location information on customers.  My "paperless billing" web account records displayed no historical cell site location information or any other type of location information relating to my use of my aircard.

      13.      Throughout the duration of aircard service, I was under the impression that Verizon Wireless was only interested in the real-time locating of **cell phones** (but not aircards) for the sole purpose of locating users who make 911 emergency calls.  In an emergency situation, I figured that Verizon Wireless could locate a non-GPS equipped cell phone, **but not an aircard**, to an area only as precise as a 300 ft radius at best (*i.e.*, approximately 282,743 ft$^2$ ).  Due to my aircard's inability to place 911 phone calls (or any phone calls for that matter), I was under the impression that Verizon Wireless could not locate my aircard in real-time through any sort of preexisting network infrastructure.

      14.      Throughout the duration of aircard service, I was never aware of which cell sites I was accessing and I had no ability to identify or choose which cell sites my aircard would access.  The process of my aircard choosing which cell sites to access was entirely automatic and I always trusted that Verizon Wireless would only permit authorized cell sites to provide service to my aircard.

DECLARATION UNDER PENALTY OF PERJURY

RE: Daniel Rigmaiden owns the aircard and used the aircard service as a home Internet connection;
BY: Daniel David Rigmaiden

---

15.     Throughout the duration of aircard service, I did not expect or know that off-the-shelf portable/transportable wireless device locators existed for locating CDMA based wireless devices such as my aircard.  My expectations were based on the belief that such CDMA cellular devices use signal encryption/encoding/authentication and are dependent on a complex cellular network not specifically designed for geolocation purposes.

16.     Prior to my arrest on August 3, 2008, I had no knowledge that my aircard and aircard service would be susceptible to over-the-air reprogramming, cell site emulator based connection hijacking, forced handoffs and session establishment, over-the-air theft of stored data, deactivation of encryption, interrogation, over-the-air collection of transmitted signals, triangulation of transmitted signals, forced signal transmission power increase, denial-of-service attacks, and other similar hacks.  Other than the minimal knowledge explained herein, all of my knowledge relating to cellular networks and surveillance techniques applicable to wireless devices such as aircards was acquired after my August 3, 2008 arrest.  I acquired the relevant knowledge by studying technical resources while detained at CCA-CADC.

**IV.    Specifics of how I used my aircard and home computer to access the Internet through Verizon Wireless cell sites.**

17.     At any time I wished to connect to Verizon Wireless using my aircard, I would plug my aircard into the PCMCIA slot of my home computer.  Immediately after plugging in my aircard, I would initiate a connection with Verizon Wireless by either using my operating system software compatible with my aircard or the VZAccess Manager software bundled with the aircard.  At any time my aircard was plugged into my home computer, there was either an

DECLARATION UNDER PENALTY OF PERJURY

RE:  Daniel Rigmaiden owns the aircard and used the aircard service as a home Internet connection;
BY:  Daniel David Rigmaiden

---

open connection to Verizon Wireless or my computer was in the process of opening a connection.

18.     I would never intentionally leave my aircard powered on and in the Idle State in the way most people use cell phones.  In order to ensure that my aircard would always be connected to the Internet whenever powered on, I would either manually watch for disconnects and immediately attempt to reconnect whenever a connection was lost or my computer would automatically make a series of reconnect attempts at set time intervals after a disconnect.

19.     Whenever I was connected to the Internet via my aircard, if my connection was lost or disconnected, all of my downloads and uploads would cease and my Internet access would become completely nonexistent.

20.     Verizon Wireless provided an "always on" Internet.  Very rarely would Verizon Wireless fail to provide me Internet access or disconnect me from the Internet.  On occasions, if connected to the Internet for approximately 24 hours straight, I would get disconnected by Verizon Wireless but would then immediately be permitted to reconnect if I so desired.

**V.    I used my aircard and aircard account as a mobile Internet connection and as a home Internet connection for my home computer.**

21.     From May 23, 2006 through August 3, 2008, I used my aircard and aircard account as my primary Internet connection to satisfy my own personal and political interests and for leisure activities.  During that time period, I took advantage of the mobile nature of my aircard service to access the Internet when and where I pleased.  In addition to mobile use, from October 21, 2007 through August 3, 2008, I used my aircard and aircard account as my home

DECLARATION UNDER PENALTY OF PERJURY

RE: Daniel Rigmaiden owns the aircard and used the aircard service as a home Internet connection;
BY: Daniel David Rigmaiden

Internet connection for my home computer located at 431 El Camino Real, Santa Clara, CA 95050 (hereafter "apartment No. 1122").  For the majority of the time my aircard was connected to Verizon Wireless between June 10, 2008 and July 17, 2008, I was accessing the Internet via my aircard service while I was located in my home.

  22. I did not have any other Internet service in my home other than the service accessed through my aircard and aircard account.  Domicilio provided free courtesy wireless Internet access in some common areas but the signals were unreachable from apartment No. 1122.  My aircard and aircard account provided my sole home Internet connection.

  23. From approximately June 5, 2007 to October 9, 2007, I utilized and relied upon the Internet connection provided through my aircard and aircard account to advance the beliefs and ideals of the 2008 Ron Paul Presidential Campaign.  For example, I participated in the following televised 2007-2008 Republican Presidential debates by using web based polls to vote Ron Paul as the debate winner: **(1)** CNN News channel Republican Presidential debate in Manchester, New Hampshire, aired June 5, 2007, with CNN sponsored online poll; **(2)** ABC News Republican Presidential debate in Des Moines, Iowa, aired August 5, 2007, with ABC sponsored online poll, and **(3)** NBC News Republican Presidential debate in Dearborn Michigan, aired October 9, 2007, with NBC sponsored online poll.  The viewer online polls sponsored by CNN, ABC and NBC were directly integrated into the televised debates.  By using my aircard and aircard account to participate in web based polls to vote Ron Paul as the debate winner for each debate, I expressed myself by affecting the debate candidate overall online poll rankings that were aired to viewers and published on the web.

DECLARATION UNDER PENALTY OF PERJURY

RE: Daniel Rigmaiden owns the aircard and used the aircard service as a home Internet connection;
BY: Daniel David Rigmaiden

---

24. Additionally, from approximately June of 2007 to August 3, 2008, I utilized and relied upon my aircard and aircard service to associate with other supporters of the 2008 Ron Paul Presidential Campaign. I associated with other Ron Paul supporters over the web via message boards, chatrooms, web based polls, web based surveys, comment postings for YouTube videos, comment postings for blogs, and web based radio talk shows. I also used my aircard and aircard account to downloaded various Ron Paul YouTube videos and Ron Paul web page resources to my home computer.

25. From May 11, 2008 to June 9, 2008, while using my aircard and aircard account as my home Internet connection at apartment No. 1122, I repeatedly visited numerous websites indicative of ordinary home web browsing including, but limited to, youtube.com, costco.com, funtrivia.com, digg.com, facebook.com, and dictionary.com.

\* \* \* \* \*

26. I declare, certify, verify, and state under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, except as to those matters which are therein stated on information and belief, and, as to those matters, I believe it to be true. *See* 28 U.S.C. § 1746 ("Wherever... any matter is required or permitted to be supported, evidenced, established, or proved by the sworn... affidavit, in writing of the person making the same [], such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration..., in writing of such person which is subscribed by him, as true under penalty of perjury, and dated..."); 18 U.S.C. § 1621 ("Whoever... in any declaration... under penalty of perjury as permitted under section 1746 of

DECLARATION UNDER PENALTY OF PERJURY

RE:  Daniel Rigmaiden owns the aircard and used the aircard service as a home Internet connection;

BY:  Daniel David Rigmaiden

---

title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true... is guilty of perjury and shall, except as otherwise expressly provided by law, be fined under this title or imprisoned not more than five years, or both....").

Executed on May 20, 2012, in Florence, Arizona, United States of America.

Daniel David Rigmaiden

*/s/ Daniel Rigmaiden*

Daniel Rigmaiden
Agency # 10966111
CCA-CADC
PO Box 6300
Florence, AZ 85132