1  Daniel Rigmaiden
   Agency # 10966111
2  CCA-CADC
   PO Box 6300
3  Florence, AZ 85132
   Telephone: none
4  Email: none

5  Daniel David Rigmaiden
   Pro Se, Defendant

6

7                    UNITED STATES DISTRICT COURT

8                       DISTRICT OF ARIZONA

9

10  United States of America,                No. CR08-814-PHX-DGC

11          Plaintiff,                       SUPPLEMENT TO MOTIONS AT DKT.
                                             #813, #814, #815, AND #819
12  v.

13  Daniel David Rigmaiden, et al.,

14          Defendant.

15

16          Defendant, Daniel David Rigmaiden, appearing *pro se*, respectfully submits

17  *Supplement To Motions At Dkt. #813, #814, #815, and #819*.  The defendant previously filed

18  (1) *Motion Requesting The Court To Order Defendant's Private Investigator To Do his Job,*

19  *Or In The Alternative, To Dismiss The Case With Prejudice* (Dkt. #813), (2) *Motion*

20  *Requesting The Court To Order Defendant's Shadow Counsel To Locate A Runner Service*

21  *For Defendant* (Dkt. #814), (3) *Motion Requesting The Court To Order Mr. Horne To Do His*

22  *Job Or, In The Alternative, To Dismiss The Case With Prejudice* (Dkt. #815), and (4) *Motion*

23  *For Reconsideration Of Court's Order At Dkt. #810* (Dkt. #819).  This filing contains the

24  additional evidence the defendant indicated he would submit in support of his claims

25  contained in the above listed motions[1]—*i.e.*, that failures of court-appointed defense

26  _____
   1.      In the defendant's motion at Dkt. #819, the defendant requested that the Court "wait
27  for the defendant to place documentary evidence on the record in an additional filing..."
   before ruling on the motion.  Dkt. #819, p. 15.  In the defendant's motion at Dkt. #815, the
28  defendant indicated that "[s]upplemental evidence will follow[]" in support of that motion.
   Dkt. #815, p. 13.

                                        - 1 -

members have created a situation where the defendant will be unable to finish his *Motion To Suppress* by the Court's deadline on June 1, 2012.  Although the defendant filed a *Motion To Suppress* on June 1, 2012, it was not finished due to the failures of court-appointed defense members.  *See* Dkt. #813, #814, #815, #819, and *infra*.

An issue raised in the defendant's motion at Dkt. #815 was Mark Horne's failure to contact the defendant's list of experts and his ignoring of the defendant's request to do so for 43 days:

> From March 1, 2012 to April 13, 2012, Mr. Horne did not contact any of the experts despite repeated requests by the defendant to do so.  Additionally, Mr. Horne did not make any effort to follow the defendant's instructions on identifying additional experts.  Because Mr. Horne was not doing his job, the defendant begged Mr. Seplow's assistant, Dan Colmerauer, to complete the defendant's instructions on identifying additional experts and he asked Mr. Colmerauer to ask Mr. Seplow id he would contact the potential experts on the defendant's list.

> p. 6 (Dkt. #815)

Because of Mr. Horne's failure, the defendant had to spend his time teaching himself complex cellular protocols, which robbed him of time he needed to spend formulating legal arguments.  After the defendant requested that Mr. Colmerauer do the job that Mr. Horne was failing to do, Mr. Colmerauer emailed Mr. Horne the following on March 30, 2012:

> Mark,

> I volunteered to assist with the "Experts [REDACTED] Project" – I have some time today to do this – please forward me a copy of the experts [REDACTED] text file asap and I'll try to get it done today.

> Dan

> *See* <u>EXHIBIT 01</u>.

Mr. Horne then responded on March 30, 2012 with an email titled "Rigmaiden expert project" containing the defendant's experts text file.  *See* <u>EXHIBIT 02</u>.  Mr. Horne also stated in the email, "Here ya go Dan thanks. Really busy this week."  *See* <u>EXHIBIT 02</u>.  On April 5, 2012, Mr. Horne emailed Mr. Colmerauer a second time to inquire as to whether Mr. Colmerauer had completed the job Mr. Horne failed to complete: "Just curious if you ever

got to this and if so how far you got."  *See* EXHIBIT 03.  Mr. Colmerauer then responded with, "I did not yet get finished but I have most of it done – that is some of the material in the box."  *See* EXHIBIT 04.  As explained in the defendant's motion at Dkt. #815, p. 8, on April 13, 2012, the defendant gave Mr. Horne a list of 7 additional experts to contact— identified through Mr. Colmerauer's work as reflected by the emails cited above—along with the original 4 experts of which Mr. Horne failed to contact.  As explained in the defendant's motion at Dkt. #815, p. 9, it took Mr. Horne an additional 10 days to even begin contacting any of the 11 experts.

An issue raised in the defendant's motion at Dkt. #815 was Mark Horne's failure to complete tasks correctly, if at all, due to him waiting to the last minute and rushing the job. Typically, Mr. Horne would fail at any given task two or three times before getting it right. The majority of the tasks given to Mr. Horne were roughly at a seventh grade level and involved clicking website links embedded in PDF files and printing the results to PDF.  As simple as these tasks were, Mr. Horne failed repeatedly at completing them correctly.  The defendant constantly reminded Mr. Horne of the following very basic concepts: (1) text within a printed resource needs to be readable (as apposed to being unreadable gibberish), (2) text within a printed resource needs to be searchable,[2] and (3) if a website resource, the URL and title of the page needs to be shown on the print-out.[3]  The defendant even had his shadow counsel's assistant, Mr. Colmerauer, send Mr. Horne emails reminding him of how to assemble research documents in the correct manner.  On February 6, 2012, Mr. Colmerauer emailed Mr. Horne the following:

---

2.    Because the defendant does not have access to the Internet, he created his own archive of web pages that were converted to PDF files (using a PDF print driver) and provided to the defendant for use on his defense laptop computer.  While preparing his defense, the defendant locates relevant information by searching the text of all archived PDF files in a way similar to how one may use a web based search engine.  In order for this process to work, the web pages that are converted to PDF must be "text searchable" and not simply a flat image—as is usually provided by Mr. Horne due to his carelessness.

3.    Because the Court is requiring that the defendant assemble his own evidence to replace the evidence the government is withholding (*see* Dkt. #723), the defendant needs credible sources of information that can be verified.  In order for a source of evidence to be credible, it needs to come with a full citation showing where it originated.

> "Please make sure that all PDF files that you create from web pages are text searchable.  The non-text searchable files you have been providing are beginning to cause a significant problem."  *See* <u>EXHIBIT 05</u>.

On April 23, 2012, Mr. Colmerauer sent an email to Mr. Horne identifying some of the recent resources of which Mr. Horne failed to ensure citations were included:

> "Daniel said there are problems with all the GPS resources and you should get those resources again and make new citation pages.  There are problems with all the book citation pages (task #2 from the April 6 list) and he needs all the CK12 resources with citation pages."  *See* <u>EXHIBIT 06</u>.

Mr. Horne did not care to follow any of the defendant's instructions and wasted a lot of time and government money having to repeat the same task **over and over** due to his failure to adhere to basic "good research" practices.[4]  For example, in response to the defendant's request for information on specific technical books of which the defendant needed to use as evidence in support of his suppression motion,[5] Mr. Horne retrieved Amazon pages but the resources were not readable.  *See* <u>EXHIBIT 07</u>.  In the sections of the Amazon pages that would have contained the needed information, there is incomprehensible gibberish.  *See id*.  The defendant could literally throw his shoe at a computer and produce similar useless information.  As another example, in response to the defendant's request to click on links in a PDF file and print-to-PDF the resulting resources, Mr. Horne failed to ensure that the URLs and titles of the pages were on the prints.  *See* <u>EXHIBIT 08</u>.[6]  The defendant cannot cite to evidence that has no verifiable source, let alone no source at all.  If the defendant would have used Mr. Horne's abundant faulty research material, the defendant would have been unable to

---

4.     Mr. Horne was also incapable of handling criticism and could not cope with the fact that he was making dire mistakes and failing at his job.  For example, on May 3, 2012, the defendant explained to Mr. Horne how he should not have waited an additional 10 days (on top of the initial 43 days of procrastination) to begin contacting the list of the defendant's experts and how he failed to properly cite various resources obtained for the defendant.  In response, Mr. Horne had what the defendant can only describe as a childish tantrum, similar to those had by young teenagers.

5.     As required by the Court, *see* Dkt. #723.

6.     The incorrectly retrieved GPS resources shown at <u>EXHIBIT 08</u> are corroborated by the email at <u>EXHIBIT 06</u> ("...there are problems with all the GPS resources and you should get those resources again and make new citation pages.").

1    meet the "preponderance of the evidence" standard applicable to evidence used in support of

2    his suppression motion.  The examples of Mr. Horne's failures given above are the **norm** and

3    not isolated mistakes.  Because Mr. Horne had to constantly redo tasks, the defendant

4    typically had to wait two to three weeks for Mr. Horne to complete a task that would

5    normally take about 30 seconds to complete (*e.g.*, clicking on a link and clicking "print").[7]

6          An issue raised at Dkt. #819 was the defendant's prior mobile telecommunications

7    expert being partially responsible for the defendant not having enough time to complete his

8    *Motion To Suppress*.  This was due to the expert providing incorrect and irrelevant

9    information regarding the FBI's aircard locating mission during the discovery phase of the

10   proceedings.[8]  The defendant indicated that he would submit for the record a copy of the

11   letter sent to his prior expert summarizing the faulty assistance:

12          "In support of the above claims, the defendant will file, ex parte, the 'dear John'
            letter sent to the expert by the defendant and the experts response."  Dkt. #819,
13          p. 4.

14

15   Attached as as <u>EXHIBIT 09</u> is the letter the defendant sent to his prior expert and attached as

16   <u>EXHIBIT 10</u> is the prior expert's response.  Clearly, the defendant was not receiving

17   adequate technical assistance.[9]

18                                    * * * * *

---

19   7.      Legal tasks and concepts were also beyond Mr. Horne's skillset.  The defendant
     requested that Mr. Horne research various arguments that the government planned to raise,
20   *e.g.*, "use of aliases and alleged criminal activity destroys a reasonable expectation of
     privacy."  However, Mr. Horne failed at every legal research task and produced no useable
21   material, if any material at all.  All Mr. Horne was good for was retrieving precise cases the
     defendant identified.  It would have been nice if Mr. Seplow would have informed the
22   defendant that Mr. Horne had **absolutely no criminal law experience** before insisting that
     the defendant agree to accept him as a paralegal.

23   8.      As explained at Dkt. #819, the Court insisted that the defendant copy-and-paste his
24   discovery motion into a suppression motion.  Because the discovery motion contained faulty
     technical data, and thus faulty resulting arguments, the defendant could not do the requested
25   copy-and-paste job and needed to assemble new technical data and formulate new
     arguments.

26   9.      **Although the defendant originally chose the prior expert, the government was/is
27   withholding such a large amount of evidence (*see, e.g.*, Dkt. #723) that it was nearly
     impossible to adequately "test" potential experts for appointment to the case.  When
28   the defendant chose his prior expert, the expert falsely claimed that he knew of the
     Harris StingRay and that he had access to user manuals—which he did not.**

                                    - 5 -

1     This submission was drafted and prepared by the *pro se* defendant, however, he

2  authorizes his shadow counsel, Philip Seplow, to file this submission on his behalf using the

3  ECF system.  The defendant is appearing *pro se* and has never attended law school.  The

4  defendant's filings, however inartfully pleaded, must be liberally construed and held to less

5  stringent standards than formal pleadings drafted by lawyers.  *See* <u>Haines v. Kerner</u>, 404 U.S.

6  519, 520 (1972).

7     It is not expected that excludable delay under 18 U.S.C. § 3161(h) will occur as a

8  result of this submission.

9  ///

10  ///

11  ///

12  ///

13  ///

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

*SUPPLEMENT TO MOTIONS AT DKT #813, #814, #815, AND #819*
*CR08-814-PHX-DGC*

1  Respectfully Submitted:

2

3                                                    PHILP SEPLOW, Shadow Counsel, on
                                                     behalf of DANIEL DAVID RIGMAIDEN,
4                                                    Pro Se Defendant:

5

6                                                    s/ Philip Seplow
                                                     _____
7                                                    Philip Seplow
                                                     Shadow Counsel for Defendant.

8

9  ///

10 ///

11 ///

12 ///

13 ///

14 ///

15 ///

16 ///

17 ///

18 ///

19 ///

20 ///

21 ///

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

*SUPPLEMENT TO MOTIONS AT DKT #813, #814, #815, AND #819*
*CR08-814-PHX-DGC*

**CERTIFICATE OF SERVICE**

        I hereby certify that on:                    I caused the attached document to be

electronically transmitted to the Clerk's Office using the ECF system for filing and
transmittal of a Notice of Electronic Filing to the following ECF registrants:


Taylor W. Fox, PC
Counsel for defendant Ransom Carter
2 North Central Ave., Suite 735
Phoenix, AZ 85004

Frederick A. Battista
Assistant United States Attorney
Two Renaissance Square
40 North Central Ave., Suite 1200
Phoenix, AZ 85004

Peter S. Sexton
Assistant United States Attorney
Two Renaissance Square
40 North Central Ave., Suite 1200
Phoenix, AZ 85004

James R. Knapp
Assistant United States Attorney
Two Renaissance Square
40 North Central Ave., Suite 1200
Phoenix, AZ 85004

By: s/ Daniel Colmerauer
(Authorized agent of Philip A. Seplow, Shadow Counsel for Defendant; See ECF Proc. I(D) and II(D)(3))

SUPPLEMENT TO MOTIONS AT DKT #813, #814, #815, AND #819
CR08-814-PHX-DGC