UNITED STATES V. DANIEL DAVID RIGMAIDEN
CR08-814-PHX-DGC
MEMORANDUM RE: FOURTH AMENDMENT VIOLATION (RE: 08-70460-HRL/PVT)
IN SUPPORT OF:
MOTION TO SUPPRESS

## Table of Contents

I. INTRODUCTION..................................................................................................................1

II. ARGUMENT.......................................................................................................................1

    A.   The in-person search of apartment No. 1122 was a warrantless search and seizure considering it was conducted under a warrant that was void as a matter of law........2

    B.   The N.D.Cal. 08-70460-HRL/PVT warrant affidavit lacked probable cause linking the sought after evidence or alleged crimes to apartment No. 1122..........................4

    C.   IRS-CI Agent Daun turned the N.D.Cal. 08-70460-HRL/PVT warrant into a general warrant by continuing to search the seized storage devices more than three years after the in-person search of apartment No. 1122......................................................6

III. [Conclusion:] Exclusion is an appropriate remedy for the various Fourth Amendment violations and all illegally obtained evidence and derivative evidence must be suppressed....8

## I.   INTRODUCTION

Through the accompanying *Motion To Suppress*, the defendant is requesting that the Court suppress all evidence obtained during execution of the N.D.Cal. 08-70460-HRL/PVT warrant. This memorandum supports the defendant's request for suppression of all evidence seized from apartment No. 1122 and from the defendant's seized physical data storage devices and encrypted virtual drives. Because the noted searches were conducted during execution of the returned/voided N.D.Cal. 08-70460-HRL/PVT warrant, they were effectively warrantless and in violation of the defendant's Fourth Amendment rights. Nevertheless, even if the Court finds that executing a returned/voided warrant is constitutional, the underlying affidavit lacks probable cause tying the alleged crimes or sought after evidence to the place to be searched, *i.e.*, apartment No. 1122. Furthermore, even if the Court finds that the returned/voided warrant was constitutional and that the underlying affidavit is sufficient to support a colorable argument for probable cause, IRS-CI Agent Daun used the warrant to conduct a general search of which she continued to execute at least until October of 2011—more than three years after the in-person search of apartment No. 1122. As will be explained below, any of the above Fourth Amendment violations merits suppression of all evidence obtained as a result of executing the N.D.Cal. 08-70460-HRL/PVT warrant. The accompanying *Memorandum Re: Fourth Amendment Violations* outlines facts and arguments relating to the issues contained in this memorandum and is hereby incorporated into this memorandum by reference.[1]

## II.   ARGUMENT

The following arguments contained in the accompanying *Memorandum Re: Fourth Amendment Violations* are hereby incorporated into this memorandum by reference:

1.   The defendant had a reasonable expectation of privacy in his home at

---

1.   In support of this memorandum and accompanying motion, the defendant has submitted (1) *First Submission Of Consolidated Exhibits Relating To Discovery And Suppression Issues* (hereafter "*1st Consolidated Exhibits*") (Dkt. #587), and (2) *Second Submission Of Consolidated Exhibits Relating To Discovery And Suppression Issues* (hereafter "*2nd Consolidated Exhibits*") (Dkt. #821). Both *1st Consolidated Exhibits* and *2nd Consolidated Exhibits*, including all attachments, are hereby incorporated into this memorandum by reference pursuant LRCiv 7.1(d)(2) when referenced through LRCrim 12.1.

apartment No. 1122.  *See Memorandum Re: Fourth Amendment Violations*, *Argument*, Section V(A)(1) and (C)(1) *et seq*.

    2.    The defendant had a reasonable expectation of privacy in his home computer. *See Memorandum Re: Fourth Amendment Violations*, *Argument*, Section V(A)(3) and (C)(2) *et seq*.

    3.    The defendant had a reasonable expectation of privacy in his data contained on his seized hard drives, encrypted virtual drives, and the forensic images created therefrom—as they are in the possession of the government. *See Memorandum Re: Fourth Amendment Violations*, *Argument*, Section V(C)(10).

    4.    Various agents entering the defendant's home to seize his possessions was a Fourth Amendment search and seizure. *See Memorandum Re: Fourth Amendment Violations*, *Argument*, Section V(E)(2)(a).

    5.    IRS-CI Agent Daun continuing to search the forensic images of the defendant's encrypted virtual drives was/is a Fourth Amendment search and seizure. *See Memorandum Re: Fourth Amendment Violations*, *Argument*, Section V(E)(2)(b).

    **A.    The in-person search of apartment No. 1122 was a warrantless search and seizure considering it was conducted under a warrant that was void as a matter of law.**

When the government executed the "AMENDED" version of N.D.Cal. 08-70460-HRL/PVT warrant,[2] it had already been returned and void as a matter of law thus rendering the in-person search of apartment No. 1122 warrantless and in violation of the defendant's

---

2.    As explained in the accompanying *Memorandum Re: Fourth Amendment Violations*, *Procedural History*, Section III(H), on July 22, 2008, United States Magistrate Judge Howard R. Lloyd signed a search warrant approving the N.D.Cal. 08-70460-HRL warrant application.  However, the warrant was never executed and was returned to Magistrate Judge Patricia V. Trumbull on July 30, 2008.  *See id*.  At the time the warrant was returned, the government resubmitted "AMENDED" versions of the original N.D.Cal. 08-70460-HRL search warrant application and affidavit to magistrate Judge Trumbull.  *See id*.  The amended application and affidavit was submitted under the same docket number as the returned N.D.Cal. 08-70460-HRL warrant.  *See id*.  Magistrate Judge Trumbull approved the amended application and then issued the originally issued warrant for a second time, which had previously been returned, but with a handwritten "AMENDED" notation added towards the top of the document.  *See Submission Of Materials Related To Search Warrant No. 08-70460, Authorized By Magistrate Judge Patricia V. Trumbull, Northern District Of California, On July 30, 2008* (Dkt. #464-1, p. 2).  The government then proceeded to execute the amended version of the previously returned warrant.

*MEMORANDUM RE: FOURTH AMENDMENT VIOLATIONS (re: 08-70460-HRL/PVT)*
*MOTION TO SUPPRESS*
*CR08-814-PHX-DGC*

1  Fourth Amendment rights.  After the N.D.Cal. 08-70460-HRL warrant had been returned on
2  July 30, 2008, it was voided and therefore could not be "AMENDED" and then executed by
3  the government.  The warrant issued by magistrate Judge Trumbull was not a "REISSUED"
4  version of the original warrant but the **exact same warrant** issued a second time, as
5  "AMENDED" by her specifically.  A warrant that has been returned cannot be amended and
6  then executed because it is no longer a valid warrant.  In order to be a valid warrant, the
7  government would have needed to either (1) obtain a "REISSUED" version of the originally
8  returned/voided N.D.Cal. 08-70460-HRL warrant (which would still be "questionable" under
9  the Fourth Amendment),[3] or (2) rather than first return the N.D.Cal. 08-70460-HRL
10 warrant, obtain an "AMENDED" version of the **non-returned** warrant so as to extend the
11 time frame at which the warrant could be executed.  However, the government did neither
12 and instead had a returned/voided warrant "AMENDED" and then proceeded to execute that
13 amended warrant which was no longer valid.[4]  In *Sgro,* the Supreme Court noted that "[i]f
14 the warrant is the old one, sought to be revived, the proceeding is a nullity, and if it is a new
15 warrant, the commissioner must act accordingly."  <u>Sgro v. United States</u>, 287 U.S. 206, 211
16 (1932).  In the present case, the warrant was neither a new warrant, a reissued version of the
17 old warrant, or even the old warrant sought to be revived.  The executed warrant was the
18 same original warrant, which had already been returned and voided, and the "AMENDED"
19 notation does render it valid.  The government also cannot rely in good-faith on the
20 "AMENDED" returned/voided warrant because (1) a reasonably competent government
21 actor would have known that a returned warrant cannot thereafter be executed, and (2) in any
22 event, the magistrate had no business amending a previously returned warrant.

---

25 3.   *See* <u>United States v. Watson</u>, 423 U.S. 411, 452 fn. 18 (1976) (Marshall, J., dissenting) ("That probable cause is thereafter again found only tells us that, absent exigency, a subsequent warrant should be obtained, not that the void warrant should somehow be resurrected.")

27 4.   Whether probable cause did or did not exist at the time the warrant was "AMENDED" is irrelevant to the issue raised in this section.  The defendant is arguing that the executed warrant is simply invalid on its face and otherwise effectively did not exist at the time it was executed.

**B. The N.D.Cal. 08-70460-HRL/PVT warrant affidavit lacked probable cause linking the sought after evidence or alleged crimes to apartment No. 1122.**

The N.D.Cal. 08-70460-HRL/PVT warrant application/affidavit does not support a colorable argument for finding probable cause to search apartment No. 1122 and no reasonably competent government actor would have concluded that the warrant should have issued.[5]  Because the underlying affidavit lacked probable cause to search apartment No. 1122, the resulting search was conducted in violation of the defendant's Fourth Amendment rights.  The only claim made by the government linking apartment No. 1122 to the alleged crimes and evidence sought is as follows:[6]

> 102.   Historical cell tower information and other investigative techniques have led the investigation team to the location of the Travis Rupard Broadband Access Card within the "domicilio" apartment complex; 431 El Camino Real; Apartment 1122; Santa Clara, California, 95050.

*See Submission Of Documents Related To Original Northern District Of California 08-70460-HRL Search Warrant Used To Physically Search Apartment No. 1122*, Application, p. 31 (Dkt. #566-1, p. 33).

The only claim made by the government linking the renter of apartment No. 1122 to the alleged crimes and evidence sought is as follows:[7]

> 106.   On July 21, 2008, Forensic Document Examiner William J. Flynn conducted a handwriting analysis of the original application documents for the Sacramento Post Office Box [(opened by a "Patrick Stout")].  After conducting the analysis of the documents, Mr. Flynn has advised that forensic evidence indicates common authorship among the documents.

*Id.* (Dkt. #566-1, p. 33).

First, simply stating "historical cell tower information and other investigative

---

5.   *See* Messerschmidt v. Millender, 182 L. Ed. 2d 47, 58-59 (2012) (The government cannot claim good-faith or qualified immunity "if no reasonably competent officer would have concluded that a warrant should issue.").

6.   The defendant is quoting the original application/affidavit for the N.D.Cal. 08-70460-HRL/PVT warrant.  However, for the relevant sections, both versions are identical.

7.   All other information provided in the affidavit relating to the renter of apartment No. 1122 merely established that he may have provided false information on his rental application submitted to Domicilio management.  *See Memorandum Re: Fourth Amendment Violations*, *Procedural History*, Section III(H) (quoting the warrant application affidavit); *see also Submission Of Documents Related To Original Northern District Of California 08-70460-HRL Search Warrant Used To Physically Search Apartment No. 1122*, Application, p. 31 (Dkt. #566-1, p. 33).

- 4 -

techniques" is insufficient to link the defendant's home to the alleged crimes or evidence sought to be seized. "For probable cause, an affidavit must establish a reasonable nexus between the crime or evidence and the location to be searched." United States v. Crews, 502 F.3d 1130, 1136-37 (9th Cir. 2007). The term "historical cell tower information" is not defined in the affidavit and the word "**location**" is left out of the phrase. There is simply no colorable argument in support of a claim that the quoted phrase explains how the government located the aircard inside the defendant's home.[8] Even if the magistrate could have implied that "historical cell tower information" actually meant "historical cell tower **location** information," such information standing alone is typically understood to be too imprecise to locate a wireless device precisely inside a home residence. For example, the calculated location estimate displayed on the cell tower range chart/map created from the "historical cell tower information" referenced in the affidavit covers a *6,412,224 ft²* area.[9] The rest of the phrase, *i.e.*, "other investigative techniques," is too ambiguous to inform the magistrate how the location of the aircard was narrowed down from **millions of square feet** to precisely inside the defendant's home. Furthermore, the affidavit fails to inform the magistrate on what date the "historical cell tower information" relates. By its very definition, "historical" means at some point in the past. Nowhere in the affidavit does the government indicate a temporal reference point as to how recent the "historical cell tower information" was collected. "Because probable cause has a durational aspect, at least some temporal reference point is necessary to ascertain its existence." United States v. Hython, 443 F.3d 480, 486 (6th Cir. 2006) (citing United States v. Harris, 403 573, 578 fn. * (1971)).

Second, the information provided in the affidavit regarding the handwriting on the

---

8.   The fact that the FBI had located the aircard within apartment No. 1122 on July 16-17, 2008 is irrelevant. "In reviewing a search warrant on probable cause grounds, this Court, like the district court, is limited to the information and circumstances contained within the four corners of the underlying affidavit." Crowe v. County of San Diego, 593 F.3d 841, 869 (9th Cir. 2010) (internal quotation marks and citation omitted).

9.   *See* EXHIBIT 21 of *1st Consolidated Exhibits* (Dkt. #587-2) (cell tower range chart/map showing a *6,412,224 ft²* triangulated location signature estimate (marked with black pen lines) covering the location of apartment No. 1122); EXHIBIT 22 of *1st Consolidated Exhibits* (Dkt. #587-2) (cell tower range chart/map with government's *6,412,224 ft²* triangulated location signature estimate marked in red and apartment No. 1122 marked with a yellow star).

MEMORANDUM RE: FOURTH AMENDMENT VIOLATIONS (re: 08-70460-HRL/PVT) MOTION TO SUPPRESS CR08-814-PHX-DGC

1 rental application for apartment No. 1122 being similar to the handwriting on an application
2 for a canceled Sacramento PO Box is insufficient to link the defendant's home to the alleged
3 crimes or evidence sought to be seized. The affidavit does not state that the noted PO Box is
4 linked to the allegedly fraudulent tax returns or that the "Patrick Stout" who opened the PO
5 Box in Sacramento is the same "Patrick Stout" who allegedly picked up the money shipped
6 by the government to Palo Alto, CA.[10] Additionally, any information regarding false
7 information being provided on the rental application for apartment No. 1122 does not tie that
8 location to the crimes alleged in the affidavit. At best, the information provided in the
9 affidavit establishes that the renter of apartment No. 1122 is a suspect for some type of non-
10 alleged fraud relating to false information provided on his rental application. However,
11 "[t]he critical element in a reasonable search is not that the owner of the property is
12 suspected of crime but that there is reasonable cause to believe that the specific 'things' to be
13 searched for and seized are located on the property to which entry is sought." Zurcher v.
14 Stanford Daily, 436 U.S. 547, 556 (1978) (footnote omitted).

      **C.    IRS-CI Agent Daun turned the N.D.Cal. 08-70460-HRL/PVT warrant into a general warrant by continuing to search the seized storage devices more than three years after the in-person search of apartment No. 1122.**

18       The defendant established his reasonable expectation of privacy in his data contained
19 on his seized hard drives, encrypted virtual drives, and the forensic images created therefrom
20 —as they are in the possession of the government (*i.e.*, post September 3, 2008). *See*
21 *Memorandum Re: Fourth Amendment Violations*, *Argument*, Section V(C)(10). With respect
22 to searching for and seizing digital data from the defendant's encrypted virtual drives, IRS-
23 CI Agent Daun is using the N.D.Cal. 08-70460-HRL/PVT warrant to conduct a general
24 search in violation of the defendant's Fourth Amendment rights. The original and reissued
25 versions of the N.D.Cal. 08-70460-HRL/PVT warrant contain a "Computer Search Protocol
26 For The Northern District Of California" dictating exactly how the government was to search

---

10.    *See Submission Of Documents Related To Original Northern District Of California 08-70460-HRL Search Warrant Used To Physically Search Apartment No. 1122*, Application, p. 7-8 (Dkt. #566-1, p. 9-10) (discussing the pickup of $68,000 by a "Patrick Stout").

- 6 -

any storage devices seized from apartment No. 1122.[11] The computer search protocol required that the government "complete an off-site search of a device that agents removed in order to search for evidence of crime as promptly as practicable and no later than thirty (30) calendar days after the initial execution of the warrant."[12] IRS-CI Agent Daun initially complied with the terms of the computer search protocol by copying to DVDs data sought to be seized from the defendant's storage devices under the terms of the warrant.[13] However, once the 30 day window of time to search for and seize data had expired, IRS-CI Agent Daun continued to search the defendant's encrypted virtual drives for evidence and her fishing exhibition continued at least until October of 2011.[14] Contrary to the terms of the warrant, and even while IRS-CI Agent Daun admits that the defendant's encrypted virtual drives "actually contain many more files than those that fall within the parameters of the Search Warrant and its attachments[,]"[15] IRS-CI Agent Daun continues to search the seized drives more than **three years** after the in-person search of apartment No. 1122.[16] IRS-CI

---

11.  *See Submission Of Documents Related To Original Northern District Of California 08-70460-HRL Search Warrant Used To Physically Search Apartment No.* 1122 (Dkt. #566-2, p. 15).

12.  *See id.*, ¶ 5, p. 2 (Dkt. #566-2, p. 16).

13.  During and after the August 3-4, 2008 in-person search of apartment No. 1122, IRS-CI agent Daun created forensic images of the defendant's physical data storage devices and encrypted virtual drives. *See Memorandum Re: Fourth Amendment Violations*, *General Facts*, Section IV(B)(17). Within 30 days of August 3, 2008 (as authorized by N.D.Cal. 08-70460-HRL/PVT warrant), IRS-CI Agent Daun searched the forensic images for evidence. *See id*. As a result, IRS-CI agent Daun extracted all files that fell within the scope of the warrant and then copied some of those files to DVDs so that they would be isolated (*i.e.*, seized) from the images. *See id*.

14.  For example, while re-accessing the defendant's encrypted virtual drives in October of 2011, IRS-CI Agent Daun copied the file "agj_bag_liner_jagbags.co.nz.txt"—a file not copied to the DVDs holding the originally seized data—and provided that file to the prosecution. *See Memorandum Re: Fourth Amendment Violations*, *General Facts*, Section IV(B)(17).

15.  *See* <u>EXHIBIT 087</u> of *2nd Consolidated Exhibits* (Dkt. #821-5) (Computer Forensic Report by IRS-CI Agent Daun RE: search of physical storage devices and virtual drives seized from apartment No. 1122).

16.  IRS-CI Agent Daun has effectively seized the defendant's entire encrypted virtual drives even while she knows that they contain data that may not be seized under the warrant. At best, the government was only authorized to "preserve evidence" but this does not mean that agents can continue to search preserved evidence over a three year period while they know the evidence is not covered by the initial warrant.

Agent Daun is using the N.D.Cal. 08-70460-HRL/PVT warrant to conduct indiscriminate fishing, in flagrant disregard of the warrant's terms, and this merits **wholesale suppression** of all evidence, both digital and physical, obtained from apartment No. 1122.  *See*, *e.g.*, United States v. Chen, 979 F.2d 714, 717 (9th Cir. 1992) ("[W]here there is a 'flagrant disregard' for the terms of the warrant, the district court may suppress all of the evidence, including evidence that was not tainted by the violation." (citing United States v. Medlin, 842 F.2d 1194, 1199 (10th Cir. 1988))); United States v. Sears, 411 F.3d 1124, 1131 (9th Cir. 2005) ("Wholesale suppression is an extraordinary remedy that is appropriate only when the officers transform the search into an impermissible general search by ignoring the terms of the warrant and engaging in indiscriminate fishing." (internal quotation marks and citation omitted)).[17]

### III.   [Conclusion:] Exclusion is an appropriate remedy for the various Fourth Amendment violations and all illegally obtained evidence and derivative evidence must be suppressed.

In support of his request for suppression of evidence, and **wholesale suppression** of evidence, obtained under the N.D.Cal. 08-70460-HRL/PVT warrant, the defendant explained three separate Fourth Amendment violations.  As a remedy for any or all of the noted Fourth Amendment violations, and in order to deter the government from engaging in similar misconduct in the future, the defendant respectfully requests that the Court suppress the following evidence obtained illegally in this case:

#### EVIDENCE TABLE

| # | Evidence sought to be suppressed: |
|---|---|
| 1 | All physical effects including physical data storage devices and encrypted virtual drives seized from apartment No. 1122; |
| 2 | Government forensic hard drive images and government copies of encrypted virtual drives created from seized data storage devices and encrypted virtual drives; |
| 3 | Data copied to government DVDs (from government forensic hard drive images and from government copies of encrypted virtual drives) **within** the first 30 days of the in-person search of apartment No. 1122; |

---

17.   In the alternative, and at the very least, all seized *digital* evidence should be suppress—even data not tainted by the violation.

| | |
|---|---|
| 4 | Data copied to government storage devices (from government forensic hard drive images and from government copies of encrypted virtual drives) **after** the first 30 days following the in-person search of apartment No. 1122; |
| 5 | All derivative evidence, *i.e.*, fruits-of-the-poisonous-tree, stemming from primary evidence sought to be suppressed; |

\*  THIS MEMORANDUM WAS RESEARCHED, PREPARED, AND DRAFTED BY
   DANIEL DAVID RIGMAIDEN, *PRO SE*. - JUNE 1, 2012;