1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MEMORANDUM RE: FOURTH AMENDMENT VIOLATIONS
MOTION TO SUPPRESS
CR08-814-PHX-DGC

UNITED STATES V. DANIEL DAVID RIGMAIDEN
CR08-814-PHX-DGC
MEMORANDUM RE: DESTRUCTION OF EVIDENCE
IN SUPPORT OF:
MOTION TO SUPPRESS

## Table of Contents

I.   INTRODUCTION............................................................................................................1

II.  ARGUMENT...............................................................................................................1

  A.   The government's bad faith destruction of evidence was unreasonable and this
       merits suppression of secondary evidence under Flyer...............................................1

    1.   The defendant is suffering prejudice due to the FBI's destruction of
         evidence......................................................................................................2

      a.   The destroyed evidence would show whether the aircard geolocation data
           provided to the FBI by Verizon Wireless was obtained by Verizon
           Wireless via pinging and downloading data from the aircard...................3

      b.   The destroyed evidence would show whether the aircard geolocation data
           provided to the FBI by Verizon Wireless was obtained in combination
           with aircard communications content........................................................5

    2.   The FBI destroyed and/or failed to preserve the real-time aircard data in bad
         faith.............................................................................................................5

      a.   The government knowingly and deliberately destroyed evidence with a
           subjective intent to harm the defense.......................................................6

      b.   The government knowingly and deliberately destroyed evidence with an
           objective intent to harm the defense.........................................................7

      c.   The government cannot rely in good faith on the FBI's express "destroy
           the evidence" policy................................................................................8

      d.   The government destroyed evidence in an effort to circumvent Brady and
           its progeny...............................................................................................9

      e.   The government cannot rely in good faith on the "destroy the evidence"
           provision of the N.D.Cal. 08-90330MISC-RS order..............................10

III. [Conclusion:] Suppression of secondary evidence is an appropriate remedy/sanction for
     the FBI's destruction of real-time aircard data obtained from Verizon Wireless.....................11

## I.   INTRODUCTION

Through the accompanying *Motion To Suppress*, which references this memorandum specifically, the defendant is requesting that the Court suppress all evidence obtained as a result of the aircard locating mission.  This memorandum supports the defendant's request for suppression of secondary evidence stemming from the real-time aircard data obtained by the FBI from Verizon Wireless.[1]  After obtaining and using the real-time aircard data, the FBI destroyed the data[2] for the purpose of hiding it from the defendant.  Because the defense was prejudiced by the FBI's destruction of evidence, the defendant is arguing for suppression of secondary evidence as a remedy/sanction.  The accompanying *Memorandum Re: Fourth Amendment Violations* outlines facts and arguments relating to the issues contained in this memorandum and is hereby incorporated into this memorandum by reference.[3]

## II.   ARGUMENT

### A.   The government's bad faith destruction of evidence was unreasonable and this merits suppression of secondary evidence under *Flyer*.

The defendant is seeking suppression of all secondary evidence[4] as a sanction for the government's bad faith destruction of evidence obtained by FBI technical agents while purportedly relying on the N.D.Cal. 08-90330MISC-RS order.

> If the government destroys evidence under circumstances that do not violate a defendant's constitutional rights, the court may still impose sanctions including

---

1.   *See Memorandum Re: Fourth Amendment Violations*, *General Facts*, Section IV(B)(7) (explaining how the FBI obtained real-time aircard data from Verizon Wireless under the N.D.Cal. 08-90330MISC-RS order).

2.   *See January 4, 2012 Court Order* (Dkt. #723, p. 14) (Noting the settled fact that "[a]ll data generated by the [][portable/transportable wireless device locators] and received from Verizon as part of the locating mission was destroyed by the government shortly after Defendant's arrest on August 3, 2008.").

3.   In support of this memorandum and accompanying motion, the defendant has submitted (1) *First Submission Of Consolidated Exhibits Relating To Discovery And Suppression Issues* (hereafter "*1st Consolidated Exhibits*") (Dkt. #587), and (2) *Second Submission Of Consolidated Exhibits Relating To Discovery And Suppression Issues* (hereafter "*2nd  Consolidated Exhibits*") (Dkt. #821).  Both *1st Consolidated Exhibits* and *2nd Consolidated Exhibits*, including all attachments, are hereby incorporated into this memorandum by reference pursuant LRCiv 7.1(d)(2) when referenced through LRCrim 12.1.

4.   By "secondary evidence" the defendant means **all** subsequent evidence stemming from the real-time aircard data obtained by the FBI from Verizon Wireless under the N.D.Cal. 08-90330MISC-RS order.

- 1 -

*MEMORANDUM RE: FOURTH AMENDMENT VIOLATIONS*
*MOTION TO SUPPRESS*
*CR08-814-PHX-DGC*

1
2
suppression of secondary evidence.  In doing so, the court must balance the quality of the Government's conduct and the degree of prejudice to the accused.  The Government bears the burden of justifying its conduct and the defendant bears the burden of demonstrating prejudice.

3
4
United States v. Flyer, 633 F.3d 911, 916 (9th Cir. 2011) (internal citations and quotation marks omitted).

5 As explained in the proceeding subsections, the defendant's Fifth Amendment right to due

6 process and Fourth Amendment right to challenge a search have been violated as a result of

7 the FBI's destruction of evidence.  However, according to *Flyer*, mere prejudice to the

8 defense is sufficient to merit suppression of secondary evidence even if constitutional rights

9 are not violated. *See id*.  Rule 16, Fed. R. Crim. P., states that evidence shall be disclosed if

10 it is merely helpful.  Therefore, even if the Court finds that the defendant's constitutional

11 rights were not violated as a result of the FBI's destruction of evidence, the lower standard of

12 prejudice under Rule 16 is sufficient to merit suppression of secondary evidence as a

13 sanction for the FBI's misconduct.  In support of the defendant's request for suppression of

14 secondary evidence, the proceeding subsections explain how the defendant is suffering

15 prejudice due to the FBI's destruction of the real-time aircard data obtained from Verizon

16 Wireless and how the FBI destroyed the evidence in bad faith.

17
18
**1.   The defendant is suffering prejudice due to the FBI's destruction of evidence.**

19 Due to the FBI's destruction of real-time aircard data obtained directly from Verizon

20 Wireless,[5] the defendant is suffering prejudice under the Fourth Amendment, Fifth

21 Amendment, and Rule 16, Fed. R. Crim. P.  The defendant is suffering prejudice because

22 without the destroyed evidence he is unable to determine if the seized data is within the

23 scope of the N.D.Cal. 08-90330MISC-RS order.  The N.D.Cal. 08-90330MISC-RS order

24 commanded Verizon Wireless to "provide to agents of the FBI data and information obtained

25 from the **monitoring of transmissions** related to the location of the [][aircard....”[6]  The

26
27
5.     At the very least, FBI received **real-time** geolocation data in the form of the aircard's distance from a Verizon Wireless cell site.  *See* EXHIBIT 066 of *2nd Consolidated Exhibits* (Dkt. #000-1) (FBI technical agent memorandum stating that "Verizon gave a distance from the tower to the target.").

28
6.     *Submission Of Materials Related To Applications And Court Orders Numbered 08-*

- 2 -

1  order also states that all data and information obtained via the order be "expressly limited to

2  transmissions needed to ascertain the physical location of the [][aircard], and **expressly**

3  **excludes any voice communications and data content** transmitted by Verizon Wireless to

4  or from the [][aircard.]"[7]  Because the government destroyed all evidence, whether

5  obtained from Verizon Wireless or obtained via the FBI directly,[8] the defendant has no way

6  to determine if the seized data complies with the two above quoted provisions of the

7  N.D.Cal. 08-90330MISC-RS order.  There is also no comparable evidence in the form of an

8  inventory and return because the FBI failed to comply with Rule 41 inventory and return

9  requirements.[9]  Because the defendant has neither the destroyed evidence nor the return, he

10  is incapable of raising proper Fourth Amendment scope challenges and has therefore suffered

11  prejudice.[10]  The two subsections immediately below explain how the destroyed evidence

12  would have been extremely useful to the defendant in establishing scope violation arguments

13  based on the FBI violating the terms of the N.D.Cal. 08-90330MISC-RS order.

14            **a.    The destroyed evidence would show whether the aircard
                       geolocation data provided to the FBI by Verizon Wireless
15                     was obtained by Verizon Wireless via pinging and
                       downloading data from the aircard.**
16

17        There is already evidence that the FBI at least received real-time aircard geolocation

18

*90330 And 08-90331, Authorized By Magistrate Judge Richard Seeborg, Northern District*
19  *Of California, On July 11, 2008* (order, p. 2 (emphasis added)) (Dkt. #470-1).

20  7.    *Id.* (order, p. 3 (emphasis added)) (Dkt. #470-1).

21  8.    *See Memorandum Re: Fourth Amendment Violations*, *General Facts*, Section IV(B)
    (15) (explaining how the government destroyed all real-time aircard data).

22  9.    *See id.*, *Procedural History*, Section III(E) (explaining how during and after execution
    of the N.D.Cal. 08-90330MISC-RS order, the government failed to comply with Fed. R.
23  Crim. P. 41(f)(1)(B); (f)(1)(D); (f)(2)(B); (e)(2)(B) and (iii); (e)(2)(A) and (iii); (f)(2)(C); and
    (f)(1)(C)—in the effect that the notation of time, receipt, service, and return requirements for
24  both conventional and tracking device warrants were not followed.).

25  10.    Even if the prosecution has no intention of using communications content (or
    evidenced derived therefrom) that may have been viewed and then destroyed by the FBI, the
26  destroyed communications content would still be helpful to the defense because it could be
    used to support a request for wholesale suppression based on the FBI's flagrant disregard of
27  the terms of the order.  *See, e.g.*, United States v. Chen, 979 F.2d 714, 717 (9th Cir. 1992)
    ("[W]here there is a 'flagrant disregard' for the terms of the warrant, the district court may
28  suppress all of the evidence, including evidence that was not tainted by the violation." (citing
    United States v. Medlin, 842 F.2d 1194, 1199 (10th Cir. 1988))).

1  data in the form of the aircard's distance from a Verizon Wireless cell site (a.k.a., Access

2  Network).[11]  There is a strong likelihood that the evidence the FBI obtained from Verizon

3  Wireless was generated as a result of Verizon Wireless sending transmissions to the aircard

4  (*i.e.*, pinging the aircard) and downloading geolocation estimates calculated by the aircard.

5  Relevant technical standards and statements made by TruePosition indicate that real-time

6  geolocation data for a wireless device (*e.g.*, the aircard) may be obtained using one of two

7  methods: (1) using a cell site to transmit signals to the wireless device instructing it to

8  generate and transmit back its own location estimate calculated from received cell site pilot

9  signals and/or received GPS signals,[12] or (2) using a cell site to monitor signals already

10  being sent from the wireless device to the cell site and then measuring those signals to obtain

11  a calculated location estimate.[13]  If Verizon Wireless obtained the aircard's geolocation data

12  through a method *other than* autonomously by the Access Network (*i.e.*, method No. 2

13  above)—which would require only the monitoring of aircard transmissions—then the

14  geolocation data would have been obtained in violation of the limitation to monitoring

15  contained in the N.D.Cal. 08-90330MISC-RS order.  Additionally, if not using method No. 2,

16  Verizon Wireless would have seized data directly from the aircard—*i.e.*, the aircard's own

17  calculated location estimate—and this would be an additional **Fourth Amendment seizure**

18  outside the scope of the order.  An analysis of the destroyed data would allow the defense to

19  determine if it was obtained outside the scope and limitations of the N.D.Cal. 08-

20

---

21  11.     *See* EXHIBIT 066 of *2nd Consolidated Exhibits* (Dkt. #821-3) (FBI technical agent
memorandum stating that "Verizon gave a distance from the tower to the target.")

22  12.     *See* Telecommunications Industry Association, TIA-801-A (Revision of TIA/EIA/IS-
801), *Position Determining Service for cdma2000 Spread Spectrum Systems* (Arlington, VA:
23  Apr. 2004).  Note: method No. 1 is usually used in combination with method No. 2.

24  13.     *See* Hearing Before the Subcommittee on the Constitution, Civil Rights, and Civil
Liberties of the Committee On The Judiciary, House Of Representatives: *ECPA Reform and
25  the Revolution in Location Based Technologies and Services*, 111th Cong. 2nd sess. (Jun. 24,
2010) (Prepared Statement of Michael Amarosa, Senior Vice President, TruePosition, Inc.),
26  p. 43-44, *available at* http://judiciary.house.gov/hearings/printers/111th/111-109_57082.PDF
(last visited: Jan. 5, 2012 ), p. 47-48 (TruePosition's Uplink (*i.e.*, monitoring of
27  transmissions) Time Difference of Arrival (U-TDOA) technology "can be implemented
passively on existing networks[,]" "cannot be disabled by the user..." and "is transparent to
28  the device user and the network...").  Note: method No. 2 does not necessarily require use in
combination with method No. 2.

1  90330MISC-RS order.  Because the FBI destroyed the real-time aircard data provided by

2  Verizon Wireless, the defendant is without the evidence he needs to formulate challenges

3  with respect to what type of geolocation data was seized and how the data was obtained by

4  Verizon Wireless.

**b.  The destroyed evidence would show whether the aircard geolocation data provided to the FBI by Verizon Wireless was obtained in combination with aircard communications content.**

8      There is already evidence that Verizon Wireless was unable to separate the aircard's

9  communications content from the aircard's real-time geolocation data.  FBI Agent Murray

10 sent an email to FBI Agent Leising stating that "Verizon Wireless can't separate tower data

11 from content for a broadband card."[14]  Therefore, there is a strong likelihood that the

12 geolocation data obtained by Verizon Wireless and provided to the FBI was permeated with

13 communications content.  If the geolocation data also contained communications content,

14 this would be an additional **Fourth Amendment seizure** outside the scope of the N.D.Cal.

15 08-90330MISC-RS order.  An analysis of the destroyed data would allow the defense to

16 determine if the data was obtained outside the scope and limitations of the N.D.Cal. 08-

17 90330MISC-RS order.  Because the FBI destroyed the relevant data, the defendant is without

18 the evidence he needs to determine if communications content was seized.

**2.  The FBI destroyed and/or failed to preserve the real-time aircard data in bad faith.**

21     Considering the destroyed evidence lacks exculpatory value for a trial defense, the

22 defendant needs to show that the FBI's destruction of evidence was done in bad faith if he is

23 to receive the requested relief.  *See* United States v. Barton, 995 F.3d 931, 935 (9th Cir. 1993)

24 (extending the *Youngblood* bad faith requirement to the destruction of evidence that may be

25 potentially useful at a suppression hearing.); *see also* Arizona v. Youngblood, 488 U.S. 51,

26 58 (1988) ("[U]nless a criminal defendant can show bad faith on the part of the police,

27

28 14.    EXHIBIT 28 of *1st Consolidated Exhibits* (Dkt. #587-2) (June 27, 2008 email from
FBI Agent Murray to FBI Agent Leising).

MEMORANDUM RE: FOURTH AMENDMENT VIOLATIONS
MOTION TO SUPPRESS
CR08-814-PHX-DGC

1  failure to preserve potentially useful evidence does not constitute a denial of due process of

2  law.").  In determining bad faith, the *Barton* court adapted the test used in *Cooper* typically

3  applied to exculpatory trial evidence: "[t]he presence or absence of bad faith turns on the

4  government's knowledge of the apparent exculpatory value of the evidence at the time it was

5  lost or destroyed."  Barton, 995 F.2d at 935 (alteration in original) (quoting United States v.

6  Cooper, 983 F.2d 928, 931 (9th Cir. 1993)).  In support of the defendant's bad faith claim,[15]

7  the proceeding subsections explain how the government set out to circumvent *Brady* and its

8  progeny by destroying evidence it knew would be helpful to a Fourth Amendment defense at

9  the time it was destroyed.

         **a.    The government knowingly and deliberately destroyed**
10                  **evidence with a *subjective* intent to harm the defense.**

11

12         Emails sent by IRS-CI agent Medrano and AUSA Battista make clear that

13  immediately after the aircard was located the government set out to conceal the

14  portable/transportable wireless device locators and real-time search for the aircard with a

15  subjective intent to insulate the FBI and prosecution from later challenges made by the

16  defense.[16][17]  This concealment is a strong indication that the subsequent destruction of

17  real-time aircard data was done with a subjective intent to serve the same purpose.[18]  The

18  15.    In *Westerdahl*, the Ninth Circuit noted *in dicta* that "although *Youngblood* does not
    specifically define whether the appropriate standard for bad faith is objective or subjective,
19  analysis of the opinion supports the preference for an objective bad faith standard."  United
    States v. Westerdahl, 945 F.2d 1083, 1087 (9th Cir. 1991).

20  16.    EXHIBIT 34 of *1st Consolidated Exhibits* (Dkt. #587-2) (July 17, 2008 email by IRS-
    CI Agent Medrano, sent to Albert A. Childress *et al.*) ("The tech guys were able to narrow
21  the signal to 3 apartments.  Today, we will be doing as much follow up research as we can.
    We need to develop independent probable cause of the search warrant...FBI does not want to
22  disclose the **[REDACTED]** [] (understandably so)....").

23  17.    *See* EXHIBIT 38 of *1st Consolidated Exhibits* (Dkt. #587-3) (July 17, 2008 email by
    AUSA Battista, sent to AUSA Yen) ("The team has narrowed the search down to the
24  occupant of a single apartment that was leased by a white male using a false CA Driver's
    License....  The main effort now may be to tie the target to the case without emphasis on the
25  **[REDACTED]** [].").

26  18.    The government destroyed evidence knowingly and deliberately considering it sought
    judicial authority to do so.  *See Submission Of Materials Related To Applications And Court
27  Orders Numbered 08-90330 And 08-90331, Authorized By Magistrate Judge Richard
    Seeborg, Northern District Of California, On July 11, 2008* (N.D.Cal 08-90330MISC-RS
28  order application) (Dkt. #470-1).  Therefore, the present case is distinguishable from cases
    where no bad faith was found because of the government's accidental or negligent

1  government also destroyed the real-time aircard data shortly after the defendant's arrest[19] so

2  neither the agents nor prosecution can claim that they were unaware of the importance of the

3  evidence with respect to the defendant personally.  Furthermore, because the government is

4  currently withholding certain non-destroyed evidence based on a claim of privilege, there is

5  no logical reason as to why the government could not have preserved the destroyed evidence

6  along with it.  The prosecution drafted the N.D.Cal. 08-90330MISC-RS proposed order

7  containing the "destroy the evidence" provision while articulating no legitimate purpose for

8  the destruction of evidence in either the order application or proposed order itself.  The

9  government's complete lack of articulation is a strong indication that the only purpose for the

10  provision was to reap the benefit of having evidence unavailable to a defense involving

11  challenges made to the intrusiveness of the technology.  Under a subjective analysis, the

12  government knowingly and deliberately destroyed relevant and material evidence with a

13  subjective intent to harm the defense and this supports a finding of bad faith.

14            **b.   The government knowingly and deliberately destroyed
                    evidence with an *objective* intent to harm the defense.**

15

16       The prosecution previously indicated that if they lose the right to rely upon the real-

17  time aircard data then the government has no case against the defendant.[20]  Knowingly and

18  deliberately destroying the very evidence upon which a criminal prosecution relies is not an

19  act that a government agent or prosecutor is willing to accept as reasonable.  A competent

20  government actor would understand that the fruits of such an important Fourth Amendment

21  destruction of evidence.  *Compare* the present case *to* <u>Barton</u>, 995 F.3d at 936 (9th Cir. 1993)

22  (No bad faith because "[t]he record does not support Barton's contention that the officers
    *knowingly* placed the marijuana in unventilated plastic bags for the purpose of destroying it."
    (emphasis in original)); <u>United States v. Vera</u>, 231 F. Supp.2d 997, 1002 ("The Court finds

23  no evidence of actual bad faith... [considering] there is no dispute that [][the agents involved]
    did everything they could to ensure all evidence seized in this case was properly

24  preserved.").

25  19.    *See Memorandum Re: Fourth Amendment Violations*, *General Facts*, Section IV(B)
    (15).

26  20.    *September 8, 2010 Status Conference, Partial Transcript of Proceedings*, [MR.

27  BATTISTA (AUSA)] at 16:33:34 – 16:34:14 ("[O]bviously, if the government loses the
    information that we gained by gaining access to the location of the air card, we don't have a

28  case against the defendant.  But if we win that, the evidence is quite extensive and direct.")
    (Dkt. #442 [Notice]).

1  search and seizure needs to be preserved so that the accused will have an opportunity to

2  challenge the intrusion upon which the government's entire prosecution relies.  It is

3  axiomatic that destruction of the evidence at issue inhibits the defendant's ability to raise

4  proper scope challenges relating to the execution of the N.D.Cal. 08-90330MISC-RS order.

5  The fact that an inventory was not made and a return not filed[21] further underscores the

6  objective unreasonableness of the destruction of evidence in this case.  *See* California v.

7  Trombetta, 467 U.S. 479, 489 (1984) ("To meet th[e] standard of constitutional materiality,

8  evidence must... be of such a nature that the defendant would be unable to obtain comparable

9  evidence by other reasonably available means [(*e.g.*, a return listing the evidence seized)]."

10  (internal citation omitted)).  The nonexistent N.D.Cal. 08-90330MISC-RS inventory and

11  return do not serve to act as a substitute for what the FBI destroyed.  Under an objective

12  analysis, the government knowingly and deliberately destroyed relevant and material

13  evidence with an objective intent to harm the defense and this supports a finding of bad faith.

14  **c.    The government cannot rely in good faith on the FBI's**
    **express "destroy the evidence" policy.**

15

16  The government claims that "the FBI has a standard policy of destroying the real-

17  time data at the end of a tracking operation."[22]  The prosecution provided the defendant

18  with a "copy and paste" of what it claims is the relied upon FBI policy:

19  Extracted from HQ-1068430 serial 342, an EC dated 8/24/2004:

20  Upon completion of a case all data related to that particular case must be
    removed from the cellular tracking equipment.  Thus, prior to deploying
21  equipment to effect a collection authorized pursuant to particular court order,
    TTAs should ensure that the equipment has been cleared of any prior case
22  operational data.

23  EXHIBIT 071 of *2nd Consolidated Exhibits* (Dkt. #821-4) (December 2, 2011
    letter from AUSA Battista to the defendant, p. 1).

24

25  21.    *See Memorandum Re: Fourth Amendment Violations, Procedural History*, Section
    III(E) (explaining how during and after execution of the N.D.Cal. 08-90330MISC-RS order,
    the government failed to comply with Fed. R. Crim. P. 41(f)(1)(B); (f)(1)(D); (f)(2)(B); (e)
26  (2)(B) and (iii); (e)(2)(A) and (iii); (f)(2)(C); and (f)(1)(C)—in the effect that the notation of
    time, receipt, service, and return requirements for both conventional and tracking device
27  warrants were not followed.).

28  22.    *Government's Response To Defendant's Motion To Dismiss For Destruction Of
    Evidence – Docket No. 595* (Dkt. #633, p. 3).

1  The above quoted express policy provides no justification for destroying evidence of the type

2  destroyed in the present case.[23]  Above all else, the policy does not even remotely apply to

3  evidence obtained directly from a wireless carrier such as Verizon Wireless—precisely the

4  type of destroyed evidence at issue in this memorandum.  Additionally, the FBI policy

5  provides no legitimate underlying justification to deliberately destroy evidence such as lack

6  of storage space or disposal of toxic waste as discussed in prior cases.[24]  Because the

7  written policy lacks a justification for destruction and, in any event, does not apply to the

8  evidence obtained directly from Verizon Wireless, the government cannot rely on cases

9  indicating that "[c]ompliance with departmental policy concerning the destruction of

10  evidence is evidence of good faith."  Vera, 231 F.Supp.2d at 1000 (listing cases).

### d. The government destroyed evidence in an effort to circumvent *Brady* and its progeny.

13      No reasonable government agent or prosecutor can claim to be unaware that

14  destroying evidence without a legitimate purpose is in clear contradiction to the then 45 year

15  old *Brady* decision and its progeny.  *See* Groh v. Ramirez, 540 U.S. 551, 556 (2004) ("No

16  reasonable officer could claim to be unaware of [][a] basic rule, well established by our

17  cases... [and] noted nearly 20 years ago..." (internal citations omitted)).  In the context of

18  privileged evidence, the decision to destroy evidence obtained during a search is not a

19  decision that should be unilaterally made by the executive branch of the government without

20  having a judge first examine the evidence for relevance.[25]  Considering the above, the test

21  established in California v. Trombetta, 467 U.S. 479, 488 (1984) is relevant here.  Applying

---

22  23.     The policy simply dictates that surveillance equipment be cleared of data relating to
23  any prior investigation before being used to locate a new target.  The policy neither requires
    nor justifies the complete destruction of case evidence as apposed to saving it to a CD or
24  other data storage device kept separate from the surveillance equipment.

25  24.     *See* United States v. Barton, 995 F.3d 931, 935 (9th Cir. 1993) (lack of storage space
    underlying basis for "destroy the evidence" policy); United States v. Heffington, 952 F.2d
26  275, 281 (9th Cir. 1991) (routine disposal of toxic waste was underlying basis for "destroy the
    evidence" policy).

27  25.     *See* Mohamed v. Jeppesen Dataplan, Inc., 579 F.3d 943, 958-59 (9th Cir 2009)
    ("[J]udicial control over the evidence in a case cannot be abdicated to the caprice of
28  executive officers without leading to intolerable abuses." (internal quotation marks and
    brackets omitted) (citing United States v. Reynolds, 345 U.S. 1, 8-10 (1953)).

MEMORANDUM RE: FOURTH AMENDMENT VIOLATIONS
MOTION TO SUPPRESS
CR08-814-PHX-DGC

1    the inverse of *Trombetta*, a finding of bad faith is required if the government destroyed

2    evidence "in a calculated effort to circumvent the disclosure requirements established by

3    *Brady v. Maryland* and its progeny."  *Id.* at 488 (referencing Brady v. Maryland, 373 U.S. 83

4    (1963)).  In the present case, *Trombetta* supports a finding of bad faith because the

5    underlying motive for destruction was to conceal investigative techniques by deliberately

6    and permanently keeping evidence away from the defendant.[26]  *See* Section II(A)(2)(a),

7    *supra* (explaining how the government knowingly and deliberately destroyed evidence with

8    a *subjective* intent to harm the defense).

9            **e.    The government cannot rely in good faith on the "destroy
                     the evidence" provision of the N.D.Cal. 08-90330MISC-RS
10                   order.**

11           In addition to the inapplicable FBI policy, the government also claims that it

12   circumvented *Brady* while relying in good faith on the "destroy the evidence" provision of

13   the N.D.Cal. 08-90330MISC-RS order.[27]  The "destroy the evidence" provision of the order

14   is constitutionally offensive and no competent government agent or prosecutor can claim to

15   have relied upon it in good faith.  Although the N.D.Cal. 08-90330MISC-RS order

16   seemingly "authorized" the government's destruction of evidence, the magistrate should have

17   never issued the order considering there are well established rules requiring the preservation

18   of evidence.  *See*, *e.g.*, Brady, 373 U.S. 83 (1963).  In *Johns*, the Ninth Circuit made clear

19   that once a rule has been established in case law, a magistrate's "deliberate disregard of []

20   [the] rule [in an issued warrant] will indicate to reviewing courts that the warrant should

21   never have been issued, and will render inapplicable the good faith exception."  United

22   States v. Johns, 948 F.2d 599, 606 (9ᵗʰ Cir. 1991).[28]  Moreover, because the government

23   ───────────────────────────────────────────
     26.    The *Trombetta* court also noted that "California gives drunken driving defendants the
24   opportunity to... cross-examine the law enforcement officer who administered the Intoxilyzer
     test..."  *Id.* at 490.  As is well established in the present case, the government claims that the
25   identities of the agents who obtained the real-time aircard data from Verizon Wireless are
     privileged and can never be revealed to any defendant in any case.

26   27.    *See Memorandum Re: Fourth Amendment Violations*, *Procedural History*, Section
     III(E) (quoting relevant sections of the order relied upon by the government).
27
     28.    Although *Johns* discusses "good faith" relevant to a search, the Supreme Court makes
28   little distinction between the different types of "good faith" and "bad faith" when
     determining whether government conduct is "objectively reasonable."  For example, in one

1  "prepared the invalid [][N.D.Cal. 08-90330MISC-RS order],"[29] and outlined absolutely no

2  basis for its request or authority to destroy evidence, it may not argue that it "reasonably

3  relied on the Magistrate's assurance" that the order was valid.  Groh, 540 U.S. at 564.

### III.   [Conclusion:] Suppression of secondary evidence is an appropriate remedy/sanction for the FBI's destruction of real-time aircard data obtained from Verizon Wireless.

6  In support of his request for suppression of secondary evidence, the defendant

7  explained how the FBI's destruction of evidence was done in bad faith and how it caused

8  prejudice to the defendant in the effect that he is now unable to raise certain Fourth

9  Amendment arguments.[30]  At the very least, the FBI obtaining the real-time aircard data

10 from Verizon Wireless was an unattenuated but-for cause of locating the aircard and the

11 defendant inside apartment No. 1122.[31]  Therefore, as a remedy/sanction for the FBI's

12 destruction of evidence, the defendant respectfully requests that the Court suppress the

13 following secondary evidence derived from the destroyed evidence:

14 **EVIDENCE TABLE**

| # | Secondary evidence sought to be suppressed: |
|---|---|
| 1 | Location of the aircard and the defendant inside apartment No. 1122 (as information obtained by the government); |
| 2 | All derivative evidence stemming from the location of the aircard and the defendant inside apartment No. 1122; |

20 * THIS MEMORANDUM WAS RESEARCHED, PREPARED, AND DRAFTED BY
   DANIEL DAVID RIGMAIDEN, PRO SE. - JUNE 1, 2012;

context the Supreme Court held that "the same standard of objective reasonableness that [] [was] applied in the context of a suppression hearing in *Leon* defines the qualified immunity accorded an officer [in a civil case.]"  Groh, 540 U.S. at 565 fn. 8 (2004).

29.   The prosecution confirmed that the N.D.Cal. 08-90330MISC-RS proposed order was signed "as is."  *See* EXHIBIT 073 of *2ⁿᵈ Consolidated Exhibits* (Dkt. #821-4) (December 16, 2011 letter from AUSA Battista to the defendant, p. 1:  "[Y]ou have been advised that there are no known changes to the documents presented to the Court and ultimately signed.").

30.   *See* Section II(A)(1) *et seq.*, *supra*.

31.   *See* EXHIBIT 066 of *2ⁿᵈ Consolidated Exhibits* (Dkt. #821-3) (FBI technical agent memorandum stating that "Analysis from both the [LES - Equipment used to locate the subject aircard] (prior to) and the [LES - Equipment used to locate the subject aircard] (during op) **and the distance from the tower info** [(obtained from Verizon Wireless)], assisted techs in obtaining a start location for the search." (emphasis added)).

MEMORANDUM RE: FOURTH AMENDMENT VIOLATIONS
MOTION TO SUPPRESS
CR08-814-PHX-DGC

- 11 -