1  Daniel Rigmaiden
   Agency # 10966111
2  CCA-CADC
   PO Box 6300
3  Florence, AZ 85132
   Telephone: none
4  Email: none

5  Daniel David Rigmaiden
   Pro Se, Defendant

6

7                    UNITED STATES DISTRICT COURT

8                        DISTRICT OF ARIZONA

9

10  United States of America,              No. CR08-814-PHX-DGC

11          Plaintiff,                     FIRST SUPPLEMENT TO MOTION TO
                                           SUPPRESS RE: SEARCH AND SEIZURE
12  v.                                     OF DIGITAL EVIDENCE UNDER
                                           N.D.Cal. WARRANTS
13  Daniel David Rigmaiden, et al.,

14          Defendant.

15

16         Defendant, Daniel David Rigmaiden, appearing *pro se*, respectfully submits this *First*

17  *Supplement To Motion To Suppress RE: Search And Seizure Of Digital Evidence Under*

18  *N.D.Cal. Warrants*.[1]   Based on the **newly provided June 21, 2012 evidence**,[2] this

19  supplemental filing seeks to supplement and supersede prior arguments made in the

20  defendant's *Motion To Suppress* (Dkt. #824), and incorporated *Memorandum Re: Fourth*

21  *Amendment Violations (re: N.D.Cal. 08-70460-HRL/PVT)* (Dkt. #830-1), regarding the

22  search and seizure of digital evidence from the defendant's physical data storage devices

23  _____

24  1.      This filing is a "first" supplement considering the government continues with its four
    year long protracted discovery process and is yet to respond to, let alone acknowledge, the
25  defendant's recent discovery request stemming from the government's most recent belated
    discovery provided on June 21, 2012.  *See also Motion For Leave To File Motion For*
26  *Disclosure RE: Digital Evidence Search Or, In The Alternative, To Dismiss The Case With*
    *Prejudice* and the attached proposed *Motion For Disclosure RE: Digital Evidence Search*.

27  2.      The newly provided June 21, 2012 evidence, as well as other prior evidence recently
    made relevant by the newly provided evidence, is attached to the defendant's *Third*
28  *Submission Of Consolidated Exhibits Relating To Discovery And Suppression Issues* (Dkt.
    #863).

                                    - 1 -

FIRST SUPPLEMENT TO MOTION TO SUPPRESS
RE: SEARCH AND SEIZURE OF DIGITAL EVIDENCE UNDER N.D.Cal. WARRANTS
CR08-814-PHX-DGC

1   seized from 431 El Camino Real, Apartment No. 1122, Santa Clara, CA 95050 (hereafter

2   "apartment No. 1122").  The arguments in this filing address constitutional violations and a

3   technical violation applicable to the N.D.Cal. 08-70460-HRL/PVT warrant and (now

4   applicable) N.D.Cal. 08-70502-PVT warrant.[3]

5          The defendant's filings at Dkt. #824 and #830-1 reference his prior assumption that

6   IRS-CI Agent Daun made her initial search and seizure of data—by copying files from

7   forensic images of the defendant's data storage devices to DVDs and a CD—within 30 days

8   of the physical search of apartment No. 1122.  However, after filing Dkt. #824 and #830-1,

9   the government provided the defendant with new evidence indicating that IRS-CI Agent

10  Daun took approximately 353 days to search and seize data from the images of the

11  defendant's storage devices seized under the N.D.Cal. 08-70460-HRL/PVT and 08-70502-

12  PVT warrants.  According to the N.D.Cal. warrants, the final day IRS-CI Agent Daun was

13  permitted to search and seize data from the images was September 2, 2008 (08-70460-HRL/

14  PVT ) and September 3, 2008 (08-70502-PVT) but her search/seizure of data was not

15  complete until approximately July 22, 2009.  Furthermore, after filing Dkt. #824 and #830-1,

16  the government provided new evidence indicating that IRS-CI Agent Medrano, IRS-CI

17  Agent Fleischmann, and FBI Agent Murray were also engaged in exploratory rummaging

18  through clones of the defendant's computer system for more than a year after the physical

19  search of apartment No. 1122.  As outlined below, the above explained newly provided

20  evidence changes the facts of the case and the defendant's arguments with respect to the

21  government's search and seizure of digital data.  The defendant now needs to update and

22  supersede his prior wholesale suppression argument (*see* Dkt. #830-1) in light of the newly

23  _____

24  3.      The defendant's filings at Dkt. #824 and #830-1 did not originally challenge the
    search and seizure of digital evidence stemming from the N.D.Cal. 08-70502-PVT warrant
    used to search storage unit No. A-47, CBD Indoor Mini, 570 Cinnabar Street, San Jose,
25  California, 95110 (hereafter "storage unit No. A-47").  The N.D.Cal. 08-70502-PVT warrant
    was not directly challenged at Dkt. # 824 and #830-1 considering success of the defendant's
26  wholesale suppression argument, which was made in the context of the N.D.Cal. 08-70460-
    HRL/PVT warrant, would result in suppression of all physical and digital evidence obtained
27  under the N.D.Cal. 08-70502-PVT warrant based on "fruits-of-the-poisonous-tree."
    However, as outlined in this filing, the newly discovered technical violation merits a direct
28  challenge to the N.D.Cal. 08-70502-PVT warrant which, if successful, would result in
    suppression separate from the outcome of the defendant's wholesale suppression challenge.

provided evidence and he also needs to raise new challenges relating to the newly identified

technical violations of the N.D.Cal. 08-70460-HRL/PVT and 08-70502-PVT warrants.  The

proceeding sections provide supplemental, corrected, and superseded facts, arguments, and

concluding section as specified in the *'d paragraphs.

**I.  FACTS: supplemental, corrected, and superseded with respect to the government's seizure of digital data.**

\*.     In light of the new evidence provided to the defense by the government on June

21, 2012, the following facts supplement, correct, and supersede the facts contained in the

defendant's *Motion To Suppress* (Dkt. #824), *Memorandum Re: Fourth Amendment*

*Violations* (Dkt. #824-1), *General Facts*, Section IV(B)(17), ¶ Nos. 86-88, which were

incorporated into the *Memorandum Re: Fourth Amendment Violations (re: N.D.Cal. 08-*

*70460-HRL/PVT)* (Dkt. #830-1) and applicable to the arguments contained therein.

1.     On August 3, 2008, the government searched apartment No. 1122 while

executing the "AMENDED" version of the N.D.Cal. 08-70460-HRL/PVT warrant.[4]

During the search, the government physically seized the defendant's home computer,

physical data storage devices, encrypted virtual drives, and other various physical evidence

in the possession of the defendant.  During the physical search of the defendant's home and

in the days following the search, IRS-CI Agent Daun imaged the defendant's data storage

devices and encrypted virtual drives by mirroring/copying them to government hard drives.

[5][6]  Likewise, the data storage device and encrypted virtual drive seized from storage unit

---

4.     *See Submission Of Materials Related To Search Warrant No. 08-70460, Authorized By Magistrate Judge Patricia V. Trumbull, Northern District Of California, On July 30, 2008* (Dkt. #464-1, p. 20) (return).

5.     *See Third Submission Of Consolidated Exhibits Relating To Discovery And Suppression Issues*, <u>EXHIBIT 01</u> (Dkt. #863-1) ("Computer Forensic Report" by IRS-CI Agent Tracy L. Daun stating that she conducted a partial live acquisition of the defendant's "T" drive using WinRAR and imaged the remainder of the drives using IXimager).

6.     Throughout this filing, when the defendant refers to "forensic images" or similar and "encrypted virtual drives" or similar, said terms also encompass the government's live acquisition of the defendant's "T" drive into a WinRAR archive—which is the same as creating a mirror copy of the drive sans preservation of file access dates—and all files contained therein, both within and beyond the scope of the N.D.Cal. 08-70460-HRL/PVT warrant.  *See id.*

FIRST SUPPLEMENT TO MOTION TO SUPPRESS
RE: SEARCH AND SEIZURE OF DIGITAL EVIDENCE UNDER N.D.Cal. WARRANTS
CR08-814-PHX-DGC

FIRST SUPPLEMENT TO MOTION TO SUPPRESS
RE: SEARCH AND SEIZURE OF DIGITAL EVIDENCE UNDER N.D.Cal. WARRANTS
CR08-814-PHX-DGC

1  No. A-47, during the August 4, 2008 execution of the N.D.Cal. 08-70502-PVT warrant,[7]

2  were imaged by IRS-CI Agent Daun in the same fashion.[8]

3       2.     Once the seized data storage devices and encrypted virtual drives were imaged,

4  IRS-CI Agent Daun began what would end up being a 353 day exploratory rummaging

5  through the defendant's files contained on his home computer, data storage devices, and

6  encrypted virtual drives.  According to a July 8, 2009 email, IRS-CI Agent Daun would not

7  complete her search and seizure of data from the forensic images, *etc.* until approximately

8  July 22, 2009[9]—323 days past the 30-day deadline for search/seizure of data as permitted

9  by the N.D.Cal. 08-70460-HRL/PVT warrant.[10] and 322 days past the 30-day deadline for

10  search/seizure of data as permitted by the N.D.Cal. 08-70502-PVT warrant.[11]

11       3.     In order to facilitate the seizure of data, IRS-CI agent Daun searched through

12  the forensic images, extracted all files that fell within the scope of the warrants, and then

13  copied some of those files to DVDs and a CD so that they would be isolated (*i.e.*, seized)

14  from the images.  The search and seizure involving the digital data is explained in IRS-CI

15  Agent Daun's "Computer Forensic Report" originally provided to the defense via discovery

16  

---

17  7.    *See Submission Of Documents Related To Original Northern District Of California 08-70502-HRL Search Warrant Used To Physically Search Storage Unit No. A-47* (Dkt. #846-2).

18  

19  8.    *See id.*, p. 24 (discussing data storage device and encrypted virtual drive seized from storage unit No. A-47).

20  9.    *See Third Submission Of Consolidated Exhibits Relating To Discovery And Suppression Issues*, EXHIBIT 02 (Dkt. #863-1) (July 8, 2009 email from IRS-CI Agent Daun to IRS-CI Agent Medrano *et al.*: IRS-CI Agent Daun indicating that it would take her approximately two weeks from **July 8, 2009** to seize data to the DVDs later noted in her "Computer Forensic Report").

21  

22  

23  10.    *See Submission Of Documents Related To Original Northern District Of California 08-70460-HRL Search Warrant Used To Physically Search Apartment No.* 1122, "Computer Search Protocol For The Northern District Of California," ¶ 5 (Dkt. #566-2, p. 16) ("The government must complete an off-site search of a device that agents removed in order to search for evidence of crime as promptly as practicable and **no later than thirty (30) calendar days** after the initial execution of the warrant." (emphasis added)).

24  

25  

26  11.    *See Submission Of Documents Related To Original Northern District Of California 08-70502-HRL Search Warrant Used To Physically Search Storage Unit No. A-47*, "Computer Search Protocol For The Northern District Of California," ¶ 5 (Dkt. #846-2, p. 8) ("The government must complete an off-site search of a device that agents removed in order

27  to search for evidence of crime as promptly as practicable and **no later than thirty (30) calendar days** after the initial execution of the warrant." (emphasis added)).

28

*FIRST SUPPLEMENT TO MOTION TO SUPPRESS*
*RE: SEARCH AND SEIZURE OF DIGITAL EVIDENCE UNDER N.D.Cal. WARRANTS*
*CR08-814-PHX-DGC*

on February 25, 2010.[12]  The "Computer Forensic Report" states under numerous "Analysis" headings that, "The following is a summary of the evidence located on the computer that fell within the parameters of the Search Warrant and the Items to be Seized."[13]

4.     The amount of files falling within the scope of the relevant warrants was only a small fraction of the total number of files contained within the forensic images of the defendant's data storage devices and encrypted virtual drives.  For examples, under the "Analysis - T_drive.rar (WinRAR archive)" heading of her "Computer Forensic Report," IRS-CI Agent Daun indicated that she seized a total of 3205 files[14] while the "live acquisition" image (*i.e.*, the WinRAR archive) contains a total of 26,983 files.  In other words, 88.12 % of the files contained in the WinRAR archive image of the "T" drive are beyond the scope of the relevant warrant.  The following table displays additional file seizure ratios applicable to various (but not all) data storage devices and encrypted virtual drives that were imaged by IRS-CI Agent Daun:[15]

| Storage Device Or Encrypted Virtual Drive: | Warrant Relevant To Physical Seizure: | Number Of Files Seized From Images: | Total Number Of Files On Drive: | Percentage Of Imaged Files Beyond Scope Of Warrant: |
|---|---|---|---|---|
| Analysis - IBM ThinkPad (S/N LV-C4398) | N.D.Cal. 08-70460-HRL/PVT (**apartment**) | 590 | 60,891 | **99.03 %** |

---

12.     *See Third Submission Of Consolidated Exhibits Relating To Discovery And Suppression Issues*, EXHIBIT 01 (Dkt. #863-1) ("Computer Forensic Report" by IRS-CI Agent Daun RE: search of data storage devices and encrypted virtual drives seized from apartment No. 1122 and storage unit No. A-47).

13.     *See id.*, p. 31.

14.     *See id.*, p. 5-6.

15.     The values contained in the "Number Of Files Seized From Images" column of the table were calculated by adding together the total number of seized files listed under the relevant "Analysis" heading contained in the "Computer Forensic Report."  *See id., passim.* The values contained in the "Total Number Of Files On Drive" column were calculated by using the ESTsoft ALZip program or Microsoft Windows Explorer program to determine how many files were within the relevant forensic image applicable to each drive.  *See Third Submission Of Consolidated Exhibits Relating To Discovery And Suppression Issues*, EXHIBIT 10, EXHIBIT 11, EXHIBIT 12, EXHIBIT 13, and EXHIBIT 14 (screenshots of file/folder or archive properties dialog box relevant to each forensic image) (Dkt. #863-1).

FIRST SUPPLEMENT TO MOTION TO SUPPRESS
RE: SEARCH AND SEIZURE OF DIGITAL EVIDENCE UNDER N.D.Cal. WARRANTS
CR08-814-PHX-DGC

| Analysis - T_drive.rar (WinRAR archive) | N.D.Cal. 08-70460-HRL/PVT (**apartment**) | 3205 | 26,983 | **88.12 %** |
|---|---|---|---|---|
| Analysis - "filesalot.dcv" | N.D.Cal. 08-70460-HRL/PVT (**apartment**) | 3281 | 53,520 | **93.87 %** |
| Analysis - "filesalot_bak_3-1-2008" | N.D.Cal. 08-70460-HRL/PVT (**apartment**) | 2244 | 51,353 | **95.63 %** |
| Analysis - "filesalot_bak_3-31-2008" | N.D.Cal. 08-70502-PVT (**storage unit**) | 2784 | 51,734 | **94.62 %** |

5.     Although the N.D.Cal. 08-70460-HRL/PVT warrant and N.D.Cal. 08-70502-PVT warrant each state that the 30-day deadline for searching and seizing digital data "may be extended by court order for good cause shown[,]"[16] the government made no applications to the issuing magistrate or other magistrate to extend the deadlines to search and seize digital data past 30 days.  The government's 353-day fishing exhibition was entirely unauthorized.

6.     During IRS-CI Agent Daun's 353-day fishing exhibition into images of the defendant's data storage devices and encrypted virtual drives, which the government admits "actually contain many more files than those that fall within the parameters of the Search Warrant and its attachments[,]"[17] IRS-CI Agent Medrano, IRS-CI Agent Fleischmann, and FBI Agent Murray also had access to their own virtual copies of the defendant's entire computer system, as provided to them by IRS-CI Agent Daun.[18]  The agents' "virtual

16.     *E.g.*, *Submission Of Documents Related To Original Northern District Of California 08-70460-HRL Search Warrant Used To Physically Search Apartment No. 1122, Application*, "Computer Search Protocol For The Northern District Of California," ¶ 5 (Dkt. #566-1, p. 17).

17.     *Third Submission Of Consolidated Exhibits Relating To Discovery And Suppression Issues*, <u>EXHIBIT 01</u> (Dkt. #863-1) ("Computer Forensic Report" by IRS-CI Agent Daun RE: search of data storage devices and encrypted virtual drives seized from apartment No. 1122 and storage unit No. A-47, p. 31).

18.     *See Third Submission Of Consolidated Exhibits Relating To Discovery And Suppression Issues*, <u>EXHIBIT 03</u> (Dkt. #863-1) (August, 2009 emails between IRS-CI Agent Tracy L. Daun *et al.*: detailing that IRS-CI Agent Medrano, IRS-CI Agent Fleischmann, and FBI Agent Murray all had their own virtual machine clones of the defendant's computer system up to at least **August 30, 2009**).

FIRST SUPPLEMENT TO MOTION TO SUPPRESS
RE: SEARCH AND SEIZURE OF DIGITAL EVIDENCE UNDER N.D.Cal. WARRANTS
CR08-814-PHX-DGC

machines" allowed them to access clones of the defendant's home computer and all files as if sitting in front of the defendant's actual computer and data storage devices.[19]  In other words, at least three additional case agents engaged in a year long exploratory rummaging through the defendant's files while the N.D.Cal. 08-70460-HRL/PVT warrant and N.D.Cal. 08-70502-PVT warrant only allowed 30-day examinations.  It was only after IRS-CI Agent Daun completed her 353-day search and seizure of data from the forensic images (by copying data to DVDs and a CD)[20] that she instructed the other agents to stop accessing the defendant's computer system and files.[21]  IRS-CI Agent Daun's instruction to cease the fishing exhibition came on August 28, 20**09**[22]—more than a year after the physical search of apartment No. 1122.

7.     As a general matter, IRS-CI Agent Daun is not shy about admitting her willingness to intentionally delay a search and seizure if doing so serves an unrelated side purpose that benefits the activities of other agents.  While inside the defendant's residence on August 3-4, 2008, IRS-CI Agent Daun took the time to image more than 100 gigabytes of data in order to give other agents time "to get a follow up warrant for some additional items in the apartment."[23]  IRS-CI Agent Daun conducted this needless and lengthy on-site imaging even while she planned to "seiz[e] everything - including the items [][she] imaged..." anyways.[24]  Rather than simply seize the physical drives and image them off-

---

19.     *See Third Submission Of Consolidated Exhibits Relating To Discovery And Suppression Issues*, <u>EXHIBIT 04</u> (Dkt. #863-1) (August 10, 2008 email from IRS-CI Agent Daun to AUSA Battista *et al.*: IRS-CI Agent Daun explaining that "[a] virtual machine allows me to sit there and view [][the defendant's] computer, as if I was actually sitting at his computer[.]").

20.     *Third Submission Of Consolidated Exhibits Relating To Discovery And Suppression Issues*, <u>EXHIBIT 01</u> (Dkt. #863-1) ("Computer Forensic Report" by IRS-CI Agent Daun RE: search of data storage devices and encrypted virtual drives seized from apartment No. 1122 and storage unit No. A-47).

21.     *See id.*, <u>EXHIBIT 03</u> (Dkt. #863-1) (August 2009 emails between IRS-CI Agent Tracy L. Daun *et al.*: IRS-CI Agent Daun advising the primary case agents that, "[a]t this point, no one should be viewing the virtual machines.").

22.     *See id.*

23.     *Id.*, <u>EXHIBIT 05</u> (Dkt. #863-1) (August 7, 2008 email from IRS-CI Agent Daun to Jeffrey H. Willert).

24.     *Id.*

1   site, as permitted by the N.D.Cal. 08-70460-HRL/PVT warrant, IRS-CI Daun's intentional

2   feet-dragging allowed other agents to hang-out in the defendant's home for 27 hours.[25]

3   Hardly requiring a 27-hour search, the defendant's home is only 489 $ft^2$,[26] contained

4   minimal possessions,[27] and was clean and orderly.[28]

5       8.      Even after IRS-CI Agent Daun completed her 323-day late search and seizure

6   of data from the defendant, and even after IRS-CI Agent Daun's August 28, 2009 instruction

7   that, "[a]t this point, no one should be viewing the virtual machines[,]"[29] she still continued

8   her personal exploratory rummaging into the forensic images at least until October of 2011,

9   *i.e.*, an additional 27 months.  Evidence in support of this claim came into the possession of

10  the defense via the March 22, 2012 discovery set.[30]  According to the noted discovery, IRS-

11  CI Agent Daun re-accessed the original images (*i.e.*, the encrypted virtual drives containing

12  "many more files than those that fall within the parameters of the Search Warrant and its

13  attachments[]")[31] in October of 2011.[32][33]  While re-accessing the forensic images, IRS-

14  25.   *See id.*, EXHIBIT 06 (Dkt. #863-1) (IRS report of search warrant execution at apartment No. 1122).

15
16  26.   *See First Submission Of Consolidated Exhibits Relating To Discovery And Suppression Issues*, EXHIBIT 29 (Dkt. #587-2) (Domicilio apartments floor plans showing studio apartment at 489 $ft^2$); *id.*, EXHIBIT 30 (Dkt. #587-2) (Domicilio apartments site map showing apartment No. 1122 to be a studio apartment).

17
18  27.   *See Third Submission Of Consolidated Exhibits Relating To Discovery And Suppression Issues*, EXHIBIT 07 (Dkt. #863-1) (August 6, 2008 email from FBI Agent Murray to FBI supervisor: apartment No. 1122 was sparse, clean, and orderly).

19  28.   *See id.*

20  29.   *Third Submission Of Consolidated Exhibits Relating To Discovery And Suppression Issues*, EXHIBIT 03 (Dkt. #863-1).

21
22  30.   *See Second Submission Of Consolidated Exhibits Relating To Discovery And Suppression Issues*, EXHIBIT 088 (Dkt. #821-5) (March 7, 2012 IRS Memorandum for Transmittal of Electronically Stored Information by IRS-CI Agent Daun).

23  31.   *Third Submission Of Consolidated Exhibits Relating To Discovery And Suppression Issues*, EXHIBIT 01 (Dkt. #863-1) ("Computer Forensic Report" by IRS-CI Agent Daun RE: search of data storage devices and encrypted virtual drives seized from apartment No. 1122 and storage unit No. A-47, p. 31).

24
25  32.   *See id.*, EXHIBIT 08 (Dkt. #863-1) (government discovery providing

26  "agj_bag_liner_jagbags.co.nz.txt" (seized from forensic image of the defendant's data storage device) containing personal communications between the defendant (under his alias of Andrew Johnson) and Jacqueline Gardiner).

27
28  33.   *See Second Submission Of Consolidated Exhibits Relating To Discovery And Suppression Issues*, EXHIBIT 088 (Dkt. #821-5) (March 7, 2012 IRS Memorandum for

FIRST SUPPLEMENT TO MOTION TO SUPPRESS
RE: SEARCH AND SEIZURE OF DIGITAL EVIDENCE UNDER N.D.Cal. WARRANTS
CR08-814-PHX-DGC

CI Agent Daun copied the file "agj_bag_liner_jagbags.co.nz.txt"—a file not even listed in her original "Computer Forensic Report."[34]  It is clear that IRS-CI Agent Daun was/is re-accessing the forensic images of the encrypted virtually drives because that is the only way she could have obtained a file not listed in her "Computer Forensic Report" made approximately 27 months prior.

9.    The one of many files accessed by IRS-CI Agent Daun after July 22, 2009, *i.e.*, "agj_bag_liner_jagbags.co.nz.txt," contains personal communications between the defendant[35] and Jacqueline Gardiner.[36]  The information contained in the file is not relevant to the charges against the defendant and the government has provided no explanation as to how the file helps its case.  In fact, in response to an inquiry regarding IRS-CI Agent Daun's belated seizure of "agj_bag_liner_jagbags.co.nz.txt," AUSA Battista informed the defendant that government "[s]earches for evidence to be used in this case are being limited to the materials indexed in the February 25, 2010, discovery."[37]  The February 25, 2010 discovery referred to by AUSA Battista is IRS-CI Agent Daun's "Computer Forensic Report,"[38] which does not contain

_____

Transmittal of Electronically Stored Information by IRS-CI Agent Daun, stating that the "agj_bag_liner_jagbags.co.nz.txt" file was obtained in October of 2011).

34.   *See id*, EXHIBIT 088 (Dkt. #821-5) (March 7, 2012 IRS Memorandum for Transmittal of Electronically Stored Information by IRS-CI Agent Daun, stating that "[t]he above file [agj_bag_liner_jagbags.co.nz.txt] is located in a DriveCrypt encrypted volume named filesalot.dcv on the Toshiba 100GB hard drive...  The agj_bag_liner_jagbags.co.nz.txt file **is not individually listed in the analysis reports.**" (emphasis added)).

35.   The defendant's communication was under his alias of Andrew Johnson.  *See* declaration RE: *Daniel Rigmaiden owns the aircard and used the aircard service as a home Internet connection*, ¶ 4, p. 2 (Dkt. #824-3) (explaining that the defendant used the alter ego of "Andrew Johnson").

36.   *See Third Submission Of Consolidated Exhibits Relating To Discovery And Suppression Issues*, EXHIBIT 08 (Dkt. #863-1) ("agj_bag_liner_jagbags.co.nz.txt").

37.   *See Second Submission Of Consolidated Exhibits Relating To Discovery And Suppression Issues*, EXHIBIT 088 (Dkt. #821-5) (March 7, 2012 IRS Memorandum for Transmittal of Electronically Stored Information by IRS-CI Agent Daun).

38.   *See Third Submission Of Consolidated Exhibits Relating To Discovery And Suppression Issues*, EXHIBIT 01 (Dkt. #863-1) ("Computer Forensic Report" by IRS-CI Agent Daun RE: search of data storage devices and encrypted virtual drives seized from apartment No. 1122 and storage unit No. A-47).

"agj_bag_liner_jagbags.co.nz.txt."[39]  The government has provided no explanation for

IRS-CI Agent Daun's and other agents' non-stop—more than three-year—exploratory

rummaging through the defendant's personal files that hold no relevance to the government's

case and are outside the scope of the N.D.Cal. 08-70460-HRL/PVT and 08-70502-PVT

warrants.

## II.   ARGUMENT: supplemental, corrected, and superseded with respect to the government's seizure of digital data.

*.   In light of the new evidence provided to the defense by the government on June

21, 2012, the following arguments supplement, correct, and supersede the arguments

contained in the defendant's *Motion To Suppress* (Dkt. #824), *Memorandum Re: Fourth

Amendment Violations (re: N.D.Cal. 08-70460-HRL/PVT)* (Dkt. #830-1), *Argument*, Section

II(C).  However, arguments relating to the defendant's reasonable expectation of privacy in

his data contained on his hard drives, encrypted virtual drives, and the forensic images

created therefrom—as they are in the possession of the government—established in the

defendant's *Motion To Suppress* (Dkt. #824), *Memorandum Re: Fourth Amendment

Violations* (Dkt. #824-1), *Argument*, Section V(C)(10), remain unchanged/unaffected and,

pursuant to LRCiv 7.1(d)(2) when referenced through LRCrim 12.1, are hereby incorporated

into this filing by reference.

### A.   Wholesale suppression is merited considering IRS-CI Agent Daun and other case agents turned the N.D.Cal. 08-70460-HRL/PVT warrant into a general warrant by continuing to search the seized storage devices more than three years after the in-person search of apartment No. 1122.

The government's unauthorized protracted exploratory rummaging through the

defendant's digital data merits wholesale suppression of all evidence (both digital and

physical) obtained under the N.D.Cal. 08-70460-HRL/PVT warrant.[40]  The original and

39.   *See Second Submission Of Consolidated Exhibits Relating To Discovery And Suppression Issues*, <u>EXHIBIT 088</u> (Dkt. #821-5) (March 7, 2012 IRS Memorandum for Transmittal of Electronically Stored Information by IRS-CI Agent Daun wherein IRS-CI Daun admits that "agj_bag_liner_jagbags.co.nz.txt" is not listed in her analysis reports).

40.   As explained in the facts above, the government's exploratory rummaging also applied to the images of the data storage device and encrypted virtual drive seized from storage unit No. A-47 during execution of the N.D.Cal. 08-70502-PVT warrant.  However, the

FIRST SUPPLEMENT TO MOTION TO SUPPRESS
RE: SEARCH AND SEIZURE OF DIGITAL EVIDENCE UNDER N.D.Cal. WARRANTS
CR08-814-PHX-DGC

1    reissued versions of the N.D.Cal. 08-70460-HRL/PVT warrant dictated exactly how the

2    government was to search the data storage devices seized from apartment No. 1122.  The

3    warrant required that the government "complete an off-site search of a device that agents

4    removed in order to search for evidence of crime as promptly as practicable and no later than

5    thirty (30) calendar days after the initial execution of the warrant[,]"[41] unless a time

6    extension is obtained from the court "for good cause shown."[42]  Instead of completing her

7    search and seizure of data within 30 days as required by the warrant, or seeking extensions of

8    time from the issuing magistrate, IRS-CI Agent Daun **(1)** conducted an initial 353-day

9    general rummaging through the defendant's personal files—most of which are beyond the

10   scope of the warrant, **(2)** provided virtual machine clones of the defendant's entire home

11   computer system and storage devices to IRS-CI Agent Medrano, IRS-CI Agent Fleischmann,

12   and FBI Agent Murray and allowed those primary case agents to conduct their own

13   rummaging for more than a year following the physical search of apartment No. 1122, **(3)**

14   continued her own personal fishing exhibition into the defendant's personal files (via the

15   forensic images) for an addition 27 months after completing her initial search and seizure of

16   data falling within the scope of the warrant, and **(4)** seized additional data from the forensic

17   images, not falling within the scope of the warrant, and provided that data to the prosecution

18   in October of 2011.  IRS-CI Agent Daun and the other named primary case agents used the

19   N.D.Cal. 08-70460-HRL/PVT warrant to conduct a general search—and otherwise

20

21   defendant's "fishing exhibition / wholesale suppression" argument is raised in the context of
     the N.D.Cal. 08-70460-HRL/PVT warrant considering (1) the original argument at Dkt.
22   #830-1 was only in the context of the N.D.Cal. 08-70460-HRL/PVT warrant, and (2) as long
     as the defendant successfully argues for *wholesale* suppression of all digital evidence seized
23   in the context of the N.D.Cal. 08-70460-HRL/PVT warrant, all digital and physical evidence
     seized from storage unit No. A-47 would also be suppressed considering the N.D.Cal. 08-
24   70502-PVT warrant stemmed from digital evidence seized under the N.D.Cal. 08-70460-
     HRL/PVT warrant, *i.e.*, a fruit-of-the-poisonous-tree.  *See Third Submission Of Consolidated
25   Exhibits Relating To Discovery And Suppression Issues*, EXHIBIT 05 (Dkt. #863-1)
     (explaining how a text file seized from an encrypted virtual drive seized from apartment No.
26   1122 led to the search of storage unit No. A-47).

27   41.    *Submission Of Documents Related To Original Northern District Of California 08-
     70460-HRL Search Warrant Used To Physically Search Apartment No. 1122*, ¶ 5, p. 2 (Dkt.
     #566-2, p. 16).

28   42.    *Id.*, ¶ 5 (Dkt. #566-1, p. 17).

1   unreasonable search—in violation of the defendant's Fourth Amendment rights.[43][44]

2   The directive contained in the N.D.Cal. 08-70460-HRL/PVT warrant, requiring that

3   all digital evidence be searched and seized from the forensic images within 30 days unless an

4   extension of time is granted, is intended to ensure, among other protections, that the issuing

5   magistrate supervise a protracted search so as to prevent exploratory rummaging through

6   files not within the scope of the warrant.  Not only did IRS-CI Agent Daun and other agents

7   flagrantly disregard the plain terms of the warrant, their doing so resulted in the type of

8   protracted exploratory rummaging the warrant intended to prevent.  There was neither

9   permission nor justification for IRS-CI Agent Daun and three other agents to conduct a 353-

10  day fishing exhibitions into clones of the defendant's computer system while it "actually

11  contain[ed] many more files than those that fall within the parameters of the Search Warrant

12  and its attachments."[45]  Likewise, IRS-CI Agent Daun's thereafter additional 27-month long

13  personal fishing exhibition, which occurred after she instructed other agents to stop

14  rummaging through the defendant's files, was also done without permission or justification.

15  The government's constitutionally offensive search—riddled with **misconduct** by the noted

16  agents—merits wholesale suppression of all evidence seized under the N.D.Cal. 08-70460-

17

---

18  43.    The government has effectively seized **all** of the data contained on the defendant's
    physical data storage devices and encrypted virtual drives even while it knows that most of
19  the data is beyond the scope of the warrant.  At best, the government was only authorized to
    preserve digital evidence but this does not mean that agents can continue to rummage
20  through preserved digital evidence over a three year period while it is intermingled with data
    not within the scope of the warrant.

21  44.    Additionally, "even if the law ultimately permits the forfeiture of a given <u>device</u>..., the
    law does not permit the retention of <u>data</u> on that device that has not been shown or even
22  alleged to have been an 'instrumentality' of the alleged crimes.  Nor does the law permit the
    retention of data outside the scope of the warrant for identification, authentication or chain-
23  of-custody purposes."  <u>United States v. Collins</u>, 2012 U.S. Dist. LEXIS 35980, Case No.: 11-
    CR-00471-DLJ (PSG) (N.D.Cal., Mar. 16, 2012) (emphasis in original) (Note: this opinion is
24  out of the same courthouse in San Jose, CA that issued the N.D.Cal. 08-70460-HRL/PVT and
    08-70502-PVT warrants).  In the present case, the government has not sought, and cannot
25  seek, the forfeiture of any <u>data</u> falling outside the scope of the relevant warrants.  *See, e.g.,*
    *First Bill Of Particulars Regarding Forfeiture* (Dkt. #040) (no seized data identified that is
26  to be forfeited).

27  45.    *See Third Submission Of Consolidated Exhibits Relating To Discovery And
    Suppression Issues*, <u>EXHIBIT 01</u> (Dkt. #863-1) ("Computer Forensic Report" by IRS-CI
28  Agent Daun RE: search of data storage devices and encrypted virtual drives seized from
    apartment No. 1122 and storage unit No. A-47).

HRL/PVT warrant or, at the very least, wholesale suppression of all seized digital evidence. *See, e.g.*, United States v. Chen, 979 F.2d 714, 717 (9th Cir. 1992) ("[W]here there is a 'flagrant disregard' for the terms of the warrant, the district court may suppress all of the evidence, including evidence that was not tainted by the violation." (citing United States v. Medlin, 842 F.2d 1194, 1199 (10th Cir. 1988))); United States v. Sears, 411 F.3d 1124, 1131 (9th Cir. 2005) ("Wholesale suppression is an extraordinary remedy that is appropriate only when the officers transform the search into an impermissible general search by ignoring the terms of the warrant and engaging in indiscriminate fishing." (internal quotation marks and citation omitted)).

Evidence of indiscriminate fishing is firmly established by the first 353-day multi-agent search and the thereafter 27-month search by IRS-CI Agent Daun—both involving unauthorized government rummaging through forensic images, *etc.* that "actually contain many more files than those that fall within the parameters of the Search Warrant and its attachments."[46]  However, additional evidence of indiscriminate fishing came in the form of IRS-CI Agent Daun seizing the file "agj_bag_liner_jagbags.co.nz.txt" in October of 2011. The file at issue contains personal communications between the defendant and Jacqueline Gardiner.  The prosecution has already admitted that "agj_bag_liner_jagbags.co.nz.txt" will not be used as evidence considering it is not amongst the list of data falling within the scope of the warrant.  AUSA Battista indicated that "[s]earches for evidence **to be used in this case** are being limited to the materials indexed in the February 25, 2010, discovery[,]"[47] *i.e.*, various reports listing specific files seized by IRS-CI Agent Daun **not** including "agj_bag_liner_jagbags.co.nz.txt."  The fact that the government continues an ongoing search through the forensic images, *etc.* for the purpose of seizing data not responsive to the N.D.Cal. 08-70460-HRL/PVT warrant—or even relevant to **this case**—is an additional indication that the unauthorized fishing exhibition was/is anything but harmless.

---

46.   *See id.*

47.   *See Second Submission Of Consolidated Exhibits Relating To Discovery And Suppression Issues*, EXHIBIT 088 (Dkt. #821-5) (emphasis added).

FIRST SUPPLEMENT TO MOTION TO SUPPRESS
RE: SEARCH AND SEIZURE OF DIGITAL EVIDENCE UNDER N.D.Cal. WARRANTS
CR08-814-PHX-DGC

**B.    Suppression of all digital evidence is merited based on technical violations of the 30-day search window limitations contained in the N.D.Cal. 08-70460-HRL/PVT and 08-70502-PVT warrants.**

Even if the Court finds that no indiscriminate fishing occurred, suppression of *all* digital evidence—or, in the alternative, suppression of digital evidence seized beyond the relevant 30-day search windows—is still an appropriate remedy for the related technical violations of the N.D.Cal. 08-70460-HRL/PVT and 08-70502-PVT warrants.[48]  As explained above, the warrants required that all data be searched/seized from the forensic images, *etc.* within 30 calendar days of the physical searches of apartment No. 1122 and storage unit No. A-47.  IRS-CI Agent Daun did not complete her search and seizure of data, by copying said data to DVDs and a CD,[49] until approximately July 22, 2009—323 days and 322 days past the respective deadlines.[50]  In an opinion addressing an argument nearly identical to the defendant's, the Central District of California suppressed all digital evidence seized by the government after a 60-day forensic search deadline had expired.  *See* United States v. Salceda, 2012 U.S. Dist. LEXIS 28211, CR 10-274 CAS (C.D.Cal., Feb. 27, 2012).

[51]  Similar to *Salceda*, the defendant requests suppression of all digital evidence seized

---

48.    The technical violations explained in this subsection—which are newly discovered based on the June 21, 2012 disclosure—apply to both the N.D.Cal. 08-70460-HRL/PVT and 08-70502-PVT warrants.  Both warrants apply considering, unlike the wholesale suppression argument, if the Court decides to only suppress digital evidence obtained ***after*** the expiration of the 30-day search window applicable to the N.D.Cal. 08-70460-HRL/PVT warrant, suppression of all evidence obtained under the  N.D.Cal. 08-70502-PVT warrant would not be an automatic consequence of suppression, *i.e.*, fruit-of-the-poisonous-tree.  *See Third Submission Of Consolidated Exhibits Relating To Discovery And Suppression Issues*, EXHIBIT 05 (Dkt. #863-1) (explaining how IRS-CI Agent Daun seized a text file on August 3-4, 2008 (within the 30-day search window applicable to the N.D.Cal. 08-70460-HRL/PVT warrant) leading to the search of storage unit No. A-47).  Therefore, the technical violation explained in this subsection also independently applies to all digital evidence seized from the forensic images stemming from the search of storage unit No. A-47.

49.    *See Third Submission Of Consolidated Exhibits Relating To Discovery And Suppression Issues*, EXHIBIT 01 (Dkt. #863-1) ("Computer Forensic Report" by IRS-CI Agent Daun RE: search of data storage devices and encrypted virtual drives seized from apartment No. 1122 and storage unit No. A-47).

50.    *See Facts*, Section I, ¶ No. 2, *supra*.

51.    After the execution of the N.D.Cal. 08-70460-HRL/PVT and 08-70502-PVT warrants on August 3-4, 2008, Rule 41 was amended in 2009 as follows: "Unless otherwise specified, the warrant authorizes a later review of the media or information [[*e.g.*, forensic images)] consistent with the warrant[]" and that any time limits set forth in Rule 41 do not refer to "any later off-site copying or review."  Fed. R. Crim. P. 41(e)(2)(B).  However, even if the 2009 version of Rule 41 is relevant here, the N.D.Cal. 08-70460-HRL/PVT and 08-70502-

FIRST SUPPLEMENT TO MOTION TO SUPPRESS
RE: SEARCH AND SEIZURE OF DIGITAL EVIDENCE UNDER N.D.Cal. WARRANTS
CR08-814-PHX-DGC

1 after the relevant 30-day search windows expired.  In the context of violating a judicially

2 created policy related to the Fourth Amendment, suppression is merited if the violation was

3 the "unattenuated but-for cause of obtaining the evidence."  United States v. Hector, 474 F.3d

4 1150, 1154 (9th Cir. 2007) (paraphrasing Hudson v. Michigan, 547 U.S. 586 (2006)).  Just

5 like in *Salceda*, the violation challenged in the present case is a clear unattenuated but-for

6 cause of obtaining all digital evidence beyond the relevant deadlines.  Had the government

7 not violated the relevant provisions of the warrants, no evidence would have been seized

8 after September 2, 2008 and September 3, 2008 respectively.

9      Under a Rule 41 violation analysis, which may offer guidance here,[52] suppression is

10 merited for non-constitutional violations of the rule if either (1) "the defendant was

11 prejudiced, in the sense that the search would not have occurred or would not have been so

12 abrasive if law enforcement had followed the Rule" or (2) "officers acted in 'intentional and

13 deliberate disregard' of a provision in the Rule."  United States v. Williamson, 439 F.3d 1125,

14 1132 (9th Cir. 2006) (citation omitted).  The government certainly cannot claim that its first

15 353-day search and thereafter 27-month long search were anything but intentional,

16 deliberate, and in plain contradiction to the terms of the warrants.  Furthermore, the

17 defendant is certainly prejudiced by the government seizing digital evidence during the 323

18 days and 322 days following the 30-day deadlines.  If the government were to go through its

19 records and collect only that which was isolated (*i.e.*, seized) from the forensic images, *etc.*

20 within the required 30-day windows, the amount of useable digital evidence would be almost

21 null.  Likewise, it certainly created a more abrasive search to allow numerous agents access

22 to clones of the defendant's entire computer system and storage devices for more than a year

23 —while those clones "actually contain[ed] many more files than those that fall within the

24 _____

25 PVT warrants still "otherwise specified," *id.*, that "later off-site copying or review," *id.*, of the defendant's data be completed within 30 days.  *See also* United States v. Winther, 2011

26 U.S. LEXIS 133799, No. 11-212 (E.D.Pa. 2011) ("The rule does not prevent a judge from imposing a deadline for the... access to the electronically stored information at the time the warrant is issued." (quoting committee Comments to 2009 Amendments to Rule 41)).

27 52.    The defendant is not alleging a Rule 41 violation.  However, the noted case law may

28 provide guidance on whether technical violations of a warrant's terms, as articulated by the issuing magistrate, merits suppression of evidence.

FIRST SUPPLEMENT TO MOTION TO SUPPRESS
RE: SEARCH AND SEIZURE OF DIGITAL EVIDENCE UNDER N.D.Cal. WARRANTS
CR08-814-PHX-DGC

parameters of the Search Warrant and its attachments."[53]

**C.      Suppression of all digital evidence is merited considering IRS-CI Agent Daun's seizure of digital data past the 30-day deadlines was done without supporting findings of probable cause.**

In addition to preventing the government from engaging in indiscriminate fishing, the directives contained in the N.D.Cal. 08-70460-HRL/PVT and 08-70502-PVT warrants—requiring that all digital evidence be searched/seized from the forensic images within 30 days unless an extension of time is granted—are intended to ensure that the issuing magistrate renew the probable cause findings upon each granted time extension.  Because the government continued to search for and seize evidence after the 30-day search windows had expired, those additional searches/seizures were not supported by findings of probable cause. Even if the government attempts to argue that probable cause did not dissipate after the expiration of the 30-day search windows,[54] and that the issuing magistrate would have therefore found that probable cause continued to exist, "[t]he Fourth Amendment contemplates a prior judicial judgment, not the risk that executive discretion may be reasonably exercised."  United States v. United States District Court, 407 U.S. 297, 317 (1972); see also United States v. Mejia, 69 F.3d 309, 320 (9th Cir. 1995) ("If evidence were admitted notwithstanding the officers' unexcused failure to obtain a warrant, simply because probable cause existed, then there would never be any reason for officers to seek a warrant [(or an extension of a warrant for that matter)].").  Because the issuing magistrate did not make a finding of probable cause to search for and seize the defendant's digital data for 323 days beyond the time authorized, all digital evidence seized beyond the 30-day search windows must be suppressed.

53.      *See Third Submission Of Consolidated Exhibits Relating To Discovery And Suppression Issues*, EXHIBIT 01 (Dkt. #863-1) ("Computer Forensic Report" by IRS-CI Agent Daun RE: search of data storage devices and encrypted virtual drives seized from apartment No. 1122 and storage unit No. A-47).

54.      *See* United States v. Brewer, 588 F.3d 1165, 1173 (8th Cir. 2009) ("[T]he delay had no effect on the probable cause determination.  The computer media at issue here were electronically-stored files in the custody of law enforcement.").

FIRST SUPPLEMENT TO MOTION TO SUPPRESS
RE: SEARCH AND SEIZURE OF DIGITAL EVIDENCE UNDER N.D.Cal. WARRANTS
CR08-814-PHX-DGC

### III.  Conclusion: Exclusion is an appropriate remedy and all illegally obtained evidence and derivative evidence must be suppressed.

\*.    In light of the new evidence provided to the defense by the government on June 21, 2012, the following conclusion supplements, corrects, and supersedes the conclusion contained in the defendant's *Motion To Suppress* (Dkt. #824), *Memorandum Re: Fourth Amendment Violations (re: N.D.Cal. 08-70460-HRL/PVT)* (Dkt. #830-1), *Conclusion*, Section III—however, only applicable to arguments relating to searches/seizures of digital evidence as raised in this filing, Section II, *supra*.[55]

As a remedy for any or all of the herein explained violations, and in order to deter the government from engaging in similar misconduct in the future, the defendant respectfully requests that the Court suppress the following evidence obtained illegally in this case:[56]

#### EVIDENCE TABLE

| # | Evidence sought to be suppressed: |
|---|---|
| 1 | Re: Wholesale suppression, all physical effects seized under the N.D.Cal. 08-70460-HRL/PVT warrant, as a sanction for the government's fishing exhibition with respect to searched/seized digital evidence; |
| 2 | Re: Wholesale suppression, all digital evidence seized under the N.D.Cal. 08-70460-HRL/PVT warrant, both within and beyond the 30-day search window, as a sanction for the government's fishing exhibition with respect to searched/seized digital evidence; |
| 3 | Data isolated (*i.e.*, seized) from government forensic images of physically seized data storage devices and encrypted virtual drives, but applicable to data seized **within** the first 30 days of the in-person search of apartment No. 1122 (N.D.Cal. 08-70460-HRL/PVT warrant), *e.g.*, |

55.    In other words, the *Conclusion* contained in *Memorandum Re: Fourth Amendment Violations (re: N.D.Cal. 08-70460-HRL/PVT)* (Dkt. #830-1), Section III, remains applicable to suppression arguments contained in Sections II(A) and (B) of Dkt. #830-1—*i.e.*, relating to Fourth Amendment violations not involving searches/seizures of digital evidence.

56.    The government cannot claim "good-faith" as an excuse for its misconduct.  The government voluntarily requested that the 30-day search window limitation be included in the issued warrants.  *See, e.g.*, *Submission Of Documents Related To Original Northern District Of California 08-70460-HRL Search Warrant Used To Physically Search Apartment No. 1122* (government's warrant application with "Attachment C" detailing 30-day search window) (Dkt. #566-1).  The government cannot now claim that it merely made an innocent mistake in interpreting the warrants or that it was not aware of the 30-day search windows. Additionally, the government never sought extensions of time past the initial 30 days in order to continue its searches and seizures.  *Compare* United States v. Mutschelknaus, 592 F.3d 826, 830 (8th Cir. 2010) ("Here, the officers' explicit request for an extension shows a manifest *regard* for the issuing judge's role in authorizing searches, rather than a bad faith attempt to circumvent federal requirements." (internal quotation marks, brackets, and citation omitted)).  Any reasonably competent investigator would have complied with the plain terms of the warrants, *i.e.*, completed forensic examinations of digital data within 30 days of the physical searches or sought extensions of time from the issuing magistrate.

| | |
|---|---|
| | various files printed from the forensic images by the government prior to September 2, 2008; |
| 4 | Data isolated (*i.e.*, seized) from government forensic images of physically seized data storage devices and encrypted virtual drives, but applicable to data seized **after** the first 30 days following the in-person search of apartment No. 1122 (N.D.Cal. 08-70460-HRL/PVT warrant), *e.g.*, data contained on the approximate July 22, 2009 DVDs and CD referenced in IRS-CI Agent Daun's "Computer Forensic Report"; |
| 5 | Data isolated (*i.e.*, seized) from government forensic images of physically seized data storage device and encrypted virtual drive, but applicable to data seized **within** the first 30 days of the in-person search of storage unit No. A-47 (N.D.Cal. 08-70502-PVT warrant); Note: the government has produced no data seized within related 30-day search window thus far; |
| 6 | Data isolated (*i.e.*, seized) from government forensic images of physically seized data storage devices and encrypted virtual drives, but applicable to data seized **after** the first 30 days following the in-person search of storage unit No. A-47 (N.D.Cal. 08-70502-PVT warrant), *e.g.*, data contained on the approximate July 22, 2009 DVDs and CD referenced in IRS-CI Agent Daun's "Computer Forensic Report"; |
| 7 | Seized physical data storage devices and encrypted virtual drives that contain many more files than those falling within the scope of the N.D.Cal. 08-70460-HRL/PVT and 08-70502-PVT warrants; |
| 8 | Government forensic hard drive images/copies of seized physical data storage devices and encrypted virtual drives that contain many more files than those falling within the scope of the N.D.Cal. 08-70460-HRL/PVT and 08-70502-PVT warrants; |
| 9 | All derivative evidence, *i.e.*, fruits-of-the-poisonous-tree, stemming from primary evidence sought to be suppressed (*see* Nos. 1-8 above) including, but not limited to, all evidence seized pursuant to the N.D.Cal. 08-70502-PVT warrant, N.D.Cal. 08-70503-PVT warrant, E.D.Cal. 08-SW-0586-EFB warrant, D.Ariz. 08-3397MB-LOA warrant, D.Ariz. 08-3399MB-LOA warrant, D.Ariz. 08-3401MB-LOA warrant, D.Ariz. 08-3403MB-LOA warrant, D.Ariz. 08-3402MB-LOA warrant, D.Ariz. 08-3398MB-LOA warrant, D.Ariz. 08-6038MB-DKD warrant, D.Ariz. 09-7124MB-ECV warrant, and all other warrants; |

This filing was drafted and prepared by the *pro se* defendant, however, he authorizes his shadow counsel, Philip Seplow, to file this filing on his behalf using the ECF system. The defendant is appearing *pro se* and has never attended law school. The defendant's filings, however inartfully pleaded, must be liberally construed and held to less stringent standards than formal pleadings drafted by lawyers. *See* Haines v. Kerner, 404 U.S. 519, 520 (1972).

LRCrim 12.2(a) requires that the undersigned include the following statement in all motions: "Excludable delay under 18 U.S.C. § 3161(h)(1)(D) will occur as a result of this motion or of an order based thereon."

///

///

Respectfully Submitted:

PHILP SEPLOW, Shadow Counsel, on
behalf of DANIEL DAVID RIGMAIDEN,
Pro Se Defendant:

s/ Philip Seplow
Philip Seplow
Shadow Counsel for Defendant.

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

FIRST SUPPLEMENT TO MOTION TO SUPPRESS
RE: SEARCH AND SEIZURE OF DIGITAL EVIDENCE UNDER N.D.Cal. WARRANTS
CR08-814-PHX-DGC

**CERTIFICATE OF SERVICE**

1

2

3        I hereby certify that on:                I caused the attached document to be

4   electronically transmitted to the Clerk's Office using the ECF system for filing and
    transmittal of a Notice of Electronic Filing to the following ECF registrants:

5

6   Taylor W. Fox, PC
    Counsel for defendant Ransom Carter
7   2 North Central Ave., Suite 735
    Phoenix, AZ 85004
8

9   Frederick A. Battista
    Assistant United States Attorney
10  Two Renaissance Square
    40 North Central Ave., Suite 1200
11  Phoenix, AZ 85004

12

13  Peter S. Sexton
    Assistant United States Attorney
14  Two Renaissance Square
    40 North Central Ave., Suite 1200
15  Phoenix, AZ 85004

16

17  James R. Knapp
    Assistant United States Attorney
    Two Renaissance Square
18  40 North Central Ave., Suite 1200
    Phoenix, AZ 85004
19

20

21

22

23

24

25

26

27  By: s/ Daniel Colmerauer
    (Authorized agent of Philip A. Seplow, Shadow Counsel for Defendant; See ECF Proc. I(D) and II(D)(3))
28