Daniel Rigmaiden
Agency # 10966111
CCA-CADC
PO Box 6300
Florence, AZ 85132
Telephone: none
Email: none

Daniel David Rigmaiden
Pro Se, Defendant

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

United States of America,

    Plaintiff,

v.

Daniel David Rigmaiden, et al.,

    Defendant.

No. CR08-814-PHX-DGC

REPLY TO GOVERNMENT'S RESPONSE TO MOTION REQUESTING EVIDENTIARY HEARING TO SETTLE CONTESTED ISSUES OF FACT GOING TO VALIDITY OF FOURTH AMENDMENT SEARCHES AND SEIZURES [Dkt. #918]

Defendant, Daniel David Rigmaiden, appearing *pro se*, respectfully submits *Reply To Government's Response To Motion Requesting Evidentiary Hearing To Settle Contested Issues Of Fact Going To Validity Of Fourth Amendment Searches And Seizures*. The defendant's original motion is at Dkt. #901 and the government's response is at Dkt. #918. Through this filing, the defendant responds to the objections raised by the government in its response.

    1.   **Use of Defendant's Keys to Gain Access to His Apartment**. The government still appears to contend that *federal agents* arrested the defendant and that *federal agents* seized the defendant's keys incident to a *federal agent* arrest. The full list of witnesses the defendant intends to call from this category will confirm that (1) Santa Clara police officers made the arrest, (2) federal agents were not at the site of arrest until after the defendant was arrested, in handcuffs, and fully searched, and (3) federal agents seized the keys (*i.e.*, the defendant's booking property) from the Santa Clara police department after

Santa Clara police officers made the search incident to arrest. Additionally, the government still appears to contend that FBI Agent Vinh Nguyen was executing the search warrant at the time he/she conducted the keyhole/key search at apartment No. 1122. In its response at Dkt. #918, the government claimed that the keys were used to "verify they would open his apartment while the case agents had a valid search warrant for the apartment in hand[.]"[1] This claim blurs the facts considering FBI Agent Nguyen did not have the search warrant "in hand" while conducting his/her search, no case agents were present, and FBI Agent Nguyen was not and did not execute the noted warrant. *See* Dkt. #900, p. 6-9. The defendant needs to question FBI Agent Nguyen in order to show the inaccuracy of the government's claim.

       2.     **Time Needed to Defeat Defendant's Encryption**. <u>No reply needed</u>.

       3.     **United States Examination of Defendant's Computers**. <u>No reply needed</u>. However, to be clear, the case agents' search/seizure of the defendant's digital data was neither limited nor brief.

       4.     **Whether Defendant Was Known to Anyone Under Any of His Aliases**. At Dkt. #918, p. 3, the government claimed that the "defendant never left any of these individuals with a forwarding address and identity." However, at Dkt. #873, the government correctly noted that the defendant provided Domicilio with the address of a private mail box of where the defendant could be contacted. *Id.*, p. 36. If the government wants to now deny this fact in order to make an argument, the defendant will benefit from questioning Zeljka Grabovcic and Victor Nguyen from the Domicilio apartment complex, as well as an employee from the San Francisco UPS Store of where the private mailbox address was opened. Although the defendant does not know the name of the employee who rented him the private mailbox, he/she can be identified, located, and subpoenaed. The defendant respectfully requests that his proposed witness list be updated to include the noted UPS Store employee.

       Additionally, although irrelevant to the defendant's request for an evidentiary hearing, the government again pushes its "fugitive" claim. At Dkt. #900, p. 2-4, the defendant cited

---

1.    Dkt. #918, p. 1.

legal authority establishing the illegitimacy of the government's attempt to rely on nonexistent "fugitive status" to justify its Fourth Amendment violations that occurred prior to issuance of the federal arrest warrant and prior to knowledge of a state arrest warrant.

5.    **Accountability of Defendant Regarding the Subject Apartment With the Leasing Company**.  The government claimed that Victor Nguyen's testimony is irrelevant because "[i]f defendant had not been arrested, identified and detained pending trial, there is no way any representative of the subject apartment's leasing company could have reasonably been able to locate the defendant if he had simply decided to walk away from his lease." First, *see* ¶ No. 1 of category No. 4 above.  Second, the government has provided no evidence indicating that the defendant would ever decide to simply walk away from any lease.[2]  Nor has the government identified any past leases held by the defendant under an alias of which he decided to "walk away."  The government is operating on pure speculation which contradicts the defendant's past conduct with other leases.  In order to disprove the government's pure speculation, the defendant now needs to also question prior landlord Jeff Koche regarding the defendant not walking away from that lease, employees of SOMA Self Storage of San Francisco regarding the defendant not walking away from that lease, and additional John and Jane Does who rented the defendant living spaces, *etc*. via leases of which the defendant did not walk away.  Additionally, as shown by the letters placed on the record by the defendant,[3] Mr. Nguyen will confirm that the defendant actively sought to resolve his lease without first being contacted by Domicilio and did not use his alias as a means to forgo responsibility as the government speculates.  In fact, even the noted letters show that the defendant was able to stop the eviction process[4] prior to Domicilio incurring

---

2.    The defendant does not walk away from leases and would not have walked away from his lease at Domicilio.

3.    *See Fourth Submission Of Consolidated Exhibits Relating To Discovery And Suppression Issues*, <u>EXHIBIT 19</u> (Dkt. #898-1) ("After receiving your notice in the mail that you wished to relinquish possession of your unit back to Domicilio, the eviction process was immediately stopped.  At this time no additional attorney fees or court filings had been processed.  As a result, the only balance owed to us is the unpaid rent...").

4.    The eviction process was started as a direct result of the government's illegal Fourth Amendment searches and seizures.

REPLY TO GOVERNMENT'S RESPONSE TO MOTION REQUESTING EVIDENTIARY HEARING TO SETTLE CONTESTED ISSUES OF FACT GOING TO VALIDITY OF FOURTH AMENDMENT SEARCHES AND SEIZURES
CR08-814-PHX-DGC

REPLY TO GOVERNMENT'S RESPONSE TO MOTION REQUESTING EVIDENTIARY HEARING TO SETTLE CONTESTED ISSUES OF FACT GOING TO VALIDITY OF FOURTH AMENDMENT SEARCHES AND SEIZURES
CR08-814-PHX-DGC

legal fees.[5]  If the government wants to rely on its false claim of no accountability in order to make an argument, the defendant needs to question Mr. Nguyen and the additional above named witnesses now relevant to this category.

6.    **An opportunity to Serve Defendant With a Copy of the N.D. Cal. 08-90330-MISC-RS Order**.  No reply needed.  However, to be clear, had the the magistrate actually known that FBI agents planned to conduct various searches and seizures, as opposed to Verizon Wireless merely providing information to the government, the magistrate would have either required service of the order upon the defendant or clearly erred in failing to do so.  The government already admitted that the order was faulty *vis-a-vis* Rule 41 service and return requirements.[6]  Therefore, the government claiming that agents were "not required to serve a copy of the Order pursuant to the language contained in Order"[7] is not a basis to deny suppression.

As for the government's reliance on the defendant's energy conservation, the defendant lived in a very small and efficient studio apartment in Northern California—a place where people know how to conserve energy and refrain from blasting air conditioners 24/7 as the lead prosecutor and case agents are likely accustomed to in Arizona.  Additionally, other than for the occasional hot pocket and unless eating out, the defendant ate mostly fresh fruits, vegetables, and whole grains that require no refrigeration—the defendant had unplugged and stopped using his power-hungry refrigerator for at least a month prior to the search.  In any event, the government's unsubstantiated claim that the defendant's energy footprint was so small that it was "the equivalent of approximately one 120 watt electrical

---

5.    Notably, the defendant's efforts in 2008 were clearly sincere and not being pursued in order to set a foundation for later Fourth Amendment challenges considering the defendant knew close to nothing about "reasonable expectation of privacy" and related Fourth Amendment law—or much of any law—at that time.  *Compare* the defendant's early *pro se* filings *to* his recent *pro se* filings in CR08-814-PHX-DGC.

6.    *See* Dkt. #873, p. 54 ("The warrant stated (albeit perhaps improperly) that the agents were not required to make a return or serve a copy of the warrant on the person whose property was located.").

7.    Dkt. #918, p. 3.

REPLY TO GOVERNMENT'S RESPONSE TO MOTION REQUESTING EVIDENTIARY HEARING TO SETTLE CONTESTED ISSUES OF FACT GOING TO VALIDITY OF FOURTH AMENDMENT SEARCHES AND SEIZURES
CR08-814-PHX-DGC

bulb[]"[8] is simply not true.[9]  The defendant's energy footprint was certainly small, but not that small.  The government does not know how to calculate one's energy use.  Rather than scrutinize the defendant's way of life in search of ways to justify its numerous Fourth Amendment violations, the lead prosecutor and case agents should instead take a look at their own lives while noting the defendant's superior energy conservation practices and healthy living habits.

7.    **FBI Technical Agents**.  If the government refuses to produce these witnesses then it has no way to show whether the three FBI technical agents familiarized themselves with the terms of the N.D.Cal. 08-90330MISC-RS order or even executed the order at all.  *See* Dkt. #900, p. 48-49.  The government noted that it instead "intends to call a supervisor of the technical agents who will be prepared to testify regarding non-law enforcement sensitive matters related to the conduct of the technical agents."  Dkt. #918, p. 4.  The government's proposed witness is useless to the defendant with respect to this category.  The FBI supervisor is a bureaucrat who did not operate the StingRay and related equipment to locate the aircard on July 16-17, 2008 so he/she lacks sufficient knowledge as to whether the three FBI technical agents familiarized themselves with the terms of the order or even executed it all.  Additionally, the government did not even attempt to meet its burden of showing that the unnamed bureaucrat will settle any "contested issues of fact going to the validity of the search..."  United States v. Walczak, 783 F.2d 852, 857 (9th Cir. 1986).  Although the government made no such articulation at Dkt. #918, if the government's bureaucrat were to provide hearsay testimony that the three FBI technical agents recently "told him" that they executed the order back in 2008, the bureaucrat's *he-said-she-said-hearsay* is weaker than the evidence (or lack thereof) summarized and referenced at Dkt. #900, p. 48-49.  Therefore, the defendant objects to the government presenting its bureaucrat as a witness at an evidentiary hearing.

_____

8.    *Id.*

9.    Regardless, once the Chinese food menu was placed on the defendant's door and shortly thereafter removed, it was obvious that someone lived at the apartment.  Additionally, various agents made reports of observing the windows of apartment No. 1122 and seeing lights going on and off within the apartment on various occasions.

*REPLY TO GOVERNMENT'S RESPONSE TO MOTION REQUESTING EVIDENTIARY HEARING TO SETTLE CONTESTED ISSUES OF FACT GOING TO VALIDITY OF FOURTH AMENDMENT SEARCHES AND SEIZURES CR08-814-PHX-DGC*

\* \* \* \* \*

This reply was drafted by the *pro se* defendant, however, he authorizes his shadow counsel, Philip Seplow, to file this reply on his behalf using the ECF system.  The defendant is appearing *pro se* and has never attended law school.  The defendant's filings, however inartfully pleaded, must be liberally construed and held to less stringent standards than formal pleadings drafted by lawyers.  *See* <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972).

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*REPLY TO GOVERNMENT'S RESPONSE TO MOTION REQUESTING EVIDENTIARY HEARING TO SETTLE CONTESTED ISSUES OF FACT GOING TO VALIDITY OF FOURTH AMENDMENT SEARCHES AND SEIZURES*
*CR08-814-PHX-DGC*

Respectfully Submitted:

PHILP SEPLOW, Shadow Counsel, on behalf of DANIEL DAVID RIGMAIDEN, Pro Se Defendant:

s/ Philip Seplow
Philip Seplow
Shadow Counsel for Defendant.

CERTIFICATE OF SERVICE

I hereby certify that on:                I caused the attached document to be electronically transmitted to the Clerk's Office using the ECF system for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Taylor W. Fox, PC
Counsel for defendant Ransom Carter
2 North Central Ave., Suite 735
Phoenix, AZ 85004

Frederick A. Battista
Assistant United States Attorney
Two Renaissance Square
40 North Central Ave., Suite 1200
Phoenix, AZ 85004

Peter S. Sexton
Assistant United States Attorney
Two Renaissance Square
40 North Central Ave., Suite 1200
Phoenix, AZ 85004

James R. Knapp
Assistant United States Attorney
Two Renaissance Square
40 North Central Ave., Suite 1200
Phoenix, AZ 85004

By: s/ Daniel Colmerauer
(Authorized agent of Philip A. Seplow, Shadow Counsel for Defendant; See ECF Proc. I(D) and II(D)(3))