Daniel Rigmaiden
Agency # 10966111
CCA-CADC
PO Box 6300
Florence, AZ 85132
Telephone: none
Email: none

Daniel David Rigmaiden
Pro Se, Defendant

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>v.<br><br>Daniel David Rigmaiden, et al.,<br><br>    Defendant. | No. CR08-814-PHX-DGC<br><br>MOTION REQUESTING SANCTIONS FOR DISCOVERY VIOLATIONS RE: DIGITAL EVIDENCE SEARCH |

    Defendant, Daniel David Rigmaiden, appearing *pro se*, respectfully submits *Motion Requesting Sanctions For Discovery Violations RE: Digital Evidence Search*. This motion identifies and explains nine discovery violations and requests sanctions in order to deter further discovery violations in this and other cases.

    For almost three years, the government failed to provide evidence showing that the case agents violated the terms of the N.D.Cal. warrants with respect to the "digital data search" [*DISCOVERY VIOLATION No. 1*]. Finally, on November 30, 2011, the government provided the defendant with a list of seized data containing a print-out of a file that was not amongst the *in-scope* data seized/copied to IRS-CI Agent Daun's CD and DVDs, *i.e.*, "agj_bag_liner_jagbags.co.nz.txt" accessed and copied by IRS-CI Agent Tracy L. Daun in October of 2011.[1] The government never notified the defendant that the particular file was

---

1.    *See First Supplement To Motion To Suppress RE: Search And Seizure Of Digital Evidence Under N.D.Cal. Warrants* (Dkt. #867, p. 8-10), *General Facts*, Section I(B)(17), ¶ 8-9.

- 1 -

*out-of-scope* or seized after-the-fact [*DISCOVERY VIOLATION No. 2*].  Not being notified or aware of the discrepancy, it took the defendant's unconscious mind numerous weeks to notify his conscious mind that the file was not listed amongst the thousands of previously reviewed *in-scope* files provided via IRS-CI Agent Daun's "Computer Forensic Report" and set of DVDs.[2]  After the defendant's epiphany, and being unable to physically confirm the non-listing due to problems accessing discovery at CCA-CADC, the defendant submitted a January 5, 2012 letter to AUSA Battista requesting that he identify where on the attachment to IRS-CI Agent Daun's "Computer Forensic Report" the "agj_bag_liner_jagbags.co.nz.txt" file and other files were listed as seized *in-scope* data.  After waiting more than two and one half months (*i.e.*, 77 days) for a response [*DISCOVERY VIOLATION No. 3*], on March 22, 2012, AUSA Battista provided the defendant with a report from IRS-CI Agent Daun indicating that the "agj_bag_liner_jagbags.co.nz.txt" file was not contained within the set of DVDs and was, in fact, seized much later in October of 2011.[3]  The defendant then used the March 22, 2012 disclosure in support of an argument in his *Motion To Suppress* (Dkt. #824 and #830), which was filed on June 1, 2012.  However, on June 21, 2012, the government provided the defendant with previously concealed evidence [*DISCOVERY VIOLATION No. 4*] that drastically changed the facts of the case with respect to the government conducting a fishing exhibition and violating the "30-day search window" term of the N.D.Cal. warrants' "Computer Search Protocol."[4]  The defendant then sent the government a new discovery

---

2.     The defendant had previously reviewed a listing of approximately 11,514 files attached to IRS-CI Agent Daun's "Computer Forensic Report."  Some weeks after being provided with a print-out of "agj_bag_liner_jagbags.co.nz.txt," the defendant "epiphanied" the fact that the file was not listed amongst the list of files he previously reviewed.  Due to there being more than 10,000 separate files to recall, it took the defendant's unconscious mind a great deal of time to get around the government's attempt to conceal evidence.  The fact of "agj_bag_liner_jagbags.co.nz.txt" being *out-of-scope* and untimely seized (*i.e.*, the hidden evidence) was camouflaged in a sea of more than ten thousand files worth of data—requiring the government to label the file as being illegally seized.  Given the massive amount of data, the government's "hidden in plain sight" tactic is unacceptable.

3.     *See First Supplement To Motion To Suppress RE: Search And Seizure Of Digital Evidence Under N.D.Cal. Warrants* (Dkt. #867, p. 8-10), *General Facts*, Section I(B)(17), ¶ 8-9.

4.     *See First Supplement To Motion To Suppress RE: Search And Seizure Of Digital Evidence Under N.D.Cal. Warrants* (Dkt. #867).

1  request letter on July 5, 2012.[5]  Once again, the government ignored the defendant's
2  discovery request without so much as an acknowledgement [<u>DISCOVERY VIOLATION No.</u>
3  <u>5</u>].  After waiting until August 2, 2012 for an acknowledgement, the defendant requested
4  leave of Court (Dkt. #868) to file his *Motion For Discovery RE: Digital Evidence Search*
5  (Dkt. #869).  The defendant also simultaneously filed his *First Supplement To Motion To*
6  *Suppress RE: Search And Seizure Of Digital Evidence Under N.D.Cal. Warrants* (Dkt. #867),
7  which was based on the newly provided June 21, 2012 evidence.[6]  After the defendant filed
8  Dkt. #867, #868 and #869, the government was on notice that the defendant was very serious
9  about the pending discovery request.  Rather than comply with the defendant's request in
10 light of the noted filings, the government continued to ignore the defendant [<u>DISCOVERY</u>
11 <u>VIOLATION No. 6</u>].  Even after the Court's September 28, 2012 order[7] granting the
12 defendant leave to file Dkt. #869, the government still failed to provide disclosure.  As
13 discussed in *Reply To Government's Response To Motion For Discovery RE: Digital*
14 *Evidence Search* (Dkt. #9??),[8] the government finally provided the defendant with minimal
15 discovery on October 22, 2012—a total of **109 days** after the discovery request was made
16 [<u>DISCOVERY VIOLATION No. 7</u>]—but the disclosure was significantly lacking
17 [<u>DISCOVERY VIOLATION No. 8</u>].  Additionally, the October 22, 2012 disclosure contains
18 evidence of the prosecution's deliberate attempt to conceal evidence of the case agents
19 violating the "Computer Search Protocol."[9]  The government's December 9, 2011 discovery
20 set contained a heavily redacted email sent from IRS-CI Agent Daun to AUSA Battista in

---

5. The July 5, 2012 discovery request letter eventually evolved into the discovery dispute addressed in *Motion For Discovery RE: Digital Evidence Search* (Dkt. #869 [proposed] and Dkt. #890 [filed]) and related filings.

6. At the time of filing Dkt. #867, the defendant anticipated filing a *second* supplement after the government complied with its discovery obligations.  *See id.*, p. 1 fn. No. 1.

7. *See September 28, 2012 Court Order* (#889).  Note: the proposed version of Dkt. #869 is now at Dkt. #890.

8. The docket No. for *Reply To Government's Response To Motion For Discovery RE: Digital Evidence Search* is not available for inclusion in this filing considering the noted reply is being filed by the defendant's court-appointed shadow counsel's office at the same time as this filing.

9. *See Fifth Submission Of Consolidated Exhibits Relating To Discovery And Suppression Issues*, <u>EXHIBIT 05</u> (Dkt. #929-1, p. 22).

- 3 -

August of 2008.[10]  The October 22, 2012 discovery set contained the exact same email but this time it was not redacted.[11]  The now non-redacted sections of the email indicate that IRS-CI Agent Daun was aware of the 30-day search window expiration date contained in the "Computer Search Protocol" and, in August of 2008, expressed concern over a need to seek an extension.  The noted email establishes that IRS-CI Agent Daun was aware of a need for an extension, failed to secure the extension, and then continued on with her more than three year long exploratory rummaging even while no extension was obtained.  Similar to the November 30, 2011 failure to advise the defendant that "agj_bag_liner_jagbags.co.nz.txt" was seized by IRS-CI Agent Daun separate from the data seized/copied to her DVDs, AUSA Battista's December 9, 2011 redactions acted to further conceal the 30-day search window violations from the defendant [*DISCOVERY VIOLATION No. 9*].[12]  Only now does AUSA Battista release the telling sections of the noted email.  *See Fifth Submission Of Consolidated Exhibits Relating To Discovery And Suppression Issues*, EXHIBIT 05 (Dkt. #929-1, p. 22).

Sanctions are appropriate for the above explained discovery violations because the defendant has suffered prejudice.  First, the defendant does not feel very happy with the government's handling of the discovery process surrounding the "digital data search."  Although likely out of the norm, the government interfering with the defendant's pursuit of happiness is prejudice that should be considered by the Court.[13]  Second, having the facts constantly change via the government's continuous belated discovery and intentional concealment of evidence is causing the defendant's arguments to become confusing, convoluted, and dispersed across multiple separate filings with each having a version of facts outdated by the most recent belated discovery.  Now the Court has to chase down all of the

---

10.  *See id*.

11.  *See id.*, EXHIBIT 02 (Dkt. #929-1, p. 11).

12.  *See id*.

13.  *See Declaration of Independence*, ¶ 2 ("We hold these truths to be self-evident, that all men are created equal, that they are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty, and the **pursuit of Happiness**." (emphasis added)).

- 4 -

defendant's points and try to make sense of them—surely not an easy task and of no fault of the defendant.[14] The Court will likely miss important points or mistakenly consider older facts that were later replaced with more accurate facts from new evidence. Third, because of the continuous inflow of belated discovery, the defendant still needs to file at least one or two additional supplements to his *Motion To Suppress* and he may be unsuccessful in convincing the Court to consider them. The defendant already filed one supplement to his *Motion To Suppress* based on the belated June 21, 2012 evidence,[15] he will need to file a second supplement to his *Motion To Suppress* based on the belated October 22, 2012 evidence and, because the October 22, 2012 disclosure was significantly lacking, the defendant now needs to wait for complete disclosure and then file a third supplement to his *Motion To Suppress*. For the second supplement, the defendant already uncovered yet another brand new Fourth Amendment violation through reviewing the October 22, 2012 disclosure.[16] When will it end? The defendant has a due process right to address all Fourth

---

14.  Originally, the defendant challenged the "digital data search" in his memorandum at Dkt. #830-1. Then, based on the June 21, 2012 new evidence, the defendant had to correct the facts and arguments via his *first* supplement at Dkt. #867. Now, the defendant has to prepare and file a *second* supplement based on the October 22, 2012 disclosure and then a *third* supplement once the government sufficiently complies with the defendant's pending discovery request. As a result, the defendant's Fourth Amendment challenges to the "digital data search" will be spanned across at least four separate documents instead of just being at Dkt. #830-1.

15.  *See First Supplement To Motion To Suppress RE: Search And Seizure Of Digital Evidence Under N.D.Cal. Warrants* (Dkt. #867).

16.  The new Fourth Amendment violation is IRS-CI Agent Daun using her "human eyes" to arbitrarily review a multitude of the defendant's files—**possibly all of them**—without using any methods designed to "locate and expose only those categories of files, documents, or other electronically stored information that are identified with particularity in the warrant..." *E.g.*, *Submission Of Documents Related To Original Northern District Of California 08-70460-HRL Search Warrant Used To Physically Search Apartment No.* 1122, "Computer Search Protocol For The Northern District Of California" (Dkt. #566-2, p. 17). This newly discovered Fourth Amendment violation will be addressed in the defendant's second supplement to his *Motion To Suppress*—if he can convince the Court to even consider it. However, in brief, prior to conducting a "human eye" review, IRS-CI Agent Daun should have isolated possible *in-scope* data by first conducting extensive keyword searches across data content and/or categorized files based on the defendant's very descriptive and accurate file/folder labeling, as was noted by IRS-CI Agent Daun in an email to FBI Agent Richard J. Murray. *See Fifth Submission Of Consolidated Exhibits Relating To Discovery And Suppression Issues*, EXHIBIT 04 (Dkt. #929-1, p. 21). In order to support his arguments, the defendant will seek an expert witness having both "computer expert" and "digital forensics expert" experience.

1  Amendment violations but if the government takes more than four years to produce evidence
2  revealing of those violations—and deliberately conceals evidence in the process (*see supra*)
3  —it causes unnecessary delays that would be avoided if the government were to handle the
4  discovery process properly.  Notably, given the defendant's excellent chance at winning the
5  case on the aircard locating mission issue,[17] all delays count nothing towards a sentence
6  having a nil chance of ever being issued.  All of the above prejudice merits at least some type
7  of sanction.  The defendant respectfully suggests dismissal with prejudice or, at the very
8  least, suppression of some evidence such as the seized digital data currently being challenged
9  at Dkt. #824/830-1,[18] #867,[19] and, in light of newly disclosed evidence, challenged in the
10 soon to be filed *second* and *third* supplements to Dkt. #824/830-1.

*  *  *  *  *

12 Based on the points and authorities set forth herein, the defendant respectfully
13 requests that this motion be granted and that sanctions be issued against the government.
14 This motion was drafted by the *pro se* defendant, however, he authorizes his shadow
15 counsel, Philip Seplow, to file this motion on his behalf using the ECF system.  The
16 defendant is appearing *pro se* and has never attended law school.  The defendant's filings,
17 however inartfully pleaded, must be liberally construed and held to less stringent standards
18 than formal pleadings drafted by lawyers.  See Haines v. Kerner, 404 U.S. 519, 520 (1972).
19 LRCrim 12.2(a) requires that the undersigned include the following statement in all
20 motions: "Excludable delay under 18 U.S.C. § 3161(h)(1)(D) will occur as a result of this
21 motion or of an order based thereon."
22 ///
23 ///
24 ///

---

17.  Not to mention, excellent chance at winning trial if suppression fails.
18.  *Motion To Suppress* and *Submission Of Two Memoranda That Were Meant To Be Attached To Docket No. 824*.
19.  *First Supplement To Motion To Suppress RE: Search And Seizure Of Digital Evidence Under N.D.Cal. Warrants*.

Respectfully Submitted:

PHILP SEPLOW, Shadow Counsel, on behalf of DANIEL DAVID RIGMAIDEN, Pro Se Defendant:

s/ Philip Seplow
Philip Seplow
Shadow Counsel for Defendant.

CERTIFICATE OF SERVICE

I hereby certify that on:            I caused the attached document to be electronically transmitted to the Clerk's Office using the ECF system for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Taylor W. Fox, PC
Counsel for defendant Ransom Carter
2 North Central Ave., Suite 735
Phoenix, AZ 85004

Frederick A. Battista
Assistant United States Attorney
Two Renaissance Square
40 North Central Ave., Suite 1200
Phoenix, AZ 85004

Peter S. Sexton
Assistant United States Attorney
Two Renaissance Square
40 North Central Ave., Suite 1200
Phoenix, AZ 85004

James R. Knapp
Assistant United States Attorney
Two Renaissance Square
40 North Central Ave., Suite 1200
Phoenix, AZ 85004

By: s/ Daniel Colmerauer
(Authorized agent of Philip A. Seplow, Shadow Counsel for Defendant; See ECF Proc. I(D) and II(D)(3))