1  Daniel Rigmaiden
   Agency # 10966111
2  CCA-CADC
   PO Box 6300
3  Florence, AZ 85132
   Telephone: none
4  Email: none

5  Daniel David Rigmaiden
   Pro Se, Defendant

6

7                    **UNITED STATES DISTRICT COURT**

8                          **DISTRICT OF ARIZONA**

9

10  United States of America,              No. CR08-814-PHX-DGC

11          Plaintiff,                     REPLY TO GOVERNMENT'S RESPONSE
                                           TO DEFENDANT'S MOTION TO
12  v.                                     SUPPRESS ALL DIGITAL EVIDENCE AS
                                           A SANCTION FOR FAILURE TO
13  Daniel David Rigmaiden, et al.,        PRESERVE EVIDENCE AND MOTION
                                           FOR SANCTIONS FOR DISCOVERY
14          Defendant.                     VIOLATIONS [Dkt. #935]

15

16          Defendant, Daniel David Rigmaiden, appearing *pro se*, respectfully submits *Reply To*

17  *Government's Response To Defendant's Motion To Suppress All Digital Evidence As A*

18  *Sanction For Failure To Preserve Evidence And Motion For Sanctions For Discovery*

19  *Violations*.  The government's response at Dkt. #935 (hereafter "Government Consolidated

20  Response ") addresses two separate motions filed by the defendant: (1) *Motion To Suppress*

21  *All Digital Data Evidence As A Sanction For Failure To Preserve Evidence* (Dkt. #931), and

22  (2) *Motion Requesting Sanctions For Discovery Violations RE: Digital Evidence Search*

23  (Dkt. #932).  Additionally, the government used its response as a sur-reply to the defendant's

24  *Reply To Government's Response To Motion For Discovery RE: Digital Evidence Search*

25  (Dkt. #930).  Through this filing, the defendant replies to the government's consolidated

26  response.

27  ///

28  ///

REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS ALL DIGITAL EVIDENCE AS A SANCTION FOR FAILURE TO PRESERVE EVIDENCE AND MOTION FOR SANCTIONS FOR DISCOVERY VIOLATIONS
CR08-814-PHX-DGC

## I.    REPLY

### A.    The prosecution tells a story but provides no evidence.

The defendant should not be required to take the prosecution's word on what the various agents did during the undisputed three-year+ search.  Furthermore, if any agent wishes to testify in support of the prosecution's story, the evidence requested by the defendant is helpful for impeachment purposes.  Although the "[d]efendant has been informed"[1] and the "[d]efendant has been advised,"[2] the prosecution has not given the defendant any evidence in support of the noted information and advisements.  The only information provided were the prosecution's "summaries of the limited nature and results of the searches..."[3]  Not evidence in the least, the prosecution's summary report[4] was created to replace evidence the government failed to preserve (or refuses to provide)[5] and, according to the limited available evidence, contradicts what actually occurred.[6]  Simply because the prosecution created an *after-the-fact* report to push its version of the events does not mean the defendant lacks a need for the actual evidence.  Unless the prosecution is willing to create a more accurate report containing sufficient concessions, the defendant still

---

1.    *Government Consolidated Response* (Dkt. #935, p. 2).

2.    *Id.* (Dkt. #935, p. 2, 3, and 4).

3.    *Id.*  (Dkt. #935, p. 2).

4.    *See Sixth Submission Of Consolidated Exhibits Relating To Discovery And Suppression Issues*, EXHIBIT 01 (Dkt. #933-1).

5.    It appears that the government preserved some of the requested evidence but refuses to provide it to the defense.  For example, the workstation computers loaded with the virtual machine clones are still in existence.  Therefore, the defendant needs the government to image those physical workstations so as to create virtual machine clones of the physical drives having VMWare installed and the files making up the virtual machine clones created from the defendant's seized physical drives.  By conducting a forensic analysis of the government's three workstations used to access the virtual machine clones (yes, the forensic *investigatee* now becomes the forensic *investigator*), the defendant will be able to gather evidence showing the full extent of the initial one-year+ exploratory rummaging conducted by the four case agents.  It also appears as if the EnCase evidence files and AccessData FTK reports are still in existence.  The defendant needs the noted files and reports so that the full extent of IRS-CI Agent Daun's three-year+ exploratory rummaging (via the forensic images) can be determined.

6.    *See Second Supplement To Motion To Suppress RE: Search And Seizure Of Digital Evidence Under N.D.Cal. Warrants* (Dkt. #934-1 [proposed]).

has a need for the requested evidence.[7]  For example,[8] the defendant needs (1) virtual machine clones of the three government VM workstation computers loaded with the virtual machine clones created from the defendant's seized physical drives, (2) all chain of custody records corresponding to who had access to all virtual machine clones, VM workstation computers, and forensic images, (3) full access logs—not merely the last four entries— corresponding to the "IRS-CI Case Agent VM" and the "CIS VM,"[9] (4) full access logs for the "FBI VM" (Note: the government provided no information with respect to access logs for this VM),[10] (5) EnCase evidence files and AccessData FTK reports corresponding to all forensic examinations, and (6) lists of all files looked at by each agent using their "human eyes."[11]  The requested evidence will show that the government's exploratory rummaging and fishing exhibition were more extensive than what is claimed by the prosecution's *after-the-fact* summary report.

---

7.     On approximately July 4, 2012, the government received a letter from the defendant suggesting that the "digital data search" dispute be resolved with some sort of compromise. The defendant stated in the letter, "If you wish to work something out regarding the seized data and my request to have all seized data suppressed then please write me a letter as soon as possible with your proposal."  To no surprise, the defendant's letter was ignored by the government.

8.     For additional evidence requiring immediate disclosure, *see Reply To Government's Response To Motion For Discovery RE: Digital Evidence Search* (Dkt. #930).

9.     The government claims that "the virtual machines only maintain a record of the final four log ons to system."  *Government Consolidated Response* (Dkt. #935, p. 3).  If this is true, the government failed to properly configure its software and/or methods so as to preserve records of all logons.  Therefore, the Court should grant the defendant's *Motion To Suppress All Digital Data Evidence As A Sanction For Failure To Preserve Evidence* (Dkt. #931).

10.     The fact that the government refuses to retrieve the last four logins it concedes it has in its possession for the "FBI VM" shows that the prosecution is attempting to hide some other vital evidence telling of Fourth Amendment violations.  Therefore, the Court should grant the defendant's *Motion Requesting Sanctions For Discovery Violations RE: Digital Evidence Search* (Dkt. #932).

11.     It appears as if the prosecution has conceded that IRS-CI Agent Daun looked at ***all*** files—meaning every single file—contained on the defendant's data storage devices.  *See Government Consolidated Response* (Dkt. #935, p. 4) (IRS-CI Agent Daun "was required to use her expertise to briefly examine all of the subject files in order to determine whether they fell within or outside of the scope of the subject warrants.").  If that is the case, the defendant's request for a list of precisely which files were looked at using "human eyes" applies to all government actors other than IRS-CI Agent Daun.

REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS ALL DIGITAL EVIDENCE AS A SANCTION FOR FAILURE TO PRESERVE EVIDENCE AND MOTION FOR SANCTIONS FOR DISCOVERY VIOLATIONS
CR08-814-PHX-DGC

**B.    The government's opinion on its discovery obligations is skewed due to confusion over the crux of the defendant's Fourth Amendment challenges relating to the search/seizure of digital data.**

It makes no difference if the government claims that it "has not used any evidence found on defendant's computers against defendant or anyone else which is not relevant to the subject violations."[12]   A fishing exhibition does not need to produce useable *out-of-scope* evidence in order to still be a fishing exhibition.  Objectively, the following facts establish that exploratory rummaging and a fishing exhibition occurred: (1) agents used their "human eyes" to conduct a file-by-file review of *all* of the defendant's files, including personal, private, and privileged *out-of-scope* files, (2) agents conducted a file-by-file, "human eye" review outside of a digital forensics environment during the first year of the search,[13] (3) the overall file-by-file, "human eye" review was conducted during a one-year+ period for three agents and during a three-year+ period for one agent, and (4) all agents flagrantly disregarded the terms in the warrants prohibiting **mere exposure** to *out-of-scope* data and searches beyond a 30-day window of time.  If the Court unequivocally agrees that a fishing exhibition occurred based on these facts alone, the defendant has no need for further evidence.  However, if the Court wants to consider the details, the defendant still has a need for the requested evidence.

**1.    Evidence of IRS-CI Agent Daun's exploratory rummaging / fishing exhibition and specific endeavors to pry.**

The fishing exhibition involved exploratory rummaging into personal, private, and privileged *out-of-scope* data.  The government claims that "[a]t no time did Special Agent Daun **intentionally** conduct a search into defendant's personal life unrelated to the enumerated violations of federal law."[14]  Without conceding the government's factual claim, what IRS-CI Agent Daun subjectively intended is of no matter to the Fourth

---

12.    *Id.* (Dkt. #935, p. 5).

13.    A digital forensics environment consists of software safeguards intended to protect the privacy of those having an interest in *out-of-scope* data.

14.    *See id.* (Dkt. #935, p. 4 (emphasis added)).

REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS ALL DIGITAL EVIDENCE AS A SANCTION FOR FAILURE TO PRESERVE EVIDENCE AND MOTION FOR SANCTIONS FOR DISCOVERY VIOLATIONS
CR08-814-PHX-DGC

Amendment inquiry.[15][16]  By examining **all** of the subject files using her "human eyes,"

IRS-CI Agent Daun failed to comply with the warrants' express requirement to "locate and

**expose** only those categories of files, documents, or other electronically stored information

that are identified with particularity in the warrant..."[17]  Furthermore, regardless of

intentions, IRS-CI Agent Daun's failure to comply with the noted minimization requirements,

as well as the warrants' time limitations, resulted in her exposing her "human eyes" to more

than **244,481** (two hundred forty four thousand, four hundred eighty one), personal, private,

and privileged *out-of-scope* files.[18]  Because the government refuses to provide the EnCase

evidence files and AccessData FTK reports, it is difficult to determine the full extent of the

noted prying, *e.g.*, notes taken on certain *out-of-scope* files, forensic actions taken upon

certain *out-of-scope* files, copying of *out-of-scope* files, *etc*.  However, IRS-CI Agent Daun

certainly pried into the defendant's personal life far enough to learn of his interests in outdoor

activities, vitamins, and nutrition; as well as to copy data not within the scope of the warrant.

[19]  Even if the Court were to ignore the warrants' express minimization requirements and

---

15.    "Fourth Amendment reasonableness is predominantly an objective inquiry....  This approach recognizes that the Fourth Amendment regulates conduct rather than thoughts; and it promotes evenhanded, uniform enforcement of the law."  Ashcroft v. al-Kidd (al-Kidd II), 131 S.Ct. 2074, 2080 (2010).

16.    However, given the failure to preserve evidence, and various emails showing arrogance and vindictiveness to be amongst IRS-CI Agent Daun's personality traits, the defendant does not concede a lack of intentional prying into the defendant's personal life.  If the Court finds that IRS-CI Agent Daun's subjective intent is relevant, the defendant will have a need to place said emails on the record showing her general disdain for the subjects of her digital data searches, belief that the subjects of her investigations do not own the devices and data she searches, and her refusals and complaints relating to complying with subjects' requests for copies of *out-of-scope* data such as family photos and resumes.  A consideration of IRS-CI Agent Daun's subjective mind will also merit an additional discovery request for searches into her emails in all other cases so that additional examples can be obtained showing her disrespect for all of her subjects' private and personal data.

17.    *E.g.*, *Submission Of Documents Related To Original Northern District Of California 08-70460-HRL Search Warrant Used To Physically Search Apartment No. 1122*, *Warrant*, "Computer Search Protocol For The Northern District Of California" (Dkt. #566-2, p. 17 (emphasis added)).

18.    *See Second Supplement To Motion To Suppress RE: Search And Seizure Of Digital Evidence Under N.D.Cal. Warrants* (Dkt. #934-1 [proposed], p. 7-8 (table comparing amount of *out-of-scope* files to amount of *in-scope* files); *see also First Supplement To Motion To Suppress RE: Search And Seizure Of Digital Evidence Under N.D.Cal. Warrants* (Dkt. #867, p. 5-6 (table comparing amount of *out-of-scope* files to amount of *in-scope* files).

19.    *See Second Supplement To Motion To Suppress RE: Search And Seizure Of Digital*

REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS ALL DIGITAL EVIDENCE AS A SANCTION
FOR FAILURE TO PRESERVE EVIDENCE AND MOTION FOR SANCTIONS FOR DISCOVERY VIOLATIONS
CR08-814-PHX-DGC

find a brief "human eye" review of **every file** acceptable, it was sill unreasonable for IRS-CI

Agent Daun to take note of *out-of-scope* information, share that information with the

prosecution, and then offer to obtain the source files for the prosecution's review.  If the

Court finds that "brief perusal" case-law overrides the warrants' express minimization terms,

said "brief perusal" means quickly skimming the file, determining that the file is not

relevant, disregarding any *out-of-scope* information gleaned from the file, and not sharing

what you learned with others.  IRS-CI Agent Daun's actions, which lasted more than three

years, do not resemble any type of "brief perusal."[20]  Assuming that IRS-CI Agent Daun

sufficiently documented her forensic search while using digital forensic software, the EnCase

evidence files and AccessData FTK reports will provide additional details and useable

examples of IRS-CI Agent Daun's prying.

In an attempt to belly the defendant's discovery requests, the government incorrectly

asserts that the defendant's "sophisticated and extensive data, in the form of images,

programs and/or encrypted files contained numerous files that could not readily be searched

solely via word searches."[21]  First, all computers have images, programs, and encrypted

data.  If the government had a problem with the terms of the warrants after seizing the

physical drives then the prosecution could have sought broader discretion by going back to

the issuing magistrates.  Second, as was already established, IRS-CI Agent Daun did not

have a problem decrypting data within the defendant's DriveCrypt encrypted virtual drives.

[22]  Third, the government's overall claim of keyword searches being insufficient and having

*Evidence Under N.D.Cal. Warrants* (Dkt. #934-1 [proposed]).

20.    The government claims that IRS-CI Agent Daun "became aware of defendant's interests in 'outdoor activities, vitamins and nutrition' while she was examining credit card purchase records related to defendant's use of one or more credit cards obtained through the use of a false identity in order to purchase computers..."  *Government Consolidated Response* (Dkt. #935, p. 4).  Even if the Court were to find IRS-CI Agent Daun's "human eye" exposure to said *out-of-scope* data reasonable, it was an invasion of privacy for her to take note of that data and then share it with the prosecution.  Furthermore, despite the prosecution's claim, the relevant section of the email sharing the information with AUSA Batista does not mention any name or identity relating to the defendant purchasing "outdoor equipment / clothes[] Vitamins / nutrition stuff[.]"  *Fifth Submission Of Consolidated Exhibits Relating To Discovery And Suppression Issues*, <u>EXHIBIT 03</u> (Dkt. #929-1, p. 18).

21.    *Government Consolidated Response* (Dkt. #935, p. 4).

22.    *See Reply To Government's Response To Defendant's Motion To Suppress* (Dkt. #900,

REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS ALL DIGITAL EVIDENCE AS A SANCTION
FOR FAILURE TO PRESERVE EVIDENCE AND MOTION FOR SANCTIONS FOR DISCOVERY VIOLATIONS
CR08-814-PHX-DGC

no choice but to conduct file-by-file, "human eye" review is blatantly false.  *See Second Supplement To Motion To Suppress RE: Search And Seizure Of Digital Evidence Under N.D.Cal. Warrants* (Dkt. #934-1 [proposed]).  *Compare also* <u>United States v. Hanna</u>, 661 F.3d 271, 287 (6th Cir. 2011) ("The government argues the search was further narrowed to specify 'seven distinct categories' of documents.  Therefore, it asserts there were 'temporal limits,' 'subject matter limits,' and 'categorical limits' on the items that could be searched and seized.").  The defendant is in the process of obtaining a computer expert / digital forensics expert who will prepare an expert opinion showing how IRS-CI Agent Daun's file-by-file, "human eye" digital forensic search was flagrantly unnecessary and intrusive.  Nevertheless, even if the government did not want to conduct keyword searches, it was still required to do *something*—as opposed to *nothing*—in order to prevent "human eye" **exposure** to *out-of-scope* data, as was required by the express terms of the relevant warrants.

## 2. Evidence of IRS-CI Agent Medrano, IRS-CI Agent Fleischmann, and FBI Agent Murray's exploratory rummaging / fishing exhibition.

The government asserts that "[t]here is no evidence that [][the other agents'] **efforts** were beyond the scope of the original search warrants."[23]  Again, without conceding the government's factual claim, the agents' subjective goals are of no matter.[24]  Objectively, IRS-CI Agent Medrano, IRS-CI Agent Fleischmann, and FBI Agent Murray had indiscriminate access to virtual machine clones of the defendant's entire computer system for more than a year.  These agents conducted "human eye" searches while not in a digital forensics environment.  The very manner in which the agents accessed data shows that they were exposed to *out-of-scope* information.  The evidence the government failed to preserve would show the extent of the *out-of-scope* exposure and precisely what *out-of-scope* files and data were accessed by the other three case agents using "human eyes."

---

p. 15 & fn. No. 69-70).

23. *Government Consolidated Response* (Dkt. #935, p. 2 (emphasis added)).

24. *See* <u>Ashcroft v. al-Kidd</u> (al-Kidd II), 131 S.Ct. 2074, 2080 (2010).

REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS ALL DIGITAL EVIDENCE AS A SANCTION FOR FAILURE TO PRESERVE EVIDENCE AND MOTION FOR SANCTIONS FOR DISCOVERY VIOLATIONS
CR08-814-PHX-DGC

### 3. Evidence relating to disclosure of virtual machines, forensic images, and data to other defendant's and attorneys in all cases.

The government claims that "[t]he **simple** answer to [][the defendant's request for evidence] is that the United States has not shared a forensic image of any of defendant's computers with any other defendant in any case."[25]  When the government provides a simple answer, important details are avoided that lend towards further Fourth Amendment violations.  Why does the government label its response a "simple answer," why not just "an answer?"  The government's response suggests that "an answer," or possibly a "complex answer," will contradict claims made in its "simple answer."  Rather than provide evasive *answers*, the defendant needs the government to provide *evidence* responsive to which defendants and attorneys were given access to the defendant's personal, private, and privileged data.

### C. The file "agj_bag_liner_jagbags.co.nz.txt" and data relating to the defendant's interests in outdoor activities, vitamins, and nutrition are not related to the subject charges.

In an attempt to belly the defendant's discovery requests, the government incorrectly claims that the defendant "does not contend that the known results of the four agents' searches are not related in some manner to the subject charges."[26]  Contrary to the government's misconception, the defendant **did** claim that "agj_bag_liner_jagbags.co.nz.txt" and data relating to the defendant's interests in outdoor activities, vitamins, and nutrition have no relation to the subject charges.[27]  Even IRS-CI Agent Daun agrees with the defendant's reasoning considering she never copied "agj_bag_liner_jagbags.co.nz.txt" or

---

25.   *Government Consolidated Response* (Dkt. #935, p. 3 (emphasis added)).

26.   *Id.* (Dkt. #935, p. 4).

27.   The government incorrectly claims that the file "relates to defendant's use of the false identity of Andrew Johnson; conduct well within the scope of the subject warrants."  *Id.* (Dkt. #935, p. 5, fn. No. 3).  First, the name "Andrew Johnson" was not known to the government until after executing the warrants.  Second, there is nothing in the relevant warrants authorizing the seizure of non-criminal, private correspondence simply because the name "Andrew Johnson" appears somewhere within the text of the correspondence.  If the Court disagrees with the defendant and IRS-CI Agent Daun—who chose not to seize the file to her set of DVDs as *in-scope* data—and finds that the warrants do authorize such a seizure, the warrants are both overbroad and lack particularity for that type of data.

files relating to outdoor activities, vitamins, and nutrition to her set of DVDs, which she

claims contain the *in-scope* data.[28]  Furthermore, in her email to AUSA Battista, IRS-CI

Agent Daun did not need to share information reflective of the defendant's specific interests

relating to non-criminal activity—that intermingled *out-of-scope* data should have been

ignored and not mentioned.[29]  If the Court finds the logged traces of government

exploratory rummaging insufficient, all the more reason for the government to turn over the

requested evidence or be subject to sanctions for failure to preserve.  The evidence the

defendant seeks will provide further traces of exposure to and sharing of *out-of-scope* data,

information, and knowledge—which will further support the defendant's fishing exhibition

and exploratory rummaging arguments.

> **D.    The government was required to preserve evidence relating to compliance/noncompliance with the express minimization requirements and time limitations contained in the relevant warrants.**

The government incorrectly claims that the defendant has not shown that "the United

States was required to preserve the [][requested discovery.]"[30]  As primary authority, the

terms of the very warrants the agents violated sufficiently establish the government's

obligation to preserve and provide all of the requested evidence.  It is immediately apparent

to any reasonably competent government actor that evidence in support of agents'

compliance or noncompliance with the minimization requirements and time limitations is

discoverable evidence.  If the government wants to instead concede factual or legal issues in

---

28.    *See Third Submission Of Consolidated Exhibits Relating To Discovery And Suppression Issues*, <u>EXHIBIT 01</u> (Dkt. #863-1, p. 30) ("Computer Forensic Report" by IRS-CI Agent Daun stating under numerous "Analysis" headings that, "The following is a summary of the evidence located on the computer that fell within the parameters of the Search Warrant and the Items to be Seized."); *Second Submission Of Consolidated Exhibits Relating To Discovery And Suppression Issues*, <u>EXHIBIT 088</u> (Dkt. #821-5, p. 38) (March 7, 2012 IRS Memorandum for Transmittal of Electronically Stored Information by IRS-CI Agent Daun, stating that "[t]he above file [agj_bag_liner_jagbags.co.nz.txt] is located in a DriveCrypt encrypted volume named filesalot.dcv on the Toshiba 100GB hard drive...  The agj_bag_liner_jagbags.co.nz.txt file **is not individually listed in the analysis reports.**" (emphasis added)).

29.    *See also* fn. 20, *supra*.

30.    *Government Consolidated Response* (Dkt. #935, p. 5).

REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS ALL DIGITAL EVIDENCE AS A SANCTION FOR FAILURE TO PRESERVE EVIDENCE AND MOTION FOR SANCTIONS FOR DISCOVERY VIOLATIONS
CR08-814-PHX-DGC

order to eliminate the defendant's need for evidence, it will have to do better than what is explained in its prosecution summary report.

### E.   Apart from failure to preserve evidence, separate sanctions are merited for the prosecution's inappropriate handling of the discovery process relating to the "digital data search."

The defendant sufficiently addressed this issue in his original motion at Dkt. #931. However, one point merits reiteration. On December 9, 2010 – before the defendant filed his *Motion To Suppress*, the government provided the defendant with a copy of an email containing redacted sections acting to hide evidence of the time limitations violation.[31] Nearly a year later, and after the defendant was able to determine the violation on his own, the government essentially said, "[Okay, you got us, here is the non-redacted version of the email]" (effectual paraphrasing).[32]  "A rule... declaring 'prosecutor may hide, defendant must seek,' is not tenable in a system constitutionally bound to accord defendants due process."  Banks v. Dretke, 540 U.S. 668, 696 (2004).  This alone bellies the government's claim that there was no "bad faith in attempting to respond to defendant's voluminous and never ending discovery requests."[33]  For additional discovery violations, *see Motion To Suppress All Digital Data Evidence As A Sanction For Failure To Preserve Evidence* (Dkt. #931).

* * * * *

This reply was drafted by the *pro se* defendant, however, he authorizes his shadow counsel, Philip Seplow, to file this reply on his behalf using the ECF system.  The defendant is appearing *pro se* and has never attended law school.  The defendant's filings, however inartfully pleaded, must be liberally construed and held to less stringent standards than formal pleadings drafted by lawyers.  *See* Haines v. Kerner, 404 U.S. 519, 520 (1972).

///

---

31.   *Motion To Suppress All Digital Data Evidence As A Sanction For Failure To Preserve Evidence* (Dkt. #931, p. 3-4).

32.   *Id*.

33.   *Government Consolidated Response* (Dkt. #935, p. 5).

- 10 -

REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS ALL DIGITAL EVIDENCE AS A SANCTION FOR FAILURE TO PRESERVE EVIDENCE AND MOTION FOR SANCTIONS FOR DISCOVERY VIOLATIONS
CR08-814-PHX-DGC

1   Respectfully Submitted:

2

3                                        PHILP SEPLOW, Shadow Counsel, on
                                         behalf of DANIEL DAVID RIGMAIDEN,
4                                        Pro Se Defendant:

5

6                                        s/ Philip Seplow
                                         Philip Seplow
7                                        Shadow Counsel for Defendant.

8                      CERTIFICATE OF SERVICE

9

           I hereby certify that on:              I caused the attached document to be
10

11   electronically transmitted to the Clerk's Office using the ECF system for filing and
     transmittal of a Notice of Electronic Filing to the following ECF registrants:
12

13   Taylor W. Fox, PC
     Counsel for defendant Ransom Carter
14   2 North Central Ave., Suite 735
     Phoenix, AZ 85004
15

16   Frederick A. Battista
     Assistant United States Attorney
17   Two Renaissance Square
     40 North Central Ave., Suite 1200
18   Phoenix, AZ 85004

19

20   Peter S. Sexton
     Assistant United States Attorney
21   Two Renaissance Square
     40 North Central Ave., Suite 1200
22   Phoenix, AZ 85004

23

24   James R. Knapp
     Assistant United States Attorney
25   Two Renaissance Square
     40 North Central Ave., Suite 1200
26   Phoenix, AZ 85004

27

28   By: s/ Daniel Colmerauer
     (Authorized agent of Philip A. Seplow, Shadow Counsel for Defendant; See ECF Proc. I(D) and II(D)(3))

*REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS ALL DIGITAL EVIDENCE AS A SANCTION FOR FAILURE TO PRESERVE EVIDENCE AND MOTION FOR SANCTIONS FOR DISCOVERY VIOLATIONS*
*CR08-814-PHX-DGC*