1  Daniel Rigmaiden
   Agency # 10966111
2  CCA-CADC
   PO Box 6300
3  Florence, AZ 85132
   Telephone: none
4  Email: none

5  Daniel David Rigmaiden
   Pro Se, Defendant

6

7              **UNITED STATES DISTRICT COURT**

8                   **DISTRICT OF ARIZONA**

9

10  United States of America,              No. CR08-814-PHX-DGC

11         Plaintiff,                      SUPPLEMENT TO MOTION TO
                                           DISMISS FOR (1) GOVERNMENT'S
12  v.                                     PREJUDICIAL EXTRAJUDICIAL PRESS
                                           COMMENTS SEVERE ENOUGH TO
13  Daniel David Rigmaiden, et al.,        IMPEACH CLAIMED INDIFFERENCE
                                           OF JURORS, AND/OR (2) VARIOUS
14         Defendant.                      GOVERNMENT MISCONDUCT

15

16         Defendant, Daniel David Rigmaiden, appearing *pro se*, respectfully submits

17  *Supplement To Motion to Dismiss For (1) Government's Prejudicial Extrajudicial Press*

18  *Comments Severe Enough To Impeach Claimed Indifference Of Jurors, And/Or (2) Various*

19  *Government Misconduct*.  The defendant previously filed *Motion to Dismiss For (1)*

20  *Government's Prejudicial Extrajudicial Press Comments Severe Enough To Impeach*

21  *Claimed Indifference Of Jurors, And/Or (2) Various Government Misconduct* (Dkt. #1000)

22  *and Motion To Stay Ruling On Suppression Issues Until After The USDOJ Issues Retraction*

23  *On Fabricated "Self-Described Hacker" Claims And Other Fabricated Claims In April 8,*

24  *2010 Press Release* (Dkt. #1001).  Through this supplement, the defendant respectfully

25  **requests additional relief** in the form of a Court order requiring the government to not refer

26  to the defendant as "a hacker" or "the hacker" in any way, shape, or form from this point

27  forward—whether in a press release, legal filing, or otherwise—other than to retract its prior

28  fabrication that the defendant is a self-described hacker and "known" as the hacker or a

hacker.  Without such an order, the defendant will suffer further prejudice as a result of the

government's attempts to justify its prior wrong-doings through various word games.  The

defendant is also using this supplement to submit PDF print-outs of web pages

corresponding to the various Google searches referenced at Dkt. #1000.[1]

After filing Dkt. #1000 and #1001, the defendant came to the realization that the lead

prosecutor, AUSA Frederick A. Battista, and other government actors are currently

experiencing *cognitive dissonance* with respect to the misconduct surrounding the April 8,

2010 press release.  Cognitive dissonance is "the theory [proposed by Leon Festinger] that

we act to reduce the discomfort (dissonance) we feel when two of our thoughts (cognitions)

are inconsistent.  For example, when our awareness of our attitudes and of our actions clash,

we can reduce the resulting dissonance by changing our attitudes."  Myers, David G., Ph.D.,

*Exploring Psychology, Sixth Edition In Modules* (New York, NY: Worth Publishers, 2005), p.

604.  In sum, as a result of the government's attempt to relieve its *cognitive dissonance*

caused by its prior wrong-doings, the defendant believes that a government retraction, new

press release, or future government legal filing(s) will continue to inappropriately refer to the

defendant as "the Hacker" or similar.  Under the *cognitive dissonance theory*, the

government's continual use of the Hacker label is a means to frame its prior actions

surrounding the April 8, 2010 press release as existing beyond the realm of misconduct.

Evidence of the government's *cognitive dissonance* and the prejudicial effects resulting from

the government's psychological struggle are further identified and explained below.

Immediately after being provided with a copy of the April 8, 2010 press release, the

defendant sent discovery requests to AUSA Battista acting to notify him of the defendant's

discontent with the government's fabrications.[2]  In response, AUSA Battista mailed the

---

1.      The defendant was not able to submit the exhibits sooner considering he does not
have personal access to the Internet.  *See* EXHIBIT 01 (Google search results for ["daniel
rigmaiden" hacker]); EXHIBIT 02 (Google search results for [using a proxy IP address while
web browsing]); EXHIBIT 03 (Google search results for [list of proxy IP addresses]);
EXHIBIT 04 (website that explains how to surf the web using proxy IP addresses);
EXHIBIT 05 (website that provides a list of proxy IP addresses); EXHIBIT 06 (website that
provides a list of proxy IP addresses); EXHIBIT 07 (website that provides a list of proxy IP
addresses); EXHIBIT 08 (website that provides a list of proxy IP addresses).

2.      *See* Dkt. #1001-1, EXHIBIT 03 and EXHIBIT 04.

defendant letters reflecting his internal attempt to bring his attitude in line with the

government's prior actions identified as misconduct:

> … You can clearly tell from the voluminous discovery that you were regularly referred to as the "Hacker" by the investigators, CI-1, and CI-2 until you were identified.  That being said, we are not aware of any instance where you personally referred to yourself as the "Hacker" in any manner.

*September 8, 2010 letter from AUSA Battista to Daniel Rigmaiden*, p. 2 (EXHIBIT 09).

> This is in response to your letter dated June 9, 2010, requesting the identification of any discovery related to... Press Release No. 2010-06,... which stated "... a self-described California based 'Hacker' named Daniel David Rigmaiden led a complex tax fraud conspiracy..."  Please be advised that this sentence was inartfully drafted.  A more accurate statement would have been to state "a California based person, known to the government as the 'Hacker,' named Daniel David Rigmaiden led a complex tax fraud conspiracy..."

*June 18, 2010 letter from AUSA Battista to Daniel Rigmaiden*, p. 1 (EXHIBIT 10).

The above excuses and explanations are AUSA Battista's attempts to justify his

misconduct in light of the defendant's challenges.  After receiving the defendant's letters,

AUSA Battista began to feel heavy responsibility for the troubling acts of which he himself

was involved along with other government actors.[3]  As shown by the above quoted letters,

and applying *cognitive dissonance theory*, rather than accept responsibility for the

government's wrong-doings, AUSA Battista attempted to change his *initial* attitude (*i.e.*, "I

did something wrong") into a *new* attitude (*i.e.*, "I did nothing wrong") designed to internally

justify his prior acts.[4]  Considering his *initial* attitude did not coincide with his prior

actions, AUSA Battista felt tension and, in order to relieve that tension, he brought his

attitude in line with his prior actions.[5]  As explained by David G. Myers, Ph.D., "It is as if

we rationalize, 'If I chose to do it (or say it), I must believe in it.'"[6]  However, as further

---

3.     *See* Dkt. #1000.

4.     *See* Myers, *Exploring Psychology, Sixth Edition In Modules*, p. 604 ("The more dissonance we feel, the more motivated we are to find consistency, such as changing our attitudes to help justify the act.").

5.     *See id.* ("To relieve this tension, according to the **cognitive dissonance theory**..., we often bring our attitudes into line with our actions.").

6.     *Id.*

SUPPLEMENT TO MOTION TO DISMISS FOR (1) GOVERNMENT'S PREJUDICIAL EXTRAJUDICIAL PRESS COMMENTS SEVERE ENOUGH TO IMPEACH CLAIMED INDIFFERENCE OF JURORS, AND/OR (2) VARIOUS GOVERNMENT MISCONDUCT
CR08-814-PHX-DGC

explained below, AUSA Battista's attempt at rationalization does not act to mitigate the government's misconduct nor does it erase any prior due process violations or prejudice.  To the contrary, it only acts to further prejudice the defendant's right to an impartial and untainted jury.

First, even if the government had publicly claimed that Daniel David Rigmaiden was *known to the government* as the Hacker,[7] as opposed to being a *self-described* Hacker,[8] the claim would still be inappropriate and prejudicial to the defendant's right to an impartial and untainted jury.  If the Court were to accept the government's rationalization, it would also be acceptable for law enforcement to (1) investigate a suspect for his alleged involvement in a car jacking ring, (2) nickname the suspect the "Car Jacker," (3) make an arrest, (4) issue a press release claiming that the arrested suspect was known to the government as the "Car Jacker," and (5) repeatedly refer to the suspect as the "Car Jacker" in the press release rather than by his actual name.  Even if the government had omitted the phrase "self-described," the comments made in the April 8, 2010 press release would have still been highly prejudicial and amounted to misconduct—albeit not to the severity caused by the actual press release, which *does* in fact contain the "self-described" verbiage.

Second, according to the government's own evidence, neither the defendant nor the individual government was investigating were ever "known" to government actors or confidential informants as the Hacker or a Hacker.  Possibly, the case agents were fed information by two confidential informants (CI-1 and CI-2) who sought to lessen their own prison time by increasing the sensationalism of the case with the nonexistent involvement of a "Hacker."[9][10]  However, the case agents knew all along that they had no evidence of

---

7.    According to AUSA Battista, it would have been more "artful" for the government to have said the defendant was "known to the government" as the Hacker.  *See June 18, 2010 letter from AUSA Battista to Daniel Rigmaiden*, p. 1 (UNDERLINE EXHIBIT 10).

8.    Above all else, the government cannot escape the fact that it did indeed use the "self-described" verbiage in its press release.

9.    *See id.* (EXHIBIT 09) ("...you were regularly referred to as the "Hacker" by the investigators, CI-1, and CI-2...").

10.    The government's desire for Hollywood style sensationalism has already been established.  *See* Dkt. #898-1, EXHIBIT 11 (August 6, 2008 text message from IRS-CI Agent Michael P. Fleischmann to FBI Agent Richard J. Murray stating, "I just remembered

1    hacking or of the defendant being a hacker—let alone a self-described hacker.[11]  Rather

2    than innocuously name the unknown target of the investigation, the case agents took it upon

3    themselves to nickname him/her the "Hacker" prior to being identified.  Once the defendant

4    was arrested, and while still having no evidence of hacking, the investigators pasted their

5    Hacker label onto the defendant.  Once the case was unsealed, the government introduced the

6    defendant to the public as a self-described Hacker who used "sophisticated computer

7    intrusion techniques" (*i.e.*, hacking) in an attempt to bilk the government out of millions of

8    dollars.[12]  This series of events does not support a claim that the defendant was "known to

9    the government as the 'Hacker[.]'"[13]  If the Court were to accept the government's

10   rationalization, it would also be acceptable for the defendant to (1) repeatedly call AUSA

11   Frederick A. Battista "the 'Fascist'"[14] while discussing him with detainees and staff at

12   CCA-CADC over the course of a year, (2) coach numerous detainees and staff members who

13   have neither met nor communicated with AUSA Battista to also call him "the 'Fascist'", and

14   (3) make statements to the press and public claiming that "an *Arizona* based person, known

15   to the *public* as the '*Fascist*,' named *AUSA Frederick A. Battista* led a complex *civil rights*

16   *violation* conspiracy..."  Certainly, AUSA Battista would contest a claim that he is known as

17   the Fascist in light of (1) the label being entirely invented without his knowledge, input, or

18   involvement, (2) him having no history of responding to others calling him by the name of

19   the Fascist, and (3) there being no evidence of fascism facilitating the civil rights violation

20   conspiracy of which he was the alleged leader.  In other words, it is no less wrong for the

21   government to publicly refer to the defendant as the Hacker than it is for the defendant to

---

23   the judge said this case could be a movie[.]")  CI-1 and CI-2 may have sensed the case
     agents' excitement and exploited it for their own benefit by telling tall tales of a hacker.

25   11.    *See* Dkt. #1001-1, <u>EXHIBIT 05</u> ("The inartfully drafted reference in the press release
     was not based upon **any known reference within the discovery**." (emphasis added)).

26   12.    *See* Dkt. #1001-1, <u>EXHIBIT 01</u> (April 8, 2010 USDOJ press release).

27   13.    *See* <u>EXHIBIT 10</u> (letter from AUSA Battista to Daniel Rigmaiden).

28   14.    The defendant is using the term "Fascist" not in the strict sense but in the pop-culture-
     layman-derogatory-prejudicial sense, *i.e.*, in the same way the government used the term,
     "Hacker" in the April 8, 2010 USDOJ press release.

refer to AUSA Battista as the Fascist[15]—even if the "self-described" verbiage is omitted in either example.

More recently, the government attempted to further justify its prior misconduct by using *Government's Response To Defendant's Motion To Suppress* (Dkt. #873) as a vehicle for tension relief and justification of prior troubling acts surrounding the April 8, 2010 press release. In its response at Dkt. #873, the government put in a footnote that there is no known evidence of the defendant ever referring to himself as a hacker but still goes on to call the defendant "the Hacker" one hundred and eight **(108) times** over 33 pages. *See id*. The government suggests there is justification to call the defendant "the Hacker" 108 times because, according to the government, the defendant was "[k]nown only as 'the Hacker' to his co-conspirators and the federal agents who pursued him[.]"[16] The government's choice of words shows that it was using Dkt. #873 to again deal with its *cognitive dissonance* surrounding the April 8, 2010 press release. By using the Hacker label 108 times in a high profile filing, the government was again attempting to convince itself that it was/is acceptable to label the defendant a hacker or "the Hacker" even while the defendant never self-described himself as a hacker and was never actually known as a hacker or "the Hacker."[17] Not only did the government's most recent attempt at rationalization and self-affirming justification serve no legitimate purpose in the proceedings,[18] it also acted to cause further prejudice to the defendant's right to a fair trial. Because the government's prejudicial April 8, 2010 USDOJ press release is still available, as are numerous news articles echoing the government's fabrications, it taints the jury pool further when the

---

15.    It is actually **more wrong** for the government to refer to the defendant as the Hacker than it is for the defendant to refer to AUSA Battista as the Fascist considering (1) the government also made false claims to the public that the alleged offenses were committed using sophisticated computer intrusion techniques (*i.e.*, hacking), and (2) for the defendant's trial, the government intends to draw a jury from the very pool of individuals it continues to feed the hacker label and hacking claim.

16.    Dkt. #873, p. 2.

17.    Above, the defendant explained how the defendant is no more "known" to the government as the Hacker than AUSA Battista is "known" to the public by the name given to him by the defendant, *i.e.*, the Fascist.

18.    Why did the government need to call the defendant "the Hacker" 108 times at Dkt. #873?

SUPPLEMENT TO MOTION TO DISMISS FOR (1) GOVERNMENT'S PREJUDICIAL EXTRAJUDICIAL PRESS COMMENTS SEVERE ENOUGH TO IMPEACH CLAIMED INDIFFERENCE OF JURORS, AND/OR (2) VARIOUS GOVERNMENT MISCONDUCT
CR08-814-PHX-DGC

government refers to the defendant as "the Hacker"—**in any context**—108 times throughout a filing that is of great interest to reporters covering the case.  Placing a small disclaimer in a footnote does not, and clearly did not,[19] mitigate the government's continual use of the fabricated "Hacker" label.

Therefore, in order to prevent further prejudice caused by the government's continual and unnecessary use of the hacker label, the defendant requests that the Court order—in addition to the other relief requested at Dkt. #1000 and #1001—that the government not refer to the defendant as "a hacker" or "the hacker" in any way, shape, or form from this point forward—whether in a press release, legal filing, or otherwise—other than to retract its prior fabrication that the defendant is a self-described hacker and "known" as the hacker or a hacker.  Additionally, the government's pattern of recurring violations—as shown by Dkt. #873—further supports the defendant's prior request at Dkt. #1000 to have the case dismissed with prejudice.  *See* United States v. Morrison, 449 U.S. 361, 366 fn. 2 (1981) (If there is "a pattern of recurring violations by investigative officers" dismissal of the indictment might be warranted "in order to deter further lawlessness.").

\* \* \* \* \*

This motion was drafted by the *pro se* defendant, however, he authorizes his shadow counsel, Philip Seplow, to file this motion on his behalf using the ECF system.

LRCrim 12.2(a) requires the following text in motions: "Excludable delay under 18 U.S.C. § 3161(h)(1)(D) will occur as a result of this motion or of an order based thereon."

///
///
///
///
///
///

19.   *See*, *e.g.*, Dkt. #1000, p. 9-10 (news articles published after the filing of Dkt. #873 which continue to echo the government's hacker claims despite the government's footnote).

Respectfully Submitted:

PHILP SEPLOW, Shadow Counsel, on behalf of DANIEL DAVID RIGMAIDEN, Pro Se Defendant:


s/ Philip Seplow
Philip Seplow
Shadow Counsel for Defendant.

CERTIFICATE OF SERVICE


        I hereby certify that on:                          I caused the attached document to be

electronically transmitted to the Clerk's Office using the ECF system for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:


Taylor W. Fox, PC
Counsel for defendant Ransom Carter
2 North Central Ave., Suite 735
Phoenix, AZ 85004

Frederick A. Battista
Assistant United States Attorney
Two Renaissance Square
40 North Central Ave., Suite 1200
Phoenix, AZ 85004

Peter S. Sexton
Assistant United States Attorney
Two Renaissance Square
40 North Central Ave., Suite 1200
Phoenix, AZ 85004

James R. Knapp
Assistant United States Attorney
Two Renaissance Square
40 North Central Ave., Suite 1200
Phoenix, AZ 85004


By: s/ Daniel Colmerauer
(Authorized agent of Philip A. Seplow, Shadow Counsel for Defendant; See ECF Proc. I(D) and II(D)(3))